**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION**

| | |
|---|---|
| **In re:** | **Chapter 11** |
| **LECLAIRRYAN PLLC,** | **Case No. 19-[    ] (___)** |
| **Debtor.**[1] | |

**DECLARATION OF LORI D. THOMPSON, ESQ. IN SUPPORT OF
CHAPTER 11 PETITION AND FIRST DAY MOTIONS**

Lori D. Thomson, Esq. declares and says:

1. I am chair of the Dissolution Committee (defined below) of LeClairRyan PLLC, a Virginia professional limited liability company ("LeClairRyan" or the "Debtor").

2. I joined LeClairRyan in 2005 and was a shareholder from January 1, 2010 until March 4, 2018, when it converted from a professional corporation to a professional limited liability company, and thereafter I was a member of LeClairRyan. I served as LeClairRyan's general counsel since 2017 and office leader of the firm's Roanoke office until I resigned from the firm. Following LeClairRyan's decision to dissolve, I became a member of the law firm of Spilman, Thomas & Battle, PLLC ("Spilman") on August 19, 2019, in order to continue the full-time practice of law with Spilman. After joining Spilman, I agreed to continue to serve as chair of the Dissolution Committee, and I have entered into a Services Agreement, dated August 20, 2019 (the "Thompson Services Agreement"), with LeClairRyan pursuant to which I will continue to provide management services, when needed, to LeClairRyan as part of its wind down.

---

[1] The last four digits of the Debtor's federal tax identification number are 2451.

3. I am generally familiar with LeClairRyan's operations, business, and financial affairs. Further, I am knowledgeable about the identity and roles of other employees of the firm who would possess information that would assist with or be relevant in the wind-down of the Firm. As the former general counsel for the Firm, I possess information which would be helpful to the orderly transition of client files.

4. I submit this declaration (i) in support of the petition of the Debtor for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"), (ii) pursuant to 28 U.S.C. § 1746 in support of the Debtor's petitions and contemporaneously-filed requests for relief in the form of motions (the "First Day Motions"), and (iii) to assist the Court and other interested parties in understanding the circumstances giving rise to the commencement of this chapter 11 case. I have reviewed the First Day Motions, and it is my belief that the relief sought therein is essential to the uninterrupted operation of the Debtor's business and to the Debtor's orderly wind-down of its business affairs for the benefit of its creditors and former clients.

5. Except as otherwise indicated, all facts set forth in this declaration are based upon my personal knowledge, my review of relevant documents, information provided to me by employees of LeClairRyan and its outside professional advisors, or my opinion based upon experience, knowledge and information concerning the operations of the Debtor and the legal industry as a whole. If called upon to testify, I would testify competently to the facts set forth in this declaration.

**Commencement of Bankruptcy Proceedings**

6. On the date hereof (the "Petition Date"), the Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code. The Debtor intends to continue in the

2

possession of its property and the management of its business as a debtor in possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.

7. Part I of this declaration describes the Debtor's business, Part II describes the Debtors' assets and liabilities, Part III describes the circumstances giving rise to the commencement of this chapter 11 case, and Part IV sets forth the relevant facts in support of the First Day Motions.

## I.

## The Debtor's Business

8. Founded in 1988 as a legal boutique for emerging growth companies, LeClairRyan grew into a national law firm which, until recently, operated through approximately twenty-five offices around the country, including, among other locations, offices located in Richmond, Los Angeles, San Francisco, Newark, New Haven, Boston, Philadelphia, New York City, Dallas, Houston, Detroit, and Washington, D.C.

9. At its peak, LeClairRyan had approximately 385 attorneys, including approximately 160 shareholders, and represented thousands of clients, including individuals and local, regional and global businesses.

10. Since July 29, 2019, when the members of LeClairRyan voted to dissolve the firm, the Debtor has been and currently is managed by its Dissolution Committee, which has been authorized by the members of the firm to effectuate a wind-down of the Debtor's operations and a smooth transition of client matters to successor firms in an effort to maximize the return to all creditors and parties in interest. As of the Petition Date, Mr. Christopher J. Lange, Esq. and I are the only two members remaining on the Dissolution Committee.

