**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION**

| | |
|---|---|
| **In re:** | **Chapter 11** |
| **LECLAIRRYAN PLLC,** | **Case No. 19-[    ] (___)** |
| **Debtor.[1]** | |

**MOTION OF LECLAIRRYAN PLLC FOR ENTRY OF AN ORDER
(I) AUTHORIZING DEBTOR TO MAINTAIN EXISTING BANK ACCOUNTS
AND BUSINESS FORMS AND CONTINUE TO USE EXISTING CASH
MANAGEMENT SYSTEM AND (II) WAIVING THE REQUIREMENTS
OF SECTION 345(b) OF THE BANKRUPTCY CODE**

LeClairRyan PLLC, the above-captioned debtor-in-possession ("LeClairRyan" or the

"Debtor"), by its undersigned counsel, hereby moves the Court for the entry of an order, the

proposed form of which is attached hereto as Exhibit A (the "Order"), pursuant to sections

105(a), 345(b), 363(c)(1), and 364 of Title 11 of the United States Code, 11 U.S.C. §§ 101-1532

(as amended, the "Bankruptcy Code"), (i) authorizing the Debtor to maintain existing bank

accounts and business forms and to continue to use its existing cash management system, and (ii)

---

[1]       The last four digits of the Debtor's federal tafx identification number are 2451.

HUNTON ANDREWS KURTH LLP
Riverfront Plaza, East Tower
951 East Byrd Street
Richmond, Virginia 23219
Telephone: (804) 788-8200
Facsimile: (804) 788-8218
Tyler P. Brown (VSB No. 28072)
Jason W. Harbour (VSB No. 68220)

*Proposed Counsel to the Debtor
and Debtor in Possession*

waiving the requirements of section 345(b) of the Bankruptcy Code.  In support of this Motion, the Debtor relies on the Declaration of Lori D. Thompson, Esq. in Support of the Debtor's Chapter 11 Petitions and First Day Pleadings (the "Thompson Declaration").  In further support of this Motion, the Debtor submits as follows:

### I.   Jurisdiction, Venue and Predicates for Relief

1.    The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334(b).  Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.  This matter is a core proceeding within the meaning of 28 U.S.C. §157 (b)(2).

2.    The predicates for the relief requested herein are sections 105(a), 345, 363(c)(1) and 364 of the Bankruptcy Code.

### II.   Background

3.    On the date hereof (the "Petition Date"), the Debtor filed with the Court a voluntary petition for relief under chapter 11 of the Bankruptcy Code, commencing the above-captioned chapter 11 case (the "Chapter 11 Case").

4.    The Debtor continues to operate its business and manage its property as debtor-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

5.    No creditors' committee has been appointed in this Chapter 11 Case.  No trustee or examiner has been appointed.

6.    A full description of the Debtor's business operations, corporate structure, capital structure, and reasons for commencing this case is set forth in full in the Thompson Declaration, which was filed contemporaneously with this Motion and which is incorporated herein by reference.  Additional facts in support of the specific relief sought herein are set forth below.

### III.     Relief Requested

7.     By this Motion, the Debtor seeks entry of the Order (i) authorizing the Debtor to maintain existing bank accounts (and, together with any accounts opened after the Petition Date, the "Bank Accounts") located at various banks and financial institutions (collectively, the "Banks") and business forms and continue to use their existing cash management system (the "Cash Management System"), and (ii) waiving the requirements of section 345(b) of the Bankruptcy Code.

### A.     The Debtor's Bank Accounts and Cash Management System

8.     As of the Petition Date, in the ordinary course of business, the Debtor utilizes the Cash Management System to collect, concentrate, and disburse funds generated by the Debtor's operations.  In order to lessen the disruption caused by the bankruptcy filing and maximize the value of its estate in this chapter 11 proceeding, it is vital for the Debtor that it maintains its system of managing cash.

9.     As part of its Cash Management System, the Debtor maintains and holds several separate Bank Accounts (each, an "Account" and collectively, the "Accounts").

