**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION**

|  |  |
|---|---|
| **In re:** | **Chapter 11** |
| **LECLAIRRYAN PLLC,** | **Case No. 19-[    ] (___)** |
| **Debtor.**[1] | |

**MOTION OF LECLAIRRYAN PLLC FOR ENTRY OF INTERIM AND
FINAL ORDERS (I) AUTHORIZING DEBTOR TO PAY PREPETITION
WAGES AND SALARIES; (II) DIRECTING APPLICABLE FINANCIAL
INSTITUTIONS TO HONOR AND PROCESS RELATED CHECKS AND
TRANSFERS; AND (III) GRANTING RELATED RELIEF**

LeClairRyan PLLC, the above-captioned debtor and debtor-in-possession ("LeClairRyan" or the "Debtor"), by its undersigned counsel, hereby moves (the "Motion") the Court for entry of interim and final orders, each substantially in the form of order attached hereto as Exhibit A (the "Interim Order"), pursuant to Sections 105(a), 363(b), 507(a)(4), and 541 of Title 11 of the United States Code, 11 U.S.C. §§ 101–1532 (as amended, the "Bankruptcy Code") and Rule 6003 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"):

---

[1]       The last four digits of the Debtor's federal tax identification number are 2451.

HUNTON ANDREWS KURTH LLP
Riverfront Plaza, East Tower
951 East Byrd Street
Richmond, Virginia 23219
Telephone: (804) 788-8200
Facsimile: (804) 788-8218
Tyler P. Brown (VSB No. 28072)
Jason W. Harbour (VSB No. 68220)

*Proposed Counsel to the Debtor
and Debtor in Possession*

(i) authorizing, but not directing, the Debtor to pay the prepetition wages and salaries of its employees; (ii) authorizing and directing applicable financial institutions to honor and process related checks and transfers; and (iii) granting related relief. In support of this Motion, the Debtor relies on the Declaration of Lori D. Thompson, Esq. in support of the Debtor's Chapter 11 Petitions and Related Motions (the "Thompson Declaration"). In further support of this Motion, the Debtor submits as follows:

### I.     Jurisdiction, Venue and Predicates for Relief

1.      The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334(b). Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409. This matter is a core proceeding within the meaning of 28 U.S.C. §157 (b)(2).

2.      The predicates for the relief requested herein are sections 105(a), 363(b), 507(a)(4), and 541 of the Bankruptcy Code and Bankruptcy Rule 6003.

### II.     Background

3.      On the date hereof (the "Petition Date"), the Debtor filed with the Court its voluntary petition for relief under chapter 11 of the Bankruptcy Code, commencing the above-captioned chapter 11 case. The Debtor continues to operate its businesses and manage its property as a debtor-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

4.      No creditors' committee has been appointed in this case. No trustee or examiner has been appointed.

5.      A full description of the Debtor's business operations, corporate structures, capital structures, and reasons for commencing this case is set forth in full in the Thompson Declaration,

2

which was filed contemporaneously with this Motion and which is incorporated herein by reference.  Additional facts in support of the specific relief sought herein are set forth below.

### III.   Relief Requested

6.      By this Motion, the Debtor seeks entry of interim and final orders (i) authorizing, but not directing, the Debtor to pay or otherwise honor the prepetition wages and salaries (collectively, the "Prepetition Wages") owing to the Debtor's employees (collectively, the "Employees"), along with (a) certain reimbursement of business expenses that were incurred in the ordinary course of business (collectively, the "Reimbursable Expenses") and (b) certain related pre-petition payroll tax and other employee and employer withholding obligations (collectively, the "Withholding Obligations"); (ii) authorizing and directing applicable financial institutions to honor and process related checks and transfers; and (iii) granting related relief.

7.      In total, the Debtor estimates that the aggregate it seeks authority to pay Employees, pursuant to this Motion, related to Prepetition Wages will not exceed $6,011.28. The Debtor estimates that the aggregate Withholding Obligations that it seeks authority to pay to appropriate federal, state and local taxing authorities will not exceed $1,723.48.  The Debtor also estimates that the aggregate Reimbursable Expenses will not exceed $19,660.

8.      By seeking the authorization requested herein, it should not be presumed that the Debtor has determined, as of this time, which of the Prepetition Wages it will pay or honor, nor should any party rely on this Motion as to any specific claim or benefit.

