# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
### RICHMOND DIVISION

In re:

**LECLAIRRYAN PLLC,**

Debtor.[1]

**Chapter 11**

**Case No. 19-[    ] (___)**

## OMNIBUS MOTION OF LECLAIRRYAN PLLC FOR ENTRY
## OF INTERIM AND FINAL ORDERS AUTHORIZING THE
## DEBTOR TO ASSUME CERTAIN EXECUTORY CONTRACTS

### Bankruptcy Rule 6006 Notice to Executory Contract Counter-Parties

**Pursuant to Bankruptcy Rule 6006, parties receiving this Motion should locate their respective names and executory contracts listed herein.**

LeClairRyan PLLC, the above-captioned debtor and debtor-in-possession ("LeClairRyan" or the "Debtor"), by its undersigned counsel, hereby moves (the "Motion") this Court for entry of interim and final orders, each substantially in the form attached hereto as Exhibit A (the "Interim Order"), pursuant to sections 365 and 105(a) of Title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (as amended, the "Bankruptcy Code"), authorizing the Debtor to assume the three (3) executory contracts (collectively, the "Agreements") listed on

---

[1]    The last four digits of the Debtor's federal tax identification number are 2451.

HUNTON ANDREWS KURTH LLP
Riverfront Plaza, East Tower
951 East Byrd Street
Richmond, Virginia 23219
Telephone: (804) 788-8200
Facsimile: (804) 788-8218
Tyler P. Brown (VSB No. 28072)
Jason W. Harbour (VSB No. 68220)

*Proposed Counsel to the Debtor*
*and Debtor in Possession*

Exhibit 1 to the Proposed Order.  In support of this Motion, the Debtor relies on the Declaration of Lori D. Thompson, Esq. in support of Chapter 11 Petition and First Day Motions (the "Thompson Declaration").  In further support of this Motion, the Debtor submits as follows:

## I.    Jurisdiction, Venue, and Predicates for Relief

1.    The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 28 U.S.C. § 1334(b).  Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.  This matter is a core proceeding within the meaning of 28 U.S.C. §157(b)(2)(A).

2.    The statutory predicates for the relief requested herein are sections 105 and 365 of the Bankruptcy Code.

## II.    Background

**A.    Chapter 11 Cases**

3.    On the date hereof (the "Petition Date"), the Debtor filed with the Court its voluntary petition for relief under chapter 11 of the Bankruptcy Code, commencing the above-captioned chapter 11 case.  The Debtor continues to operate its businesses and manage its property as a debtor-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

4.    No creditors' committee has been appointed in this case.  No trustee or examiner has been appointed.

5.    A full description of the Debtor's business operations, corporate structures, capital structures, and reasons for commencing this case is set forth in full in the Thompson Declaration, which was filed contemporaneously with this Motion and which is incorporated herein by reference.  Additional facts in support of the specific relief sought herein are set forth below.

**B.      The Agreements**

6.      The Agreements the Debtor seeks to assume in this Motion include (i) the Services Agreement, dated as of August 20, 2019 (the "Thompson Services Agreement"), by and between the Debtor and Lori D. Thompson, Esq. ("Ms. Thompson"), (ii) the Services Agreement, dated as of August 27, 2019 (the "Lange Services Agreement"), by and between the Debtor and Christopher J. Lange, Esq. ("Mr. Lange"), and (iii) the Receivables Liquidation Agreement, dated as of October 1, 2018 (as amended by Amendment No. 1 to Receivables Liquidation Agreement, dated as of March 1, 2019, and Amendment No. 2 to Receivables Liquidation Agreement, dated as of August 12, 2019, the "RLA"), by and between the Debtor and On-Site Associates, LLC ("On-Site").   The Debtor submits that each Agreement is critical and necessary to the Debtor's ability to effectuate a wind-down of its estate and maximize value for creditors and other parties-in-interest.

