## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
## RICHMOND DIVISION

In re:

**LECLAIRRYAN PLLC,**

Debtor.[1]

Chapter 11

Case No. 19-[    ] (___)

## MOTION OF LECLAIR RYAN PLLC FOR ENTRY OF INTERIM AND FINAL ORDERS AUTHORIZING THE DEBTOR TO USE CASH COLLATERAL AND GRANTING ADEQUATE PROTECTION AND RELATED RELIEF

LeClairRyan PLLC, the above-captioned debtor and debtor-in-possession ("LeClairRyan" or the "Debtor"), by its undersigned proposed counsel, hereby moves (the "Motion") the Court for entry of an interim order substantially in the form attached hereto as Exhibit A (the "Interim Order") and a substantially similar final order (the "Final Order" and together with the Interim Order, the "Cash Collateral Orders"), pursuant to sections 105, 361, and 363 of Title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (as amended, the "Bankruptcy Code") and Rule 4001 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") authorizing the Debtor to use cash collateral, determining that the Lender

---

[1]        The last four digits of the Debtor's federal tax identification number are 2451.

HUNTON ANDREWS KURTH LLP
Riverfront Plaza, East Tower
951 East Byrd Street
Richmond, Virginia 23219
Telephone: (804) 788-8200
Facsimile: (804) 788-8218
Tyler P. Brown (VSB No. 28072)
Jason W. Harbour (VSB No. 68220)

*Proposed Counsel to the Debtor*
*and Debtor in Possession*

and ULXP (each as defined below) are adequately protected, and granting related relief.   In support of the Motion, the Debtor relies on the Declaration of Lori D. Thompson, Esq. in support of the Chapter 11 Petition and Related Motions (the "Thompson Declaration"), and the Declaration of Guy A. Davis in Support of the Motion of LeClairRyan, PLLC for Entry of Interim and Final Orders Authorizing the Debtor to Use Cash Collateral and Granting Adequate Protection and Related Relief (the "Davis Declaration").   In further support of the Motion, the Debtor submits as follows:

## I.      Preliminary Statement

1.      To address its working capital needs, including without limitation to enable to Debtor to protect and transition client files, to maximize the recovery to creditors, and to fund an orderly liquidation, the Debtor requires immediate authorization to use cash collateral.   The Debtor's ability to immediately use cash collateral also is critical to reassure its employees, vendors, and other constituencies that the Debtor will be in a position to meet its obligations during the pendency of this case.   Absent immediate access to cash collateral, the Debtor almost certainly will experience substantial disruptions and, moreover, its ability to effectuate an orderly wind down of its operations and a smooth transition of client matters to successor firms, and to maximize the return to creditors, will be damaged irreparably to the direct detriment of all creditors and parties in interest.

2.      In accordance with Bankruptcy Rule 4001, the following is a concise statement and summary of the proposed material provisions regarding the Debtor's proposed use of cash collateral.[2]

---

[2]      This summary is qualified in all respects by reference to the Interim Order and to the extent of any inconsistency between the Motion and the Interim Order, the Interim Order shall govern.

| Material Terms | Summary of Material Terms[3] |
|---|---|
| **Parties with Interest in Cash Collateral**<br><br>**FRBP 4001(b)(1)(B)(i)** | ABL Alliance, LLLP (the "<u>Lender</u>") and ULX Partners, LLC ("<u>ULXP</u>"). <u>See</u> Interim Order at Introduction. |
| **Purpose and Use of Cash Collateral and Material Terms**<br><br>**FRBP 4001(b)(1)(B)(ii), (iii)** | The Debtor will use the cash collateral, in accordance with the Budget attached hereto as <u>Exhibit B</u>, to operate its business and effectuate an orderly wind down. <u>See</u> Interim Order at ¶ 2. |
| **Adequate Protection Obligations**<br><br>**FRBP 4001(b)(1)(B)(iv)** | The Debtor shall grant the Lender as security to the extent of the diminution in the value of the Lender's Collateral, a valid, perfected, and enforceable security interest (the "<u>Lender's Replacement Lien</u>") in and upon the Lender's Collateral (i) to the extent of any diminution in the Lender's Collateral, and (ii) to the same extent, nature, and priority held by the Lender as of the Petition Date. <u>See</u> Interim Order at ¶ 3. In addition, to the extent funds are available in accordance with the waterfall set forth in the Budget, the Debtor shall make payments to the Lender to curtail the Lender's claims for principal, interest, and expenses. <u>See</u> Interim Order at ¶ 6. Further, if the Replacement Liens and the curtailment payments are insufficient to protect the Lender against any diminution in value of the Lender's Collateral, then the Lender shall have an allowable administrative expense claim under Bankruptcy Code sections 507(b) and 503(b) having priority over all other costs and expenses of administration of any kind (a "<u>Superpriority Claim</u>"), provided that the Debtor reserves all rights to object to the allowance of any such Superpriority Claim. <u>See</u> Interim Order at ¶ 7<br>The Debtor also shall grant ULXP as security to the extent of the diminution in the value of the cash collateral, a valid, perfected, and enforceable security interest (the "<u>ULXP Replacement Liens</u>"; and together with the Lender Replacement Liens, the "<u>Replacement Liens</u>") in and upon the cash collateral (i) to the extent of any diminution in the cash collateral, and (ii) to the same extent, nature, and priority held by the ULXP as of the Petition Date. <u>See</u> Interim Order at ¶ 4. |

---

[3] Except as otherwise defined in the Motion, all capitalized terms used in the Motion (including in this Summary of Material Terms) have the meaning ascribed to them in the Interim Order, with any inconsistencies resolved by reference to the Interim Order.

