David G. Barger (VSB No. 21652)
Thomas J. McKee, Jr. (VSB No. 68427)
J. Gregory Milmoe (admitted *pro hac vice*)
Greenberg Traurig, LLP
1750 Tysons Boulevard, Suite 1000
McLean, Virginia 22102
Telephone:  (703) 749-1300
Fax:          (703) 749-1301
Email:    mckeet@gtlaw.com

*Counsel to ULX Partners, LLC and UnitedLex Corp.*

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**(Richmond Division)**

| | |
|---|---|
| In re:<br><br>**LECLAIRRYAN PLLC,**<br><br>Debtor. | **Chapter 7**<br><br>**Case No. 19-34574 (KRH)** |
| **Lynn L. Tavenner, as Chapter 7 Trustee,**<br><br>Plaintiff,<br><br>vs.<br><br>**ULX Partners, LLC and UnitedLex Corporation,**<br><br>Defendants. | **Adv. Pro. No. 20-03142-KRH** |

**DEFENDANTS' REPLY MEMORANDUM IN SUPPORT OF THEIR**
**<u>MOTION TO PARTIALLY DISMISS THE COMPLAINT</u>**

# TABLE OF CONTENTS

Page

INTRODUCTION .................................................................................................................. 1

REPLY .................................................................................................................................. 4

A.    There is No Tort of Deepening Insolvency or Prolonging the Life of an Enterprise to
      Support a Conspiracy Claim .................................................................................... 4

B.    There is No Tort of Aiding and Abetting to Support a Conspiracy Claim ......................... 6

C.    There is No Unlawful Joint Venture to Support a Conspiracy Claim ............................... 8

D.    The Trustee Did Not Adequately Plead Aiding and Abetting ......................................... 11

      1.    The Complaint Lacks a Predicate Claim Against Other Defendants.................... 11

      2.    The Trustee Does Not Allege the Culpable State of Mind or a Benefit ............... 13

E.    The Trustee's Claims for Avoidance of Fraudulent Transfers Under Bankruptcy Code
      Sections 548(a)(1)(A) and 544(b) and Applicable State Law Are Not Pled with Requisite
      Particularity.............................................................................................................. 14

F.    The Trustee's Claim for Avoidance of Constructively Fraudulent Transfers Under
      Bankruptcy Code Section 548(a)(1)(B) Is Not Sufficiently Stated ................................. 16

G.    The Trustee Has Not Sufficiently Stated a Claim for Recharacterization of the ULXP
      Note.......................................................................................................................... 16

H.    Any Avoidance of ULXP's Security Interest Should Be Limited to a Claim Under
      Bankruptcy Code Section 547 .................................................................................... 18

I.    The Trustee Fails to State a Claim for Disallowance Under Bankruptcy Code Section
      502(d)....................................................................................................................... 18

J.    Defendants' Affirmative Defenses are Appropriate on a 12(b)(6) ................................. 18

      1.    Insufficient Insider Allegations to Circumvent In Pari Delicto ........................... 19

      2.    The Adverse Interest Exception Does Not Circumvent In Pari Delicto ............... 22

      3.    The Personal Stake Exception Does Not Circumvent the Corporate Immunity
            Doctrine.......................................................................................................... 23

CONCLUSION.................................................................................................................... 25

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Alliance Technology Group, LLC v. Achieve 1, LLC*,
  2013 WL 143500 (E.D.Va. Jan. 11, 2013) ...................................................................7, 12, 14

*Almy v. Grisham*,
  639 S.E.2d 182 (Va. 2007).................................................................................................4

*Arrowsmith v. Mallory (In re Health Diagnostic Laboratory, Inc.*),
  No. 17-cv-00413, 2017 Bankr. LEXIS 2330 (E.D. Va. July 19, 2017)..................................10

*Arrowsmith v. Warnick (In re Health Diagnostic Laboratory, Inc.*),
  No. 15-32929, 2018 WL 4676339 (KRH) (Bankr. E.D. Va. 2018).........................................7

*AvalonBay Cmtys., Inc. v. Willden*,
  2009 WL 3431571 (E.D.Va. Aug. 7, 2009).........................................................................7, 8

*AvalonBay Communities, Inc. v. Willden*,
  No. 07-cv-00998, 2008 WL 2780983 (E.D. Va. July 16, 2008).............................................13

*AvalonBay Communities, Inc. v. Willden*,
  No. 08-cv-00777, 2009 WL 2431571 (E.D. Va. Aug. 7, 2009) .......................................12, 13

*Buffalo Wings Factory, Inc. v. Mohd*,
  622 F. Supp. 2d 325 (E.D. Va. 2007) ...............................................................................23, 24

*Burtch v. Seaport Capital, LLC (In re Direct Response Media, Inc.)*,
  466 B.R. 626 (Bankr. D. Del. 2012) ...................................................................................21

*Cars Unlimited II, Inc. v. National Motor Co., Inc.*,
  472 F. Supp. 2d 740 (E.D. Va. 2007) ...................................................................................9

*Colgate v. Disthene Group, Inc.*,
  No. 10-00158, 2013 WL 8019576 (Buckingham Cty. Cir. Ct. Feb. 4, 2013) ........................24

*Collins & Aikman Corp. v. Stockman*,
  No. 07-00265, 2010 WL 184074 (D. Del. Jan. 19, 2010) ......................................................19

*Commercial Business Systems, Inc. v. Bellsouth Services, Inc.*,
  453 S.E.2d 261 (Va. 1995).................................................................................................9

*Commonwealth Biotechnologies, Inc. v. Fornova Pharmworld, Inc. (In re
  Commonwealth Biotechnologies, Inc.)*,
  No. 11-30381, 2012 WL 5385632 (Bankr. E.D. Va. Nov. 1, 2012)..................................17, 18

*Fidelity National Title Insurance Co. v. Washington Settlement Group, LLC*,
No. 12-04793, 2013 WL 9451969 (Fairfax Cty. Cir. Ct. Sept. 4, 2013) ................................24

*Flexible Benefits Council v. Feltman*,
No. 08-cv-00371, 2008 WL 2465457 (E.D. Va. June 16, 2008) ......................................23, 24

*Gavin Solmonese, LLC v. Shvamsundar (In re Amcad Holdings, LLC)*,
579 B.R. 33 (Bankr. D. Del. 2017) ........................................................................................15

*In re Greater Southeast Community Hospital Corp. I*,
353 B.R. .................................................................................................................................19

*Gregg Valby, L.L.P. v. Great American Ins. Co.*,
316 F. Supp. 2d 505 (S.D. Tex. 2004) ...................................................................................10

*Hays v. Pearlman*,
No. 10-cv-01135, 2010 WL 4510956 (D.S.C. Nov. 2, 2010) ................................................19

*In re HDL Diagnostic Laboratory, Inc.*,
2018 WL 467 6339 .................................................................................................................14

*In re Hellas Telecommunications (Luxembourg) II SCA*,
524 B.R. 488 (Bankr. S.D.N.Y. 2015) ...................................................................................21

*In re Infinity Business Group, Inc.*,
612 B.R. 76 (D.S.C. 2019) .....................................................................................................22

*Infinity Technology, LLC v. Burney*,
2020 WL 6387378 (E.D. Va. June 4, 2020) .................................................................6, 7, 12

*Knauer v. Jonathon Roberts Financial Group, Inc.*,
348 F.3d 230 (7th Cir. 2003) .................................................................................................19

*Leveto v. Lapina*,
258 F.3d 156 (3d Cir. 2001) ...................................................................................................19

*Lightsway Litigation Services, LLC v. Yung (In re Tropicana Entertainment, LLC)*,
520 B.R. 455 (Bankr. D. Del. 2014) ......................................................................................21

