Douglas M. Foley (VSB No. 34364)
Sarah B. Boehm (VSB No. 45201)
Shawn R. Fox (admitted *pro hac vice*)
MCGUIREWOODS LLP
Gateway Plaza
800 East Canal Street
Richmond, Virginia 23219
Telephone: (804) 775-1000

*Counsel to ABL Alliance, LLLP,*
*Senior Secured First Lien Lender*

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**RICHMOND DIVISION**

| | |
|---|---|
| In re: | ) Chapter 11 |
| LECLAIRRYAN PLLC | ) Case No. 19-34574-KRH |
| Debtor.[1] | ) |

**LIMITED OBJECTION OF ABL ALLIANCE, LLLP TO**
**MOTION FOR ENTRY OF AN ORDER AUTHORIZING AND**
**DIRECTING PAYMENT OF CLIENT EXPENSE REIMBURSEMENTS**

ABL Alliance, LLLP ("**ABLA**"), by counsel, submits this limited objection (the "**Objection**") to the *Motion for Entry of an Order Authorizing and Directing Payment of Client Expense Reimbursements* (the "**Motion**") (Doc. No. 71).[2] ABLA is the Virginia-based senior secured first lien lender in the above-captioned case (this "**Case**"). In support of this Objection, ABLA respectfully states as follows:

**PRELIMINARY STATEMENT**

ABLA makes this Objection for the limited purpose of correcting the Debtor's omissions and misstatements regarding its potential misuse of client funds received for client advance

---

[1] The last four digits of the Debtor's federal tax identification number are 2451.

[2] Capitalized terms used but not defined herein shall have the meanings ascribed them in the Motion.

1

payment expenses ("CAPE").[3]  Despite the thinly veiled accusations in the Motion, the Debtor is squarely at fault concerning any mishandling of CAPE funds.  In short, the Debtor now asserts that it received funds in advance for payment of client expenses instead of paying such expenses and then seeking reimbursement from the client.  As the Debtor notes, the receipt of funds prior to the Debtor's payment of the expense may create a trust obligation for the Debtor; however, it is unclear what, if any, funds constitute CAPE.

From the outset of the relationship between the Debtor and ABLA, ABLA sought to ensure that it would not have a security interest or lien on any of the Debtor's trust funds.  However, the Debtor now asserts it abdicated its duties and placed pre-paid expenses—the alleged "trust funds"—in an interest bearing non-trust fund money market account.  The Debtor then states it funded its operating account with these funds to cover outstanding checks.

It was only after the Debtor's repeated failure to meet its obligations to ABLA under the Loan Agreement and the Dominion of Cash Letter Agreement that ABLA exercised its rights in funds held in the Debtor's non-trust accounts.  Even after the Debtor failed to meet its obligations to ABLA, ABLA sought to maintain the status quo for Client Vendors by providing access to funds that were sufficient to cover the then outstanding checks budgeted by the Debtor and drawn on the Debtor's accounts over which ABLA had control.  The Debtor, however, spent in excess of the budget and in excess of the amount it reported would be sufficient, causing certain of the checks to bounce.  At that time, ABLA had no role in determining what CAPE checks were outstanding, what CAPE checks needed to be paid, or for what purposes the CAPE checks were drawn—ABLA relied upon the Debtor for all of this information.  It is clear that a chapter 7 trustee

---

[3] The Debtor refers to "Client Expense Reimbursements" in the Motion, however these amounts are more accurately described as "Client Advance Payment Expenses."

2

is needed to reconcile CAPE, to the extent it exists, client reimbursements, and the ramifications of the Debtor's accounting practices.

## BACKGROUND

1. The Debtor filed its voluntary petition for relief under chapter 11 of the Bankruptcy Code on September 3, 2019 (the "**Petition Date**"), commencing the above-captioned chapter 11 case (this "**Case**"). The Debtor continues to operate its business and manage its property as a debtor-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. No trustee, examiner, or official committee of unsecured creditors has been appointed. On September 12, 2019, the United States Trustee filed a *Motion to Convert Case to Chapter 7* (Doc. No. 61), which is currently set for hearing on September 26, 2019.

2. The Debtor asserts that prior to the Petition Date, it placed CAPE funds into a money market account—not a trust account[4]—where they would remain until the Debtor commingled these funds into its operating account[5] and issued a check to the applicable Client Vendor. *Id.* at 3. The Debtor further alleges that between July 26, 2019, and July 29, 2019, it comingled $1.2 million to pay such checks. *Id.*

3. The Debtor contends the "post-petition Client Expense Reimbursements are not property of the [] estate" and that Client Vendors are entitled to payments of these amounts. *Id.* at 6. Based, at least in part, on this conclusion, the Debtor seeks an order "authorizing and directing

---

[4] The money market account identified by the Debtor was encumbered by ABLA's lien as evidenced and perfected by a Deposit Account Control Agreement dated April 18, 2019 between Debtor, ABLA, and HSBC Bank USA, National Association. ABLA exercised further control over this money market account pursuant to that certain letter agreement dated July 19, 2019 ("Dominion of Cash Letter Agreement").

