## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
## RICHMOND DIVISION

| | |
|---|---|
| In re: | Chapter 11 |
| **LECLAIRRYAN PLLC,** | **Case No. 19-34574 (KRH)** |
| Debtor.[1] | |

### SECOND INTERIM ORDER AUTHORIZING LECLAIRRYAN PLLC TO USE CASH COLLATERAL, GRANTING ADEQUATE PROTECTION AND RELATED RELIEF, AND SCHEDULING A FINAL HEARING

Upon the motion (the "Motion")[2] of LeClairRyan PLLC, the above-captioned debtor and debtor-in-possession ("LeClairRyan" or the "Debtor") for entry of an order, pursuant to sections 105, 361, and 363 of the Bankruptcy Code and Bankruptcy Rule 4001, authorizing the Debtor to use cash collateral and granting certain adequate protection and related relief; the Court finds that: (a) it has jurisdiction over the matters raised in the Motion pursuant to 28 U.S.C. §§ 157 and 1334(b); (b) this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2); (c) the relief requested

---

[1]      The last four digits of the Debtor's federal tax identification number are 2451.

[2]      Unless otherwise defined herein, all capitalized terms shall have the meaning ascribed to them in the Motion.

HUNTON ANDREWS KURTH LLP
Riverfront Plaza, East Tower
951 East Byrd Street
Richmond, Virginia 23219
Telephone: (804) 788-8200
Facsimile: (804) 788-8218
Tyler P. Brown (VSB No. 28072)
Jason W. Harbour (VSB No. 68220)

*Proposed Counsel to the Debtor*
*and Debtor in Possession*

in the Motion is in the best interest of the Debtor, its estate and creditors, and is necessary to

prevent immediate and irreparable harm to the Debtor, and its estate and operations; (d) proper

and adequate notice of the Motion and the hearing thereon has been given and no other or further

notice is necessary; (e) the Lender and ULXP are adequately protected by virtue of the adequate

protection provided in Paragraphs 3 – 7; and (f) upon the record herein after due deliberation

thereon, good and sufficient cause exists for the granting of the relief as set forth herein.

Therefore,

**IT IS HEREBY ORDERED THAT:**

1.      The relief requested in the Motion is hereby GRANTED on an interim basis.

2.      Subject to paragraph 10 and to the entry of an order, to be submitted to the Court

on September 26, 2019, which provides for the conversion of the Debtor's case to Chapter 7

effective as of 12:00 p.m. on October 4, 2019, the Debtor is authorized to use cash collateral

solely in accordance with the Budget attached hereto as Exhibit 1 to satisfy (i) any and all pre-

Petition Date operating and other expenses approved by the Court, (ii) obligations incurred in the

ongoing post-Petition Date operation of the Debtor's business, and (iii) any and all costs and

expenses arising in connection with the administration of the Debtor's estate, including, without

limitation, for the payment of any fees and expenses owed to professionals employed by the

Debtor in this chapter 11 case upon the entry of an order from this Court authorizing the payment

of such professional's fees and expenses.

3.      While reserving the rights of all parties to contest whether and the extent to which

the Lender has valid perfected security interests in any of the Debtor's property, for the purpose

of providing adequate protection on account of any valid perfected security interests the Lender

may have in the Debtor's property as of the Petition Date (collectively, "Lender's Collateral"),

2

the Lender is hereby granted as security solely to the extent of the diminution in the value of the

Lender's Collateral, a valid, perfected, and enforceable security interest (the "Lender

Replacement Liens") in and upon the Lender's Collateral in existence as of the Petition Date or

thereafter acquired (i) to the extent of any diminution in value of Lender's interests in the

Lender's Collateral, including, without limitation, any such diminution in value resulting from

the use (including, without limitation, use in accordance with this Interim Order) by the Debtor

of the cash collateral and any other Lender's Collateral and the imposition of the automatic stay

pursuant to Bankruptcy Code section 362, and (ii) to the same extent, nature, and priority of any

security interests held by the Lender as of the Petition Date.

4.    While reserving the rights of all parties to contest whether and the extent to which

ULXP has valid perfected security interests in any of the Debtor's property, for the purpose of

providing adequate protection for any valid perfected security interests ULXP may have in the

cash collateral, ULXP is hereby granted as security solely to the extent of the diminution in the

value of the cash collateral, a valid, perfected, and enforceable security interest subordinate in all

respects to the Lender Replacement Liens (the "ULXP Replacement Liens"; and together with

the Lender Replacement Liens, the "Replacement Liens") in and upon the cash collateral (i) to

the extent the cash collateral is used by the Debtor pursuant to the Budget and (ii) to the same

extent, nature, and priority of any security interests held by ULXP as of the Petition Date.

5.    The Replacement Liens shall be valid, perfected, enforceable, and effective upon

entry of this Interim Order without the necessity of execution, filing, or recordation of any

financing statements or security agreements; provided, however, that notwithstanding anything

else in this Interim Order, the Replacement Liens shall not encumber or otherwise attach to

(a) any causes of action under chapter 5 of the Bankruptcy Code or any proceeds of such causes

3

of action or (b) any property in which the Debtor does not hold an equitable interest, including

without limitation any property in which the Debtor holds only legal title such as funds held in

trust.

