Michael D. Nord (Bar No. 39755)
Michael G. Gallerizzo (Bar No. 39576)
GEBHARDT & SMITH LLP
8000 Towers Crescent Drive, Suite 1350
Vienna, Virginia 22182
Tel: (703) 903-1686 x. 1686
Fax: (443) 957-1927
Email: mnord@gebsmith.com
Counsel for M&T Bank

**THE UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF VIRGINIA**
**(Richmond Division)**

| | | |
|---|---|---|
| IN RE: | * | Chapter 11 |
| LECLAIRRYAN PLLC, | * | Case No. 19-34574-KRH |
| Debtor. | * | |
| * * * * * * * * * * | * * * * * * * * * * | |
| BANK OF AMERICA, N.A. | * | |
| Movant, | * | |
| v. | * | Contested Matter |
| LECLAIRRYAN PLLC, | * | |
| and | * | |
| LYNN L. TAVENNER, CHAPTER 7 TRUSTEE, | * | |
| Respondents. | * | |
| * * * * * * * * * * | * * * * * * * * * * | |

**\*\*\*AMENDED\*\*\* MOTION FOR RELIEF FROM THE AUTOMATIC STAY AS TO BANK OF AMERICA, N.A. TO EXERCISE RIGHTS OF SETOFF WITH RESPECT TO DEPOSIT ACCOUNT MAINTAINED BY LECLAIRRYAN, PLLC WITH BANK OF AMERICA, N.A. AND NOTICE OF MOTION AND HEARING**

Bank of America, N.A. ("**Bank**"), by its undersigned counsel, and pursuant to 11 U.S.C. §§ 362(d)(1) and 362(d)(2), and Rules 4001 and 9014 of the Federal Rules of Bankruptcy

1

Procedure, hereby moves this Court (the "**Court**") for the entry of an order terminating the automatic stay provisions of 11 U.S.C. § 362(a) *nunc pro tunc* in the above-captioned case as to the Bank and certain setoffs against a deposit account securing the Debtor's reimbursement obligations under a letter of credit issued to the Debtor, LeClairRyan PLLC, a/k/a LeClairRyan, a Professional Corporation (collectively, the "**Debtor**"). In support of this motion ("**Motion**"), the Bank states as follows:

### Preliminary Statement

Prior to the Petition Date, the Bank issued an Irrevocable Standby Letter of Credit Number 68136114 ("**Letter of Credit**") dated November 7, 2017, pursuant to that certain Application and Agreement for Standby Letter of Credit dated October 31, 2017 and executed and delivered by the Debtor to the Bank ("**LC Agreement**"). The Letter of Credit was issued on behalf of the Debtor in the amount of $629,525.00 for the benefit of MA-60 State Associates, L.L.C. ("**Beneficiary**"), which Letter of Credit was secured by a Cash Collateral Account (as that term is defined below) in the original balance of $629,525.00. Prior to the Petition Date, the Beneficiary, in accordance with the terms of the Letter of Credit, requested a draw against the Letter of Credit in July, 2019 in the amount of $128,436.84 and in August, 2019 in the amount of $104,645.85 (collectively, the "**Pre-Petition Draw Requests**"). In addition, the Beneficiary requested draws against the Letter of Credit on or about September 5, 2019 and October 4, 2019, both after the Petition Date, in the amounts of $136,639.52 and $260,170.01, respectively ("**Post-Petition Draw Requests**"). These Post-Petition Draw Requests represent the remaining total draw down amounts by the Beneficiary against the Letter of Credit.

The Letter of Credit is secured by cash, in a deposit account maintained by the Bank ("**Cash Collateral Account**") against which the Bank has a duly-perfected, first-priority security

2

interest to secure, among other things, the Debtor's reimbursement obligations in connection with the Letter of Credit, which includes, but is not limited to, the actual amount of Letter of Credit and the draw requests as well as interest which accrues on the amount of the draws requested, attorneys' fees, costs, expenses and fees to maintain the Cash Collateral Account.