11. Prior to the Petition Date, at the direction of the Dissolution Committee, the Debtor began further reducing its overhead by, among other things, closing down its business

operations at all locations nationwide, except for the personnel needed to wind-down the firm's business affairs, including the orderly transition of client matters and the billing and collection of accounts receivable. The Debtor intends in the coming weeks to shift all of its wind-down operations from its leased locations to office space leased by ULX Partners, LLC ("ULXP") and made available to the wind-down team through the MSA with ULXP (discussed below). Attorneys that are continuing to transfer client matters also are working remotely to do so.

12. As of the commencement of the case, LeClairRyan employs less than 10 people to assist with the wind-down. All such employees are critical to the wind-down.

13. The wind-down team also is comprised of certain employees of ULXP. Many of these employees previously were employees of LeClairRyan until April 2018 when LeClairRyan entered into a joint venture with UnitedLex Corporation ("UnitedLex") to form ULXP, in order to engage in the business of providing an alternative staffing model for law firms. LeClairRyan remains a member of ULXP. Pursuant to this joint venture, ULXP hired more than 300 administrative and legal support professionals from LeClairRyan. Those ULXP employees then provided services for the benefit of LeClairRyan under a Master Service Agreement, dated April 4, 2018 (the "MSA"), in exchange for fees payable by LeClairRyan to ULXP.

## II.

## The Debtor's Assets and Liabilities[2]

*i.  Assets and Other Revenue Sources*

14.  As of the Petition Date, the Debtor's assets consist principally of cash, accounts receivable and work-in-progress.  The Debtor also owns furniture, fixtures, and other equipment located in various leased locations.  The Debtor also may have potential estate claims and causes of action against various parties, including under chapter 5 of the Bankruptcy Code.

*ii.  Liabilities*

15.  As of the Petition Date, the Debtor's unsecured liabilities consist primarily of obligations to landlords, vendors, employees and other creditors.  Liabilities related to its secured lender, ABL Alliance, LLLP (the "Lender"), and to ULXP, which also has a security interest in the Debtor's assets, are discussed in more detail below and in the *Motion of LeClairRyan, PLLC for Entry of Interim and Final Orders Authorizing the Use Cash Collateral and Granting Adequate Protection and Related Relief* ("Cash Collateral Motion") that was filed contemporaneously with this declaration and the First Day Motions.

16.  The bankruptcy filing will provide a centralized forum for the efficient and orderly resolution of such obligations.

*(a) The ABL Loan Agreement*

17.  On or about December 29, 2017, LeClairRyan entered into that certain Loan and Security Agreement (as amended, supplemented, modified or restated from time to time, the

---

[2]  The following summary is qualified in its entirety by reference to the operative documents, agreements, schedules and exhibits.

"Loan Agreement") with the Lender. Pursuant to the Loan Agreement, the Lender provided a revolving loan to LeClairRyan in the amount of $15,000,000 (the "ABL Loan").

18. On or about July 16, 2019, the Lender sent a Notice of Default and Demand to Cure to the Debtor (the "Notice of Default"). On or about July 19, 2019, the Debtor and the Lender entered into a letter agreement that purported to grant further rights to the Lender concerning the Debtor's use of its cash, accounts receivable, and related property (the "Letter Agreement"). Subsequently, the Lender took actions pursuant to the Letter Agreement to pay down the amount owed on the ABL Loan. Specifically, the amount outstanding on the ABL Loan as of July 19, 2019, was approximately $9.8 million. Upon information and belief, the amount outstanding on the ABL Loan as of the Petition Date is approximately $6.8 million.

19. The Lender asserts that, pursuant to the Loan Agreement and related documents, including without limitation its UCC filings, deposit account control agreements and the Letter Agreement, the ABL Loan is secured by a first-priority lien in substantially all of LeClairRyan's assets, including LeClairRyan's accounts receivable and other rights of payment.

*(b) ULXP Note and Security Agreement*

20. On or about December 20, 2018, LeClairRyan entered into an Outstanding Deferred Loan Promissory Note (the "ULXP Note") by which LeClairRyan agreed to pay ULXP the principal amount of $8,000,000 for deferred fees owed by LeClairRyan to ULXP under the MSA. Pursuant to the MSA, ULXP agreed to provide administrative support services to LeClairRyan. Upon information and belief, the amount outstanding on the ULXP Note as of the Petition Date remains $8,000,000, plus interest.