10.     Specifically, as of the Petition Date and in the ordinary course of business, the Debtor maintains twenty-four (24) separate Accounts, including twelve (12) Accounts at HSBC Bank ("HSBC"), six (6) Accounts at Bank of America ("BoA"), one (1) Account at Wells Fargo ("Wells Fargo"), one (1) Account at Santander Bank ("Santander"), one (1) Account at Plain States Bank ("Plain States"), one (1) Account at Boston Private Bank ("Boston Private"), one (1) Account at Independent Bank ("Independent"), and one (1) Account at Amegy Bank of Texas ("Amegy").  These Accounts are comprised of five separate categories of accounts:

a. Operational Accounts:  BoA Account No. 4602,[2] Santander Account No. 4474, and HSBC Account Nos. 0110, 0233, and 0730 are all operating accounts (the "Operating Accounts").  Corporate and administrative expenses are paid out of the Operating Accounts.

b. Trust Accounts:  The Debtor maintains sixteen (16) separate trust accounts (the "Trust Accounts") at various financial institutions.  As identified on Exhibit B annexed hereto, one (1) Trust Account is held at Wells Fargo, four (4) Trust Accounts are held at BoA, one (1) Trust Account is held at Plain States, one (1) Trust Account is held at Boston Private, one (1) Trust Account is held at Independent, one (1) Trust Account is held at Amegy, and seven (7) Trust Accounts are held at HSBC.  The funds held in the Trust Accounts are property that is maintained by the Debtor for the benefit or on account of its clients.  Each Trust Account, and the funds therein, is segregated from the Debtor's other Accounts and funds at all times, and not comingled.  All Trust Accounts and/or funds otherwise held in trust are, at the client's request, in the process of either (i) being returned to the party for whom such funds were being held, or (ii) transitioned to the successor law firm which took on the client matter corresponding to such funds.

c. Payroll Account:  HSBC Account No. 0128 is a payroll account, out of which funds are drafted bi-weekly to satisfy payroll obligations (the "Payroll Account"). The Payroll Account is funded by the Operating Accounts and is a zero balance account.

d. Letter of Credit Account:  BoA Account No. 1067 is an account established by the Debtor to hold the security deposit for the Debtor's leased property in Boston, Massachusetts.

e. P-Card Payment Account:  Certain of the Debtor's employees were issued a purchasing card (collectively, the "P-Cards") to be used for business related expenses.  The Debtor uses HSBC Account No. 0322 to satisfy the Debtor's obligations to HSBC in connection with the Debtor's use of the P-Cards (the "P-Card Account").  As of the Petition Date, the P-Cards have been cancelled, and HSBC should be returning the remaining funds in the P-Card Account following a short period for final reconciliation of any charge backs or other adjustments to the accounts.

11.    A list of the Debtor's Accounts is attached hereto as Exhibit B.  Each of the Accounts are maintained at stable financial institutions.

---

[2]    For ease of reference, the Motion identifies the Accounts by the last four digits of the Account numbers. The complete Account numbers are shown on Exhibit B annexed hereto.

12.     The Cash Management System maintained by the Debtor has been designed (i) to provide an efficient method of collecting, transferring and disbursing funds; (ii) to establish procedures and controls necessary to account for funds in an accurate manner; and (iii) to facilitate meeting the Debtor's financial obligations.  The Debtor maintains current and accurate accounting records of daily cash transactions, and submits that preservation of the Cash Management System will prevent undue disruption to the Debtor's business operations, while protecting the Debtor's cash for the benefit of the estate.

### B.     The Debtor's Existing Business Forms

13.     In the ordinary course of business, the Debtor uses a variety of checks and other pre-printed business forms (collectively, the "Business Forms").  Because of the nature and scope of the Debtor's business, it is important that the Debtor be permitted to continue to use its Business Forms without alteration or change.

### IV.     Basis for Relief Requested

14.     The Office of the United States Trustee (the "U.S. Trustee") has established operating guidelines for debtor-in-possession to facilitate the administration of chapter 11 cases (the "U.S. Trustee Guidelines").  These guidelines provide that chapter 11 debtor must: (a) close all existing bank accounts and open new debtor-in-possession bank accounts; (b) establish a single debtor-in-possession account for all estate monies required for the payment of taxes, including payroll taxes; (c) maintain a separate debtor-in-possession account for cash collateral; and (d) acquire new checks for all debtor-in-possession accounts which bear the designation "Debtor-In-Possession," the bankruptcy case number, and the type of account.  For the reasons set forth herein, the Debtor submits that it is appropriate for the Court to grant the Debtor a waiver of the requirements of the U.S. Trustee Guidelines to the extent they prohibit the Debtor from continuing to utilize its existing Cash Management System.