### Prepetition Wages and Withholding Obligations

**A.      Wages and Salaries**

9.      As of the Petition Date, the Debtor has seven current Employees and one former Employee that continues to provide services to the Debtor on a contract basis.  The Debtor has so

3

few employees as a result of a joint partnership entered into with alternative legal service provider ULX Partners, LLC ("ULXP") in June 2018.  The partnership was designed to provide nonlegal operations for law firms.  The Debtor and UXLP subsequently entered into the Master Services Agreement dated April 4, 2008 (the "MSA") by which UXLP agreed to provide administrative support services to the Debtor.  To be clear, the Debtors do not seek authority pursuant to this Motion to pay any amounts that might be owed to ULXP under the MSA.

10.     The Debtor's remaining Employees, however, are essential to the success of the wind-down, including, among other things, collection of accounts receivable and proper handling of client files and other confidential client information.  The Employees' skills, institutional knowledge and understanding of the Debtor's operations and client relations are essential to the effective administration of all aspects of this case.

11.     Prior to the Petition Date, the Debtor terminated its employee benefit plans.  As a result, in order to maintain substantially the same compensation level and facilitate the Employees' purchase of private benefits, including health insurance, the Employees' compensation increased pre-petition by approximately 25%.

12.     Effective August 30, 2019, the Debtor further increased the compensation of six of the Employees by approximately 25% to ensure that their compensation is appropriate given the current demands on their time and their critical importance to the success of the wind-down.  The impact to the Debtor's four-week cash flow forecast from this latter compensation increase is only approximately $8,000.  The impacted Employees are not officers or senior-level employees and the increased compensation is not contingent upon their continued employment with the Debtor.

13.     As of the Petition Date, the outstanding amount owed to the Employees for Prepetition Wages is approximately $6,011.28.  The Prepetition Wages relate to two business days of prepetition work performed by the Employees.  Pursuant to this Motion, the Debtor requests authority to pay the outstanding amounts owed as of the Petition Date for accrued and unpaid wages and salaries.

14.     In addition to Prepetition Wages, the Debtor's Employees also were entitled to receive, among other forms of compensation, Reimbursable Expenses, including expenses for travel, lodging, ground transportation, meals, cell phone costs, relocation expenses, supplies and other business expenses.  Prior to the Petition Date, the Debtor issued checks to current and former Employees for Reimbursable Expenses in the approximate amount of $19,660 that have not been cashed or otherwise negotiated as of the date hereof.  The Debtor also requests authority herein to pay such Reimbursable Expenses owed as of the Petition Date to Employees.

15.     The Debtor does not believe that any of the Employees are owed in excess of the $13,650 cap for wages under section 507(a)(4) of the Bankruptcy Code.

**B.      Withholding Obligations**

16.     The Debtor is required by law to withhold from the Prepetition Wages amounts related to, among other things, federal, state, and local income taxes, and Social Security and Medicare taxes for remittance to the appropriate federal, state, and local taxing authorities.  The Debtor also must contribute a portion of its own funds, based on a percentage of gross payroll, additional amounts for state and federal unemployment insurance.  These amounts are generally processed and forwarded to the appropriate federal, state, or local taxing authority in connection with disbursement of payroll checks to the Employees or otherwise in accordance with applicable state and local taxing authority requirements.

17.     As of the Petition Date, the Debtor believes the only outstanding Withholding Obligation are in the amount of $1,723.48 and relate to the Prepetition Wages.

**C.      Direction to Banks**

18.     Finally, the Debtor seeks an order authorizing and directing all banks to receive, process, honor and pay any and all checks and transfers drawn on the Debtor's payroll and general disbursement accounts related to Prepetition Wages, whether presented before or after the Petition Date, provided that sufficient funds are on deposit in the applicable accounts to cover such payments.

## IV.      Basis for Relief Requested

**A.      Cause Exists to Authorize the Debtor to Pay Prepetition Wages and Withholding Obligations**

19.     Pursuant to sections 507(a)(4), an individual's claims for "wages, salaries, or commissions, including vacation, severance, and sick leave pay" earned within 180 days before the Petition Date is afforded unsecured priority status of $13,650 per employee.

20.     The Debtor believes that the Prepetition Wages constitute priority claims under sections 507(a)(4) of the Bankruptcy Code.  To the extent such Prepetition Wages constitute priority claims, the Debtor is required to pay such claims in full to confirm a chapter 11 plan. *See* 11 U.S.C. § 1129(a)(9)(B).  Thus, granting the relief sought herein would only cause such Employee claims to be paid in the initial stages of these chapter 11 cases, rather than at the plan confirmation stage.