*i.      The Services Agreements*

7.      On July 29, 2019, the members of LeClairRyan determined that an orderly wind-down of the firm was in the best interests of clients, creditors and employees and voted to approve such a wind-down through the dissolution committee (the "Dissolution Committee").  In connection with such vote, the members of LeClairRyan resolved to appoint the following individuals to the Dissolution Committee: (a) Mr. C. Erik Gustafson, the chief executive officer of LeClairRyan ("Mr. Gustafson"), (b) Ms. Thompson, (c) Mr. Lange, and (d) Richard W. "Deke" Bowerman, Esq.  ("Mr. Bowerman").  Mr. Bowerman and Mr. Gustafson have since resigned from the Dissolution Committee.  Mr. Gustafson, however, resigned after approving the commencement of this chapter 11 case, and negotiating the Services Agreements.

8.     Ms. Thompson was a shareholder of LeClairRyan from 2010 until March 8, 2018, when it converted from a professional corporation to a professional limited liability company. She then was a member of LeClairRyan until August 19, 2019, when she resigned and became a member of the firm of Spilman, Thomas & Battle, PLLC ("Spilman") in order to engage in the full-time practice of law with Spilman.  Prior to LeClairRyan's dissolution, Ms. Thompson served as LeClairRyan's general counsel and office leader of the firm's Roanoke, Virginia office.

9.     Mr. Lange was a shareholder of LeClairRyan from 2000 until its conversion on March 8, 2018, and subsequently was a member of LeClairRyan.  Mr. Lange practiced corporate and securities law in the firm's Richmond, Virginia office.

10.     To ensure that the Debtor and its estate would continue to benefit from Ms. Thompson's and Mr. Lange's involvement in the wind-down, LeClairRyan entered into the Thompson Services Agreement with Ms. Thompson on or about August 20, 2019, and the Lange Services Agreement with Mr. Lange on or about August 27, 2019.

11.     Pursuant to the Thompson Services Agreement, Ms. Thompson agreed to continue to serve as chair of the Dissolution Committee and to perform such other managerial services as LeClairRyan requires, as an independent contractor, in exchange for an hourly fee of $450, which shall be invoiced monthly by, and payable to, Spilman.  As part of the Thompson Services Agreement, LeClairRyan also agreed to, among other things, seek to assume such agreement upon the filing of any chapter 11 case.  The Debtor will owe Ms. Thompson for services performed prior to the Petition Date, when she submits an invoice in due course in September, and the Debtor estimates that such amounts will not exceed $9,000.

4

12.     Under the Thompson Services Agreement, the Debtor provided Ms. Thompson an advance deposit of $15,000 to be held in escrow on behalf of the Debtor for payment of Ms. Thompson's services.

13.     Pursuant to the Lange Services Agreement, Mr. Lange agreed to continue to serve as a member of the Dissolution Committee and to perform such other services as LeClairRyan requires, as an independent contractor, and LeClairRyan agreed to compensate Mr. Lange the amount of $14,000 for services rendered from August 5, 2019, through August 27, 2019.  Mr. Lange has been paid in full for all such amounts as of the Petition Date.   LeClairRyan also agreed to compensate Mr. Lange the amount of $4,900 for each week of services rendered after August 27, 2019, which shall be invoiced monthly by, and payable to, Mr. Lange individually. The Debtor will owe Mr. Lange for services performed prepetition from August 28, 2019 through the Petition Date, when due in September, and the Debtor estimates that such amounts will total $2,000.

14.     Like the Thompson Services Agreement, as part of the Lange Services Agreement, LeClairRyan agreed to, among other things, seek to assume such agreement upon the filing of any chapter 11 case.

15.     Neither Ms. Thompson nor Mr. Lange is being retained to provide legal advice to the Debtor.

16.     The  Debtor believes that the services provided by Ms. Thompson and Mr. Lange are crucial for conducting an efficient liquidation and dissolution of its estate.  Ms. Thompson has the requisite institutional knowledge and experience to chair the Dissolution Committee even though she is now engaged in the full-time practice of law and a member of Spilman.  Further, Mr. Lange's nearly 20 years with LeClairRyan render him uniquely suited to helping the Debtor

5

with its wind-down.  Moreover, continuity in management is paramount to a smooth transition of client matters to successor firms, collection of accounts receivable, and maximization of the return to all creditors and parties in interest.