## II.      Jurisdiction, Venue, and Predicates for Relief

3.      The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 28 U.S.C. § 1334(b).  Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.  This matter is a core proceeding within the meaning of 28 U.S.C. §157 (b)(2).

4.      The predicates for the relief requested herein are sections 105, 361, and 363 of the Bankruptcy Code and Bankruptcy Rule 4001.

## III.      Background

### A.      Chapter 11 Case

5.      On the date hereof (the "Petition Date"), the Debtor filed with the Court its voluntary petition for relief under chapter 11 of the Bankruptcy Code, commencing the above-captioned chapter 11 case.  The Debtor continues to operate its business and manage its property as a debtor-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

6.      No creditors' committee has been appointed in this case.  No trustee or examiner has been appointed.

7.      A full description of the Debtor's business operations, corporate structures, capital structures, and reasons for commencing this case is set forth in full in the Thompson Declaration, which was filed contemporaneously with the Motion and which is incorporated herein by reference.  The Davis Declaration, which is incorporated herein by reference, also contains information in support of the relief requested herein.  Additional facts in support of the specific relief sought herein are set forth below.

### B.      Pre-Petition Secured Obligations

8.      On or about December 29, 2017, LeClairRyan entered into that certain Loan and Security Agreement (as amended, supplemented, modified or restated from time to time, the

4

"Loan Agreement") with the Lender. Pursuant to the Loan Agreement, the Lender provided a revolving loan to LeClairRyan in the amount of $15,000,000 (the "ABL Loan").

9.    On or about July 16, 2019, the Lender sent a Notice of Default and Demand to Cure to the Debtor (the "Notice of Default"). On or about July 19, 2019, the Debtor and the Lender entered into a letter agreement that purported to grant rights to the Lender concerning the Debtor's cash, accounts receivable, and related property (the "Letter Agreement"). Subsequently, the Lender took actions pursuant to the Letter Agreement to pay down the amount owed on the ABL Loan. Specifically, the amount outstanding on the ABL Loan as of July 19, 2019, was approximately $9.8 million. Upon information and belief, the amount outstanding on the ABL Loan as of the Petition Date is approximately $6.8 million.

10.    The Lender asserts that, pursuant to the Loan Agreement, the ABL Loan is secured by a first priority lien in LeClairRyan's personal property, including LeClairRyan's accounts receivable and other rights of payment.

11.    On or about December 20, 2018, LeClairRyan entered into an Outstanding Deferred Loan Promissory Note (the "ULXP Note") by which LeClairRyan agreed to pay ULXP the principal amount of $8,000,000 for deferred fees owed by LeClairRyan to ULXP under that Master Service Agreement dated as of April 4, 2018 (the "MSA"). Pursuant to the MSA, ULXP agreed to provide administrative support services to LeClairRyan. Upon information and belief, the amount outstanding on the ULXP Note as of the Petition Date remains $8,000,000, plus interest.

12.    ULXP asserts that pursuant to that certain Security Agreement by LeClairRyan in favor of ULXP, dated April 2, 2019 (the "ULXP Security Agreement"), ULXP has a second priority lien in LeClairRyan's personal property, including LeClairRyan's accounts receivable

and other rights of payment.   ULXP's rights under the ULXP Note and ULXP Security Agreement also are subject to an Intercreditor Agreement between the Lender and ULXP dated as of April 2, 2019 (the "Intercreditor Agreement").   Among other things, the Intercreditor Agreement subordinates ULXP's rights to receive any payments following a bankruptcy of the Debtor until the Lender has been paid in full.   LeClairRyan holds a portion of the ownership interests in ULXP and has certain control rights in ULXP such that, together with the other facts and circumstances concerning the relationship between LeClairRyan and ULXP, LeClairRyan believes that ULXP may be an insider of the Debtor under Bankruptcy Code section 101(31). The Debtor believes that any security interest transferred to ULXP may be an avoidable transfer to an insider pursuant to section 547(b) of the Bankruptcy Code or, alternatively, an avoidable transfer pursuant to section 548(a)(1)(B).

13.   To the best of the Debtor's knowledge, the Lender and ULXP are the only creditors with alleged liens upon the cash collateral.

### C.      Prepetition Requests to Use Cash Collateral

14.   LeClairRyan prepared a wind down plan that was submitted to the Lender.   The wind down plan was patterned on other law firm cases in which there was a short period of operation while client matters were smoothly transitioned to successor firms.   The wind down plan proposed to use existing staff during the transition period to take care of crucial client issues, such as the preservation of attorney-client confidentiality whether in electronic form or in documents. The goal of the wind down plan was to maximize the return to all creditors by creating a smooth and uneventful soft landing for clients that would, among other things, minimize the risk that clients would stop paying invoices still owed to LeClairRyan.

15.     The Lender was unwilling to provide funding for an out-of-court wind down plan to the extent of the advances required by the Lender under an out-of-court solution. Accordingly, LeClairRyan developed cash flow projections that would apply in a chapter 11 wind down process.

16.     Following extensive discussions between LeClairRyan, the Lender, and their respective professionals, LeClairRyan and the Lender have reached an agreement regarding the consensual use of cash collateral pursuant to the terms of the Interim Order.  LeClairRyan intends to continue to engage in discussions with the Lender concerning the use of cash collateral pursuant to the terms of the Final Order.