*Lukas v. Bar Association of Montgomery County, Maryland, Inc.*,
371 A.2d 669 (Md. Sp. App. Ct. 1977) ..................................................................................10

*MicroStrategy Servs. Corp. v. OpenRisk LLC*,
2015 WL 1221263 (E.D.Va. Mar. 17, 2015) ....................................................................7, 11

*Nasser v. Waller*,
No. 16-cv-00032, 2017 WL 913816 (W.D. Va. Mar. 7, 2017) ...............................................9

*Nisselson v. Lernout*,
    568 F.Supp.2d 137 (D. Mass. 2008) ........................................................................19

*Pattenson v. Horsley*,
    70 Va. 263 (Va. 1877).............................................................................................7

*In re Radnor Holdings Corp.*,
    *353 B.R. 820 (Bankr. D. Del. 2006)*.....................................................................20

*Reliance National Insurance Co. v. Sears, Roebuck & Co., Inc.*,
    792 N.E.2d 145 (Mass. Ct. App. 2003) ................................................................10

*Saks Fifth Avenue, Inc. v. James, Ltd.*,
    630 S.E.2d 304 (Va. 2006)......................................................................................8

*Schnelling v. Crawford (In re James River Coal Co.)*,
    360 B.R. 139 (Bankr. E.D. Va. 2009) ...................................................................12

*St. Paul Fire and Marine Insurance Co. v. Hoskins*,
    No. 10-cv-00087, 2012 WL 748574 (W.D. Va. Mar. 7, 2012) ..............................11

*Star Broad., Inc. v. Reed Smith LLP*,
    No. 08-0616, 2009 WL 482833 (E.D. Va. Feb. 24, 2009) ......................................9

*Studco Bldg. Sys. United States LLC v. 1st Advantage Fed. Credit Union*,
    2020 U.S. Dist. LEXIS 238945 (E.D. Va. Dec. 18, 2020) ...........................6, 7, 13

*Tysons Toyota, Inc. v. Globe Life Insurance Co.*,
    No. 93-1444, 1994 WL 717598 (4th Cir. Dec. 29, 1994)......................................13

*Visiting Nurse Association of Greater Philadelphia v. St. Paul Fire and Marine
Insurance Co.*,
    65 F.3d 1097 (3d Cir. 1995)..................................................................................10

*Zazzali v. Hirschler Fleischer P.C.*,
    482 B.R. 495 (D. Del. 2012)..................................................................................22

**Statutes**

Bankruptcy Code Section 502(d)...................................................................................18

Bankruptcy Code Section 547 ......................................................................................18

Bankruptcy Code Sections 548(a)(1)(A) and 544(b)...................................................14

Bankruptcy Code Section 548(a)(1)(B) .......................................................................16

**Other Authorities**

Federal Rule of Civil Procedure 12(b)(6) ......................................................................1, 19

Federal Rules of Bankruptcy Procedure Rule 7012(b) ......................................................1

Rule 5.4 ..................................................................................................................................8

Rule 12(b) ............................................................................................................................19

Virginia Rules of Professional Conduct Rules 5.4(a) and 5.4(d)(3) ..........................8, 9

ULX Partners, LLC ("**ULXP**") and UnitedLex Corporation ("**UnitedLex**" and together with ULXP, the "**Defendants**"), by counsel and pursuant to Federal Rule of Civil Procedure 12(b)(6), made applicable to this proceeding by Rule 7012(b) of the Federal Rules of Bankruptcy Procedure, respectfully submit this reply (the "**Reply**") in support of *Defendants' ULX Partners, LLC's and UnitedLex Corporation's Motion to Partially Dismiss the Complaint* [Docket No. 17][1] and related *Memorandum of Law in Support of Defendants' ULX Partners, LLC's and UnitedLex Corporation's Motion to Partially Dismiss the Complaint* [Docket No. 18] (collectively, the "**Motion**")[2] and in response to *Plaintiff's Opposition to Defendants' Motion to Partially Dismiss the Complaint* [Docket No. 25] (the "**Opposition**"),[3] filed by Lynn L. Tavenner, in her capacity as Chapter 7 Trustee (the "**Trustee**") of the bankruptcy estate of LeClairRyan, PLLC ("**LeClairRyan**", "**LCR**" or the "**Debtor**").  In support hereof, the Defendants state as follows:

## **INTRODUCTION**

Shorn of inflammatory rhetoric and conclusory statements that are undermined by facts in the Trustee's own exhibits, the Complaint fails to allege plausible or reasonable facts sufficient to state a cause of action for conspiracy, aiding and abetting a breach of fiduciary duty, fraudulent conveyance, or recharacterization of debt as equity. The Complaint alleges: "the Defendants . . . prioritized their own desires for financial gain and prolonged the Debtor's lifespan, enabling the Defendants and others to improperly and unfairly extract millions of dollars from the Estate, to the detriment of LeClairRyan's creditors." (Compl. ¶1).  The Trustee continues by asserting in her Opposition that, "[t]he gravamen of the Complaint is that the Defendants exploited LeClairRyan's

---

[1] References to "Docket No. __" are to the Court's docket in the adversary proceeding, case number 20-03142 (KRH).

[2] References to pages of the Motion are with respect to Docket No. 18.

[3] Capitalized terms used but not otherwise defined in this Reply shall have the meanings given to them in the Motion or the Opposition, as applicable.

precarious financial situation through a one-sided venture (ULXP) governed by an unlawful contract." (Opp., p. 1). Putting aside for a moment the fact that such statements are pure fiction, stripped of their overheated rhetoric these charges would simply read: "Defendants entered into a business deal with LeClairRyan, which had not been doing well but hoped to do better, with the intention of making a profit." This is hardly illegal and certainly does not provide a predicate for a claim of conspiracy, aiding and abetting, or otherwise.

Among other "nefarious" acts attributed to the Defendants, the Trustee notes that when pre-deal diligence showed the financial health of LeClairRyan to be less robust than previously understood the Defendants restructured the proposed deal. While this may have been disappointing to LeClairRyan and made the overall deal less attractive to it, there is nothing remotely improper or unusual about arm's length parties renegotiating a deal when underlying assumptions change prior to signing it. Nor is there any plausible basis for asserting that Defendants in any way, shape or form controlled the decision of LeClairRyan to enter into the joint venture. Indeed, the Trustee admits and concedes in her Opposition that prior to the joint venture, "the Debtor and UnitedLex accomplished these things [such as entering into the joint venture] while UnitedLex and LeClairRyan were indisputably separate legal entities." (Opp., p. 25) (emphasis added); *see also* Opp., p. 26 ("UnitedLex and the Debtor acted separately prior to the creation of the ULXP venture").

Whether or not the ULXP joint venture actually contributed to prolonging the life of LCR, (and the Trustee concedes that deepening insolvency does not sate a cause of action), the documents filed by the Trustee in support of the Complaint identify LCR's motives for entering into the transaction – none of which support the Trustee's allegations of a grand conspiracy, nefarious aiding and abetting, or an intentional fraudulent conveyance.

2

> . . . LR will be invoiced for the JV's Services, including those costs and expenses
> for personnel and services that we will migrate to the JV. Functionally, rather than
> LR paying for those services ad hoc every day as it does now, the JV will invoice
> LR in a lump sum of accumulated services at the end of each month, generally on
> a 30 day basis for payment. This should initially assist with short term cash flow,
> and more regularize our support cost and payment cycle. The deal is structured so
> that LR's costs for our current staff services will remain proportional to what LR
> pays now, meaning we will not pay a premium back to the JV for the services from
> our team members who will be housed in the JV.

Compl., Ex. 6, p. 7 of 11.