[5] Pursuant to the Dominion of Cash Letter Agreement, the Debtor was required to open a disbursement account to facilitate the clearing of checks. However, it failed to comply, which contributed to the comingling of these funds.

3

the Debtor . . . to disburse these amounts received post-petition to the appropriate Client Vendors, or to the related client if so directed by the applicable client." *Id.* at 5.[6]

## OBJECTION

4. As noted above, ABLA objects to the Motion to address the Debtor's allegations regarding CAPE. Moreover, the allegations made in the Motion underscore the need to have a neutral third-party chapter 7 trustee appointed to address these issues. The issues identified by the Debtor with respect to CAPE require thorough diligence to verify the nature and extent of these alleged "trust funds" and who may have rights with respect to such funds.[7] ABLA requests that the Court adjourn its consideration of the Motion until after the Court rules on the motion to convert this case to chapter 7.

5. The allegations and analysis in the Motion are incomplete at best. First, ABLA acted well within its rights to exercise control over its collateral. ABLA did not assert control over the Debtor's numerous trust accounts. Second, after the Debtor's repeated defaults, ABLA continued to work with the Debtor to maintain sufficient funds in the operating account to insure outstanding checks identified by the Debtor would clear. However, the Debtor's operating accounts became overdrawn as a result of a combination of factors, including the Debtor's failure to open a disbursement account as required by the Dominion of Cash Letter Agreement, the comingling of funds, and the Debtor's failure to account for debits made through automatic fund withdrawals.

---

[6] Though this relief is sought, it does not attempt to harmonize the treatment of CAPE with the settlement of accounts receivable previously authorized by this Court. *See* Doc. No. 51 (Interim Order).

[7] Particularly puzzling is the inclusion of "soft costs" in the amounts the Debtor asserts constitute CAPE. To date, the Debtor has failed to provide any support for including these amounts as CAPE.

6. The Debtor subsequently informed ABLA that funds held in the money market account, not a trust account, were allegedly funds received from clients for the "advance payment" of certain expenses—*i.e*, CAPE funds. The Debtor asserts it billed its clients for various expenses that had not yet been paid by the Debtor. It would then retain these funds in the money market account—presumably so the Debtor would be able to obtain the interest generated by the money market account.

7. ABLA has not been able to verify whether the Debtor accepted funds for expenses it had not yet paid despite repeated requests to the Debtor in the days before the bankruptcy filing. It is clear that a chapter 7 trustee is needed to reconcile CAPE, to the extent it exists, client reimbursements, and the ramifications of the Debtor's accounting practices.

8. If what the Debtor alleges is true regarding its prepetition practice, the alleged CAPE funds should have been immediately placed into a trust account upon receipt. Holding any such amounts in a non-trust account, including the money market account, would appear to have serious ramifications. *See* Virginia Rule of Professional Conduct 1.15 (Safekeeping Property) ("(a)(1) All funds received or held by a lawyer or law firm on behalf of a client or a third party, or held by a lawyer as a fiduciary, other than reimbursement of advances for costs and expenses shall be deposited in one or more identifiable trust accounts."); s*ee also* Legal Ethics Op. No. 1636 (Apr. 19, 1995) (Trust Funds, Use of Funds Received from Client Intended as Reimbursement for Costs and Expenses Incurred by Foreign Law Firm).[8]

9. ABLA reserves all rights regarding prepetition and postpetition funds that the Debtor now asserts are attributable to CAPE. Further, ABLA expressly reserves any and all rights and nothing in this Objection shall be deemed a waiver of such rights.

---

[8] The Debtor appears to acknowledge the gravity the situation because it has stated on the record that it has informed the Virginia State Bar of this issue. *See* Sept. 3, 2019 Tr. 17.

WHEREFORE, ABL Alliance, LLLP, respectfully requests that this Court consider the facts set forth in this limited Objection and adjourn consideration of the Motion until after a ruling on the motion to convert this case to chapter 7.

Dated: September 23, 2019  
Richmond, Virginia

Respectfully Submitted,

/s/ Douglas M. Foley  
Douglas M. Foley (VSB No. 34364)  
Sarah B. Boehm (VSB No. 45201)  
Shawn R. Fox (admitted *pro hac vice*)  
McGuireWoods LLP  
Gateway Plaza  
800 East Canal Street  
Richmond, Virginia 23219  
Telephone: (804) 775-1000  
Email:  dfoley@mcguirewoods.com  
            sboehm@mcguirewoods.com  
            sfox@mcguirewoods.com

*Co-Counsel to ABL Alliance, LLLP,  
Senior Secured First Lien Lender*

### Certificate of Service

The undersigned hereby certifies that on this 23rd day of September 2019, a true and correct copy of the foregoing was served via the Court's electronic case filing system (CM/ECF) to all parties registered to receive such notice in the above-captioned case, including the Office of the United States Trustee and Counsel for the Debtor.

/s/ Douglas M. Foley

6