6.      The Debtor is authorized and shall make payments to the Lender to curtail the

Lender's claims for principal, interest, and expenses to the extent funds are available in

accordance with the waterfall set forth in the Budget.

7.      Subject to the Carve-Out described in paragraph 8 below, if the Replacement Liens

and the curtailment payments authorized in this Interim Order are insufficient to protect the

Lender against any diminution in value of the Lender's Collateral, then the Lender shall have an

administrative expense claim allowable under Bankruptcy Code sections 507(b) and 503(b)

having priority over all other costs and expenses of administration of any kind, which claim shall

at all times be senior to the rights of the Debtor, or any successor trustee or estate representative in

the Chapter 11 case of the Debtor.  Any such claim provided to the Lender as referenced in this

paragraph shall be referred to as the "Super-Priority Claim."  The Debtor reserves all rights to

object to the allowance of any such Super-Priority Claim on any basis, including without

limitation, that no diminution in value of the Lender's Collateral has occurred.  In addition to the

foregoing, except as otherwise ordered by the Court and in compliance with the Budget, none of

Lender's Collateral may be used to make any payments with respect to any amounts owed as of

the Petition Date, except for the payments to the Lender contemplated in paragraph 6 above.

8.      The Replacement Liens and the Super-Priority Claim, if allowed, shall be subject

only to (i) the payment of any unpaid fees payable pursuant to 28 U.S.C. § 1930 and (ii) fees

payable to the clerk of the Bankruptcy Court (collectively, the "Carve-Out").

4

9.      The Debtor shall provide the Lender and ULXP on a weekly basis a report of actual receipts and disbursements for the prior week compared to the Budget (a "Variance Report").  The Variance Report shall be provided on the second business day of each applicable week for the preceding week.

10.      Absent a subsequent order of the Court or an agreement between the Debtor and the Lender, the Debtor's authorization to use cash collateral hereunder shall terminate upon the first to occur of 12:00 p.m. on October 4, 2019, or any of the following, provided that the Debtor shall be permitted to cure any of such events that is able to be cured within two (2) business days following such event:

(a)      two (2) business days after receipt of written notice from the Lender if the applicable Variance Report reflects that the aggregate amount of Total Operating Disbursements has exceeded the aggregate amount of Total Operating Disbursements in the Budget through the relevant week by seven percent (7%), provided that any payments to On-Site shall not be included in such calculations;

(b)      the Debtor files a pleading with the Court seeking an order to authorize the use of cash collateral inconsistent with this Interim Order or that seeks approval of a priming, senior, or pari passu security interest in or lien upon the Lender's Collateral, and the proceeds of such financing would not result in the payment in full of the Lender, including without limitation all of Lender's allowable interest, fees and expenses;

(c)      the filing by the Debtor of any pleading seeking to challenge the Lender's liens or otherwise asserting rights, claims or causes of action against Lender;

(d)      failure to timely provide a Variance Report;

5

(e)     the dismissal of this chapter 11 case or the appointment of a chapter 11 trustee or examiner with expanded powers in this chapter 11 case;

(f)     termination of the Debtor's exclusive right to file a chapter 11 plan;

(g)     reversal of this Interim Order through reconsideration or appeal; or

(h)     two (2) business days after receipt of written notice from the Lender if the Debtor fails to comply with the terms of this Interim Order.

11.     Except with respect to the payments to the Lender authorized in paragraph 6 above, unless and until the Lender and/or ULXP receive additional and appropriate relief from this Court, neither the Lender nor ULXP shall offset, transfer, diminish, or otherwise draw down on any of the Debtor's accounts and/or assets.  In addition, no other creditor shall offset, transfer, diminish, or otherwise draw down on any of the Debtor's accounts and/or assets absent express authority from the Debtor in accordance with the Budget or pursuant to a subsequent order of this Court.

12.     The automatic stay under Bankruptcy Code section 362(a) shall be, and hereby is, modified to the extent necessary to permit (i) the Lender to apply payments made pursuant to paragraph 6 above to curtail the Lender's claims for principal, interest, and expenses and (ii) to send a notice and exercise any rights and remedies hereunder as set forth herein.

13.     Nothing in this Interim Order or the Motion shall be construed as prejudicing the rights of the Debtor or any other party in interest to dispute or contest whether the Lender or ULXP has a valid perfected security interest in the cash collateral or any other property of the Debtor's estate.

14.     The Lender and ULXP reserve the right to request further or different adequate protection for the period of time after the Debtor's authorization to use cash collateral under this

6

Interim Order has terminated, and the Debtor or any other party may contest any such request. In addition, the Lender, ULXP, and the Debtor reserve all rights and defenses with respect to any further order or further relief pertaining to cash collateral.

15. The Debtor is authorized and empowered to take all actions necessary to implement the relief granted in this Interim Order.