Prior to the Petition Date, the Bank exercised its rights and remedies under the Letter of Credit Documents (as that term is defined below) and applicable law by initiating the procedure to setoff the funds in the Cash Collateral Account for the amount of $233,082.69 ("**Pre-Petition Setoff**"), which is the amount of the draw down on the Letter of Credit for July, 2019 and August, 2019. The completion of the setoff occurred early in the morning of the Petition Date, prior to the Bank's knowledge of the filing of this Bankruptcy case.

By way of this Motion, the Bank seeks relief from the automatic stay, to allow the Bank to: (1) maintain an administrative freeze on the Cash Collateral Account; (2) setoff from the Cash Collateral Account the amount of the Pre-Petition Draw Requests and all accrued and unpaid interest, costs, expenses, fees and attorneys' fees, *nunc pro tunc*, for the Pre-Petition Setoff, to the extent necessary in the event there was an overlap in the completion of the Pre-Petition Setoff and the filing of this Bankruptcy case; and (3) setoff from the Cash Collateral Account the amount of the Post-Petition Draw Requests and all accrued and unpaid interest, costs, expenses, fees and attorneys' fees associated therewith.

It is well-settled under applicable Virginia state law, that the Bank has the right to set off a debt—such as the letter of credit reimbursement obligations—owed to it by the Debtor. Section 553 of the Bankruptcy Code preserves the Bank's common law right of setoff, subject to obtaining relief from the automatic stay. Generally, if a creditor is entitled to setoff under

3

Section 553, the Court should grant relief from the stay unless the Debtor proves the existence of some equitable consideration vitiating against stay relief.

The equitable factors for which courts deny relief from the stay to exercise a right of setoff generally are limited to instances where the creditor acted inequitably, where the setoff would jeopardize the debtor's ability to reorganize, or where the setoff would result in a preference or priority over other unsecured creditors. None of these factors are present. The Bank has not acted inequitably, nor will permitting the setoff impede a reorganization. Furthermore, the Debtor specifically pledged the Cash Collateral Account to secure its reimbursement obligations under the Letter of Credit. Finally, permitting the setoff will not result in a priority or preference to the Bank because the Bank has a duly-perfected first-priority security interest in and to the Cash Collateral Account.

## Jurisdiction and Venue

1. This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334, and 11 U.S.C. § 362.

2. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(G).

3. Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

## Procedural History

4. On September 3, 2019, the Debtor filed a voluntary petition for relief with this Court under chapter 11 of the Bankruptcy Code (the "**Petition Date**").

5. On October 4, 2019, this Court converted this case to a chapter 7 bankruptcy proceeding [Docket Nos. 140 & 154] and Lynn L. Tavenner (the "**Trustee**") was appointed interim chapter 7 trustee for the Debtor's bankruptcy estate.

**The Letter of Credit**

6.     Under the Letter of Credit, the Bank was obligated to pay the Beneficiary for any draws made under the Letter of Credit.

7.     A true and accurate copy of the Letter of Credit is attached hereto as **Exhibit 1** and incorporated herein by reference.

8.     A true and accurate copy of the LC Agreement is attached hereto as **Exhibit 2** and incorporated herein by reference.

9.     Under the terms and conditions of the LC Agreement, the Letter of Credit has a final maturity date of December 31, 2029, but has an annual renewal requirement and may be cancelled by the Bank upon notice to the Beneficiary.  *See* LC Agreement.

10.    Pursuant to the terms of the LC Agreement, the Debtor is obligated to reimburse the Bank for all amounts drawn on the Letter of Credit.

**The Security Agreement – Cash Collateral Account**

11.    The Debtor maintains the Cash Collateral Account, account number XXXXXX1067, with the Bank, which Cash Collateral Account is subject to the Security Agreement (Deposit Accounts – Specific) dated November 7, 2017 executed by the Debtor in favor of the Bank ("**Security Agreement**").  A true and accurate copy of the Security Agreement is attached hereto as **Exhibit 3** and incorporated herein by reference.