21. ULXP asserts that pursuant to that certain Security Agreement by LeClairRyan in favor of ULXP, dated April 2, 2019 (the "ULXP Security Agreement"), ULXP has a second-

priority lien in LeClairRyan's assets, including LeClairRyan's accounts receivable and other rights of payment. ULXP's rights under the ULXP Note and ULXP Security Agreement also are subject to an Intercreditor Agreement between the Bank and ULXP dated as of April 2, 2019. LeClairRyan holds a portion of the ownership interests in ULXP and has certain control rights in ULXP such that, together with the other facts and circumstances concerning the relationship between LeClairRyan and ULXP, LeClairRyan believes that ULXP may be an insider of the Debtor under Bankruptcy Code section 101(31). The Debtor believes that any security interest transferred to ULXP may be an avoidable transfer to an insider pursuant to section 547(b) of the Bankruptcy Code or, alternatively, an avoidable transfer pursuant to section 548(a)(1)(B).

### III.

### Events Leading to the Chapter 11 Case

22. After growing into a large national law firm, LeClairRyan experienced declines in gross revenue and profitability in recent years. Those declines led to the departure of numerous attorneys, and those departures accelerated in 2019. As a result, LeClairRyan was left with office and other overhead expenses in excess of declining revenues, thus inhibiting the firm in its efforts to return to profitability.

23. As set forth above, in June 2018, LeClairRyan entered into a joint venture with UnitedLex through the formation of ULXP. LeClairRyan believed that entering into this joint venture and receiving the services from ULXP contemplated by the MSA, would improve LeClairRyan's financial position.

24. Despite best efforts, LeClairRyan could not stop the wave of attorney departures. As a result, on July 29, 2019, the members of LeClairRyan determined that dissolution and an orderly wind-down of the firm was in the best interests of clients, creditors and employees and voted to dissolve and proceed with a wind-down under the authority vested in the dissolution

committee (the "Dissolution Committee").  In connection with such vote, the members of LeClairRyan resolved to appoint Mr. Lange, Mr. C. Erik Gustafson, Richard W. Bowerman, Esq. and me to the Dissolution Committee.  Mr. Gustafson and Mr. Bowerman have since resigned from the Dissolution Committee.  Mr. Gustafson, however, resigned after approving the commencement of this chapter 11 case, and negotiating the Services Agreements (discussed below).

25. LeClairRyan subsequently retained Protiviti, Inc. ("Protiviti"), as financial advisor, and Hunton Andrews Kurth, LLP ("Hunton"), as counsel, to assist LeClairRyan with the liquidation and related matters.

26. The Dissolution Committee, in consultation with LeClairRyan's professionals, has developed a plan to wind down the firm.  LeClairRyan has patterned its wind down plan based on other law firm cases in which the firm contemplated a short period of operation while client matters were smoothly transitioned to successor firms.  The wind down plan proposes to use existing staff during the transition period to take care of crucial client issues, such as the orderly transfer of client records and the preservation of attorney-client confidentiality whether in electronic form or in documents.  The goal of the wind down plan is not only to ensure that LeClairRyan fulfills its obligations to its clients and other constituents but also to maximize the return to all creditors by creating a smooth and uneventful soft landing for clients that would, among other things, minimize the risk that clients would stop paying invoices still owed to LeClairRyan.

27. To assist in understanding the financial implications of that plan, LeClairRyan, with the assistance of Protiviti, prepared and presented to the Lender financial projections for an out-of-court wind down process.  The Lender was unwilling to provide funding for an out-of-

Case 19-34574-KRH    Doc 3    Filed 09/03/19    Entered 09/03/19 08:52:26    Desc Main
Document      Page 9 of 17

court wind down plan to the extent of the additional funding required by the Lender under an out-of-court solution. Accordingly, LeClairRyan developed cash flow projections that would apply in a chapter 11 wind down process.

28. Following extensive discussions between LeClairRyan, the Lender, and their respective professionals, LeClairRyan and the Lender have reached an agreement regarding the consensual use of cash collateral pursuant to the terms of the Interim Order. LeClairRyan intends to continue to engage in discussions with the Lender concerning the use of cash collateral pursuant to the terms of the Final Order.

29. Accordingly, LeClairRyan has commenced this bankruptcy case, in part, to ensure that it can continue to use cash collateral to pay necessary expenses of its operations, including, among other expenses, for: payroll and related benefits, service fee payments to ULXP, fees for services and licenses of vendors, utilities, and rent or other occupancy and moving expenses. Payment of these expenses is critical for LeClairRyan to conduct an orderly wind down for the benefit of all creditors and parties in interest, including clients represented by the firm.