5

**A.      The Debtor Should Be Granted Authority to Maintain Its Existing Bank Accounts**

15.      The Debtor seeks a waiver of the requirements of the U.S. Trustee Guidelines to the extent they require that the Debtor open new bank accounts and close its existing Bank Accounts.  Such requirements likely would cause substantial disruption in the Debtor's business.  As explained herein, the Debtor's Bank Accounts are critical elements of an established Cash Management System that the Debtor must maintain in order to ensure the uninterrupted conduct of its business, including the collection of outstanding receivables that may be wired to an existing Bank Account.  Thus, to ensure as smooth a transition into chapter 11 as possible, the Debtor submits that it is imperative that it be permitted to continue to maintain its existing bank Accounts.[3]

16.      Accordingly, the Debtor requests that its existing Bank Accounts be deemed debtor-in-possession accounts and that the maintenance and continued use of such accounts, in the same manner and with the same account numbers, styles, and document forms as those employed during the pre-petition period, be authorized.

17.      Bankruptcy courts in Virginia have recognized that, in complex chapter 11 cases, strict enforcement of the requirement that a debtor in possession close its bank accounts and open new bank accounts in accordance with the U.S. Trustee Guidelines does not serve the rehabilitative purpose of chapter 11.  Accordingly, bankruptcy courts in Virginia have waived this requirement and replaced it with more effective procedures similar to those requested by this Motion.  *See, e.g.*, *In re Toys "R" Us, Inc.*, Case No. 17-34655 (KLP) (Bankr. E.D. Va. Oct. 24,

---

[3]      The Debtor, however, reserves its right to close any of the pre-petition Accounts and open new accounts as may be necessary in the Debtor's business discretion and in the ordinary course; provided, however, the Debtor will not open and close Accounts without the consent of ABL Alliance, LLLP, which shall not be unreasonably withheld.  The Debtor shall provide notice to the U.S. Trustee of the closing or opening of any such accounts.

2017); *In re Alpha Natural Resources, Inc.*, Case No. 15-33896 (KRH) (Bankr. E.D. Va. Oct. 8, 2015); *In re James River Coal Co.*, Case No. 14-31848 (KRH) (Bankr. E.D. Va. Apr. 10, 2014); *In re AMF Bowling Worldwide, Inc.*, Case No. 12-36495 (KRH) (Bankr. E.D. Va. Nov. 14, 2012); *In re RoomStore, Inc.*, Case No. 11-37790 (DOT) (Bankr. E.D. Va. Dec. 14, 2011); *In re Workflow Mgmt., Inc.*, Case No. 10-74617 (SCS) (Bankr. E.D. Va. Sept. 30, 2010); *In re Bear Island Paper Co., L.L.C.*, Case No. 10-31202 (DOT) (Bankr. E.D. Va. Feb. 25, 2010); *In re Movie Gallery, Inc.*, Case No. 10-30696 (DOT) (Bankr. E.D. Va. Feb. 3, 2010); *In re S & K Famous Brands, Inc.*, Case No. 09-30805 (KRH) (Bankr. E.D. Va. Feb. 9, 2009); *In re Canal Corp. f/k/a Chesapeake Corp.*, Case No. 08-36642 (DOT) (Bankr. E.D. Va. Dec. 30, 2008). Similar authorization is appropriate in these chapter 11 cases.

**B.   The Continued Use of the Debtor's Cash Management System Is Essential to the Debtor's Wind-Down Efforts**

18.   Furthermore, the Debtor hereby seeks authority to continue using its current Cash Management System.  The Debtor's Cash Management System provides significant benefits to the Debtor, including the ability to (a) provide an efficient method of collecting, transferring and disbursing funds, (b) ensure availability of funds when necessary, and (c) reduce administrative expenses.  Accordingly, it is essential that the Debtor be permitted to continue to consolidate the management of its cash as necessary and appropriate to continue the orderly wind-down of its business.

19.   Moreover, it would be very time consuming, difficult and costly for the Debtor to establish an entirely new system of accounts and a new cash management system, and doing so would disrupt the Debtor's ability to collect accounts receivable.  For example, if the Debtor was required to open separate accounts as debtor-in-possession and rearrange its Cash Management System, it would necessitate closing and re-opening at least 25 Accounts.  The attendant delays

7

from opening new accounts, revising cash management procedures and instructing clients and other payers to redirect payments would negatively impact the Debtor's ability to orderly wind-down its business while pursuing these arrangements.  Under the circumstances, maintenance of the Cash Management System is essential and clearly in the best interest of the Debtor's estate. Furthermore, preserving the status quo and avoiding the unnecessary and costly distractions that would inevitably be associated with any substantial disruption in the Cash Management System will facilitate the Debtor's efforts in chapter 11.