21.     The Debtor further submits that payment of the Prepetition Wages, which do not exceed $13,650 for any Employees, and paying related administrative expenses is necessary and appropriate and is authorized under section 105(a) of the Bankruptcy Code pursuant to the

"necessity of payment" doctrine, which "recognizes the existence of the judicial power to authorize a debtor in a reorganization case to pay pre-petition claims where such payment is essential to the continued operation of the debtor." *In re Ionosphere Clubs, Inc.*, 98 B.R. 174, 176 (Bankr. S.D.N.Y. 1989); *In re Patriot Coal Corporation*, Case No. 15-32450 (KLP) (Bankr. E.D. Va. June 4, 2015); *In re James River Coal Co.*, No. 14-31848 (KRH) (Bankr. E.D. Va. Apr. 10, 2014).

22.     Specifically, section 105(a) of the Bankruptcy Code empowers the Court to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a).  A bankruptcy court's use of its equitable powers to "authorize the payment of pre-petition debt when such payment is needed to facilitate the rehabilitation of the debtor is not a novel concept." *In re Ionosphere Clubs, Inc.*, 98 B.R. at 175.  "Under 11 U.S.C. § 105 the court can permit pre-plan payment of a pre-petition obligation when essential to the continued operation of the debtor." *In re NVR L.P.*, 147 B.R. 126, 127 (Bankr. E.D. Va. 1992) (citing *Ionosphere Clubs*, 98 B.R. at 177).  Furthermore, Bankruptcy Rule 6003 permits the payment of prepetition obligations within the first 21 days of a case where doing so is "necessary to avoid immediate and irreparable harm."

23.     The Debtors also seek authority to pay the Withholding Obligations to the appropriate federal, state and local taxing authorities. These amounts principally represent payroll taxes.  Such amounts are not property of the Debtor's estates because the Debtor has withheld such amounts from the Employees' paychecks on another party's behalf. *See* 11 U.S.C. §§ 541(b)(1), (d).  Furthermore, federal and state laws require the Debtor to withhold these amounts and to pay such amounts to the appropriate taxing authority.  26 U.S.C. §§ 6672, 7501(a); *see also City of Farrell v. Sharon Steel Corp.*, 41 F.3d 92, 95–97 (3d Cir. 1994) (finding

7

that state law requiring a corporate debtor to withhold city income tax from its employees' wages created a trust relationship between debtor and the city for payment of withheld income taxes); *In re DuCharmes & Co.*, 852 F.2d 194, 196 (6th Cir. 1988) (noting that individual officers of a company may be held personally liable for failure to pay trust fund taxes).  Because the Withholding Obligations may not be property of the Debtor's estates, the Debtor requests that the Court authorize them to transmit the Withholding Obligations on account of the Employees to the proper parties in the ordinary course of business.

24.     In a long line of well-established cases, courts have consistently permitted postpetition payment of certain prepetition obligations where necessary to preserve or enhance the value of a debtor's estate for the benefit of all creditors.  *See*, *e.g., Miltenberger v. Logansport Ry.*, 106 U.S. 286, 312 (1882) (payment of pre-receivership claim prior to reorganization permitted to prevent "stoppage of . . . [crucial] business relations"); *Mich. Bureau of Workers' Disability Comp. v. Chateaugay Corp. (In re Chateaugay Corp.)*, 80 B.R. 279, 285-86 (S.D.N.Y. 1987), *appeal dismissed* 838 F.2d 59 (2d Cir. 1988) (approving lower court order authorizing payment of prepetition wages, salaries, expenses and benefits).  Indeed, "a *per se* rule proscribing the payment of pre-petition indebtedness may well be too inflexible to permit the effectuation of the rehabilitative purposes of the Code." *In re Structurlite Plastics Corp.*, 86 B.R. 922, 932 (Bankr. S.D. Ohio 1988).