17.    Accordingly, the Debtor has determined, in its business judgment, that the assumption of both Services Agreements is in the best interests of the Debtor and its estate.

ii.    The RLA

18.    On October 1, 2018, the Debtor and On-Site entered into the RLA pursuant to which On-Site provides assistance in collecting certain of the Debtor's billed and unbilled accounts receivable.  In exchange for its services, On-Site receives commissions based on the cumulative sum of actual collections received by the Debtor.

19.    On August 12, 2019, the Debtor and On-Site entered into Amendment No. 2 to Receivables Liquidation Agreement ("Amendment No. 2"), which, among other things, expanded the receivables On-Site would help the Debtor collect and also revised and reduced the commission rates for commissions earned by On-Site.  Amendment No. 2 also required the Debtor to cause its secured lender, ABL Alliance LLLP (also known as Virginia Commercial Finance ("VCF")) to indemnify On-Site in the event the Debtor fails to timely pay its obligations under the RLA.[2]  As a condition to entering into Amendment No. 2, On-Site required that the Debtor, and the Debtor agreed to, move to assume the RLA on the petition date of any chapter 11 case.

20.    As of the Petition Date, the Debtor is current on its payment obligations to On-Site under the RLA, but will owe On-Site compensation for collection work performed pre-petition when On-Site's invoice is presented for payment in September 2019.  The Debtor

---

[2]    Also on August 12, 2019, VCF and On-Site entered into that certain Indemnity Agreement pursuant to which VCF agreed to indemnify On-Site for all sums earned by On-Site and not paid by the Debtor under the RLA.

6

estimates the pre-petition fees due to On-Site, as of August 27, 2019, total approximately $63,000 above the retainer On-Site is holding.

21.     The Debtor believes that On-Site's services are essential to collect accounts receivable and maximize value for its creditors.

22.     Accordingly, the Debtor has determined, in its business judgment, that the assumption of the RLA and payment of the pre-petition fees, when due, are in the best interests of the Debtor and its estate.

### III.    Relief Requested

23.     By this Motion, Debtor seeks entry of interim and final orders (i) authorizing the Debtor to assume the Agreements, (ii) authorizing the Debtor to pay cure amounts owed under the Agreements (collectively, the "Cure Amounts"), and (iii) granting related relief.

### IV.    Basis for Relief Requested

**A.    Assumption Is Appropriate Where It Is Based on the Proper Exercise of the Debtor's Business Judgment.**

24.     Section 365(a) of the Bankruptcy Code provides that a debtor, "subject to the court's approval, may assume or reject any executory contract or unexpired lease."  11 U.S.C. § 365(a).  Courts routinely approve motions to assume or reject executory contracts or unexpired leases upon a showing that the debtor's decision to take such action will benefit the debtor's estate and is an exercise of sound business judgment. *See NLRB v. Bildisco & Bildisco*, 465 U.S. 513, 523 (1984) (stating that the traditional standard applied by courts under section 365 is "business judgment"); *see also Crystalin, L.L.C. v. Selma Prop., Inc. (In re Crystalin, L.L.C.)*, 293 B.R. 455, 463–64 (B.A.P 8th Cir. 2003) (citing *Orion Pictures Corp. v. Showtime Networks, Inc. (In re Orion Pictures Corp.)*, 4 F.3d 1095, 1099 (2d Cir. 1993)) (stating that section 365 of the Bankruptcy Code "permits the trustee or debtor-in-possession, subject to the approval of the

bankruptcy court, to go through the inventory of executory contracts of the debtor and decide
which ones it would be beneficial to adhere to and which ones it would be beneficial to reject");
*Richmond Leasing Co. v. Capital Bank, N.A.*, 762 F.2d 1303, 1311 (5th Cir. 1985) ("More
exacting scrutiny would slow the administration of the debtor's estate and increase its cost,
interfere with the Bankruptcy Code's provision for private control of administration of the estate,
and threaten the court's ability to control a case impartially."); *In re Gucci*, 193 B.R. 411, 415
(S.D.N.Y. 1996) ("A bankruptcy court reviewing a trustee's decision to assume or reject an
executory contract should apply its 'business judgment' to determine if it would be beneficial or
burdensome to the estate to assume it.").