17.     LeClairRyan has commenced this bankruptcy case, in part, to ensure that it can continue to use cash collateral to pay necessary expenses of its operations including: payroll and related benefits, critical vendors, client-related expenses, utilities, rent, and insurance.  Payment of these expenses is critical for LeClairRyan to conduct an orderly wind down for the benefit of all creditors and parties in interest.

## IV.    Relief Requested

18.     By the Motion, the Debtor seeks entry of the Cash Collateral Orders (i) authorizing the Debtor to use cash collateral, pursuant to the budget attached hereto as Exhibit B (as such budget may be updated, the "Budget"), as working capital for the Debtor's operating expenses, (ii) granting certain adequate protection to the Lender and ULXP, and (iii) granting related relief.

19.     The Debtor also requests that this Court authorize and approve the Debtor's use of cash collateral for the payment of any fees and expenses owed to professionals employed by the

Debtor upon the entry of an order from this Court authorizing the payment of such professional expenses.

20.     The Debtor does not concede that any party has a perfected security interest in the cash collateral.  For purposes of the Motion and the immediate hearing thereon, however, the Debtor will presume that the Lender and ULXP have perfected security interests.

## V.  Basis for Relief Requested

### A.     Use of the Cash Collateral Should be Approved

21.     Section 363(c)(2) of the Bankruptcy Code governs the Court's approval of the use of cash collateral and provides that a debtor-in-possession may not use cash collateral without the consent of the secured party or approval by the Court.  11 U.S.C. § 363(c)(2).  By obtaining approval from the Court to use cash collateral, however, a debtor can continue to operate its business and maintain and enhance the value of its lenders' collateral.  See, e.g., In re Constable Plaza Assocs., L.P., 125 B.R. 98, 105 (Bankr. S.D.N.Y. 1991); In re T.H.B. Corp., 85 B.R. 192, 195 (Bankr. D. Mass. 1988).

22.     To the extent the Debtor's cash on hand represents "cash collateral", it is subject to the use restriction set forth in section 363(c)(2) of the Bankruptcy Code.  The Debtor, therefore, seeks to use the cash collateral, pursuant to the Budget, to operate its business and to conduct an orderly wind down.  Specifically, the Debtor requires cash collateral to permit it to pay vendors, meet its payroll and benefit obligations to its employees, satisfy deposit and payment obligations to utilities and other providers, maintain its insurance policies, preserve and protect its assets, and to generally and otherwise pay obligations critical to continuing the operation of its business for an efficient and orderly wind-down.

23.     Failure to pay for such items on a timely basis may require the Debtor to close down all operations entirely, which would result in irreparable harm to the Debtor and its estate because it would prevent the Debtor from to efficiently winding down, including by preventing the Debtor from protecting client files, efficiently transferring client matters, and efficiently collecting accounts receivable.  As a consequence, without authorization from the Court to immediately use cash collateral, the Debtor submits that it will be left without a source of working capital and will be unable to preserve the value of its estate for the benefit of all creditors and parties in interest.

24.     It is well established that courts authorize the use of cash collateral to enhance or preserve the debtor's value.  For example, in Stein v. U.S. Farmers Home Admin. (In re Stein), 19 B.R. 458 (Bankr. E.D. Pa. 1982), the Court allowed a debtor to use cash collateral where the secured party was under-secured, finding that the use of cash collateral was necessary to the debtor's continued operations and the creditor's secured position can only be enhanced by the continued operation of the debtor's business.  Id. at 460; see also Fed. Nat'l Mortg. v. Dacon Bolingbrook Assoc. L.P., 153 B.R. 204, 204 (N.D. Ill. 1993) (security interest protected to extent debtor reinvested rents in operation and maintenance of the property); In re Constable Plaza Assoc., 125 B.R. at 105 (debtor's reinvestment of rents to maintain and operate office building will serve to preserve or enhance the value of the building which, in turn, will protect the collateral covered by [the] mortgage); In re Triplett, 87 B.R. 25, 27 (Bankr. W.D. Tex. 1988) (Cash collateral may be used "for the general benefit of the estate and need not be devoted exclusively to the protection of the creditor or the collateral.").

25.     To avoid immediate and irreparable harm, the Debtor requires immediate use of cash collateral for the payment of necessary business expenses and to continue to effectuate its wind-down in accordance with the Budget.

**B.     The Proposed Adequate Protection Should be Approved**

26.     Section 363(e) of the Bankruptcy Code provides that upon request of an entity that has an interest in property to be used by a debtor, the court shall prohibit or condition such use as is necessary to provide "adequate protection" of such interest.  11 U.S.C. § 363(e).  The Bankruptcy Code does not explicitly define "adequate protection," but does provide a non-exclusive list of the means by which a debtor may provide adequate protection, including providing a "replacement lien" to the extent that use of cash collateral results in a decrease in the value of such entity's interest in the cash collateral.  See 11 U.S.C. § 361(2).