The Trustee also contends that the conversion of LCR from a taxable professional corporation to an LLC was "required" by ULXP as a condition to going forward with the joint venture. While that is untrue[4], it is neither unlawful nor nefarious to try to maximize the benefits available under the tax code. Nor would there have been anything unlawful or improper about the Defendants requiring LCR to seek to do so as a condition of the deal. With the benefit of hindsight, and given that LCR and its partners may not have received all the anticipated tax benefit from such conversion, the conversion may or may not have been a wise business decision by LeClairRyan. But it does not serve as a factual predicate for a claim of conspiracy, aiding and abetting, or intentional fraudulent conveyance. Nor is it alleged that the Defendants received any benefit from the conversion – they did not. Indeed, as set forth in the Exhibits to the Complaint, there were valid reasons for the conversion that had nothing to do with the ULXP joint venture, not to mention that the conversion was approved by LCR's shareholders prior to the time there was any contractual relationship between the parties. Similarly, the determination to terminate the pension

---

[4] Exhibit 12 to the Complaint, which describes the benefits and risks of the conversion to the LCR Partners prior to their voting on it states that, "[t]he LLC conversion makes senses as a stand alone initiative. It will generate an estimated $9 million benefit to our Partners." The conversion was not tied in any way to the ULXP venture, except to note the benefit that the LLC (as opposed to corporate form) would be able "to avoid double tax on any gain on JV/ULX equity." "Retention of Partners via the equity incentive is a key requirement for ULX," is the only allusion to any "requirement" of ULXP. Compl., Ex. 12, p. 4 of 6.

plans had nothing to do with ULXP and provided no benefit to the Defendants.  Except to the extent that support from ULXP helped keep LCR alive long enough to make the distribution to plan beneficiaries required by the tax code at the end of 2018, Defendants had no direct or indirect involvement with the pension plan termination.

At the end of the day, ULXP was a business venture that UnitedLex and LCR entered into underlinely voluntarily after months of discussion, diligence, and as now acknowledged by the Trustee, negotiated while the parties were separate entities and acted separately.  (Opp., pp. 25-26).  Both parties sought to benefit from the business relationship:  LCR to have a third party handle administrative and support services to enable the firm to focus on providing exceptional legal services to their clients, and UnitedLex to develop a leading market position in the legal support services industry.  Ultimately, LCR's loss of attorneys and accompanying revenue, among other reasons, caused LCR to file bankruptcy and caused ULXP to be owed approximately $12 million dollars for expenses it paid to the 300 ex-LCR employees who came to work for ULXP (and who were billed to LCR at no markup).  The Trustee's attempt to cast the above as intentionally injurious, wrong, or unlawful, simply is not plausible and should be rejected by the Court.

For the reasons set forth in the Motion, as supplemented herein, the Defendants contend that the Trustee has failed to satisfy the required pleading standard for Counts I, II, III, V, VI, VII, VIII, IX, X and XI of the Complaint.  Accordingly, such claims should be dismissed.

## REPLY

### A.    There is No Tort of Deepening Insolvency or Prolonging the Life of an Enterprise to Support a Conspiracy Claim

The Trustee admits in her Opposition, as she must, that "deepening insolvency" is not a cause of action; accordingly, and as a matter of law, it cannot serve as the requisite predicate act underlying conspiracy claims.  *See Almy v. Grisham*, 639 S.E.2d 182, 188 (Va. 2007) ("[I]n Virginia, a

common law claim of civil conspiracy generally requires proof that the underlying tort was committed."). Nevertheless, the Trustee makes a last-ditch effort to shoe-horn the rejected theory of deepening insolvency into this case by falsely recharacterizing it as being merely part of her damages claim. More specifically, although she now asserts that "Defendants' tortious actions unreasonably prolonged the life of the Debtor, resulting in additional *damages* to the Debtor's estate and its creditors," her Complaint repeatedly identifies such purported prolongation <u>as the wrong itself</u>. (Opp., p. 7) (emphasis in original). By way of example, the Trustee alleges:

- "the actions or inactions of the ULX Entities <u>only served to plunge</u> LeClairRyan further into insolvency . . . ." (Compl. ¶1) (emphasis added).

- "the conspiracy between the ULX Entities and the LCR Officers and Directors caused damages . . . including but not limited to damages relating and/or <u>arising out of</u> (i) keeping the Debtor operating instead of winding down the insolvent law firm . . . ." (Compl. ¶2) (emphasis added);

- "As a result of their breaches of fiduciary duties of care and loyalty, including their decision to enter into the ULXP transaction, instead of winding down the insolvent law firm, the LCR Officers and Directors <u>caused</u> significant damage . . . ." (Compl. ¶109) (emphasis added);

- "The Debtor suffered injury <u>from</u> extending the life of the Debtor . . . ." (Compl. ¶293) (emphasis added).

The foregoing allegations, among others, confirm that despite what she may now claim in her Opposition, the Trustee is <u>not</u> alleging that deepening insolvency is only a <u>measure</u> of damages; rather, she is alleging that deepening insolvency <u>caused</u> the damage. The allegations clearly imply that, according to the Trustee, the Board of LCR had an obligation to wind up its affairs rather than enter into the ULXP joint venture. This theory, however, has been expressly rejected by this Court in *Schnelling v. Crawford (In re James River Coal Co.)*, where it said that "Virginia law does not require a financially challenged company to abruptly wind up its business affairs and liquidate its assets . . . ." 360 B.R. 139, 179 (Bankr. E.D. Va. 2009).

5

The Trustee's attempt to re-write, (i) the Complaint to classify deepening insolvency as merely a measure of damages, and (ii) Virginia law by imposing a retroactive fiduciary duty, must be summarily rejected.  To hold otherwise risks turning <u>any</u> attempt by a corporation that, "acting with due diligence and good faith, pursues a business strategy that it believes will increase the corporation's value, but also involves the incurrence of additional debt," into an actionable claim if the strategy proves unsuccessful – a possible result and reliance on hindsight that this Court has already disallowed.  *Id.* at 178-79 (quoting *Trenwick America Litigation Trust v. Ernst & Young, L.L.P.*, 906 A.2d 168, 205 (Del. Ch. 2006)).  Accordingly, the Court should reject the Trustee's attempt to inject deepening insolvency into this case in any form.

**B.    <u>There is No Tort of Aiding and Abetting to Support a Conspiracy Claim</u>**

Just as "deepening insolvency" cannot support a conspiracy because it is not itself actionable, the Trustee's attempt to allege a conspiracy to "aid and abet" fails for the same reason – it is not a recognized cause of action in Virginia.

While the Trustee's Opposition grasps at various older cases to try to piece together an aiding and abetting tort, the Trustee's Opposition, incredibly, fails to acknowledge or address the two most recent cases on the issue in this District.  The Trustee completely ignores Judge Ellis's opinion from June 2020 in *Infinity Technology, LLC v. Burney*, No. 19-cv-01507, 2020 WL 6387378 (E.D. Va. June 4, 2020) that was cited in Defendants' Motion, where the Court stated that the "Supreme Court of Virginia has not expressly recognized a cause of action for aiding and abetting a tort." *Id.* at *6.  Nor does the Trustee acknowledge the even more recent case from this District of *Studco Bldg. Sys. United States LLC v. 1st Advantage Fed. Credit Union*, No. 20-cv-00417, 2020 U.S. Dist. LEXIS 238945 (E.D. Va. Dec. 18, 2020), where again, contrary to what the Trustee implies in her Opposition, Judge Jackson of the District Court stated that "[n]either Virginia law, Virginia State Courts, nor the United States Court of Appeals for the Fourth Circuit have recognized aiding

and abetting fraud as a separate tort." (*Id.* at *18).[5]  Notwithstanding this Court's prior holdings

in cases such as *Arrowsmith v. Warnick (In re Health Diagnostic Laboratory, Inc.)*, No. 15-32929,

2018 WL 4676339 (KRH) (Bankr. E.D. Va. 2018), the Defendants respectfully contend that such

a clear, forceful, and recent pronouncement by this District in *Studco*, coupled with Judge Ellis's

equally clear and recent opinion in *Infinity Technology, LLC*, demonstrates an unmistakable trend

<u>against</u> recognition of a stand-alone tort and clear guidance that the claim should be dismissed.