16. The contents of the Motion and the notice procedures set forth in the *Interim Order Authorizing LeClairRyan PLLC to Use Cash Collateral, Granting Adequate Protection and Related Relief, and Scheduling a Final Hearing* [Doc. No. 41] provided good and sufficient notice and satisfied Bankruptcy Rules 4001 and 9014 by providing parties with notice and an opportunity to object and be heard at a hearing.

17. The requirement under Local Bankruptcy Rule 9013-1(G) to file a memorandum of law in connection with the Motion is hereby waived.

18. Notwithstanding any Bankruptcy Rule (including, but not limited to, Bankruptcy Rule 6004(h)) or Local Bankruptcy Rule that might otherwise delay the effectiveness of this Interim Order, the terms and conditions of this Interim Order shall be immediately effective and enforceable upon its entry.

19. This Court shall retain exclusive jurisdiction over any and all matters arising from or related to the implementation or interpretation of this Interim Order.

Richmond, Virginia

Dated: _____Sep 26 2019_____

_____/s/ Kevin R Huennekens_____
United States Bankruptcy Judge

Entered on Docket:  Sep 26 2019

7

WE ASK FOR THIS:

*/s/ Tyler P. Brown*
Tyler P. Brown (VSB No. 28072)
Jason W. Harbour (VSB No. 68220)
HUNTON ANDREWS KURTH LLP
Riverfront Plaza, East Tower
951 East Byrd Street
Richmond, VA 23219
Tel:  (804) 788-8200
Fax:  (804) 788-8218
Email: tpbrown@HuntonAK.com
          jharbour@HuntonAK.com


*Proposed Counsel to the Debtor*
*and Debtor in Possession*

## CERTIFICATION OF ENDORSEMENT
## UNDER LOCAL BANKRUPTCY RULE 9022-1(C)


I hereby certify that the foregoing proposed order has been endorsed by or served upon all necessary parties.

*/s/ Tyler P. Brown*

## EXHIBIT 1

**Budget**

Exhibit 1

LeClairRyan, PLLC
Interim Cash Collateral Budget
**Summary**
*$ in 000s*

| | | Wk 1 9/6 | Wk 2 9/13 | Wk 3 9/20 | Wk 4 9/27 | Wk 5 10/4 | Total |
|---|---|---|---|---|---|---|---|
| I. | Cash Receipts | $ 1,306 | $ 1,320 | $ 1,162 | $ 638 | $ 900 | $ 5,325 |
| II. | Disbursements | | | | | | |
| | Payroll, Taxes, and Benefits | | | | | | |
| | LeClairRyan | 48 | 12 | 69 | 12 | 48 | 188 |
| | United Lex Service Payments | 78 | 72 | 66 | 64 | 50 | 331 |
| | Total Payroll, Taxes, and Benefits | 126 | 84 | 135 | 76 | 98 | 519 |
| | Operating Expenses | 399 | 196 | 126 | 189 | 188 | 1,098 |
| | Consultant | - | 15 | - | - | - | 15 |
| | Noticing Agent | 10 | - | - | - | - | 10 |
| | Total Disbursements | 535 | 295 | 261 | 265 | 286 | 1,642 |
| III. | Net Cash Flow | $ 771 | $ 1,025 | $ 901 | $ 373 | $ 614 | $ 3,683 |

1 of 2

Exhibit 1.1

LeClairRyan, PLLC
Cash Collateral Conversion Budget
**Weekly Cash Waterfall**
*$ in 000s*

| | | Wk 1 9/6 | Wk 2 9/13 | Wk 3 9/20 | Wk 4 9/27 | Wk 5 10/4 | Total |
|---|---|---|---|---|---|---|---|
| A) | Cash Available | | | | | | |
| | Beginning cash | $ 161 | $ 88 | $ 78 | $ 80 | $ 68 | $ 161 |
| | Less: Reconciliation | - | - | - | - | (5) | (5) |
| | Plus: Net cash flow | 771 | 1,025 | 901 | 373 | 614 | 3,683 |
| | Less: Professional reserve | - | - | - | - | (20) | (20) |
| | | 932 | 1,113 | 979 | 452 | 657 | 3,819 |
| B) | Allocation of Available Cash: | | | | | | |
| | i) Holdbacks | (309) | (208) | (47) | (11) | (50) | (625) |
| C) | Cash Available for Operating Expenses and VCF Curtailment | 623 | 905 | 932 | 441 | 607 | 3,194 |
| | i) Operating expense reserve [1] | (88) | (78) | (80) | (68) | (132) | (132) |
| | iii) VCF loan curtailment [2] | (534) | (827) | (853) | (373) | (475) | (3,062) |
| D) | Remaining Unallocated Cash | $ - | $ - | $ - | $ - | $ - | $ - |

[1]  Holdback for estimated payments to GLC, Proxios, United Lex, and On-Site due on Monday of the following week.
[2]  The VCF loan curtailment for Week 4 will occur on 9/30 and the Week 5 curtailment will be completed before 12pm (noon) on 10/4.

2 of 2