12.    All reimbursement obligations owed under the LC Agreement by the Debtor to the Bank is secured by, among other things, a first-priority lien in, to and against, among other things, the Cash Collateral Account, pursuant to and as more particularly described in, among other documents, the Security Agreement executed by the Debtor in favor of the Bank.  The funds held by the Debtor in this pledged Cash Collateral Account represent the Bank's cash

5

collateral securing the reimbursement obligations of the Debtor under the Letter of Credit. The Letter of Credit, the LC Agreement, the Security Agreement and all other documents executed in connection with the issuance of the Letter of Credit and the obligations of the Debtor in connection therewith are hereafter collectively referred to as the "**Letter of Credit Documents**".

13. Additionally, under the Virginia U.C.C., a security interest in a deposit account is perfected through control and the Bank has accomplished control over the Cash Collateral Account by virtue of the Cash Collateral Account being maintained with the Bank. *See* Va. Code §§ 8.9A-312(b)(1) & 8.9A-314(a).

### Draws Made under the Letter of Credit and Defaults by the Debtor under the LC Agreement and Security Agreement

14. In July 2019 and August 2019, the Beneficiary requested two (2) draws under the Letter of Credit in the amounts of $128,436.84 and $104,645.85, resulting in an aggregated total of $233,082.69. Pursuant to the terms of the LC Agreement, the Debtor is obligated to reimburse the Bank for the amount of the Pre-Petition Draw Requests as well as interest which accrues on the amount of the draws requested, attorneys' fees, costs, expenses and fees to maintain the Cash Collateral Account.

15. On or about September 5, 2019 and October 4, 2019, the Beneficiary requested further draws against the Letter of Credit in the amounts of $136,639.52 and $260,170.01, respectively. Pursuant to the terms of the LC Agreement, the Debtor is obligated to reimburse the Bank for the amount of the Post-Petition Draw Requests as well as interest which accrues on the amount of the draws requested, attorneys' fees, costs, expenses and fees to maintain the Cash Collateral Account.

16. The Debtor previously defaulted under the terms and conditions of the LC Agreement and the Security Agreement by, among other things, failing to reimburse the Bank for the Prepetition Draws made under the Letter of Credit by the Beneficiary.

17. Moreover, the Debtor has filed this bankruptcy case, which is another event of default under the LC Agreement and the Security Agreement.

### The Value of the Collateral

18. After the setoff of the Pre-Petition Draw Requests, there is $402,216.44 in the Cash Collateral Account, which is $5,406.91 greater than the amounts outstanding under the Letter of Credit. These additional funds also secure the additional obligations owed under the Letter of Credit Documents, including outstanding interest, attorneys' fees, costs, expenses and Letter of Credit fees.

19. After accounting for the Post-Petition Draw Requests that aggregate to a total amount of $396,809.53, there would remain a balance of $5,406.91 in the Cash Collateral Account. However, these funds secure the additional obligations owed to the Bank under the Letter of Credit Documents, including outstanding interest, attorneys' fees, costs, expenses and Letter of Credit fees, which fees and expenses are greater than the amount of $5,406.91.

20. With the Beneficiary having drawn down the remaining face amounts under the Letter of Credit, the Bank's obligations to the Beneficiary have been fulfilled and no future draw downs by the Beneficiary are expected under the Letter of Credit.

### Legal Argument & Basis for Relief

21. The automatic stay limits the right of a creditor to set off after a debtor files for bankruptcy relief. *See* 11 U.S.C. § 362(a)(7); *see also Tysons National Bank v. Lennan (In re Lennan)*, 127 F.3d 1099, at *3 (4th Cir. 1997) (unpublished). However, the Court has broad

7

discretion to lift the stay to permit a creditor to exercise its setoff rights upon a finding of "cause" pursuant to Section 362(d)(1) of the Bankruptcy Code. *See, e.g.*, *In re Lambert Oil Co., Inc.*, 347 B.R. 508, 521 (W.D. Va. 2006); *In re Stienes*, 285 B.R. 360, 362 (Bankr. D.N.J. 2002).