**IV.**

**First Day Motions**

30. The Debtor filed the First Day Motions concurrently with the filing of its chapter 11 petition. The Debtor requests that each of the First Day Motions be granted, as each constitutes a critical element in achieving a successful transition to chapter 11.

31. For a more detailed description of the relief requested in the First Day Motions, the Debtor respectfully refers the Court, creditors and other parties in interest to the respective First Day Motion. To the extent that there are any inconsistencies between this Declaration and the First Day Motions, the First Day Motions should control. Capitalized terms that are used in

this Part IV but not otherwise defined herein shall have the meanings ascribed to them in the relevant First Day Motion.

    **A.**    **Administrative Motions**

        *i.*    *Motion of LeClairRyan PLLC for Entry of an Order (I) Approving the Form and Manner of Notice of Commencement of the Chapter 11 Case and (II) Waiving the Requirement that the Debtor Submit a Formatted Mailing Matrix (the "*<u>Notice of Commencement Motion</u>*")*

32.    The Debtor seeks entry of an order (i) approving the Debtor's proposed form and manner of the notice of commencement of the Debtor's chapter 11 case, and (ii) waiving the requirement that the Debtor submit a formatted mailing matrix as required by Rule 1007-1 of the Local Bankruptcy Rules

33.    I believe that the relief requested in the Notice of Commencement Motion will provide adequate notice of this case to the Debtor's creditors and all other parties in interest and is critical to achieving a successful and smooth transition to chapter 11. Accordingly, on behalf of the Debtor, I respectfully submit that the Notice of Commencement Motion should be granted.

        *ii.*    *Motion of LeClairRyan PLLC for Entry of an Order Establishing Certain Notice, Case Management and Administrative Procedures (the "*<u>Case Management Motion</u>*")*

34.    The Debtor seeks entry of an order to implement certain procedures in connection with the administration of the chapter 11 case, including procedures to: (i) establish requirements for the filing and service of notices, motions, applications, documents filed in support thereof and objections and responses thereto; (ii) delineate standards for notices of hearing and agendas, (iii) articulate mandatory guidelines for the scheduling of hearings (including periodic omnibus hearings), objection deadlines, reply deadlines and evidentiary hearings, (iv) limit matters that are required to be heard by the Court; and (v) authorize electronic service of documents.

35. The Debtor believes that the requested relief will maximize the efficiency and orderliness of the administration of this chapter 11 case and reduce the costs associated with traditional case management procedures. The Debtor also believes that granting the relief requested will limit the administrative burdens and costs associated with preparing for hearings and serving and mailing documents. In addition, the relief requested will assist the Debtor and its personnel and professionals in organizing and prioritizing the numerous tasks attendant to this case.

36. I believe that the relief requested in the Case Management Motion is in the best interests of the Debtor's estate, its creditors, and all other parties in interest and constitutes a critical element in achieving a successful and smooth transition to chapter 11. Accordingly, on behalf of the Debtor, I respectfully submit that the Case Management Motion should be granted.

> iii. *Motion of LeClairRyan PLLC for Entry of an Order (I) Extending the Time to File Schedules and Statements of Financial Affairs and (II) Extending the Time to Schedule the Meeting of Creditors (the "Schedules Extension Motion")*

37. The Debtor seeks entry of an order granting additional time to file its schedules and statements of financial affairs and additional time to schedule the meeting of creditors. Due to the complexity of its former operations and the numerous other matters that the Debtor must attend to in connection with filing this case, the Debtor will not be able to complete the schedule of assets and liabilities, schedule of current income and expenditures, statement of executory contracts and unexpired leases and statement of financial affairs in the fourteen days provided under Bankruptcy Rule 1007(c). To facilitate this extension, the Debtor also seeks entry of an order authorizing the U.S. Trustee to schedule the Section 341 meeting after the 40-day deadline imposed by Bankruptcy Rule 2003(a).

38. Given the many critical matters that the Debtor's personnel must address in the early days of these chapter 11 cases, I believe that with the extension requested, the Debtor will be able to focus its attention on maximizing the value of the Debtors' estates during the first critical post-petition weeks and protecting the firm's clients' interests while active matters and client records are transferred. I believe this will help the Debtor make a smooth transition into chapter 11 and, therefore, maximize the value of the Debtor's estate to the benefit of creditors and all parties in interest.