20.    The Debtor's Cash Management System includes the necessary accounting controls to enable the Debtor, as well as other interested parties in this case, to trace funds through the system and ensure that all transactions are adequately documented and readily ascertainable.  The Debtor will continue to maintain detailed records reflecting all transfers of funds.

21.    Section 363(c)(1) of the Bankruptcy Code authorizes the debtor in possession to "use property of the estate in the ordinary course of business without notice or a hearing."  11 U.S.C. § 363(c)(1).  The purpose of section 363(c)(1) of the Bankruptcy Code is to provide a debtor in possession with the flexibility to engage in the ordinary transactions required to operate its business without undue oversight by creditors or the court.  *See In re Dornier Aviation (North Am.), Inc.*, Case Nos. 02-82003 (SSM) 02-82004 (SSM), 2002 WL 31999222, at *7–8 (Bankr. E.D. Va. Dec. 18, 2002) (citing *In re Roth Am., Inc.*, 975 F.2d 949, 952 (3d Cir. 1992)); *see also Med. Malpractice Ins. Ass'n v. Hirsch (In re Lavigne)*, 114 F.3d 379, 384 (2d Cir. 1997); *Chaney v. Official Comm. of Unsecured Creditors of Crystal Apparel, Inc. (In re Crystal Apparel, Inc.)*, 207 B.R. 406, 409 (S.D.N.Y. 1997).  Included within the purview of section 363(c) is a debtor's ability to continue the "routine transactions" necessitated by a debtor's cash management system.

*Amdura Nat'l Distrib. Co. v. Amdura Corp. (In re Amdura Corp.)*, 75 F.3d 1447, 1453 (10th Cir. 1996). Accordingly, the Debtor seeks authority under section 363(c)(1) of the Bankruptcy Code to continue the collection, concentration, disbursement and investment of cash pursuant to its Cash Management System described above.

22. The Court may also exercise its equitable powers to grant the relief requested herein. Section 105(a) of the Bankruptcy Code empowers the Court to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a). Continuing the Debtor's Cash Management System without interruption is vital to the Debtor's orderly wind-down of its business. In particular, an integrated cash management system "allows efficient utilization of cash resources and recognizes the impracticalities of maintaining separate cash accounts for the many different purposes that require cash." *In re Columbia Gas Sys., Inc.*, 136 B.R. 930, 934 (Bankr. D. Del. 1992), *aff'd in part and rev'd in part*, 997 F.2d 1039 (3d Cir. 1993), *cert. denied sub nom. Official Comm. of Unsecured Creditors v. Columbia Gas Transmission Corp.*, 510 U.S. 1110 (1994); *see also In re US Airways, Inc.*, Case No. 04-13819 (SSM) (Bankr. E.D. Va. Sept. 14, 2004); *In re NTELOS, Inc.*, Case No. 03-32094 (DOT) (Bankr. E.D. Va. Mar. 4, 2003). The requirement to maintain all accounts separately "would be a huge administrative burden and economically inefficient." *Columbia Gas*, 997 F.2d at 1061; *see also In re Southmark Corp.*, 49 F.3d 1111, 1114 (5th Cir. 1995) (cash management system allows debtor "to administer more efficiently and effectively its financial operations and assets").

23. The Cash Management System is the complex mechanism whereby the Debtor is able to transfer its revenue toward the payment of its obligations and without which the Debtor's

9

orderly wind-down would be severely disrupted.  It is well within the Court's equitable power under section 105(a) to approve the continued use of the Cash Management System.

24.     As noted, the relief requested herein to maintain the Debtor's existing Cash Management System is routinely granted in chapter 11 cases by bankruptcy courts in Virginia. *See, e.g.*, *In re Toys "R" Us, Inc.*, Case No. 17-34655 (KLP) (Bankr. E.D. Va. Oct. 24, 2017); *In re Alpha Natural Resources, Inc.*, Case No. 15-33896 (KRH) (Bankr. E.D. Va. Oct. 8, 2015);   *In re James River Coal Co.*, Case No. 14-31848 (KRH) (Bankr. E.D. Va. Apr. 10, 2014); *In re AMF Bowling Worldwide, Inc.*, Case No. 12-36495 (KRH) (Bankr. E.D. Va. Nov. 14, 2012).