25.     This "doctrine of necessity" functions in a chapter 11 case as a mechanism by which the bankruptcy court can exercise its equitable power to allow payment of critical prepetition claims not explicitly authorized by the Bankruptcy Code.  *See In re United Am., Inc.*, 327 B.R. 776, 782 (Bankr. E.D. Va. 2005) (acknowledging the doctrine of necessity "because otherwise there will be no reorganization and no creditor will have an opportunity to recoup any

8

part of its pre-petition claim"); *In re Boston & Me. Corp.,* 634 F.2d 1359, 1382 (1st Cir. 1980) (recognizing the existence of a judicial power to authorize trustees to pay claims for goods and services that are indispensably necessary to the Debtor's continued operation).  Several courts apply the doctrine of necessity where payment of a prepetition claim (1) is "necessary for the successful reorganization of the debtor", (2) falls within "the sound business judgment of the debtor" and (3) will not "prejudice other unsecured creditors." *United Am.*, 327 B.R. at 782; *see also In re Universal Fin., Inc.*, 493 B.R. 735, 739–40 (Bankr. M.D. N.C. 2013) (applying the *United American* three-part test); *In re Corner Home Care, Inc.*, 438 B.R. 122, 126 (Bankr. W.D. Ky. 2010) (same).  The doctrine is frequently invoked early in a chapter 11 case, particularly in connection with those chapter 11 sections that relate to payment of prepetition claims.

26.     In addition, section 363(b)(1) of the Bankruptcy Code empowers the Court to allow the debtor to "use, sell, or lease, other than in the ordinary course of business, property of the estate."  11 U.S.C. § 363(b)(1).  A debtor's decisions to use, sell or lease assets outside the ordinary course of business must be based upon a sound business purpose.  *See Comm. of Equity Sec. Holders v. Lionel Corp. (In re Lionel Corp.)*, 722 F.2d 1063, 1070-71 (2d Cir. 1983) (requiring a "good business reason" to approve a sale pursuant to section 363(b)); *In re W.A. Mallory Co.*, 214 B.R. 834, 836 (Bankr. E.D. Va. 1997) ("This Court follows the 'sound business purpose' test when examining § 363(b) sales." (citing *In re WBQ P'ship*, 189 B.R. 97, 102 (Bankr. E.D. Va. 1995))); *see also In re Chateaugay Corp.*, 973 F.2d 141, 143 (2d Cir. 1992) (holding that a judge determining a section 363(b) application must find from the evidence presented before him or her a good business reason to grant such application); *In re Ionosphere Clubs, Inc.*, 100 B.R. 670, 675 (Bankr. S.D.N.Y. 1989) (noting that the standard for determining a section 363(b) motion is "a good business reason").

27.     Indeed, courts in this and other districts have consistently and appropriately been loath to interfere with corporate decisions "unless it is shown that the bankrupt's decision was one taken in bad faith or in gross abuse of the bankrupt's retained business discretion." *Lubrizol Enters., Inc. v. Richmond Metal Finishers, Inc.*, 756 F.2d 1043, 1047 (4th Cir. 1985) (applying the business judgment rule to a debtor's decision to reject an executory contract); *see also Official Comm. of Subordinated Bondholders v. Integrated Res., Inc. (In re Integrated Res., Inc.),* 147 B.R. 650, 656 (S.D.N.Y. 1992), *appeal dismissed,* 3 F.3d 49 (2d Cir. 1993) (internal quotations omitted).

28.     The Debtor submits that the requested relief represents a sound exercise of the Debtor's business judgment, is necessary to avoid immediate and irreparable harm and is justified under sections 105(a) and 363(b) of the Bankruptcy Code and Bankruptcy Rule 6003. This is because any delay in paying the Prepetition Wages and related administrative obligations will adversely impact the Debtor's relationship with its Employees and could irreparably impair its Employees' morale, dedication, confidence and cooperation.  The Employees' support for the Debtor's wind-down efforts in this chapter 11 case is critical to the success of those efforts.  At this early stage, the Debtor simply cannot risk the substantial damage to its business that would inevitably attend any decline in its Employees' efforts attributable to the Debtor's failure to pay the Prepetition Wages.

29.     Absent an order granting the relief requested, the Employees will undoubtedly suffer hardship and, in some instances, financial difficulties, as the amounts in question are needed to enable certain of their Employees to meet their own personal financial obligations. Without the requested relief, the stability of the Debtor will be undermined, perhaps irreparably,

by the possibility that otherwise loyal Employees will seek other employment alternatives. Consequently, all of the Debtor's creditors will benefit if the requested relief is granted.