25.    Courts do not second-guess a debtor's business judgment concerning the
assumption of a lease or executory contract if such assumption will benefit the estate, unless such
a decision is clearly erroneous.  *See Lubrizol Enters., Inc. v. Richmond Metal Finishers, Inc.*, 756
F.2d 1041, 1047 (4th Cir. 1985) (finding a debtor's decision to assume or reject an executory
contract based on its business judgment will generally not be disturbed "unless it is shown that
the bankrupt's decision was one taken in bad faith or in gross abuse of the bankrupt's retained
business discretion"); *In re Circuit City Stores, Inc.*, No. 08-35653, 2010 Bankr. LEXIS 1713, at
*12 (Bankr. E.D. Va. June 9, 2010); *Salem Bank*, 49 B.R. at 576; *see also Four B. Corp. v. Food
Barn Stores, Inc. (In re Food Barn Stores, Inc.)*, 107 F.3d 558, 567 n.16 (8th Cir. 1997) ("Where
the trustee's request is not manifestly unreasonable or made in bad faith, the court should
normally grant approval '[a]s long as [the proposed action] appears to enhance [the] debtor's
estate.'") (alterations in original) (citation omitted); *In re Riodizio, Inc.*, 204 B.R. 417, 424
(Bankr. S.D.N.Y. 1997) ("[A] court will ordinarily defer to the business judgment of the debtor's
management."); *Westbury Real Estate Ventures, Inc. v. Bradlees, Inc. (In re Bradlees Stores,*

*Inc.)*, 194 B.R. 555, 558 n.1 ("In reviewing a debtor's decision to assume or reject an executory contract, the court must examine the contract and circumstances and apply its best 'business judgment' to determine if the assumption or rejection would be beneficial or burdensome to the estate.") (citations omitted).

26.     The Debtor has determined in its reasoned business judgment that assumption of the Agreements is appropriate and will benefit the Debtor's estate.   The assumption of the Agreements is an appropriate exercise of the Debtor's business judgment based upon all of the information available to the Debtor.   Specifically, the Debtor has examined the terms and evaluated the potential economic impact of assuming the Agreements.

27.     In particular, the Debtor has determined that the services provided under the Agreements are necessary to its liquidation and dissolution and beneficial to its creditors.

28.     For these reasons, the Debtor believes that the assumption of the Agreements is proper under the circumstances, is a sound exercise of the Debtor's business judgment, will benefit the Debtor's estate, and this decision is not clearly erroneous.

**B.     To the Extent that Heightened Scrutiny Applies to the Assumption of the Services Agreements, the Debtor Has Satisfied the Inherent Fairness Standard.**

29.     Some courts have suggested that a debtor's assumption of an executory contract or unexpired lease with an insider counterparty may be subject to heightened scrutiny.  *See, e.g., In re Innkeepers USA Tr.*, 442 B.R. 227 (Bankr. S.D.N.Y. 2010) (suggesting, but not deciding, that the entire fairness standard may apply to the assumption of a plan support agreement with a related party); *see also In re Bidermann Indus. U.S.A., Inc.*, 203 B.R. 547, 551 (Bankr. S.D.N.Y. 1997) (noting in the context of the debtor's sale of assets to a fiduciary that insider transactions are not *per se* prohibited, but they "are necessarily subjected to heightened scrutiny because they are rife with the possibility of abuse"); *Virginia Broadband, LLC v. Manuel (In re Virginia*

9

*Broadband, LLC)*, 538 B.R. 253, 261 (W.D. Va. 2015) ("An insider's dealings with a bankruptcy company are ordinarily subject to strict scrutiny . . . [which] requires that the insider show inherent fairness and good faith of the challenged transaction.").