27.     What constitutes adequate protection must be evaluated on a case-by-case basis. See Resolution Trust Corp. v. Swedeland Dev. Grp. Inc. (In re Swedeland Dev. Grp. Inc.), 16 F.3d 552, 564 (3rd Cir. 1994) (citing MBank Dallas, N.A. v. O'Connor (In re O'Connor), 808 F.2d 1393, 1396-97 (10th Cir. 1987)); Martin v. Prod. Credit Ass'n of Fargo, N.D. (In re Martin), 761 F.2d 472, 474 (8th Cir. 1985).  Adequate protection is meant to ensure that the secured lender receives the value for which it originally bargained.  See In re Mosello, 195 B.R. 277, 288 (Bankr. S.D.N.Y. 1996) (citing In re Swedeland Dev. Grp. Inc., 16 F.3d at 564) ("The purpose of 'adequate protection' for a creditor 'is to insure that the creditor receives the value for which he bargained prebankruptcy'").  Courts have noted that "[t]he essence of adequate protection is the assurance of the maintenance and continued recoverability of the lien value during the interim between the filing . . . and the confirmation." In re Arriens, 25 B.R. 79, 81 (Bankr. D. Or. 1982); In re O.P. Held, Inc., 74 B.R. 777, 782 (Bankr. N.D.N.Y. 1987).  The

focus of the requirement is to protect a secured creditor from diminution in value during the use period.  See In re 495 Cent. Park Ave. Corp., 136 B.R. 626, 631 (Bankr. S.D.N.Y. 1992); In re Beker Indus. Corp., 58 B.R. 725, 736 (Bankr. S.D.N.Y. 1986); In re Ledgemere Land Corp., 116 B.R. 338, 343 (Bankr. D. Mass. 1990); In re Kain, 86 B.R. 506, 513 (Bankr. W.D. Mich. 1988).

28.     In determining whether a creditor is adequately protected, "[u]nder the 'equity cushion' theory, if a debtor has equity in a property sufficient to shield the creditor from either the declining value of the collateral or an increase in the claim from accrual of interest or expenses, then the creditor is adequately protected."  Equitable Life Assurance Society v. James River Assocs. (In re James River Assocs.), 148 B.R. 790, 796 (E.D. Va. 1992).

29.     The reported cases on the equity cushion theory also provide guidance:

> Case law has almost uniformly held that an equity cushion of 20% or more constitutes adequate protection . . . .  Case law has almost as uniformly held that an equity cushion under 11% is insufficient to constitute adequate protection . . . .  Case law is divided on whether a cushion of 12% to 20% constitutes adequate protection . . . .

Id.; Principal Mut. Life Ins. Co. v. Atrium Dev. Co. (In re Atrium Dev. Co.), 159 B.R. 464, 471 (Bankr. E.D. Va. 1993).

30.     Here, the adequate protection proposed by the Debtor will fully protect the Lender and ULXP.

31.     To the extent the Lender has valid perfected security interests in any of the Debtor's property as of the Petition Date (the "Lender's Collateral"), the Debtor proposes to provide the Lender with the Lender Replacement Liens to the extent of any diminution in value of Lender's interests in the Lender's Collateral.  The Debtor proposes that the Lender Replacement Liens will be granted only to secure an amount equal to the actual value of any diminishment of the Lender's Collateral during the period of the Budget.  Additionally, the

Debtor proposes to make payments to the Lender to curtail the Lender's claims for principal, interest, and expenses to the extent funds are available in accordance with the waterfall set forth in the Budget.  Further, if the Replacement Liens and the curtailment payments are insufficient to protect the Lender against any diminution in value of the Lender's Collateral, then the Lender shall have an administrative expense claim allowable under Bankruptcy Code sections 507(b) and 503(b) having priority over all other costs and expenses of administration of any kind, and the Debtor reserves all rights to object to the allowance of such Superpriority Claim on any basis.

32.     To the extent ULXP has perfected interests in the cash collateral, the Debtor proposes to provide ULXP with the ULXP Replacement Liens to the extent the value of ULXP's interests in the cash collateral is diminished during the period of the Budget.  The Debtor proposes that the ULXP Replacement Liens will be granted only to secure an amount equal to the actual value of any diminishment of the cash collateral during the period of the Budget.

33.     The Debtor further proposes that the Replacement Liens will be perfected, enforceable, and effective without the necessity of either the Lender or ULXP taking any further actions with respect thereto.

34.     In light of the projections in the Budget, the Debtor respectfully submits that the proposed Replacement Liens for the Lender and ULXP, the proposed payments to the Lender, and the potential Superpriority Claim for the Lender, are reasonable, appropriate, and sufficient to satisfy the legal standard of "adequate protection."  Such protections will serve to maintain the value of the respective interests of the Lender and ULXP, if any, in the cash collateral during the pendency of this case and allow the Debtor to maximize the value of its assets for the benefit of all stakeholders.

35.    Furthermore, the Debtor agrees to provide the Lender and ULXP on a weekly basis a report of actual receipts and disbursements for the prior week compared to the Budget (a "Variance Report").  The Debtor further agrees that absent a subsequent order of the Court or an agreement between the Debtor and the Lender, the Debtor's authorization to use cash collateral under the Interim Order shall terminate upon the first to occur of September 27, 2019, or any of the following, provided that the Debtor shall be permitted to cure any of such events that is able to be cured within two (2) business days following such event:

(a)    two (2) business days after receipt of written notice from the Lender if the applicable Variance Report reflects that the aggregate amount of Total Operating Disbursements has exceeded the aggregate amount of Total Operating Disbursements in the Budget through the relevant week by seven percent (7%), provided that any payments to On-Site shall not be included in such calculations;