In the face of such clear precedent, the Trustee's Opposition resorts to asking this Court to

see "aiding and abetting" as an "appropriate avenue to establish joint tortfeasor liability," and cites

cases such as *Alliance Technology Group, LLC v. Achieve 1, LLC*, No. 12- cv-00701, 2013 WL

143500 (E.D. Va. Jan. 11, 2013) and *Patteson v. Horsley*, 70 Va. 263 (Va. 1877) in support of the

same.  (Opp., p. 9).  Judge Ellis addressed these cases in the *Infinity Technology, LLC* decision,

however, stating that such cases "have recognized that individuals who act jointly to breach a

fiduciary duty may be held jointly liable for that tort," yet he continued by stating, "[b]ut

importantly, those cases do not establish a separate cause of action for aiding and abetting a tort

under Virginia law." *Infinity Technology, LLC*, 2020 WL 6387378, at *6.  As a result, Judge Ellis

expressly rejected reliance on such cases and dismissed the claim for aiding and abetting <u>with</u>

<u>prejudice</u> because it is not a recognized cause of action.  *Id.*

The Trustee's reliance on *AvalonBay Cmtys., Inc. v. Willden*, No. 08-cv-00777, 2009 WL

3431571 (E.D. Va. Aug. 7, 2009) for the proposition that "Virginia law allows a third party to be

liable for another party's breach of fiduciary duty when that third party knowingly participated in

the breach," is no more convincing.  (Opp., p. 8).  In *MicroStrategy Servs. Corp. v. OpenRisk LLC*,

---

[5]  The Court in *StudCo* goes on to address the potential elements of a cause of action for aiding
and abetting a breach of fiduciary duty, noting that any such claim would require the requisite
"*mens rea*, or culpable state of mind."  *Id.* at *20.  This is further discussed in Section D.2 below.

No. 14-cv-01244, 2015 WL 1221263 (E.D. Va. Mar. 17, 2015), Judge Cacheris of the District

Court noted that he "decline[d] to adopt *AvalonBay's* reasoning," explaining that "[w]hile

*AvalonBay* has not been expressly overruled, its reading of *Halifax* overlooked the Supreme Court

of Virginia's equivocal language about such a cause of action." *Id.* at *3.

In light of the foregoing, reliance on an asserted tort of "aiding and abetting" should be

rejected in this case.

### C.    There is No Unlawful Joint Venture to Support a Conspiracy Claim

The Trustee offers no support for her allegation that the ULXP joint venture is the requisite

"wrongful act" to support any conspiracy-related claim.    The ULXP joint venture was not

"unlawful," and the Trustee points to <u>no</u> case or statute that says otherwise.    Instead, the Trustee

relies upon Rules 5.4(a) and 5.4(d)(3) of the Virginia Rules of Professional Conduct regarding

alleged improper fee sharing and inappropriate control.[6]    But the Virginia Rules of Professional

Conduct do not have the force of law; an alleged violation of a Rule of Professional Conduct –

---

[6]  To be clear, Defendants dispute that the ULXP joint venture violated the Rules of Professional Conduct in any manner whatsoever, and Defendants reserve all rights with respect thereto.  Even if the Production Service Fees are eventually deemed to constitute improper fee sharing under Rule 5.4, which the Defendants contend they are not, the Trustee's heavy reliance on such provision in this case is misplaced because there is no allegation that the payment of such fees <u>actually</u> happened.    Instead, and as pointed out in the Motion, the Trustee only alleges that "[u]pon information and belief, ULXP was sharing in fees from [LCR]'s legal practice" – a inappropriate and troubling pleading tactic where the Trustee already possesses all of the information necessary to determine the veracity of this allegation.  (Motion, p. 13).  Given her possession of LCR's books and records which enabled her to reference every payment made by LCR to ULXP (*see* Exhibit 26 to the Complaint) and her "extensive independent investigation," the Trustee must know that no such payments were in fact made.    In other words, without alleging that any of the allegedly improper payments actually occurred, and without alleging that such fee arrangement proximately caused any of the alleged damages at issue in this case, the Trustee seeks to invalidate the entire transaction merely because the MSA contained such provision.  *See Saks Fifth Avenue, Inc. v. James, Ltd.*, 630 S.E.2d 304, 311 (Va. 2006) ("First, a plaintiff must show a causal connection between the defendant's wrongful conduct and the damages asserted.    Second, a plaintiff must prove the amount of those damages by using a proper method and factual foundation for calculating damages.").

particularly by a non-lawyer – is not a basis for a finding of illegality as the Trustee suggests.  As

noted in the preamble of the Virginia Rules of Professional Conduct, a "[v]iolation of a Rule should

not give rise to a cause of action nor should it create any presumption that a legal duty has been

breached."  (Va. Rules of Prof'l Conduct, Preamble (2008)).  Rather, it continues, "[t]he Rules are

designed to provide guidance to lawyers and to provide structure for regulating conduct through

disciplinary agencies."  *Id.*; *see also Star Broad., Inc. v. Reed Smith LLP*, No. 08-00616, 2009 WL

482833, at *10 (E.D. Va. Feb. 24, 2009) (stating that a violation of a Rule of Professional Conduct

does not, by itself, establish a claim of legal malpractice); *Nasser v. Waller*, No. 16-cv-00032,

2017 WL 913816, at *7 (W.D. Va. Mar. 7, 2017) (granting motion to dismiss, in part, because all

of the plaintiff's claims were "premised on violations of ethical rules [that] are subject to dismissal

because a violation of a rule of professional conduct (and similarly, a judicial canon of conduct)

does not give rise to a private cause of action.").

Nevertheless, as the Trustee repeatedly does throughout the Opposition, she offers the

Court cases that do not withstand scrutiny.  None of her cited cases involve alleged violations of

ethical standards that would support the Trustee's novel theory; rather, they stand for the

unremarkable proposition that an alleged violation of an actual law could render an action

"unlawful."  *See Cars Unlimited II, Inc. v. National Motor Co., Inc.*, 472 F. Supp. 2d 740 (E.D. Va.

2007) (considering a motion to dismiss claims of actual fraud and statutory business conspiracy under

Virginia law where a lender alleged a borrower made material misrepresentations as to collateral for

the purpose of fraudulently inducing a loan); *Commercial Business Systems, Inc. v. Bellsouth

Services, Inc.*, 453 S.E.2d 261 (Va. 1995) (reviewing a summary judgment order with respect to

claims of common law conspiracy and statutory business conspiracy where an individual was alleged

to have interfered with the renewal of a party's contract in exchange for bribes by the party's

competitor); *Arrowsmith v. Mallory (In re Health Diagnostic Laboratory, Inc.)*, No. 17-cv-00413,

2017 Bankr. LEXIS 2330, at *23-*24 (E.D. Va. July 19, 2017) (considering a motion to dismiss,

among others, claims of common law conspiracy and statutory business conspiracy under Virginia

law and tortious interference under Connecticut law where defendants were alleged to have been

participants of a scheme involving illegal business practices including violations of federal and

state anti-kickback statutes).