22. Alternatively, due to the conversion of this bankruptcy case to a chapter 7 proceeding, Section 362(d)(2) of the Bankruptcy Code provides that the Court shall grant relief from the automatic stay as to a debtor's property if (i) the debtor does not have equity in such property, and (ii) such property is not necessary for an effective reorganization of the debtor. 11 U.S.C. § 362(d)(2).

23. The Debtor and the Trustee do not have any equity in the Cash Collateral Account because the amounts drawn down by the Beneficiary through the Post-Petition Draw Requests under the Letter of Credit to the Bank together with outstanding interest, attorneys' fees, costs, expenses and Letter of Credit fees exceeds the amounts remaining in the Cash Collateral Account, i.e. $402,216.44.

24. The second test under § 362(d)(2), that the property is not necessary for an effective reorganization, falls upon the Debtor to show that there is a "reasonable possibility of a successful reorganization within a reasonable time", and that the property at issue is necessary to that reorganization. *See United Sav. Ass'n of Tex. V. Timbers of Inwood Forest Assocs., Ltd.* (*In re Timbers of Inwood Forest Assocs., Ltd.*), 484 U.S. 365, 375-76, 108 S.Ct. 626, 632, 98 L.Ed. 2d 740, 750-51 (1988).

25. The Debtor will not be able to meet the burden of proving that the Cash Collateral Account is necessary for an effective reorganization of the Debtor because, *inter alia*, the Debtor is now in the process of liquidating its estate under Chapter 7 of the Bankruptcy Code with the Trustee having been appointed in this case.

26. This Court should grant the Bank relief from the automatic stay under both Sections 362(d)(1) and Section 362(d)(2) of the Bankruptcy Code.

### A. The Bank is Entitled to Relief From the Automatic Stay to Exercise Its Rights of Setoff Against the Cash Collateral Account for "Cause."

27. On request of a secured creditor and after proper notice and a hearing, the Court shall grant relief from the stay "for cause, including the lack of adequate protection of an interest in property of such party in interest." 11 U.S.C. § 362(d)(1).

28. A party seeking relief from stay bears the initial burden of demonstrating the existence of cause. "Courts have generally concluded that the existence of mutual obligations subject to set-off constitutes sufficient 'cause' to meet the creditor's initial evidentiary burden in seeking relief from the automatic stay." *In re Nuclear Imaging Sys., Inc.,* 260 B.R. 724, 730 (Bankr. E.D. Pa. 2000); *Cf. also In re Flanagan Bros., Inc.*, 47 B.R. 299, 303 (Bankr. D.N.J. 1985) (in a Chapter 7 case, existence of right of set of setoff is generally sufficient cause absent countervailing considerations warranting denial of relief). Once the movant meets its burden of showing its entitlement to setoff, the debtor or trustee must prove that there is an equitable or other basis to deny the relief. *See, e.g.*, *In re Lambert Oil Co., Inc.*, 347 B.R. 508, 520-21 (W.D. Va. 2006).

29. "Because the Bankruptcy Code provides no definition of what constitutes 'cause' the courts must determine when discretionary relief is appropriate on a case-by-case basis." *Claughton v. Mixson*, 33 F.3d 4, 5 (4th Cir. 1994). "The court must 'balance potential prejudice to the bankruptcy debtor's estate against the hardships that will be incurred by the person seeking relief from the automatic stay if relief is denied." *In re Dorris Marketing Group, Inc.*, No. 03-

15025-SSM, 2005 WL 6267050, at *1 (Bankr. E.D. Va. Jan 27, 2005), *quoting Robbins v. Robbins (In re Robbins)*, 964 F.2d 342, 345 (4th Cir. 1992).

30.  For the reasons discussed below, the Bank is entitled to exercise its rights of setoff against the Cash Collateral Account due to the Pre-Petition Draw Requests and the Post-Petition Draw Requests and the Debtor and the Trustee will be unable to set forth any "equitable" consideration that would warrant denying the Bank such rights.