39. I believe that the relief requested in the Schedules Extension Motion is in the best interests of the Debtor's estate, its creditors, and all other parties in interest and constitutes a critical element in achieving a successful and smooth transition to chapter 11. Accordingly, on behalf of the Debtor, I respectfully submit that the Schedules Extension Motion should be granted.

### B. Operational Motions Requesting Immediate Relief

    i. *Motion of LeClairRyan PLLC for Entry of an Order (I) Authorizing Debtor to Maintain Existing Bank Accounts and Business Forms and Continue to Use Existing Cash Management System, and (II) Waiving the Requirements of Section 345(b) of the Bankruptcy Code (the "Cash Management Motion")*

40. The Debtor seeks entry of an order authorizing the Debtor to (a) maintain the existing Bank Accounts and business forms and continue to use its existing Cash Management System, and (b) waiving the requirements of section 345(b) of the Bankruptcy Code. Without the requested relief, the Debtor may suffer undue disruption to the collection of accounts receivable and the orderly wind-down.

41. The Cash Management System maintained by the Debtor has been designed (i) to establish procedures and controls necessary to account for funds in an accurate manner, including the maintenance of trust accounts; and (ii) to facilitate meeting the Debtor's financial

obligations. The Debtor maintains current and accurate accounting records of daily cash transactions, and submits that preservation of its Cash Management System will prevent undue disruption to the wind-down, while protecting the Debtor's cash for the benefit of the Debtor's estate and protecting client interests.

42.  I believe that the relief requested in the Cash Management Motion is in the best interests of the Debtor's estate, its creditors, and all other parties in interest and constitutes a critical element in achieving a successful and smooth transition to chapter 11. Accordingly, on behalf of the Debtor, I respectfully submit that the Cash Management Motion should be granted.

> ii.   *Omnibus Motion of LeClairRyan PLLC for Entry of Interim and Final Orders Authorizing the Debtor to Assume Certain Executory Contracts (the "Assumption Motion")*

43.  The Debtor seeks entry of interim and final orders authorizing the Debtor to assume the following three executory contracts: (i) the Thompson Services Agreement, (ii) the Services Agreement, dated as of August 27, 2019 (the "Lange Services Agreement"), by and between Mr. Lange and LeClairRyan, and (iii) the Receivables Liquidation Agreement, dated as of October 1, 2018, as amended by Amendment No. 1 to Receivables Liquidation Agreement dated as of March 1, 2019 and Amendment No. 2 to Receivables Liquidation Agreement dated as of August 12, 2019, the "RLA"; collectively with the Thompson Services Agreement and Lange Services Agreement, the "Agreements"), by and between the Debtor and On-Site Associates, LLC ("On-Site").

44.  I believe that each Agreement is critical and necessary to the Debtor's ability to effectuate a wind-down of its estate and maximize value for creditors and parties in interest.

45.  Specifically, pursuant to the Thompson Services Agreement and Lange Services Agreement, Mr. Lange and I agreed to continue to serve on Dissolution Committee, as independent contractors. Neither Mr. Lange nor I are being retained to provide legal advice to

13

the Debtor. Instead, both Mr. Lange and I have institutional knowledge and experience to effectuate the Debtor's wind-down and maximize value for creditors and parties in interest, including ensuring the smooth transition of client matters to successor firms and collection of accounts receivable. As part of both the Thompson Services Agreement and Lange Services Agreement, LeClairRyan agreed to, among other things, seek to assume such agreements upon filing any chapter 11 case and at the same time the firm filed the First Day Motions.

46. Pursuant to the RLA, On-Site provides assistance in collecting the Debtor's billed and unbilled accounts receivable. The Debtor and On-Site entered into Amendment No. 2, which, among other things, revised and reduced the commission rates for commissions earned by On-Site. As a condition to entering to Amendment No. 2, among other things, On-Site required that the Debtor, and the Debtor agreed to, move to assume the RLA on the petition date of any chapter 11 case.

47. I believe that the relief requested in the Assumption Motion is in the best interests of the Debtor's estate, its creditors, and all other parties in interest and constitutes a critical element in achieving a successful and smooth transition to chapter 11. Accordingly, on behalf of the Debtor, I respectfully submit that the Assumption Motion should be granted.