### C.     The Debtor Should Be Authorized to Use Its Existing Business Forms

25.     As described above, in the ordinary course of business, the Debtor uses numerous varieties of Business Forms.   To avoid disruption of its Cash Management System and unnecessary expense, the Debtor requests that it be authorized to continue to use its Business Forms substantially in the forms existing immediately before the Petition Date, without reference to its status as debtor-in-possession.

26.     In the absence of such relief, the estate will be required to bear a potentially significant administrative burden and expense, which the Debtor respectfully submits is unwarranted and likely will have little or no attendant benefit to the estate or creditors under the facts of these cases.

27.     Because parties doing business with the Debtor undoubtedly will be aware of the Debtor's status as debtor-in-possession, changing business forms would be unnecessary and unduly burdensome.   In other large cases, courts in Virginia have allowed debtors to use their prepetition business forms without the "debtor in possession" label.  *See, e.g.*, *In re Toys "R" Us, Inc.*, Case No. 17-34655 (KLP) (Bankr. E.D. Va. Oct. 24, 2017); *In re Alpha Natural Resources,*

*Inc.*, Case No. 15-33896 (KRH) (Bankr. E.D. Va. Oct. 8, 2015); *In re James River Coal Co.*, Case No. 14-31848 (KRH) (Bankr. E.D. Va. Apr. 10, 2014); *In re AMF Bowling Worldwide, Inc.*, Case No. 12-36495 (KRH) (Bankr. E.D. Va. Nov. 14, 2012); *In re Workflow Mgmt. Inc.*, Case No. 10-74617 (SCS) (Bankr. E.D. Va. Sept. 30, 2010); *In re Movie Gallery, Inc.*, Case No. 07-33849 (DOT) (Bankr. E.D. Va. Oct. 17, 2007); *In re Rowe Cos.*, Case No. 06-11142 (SSM) (Bankr. E.D. Va. Sept. 20, 2006).

**D.      The Banks Should Be Authorized to Continue to Treat, Service and Administer the Bank Accounts in the Ordinary Course of Business**

28.      The Debtor also seeks entry of an order granting the Banks authority to continue to treat, service and administer the Bank Accounts as accounts of the Debtor, as a debtor-in-possession, without interruption and in the usual and ordinary course, and to receive, process and honor and pay any and all postpetition checks, drafts, wires or automated clearing house transfers ("ACH Transfers") drawn on the Bank Accounts by the holders or makers thereof, as the case may be, to the extent the Debtor has good funds standing to their credit with such Bank.

29.      The Debtor requests that the Court grant relief from the U.S. Trustee Guidelines to the extent they require the Debtor to make all disbursements by check.  In particular, the U.S. Trustee Guidelines require that all receipts and all disbursements of estate funds must be made by check with a notation representing the reason for the disbursement.  The Debtor's normal practice also is to wire any ACH transfers when needed in lieu of checks.

30.      Notwithstanding anything to the contrary in any other order of this Court, the Debtor requests that the Banks be authorized to accept and honor all representations from the Debtor as to which checks, drafts, wires or ACH Transfers should be honored or dishonored consistent with any order of this Court and governing law, whether such checks, drafts, wires or ACH Transfers are dated prior to, on or subsequent to the Petition Date.  Pursuant to the relief

11

requested in this Motion, the Banks shall not be liable to any party on account of (a) following the Debtor's instructions or representations as to any order of this Court, (b) the honoring of any pre-petition check or item in a good faith belief that the Court has authorized such prepetition check or item to be honored or (c) an innocent mistake made despite implementation of reasonable item handling procedures.

31.    The Debtor further requests that any payment from a Bank Account at the request of the Debtor made by a Bank prior to the Petition Date (including any ACH Transfer such Bank is or becomes obligated to settle), or any instruments issued by such Bank on behalf of the Debtor pursuant to a "midnight deadline" or otherwise, be deemed to be paid prepetition, whether or not actually debited from such Bank Account prepetition.

**E.    The Deposit and Investment Requirements of Section 345(b) of the Bankruptcy Code Should Be Waived**

32.    Under section 345(a) of the Bankruptcy Code, a debtor is authorized to deposit or invest the money of a bankruptcy estate in a manner that will "yield the maximum reasonable net return on such money, taking into account the safety of such deposit or investment." 11 U.S.C. § 345(a). To the extent such deposits or investments are not "insured or guaranteed by the United States or by a department, agent or instrumentality of the United States or backed by the full faith and credit of the United States," section 345(b) of the Bankruptcy Code requires that a debtor obtain from the entity with which the money is deposited (i) a bond in favor of the United States secured by the undertaking of an adequate corporate surety, or (ii) a deposit of certain governmental securities. 11 U.S.C. § 345(b).