30.     In the overwhelming majority of chapter 11 cases, courts have approved payment of employee prepetition claims for compensation, withholding obligations, and expense reimbursements similar to those described herein.  *See*, *e.g.*, *In re Alpha Natural Resources, Inc.*, No. 15-33896 (KRH) (Bankr. E.D. Va. Aug. 5, 2015);  *In re James River Coal Co.*, No. 14-31848 (KRH) (Bankr. E.D. Va. Apr. 10, 2014); *In re AMF Bowling Worldwide, Inc.*, Case No. 12-36495 (KRH) (Bankr. E.D. Va. Nov. 14, 2012); *In re Workflow Mgmt., Inc.*, Case No. 10-74617 (SCS) (Bankr. E.D. Va. Oct. 1, 2010); *In re Bear Island Paper Co., L.L.C.*, Case No. 10-31202 (DOT) (Bankr. E.D. Va. Mar. 25, 2010); *In re Movie Gallery, Inc.*, Case No. 10-30696 (DOT) (Bankr. E.D. Va. Feb. 3, 2010).

**B.      Applicable Banks Should be Authorized to Honor and Pay Checks Issued and Make Other Transfers to Pay the Prepetition Employee Obligations**

31.     The Debtor further requests that the Court authorize and direct all of the Debtor's banks to receive, process, honor and pay all prepetition and postpetition checks issued or to be issued, and fund transfers requested or to be requested, by the Debtor for the Prepetition Wages. The Debtor also seeks authority to issue new postpetition checks, or effect new fund transfers, for the Prepetition Wages to replace any prepetition checks or fund transfer requests that may be dishonored or rejected and to reimburse their Employees or the applicable payee, as the case may be, for any fees or costs incurred by them in connection with a dishonored or voided check or funds transfer.

32.     As a result of the commencement of the Debtor's chapter 11 case, and in the absence of an order of the Court providing otherwise, the Debtor's checks, wire transfers and direct deposit transfers for the Prepetition Wages may be dishonored or rejected by the banks.

33.     The Debtor represents that each of these checks or transfers is or will be drawn on the Debtor's payroll and general disbursement accounts and can be readily identified as relating directly to payment of the Prepetition Wages.  Accordingly, the Debtor believes that prepetition checks and transfers other than those for the Prepetition Wages will not be honored inadvertently.

### C.     Request for Final Hearing

34.     The Debtor requests that the Court schedule a final hearing on the Motion.

35.     The Debtor requests that it be authorized to serve a copy of the signed Interim Order, which fixes the time and date for the filing of objections, if any, by first class mail upon the Notice Parties listed below. The Debtor further requests that the Court consider such notice of the final hearing to be sufficient notice.

### V.     Necessity for Immediate Relief

36.     Bankruptcy Rule 6003(b) provides that, "[e]xcept to the extent that relief is necessary to avoid immediate and irreparable harm, the court shall not, within 21 days after the filing of the petition," grant relief upon "a motion to use, sell, lease, or otherwise incur an obligation regarding property of the estate."  Fed. R. Bankr. P. 6003(b).

37.     If the Debtor is not permitted to continue its ordinary business operations by continuing to pay Employees, and to assure its Employees that authority has been granted to honor all such claims, immediate and irreparable harm will result.  Accordingly, the relief requested herein is consistent with Bankruptcy Rule 6003.

### VI.     Request for Waiver of Stay

38.     To implement the foregoing successfully, the Debtor seeks a waiver of the notice requirements under Bankruptcy Rule 6004(a) and the 14-day stay of an order authorizing the use, sale or lease of property under Bankruptcy Rule 6004(h).

### VII.     Notice

39.     The Debtor has served notice of this Motion on (a) the U.S. Trustee; (b) counsel to ABL Alliance, LLLP, (c) ULX Partners, LLC; and (d) those creditors holding the 20 largest unsecured claims against the Debtor's estate.

### VIII.   Waiver of Memorandum of Law

40.     The Debtor respectfully requests that this Court treat this Motion as a written memorandum of points and authorities or waive any requirement that this Motion be accompanied by a written memorandum of points and authorities as described in Local Bankruptcy Rule 9013-1(G).

### IX.     No Previous Request

41.     No previous request for the relief sought herein has been made by the Debtor to this or any other court.

WHEREFORE, the Debtor respectfully requests that the Court grant the relief requested herein and such other and further relief as is just and proper.