30.     Other courts, however, have questioned whether heightened scrutiny applies to a debtor's assumption of executory contracts or unexpired leases with insiders.  *See, e.g., SBA v. XACT Telesolutions, Inc. (In re XACT Telesolutions, Inc.)*, No. DKC 2005-1230, 2006 U.S. Dist. LEXIS 621, at *11-12 (D. Md. 2006) ("The law is unsettled as to whether a bankruptcy court must apply heightened scrutiny to transactions that involve a fiduciary or insider."); *Westship, Inc. v. Trident Shipworks, Inc. (In re Trident Shipworks, Inc.)*, 247 B.R. 856, 865 (M.D. Fla. 2000) (noting that because *Bidermann* involved the sale of assets rather than the assumption of a lease, "it is not even clear that the law requires heightened scrutiny" when examining the assumption of a lease with an insider).  Further, as the Court noted in *Trident Shipworks*, the cases employing heightened scrutiny:

> involved the purchase of debtor assets by fiduciaries pursuant to section 363, not the assumption or rejection of leases under section 365.  In these cases, the courts required the parties to have acted in 'good faith.' They examined the conduct of the parties to determine if there was 'fraud, collusion . . . or an attempt to take grossly unfair advantage of other bidders.'  For all intents and purposes, if misconduct were present, the transaction was not a sound business decision and the parties failed to meet even the low threshold of the business judgment rule.

*Trident Shipworks*, 247 B.R. at 866.

31.     While the Debtor believes that the business judgment standard applies to the assumption of the Services Agreements, to the extent that heightened scrutiny applies to the assumption of their Services Agreements, the Debtor's assumption of such Agreements nevertheless is appropriate because the Services Agreements are inherently fair, and the parties entered into such Agreements in good faith.  The Services Agreements were negotiated at arms'-

length by the other two members of the Dissolution Committee and the counter-party.  Further,

because of their institutional knowledge, Ms. Thompson and Mr. Lange are uniquely suited to

assist the Debtor in its wind-down.  Finally, there is no indication of any misconduct, such as

fraud, collusion, or an attempt to get an unfair advantage, by either counterparty.  Accordingly,

even if heightened scrutiny applies to the assumption of the Services Agreements, the Debtor

submits that assumption is appropriate because the Services Agreements are inherently fair and

were entered into in good faith.

**C.**    **The Debtor Has Provided Adequate Assurances of Future Performance.**

32.    The Debtor submits that it will have sufficient cash reserves to pay the Cure

Amounts and meet future obligations under the Agreements.  Contemporaneously with this

Motion, the Debtor filed the *Motion of LeClairRyan PLLC for Entry of Interim and Final Orders*

*Authorizing the Debtor to Use Cash Collateral and Granting Adequate Protection and Related*

*Relief* (the "Cash Collateral Motion").  Upon approval of the Cash Collateral Motion, the Debtor

will be able to use cash collateral to meet its obligations to effectuate the wind-down, including

under the Agreements.

**V.**    **Interim Order**

33.    The Debtor initially seeks the relief requested in this Motion substantially in the

form of the Interim Order.  Within three business days of the entry of the Interim Order, the

Debtor will serve a copy of the Interim Order and this Motion on (a) the Office of the United

States Trustee for the Eastern District of Virginia (the "U.S. Trustee"), (b) counsel to ABL

Alliance, LLLP, (c) ULX Partners, LLC; and (d) those creditors holding the 20 largest unsecured

claims against the Debtor's estate.