(b)    the Debtor files a pleading with the Court seeking an order to authorize the use of cash collateral inconsistent with this Interim Order or that seeks approval of a priming, senior, or pari passu security interest in or lien upon the Lender's Collateral, and the proceeds of such financing would not result in the payment in full of the Lender, including without limitation all of Lender's allowable interest, fees and expenses;

(c)    the filing by the Debtor of any pleading seeking to challenge the Lender's liens or otherwise asserting rights, claims or causes of action against Lender;

(d)    failure to timely provide a Variance Report;

(e)    the dismissal or conversion of this chapter 11 case or the appointment of a chapter 11 trustee or examiner with expanded powers in this chapter 11 case;

13

(f)     termination of the Debtor's exclusive right to file a chapter 11 plan;

(g)     reversal of this Interim Order through reconsideration or appeal; or

(h)     two (2) business days after receipt of written notice from the Lender if the Debtor

fails to comply with the terms of this Interim Order.

36.     Thus, the Debtor requests that the Court approve the protections proposed in the

Interim Order, and eventually in the Final Order, as adequately protecting any interest the Lender

and ULXP may have in the cash collateral.  Based on the foregoing, the Debtor submits that the

proposed adequate protection will fully protect the Lender and ULXP from any diminution in the

value of their respective interests, if any, in the cash collateral, and is fair, reasonable, and

sufficient to satisfy the requirements of the Bankruptcy Code.   Accordingly, the adequate

protection proposed herein and in the Interim Order is fair and reasonable and sufficient to

satisfy the requirements of sections 363(c)(2) and (e) of the Bankruptcy Code.   Moreover,

Bankruptcy Courts in Virginia have granted similar relief in other recent chapter 11 cases. See,

e.g., In re Health Diagnostic Laboratory, Inc., Case No. 15-32919-KRH (Bankr. E.D. Va. June

10, 2015) (interim order); In re Virginia United Methodist Homes of Williamsburg, Inc., Case

No. 13-31098-KRH (Bankr. E.D. Va. Mar. 1, 2013) (interim order); In re Virginia Broadband,

LLC, Case No. 12-62535-WEA (Bankr. W.D. Va. Nov. 21, 2012) (interim order); In re AMF

Bowling Worldwide, Inc., Case No. 12-36495-KRH (Bankr. E.D. Va. Nov. 14, 2012) (interim

order); In re RoomStore, Inc., Case No. 11-37790-DOT (Bankr. E.D. Va. Dec. 14, 2011) (interim

order); In re The Glebe, Inc., Case No. 10-71553-RWK (Bankr. W.D. Va. July 2, 2010) (interim

order); In re Movie Gallery, Inc., Case No. 10-30696-DOT (Bankr. E.D. Va. Feb 3, 2010)

(interim order); In re Circuit City, Inc., Case No. 08-35653-KRH (Bankr. E.D. Va. Nov. 10,

2008) (interim order).

**C.**      **The Requirements of Bankruptcy Rules 4001(b)(2) and 6003(b) Have Been Satisfied**

37.      Pursuant to Bankruptcy Rule 4001(b)(2), a minimum of 14 days' notice is required before a final hearing on the Motion may take place.  The same rule, however, also provides that the Court "may conduct a preliminary hearing before such 14-day period expires, but the court may authorize the use of only that amount of cash collateral as is necessary to avoid immediate and irreparable harm to the estate pending a final hearing."  Fed. R. Bankr. P. 4001(b)(2).

38.      In addition, Bankruptcy Rule 6003(b) provides that, "[e]xcept to the extent that relief is necessary to avoid immediate and irreparable harm, the court shall not, within 21 days after the filing of the petition," grant relief upon "a motion to use, sell, lease, or otherwise incur an obligation regarding property of the estate."  Fed. R. Bankr. P. 6003(b).

39.      As set forth above, the Debtor has an immediate and urgent need to use cash collateral.  Absent the use of cash collateral, the Debtor will not be able to meet its working capital and liquidity needs, and its estate and creditors will suffer immediate and irreparable harm.  Accordingly, the Debtor submits that the requirements of Bankruptcy Rules 4001(b)(2) and 6003(b) have been satisfied.

**D.**      **Request for Final Hearing**

40.      Pursuant to Bankruptcy Rule 4001(b)(2), the Debtor requests that the Court schedule a final hearing on the Motion.

41.      The Debtor requests that it be authorized to serve a copy of the signed Interim Order, which fixes the time and date for the filing of objections, if any, by first class mail upon the Notice Parties listed below. The Debtor further requests that the Court consider such notice of the final hearing to be sufficient notice under Bankruptcy Rule 4001(c)(2).

## VI.  Notice

38.    The Debtor has served notice of the Motion on (a) the U.S. Trustee; (b) counsel ABL Alliance, LLLP; (c) ULX Partners, LLC; and (d) those creditors holding the 20 largest unsecured claims against the Debtor's estate.

## VII.    Waiver of Memorandum of Law

39.    The Debtor respectfully requests that this Court treat the Motion as a written memorandum of points and authorities or waive any requirement that the Motion be accompanied by a written memorandum of points and authorities as described in Local Bankruptcy Rule 9013-1(G).

## VIII.    No Previous Request

40.    No previous request for the relief sought herein has been made by the Debtor to this or any other court.

WHEREFORE, the Debtor respectfully requests that the Court grant the relief requested herein and such other and further relief as is just and proper.