In contrast to the unlawful activities in the above-referenced cases, ULXP was only

providing "back office" services at the same rates LCR had paid prior to the formation of ULXP;

the joint venture did not entail fraudulently inducing loans, interfering with LCR or its competitors'

business, bribes or the like.   LCR's outsourcing of such services to ULXP did not equate to

granting control of the practice of law over to ULXP.   Instead, the billing and other administrative

tasks were only an effect of the practice of law, not part of the practice of law itself.  *See Visiting*

*Nurse Association of Greater Philadelphia v. St. Paul Fire and Marine Insurance Co.*, 65 F.3d

1097, 1101 (3d Cir. 1995) (recognizing the billing/professional services dichotomy, and

classifying the act of billing as a commercial, rather than professional, aspect of practicing law);

*Gregg & Valby, L.L.P. v. Great American Ins. Co.*, 316 F. Supp. 2d 505, 513-14 (S.D. Tex. 2004)

(finding billing and fee-setting practices to not be professional services, the court explained, "even

tasks performed by lawyers are not considered professional services if they are ordinary activities

that can be completed by those lacking legal knowledge and skill," and that such activities "are

merely administrative tasks inherent to all businesses."); *Reliance National Insurance Co. v. Sears,*

*Roebuck & Co., Inc.*, 792 N.E.2d 145, 148 (Mass. Ct. App. 2003) (holding the billing function of

a lawyer is "largely ministerial" and "not a professional service"); *Lukas v. Bar Association of*

*Montgomery County, Maryland, Inc.*, 371 A.2d 669, 673 (Md. Sp. App. Ct. 1977) (holding that activities such as engineering, accounting or clerical work do not involve the practice of law).

Other than unilaterally throwing the label of "unlawful" on the ULXP joint venture, the Trustee offers no authority or fact in support of such label. Reliance on the same to support her claims should be rejected.

### D.    The Trustee Did Not Adequately Plead Aiding and Abetting

Assuming, *arguendo*, that the Court recognizes "aiding and abetting" as a cause of action, the Court should nevertheless dismiss the Trustee's claim because it is not properly pled. As noted in the Motion, the Trustee fails to plead the requisite predicate claims, and she fails to allege the necessary elements.

### 1.    The Complaint Lacks a Predicate Claim Against Other Defendants

In *MicroStrategy* and *Calderon v. Aurora Loan Serv., Inc.*, No. 10-cv-00129, 2010 WL 2306343 (E.D. Va. June 3, 2010), the District Court refused to acknowledge an "independent action" of aiding and abetting where the plaintiff alleged only an independent cause of action for "aiding and abetting," but failed to also plead a cause of action for the underlying tort against another defendant. *See MicroStrategy Services Corp.*, 2015 WL 1221263, at *3; *Calderon*, 2010 WL 2306343, at *6; *see also St. Paul Fire and Marine Insurance Co. v. Hoskins*, No. 10-cv-00087, 2012 WL 748574, at *1, *5 (W.D. Va. Mar. 7, 2012) (finding a cause of action for aiding and abetting breach of fiduciary duty was adequately pled where the plaintiff alleged a count of breach of fiduciary duty against one defendant, and a separate count of aiding and abetting that breach against distinct co-defendants). The Trustee's claim should meet the same fate.

In this case, the Trustee alleges that certain LCR officers and directors breached their fiduciary duties to LCR, its shareholders and creditors, and that such actions serve as the predicate breach of fiduciary duty claim for which the alleged aiding and abetting claim against the

Defendants attaches.  Unlike the cases relied upon by the Trustee where claims for aiding and abetting breach of fiduciary duty were asserted against defendants in addition to claims against specific parties who were alleged to have breached fiduciary duties, here, the Trustee has not identified any particular LCR directors or officers, and the Trustee has not commenced any separate adversary proceedings against any of LCR's former directors or officers.  A vague assertion that some party breached a fiduciary duty is insufficient to support a claim that a third party should also be held liable for such claim.[7]

The case law relied on by the Trustee in support of her argument that an aiding and abetting claim is actionable in Section B.1 of the Opposition illustrates Defendants' point.  In each of the cases, a predicate breach of fiduciary duty of a third party was either being pursued concurrently or had already been established.  In *In re Health Diagnostic Laboratory, Inc.*, in addition to the aiding and abetting breach of fiduciary duty claims against certain defendants, the trustee asserted claims for breach of fiduciary duties against other, specific defendants who were both shareholders in and directors of the debtor.  2018 WL 4676339, at *6-*7; *see also In re James River Coal Co.*, 360 B.R. at 173-74 (same); *Alliance Technology Group, LLC v. Achieve 1, LLC*, 2013 WL 143500, at *4-*5 (same, where claim against defendant for aiding and abetting breaches of fiduciary duties by other employees was "an [apparent] alternative theory to the [separate] breach of fiduciary duty claim" that was also asserted against the defendant).  In *AvalonBay Communities, Inc. v. Willden*,

---

[7]  This is not to say that Defendants concede that the Trustee would have cured this deficiency or established joint tortfeasor liability had the Complaint also asserted a breach of fiduciary duty against other defendants.  In fact, the Defendants dispute that the adding of additional claims or defendants resolves the issue, particularly in light of Judge Ellis's ruling in *Infinity Technology, LLC* where he dismissed the aiding and abetting claim against the defendant corporation even though the operative complaint contained a separate count for breach of fiduciary duty against another individual defendant.  2020 WL 6387378, at *3 and *6.  In other words, any purported joint tortfeasor liability was not enough to save an alleged separate claim for aiding and abetting.

the court held Art Willden liable for aiding and abetting his brother James Willden's breach of fiduciary duty. 2009 WL 2431571, at *11. Prior to commencing the action against Art Willden, AvalonBay Communities, Inc. had already prevailed on a summary judgment action against James Willden for, among other claims, breach of fiduciary duty of loyalty. *AvalonBay Communities, Inc. v. Willden*, No. 07-cv-00998, 2008 WL 2780983, at *6 (E.D. Va. July 16, 2008). With respect to *Tysons Toyota, Inc. v. Globe Life Insurance Co.*, in connection with the aiding and abetting claims asserted against the defendants, the president and member of the board of the plaintiff was alleged to have breached his fiduciary duty to the plaintiff; the Court noted his absence from the case, however, due to his filing of bankruptcy and because he was precluded from being joined due to a confirmed plan of reorganization). No. 93-1444, 1994 WL 717598, at *1 n.1, *3-*5 (4th Cir. Dec. 29, 1994).

### 2.    The Trustee Does Not Allege the Culpable State of Mind or a Benefit

Rather than directly dispute Defendants' contention in the Motion that she failed to alleged the requisite <u>actual</u> knowledge that certain alleged actions, such as entering into the ULXP joint venture, requiring the Conversion, or termination of the Deferred Compensation and Supplemental Retirement Plans, the Trustee falls back upon arguing that "constructive" knowledge is sufficient. (Opp., p. 20). But such is not the law. As noted just two months ago in *Studco Bldg. Sys. United States LLC v. 1ˢᵗ Advantage Fed. Credit Union*, "to establish a claim for aiding and abetting another party's breach of fiduciary duty, the third party must affirmatively aid the breach with the requisite *mens rea*, or culpable state of mind*." 2020 U.S. Dist. LEXIS 238945, at *20 (internal quotations omitted) (emphasis added); *see also AvalonBay Communities, Inc. v. Wilden*, 2009 WL 2431571, at *11 (stating that the claim requires the requisite *mens rea* or culpable state of mind).

The Trustee had to allege in the Complaint, but did not allege, that Defendants had actual knowledge that they were doing something wrong. In trying to satisfy the pleading standard, the

13

Trustee points to a July 2017 legal opinion from UnitedLex's counsel (that applied to another deal

and pre-dates the ULXP joint venture by nearly a year), or that Defendants allegedly had

knowledge of LCR's supposed insolvency, or that Defendants were simply told about LCR's past

misappropriation of client funds.    (Opp., p. 20).    None of these come anywhere close to

demonstrating the <u>culpable</u> state of mind required to show that Defendants actually knew of LCR's

fiduciary duties and that Defendants sought to intentionally assist in the breach of such duties.