### B. The Bank Is Entitled To Setoff the Obligations Against The Cash Collateral Account.

#### a. The Bank Has The Right of Setoff Under Section 553 of the Bankruptcy Code.

31.  The Supreme Court of the United States has described the right of setoff as allowing "entities that owe each other money to apply their mutual debts against each other, thereby avoiding the absurdity of making A pay B when B owes A." *Citizens Bank of Maryland v. Strumpf*, 516 U.S. 16, 18, 116 S. Ct. 286, 289, 133 L. Ed. 2d 258 (1995) (internal citations and quotations omitted). Section 553 of the Bankruptcy Code preserves the right of a creditor to set off in bankruptcy. Specifically, Section 553 states that, except as otherwise expressly limited by the Bankruptcy Code, a bankruptcy filing "does not affect any right of a creditor to offset a mutual debt owing by such creditor to the debtor that arose before the commencement of the case under this title against a claim of such creditor against the debtor that arose before the commencement of the case." 11 U.S.C. § 553(a). Section 553 does not create a federal right of setoff, but instead preserves rights of setoff that exist under state law. *See, e.g., Citizens Bank of Maryland v. Strumpf*, 516 U.S. 16, 18, 116 S. Ct. 286, 289, 133 L. Ed. 2d 258 (1995); *In re SemCrude, L.P.*, 399 B.R. 388, 393 (Bankr. D. Del. 2009), *aff'd*, 428 B.R. 590 (D. Del. 2010).

32. If a creditor has a right of setoff under state law, it may set off in bankruptcy so long as it meets the requirements of Section 553 of the Bankruptcy Code. Specifically, the creditor must show that:

> (1) the creditor holds a 'claim' against the debtor that arose before the commencement of the case;
> (2) the creditor owes a 'debt' to the debtor that also arose before the commencement of the case;
> (3) the claim and debt are 'mutual'; and
> (4) the claim and debt are each valid and enforceable.

*In re St. Francis Physician Network, Inc.,* 213 B.R. 710, 715 (Bankr. N.D. Ill. 1997), quoting Collier on Bankruptcy, ¶ 553.01 (15th Ed. Revised).

33. For the reasons discussed below, the Bank can satisfy each of the foregoing requirements.

    (i) **The Bank Has the Right of Setoff of the Cash Collateral Account Under Applicable State Law.**

34. The Security Agreement, which secures the Debtor's reimbursement obligations under the LC Agreement, and under which the Bank is moving to utilize its right of setoff, is governed by Virginia law. Under Virginia law, courts have held that a bank could setoff the depositor's account in satisfaction of a loan debt that the depositor owes to the bank. *See Federal Reserve Bank v. State & City Bank,* 150 Va. 423, 430-31 (1928) (the general rule is that "the relation between a general depositor and the bank in which his deposit is made is simply that of debtor and creditor. The moneys deposited immediately become the property of the bank, and the latter becomes debtor of the depositor ...."). *See also Allen v. Hart*, 59 Va. 722 (1868) (generally recognizing the right of setoff in Virginia); *Reed v. Cent. Nat'l Bank of Wilmington,* 37 Del. 429, 184 A. 772, 773 (Del. Super. Ct. 1936) ("[A] bank, undoubtedly, has the right to apply a balance on general deposit to a matured note or other debt held by it against a depositor.");

11

*McDowell v. Bank of Wilmington & Brandywine,* 1 Del. 369, 371 (1834) (where a bank holds funds in a deposit account, it may use the funds to set off the depositor's debt to the bank).

### (ii) The Bank's Common Law Right of Setoff Is Not Otherwise Limited By Section 553.

35. In addition to being entitled to setoff under state law, under Section 553, the Bank must show that: (a) it has a claim against the Debtor that arose prior to the Petition Date; (b) it owes a debt to the Debtor that arose prior to the Petition Date; (c) the claims and debt are "mutual"; and (d) the claim and debt are each valid and enforceable. *In re St. Francis Physician Network, Inc.,* 213 B.R. at 715.