      *iii.*    *Motion of LeClairRyan PLLC for Entry of Interim and Final Orders Approving Settlement Procedures for Compromising Accounts Receivable and Related Relief (the "Receivables Motion")*

48. The Debtor seeks entry of interim and final orders approving the Debtor's proposed procedures concerning the potential discount and settlement of accounts receivable. Prior to the Petition Date, in the ordinary course of business, the Debtor offered discounts and settlements on accounts receivable for multiple reasons. While the Debtor believes that offering discounts and settlements on its accounts receivables is in the ordinary course of the Debtor's business, the Debtor seeks the relief in the Receivables Motion to avoid any issues concerning

the Debtor's authority to offer discounts and settlements concerning the Debtor's accounts receivable. Moreover, it would be inefficient and costly if the Debtor were required to file a settlement motion for each and every discount and settlement the Debtor proposes with respect to the resolution and collection of accounts receivable.

49. I believe that the relief requested in the Receivables Motion is in the best interests of the Debtor's estate, its creditors, and all other parties in interest and constitutes a critical element in achieving a successful and smooth transition to chapter 11. Accordingly, on behalf of the Debtor, I respectfully submit that the Receivables Motion should be granted.

> iv. *Motion of LeClairRyan PLLC Pursuant to Sections 105 and 107 of the Bankruptcy Code and Bankruptcy Rule 9018 for Entry of an Order Authorizing LeClairRyan PLLC to File Under Seal Exhibit B to the Motion of LeClairRyan PLLC for an Entry of Interim and Final Orders Approving Settlement Procedures for Compromising Accounts Receivable and Related Relief (the "Motion to Seal")*

50. The Debtor seeks entry of an order authorizing the Debtor to file under seal Exhibit B to the Motion to Seal. The Exhibit sets forth certain parameters pursuant to which the Debtor proposes to authorize the General Billing Settlements in the Receivables Motion, provided that such settlements fall within the specified parameters. These parameters are commercially sensitive information of the Debtor. Sealing Exhibit B is the only way to protect the confidentiality of this sensitive information and, in turn, promote the Debtor's negotiation and entry into favorable General Billing Settlements for the benefit of its estate.

51. I believe that the relief requested in the Motion to Seal is in the best interests of the Debtor's estate, its creditors, and all other parties in interest and constitutes a critical element in achieving a successful and smooth transition to chapter 11. Accordingly, on behalf of the Debtor, I respectfully submit that the Motion to Seal should be granted.

> v. *Motion of LeClairRyan PLLC for Entry of Interim and Final Orders (I) Authorizing Debtor to Pay Prepetition Wages and Salaries; (II) Directing*

*Applicable Financial Institutions to Honor and Process Related Checks and Transfers and (III) Granting Related Relief (the "<u>Wages Motion</u>");*

52. The Debtor seeks entry of interim and final orders (a) authorizing, but not requiring, the Debtor to pay the Prepetition Wages, (b) authorizing applicable banks and other financial institutions to receive, process and pay any and all checks drawn on the Debtor's payroll and general disbursement accounts and other transfers to the extent that those checks or transfers relate to any of the foregoing, and (c) granting related relief.

53. If the requested relief is not granted, the Debtor's relationships with its Employees would be adversely impacted and there could well be irreparable harm to the Employees' morale, dedication, confidence and cooperation. The Employees' support for the Debtor's efforts is important to the success of the wind-down. Indeed, with the Debtor employing so few employees with knowledge and skill critical to the wind-down efforts, the Debtor simply cannot risk the substantial damage that might be caused by the loss of Employee morale attributable to the Debtor's failure to pay Prepetition Wages.

54. I believe that the relief requested in the Wages Motion is in the best interests of the Debtor's estate, its creditors and all other parties in interest and constitutes a critical element in achieving a successful and smooth transition to chapter 11. Accordingly, on behalf of the Debtor, I respectfully submit that the Wages Motion should be granted.

55. I respectfully request that all of the relief requested in the First Day Motions, and such other further relief as may be just and proper, be granted.

[REMAINDER OF PAGE LEFT INTENTIONALLY BLANK]

I, the undersigned chair of the Dissolution Committee of LeClairRyan, declare under penalty of perjury that the foregoing is true and correct.

Dated: September 3, 2019

/s/ *Lori D. Thompson*
Chair, Dissolution Committee