33.    Section 345(b) of the Bankruptcy Code also provides that it is within the Court's discretion to extend or waive these investment requirements "for cause." 11 U.S.C. § 345(b); see also 140 Cong. Rec. H10752-01 (October 4, 1995) (section 345(b) investment guidelines may be

"*wise in the case of a smaller debtor with limited funds that cannot afford a risky investment to be lost, [but] can work to needlessly handcuff larger, more sophisticated Debtor.*") (emphasis added).   In determining whether "cause" is present, courts consider a "totality of the circumstances" test utilizing the following factors:

(a) The sophistication of the debtor's business;

(b) The size of the debtor's business operations;

(c) The amount of investments involved;

(d) The bank ratings (Moody's and Standard and Poors) of the financial institutions where debtor-in-possession funds are held;

(e) The complexity of the case;

(f) The safeguards in place within the debtor's own business of insuring the safety of the funds;

(g) The debtor's ability to reorganize in the face of a failure of one or more of the financial institutions;

(h) The benefit to the debtor;

(i) The harm, if any, to the estate; and

(j) The reasonableness of the debtor's request for relief from § 345(b) requirements in light of the overall circumstances of the case.

*In re Serv. Merch. Co., Inc.*, 240 B.R. 894, 896 (Bankr. M.D. Tenn. 1999) (citations omitted).

34.     Here, cause exists to grant a waiver of the requirements of section 345(b) of the Bankruptcy Code for at least two reasons.  First, the Accounts are held at large institutions with strong bank ratings.  And second, many of the Debtor's Accounts maintain little or no balances. Therefore, the Court may grant a waiver of the section 345(b) requirement.

## V.     Necessity for Immediate Relief

35.     Bankruptcy Rule 6003 provides that "[e]xcept to the extent that relief is necessary to avoid immediate and irreparable harm, the court shall not, within 21 days after the filing of the

13

petition, issue an order granting . . . (b) a motion to use, sell, lease, or otherwise incur an obligation regarding property of the estate, including a motion to pay all or part of a claim that arose before the filing of the petition . . . ." If the Debtor is not permitted to continue to use its Cash Management System in its current form, it would cause immediate and irreparable harm to the Debtor, disrupting the Debtor's efforts in connection with the collection of receivables. Accordingly, the relief requested herein is consistent with Bankruptcy Rule 6003, and the Court should authorize the Debtor's continued use of the Cash Management System.

## VI.     Request for Waiver of Stay

36.     To implement the foregoing successfully, the Debtor seeks a waiver of the notice requirements under Bankruptcy Rule 6004(a) and the 14-day stay of an order authorizing the use, sale or lease of property under Bankruptcy Rule 6004(h).

## VII.     Notice

37.     The Debtor has served notice of this Motion on (a) the U.S. Trustee; (b) counsel to ABL Alliance, LLLP; (c) ULX Partners, LLC; (d) those creditors holding the 20 largest unsecured claims against the Debtor's estate; and (e) the Banks.

## VIII.     Waiver of Memorandum of Law

38.     The Debtor respectfully requests that this Court treat this Motion as a written memorandum of points and authorities or waive any requirement that this Motion be accompanied by a written memorandum of points and authorities as described in Local Bankruptcy Rule 9013-1(G).

## IX.     No Previous Request

39.     No previous request for the relief sought herein has been made by the Debtor to this or any other court.

WHEREFORE, the Debtor respectfully requests that the Court grant the relief requested

herein and such other and further relief as is just and proper.