DATED: September 3, 2019

Respectfully submitted,

*/s/ Tyler P. Brown*
Tyler P. Brown (VSB No. 28072)
Jason W. Harbour (VSB No. 68220)
HUNTON ANDREWS KURTH LLP
Riverfront Plaza, East Tower
951 East Byrd Street
Richmond, Virginia 23219
Telephone:  (804) 788-8200
Facsimile:   (804) 788-8218
Email: tpbrown@HuntonAK.com
       jharbour@HuntonAK.com

*Proposed Counsel to the Debtor*
*and Debtor in Possession*

# EXHIBIT A

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION**

|  |  |
|---|---|
| **In re:** | |
| | **Chapter 11** |
| **LECLAIRRYAN PLLC,** | **Case No. 19-[    ] (___)** |
| **Debtor.**[1] | |

**INTERIM ORDER (I) AUTHORIZING LECLAIRRYAN PLLC TO PAY
PREPETITION WAGES AND SALARIES; (II) DIRECTING APPLICABLE
FINANCIAL INSTITUTIONS TO HONOR AND PROCESS RELATED
CHECKS AND TRANSFERS; AND (III) GRANTING RELATED RELIEF**

Upon the motion (the "Motion")[2] of LeClairRyan PLLC, the above-captioned debtor and

debtor-in-possession (the "Debtor"), for entry of an order pursuant to sections 105(a), 363(b),

507(a)(4), and 541 of the Bankruptcy Code and Bankruptcy Rule 6003: (i) authorizing, but not

directing, the Debtor to pay Prepetition Wages; (ii) authorizing and directing applicable financial

institutions to honor and process related checks and transfers; and (iii) granting related relief, the

Court finds that: (a) it has jurisdiction over the matters raised in the Motion pursuant to 28

U.S.C. §§ 157 and 1334(b); (b) this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2); (c)

---

[1] The last four digits of the Debtor's federal tax identification number are 2451.

[2] Unless otherwise defined herein, all capitalized terms shall have the meaning ascribed to them in the Motion.

HUNTON ANDREWS KURTH LLP
Riverfront Plaza, East Tower
951 East Byrd Street
Richmond, Virginia 23219
Telephone: (804) 788-8200
Facsimile: (804) 788-8218
Tyler P. Brown (VSB No. 28072)
Jason W. Harbour (VSB No. 68220)

*Proposed Counsel to the Debtor
and Debtor in Possession*

the relief requested in the Motion is in the best interest of the Debtor, its estate and creditors, and is necessary to prevent immediate and irreparable harm; (d) proper and adequate notice of the Motion and the hearing thereon has been given and no other or further notice is necessary; and (e) the record herein after due deliberation thereon, good and sufficient cause exists for the granting of the relief as set forth herein.  Therefore,

IT IS HEREBY ORDERED THAT:

1. The relief requested in the Motion is hereby GRANTED on an interim basis.

2. The Debtor is, authorized, but not required, to pay or cause to be paid, in its sole discretion, all amounts required under or related to the Prepetition Wages that become due prior to the final hearing scheduled on the Motion, including the Withholding Obligations and Reimbursable Expenses.

3. All applicable banks and other financial institutions are hereby authorized and directed to receive, process, honor, and pay any and all checks, drafts, wires, check transfer requests or automated clearing house transfers evidencing amounts paid by the Debtor under this Interim Order whether presented prior to or after the Petition Date to the extent the Debtor has good funds standing to their credit with such bank or other financial institution.  Such banks and financial institutions are authorized to rely on the representations of the Debtor as to which checks are issued or authorized to be paid pursuant to this Interim Order without any duty of further inquiry and without liability for following the Debtor's instructions.

4. Nothing in the Motion or this Interim Order, nor any payments made pursuant to this Interim Order, shall be deemed to be, or constitute, (a) an admission as to the validity or priority of any claim against the Debtor, (b) an assumption or postpetition reaffirmation of any agreement, plan, practice, program, policy, executory contract or unexpired lease pursuant to

2

section 365 of the Bankruptcy Code, (c) a grant of third-party beneficiary status or bestowal of any additional rights on any third party, or (d) a waiver of any rights, claims or defenses of the Debtor.

5.    Nothing in the Motion or this Interim Order shall impair the ability of the Debtor to contest the validity or amount of any payment made pursuant to this Interim Order.

6.    Nothing in the Motion or this Interim Order shall be construed as impairing the Debtor's right to contest the validity or amount of any Prepetition Wages, including payroll taxes that may be due to any taxing authority.