34.    The Debtor requests that the deadline to file an objection ("Objection") to the Motion shall be set as 4:00 p.m. (prevailing Eastern Time) on a date established by the Court that is at least seven calendar days prior to the hearing scheduled by the Court with respect to the relief sought herein on a final basis (the "Objection Deadline").   An Objection shall be considered timely only if, on or prior to the Objection Deadline, it is (a) filed with the Court and (b) served upon and actually received by (i) the U.S. Trustee, the Office of the United States Trustee for the Eastern District of Virginia, 701 East Broad Street, Suite 4304, Richmond, Virginia 23219, Attn: Robert Van Arsdale, email: USTPRegion04.RH.ECF@usdoj.gov; (ii) proposed counsel to the Debtor, Hunton Andrews Kurth LLP, Riverfront Plaza, East Tower, 951 East Byrd Street, Richmond, Virginia 23219, Attn: Tyler P. Brown, email: tpbrown@hunton.com; and (iii) the attorneys for any official committee of unsecured creditors, if then appointed in these cases, on or before the Objection Deadline.

35.    The Debtor requests authority, unless otherwise ordered by the Court, to file and serve a reply to any Objection with the Court on or before 12:00 p.m. (prevailing Eastern Time) on the day that is at least one business day before the scheduled hearing date.

36.    The Debtor also request authority, if no Objections are timely filed and served as set forth herein, on or after the Objection Deadline, to submit to the Court a final order substantially in the form of the Interim Order granting the relief requested herein on a final basis, which order shall be submitted and may be entered with no hearing and no further notice or opportunity to be heard afforded to any party.  If an Objection is timely filed, a hearing will be held at a date and time to be established by the Court.

37.    The foregoing notice procedures satisfy Bankruptcy Rule 9014 by providing the counterparties with notice and an opportunity to object and be heard at a hearing.  *See, e.g.*, *In re*

*Drexel Burnham Lambert*, 160 B.R. 729, 734 (S.D.N.Y. 1993) (an opportunity to present objections satisfies due process); *In re Colorado Mountain Cellars, Inc.*, 226 B.R. 244, 246 (D. Colo. 1998) (a hearing is not required to satisfy Bankruptcy Rule 9014).  Furthermore, the proposed notice procedures protect the due process rights of the parties in interest without unnecessarily exposing the Debtor's estate to unwarranted administrative expenses.

## VI.    Necessity for Immediate Relief

38.     Bankruptcy Rule 6003 provides that "[e]xcept to the extent that relief is necessary to avoid immediate and irreparable harm, the court shall not, within 21 days after the filing of the petition, issue an order granting . . . (b) a motion to use, sell, lease, or otherwise incur an obligation regarding property of the estate, including a motion to pay all or part of a claim that arose before the filing of the petition . . . ."   If the Debtor is not authorized to assume the Agreements, Ms. Thompson, Mr. Lange, and On-Site may not continue to assist with the wind-down and collection of accounts receivable, and immediate and irreparable harm could result. Accordingly, the relief requested herein is consistent with Bankruptcy Rule 6003.

## VII.    Request for Waiver of Stay

39.     To implement the foregoing successfully, the Debtor seeks a waiver of the notice requirements under Bankruptcy Rule 6004(a) and the 14-day stay of an order authorizing the use, sale or lease of property under Bankruptcy Rule 6004(h).

## VIII.    Notice

40.     The Debtor has served notice of this Motion on (a) the U.S. Trustee; (b) counsel to ABL Alliance, LLLP; (c) ULX Partners, LLC; (d) those creditors holding the 20 largest unsecured claims against the Debtor's bankruptcy estate; and (e) each of the counterparties to the Agreements.

13

## IX.    No Prior Request

41.    No prior request for the relief requested herein has been made to this or any other

court.

WHEREFORE, the Debtor respectfully requests that the Court grant the relief requested

herein and such other and further relief as is just and proper.