DATED: September 3, 2019

Respectfully submitted,

*/s/ Tyler P. Brown*
Tyler P. Brown (VSB No. 28072)
Jason W. Harbour (VSB No. 68220)
HUNTON ANDREWS KURTH LLP
Riverfront Plaza, East Tower
951 East Byrd Street
Richmond, Virginia 23219
Telephone:  (804) 788-8200
Facsimile:   (804) 788-8218
Email: tpbrown@HuntonAK.com
        jharbour@HuntonAK.com

*Proposed Counsel to the Debtor*
*and Debtor in Possession*

# EXHIBIT A

**Proposed Interim Order**

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION**

|  |  |
|---|---|
| In re: | **Chapter 11** |
| **LECLAIRRYAN PLLC,** | **Case No. 19-[    ] (___)** |
| Debtor.[1] |  |

**INTERIM ORDER AUTHORIZING LECLAIRRYAN PLLC TO USE
CASH COLLATERAL, GRANTING ADEQUATE PROTECTION AND
RELATED RELIEF, AND SCHEDULING A FINAL HEARING**

Upon the motion (the "Motion")[2] of LeClairRyan PLLC, the above-captioned debtor and

debtor-in-possession ("LeClairRyan" or the "Debtor") for entry of an order, pursuant to sections

105, 361, and 363 of the Bankruptcy Code and Bankruptcy Rule 4001, authorizing the Debtor to

use cash collateral and granting certain adequate protection and related relied; the Court finds

that: (a) it has jurisdiction over the matters raised in the Motion pursuant to 28 U.S.C. §§ 157 and

1334(b); (b) this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2); (c) the relief requested

---

[1]    The last four digits of the Debtor's federal tax identification number are 2451.

[2]    Unless otherwise defined herein, all capitalized terms shall have the meaning ascribed to them in the
Motion.

HUNTON ANDREWS KURTH LLP
Riverfront Plaza, East Tower
951 East Byrd Street
Richmond, Virginia 23219
Telephone: (804) 788-8200
Facsimile: (804) 788-8218
Tyler P. Brown (VSB No. 28072)
Jason W. Harbour (VSB No. 68220)

*Proposed Counsel to the Debtor
and Debtor in Possession*

in the Motion is in the best interest of the Debtor, its estate and creditors, and is necessary to prevent immediate and irreparable harm to the Debtor, and its estate and operations; (d) proper and adequate notice of the Motion and the hearing thereon has been given and no other or further notice is necessary; (e) the Lender and ULXP are adequately protected by virtue of the adequate protection provided in Paragraphs 3 – 7; and (f) upon the record herein after due deliberation thereon, good and sufficient cause exists for the granting of the relief as set forth herein. Therefore,

**IT IS HEREBY ORDERED THAT:**

1.      The relief requested in the Motion is hereby GRANTED on an interim basis.

2.      Subject to paragraph 10, the Debtor is authorized to use cash collateral solely in accordance with the Budget attached to the Motion as <u>Exhibit B</u> to satisfy (i) any and all pre-Petition Date operating and other expenses approved by the Court, (ii) obligations incurred in the ongoing post-Petition Date operation of the Debtor's business, and (iii) any and all costs and expenses arising in connection with the administration of the Debtor's estate, including, without limitation, for the payment of any fees and expenses owed to professionals employed by the Debtor in this chapter 11 case upon the entry of an order from this Court authorizing the payment of such professional's fees and expenses.

3.      While reserving the rights of all parties to contest whether and the extent to which the Lender has valid perfected security interests in any of the Debtor's property, for the purpose of providing adequate protection on account of any valid perfected security interests the Lender may have in the Debtor's property as of the Petition Date (collectively, "<u>Lender's Collateral</u>"), the Lender is hereby granted as security solely to the extent of the diminution in the value of the Lender's Collateral, a valid, perfected, and enforceable security interest (the "<u>Lender</u>

2

Replacement Liens") in and upon the Lender's Collateral in existence as of the Petition Date or thereafter acquired (i) to the extent of any diminution in value of Lender's interests in the Lender's Collateral, including, without limitation, any such diminution in value resulting from the use (including, without limitation, use in accordance with this Interim Order) by the Debtor of the cash collateral and any other Lender's Collateral and the imposition of the automatic stay pursuant to Bankruptcy Code section 362, and (ii) to the same extent, nature, and priority of any security interests held by the Lender as of the Petition Date.

4.      While reserving the rights of all parties to contest whether and the extent to which the ULXP has valid perfected security interests in any of the Debtor's property, for the purpose of providing adequate protection for any valid perfected security interests ULXP may have in the cash collateral, ULXP is hereby granted as security solely to the extent of the diminution in the value of the cash collateral, a valid, perfected, and enforceable security interest subordinate in all respects to the Lender Replacement Liens (the "ULXP Replacement Liens"; and together with the Lender Replacement Liens, the "Replacement Liens") in and upon the cash collateral (i) to the extent the cash collateral is used by the Debtor pursuant to the Budget and (ii) to the same extent, nature, and priority of any security interests held by ULXP as of the Petition Date.

5.      The Replacement Liens shall be valid, perfected, enforceable, and effective upon entry of this Interim Order without the necessity of execution, filing, or recordation of any financing statements or security agreements; provided, however, that notwithstanding anything else in this Interim Order, the Replacement Liens shall not encumber or otherwise attach to (a) any causes of action under chapter 5 of the Bankruptcy Code or any proceeds of such causes of action or (b) any property in which the Debtor does not hold an equitable interest, including

3

without limitation any property in which the Debtor holds only legal title such as funds held in trust.