Similarly, in merely claiming the Defendants gained the ability to market a "revolutionary

business model" and "secure additional investment" (Opp., p. 21), the Trustee fails to show that

the Defendants benefitted from the alleged breaches.    The "ability to market" is not the type of

benefit that satisfies this element.  *See In re HDL Diagnostic Laboratory, Inc.*, 2018 WL 467 6339,

at *4 and n.19 (where the benefit included distributions to shareholders and payments made by

debtor to IRS on behalf of shareholders in excess of approximately $79 million); *Alliance

Technology Group, LLC*, 2013 WL 143500, at *1, *5 (alleged breaches of fiduciary duty enabled

former employees of one entity to utilize trade secrets and proprietary information in employment

with newly formed, competitor to usurp corporate opportunities).    These examples starkly contrast

the asserted "benefit" allegedly obtained by the Defendants.    Indeed, there is no allegation that the

alleged benefit of marketing the concept lead to the addition of any other law firms to the desired

"constellation."

### E.    The Trustee's Claims for Avoidance of Fraudulent Transfers Under Bankruptcy Code Sections 548(a)(1)(A) and 544(b) and Applicable State Law Are Not Pled with Requisite Particularity

The Defendants moved to dismiss the Trustee's fraudulent transfer claims in Counts I, III,

and VI of the Complaint because the Trustee did not allege that payments to ULXP were made for

any purpose or intent other than procuring the ordinary back office and support services necessary

for the smooth functioning of a law firm, and because the Trustee's allegations regarding "badges

14

of fraud", such as insolvency, lacked the requisite particularity and were nothing more than conclusory statements.  (Motion, p. 31).

The Trustee seeks to cure her pleading defects by trying to give the <u>appearance</u> of detailed allegations by summarizing and listing various allegations from the Complaint on pages 31-33 of her Opposition.  These allegations, however, do not point to supporting facts, but instead make conclusory statements that LCR "was insolvent" or "within the zone of insolvency" at the time of the various transfers.  (Opp., pp. 31-33) (citing Complaint, ¶¶ 24, 53, 73, 93, 129, 195, 212, 262). The mere grouping of conclusory allegations together does not cure their conclusory nature; in other words, in this instance, the whole is <u>not</u> greater than the sum of its parts.  *See Gavin Solmonese, LLC v. Shvamsundar (In re Amcad Holdings, LLC)*, 579 B.R. 33, 38-39 (Bankr. D. Del. 2017) ("Mere recitations by a trustee that a debtor is insolvent are conclusory and will not survive a motion to dismiss.").

And even when the Trustee provides the slightest bit of additional color, such as in paragraph 24 of the Complaint where she says that in 2014 LCR "fail[ed] to generate sufficient revenue to pay its debts as they became due," she does not acknowledge or address the statements of LCR's CEO in her own exhibits that as of 2017 LCR had generated profit and reduced debt, or the fact that VCF entered into a $13 million dollar loan with LCR on December 29, 2017 – just a few months prior to the formation of ULXP.  (Compl., Ex. 5, p. 3); (Compl., ¶37, Ex. 19, p. 2). The Trustee cannot overcome these facts that she alleged, and that directly undermine her claims, simply by offering conclusory statements to the Court that LCR was insolvent.  Indeed, her own exhibits point to a different conclusion.

F.    **The Trustee's Claim for Avoidance of Constructively Fraudulent Transfers Under Bankruptcy Code Section 548(a)(1)(B) Is Not Sufficiently Stated**

Apparently realizing that ULXP did in fact provide services to LCR and that LCR was <u>not</u> charged a premium for such services, the Trustee's theory regarding reasonably equivalent value under Section 548(a)(1)(B) appears to have shifted – with the Trustee now brazenly seeking to wipeout, disregard, and simply ignore the contributions of hundreds of ULXP employees (formerly the support staff of LCR) that provided thousands of hours of support services to LCR's attorneys during the course of the MSA.  More specifically, the Trustee argues that ULXP was "an unlawful business venture" and that the services the staff provided, such as secretarial and billing support, "were effectively unlawful" and therefore cannot constitute reasonably equivalent value.  (Opp., p. 36).  The Trustee's novel and aggressive theory is not supported by law as described in Section C above, and therefore, fails.  And as clearly described above and in the Motion, appropriate and necessary services were provided by ULXP to LCR at the same rates LCR previously paid when it handled such services internally, creating at a minimum a strong presumption of reasonably equivalent value.

G.    **The Trustee Has Not Sufficiently Stated a Claim for Recharacterization of the ULXP Note**

The Trustee's attempts to rehabilitate her recharacterization claim are unpersuasive as several of the *Dornier Aviation* factors are in fact present with respect to the ULXP Note – all of which weigh heavily in favor of a debt finding.  (*See* Compl., Ex. 19).  Specifically, the title of the instrument, "Outstanding Deferred Loan Promissory Note", characterizes the arrangement as a debt-based transaction and makes reference therein to the parties as a borrower and a lender.  Further, the ULXP Note contains a fixed maturity date – only to be extended once to another date in the event LCR did not receive a distribution by the first date.  The maturity date is not, as the Trustee argues, "conditional" in any respect as payment is always required – whether it occurs by

16

the first maturity date or the extended date triggered by the terms of the ULXP Note. In addition, not only does the ULXP Note include a fixed rate of interest that must be paid by the maturity date, but it also includes a fixed rate of interest in the event LCR defaulted under the ULXP Note.[8]

To support her argument though, the Trustee argues that the ULXP Note should be recharacterized because LCR "sought to have the ULXP Note be seen as 'equity like' by [VCF]," and because VCF, the Trustee alleges, "did treat it as equity." (Opp., p. 41). She points to Exhibit 22 of the Complaint, which is an email between the Debtor and VCF dated January 31, 2019, as well as allegations in paragraphs 141-143 of the Complaint regarding the same. Yet the Trustee completely ignores the existence of the Intercreditor Agreement between ULXP and VCF that was executed <u>months later</u> in April 2019 that acknowledges the ULXP Note as <u>debt</u> subject to subordination and standstill provisions.[9] In other words, any questions raised by the email attached to the Complaint and the Trustee's conclusory allegations are quickly disposed of in light of VCF's clear acknowledgment of the ULXP Note as debt in the Intercreditor Agreement.

The Trustee's cited cases serve her no better. *Commonwealth Biotechnologies, Inc. v. Fornova Pharmworld, Inc., (In re Commonwealth Biotechnologies, Inc.)*, No. 11-30381, 2012 WL 5385632 (Bankr. E.D. Va. Nov. 1, 2012), for example, involves a <u>convertible</u> promissory note –

---

[8] It is not uncharacteristic for lending instruments to include an alternative maturity date, or for a note not to require periodic interest payments. Including the alternative maturity date in the initial instrument evidences the parties' intended long-term relationship and ULXP's support of LCR. Similarly, not requiring interest payments until the maturity date helped provide a cash float to LCR. Regardless of which maturity date applied, however, the debt (principal and interest) always remained due. The ULXP Note provided no mechanism to forgive such obligations.

[9] The Intercreditor Agreement is properly before the Court for consideration on a Motion to Dismiss because the Trustee has placed ULXP's secured Proof of Claim (Claim No. 174) at issue in the Complaint. More specifically, in Count VIII the Trustee expressly asks this Court to recharacterize ULXP's secured Proof of Claim. The Intercreditor Agreement is attached as an exhibit to the Proof of Claim.

of which the ULXP Note is not. Further, in that case the court noted that "[t]he cash infusion [resulting from the note] was conditioned upon Plaintiff relinquishing control to Defendant in ways that are usually associated with an equity transaction", including that the defendant joint venture's CEO, who arranged for the note and capital infusion, be appointed as the chairman of plaintiff's board of directors and the joint venture be entitled to nominate two additional directors to plaintiff's board. *Id.* at *4, *7. Here, no member of either of the Defendants' management teams was appointed to LCR's Board nor did they have the right to nominate or appoint members to LCR's Board.