#### 1. The Bank Has a Claim Against the Debtor That Arose Prior To The Petition Date.

36. It is without reasonable dispute that the Bank has a claim against the Debtor. Once the Bank issued the Letter of Credit in this matter, the Debtor had a contingent obligation to reimburse the Bank for all amounts drawn on the Letter of Credit. In July 2019 and August 2019, the dates on which the Beneficiary requested draws on the Letter of Credit, the reimbursement obligations related to the Prepetition Draw Requests became absolutely due and matured. In fact, on the Petition Date, the Bank was already in the process of setting off the reimbursement obligations related to the Prepetition Draw Requests from the Cash Collateral Account, but may have been stayed by the filing of this Bankruptcy case depending on the completion of the setoff.

37. Even for any allegedly unmatured, contingent claims for reimbursement obligations under the Letter of Credit, including the Post-Petition Draw Requests, which the Bank does not concede, there is sufficient authority to support any further setoffs against the Cash Collateral Account. The Fourth Circuit has set forth as much in the case of *Tysons*

*National Bank v. Lennan (In re Lennan)*, 127 F.3d 1099 (4th Cir. 1997) (unpublished) (citing favorably to *In re Elsinore Shore Assocs.*, 67 B.R. 926, 945 (Bankr. D.N.J. 1986)).  There, the Court held that the debtor's debt was prepetition debt where the debtor established the letter of credit and executed a promissory note while advancing a certificate of deposit as collateral, with all of these transactions occurring all prepetition.  *Id. at \*4*.  The Court concluded that an administrative hold was proper against the debtor's bank accounts and the lender could then seek relief from the automatic stay to exercise its setoff rights.  *Id.*  Likewise, here, although the Bank is only exercising its setoff rights once a draw is actually made, once the Bank issued the Letter of Credit prior to the Petition Date, the Debtor had an absolute prepetition obligation to reimburse the Bank for all amounts drawn on the Letter of Credit.  Under applicable law, notwithstanding that the claim may deemed to be "contingent" or "unliquidated", it is matured and absolutely due and payable, and therefore sufficient to support a right of setoff.  *Id.*

        2.    **The Funds In The Cash Collateral Account Constitute a Debt Owed To the Debtor Prior to The Petition Date.**

38.    It is well-settled that the amounts on deposit in a deposit account are a "debt" owed by the bank to the customer.  *See Reserve Bank*, 150 Va. at 430-31.

39.    On the Petition Date, the Debtor had $402,216.44 after application of the Pre-Petition Setoff in the Cash Collateral Account.

        3.    **There Is Mutuality.**

40.    "Mutuality" requires that "the debts must be in the same right and between the same parties standing in the same capacity."  *In re Lambert Oil Co., Inc.*, 347 B.R. 508, 517 (W.D. Va. 2006).  Stated differently, debts and obligations are "mutual" where "the debts involve the same parties standing in the same capacities."  *In re Czyzk,* 297 B.R. 406, 409

13

(Bankr. D. N.J. 2003). The mutuality requirement is plainly satisfied here. The Debtor is indebted to the Bank in connection with the LC Agreement and Security Agreement. Conversely, the Bank is indebted to the Debtor with respect to the Cash Collateral Account pursuant to the depositor relationship between the Bank and the Debtor.

4. **The Bank's Claim and Debt are Valid and Enforceable.**

41. For the reasons already discussed above, the Bank's claim in connection with the LC Agreement and the Security Agreement and the debt in connection with the pledged Cash Collateral Account are valid and enforceable.

**C. There Are No Equitable Considerations Warranting Denial Of Relief From The Automatic Stay.**

42. Because the Bank has proved that it is entitled to exercise a right of setoff, it has met its initial burden of proving "cause" under Section 362(d)(1). The burden, then, is on the Debtor and the Trustee to prove countervailing equitable considerations that would warrant denial of relief from the automatic stay.

43. In *In re Stienes*, 285 B.R. 360, 363 (Bankr. D.N.J. 2002), the Court summarized the equitable grounds for which a court may exercise its discretion to deny a right of setoff:

> Setoff may be denied where the creditor acted inequitably; where the setoff would jeopardize the debtor's ability to reorganize; or in a liquidation context where the setoff would result in either a preference or priority over other unsecured creditors.