DATED: September 3, 2019

<div style="margin-left:40%">

Respectfully submitted,

*/s/ Tyler P. Brown*
Tyler P. Brown (VSB No. 28072)
Jason W. Harbour (VSB No. 68220)
HUNTON ANDREWS KURTH LLP
Riverfront Plaza, East Tower
951 East Byrd Street
Richmond, Virginia 23219
Telephone: (804) 788-8200
Facsimile: (804) 788-8218
Email: tpbrown@HuntonAK.com
        jharbour@HuntonAK.com

*Proposed Counsel to the Debtor*
*and Debtor in Possession*

</div>

# EXHIBIT A

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION**

| | |
|---|---|
| **In re:** | |
| | **Chapter 11** |
| **LECLAIRRYAN PLLC,** | **Case No. 19-[    ] (\_\_\_)** |
| **Debtor.[1]** | |

**ORDER (I) AUTHORIZING DEBTOR TO MAINTAIN EXISTING
BANK ACCOUNTS AND BUSINESS FORMS AND CONTINUE TO USE
EXISTING CASH MANAGEMENT SYSTEM AND (II) WAIVING THE
REQUIREMENTS OF SECTION 345(b) OF THE BANKRUPTCY CODE**

Upon the motion (the "Motion")[2] of LeClairRyan PLLC, the above-captioned debtor-in-possession (the "Debtor"), for entry of an order, pursuant to sections 105(a), 345(b), 363(c)(1), and 364 of the Bankruptcy Code, (i) authorizing the Debtor to maintain existing bank accounts and business forms and continue to use their existing cash management system and (ii) waiving the requirements of section 345(b) of the Bankruptcy Code; the Court finds that: (a) it has jurisdiction to consider the Motion and the relief requested therein pursuant to 28 U.S.C. §§ 157

---

[1]    The last four digits of the Debtor's federal tax identification number are 2451.

[2]    Capitalized terms used but not otherwise defined herein shall have the meanings set forth in the Motion.

HUNTON ANDREWS KURTH LLP
Riverfront Plaza, East Tower
951 East Byrd Street
Richmond, Virginia 23219
Telephone: (804) 788-8200
Facsimile: (804) 788-8218
Tyler P. Brown (VSB No. 28072)
Jason W. Harbour (VSB No. 68220)

*Proposed Counsel to the Debtor
and Debtor in Possession*

and 1334; (b) this is a core proceeding pursuant to 28 U.S.C. § 157(b); (c) venue is proper before

this court pursuant to 28 U.S.C. §§ 1408 and 1409; (d) the relief requested in the Motion is in the

best interests of the Debtor, its estate and creditors; (e) proper and adequate notice of the Motion

and the hearing thereon has been given and no other or further notice is necessary; and (f) upon

the record herein, and after due deliberation thereon, good and sufficient cause exists for the

granting of the relief as set forth herein.  Therefore,

IT IS HEREBY ORDERED THAT:

1.      The relief requested in the Motion is hereby GRANTED.

2.      The Debtor is authorized and empowered, but not directed, to continue to

maintain, operate and make transfers under its Cash Management System.

3.      The Debtor is authorized and empowered, but not directed, to continue to

maintain the Bank Accounts with the same names and account numbers as existed immediately

prior to the chapter 11 cases.

4.      Any requirement to establish separate accounts for tax payments is waived.

5.      The Debtor is authorized to deposit funds in and withdraw funds from the

Accounts by all usual means, including, but not limited to, checks, wire transfers, electronic

funds transfers, automated clearing house transfers ("ACH Transfers") and other debits, and to

otherwise treat the pre-petition Accounts for all purposes as debtor-in-possession accounts.

6.      The Debtor is authorized to direct the Banks, and the Banks are authorized and

directed, to pay all obligations in accordance with this or any separate order of this Court.

7.      All Banks with which the Debtor maintains the Accounts are authorized and

directed to continue to maintain, service and administer the Accounts.  Notwithstanding anything

2

to the contrary in any other order of this Court, the Banks (a) are authorized to accept and honor all representations from the Debtor as to which checks, drafts, wires or ACH Transfers should be honored or dishonored, consistent with any order of this Court and governing law, whether such checks, drafts, wires or ACH Transfers are dated prior to, on or subsequent to the Petition Date, and whether the Banks believe the payment is or is not authorized by an order of this Court and (b) have no duty to inquire as to whether such payments are authorized by an order of this Court.

8.      The Banks shall not be liable to any party on account of (a) following the Debtor's instructions or representations as to any order of this Court, (b) the honoring of any pre-petition check or item in a good faith belief that the Court has authorized such pre-petition check or item to be honored or (c) an innocent mistake made despite implementation of reasonable item handling procedures.

9.      The Debtor is authorized to continue to use its existing Business Forms, including without limitation its existing check stock, which forms shall not be required to include the legend "Debtor in Possession" or other similar legend.