7.    To the extent this Order conflicts with the then applicable order approving the *Motion of LeClairRyan PLLC for Entry of Interim and Final Orders Authorizing the Debtor to Use Cash Collateral and Granting Adequate Protection and Related Relief* [ECF __] (any such order, the "Cash Collateral Order"), the Cash Collateral Order shall govern and control.

8.    Any payment made pursuant to this Order must be in compliance with the Cash Collateral Order.

9.    The Debtor is authorized and empowered to take all actions necessary to implement the relief granted in this Interim Order.

10.    The final hearing on the Motion is scheduled on _____, 2019, at _____ (prevailing Eastern Time) before this Court (the "Final Hearing").

11.    Within three business days of the entry of this Interim Order, the Debtor shall serve a copy of this Interim Order, thereby providing notice of the Final Hearing, on (a) the U.S. Trustee; (b) counsel for the Lender; (c) ULX Partners, LLC; and (d) those creditors holding the 20 largest unsecured claims against the Debtor's estate.

12.	Any objection to the relief requested in the Motion on a permanent basis must, by 4:00 p.m. (prevailing Eastern Time) on _____ (the "Objection Deadline"), be: (a) filed with the Court; and (b) actually received by: (i) the Office of the U.S. Trustee, 701 East Broad Street, Suite 4304, Richmond, Virginia 23219, Attn: Robert B. Van Arsdale, Esq.; (ii) proposed counsel to the Debtor, Hunton Andrews Kurth LLP, Riverfront Plaza, East Tower, 951 East Byrd Street, Richmond, Virginia 23219, Attn: Tyler P. Brown, Esq., email: tpbrown@hunton.com; (iii) counsel for the Lender McGuireWoods LLP, Gateway Plaza, 800 East Canal Street, Richmond, VA 23219-3916, Attn: Douglas M. Foley, Esq., Sarah B. Boehm, Esq., Shawn R. Fox, Esq., email: dfoley@mcguirewoods.com, sboehm@mcguirewoods.com, sfox@mcguirewoods.com; and (iv) the attorneys for any official committee of unsecured creditors, if then appointed in these cases, on or before the Objection Deadline.

13.	A reply to any timely filed and served Objection may be filed with the Court and served on or before 12:00 p.m. (prevailing Eastern Time) on the day that is at least one business day before the Final Hearing.

14.	If no Objections are timely filed and served as set forth herein, the Debtor shall, on or after the Objection Deadline, submit to the Court a final order substantially in the form of this Interim Order, which order shall be submitted and may be entered with no further notice or opportunity to be heard afforded any party, and the Motion shall be approved, on a final basis, retroactive to the date of the commencement of these chapter 11 cases.

15.	The contents of the Motion and the notice procedures set forth herein are good and sufficient notice and satisfy Bankruptcy Rules 9014 by providing parties with notice and an opportunity to object and be heard at a hearing.

16.     The requirement under Local Bankruptcy Rule 9013-1(G) to file a memorandum of law in connection with the Motion is hereby waived.

17.     Notwithstanding any Bankruptcy Rule (including, but not limited to, Bankruptcy Rule 6004(h)) or Local Bankruptcy Rule of the Eastern District of Virginia that might otherwise delay the effectiveness of this Order, the terms and conditions of this Order shall be immediately effective and enforceable upon its entry.

18.     The requirements of Bankruptcy Rule 6003 are satisfied.

19.     This Court shall retain exclusive jurisdiction over any and all matters arising from or related to the implementation or interpretation of this Interim Order.

Richmond, Virginia

Dated:_____, 2019

_____
UNITED STATES BANKRUPTCY JUDGE


Entered on Docket: _____

5

WE ASK FOR THIS:

*/s/ Tyler P. Brown*
Tyler P. Brown (VSB No. 28072)
Jason W. Harbour (VSB No. 68220)
HUNTON ANDREWS KURTH LLP
Riverfront Plaza, East Tower
951 East Byrd Street
Richmond, VA 23219
Tel:  (804) 788-8200
Fax:  (804) 788-8218
Email: tpbrown@HuntonAK.com
        jharbour@HuntonAK.com

*Proposed Counsel to the Debtor*
*and Debtor in Possession*

## CERTIFICATION OF ENDORSEMENT
## UNDER LOCAL BANKRUPTCY RULE 9022-1(C)

I hereby certify that the foregoing proposed order has been endorsed by or served upon all necessary parties.

*/s/ Tyler P. Brown*

6

045890.0000005 EMF_US 75702791v5