DATED: September 3, 2019

Respectfully submitted,

*/s/ Tyler P. Brown*
Tyler P. Brown (VSB No. 28072)
Jason W. Harbour (VSB No. 68220)
HUNTON ANDREWS KURTH LLP
Riverfront Plaza, East Tower
951 East Byrd Street
Richmond, Virginia 23219
Telephone:  (804) 788-8200
Facsimile:   (804) 788-8218
Email: tpbrown@HuntonAK.com
      jharbour@HuntonAK.com

*Proposed Counsel to the Debtor*
*and Debtor in Possession*

## **EXHIBIT A**

**Proposed Interim Order**

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION**

|  |  |
|---|---|
| In re: | Chapter 11 |
| **LECLAIRRYAN PLLC,** | **Case No. 19-**[    ] (___) |
| **Debtor.**[1] |  |

**INTERIM ORDER AUTHORIZING LECLAIRRYAN PLLC
TO ASSUME CERTAIN EXECUTORY CONTRACTS**

Upon the motion (the "Motion")[2] of LeClairRyan PLLC, the above-captioned debtor and debtor-in-possession ("LeClairRyan" or the "Debtor") for entry of an order, pursuant to sections 365 and 105(a) of the Bankruptcy Code, authorizing the Debtor to assume the three (3) executory contracts (together, the "Agreements") listed on Exhibit 1 annexed hereto; the Court finds that: (a) it has jurisdiction to consider the Motion and the relief requested therein pursuant to 28 U.S.C. §§ 157 and 1334; (b) this is a core proceeding pursuant to 28 U.S.C. § 157(b); (c) venue is proper before this court pursuant to 28 U.S.C. §§ 1408 and 1409; (d) the relief requested in the Motion is in the best interests of the Debtor, its estates, and creditors; (e) the Debtor has exercised its sound business judgment in determining to assume the Agreements; (f) proper and

---

[1]    The last four digits of the Debtor's federal tax identification number are 2451.

[2]    Unless otherwise defined herein, each capitalized term shall have the meaning ascribed to it in the Motion.

HUNTON ANDREWS KURTH LLP
Riverfront Plaza, East Tower
951 East Byrd Street
Richmond, Virginia 23219
Telephone: (804) 788-8200
Facsimile: (804) 788-8218
Tyler P. Brown (VSB No. 28072)
Jason W. Harbour (VSB No. 68220)

*Proposed Counsel to the Debtor
and Debtor in Possession*

adequate notice of the Motion and the hearing thereon has been given, and no other or further

notice is necessary; (g) the Debtor has provided Ms. Thompson, Mr. Lange, and On-Site with

adequate assurance of prompt cure of defaults, if any, and future performance, and has satisfied

the requirements of section 365 of the Bankruptcy Code; and (h) upon the record herein, and

after due deliberation thereon, good and sufficient cause exists for the granting of the relief as set

forth herein.  Therefore,

**IT IS HEREBY ORDERED THAT:**

1.      The relief requested in the Motion is hereby **GRANTED** on an interim basis.

2.      Pursuant to section 365(a) of the Bankruptcy Code, the Debtor is authorized to

assume the Agreements.

3.      The assumption of any of the Agreements includes any modifications,

amendments, supplements, or any other ancillary documents related thereto.

4.      The Debtor is authorized to pay the Cure Amounts owed and when due under the

Agreements.

5.      Any payment made pursuant to this Order must be in compliance with the then

applicable order approving the *Motion of LeClairRyan PLLC for Entry of Interim and Final

Orders Authorizing the Debtor to Use Cash Collateral and Granting Adequate Protection and

Related Relief* [ECF __].

6.      Within three business days of the entry of this Interim Order, the Debtor shall

serve a copy of this Interim Order and the Motion on (a) the U.S. Trustee; (b) counsel to ABL

Alliance, LLLP; (c) ULX Partners, LLC; (d) those creditors holding the 20 largest unsecured

claims against the Debtor's bankruptcy estate; and (e) each of the counterparties to the

Agreements.