6.      The Debtor is authorized and shall make payments to the Lender to curtail the Lender's claims for principal, interest, and expenses to the extent funds are available in accordance with the waterfall set forth in the Budget.

7.      Subject to the Carve-Out described in paragraph 8 below, if the Replacement Liens and the curtailment payments authorized in this Interim Order are insufficient to protect the Lender against any diminution in value of the Lender's Collateral, then the Lender shall have an administrative expense claim allowable under Bankruptcy Code sections 507(b) and 503(b) having priority over all other costs and expenses of administration of any kind, which claim shall at all times be senior to the rights of the Debtor, or any successor trustee or estate representative in the Chapter 11 case of the Debtor.  Any such claim provided to the Lender as referenced in this paragraph shall be referred to as the "Super-Priority Claim."  The Debtor reserves all rights to object to the allowance of any such Super-Priority Claim on any basis, including without limitation, that no diminution in value of the Lender's Collateral has occurred.  In addition to the foregoing, except as otherwise ordered by the Court and in compliance with the Budget, none of Lender's Collateral may be used to make any payments with respect to any amounts owed as of the Petition Date, except for the payments to the Lender contemplated in paragraph 6 above.

8.      The Replacement Liens and the Super-Priority Claim, if allowed, shall be subject only to (i) the payment of any unpaid fees payable pursuant to 28 U.S.C. § 1930 and (ii) fees payable to the clerk of the Bankruptcy Court (collectively, the "Carve-Out").

9.      The Debtor shall provide the Lender and ULXP on a weekly basis a report of actual receipts and disbursements for the prior week compared to the Budget (a "Variance

Report"). The Variance Report shall be provided on the second business day of each applicable week for the preceding week.

10.     Absent a subsequent order of the Court or an agreement between the Debtor and the Lender, the Debtor's authorization to use cash collateral hereunder shall terminate upon the first to occur of September 27, 2019, or any of the following, provided that the Debtor shall be permitted to cure any of such events that is able to be cured within two (2) business days following such event:

(a)     two (2) business days after receipt of written notice from the Lender if the applicable Variance Report reflects that the aggregate amount of Total Operating Disbursements has exceeded the aggregate amount of Total Operating Disbursements in the Budget through the relevant week by seven percent (7%), provided that any payments to On-Site shall not be included in such calculations;

(b)     the Debtor files a pleading with the Court seeking an order to authorize the use of cash collateral inconsistent with this Interim Order or that seeks approval of a priming, senior, or pari passu security interest in or lien upon the Lender's Collateral, and the proceeds of such financing would not result in the payment in full of the Lender, including without limitation all of Lender's allowable interest, fees and expenses;

(c)     the filing by the Debtor of any pleading seeking to challenge the Lender's liens or otherwise asserting rights, claims or causes of action against Lender;

(d)     failure to timely provide a Variance Report;

(e)     the dismissal or conversion of this chapter 11 case or the appointment of a chapter 11 trustee or examiner with expanded powers in this chapter 11 case;

5

(f)      termination of the Debtor's exclusive right to file a chapter 11 plan;

(g)      reversal of this Interim Order through reconsideration or appeal; or

(h)      two (2) business days after receipt of written notice from the Lender if the Debtor

fails to comply with the terms of this Interim Order.

11.      Except with respect to the payments to the Lender authorized in paragraph 6 above, unless and until the Lender and/or ULXP receive additional and appropriate relief from this Court, neither the Lender nor ULXP shall offset, transfer, diminish, or otherwise draw down on any of the Debtor's accounts and/or assets.

12.      The automatic stay under Bankruptcy Code section 362(a) shall be, and hereby is, modified to the extent necessary to permit (i) the Lender to apply payments made pursuant to paragraph 6 above to curtail the Lender's claims for principal, interest, and expenses and (ii) to send a notice and exercise any rights and remedies hereunder as set forth herein.

13.      Nothing in this Interim Order or the Motion shall be construed as prejudicing the rights of the Debtor or any other party in interest to dispute or contest whether the Lender or ULXP has a valid perfected security interest in the cash collateral or any other property of the Debtor's estate.

14.      The Lender and ULXP reserve the right to request further or different adequate protection for the period of time after the Debtor's authorization to use cash collateral under this Interim Order has terminated, and the Debtor or any other party may contest any such request. In addition, the Lender, ULXP, and the Debtor reserve all rights and defenses with respect to any further order or further relief pertaining to cash collateral.

15.      The Debtor is authorized and empowered to take all actions necessary to implement the relief granted in this Interim Order.

6

16.     The final hearing on the Motion is scheduled on _____, 2019, at _____ (prevailing Eastern Time) before this Court (the "Final Hearing").

17.     Within three business days of the entry of this Interim Order, the Debtor shall serve a copy of this Interim Order, thereby providing notice of the Final Hearing, on (a) the U.S. Trustee; (b) counsel for the Lender; (c) counsel for ULXP; (d) all known creditors holding secured claims against the Debtor's estates; and (e) those creditors holding the 30 largest unsecured claims against the Debtor's estate.