Count VIII should be dismissed.

**H.      Any Avoidance of ULXP's Security Interest Should Be Limited to a Claim Under Bankruptcy Code Section 547**

For the reasons set forth herein, the Defendants dispute the Trustee's contention that at the time of the ULXP Note Transfer, ULXP was "an insider of the Debtor, who exercised dominion and control over the Debtor". (Opp., p. 39). Therefore, the Trustee's allegation that the ULXP Note constitutes an actual fraudulent transfer is baseless and should be disregarded by the Court.

**I.      The Trustee Fails to State a Claim for Disallowance Under Bankruptcy Code Section 502(d)**

For the reasons set forth herein, the Defendants stand by their contention in the Motion that the Trustee's allegations with respect to the alleged Avoidable Transfers and Preferential Transfers are meritless and the Trustee's claim for disallowance should similarly fail. Therefore, Count VII should be dismissed.

**J.      Defendants' Affirmative Defenses are Appropriate on a 12(b)(6)**

The Trustee attacks Defendants' arguments that certain affirmative defenses, such as *in pari delicto* or the intra corporate immunity doctrine, are appropriate for a motion to dismiss because they are premature and involve questions of fact. Defendants' assertion of these defenses

at this stage, however, is not contingent upon extraneous facts not yet before the Court; rather, the defenses are clear from the face of the Complaint based on the facts the Trustee alleges (or fails to allege) and are appropriate for a motion to dismiss. *See Leveto v. Lapina*, 258 F.3d 156, 161 (3d Cir. 2001) ("[A] complaint may be subject to dismissal under Rule 12(b)(6) when an affirmative defense . . . appears on its face."); *Alberts v. Tuft (In re Greater Southeast Community Hospital Corp. I)*, 353 B.R. 324, 335 (Bankr. D.D.C. 2006) (quoting *Smith–Haynie v. District of Columbia*, 155 F.3d 575, 578 (D.C. Cir. 1998)) ("affirmative defenses 'may be raised by pre-answer motion under Rule 12(b) when the facts that give rise to the defense are clear from the face of the complaint.'"). *See also Knauer v. Jonathon Roberts Financial Group, Inc.*, 348 F.3d 230, 231, 233 (7th Cir. 2003) (affirming dismissal of, among others, claims for breach of fiduciary duty under Rule 12(b)(6) where pleadings showed suit was barred by *in pari delicto*); *Official Committee of Unsecured Creditors v. R.F. Lafferty & Co., Inc.*, 267 F.3d 340, 360 (3d Cir. 2001) (same); *Hays v. Pearlman*, No. 10-cv-01135, 2010 WL 4510956, at *7 (D.S.C. Nov. 2, 2010) (dismissing claims based on application of *in pari delicto*); *Collins & Aikman Corp. v. Stockman*, No. 07-00265, 2010 WL 184074, at *1, *7 (D. Del. Jan. 19, 2010) (same).

## 1.    <u>Insufficient Insider Allegations to Circumvent In Pari Delicto</u>

The Trustee seeks to avoid the *in pari delicto* defense by arguing that she has alleged that Defendants are insiders. Yet the Trustee's insider arguments fail to distinguish the status of Defendants and LCR before the parties contracted and after. *See Nisselson v. Lernout*, 568 F.Supp.2d 137, 144-46 (D. Mass. 2008) (acknowledging the "corporate insider exception" while holding it was not applicable as "the correct moment to analyze the in pari delicto inquiry is at the time of the wrongdoing" and the alleged breaches by the director defendants relating to approval of and effectuating a merger "all predated or were contemporaneous with the merger"). To be precise, certain of the alleged claims occurred <u>prior</u> to the point in time when the Defendants had

19

any relationship with the Debtor where they could theoretically exercise control over the Debtor. On their own accord, the LCR officers and directors and shareholders, as applicable, took actions prior to the formation of ULXP (*e.g.*, converting to a professional limited liability corporation, terminating the Deferred Compensation and Supplemental Retirement plans and entering into the joint venture with UnitedLex) that they deemed to be in the best interest of LCR, regardless of whether the joint venture with UnitedLex was effectuated.[10]    Such decisions were made by a collective group, including, presumably, individuals who had no direct involvement in negotiations with UnitedLex.    Accordingly, the Defendants cannot be deemed to have been "corporate insiders" at the time of the allegations and the Trustee does not overcome the *in pari delicto* defense.

Additionally, the Trustee insinuates that the Defendants became insiders after the formation of ULXP through the exertion of control over LCR.    However, once again, the allegations do not support the assertion that the Defendants, among other things, controlled the Debtor's bank accounts, including timing and amount of payments to Debtor's creditors, including themselves, hired or fired any of Debtor's employees, or otherwise took any actions that would impact the Debtor without prior approval from the Debtor's management, as the Trustee asserts. *See, e.g.*, *In re Radnor Holdings Corp.*, 353 B.R. 820, 841 (Bankr. D. Del. 2006) (holding access to performance reports and other financial information from a company is insufficient to establish insider status).    The Trustee relies on the use of buzzwords, without more, to support her assertion. Importantly, statements and information included in exhibits to the Complaint actually contradict many of her highlighted allegations.    *See, e.g.*, Motion, Ex. B, Addendum 1, pp. 1, 2, 4 and 6 of 10 (noting that only policies and practices that LCR approves of will be implemented, and that

---

[10]    *See* Motion, p. 8; Compl., Exs. 6, 12.

LCR's "General Counsel [is] to provide [ULXP] with oversight and final determination of all conflict resolution); *see also* Compl., Ex. 6, pp. 4-5 of 11 (LCR's Chief Executive Officer stating that the "Members [of LCR] remain the sole owners of LR, and LR remains and independent law firm.  ULX is not acquiring [LCR].  We will continue to govern our own operations, elect our leadership, set our compensation, approval lateral or promoted Members, and will be responsible for directing and delivering excellent legal solutions and services to our clients").  This is particularly troubling since the Trustee chose what exhibits to include and presumably carefully reviewed them before making such allegations.

The case law relied on by the Trustee in support of her position is inapplicable.  For instance, *In re Hellas Telecommunications (Luxembourg) II SCA*, 524 B.R. 488 (Bankr. S.D.N.Y. 2015) involved defendants who were deemed to be insiders, unable to avail themselves of the *in pari delicto* defense, where, among other things, they owned and controlled entities that held all of the debtor's and debtor's parent's common stock and controlled the debtor's affiliates by installing certain key employees on the board of directors or board of managers; *Lightsway Litigation Services, LLC v. Yung (In re Tropicana Entertainment, LLC)*, 520 B.R. 455 (Bankr. D. Del. 2014) involved a defendant who was the sole director or manager of certain debtors and/or the chief executive officer of the sole manager or sole member of other debtors; *Burtch v. Seaport Capital, LLC (In re Direct Response Media, Inc.)*, 466 B.R. 626 (Bankr. D. Del. 2012) involved defendants who were directors and officers of the debtor or control persons pursuant to interlocking directorates between certain defendants and the debtor.

No employee of either of the Defendants was alleged to be installed as or otherwise served on the Board of the Debtor nor did the Trustee allege that the Defendants hold an ownership stake in the Debtor.  Moreover, when one reads the exhibits attached to the Complaint, it cannot be

21

plausibly alleged that the Defendants performed any tasks or took any actions that could be construed as exerting control or direction over the Debtor or its officers and directors justifying designation as an "insider" as nothing happened without LCR's approval.  (*See* Motion, Ex. B, Addendum 1, pp. 1, 2, 4 and 6 of 10).  The Trustee's accusation is baseless, and the *in pari delicto* defense should remain available to the Defendants and bars recovery on the face of the Complaint.