(quoting *In re Lykes Bros. S.S. Co.,* 217 B.R. 304, 313 (Bankr. M.D. Fla. 1997)). *See also In re Lambert Oil Co., Inc.*, 347 B.R. 508, 517 (W.D. Va. 2006) ("After a court determines that the prerequisites for setoff exist, it generally looks to the equities to determine if the setoff should be allowed.") (internal citations omitted). None of these circumstances are present here.

14

44. The Bank has not acted inequitably with respect to the Cash Collateral Account. The action the Bank has taken is to impose an administrative freeze on the Cash Collateral Account pending this Court's adjudication of its right to setoff, which the Supreme Court has explicitly recognized is permissible and not violative of the automatic stay. *Strumpf*, 516 U.S. 16.

45. Setting off amounts in the Cash Collateral Account will not hinder the Debtor's ability to reorganize; the Debtor specifically pledged the Cash Collateral Account to secure its reimbursement obligations to the Bank under the LC Agreement. No other creditor is entitled to these funds that were specially pledged by the Debtor to the Bank.

46. Likewise, permitting the setoffs will not result in a preference or priority to the Bank. The Bank has a duly-perfected, first-priority security interest in and to the Cash Collateral Account. Accordingly, the Bank is entitled to receive amounts in the Cash Collateral Account equal to any draws made on the Letter of Credit.

### D. The Bank Seeks Authority to Set Off Amounts Related to the Pre-Petition Draw Requests and the Post-Petition Draw Requests That Occurred Under the Letter of Credit.

47. As a result of the Pre-Petition Draw Requests and the Post-Petition Draw Requests the Bank seeks leave of this Court to: (a) setoff immediately against the Cash Collateral Account in the amount of $233,082.69 plus accrued and unpaid interest on the amount of the Pre-Petition Draw Requests, attorneys' fees, costs, expenses and fees to maintain the Cash Collateral Account, *nunc pro tunc* to the Petition Date; and (b) setoff immediately against the Cash Collateral Account in the amount of $396,809.53 plus accrued and unpaid interest on the amount of the Post-Petition Draw Requests, attorneys' fees, costs, expenses and fees to maintain the Cash Collateral Account.

48. In addition, the Bank seeks authority to otherwise maintain an administrative freeze on the Cash Collateral Account.

49. **The Bank has previously amended this Motion to comply with this Court's Case Management and Administrative Procedures Order [Docket No. 38] and to effect service upon the parties listed in the Service List filed by the Debtor as of September 17, 2019 [Docket No. 78] in addition to any parties previously served.**

50. **The Bank is further amending this Motion to add the Trustee as a respondent, to effect service upon the Trustee and her law firm and to update the Trustee and the Court as to the total amount of the Post-Petition Draw Requests made by the Beneficiary.**

WHEREFORE, for the foregoing reasons, the Bank respectfully requests that this Court enter an Order in a form substantially similar to the proposed Order attached hereto that:

(a) grants this Motion and terminates the automatic stay of 11 U.S.C. § 362 in the above-captioned bankruptcy case as to the Bank and the Cash Collateral Account;

(b) authorizes the Bank to maintain an administrative freeze on all funds in the Cash Collateral Account maintained by the Debtor with the Bank;

(c) permits the Bank to immediately exercise and enforce its various rights and remedies against the Cash Collateral Account pursuant to the terms and conditions of the Letter of Credit Documents and applicable law including, without limitation, immediately setting off the amounts related to the Pre-Petition Draw Requests plus accrued and unpaid interest on the amount of the Pre-Petition Draw Requests, attorneys' fees, costs, expenses and fees to maintain the Cash Collateral Account, *nunc pro tunc* to the Petition Date, from the Cash Collateral Account to satisfy the Debtor's reimbursement obligations to the Bank in connection with the

Letter of Credit Documents and to setoff the Cash Collateral Account for the Post-Petition Draw Requests plus accrued and unpaid interest on the amount of the Post-Petition Draw Requests, attorneys' fees, costs, expenses and fees to maintain the Cash Collateral Account;

      (d)    waives the stay provisions of Federal Rule of Bankruptcy Procedure 4001(a)(3); and

      (e)    grants the Bank such other and further relief as may be necessary and equitable in this case.