10.     Any payment from a Bank Account at the request of the Debtor made by a Bank prior to the Petition Date (including any ACH Transfer such Bank is or becomes obligated to settle), or any instruments issued by such Bank on behalf of any Debtor pursuant to a "midnight deadline" or otherwise, shall be deemed to be paid pre-petition, whether or not actually debited from the Bank Account pre-petition.

11.     To the extent this Order conflicts with the then applicable order approving the *Motion of LeClairRyan PLLC for Entry of Interim and Final Orders Authorizing the Debtor to Use Cash Collateral and Granting Adequate Protection and Related Relief* [ECF __] (any such order, the "Cash Collateral Order"), the Cash Collateral Order shall govern and control.

12.     The Debtor is authorized to open any new bank accounts or close any existing bank accounts as it may deem necessary and appropriate in its sole discretion.

13.     The requirement that the Debtor comply with section 345(b) of the Bankruptcy Code is hereby waived.

14.     The Debtor is authorized and empowered to take all actions necessary to implement the relief granted in this Order.

15.     The notice procedures set forth in the Motion are good and sufficient notice and satisfy Bankruptcy Rule 9014 by providing parties in interest with notice and an opportunity to object and be heard at a hearing.

16.     Notwithstanding any Bankruptcy Rule (including, but not limited to, Bankruptcy Rule 6004(h)) or Local Bankruptcy Rule of the Eastern District of Virginia that might otherwise delay the effectiveness of this Order, the terms and conditions of this Order shall be immediately effective and enforceable upon its entry.

17.     The requirement under Local Bankruptcy Rule 9013-1(G) to file a memorandum of law in connection with the Motion is hereby waived.

18.     The requirements of Bankruptcy Rule 6003 are satisfied.

19.     This Court shall retain exclusive jurisdiction over any and all matters arising from or related to the implementation or interpretation of this Order.

Dated:_____, 2019

_____
UNITED STATES BANKRUPTCY JUDGE


Entered on Docket: _____


WE ASK FOR THIS:


*/s/ Tyler P. Brown*
Tyler P. Brown (VSB No. 28072)
Jason W. Harbour (VSB No. 68220)
HUNTON ANDREWS KURTH LLP
Riverfront Plaza, East Tower
951 East Byrd Street
Richmond, VA 23219
Tel:  (804) 788-8200
Fax:  (804) 788-8218
Email: tpbrown@HuntonAK.com
        jharbour@HuntonAK.com


*Proposed Counsel to the Debtor*
*and Debtor in Possession*


### CERTIFICATION OF ENDORSEMENT
### UNDER LOCAL BANKRUPTCY RULE 9022-1(C)


I hereby certify that the foregoing proposed order has been endorsed by or served upon all necessary parties.

*/s/ Tyler P. Brown*

5

# EXHIBIT B

## Bank Accounts

| Account # | Description | Account Type | Name of Financial Institution |
|---|---|---|---|
| 6562829949 | TX IOLTA | Trust | Wells Fargo |
| 435029054602 | Operating | Operating | Bank of America |
| 004640542241 | MA IOLTA | Trust | Bank of America |
| 375003008200 | MI IOLTA | Trust | Bank of America |
| 394005729924 | RI IOLTA | Trust | Bank of America |
| 4451261067 | LC Account | Letter of Credit | Bank of America |
| 483031052194 | New York IOLTA | Trust | Bank of America |
| 7681204474 | Operating Account | Operating | Santander Bank |
| 1806963 | Texas IOLTA | Trust | Plain States Bank |
| 4066440 | Massachusetts IOLTA | Trust | Boston Private Bank |
| 622000101 | Washington, DC IOLTA | Trust | HSBC |
| 622000110 | Operating | Operating | HSBC |
| 622000128 | Payroll | Payroll | HSBC |
| 622000152 | New York IOLTA | Trust | HSBC |
| 622000233 | Delaware Attorney Operating Account | Operating | HSBC |
| 622000250 | Connecticut IOLTA | Trust | HSBC |
| 622000268 | California IOLTA | Trust | HSBC |
| 622000284 | Florida IOLTA | Trust | HSBC |
| 622000292 | Virginia IOLTA | Trust | HSBC |
| 622000314 | New Jersey IOLTA | Trust | HSBC |
| 622000322 | LeClairRyan PLLC | P-Card Payment Account | HSBC |
| 622000730 | Operating Account | Operating | HSBC |
| 344125 | Texas IOLTA | Trust | Amegy |
|  | Texas IOLTA | Trust | Independent |