2

7.      Any objection to the relief requested in the Motion on a permanent basis must, by 4:00 p.m. (prevailing Eastern Time) on _____ (the "Objection Deadline"), be: (a) filed with the Court; and (b) actually received by: (i) the Office of the U.S. Trustee, 701 East Broad Street, Suite 4304, Richmond, Virginia 23219 Attn: Robert B. Van Arsdale, Esq.; (ii) proposed counsel to the Debtor, Hunton Andrews Kurth LLP, Riverfront Plaza, East Tower, 951 East Byrd Street, Richmond, Virginia 23219, Attn: Tyler P. Brown, email: tpbrown@hunton.com; and (iii) the attorneys for any official committee of unsecured creditors, if then appointed in these cases, on or before the Objection Deadline.

8.      A reply to any timely filed and served Objection may be filed with the Court and served on or before 12:00 p.m. (prevailing Eastern Time) on the day that is at least one business day before the Final Hearing.

9.      If a timely objection is received there shall be a hearing held on _____, 2019, at _____ (prevailing Eastern Time) to consider such timely objection to the Motion.

10.     If no Objections are timely filed and served as set forth herein, the Debtor shall, on or after the Objection Deadline, submit to the Court a final order substantially in the form of this Interim Order, which order shall be submitted and may be entered with no further notice or opportunity to be heard afforded any party, and the Motion shall be approved, on a final basis, retroactive to the date of the commencement of these chapter 11 cases.

11.     The contents of the Motion and the notice procedures set forth herein are good and sufficient notice and satisfy Bankruptcy Rules 4001 and 9014 by providing parties with notice and an opportunity to object and be heard at a hearing.

12.     The requirement under Local Bankruptcy Rule 9013-1(G) to file a memorandum of law in connection with the Motion is hereby waived.

13.     The requirements of Bankruptcy Rule 6003 are satisfied.

14.     Notwithstanding any Bankruptcy Rule (including, but not limited to, Bankruptcy Rule 6004(h)) or Local Bankruptcy Rule that might otherwise delay the effectiveness of this Interim Order, the terms and conditions of this Interim Order shall be immediately effective and enforceable upon its entry

15.     The Debtor is authorized to take all actions necessary to effectuate the relief granted pursuant to this Interim Order in accordance with the Motion.

16.     This Court shall retain exclusive jurisdiction over any and all matters arising from or related to the implementation or interpretation of this Interim Order.

Dated: _____          _____
                                        United States Bankruptcy Judge

4

WE ASK FOR THIS:

*/s/ Tyler P. Brown*
Tyler P. Brown (VSB No. 28072)
Jason W. Harbour (VSB No. 68220)
HUNTON ANDREWS KURTH LLP
Riverfront Plaza, East Tower
951 East Byrd Street
Richmond, VA 23219
Tel:  (804) 788-8200
Fax:  (804) 788-8218
Email: tpbrown@HuntonAK.com
         jharbour@HuntonAK.com


*Proposed Counsel to the Debtor*
*and Debtor in Possession*


## CERTIFICATION OF ENDORSEMENT
## UNDER LOCAL BANKRUPTCY RULE 9022-1(C)


     I hereby certify that the foregoing proposed order has been endorsed by or served upon all necessary parties.

*/s/ Tyler P. Brown*

**Exhibit 1**

| Name of Non-Debtor Counter-Parties to Agreement and Mailing Address | Description of Agreement |
|---|---|
| **Christopher J. Lange, Esq.**<br><br>5615 Riverside Drive<br>Richmond, Virginia 23225 | Services Agreement dated August 27, 2019 |
| **Lori D. Thompson, Esq.**<br><br>Spilman, Thomas & Battle, PLLC<br>310 First Street, SW, Suite 1100,<br>Roanoke, Virginia 24011<br>Attn: Lori D. Thompson, Esq. | Services Agreement dated August 20, 2019 |
| **On-Site Associates, LLC**<br><br>On-Site Associates, LLC<br>505 Montgomery St., Floor 11,<br>San Francisco, California 94111 | Receivables Liquidation Agreement dated October 1, 2018, and Amendment Nos. 1 and 2 thereto |