18.     Any objection to the relief requested in the Motion on a permanent basis must, by 4:00 p.m. (prevailing Eastern Time) on _____ (the "Objection Deadline"), be: (a) filed with the Court; and (b) actually received by: (i) the Office of the U.S. Trustee, 701 East Broad Street, Suite 4304, Richmond, Virginia 23219, Attn: Robert B. Van Arsdale, Esq.; (ii) proposed counsel to the Debtor, Hunton Andrews Kurth LLP, Riverfront Plaza, East Tower, 951 East Byrd Street, Richmond, Virginia 23219, Attn: Tyler P. Brown, Esq., email: tpbrown@hunton.com; (iii) counsel for the Lender McGuireWoods LLP, Gateway Plaza, 800 East Canal Street, Richmond, VA 23219-3916, Attn: Douglas M. Foley, Esq., Sarah B. Boehm, Esq., Shawn R. Fox, Esq., email: dfoley@mcguirewoods.com, sboehm@mcguirewoods.com, sfox@mcguirewoods.com; (iv) counsel for ULXP _____; and (v) the attorneys for any official committee of unsecured creditors, if then appointed in these cases, on or before the Objection Deadline.

19.     A reply to any timely filed and served Objection may be filed with the Court and served on or before 12:00 p.m. (prevailing Eastern Time) on the day that is at least one business day before the Final Hearing.

7

20.     The contents of the Motion and the notice procedures set forth herein are good and sufficient notice and satisfy Bankruptcy Rules 4001 and 9014 by providing parties with notice and an opportunity to object and be heard at a hearing.

21.     The requirement under Local Bankruptcy Rule 9013-1(G) to file a memorandum of law in connection with the Motion is hereby waived.

22.     Notwithstanding any Bankruptcy Rule (including, but not limited to, Bankruptcy Rule 6004(h)) or Local Bankruptcy Rule that might otherwise delay the effectiveness of this Interim Order, the terms and conditions of this Interim Order shall be immediately effective and enforceable upon its entry.

23.     This Court shall retain exclusive jurisdiction over any and all matters arising from or related to the implementation or interpretation of this Interim Order.


Richmond, Virginia

Dated: _____                    _____

                                                  United States Bankruptcy Judge

8

WE ASK FOR THIS:

*/s/ Tyler P. Brown*
Tyler P. Brown (VSB No. 28072)
Jason W. Harbour (VSB No. 68220)
HUNTON ANDREWS KURTH LLP
Riverfront Plaza, East Tower
951 East Byrd Street
Richmond, VA 23219
Tel:  (804) 788-8200
Fax:  (804) 788-8218
Email: tpbrown@HuntonAK.com
        jharbour@HuntonAK.com


*Proposed Counsel to the Debtor*
*and Debtor in Possession*


## CERTIFICATION OF ENDORSEMENT
## UNDER LOCAL BANKRUPTCY RULE 9022-1(C)


I hereby certify that the foregoing proposed order has been endorsed by or served upon all necessary parties.

*/s/ Tyler P. Brown*

## EXHIBIT B

**Budget**

Exhibit B

**LeClairRyan, PLLC**
**Interim Cash Collateral Budget**
**<u>Summary</u>**
*$ in 000s*

| | | Wk 1<br>9/6 | Wk 2<br>9/13 | Wk 3<br>9/20 | Wk 4<br>9/27 | Total |
|---|---|---|---|---|---|---|
| I. | Cash Receipts | $ 1,306 | $ 1,320 | $ 1,162 | $ 638 | $ 4,425 |
| II. | Disbursements | | | | | |
| | Payroll, Taxes, and Benefits | | | | | |
| | LeClairRyan | 48 | 12 | 69 | 12 | 140 |
| | United Lex Service Payments | 78 | 72 | 66 | 64 | 281 |
| | Total Payroll, Taxes, and Benefits | 126 | 84 | 135 | 76 | 421 |
| | Operating Expenses | 399 | 196 | 126 | 189 | 910 |
| | Consultant | - | 15 | - | - | 15 |
| | Noticing Agent | 10 | - | - | - | 10 |
| | Total Disubursements | 535 | 295 | 261 | 265 | 1,356 |
| III. | Net Cash Flow | $ 771 | $ 1,025 | $ 901 | $ 373 | $ 3,069 |

Exhibit B.1

LeClairRyan, PLLC
Interim Cash Collateral Budget
**Weekly Cash Waterfall**
*$ in 000s*

|  | | *Wk 1*<br>9/6 | *Wk 2*<br>9/13 | *Wk 3*<br>9/20 | *Wk 4*<br>9/27 | Total |
|---|---|---|---|---|---|---|
| **I.** | **WEEKLY CASH WATERFALL** | | | | | |
| | A) Cash Available | | | | | |
| |    Beginning cash | $ 161 | $ 88 | $ 78 | $ 80 | $ 161 |
| |    Plus: Net cash flow | 771 | 1,025 | 901 | 373 | 3,069 |
| | | 932 | 1,113 | 979 | 452 | 3,230 |
| | B) Allocation of Available Cash: | | | | | |
| |    i) Holdbacks [1] | (309) | (208) | (47) | (11) | (575) |
| | C) Cash Available for LeClairRyan and VCF Curtailment | | | | | |
| |    i) LeClairRyan minimum cash balance reserve | (88) | (78) | (80) | (68) | (68) |
| |      *(30% of subsequent week disbursements)* | | | | | |
| |    ii) VCF loan curtailment | (534) | (827) | (853) | (373) | (2,587) |
| | D) Remaining Unallocated Cash | $ - | $ - | $ - | $ - | $ - |

[1] LeClairRyan began Week 1 with $286K of holdbacks resulting in an estimated cumulative
holdback balance of $861K at the end of Week 4.