### 2.    The Adverse Interest Exception Does Not Circumvent In Pari Delicto

Rather than examine the conduct of LCR's officers and directors, the Trustee incorrectly focuses on <u>Defendants'</u> alleged conduct when attempting to invoke the very narrow "adverse interest" exception to *in pari delicto*.  The exception instead requires examination of whether LCR's officers and directors were allegedly at equal fault on account of the alleged wrongful acts, and whether they were allegedly motivated by self-interest rather than a desire to serve the firm. *See Baena v. KPMG LLP*, 453 F.3d 1, 8 (1st Cir. 2006); *see also In re Infinity Business Group, Inc.*, 612 B.R. 76, 140, 146 (D.S.C. 2019) (holding adverse interest exception did not apply where the alleged wrongful conduct of the debtor's management, among other things, helped the corporation extend its life); *Zazzali v. Hirschler Fleischer P.C.*, 482 B.R. 495, 513 (D. Del. 2012) (holding Trustee's argument that adverse-interest exception to imputation applied was unpersuasive where the conduct of the debtor's insiders was not adverse to the debtor's interests as the alleged fraud conferred a benefit on the debtor in the form of more than $100 million of revenue).  The Trustee's Complaint does not sufficiently plead such self-interest by the LCR Directors and Officers.

According to allegations set forth in the Complaint, when the discussions surrounding the formation of ULXP began, LCR was "searching for a lifeline" and the joint venture with ULXP allegedly provided such lifeline <u>to the firm</u> (not the individual directors and officers).  (Compl., ¶25).  In addition, conversion of the firm from a professional corporation to a professional limited

liability corporation and termination of the Deferred Compensation and Supplemental Retirement plans, actions voted on by LCR's shareholders, allegedly yielded significant tax savings, enabled LCR to materially reduce its monthly cash burn, and put LCR in a position to be able to pay sizeable amounts to shareholders on account of partner draws and residuals of the compensation and retirement plan balances.  (Compl., ¶¶95-99, 102-105).  These actions benefitted the LCR Directors and Officers just as they allegedly benefitted other partners at LCR, as well as LCR itself.  Accordingly, the adverse interest exception is not the safe-harbor the Trustee seeks.

### 3.    The Personal Stake Exception Does Not Circumvent the Corporate Immunity Doctrine

The Trustee's attack on the intra corporate immunity doctrine reveals the failings of the Trustee's theories.  While alleging in the Complaint that Defendants "required" that LCR take several actions, such as converting to a PLLC and terminating the Deferred Compensation and Supplemental Retirement plans, the Trustee now appears to back away from such purported direction by arguing that "UnitedLex, ULXP, and LeClairRyan were separate legal entities when all the events *predicating* the conspiracy occurred," and thus, the intra corporate immunity doctrine could not apply.  (Opp., p. 25) (emphasis added).  Nevertheless, as stated herein, the Complaint is devoid of any allegation that would render such pre-ULXP actions "unlawful," and therefore their separate legal status prior to forming ULXP is of no consequence to the doctrine.

The Trustee also seeks to avoid having her "insider" allegations defeat her conspiracy claims via the intra corporate immunity doctrine by alleging that Defendants had an "independent personal stake" that precludes its application.  (Opp., p. 25).  But yet again, the Trustee relies on case law for which the holdings provide soundbites for her argument, but the facts of which do not support her claim.  For example, both *Buffalo Wings Factory, Inc. v. Mohd*, 622 F. Supp. 2d 325 (E.D. Va. 2007) and *Flexible Benefits Council v. Feltman*, No. 08-cv-00371, 2008 WL 2465457

(E.D. Va. June 16, 2008) involve suits against former employees who were accused of conspiring against their employers and alleged to have stolen money and/or the employer's intellectual property while still employed or shortly following termination of employment for use by a newly formed, competing entity.  Unlike *Buffalo Wings* and *Flexible Benefits Council*, UnitedLex was not an employee or agent of the Debtor prior to the formation of ULXP (nor thereafter) and ULXP was not created as a competitor of the Debtor; ULXP did not provide legal services, but only "back office" services, such as accounting, marketing, technology and human resource services to support LCR.  (Compl., ¶¶26, 84, Ex. 11; Motion, Ex. B).

Moreover, the *Fidelity National Title Insurance Co. v. Washington Settlement Group, LLC*, No. 12-04793, 2013 WL 9451969 (Fairfax Cty. Cir. Ct. Sept. 4, 2013) and *Colgate v. Disthene Group, Inc.*, No. 10-00158, 2013 WL 8019576 (Buckingham Cty. Cir. Ct. Feb. 4, 2013) cases the Trustee cites involve suits against defendants who were alleged to have conspired against the plaintiffs for their own personal benefit to, among other things, engage in self-dealing transactions where they paid themselves salaries, bonuses and fees grossly in excess of the value of services rendered, made interest-free loans to themselves with the plaintiff's capital, used plaintiff's employees to perform personal services, or misappropriated third-party funds.  Here there are no adequate allegations that Defendants looted LCR or themselves misappropriated LCR client funds for their own benefit.  Rather, the Trustee's own exhibit shows that ULXP was paid for services at the <u>same rates</u> that LCR had paid prior to the formation of ULXP and would <u>invoice</u> LCR (as ULXP neither had access to nor control over LCR's bank accounts) for those fees.  (Compl., Ex. 6, p. 6).

Importantly, the Defendants did not have or act on account of an independent personal stake at the expense of LCR.  With LCR as the alleged "test case" law firm for the contemplated

"constellation of law firms", the Defendants did not seek to harm the Debtor's business.  On the contrary, the Defendants were invested in LCR's success as the Debtor's success would impact ULXP's success.  For these reasons, the exception must fail, and Counts X and XI should be dismissed in their entirety.

## **CONCLUSION**

For the reasons set forth in the Motion, and those additional reasons stated in this Reply, the Defendants respectfully request that the Court grant the relief requested by the Defendants in the Motion, deny the Trustee leave to amend, and grant such other and further relief as may be just and appropriate under the circumstances.

Dated:  February 19, 2021

/s/ *Thomas J. McKee, Jr.*
David G. Barger (VSB No. 21652)
Thomas J. McKee, Jr. (VSB No. 68427)
Greenberg Traurig, LLP
1750 Tysons Boulevard, Suite 1000
McLean, Virginia 22102
Telephone:  (703) 749-1300
Facsimile:  (703) 749-1301
Email:    bargerd@gtlaw.com
                mckeet@gtlaw.com

and

J. Gregory Milmoe (admitted *pro hac vice*)
Greenberg Traurig, LLP
One International Place, Suite 2000
Boston, MA 02110
Telephone:  (617) 310-6064
Email:  milmoeg@gtlaw.com

*Counsel to Defendants*

25

## CERTIFICATE OF SERVICE

I hereby certify that on this 19th day of February 2021, I served a true and correct copy of

*Defendants' Reply Memorandum in Support of Their Motion to Partially Dismiss the Complaint*

via the Court's CM/ECF filing system upon:

> Erika L. Morabito, Esq.
> Brittany J. Nelson, Esq.
> FOLEY & LARDNER LLP
> 3000 K Street, NW, Suite 600
> Washington, DC 20007-5109
> emorabito@foley.com
> bnelson@foley.com
>
> *Special Counsel to Lynn L. Tavenner, Chapter 7 Trustee*

> /s/ *Thomas J. McKee, Jr.*
> Thomas J. McKee, Jr. (VSB No. 68427)
> Greenberg Traurig, LLP
> 1750 Tysons Boulevard, Suite 1000
> McLean, Virginia 22102
> Telephone:  (703) 749-1300
> Facsimile:  (703) 749-1301
> Email:    mckeet@gtlaw.com
>
> *Counsel to Defendants*