Date: October 8, 2019

BANK OF AMERICA, N.A.

    /s/ Michael D. Nord
Michael D. Nord (Bar No. 39775)
Michael G. Gallerizzo (Bar No. 39576)
GEBHARDT & SMITH LLP
One South Street, Suite 2200
Baltimore, Maryland 21202
Tel:   410.385.5072
Fax:   443.957.1927
Email: mnord@gebsmith.com

*Attorneys for Bank of America, N.A.*

**CERTIFICATE OF SERVICE**

I hereby certify that on October 8, 2019, a true copy of the foregoing Amended Motion for Relief from Stay, together with a proposed form of Order and Notice, were served (a) by operation of this Court's CM/ECF electronic case management system which will send notification of such filings to all ECF registrants in this case, (b) on all parties on the attached Service List as of September 17, 2019 by e-mail if an e-mail address is indicated for a party or by first-class mail, postage prepaid if an e-mail address is not indicated for a party, (c) by first-class mail, postage prepaid, on the unsecured creditors listed on the attached separate Service List of 20 Largest Unsecured Creditors, and (d) by first-class mail, postage prepaid and by e-mail to the following parties:

    Lynn L. Tavenner, Trustee
    20 North Eight Street, Second Floor
    Richmond, Virginia 23219
    ltavenner@tb-lawfirm.com
    *Chapter 7 Trustee*

    Paula S. Beran, Esq.
    Tavenner & Beran, PLC
    20 North Eight Street, Second Floor
    Richmond, Virginia 23219
    pberan@tb-lawfirm.com
    *Counsel to Chapter 7 Trustee*

    /s/ *Michael D. Nord*
    Michael D. Nord

**NOTICE**

**<u>YOUR RIGHTS MAY BE AFFECTED</u>. YOU SHOULD READ THESE PAPERS CAREFULLY AND DISCUSS THEM WITH YOUR ATTORNEY, IF YOU HAVE ONE IN THIS BANKRUPTCY CASE. (IF YOU DO NOT HAVE AN ATTORNEY, YOU MAY WISH TO CONSULT ONE.)**

**PLEASE TAKE NOTICE THAT THE COURT WILL CONDUCT A HEARING ON OCTOBER 24, 2019, AT 1:00 P.M. IN COURTROOM 5000, (OR THE COURTROOM TO WHICH JUDGE HUENNEKENS' CASES HAVE BEEN ASSIGNED) IN THE UNITED STATES BANKRUPTCY COURT FOR THE EASTERN DISTRICT OF VIRGINIA, 701 EAST BROAD STREET, RICHMOND, VIRGINIA 23219.**

**IF YOU DO NOT WISH THE COURT TO GRANT THE RELIEF SOUGHT IN THIS MOTION, OR IF YOU WANT THE COURT TO CONSIDER YOUR VIEWS ON THE MOTION, THEN BY OCTOBER 21, 2019, YOU MUST FILE A WRITTEN RESPONSE EXPLAINING YOUR POSITION WITH THE COURT AND SERVE A COPY ON THE MOVANT.  UNLESS A WRITTEN RESPONSE IS FILED AND SERVED BY OCTOBER 21, 2019, THE COURT MAY DEEM OPPOSITION WAIVED, TREAT THE MOTION AS CONCEDED, AND ISSUE AN ORDER GRANTING THE REQUESTED RELIEF WITHOUT FURTHER NOTICE OR HEARING.**

**IF YOU MAIL YOUR RESPONSE TO THE COURT FOR FILING, YOU MUST MAIL IT EARLY ENOUGH SO THE COURT WILL RECEIVE IT ON OR BEFORE OCTOBER 21, 2019.**