David G. Barger (VSB No. 21652)
Thomas J. McKee, Jr. (VSB No. 68427)
J. Gregory Milmoe (admitted *pro hac vice*)
Greenberg Traurig, LLP
1750 Tysons Boulevard, Suite 1000
McLean, Virginia 22102
Telephone:  (703) 749-1300
Fax:          (703) 749-1301
Email:  mckeet@gtlaw.com

*Counsel to ULX Partners, LLC*

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
(Richmond Division)**

| | |
|---|---|
| **In re:**<br><br>**LECLAIRRYAN PLLC,**<br><br>**Debtor.** | **Chapter 7**<br><br>**Case No. 19-34574 (KRH)** |

**OBJECTION OF ULX PARTNERS, LLC TO THE TRUSTEE'S SUPPLEMENTAL
MOTION FOR USE OF CASH COLLATERAL AND
<u>GRANT OF ADEQUATE PROTECTION RELATED THERETO</u>**

ULX Partners, LLC ("**ULXP**") files this Objection to the *Trustee's Supplemental Motion for Use of Cash Collateral and Grant of Adequate Protection Related Thereto* [Docket No. 645] (the **"Supplemental Motion"**).

<u>**INTRODUCTION**</u>

ULXP holds a valid $8 million claim against LeClairRyan ("**LCR**") secured by a lien on substantially all of LCR's assets which was perfected more than 90 days, but less than one year, prior to the Petition Date.  In the face of overwhelming and uncontroverted evidence to the contrary, including sworn testimony, the Trustee persists in alleging without substantiation that ULXP's claim can be avoided because ULXP was an "insider" of LCR and/or that the claim was the result of a fraudulent conveyance.  Moreover, fully aware that ULXP was constrained from participating in this case until LCR's senior lender had been repaid in full pursuant to the terms of ULXP's intercreditor agreement with the senior lender, the Trustee has for more than six

months subverted ULXP's legitimate rights as a secured lender to exercise control over the use

of its collateral while using that collateral to "investigate" specious claims against ULXP.

Further, it was many months before the Trustee would even engage ULXP in even limited

discussion regarding the "insider" issue – despite ULXP's repeated efforts to do so.

As discussed below, the Trustee has offered no evidence (distinguished from conclusory

statements) that ULXP was an insider. Under such circumstances, the law is clear that ULXP's

secured claim is deemed allowed unless and until the Court makes a determination to the

contrary.  Accordingly, ULXP objects to the continued use by the Trustee of any cash collateral

unless the Trustee is able to provide adequate protection for the diminution in value of the

collateral since the Petition Date.

## RELEVANT BACKGROUND

### A.  Transaction Background

1.       UnitedLex Corporation ("**United Lex**") is a multinational corporation which

provides support and consulting services to a variety of businesses including law firms and law

departments with a view to using digital technology and other best business practices to enhance

those businesses' efficiency and the profitability of its clients.  UnitedLex is not a law firm.  In

late 2017, UnitedLex and LCR began discussing how they might work together. As a result of

these discussions, in April 2018, UnitedLex and LCR formed a new limited partnership, ULXP,

99% owned and controlled by UnitedLex, which took over the back office operations of LCR.

Pursuant to the transaction, (i) substantially all of LCR's non-attorney employees (secretaries,

paralegals, accounting and marketing staff etc.) became employees of ULXP which assumed

ongoing responsibility for their compensation, benefits and management, and (ii) the parties

executed a Master Services Agreement (the "**MSA**") which detailed the non-legal and consulting

services which ULXP would "propose" and "provide" to LCR on an outsourced basis. (**Exhibit 1**, p. LCR37 - 38). The fees for these services were initially priced to closely reflect nearly the same costs previously paid internally by LCR when it staffed such services in-house.

2.      ULXP's and LCR's relationship was a typical outsourcing arrangement both by design, in order to comply with governing law and ethics rules, and in practice, in which LCR retained control over all decisions affecting the practice of law and its business as a law firm. The implementation of the transaction proceeded with ULXP frequently providing business recommendations, cash flow analyses, and personnel recommendations, among other services, to LCR's Chief Executive Officer and Board of Directors for their consideration, review, and final decision-making. ULXP's primary chance for profit (which was not achieved before the bankruptcy) would generally come from developing efficiencies over time.

3.      As partner attrition gained momentum at LCR, however, the hits to LCR's finances outpaced the long-term savings that LCR anticipated receiving through its agreement with ULXP. Rather than pay ULXP for the services ULXP continued to provide, LCR's management opted to pay other vendors and expenses and instead left ULXP with a growing, and substantial receivable. More specifically, by December 2018, the outstanding payments owed by LCR to ULXP for services provided amounted to almost $12 million. Through an arms-length transaction, ULXP and LCR agreed to convert $8 million of such outstanding invoices into long term secured debt (and the remaining $4M remained outstanding and unsecured).

4.      The secured debt was evidenced by an Outstanding Deferred Loan Promissory Note (the "**ULXP Note**") and Security Agreement that established a lien on substantially all of LCR's assets, including accounts receivable. Copies of the ULXP Note and Security Agreement

are attached hereto as **Exhibits 2 and 3**, respectively.  The lien was perfected by the recording of a UCC Financing Statement on or about April 22, 2019.  (**Exhibit 4**).[1]

5.        ULXP's lien was subordinate to the pre-existing lien on the same collateral held by Virginia Commercial Finance ("**VCF**"), which had entered into its own Loan and Security Agreement with LCR on December 29, 2017, through which VCF provided a revolving loan to LCR in the amount of $15,000,000 (the "**VCF Loan**").

6.        Although the ULXP Note and Security Agreement were not finalized until April, 2019, the ULXP Note was dated December 20, 2018 which was the date on which ULXP agreed in principle with LCR to defer the payment of the overdue accounts receivable for five years. ULXP understood that it was important to LCR to be able to represent to VCF, LCR's senior lender, that it "had a deal" prior to year-end and therefore that date was agreed to and preserved.

7.        In light of the pre-existing VCF Loan, ULXP and VCF entered into an Intercreditor Agreement on April 2, 2019 (the "**Intercreditor Agreement**") whereby ULXP's right to repayment and lien were subordinate to the VCF Loan and ULXP was prohibited, among other things, from exercising any rights with respect to the cash collateral or contesting the actions of VCF.  A copy of the Intercreditor Agreement is attached as **Exhibit 5**.   More specifically, the Intercreditor Agreement prohibited ULXP from, among other things, "object[ing] to or oppos[ing] any . . . cash collateral usage," and from "assert[ing] any right [ULXP] may have to 'adequate protection' of its interests in any Collateral in any Insolvency Proceeding . . . ."  (Exhibit 5, § 8.2(d)).

---

[1] The ULXP Note and the Security Agreement, as well as the referenced UCC Financing Statement and the Intercreditor Agreement, were all attached to the Proof of Claim filed by ULXP (Claim No. 174), but are being provided here again for the Court's convenience.

8.      Approximately five months after executing the Intercreditor Agreement, by

September 2019, LCR's increase in departing partners and decrease in revenue became too great

and LCR filed for Chapter 11 bankruptcy protection on September 3, 2019 (the "**Petition Date**"),

and the restraints imposed upon ULXP by the Intercreditor Agreement were triggered.

9.      As of the Petition Date, VCF and ULXP were the only creditors with alleged liens

on the cash collateral, with LCR owing approximately $6.8 million on the VCF Loan and owing

more than $12 million to ULXP.  (Docket No. 13, ¶9).

**B.  The Cash Collateral Orders and Initial Adequate Protection**

10.      On the Petition Date, the Debtor filed its *Motion for Entry of Interim and Final*

*Orders Authorizing the Debtor to Use Cash Collateral and Granting Adequate Protection and*

*Related Relief* (Docket No. 13).  The Court granted the Debtor's Motion, and entered the *Interim*

*Order Authorizing the Debtor to Use Cash Collateral and Granting Adequate Protection and*

*Related Relief* (the "**Debtor's First Interim Order**") (Docket No. 41).  In the Debtor's First

Interim Order, and again in the Second Interim Order entered on September 26, 2019 [Docket

No. 124], the Court stated that:

> [F]or the purpose of providing adequate protection for any valid perfected security
> interests ULXP may have in the cash collateral, ULXP is hereby granted as security
> solely to the extent of the diminution in value of the cash collateral, a valid,
> perfected, and enforceable security interest subordinate in all respects to [VCF's
> liens] in and upon the cash collateral (i) to the extent the cash collateral is used by
> the Debtor pursuant to the Budget and (ii) to the same extent, nature, and priority
> of any security interests held by ULXP as of the Petition Date.

(Docket No. 41, ¶3); (Docket No. 124, ¶4).

11.      On October 4, 2019, this Court converted this matter to Chapter 7, and Lynn L.

Tavenner was appointed as Chapter 7 Trustee (Docket Nos. 140 and 175).

12.    On October 4, 2019, the Trustee filed her *Motion for Use of Cash Collateral and Grant of Adequate Protection Related Thereto* (the "**Trustee's First Cash Collateral Motion**") [Docket No. 143], in which the Trustee sought to continue providing replacement liens as adequate protection for ULXP and in which the Trustee stated that the proposed replacement liens for VCF and ULXP "will serve to <u>maintain the value</u> of the respective interests of the Lender and/or ULXP, if any, in the cash collateral during the initial stages of this case . . . ." (Docket No. 143, ¶260) (emphasis added).  According to the Debtor's Schedules filed on October 31, 2019, the Debtor had accounts receivable of approximately $17,473,865.70 (Docket No. 208, p.23).

13.    The Court granted the Trustee's First Cash Collateral Motion (which has been subsequently extended multiple times), providing VCF and ULXP with replacement liens on the cash collateral, but providing only VCF (and not ULXP) with a valid superpriority administrative expense under Bankruptcy Code sections 507(b) and 503(b) "having priority over all other costs and expenses of administration of any kind, which claim shall at all times be senior to the rights of the Chapter 7 Trustee and the Estate to the extent of the diminution in the value of VCF's Collateral."  The Court's Order also stated that ULXP reserved "the right to request further or different adequate protection . . . ."  (Docket No. 151, ¶16).

14.    On December 12-13, 2019, ULXP filed a secured claim of $8,563,288 and an unsecured claim of $3,952,025 (collectively, the "**Proof of Claim**").  A copy of the Proof of Claim is attached as **Exhibit 6**.  A copy of the Intercreditor Agreement, which the Trustee was aware of very early in this case, was attached to the Proof of Claim when filed with the Court.

C. **Multiple Delays in Paying Off VCF and Causing ULXP to Remain a "Silent-Second"**

15.    According to the multiple budgets filed by the Trustee in May, July, and

September 2020, the total receipts of net accounts receivable that the Trustee expected to collect

during that time exceeded $1.1 million.  (Docket Nos. 453, 550, and 617).  And in her multiple

supporting Declarations, as further detailed below, she confirmed that she collected well in

excess of what was owed to VCF, yet she ultimately chose to delay – for many months – the

final payment to VCF despite making repeated statements that the final payoff was forthcoming.

16.    On April 29, 2020, after paying nearly $6 million to VCF to curtail the VCF

Loan, and in support of her request to further extend an interim cash collateral Order, the Trustee

filed a Declaration with the Court stating that as of that date the amount owed to VCF was down

to only "approximately $60,000.00" and that VCF was expected to be paid in full on or before

May 31, 2020 (the "**April Declaration**").  (Docket No. 435, ¶4).  As further explained by the

Trustee's Counsel at the April 30, 2020 Omnibus Hearing, the $60,000 consisted of

approximately $10,000 in legal fees owed to VCF as well as a $50,000 litigation reserve to be

funded and that the Court approved to be held in escrow by VCF's counsel.  (**Exhibit 7**, p: 20:3-

9; 15:8-20).  Until VCF was actually paid in full, however, ULXP remained in the second

position and bound by the terms of the Intercreditor Agreement.  Per the Trustee's counsel's

representations to the Court, that position was expected to soon change no later than May 31,

2020.

17.    The timeline set forth in the April Declaration regarding payment to VCF was not

met as the Trustee ultimately chose <u>not</u> to pay VCF by May 31, 2020 despite having available

funds.  Rather, approximately two months later, on June 24, 2020, the Trustee filed another

Declaration acknowledging that she had still not paid off VCF and stating instead that the

amount owed to VCF was approximately $67,821.00 ($17,821.00 and $50,000 litigation reserve) (the "**June Declaration**"). (Docket No. 538, ¶8).  At the June 25, 2020 Omnibus Hearing, the Trustees' counsel informed the Court that VCF was "extremely close" to being paid off "in the very near future." (**Exhibit 8**, p.8:13-25).  Further, despite the fact that the Court had already approved having VCF's counsel hold the $50k litigation reserve in escrow, the Trustee's counsel indicated that she was still working out such logistics and that the reserve would be "funded very shortly." (Exhibit 8, p.8:13-25, 9:1-3).  In light of the outstanding amount due to VCF, ULXP remained in the second position and bound by the terms of the Intercreditor Agreement.  Per the Trustee's counsel's representations, however, that position was expected to soon change "in the very near future."  (Exhibit 8, p.8:13-25).

18.     Yet again, however, the represented timeline regarding payoff to VCF was not met as the Trustee again chose not to pay off VCF despite having the funds to do so.  And again, approximately two months later on August 26, 2020, the Trustee filed yet another Declaration in support of a cash collateral extension – this time merely stating that "the Estate owes [VCF] for recent legal fees and the agreed Litigation Reserve [of $50k]" (the "**August Declaration**"). (Docket No. 604, ¶11).  At the August 27, 2020 Omnibus Hearing, the Trustee's counsel informed the Court that the amount still outstanding to VCF was now less than $2,000, but that the litigation reserve still had not been funded allegedly due to logistics but was expected to be funded by "mid-September."  (**Exhibit 9**, p.7:1-10; p14:17-p.15-23).  Such statements prompted the Court to inquire "why it has been taking so long" and noting that the Court "thought we were going to have the secured lender paid out in May." (Exhibit 9, p.14:23-24).  Regardless, the failure to pay off VCF meant that ULXP remained in the second position and bound by the terms

of the Intercreditor Agreement.  Per the Trustee's counsel's representations, however, that
position was again expected to soon change by "mid-September."

19.     But yet again, and in what is now a clearly established pattern, the represented
timeline regarding payoff to VCF was not met.  The Trustee chose again to withhold payment
from VCF rather than use available funds to satisfy LCR's obligations.  More specifically, the
Trustee's counsel explains in the Supplemental Motion filed on October 2, 2020, that payoff to
VCF has still not occurred and instead "it is anticipated that the Trustee will have paid and/or
otherwise provided all amount [sic] owed to the Lender on or before October 31, 2020."
(Supplemental Motion ¶15).  Until such time as the payoff occurs, however, ULXP remains in
the second position and bound by the terms of the Intercreditor Agreement.

20.     Significantly, the above-referenced delays in satisfying the VCF Loan and
keeping ULXP on the sidelines all occurred during the time when the Trustee was investigating
and evaluating claims and demands to be made upon ULXP.  Upon information and belief, and
as discussed below, the cash collateral was used, in part, to evaluate and consider such claims
and demands.  The delay in paying off VCF enabled the Trustee to avoid treating ULXP as a
secured creditor without having to offer any evidence that the claim could be avoided.

**D.  <u>The Diminishing Cash Collateral</u>**

21.     As noted above, the amount of LCR's accounts receivable as of the Petition Date,
and when ULXP was provided a replacement lien on all accounts receivables through the
Debtor's First Interim Order, was over $17 million.  Since that time, and while ULXP was on the
sidelines, the Trustee has used the cash collateral to the detriment of ULXP.

22.     At the April Omnibus Hearing, the Trustee's counsel noted that accounts
receivable collections were approximately $7,850,000.  She further explained that from that sum,

a "large portion" went to curtail the VCF Loan, $438,721 was used to pay the Court-approved

collection agent, and that the funds were also used for the "operating costs and expenses

associated with the estate nuances." (Exhibit 7, p.19:11-17).

23.    In the June Declaration filed by the Trustee, she noted that "the amount of

existing accounts receivable on the books and records of LeClairRyan is approximately

$8,900,000.00" and that as of June 17, 2020, "approximately $1,073,000.00 [was] being

specifically reviewed with the likelihood of write-off." (Docket No. 538, ¶8). At the June

Omnibus Hearing, the Trustee's counsel further explained that collections stood at

$8,015,610.61, and that the Trustee had paid $5,275,299.35 to VCF for the VCF Loan, close to

"a half million dollars" to the Court-authorized collection agent, and "general IT costs of over a

million dollars." (Exhibit 8, p.20:1-12).

24.    In the August Declaration filed by the Trustee, she noted that the "amount of

existing accounts receivable on the books and records of LeClairRyan is approximately

$8,545,000," but that "[i]t appears that a material amount of the existing accounts receivable may

not be collectable but the exact amount has yet to be determined." (Docket No. 604, ¶9).

25.    As of the Supplemental Motion, however, the Trustee now asserts that the value

of ULXP's lien on the cash collateral has been all but wiped out, calling it "miniscule, if not

zero." (Supplemental Motion, ¶25).

26.    The adequate protection originally provided to ULXP has thus been confirmed to

have been inadequate and ULXP is entitled to additional adequate protection.

## REQUESTED RELIEF

27.    In light of the Trustee's anticipated payoff of the VCF Loan, the Trustee has

moved for use of ULXP's cash collateral, allegedly to "operate certain designated aspects of the

10

Debtor's business and to conduct an orderly wind down." (Supplemental Motion ¶ 19).

Regardless of whether the proffered timeline of payoff to VCF holds this time, ULXP either will

have moved, or should have moved, into the first position by the time the current cash collateral

order expires and therefore ULXP now objects to the Supplemental Motion and the Trustee's use

of ULXP's cash collateral.  In the alternative, if the Court permits the use of such cash collateral,

ULXP respectfully requests that it be provided adequate protection and that the Trustee be

prohibited from using such cash collateral in connection with the Trustee's pursuit of demands

and/or claims against ULXP and/or UnitedLex.

## ARGUMENT

### A.  ULXP'S Claim and Lien Must be Accepted as Valid

28.      Section 363(c)(2) of the Bankruptcy Code provides that cash collateral may only

be used by a debtor under two circumstances:  "(A) each entity that has an interest in such cash

collateral consents; or (B) the court, after notice and hearing, authorizes such use, sale, or lease

in accordance with the provisions of [§ 363]."  11 U.S.C. §363(c)(2)(A-B).  As noted above, and

as demonstrated in ULXP's proof of claim, ULXP has an interest in the cash collateral and does

not consent to the Trustee's use of the same.  ULXP's claim must be accepted as valid unless and

until the Court makes a final determination to the contrary.

29.      Section 502(a) of the Bankruptcy Code provides, in part, that "[a] claim or

interest is deemed allowed, unless a party in interest objects."  11 U.S.C. §502(a).  When a

claimant files a proof of claim with the required supporting documentation, it is *prima facie*

evidence of the claim's validity and the amount owed by the debtor.  *See In re Falwell*, 434 B.R.

779, 783 (Bankr. W.D.Va. 2009); *see also* Fed. R. Bankr. P. 3001(f).  Once the proof of claim is

filed, "[t]he burden then shifts to the debtor to object to the claim" and to "introduce evidence to

rebut the claim's presumptive validity." *In re Harford Sands Inc.*, 372 F.3d 637, 640 (4th Cir.

2004).  The evidence "must be sufficient to demonstrate the existence of a true dispute and must

have probative force equal to the contents of the claim." *In re Falwell*, 434 B.R. 779, 783

(Bankr. W.D.Va. 2009).  Upon offering such evidence, the burden would then shift back to the

creditor "to produce evidence meeting the objections [to the claim] and establishing the claim."

*Id.*

30.     The Trustee seeks to avoid ULXP's interests by asserting that ULXP is an insider

of the Debtor.  As noted by this Court in *Arrowsmith v. Mallory*, 2017 Bankr. LEXIS 2230,

however, "[t]he test [for insider status] in the Fourth Circuit is that the alleged insider must

exercise sufficient authority over the debtor so as to <u>unqualifiably</u> dictate corporate policy and

the disposition of corporate assets." *Id.* at 63-64 (citing *In re Starlight Group, LLC*, 531 B.R.

611, 635 (Bankr. E.D.Va. 2015) (citing *Butler v. David Shaw, Inc.*, 72 F.3d 437 (4th Cir. 1996))

(emphasis added).  Mere influence, or even financial dependence on a creditor, is not sufficient

for insider purposes.  *See Gray v. Giant Wholesale Corp.*, 758 F.2d 1000, 1003 (4th Cir. 1985)

(holding employee who controlled dispensation of debtor's checks was not an insider); *see also*

*Smith v. Porter*, 416 B.R. 239, 258-59 (Bankr. E.D.Va. 2009) (citing *Ellenberg v. William*

*Goldberg & Co.*, 208 B.R. 239 (Bankr. N.D.Ga. 1997) (holding that financial consultants who

worked daily with debtor, advised on all financial matters, assisted in acquiring financing, and

frequently communicated with debtor's banks and creditors, were not insiders)).

31.     The Trustee alleges in her Supplemental Motion that ULXP "(a) exerted

operational control over the Debtor, (b) had the ability to make personnel decisions, (c) had the

authority to incur or pay obligations, and (d) had access to financial and other information

essential to the Debtor's operation."  (Supplemental Motion ¶17).  The Trustee also contends that

ULXP, "(a) had a close relationship with the Debtor, (b) exercised extensive influence over the

Debtor, and (c) engaged in transactions that were not arms length." (*Id.*).  The only purported

evidence offered by the Trustee in support of the foregoing allegations, however, is a conclusory

allegation from the *Declaration of Lori D. Thompson, Esq. in Support of Chapter 11 Petition and

First Day Motions,* in which Ms. Thompson speculates that "LeClairRyan <u>may</u> be an insider of

the Debtor under Bankruptcy Code section 101(31)" and that "any security interest transferred to

ULXP <u>may</u> be an avoidable transfer to an insider . . . ."  (Docket No.3, ¶21) (emphasis added).

32.     Putting aside for now the absurdity of alleging that ULXP controlled LCR but still

left itself with a $12 million receivable, Ms. Thompson's speculation is nevertheless insufficient

to overcome the *prima facie* evidence of the validity of ULXP's claim as asserted and described

in the Proof of Claim.  Nor does it even demonstrate the existence of a true dispute regarding the

same or have any probative force.  *See Brown v. IRS (In re Brown)*, 82 F.3d 801, 805 (8th Cir.

1996) (stating that a claim's presumptive validity is not altered unless an objection is supported

by substantial evidence).

33.     To the contrary, ample evidence exists that directly undermines the Trustee's bare

allegations.  The governing documents for LCR's relationship with ULXP, for example, do not

satisfy the test for insider status.  The MSA is structured to ensure that LCR retains ultimate

control by noting that only the policies and practices that LCR <u>approves of</u> will be implemented.

The MSA, for example, notes that although ULXP will "identify, develop and <u>propose</u> modified

or new Law Firm policies," only the policies that LCR "<u>agrees</u> [with]" will ultimately be

adopted.  (Exhibit 1, p.LCR37) (emphasis added).  Even when the MSA appears to go further

regarding ULXP's role, such as stating that ULXP will "manage the process for" LCR's conflict

system," it nevertheless confirms LCR's superiority by stating that LCR's "General Counsel [is]

to provide [ULXP] with oversight and <u>final</u> determination of all conflict resolution." (Exhibit 1,

p. LCR41-42) (emphasis added). In other words, despite ULXP playing many roles and

providing many services, nothing happened at LCR without LCR's final approval.

34.    Sworn testimony obtained by the Trustee, but ignored by the Trustee for purposes

of the Supplemental Motion, confirm that the implementation of the MSA matched its written

design and thus directly refutes the Trustee's allegations. By way of example, Dan Reed, Chief

Executive Officer of UnitedLex, testified during his deposition that "it was the executive

committee [of LCR] that would sign off on all manner of major – significant decisions

concerning personnel, contracts, or things of that nature." (**Exhibit 10**, pp.114:23-25, p:115:1).

Similarly, Nick Hinton, Chief Financial Officer of UnitedLex, testified that ULXP did not have

the ability to pay vendors, but instead would offer advice as to which vendors should get paid

and it would be ultimately the LCR's team's decision as to which vendors were actually paid and

it was LCR that controlled its own cash and checkbook. (*See* **Exhibit 11**, pp. 92:10-13, 94:8-

95:1, 95:17-25, 152:6 – 154:3).

35.    With no proffered evidence to refute the *prima face* case presented in ULXP's

proof of claim, and with ample evidence to demonstrate that ULXP was not an insider, ULXP's

secured claim should be deemed valid for current purposes of considering the Trustee's request

to use cash collateral. Accordingly, ULXP objects to the use of the cash collateral by the

Trustee.

### B.    ULXP is Entitled to Adequate Protection

36.    As a secured creditor, ULXP is entitled to adequate protection in the event the

Court permits use of the cash collateral by the Trustee. Section 363(e) of the Bankruptcy Code

provides that upon the request of any entity with an interest in property that is being "used" by

the debtor, the court shall "prohibit or condition such use . . . as is necessary to provide adequate

protection of such interest."  11 U.S.C. §363(e).  *See, e.g., Metromedia Fiber Network Servs. v.*

*Lexent, Inc. (In re Metromedia Fiber Network, Inc.*), 290 B.R. 487, 491 (Bankr. S.D.N.Y. 2003)

("Section 363(e) is not permissive or discretionary – it states that the court 'shall' grant the relief

specified, at any time, on request of the secured entity.").  In other words, a secured creditor is

entitled to receive adequate protection during the course of a debtor's bankruptcy case to the

extent that the debtor's possession or use of the creditor's collateral threatens to diminish the

value of the secured creditor's interest.  A debtor requesting court approval to use cash collateral

has the burden of proof as to the issue of adequate protection. 11 U.S.C. § 363(p)(1).

37.      The Trustee makes no attempt to demonstrate that the replacement liens, first

provided for in the Debtor's First Interim Order, adequately protect ULXP's interests; rather, her

argument rests entirely on the premise that ULXP should be "entitled to no adequate protection,"

because the current value of ULXP's  lien "is miniscule, if not zero . . . ."  (Supplemental Motion

¶24).

38.      The Trustee offers no evidence that the value of ULXP's lien is "miniscule, if not

zero," and thus cannot meet her burden.  *See* 11 U.S.C. § 363(p)(1).

39.       Even if she did offer evidence, however, such proof would only bolster ULXP's

contention that the prior replacement liens were insufficient to protect ULXP's interests in the

cash collateral and that new adequate protection is required.

40.      As noted above, the value of LCR's accounts receivable as of the Petition Date,

which is also the date on which ULXP was first provided a replacement lien, was approximately

$17 million.  The value of such collateral diminished during the course of this bankruptcy

proceeding – going from the $17 million as of the Petition Date, down to approximately $8

million in April 2020, and again down to an alleged "miniscule" amount as of the Supplemental

Motion – all while ULXP seemed to have been purposely kept on the sidelines by the Trustee's

failure to pay off VCF.

41.     The decreasing value of the cash collateral was caused by collections that were

paid to VCF, designation of some aged receivables as uncollectable, and the Trustee's use of the

cash collateral to fund operating expenses.  Upon information and belief, the Trustee's activities

and use of the cash collateral included activities related to the investigation and evaluation of

potential claims and/or demands against ULXP.  In other words, ULXP's own collateral was

being used to avoid ULXP's rights to such collateral.

42.     The Trustee acknowledges that more than $1 million of the accounts receivable

that were collected went to pay for collection fees and operating expenses   (Exhibit 8, p.20:1-

12).  Thus, at a minimum, ULXP must be provided adequate protection to account for the

diminished value of the cash collateral since the Petition Date caused by the Trustee's use of

such collateral.

43.     Among the forms of protection available is designation of a superpriority

administrative expense claim under Bankruptcy Code Section 507(b) equal to the decrease in

value of ULXP's interest in the cash collateral since the Petition Date, but not greater than the

amount of its secured claim.

44.     A superpriority administrative expense claim, or similar adequate protection, is

necessary to provide ULXP with "the assurance of . . . continued recoverability" during the case.

*See* Supplemental Motion ¶24 (citing *In re Arriens*, 25 B.R. 79, 81 (Bankr. D. Or. 1982)).

WHEREFORE, ULXP respectfully requests that the Court sustain ULXP's objection to

the Supplemental Motion and deny the Trustee use of the cash collateral, and grant such other

16

relief as may be just and proper.  Alternatively, ULXP respectfully requests, (i) that the Trustee

be prohibited from using the cash collateral to fund any investigation, litigation, and/or

evaluation of any action or proceeding against ULXP, seeking to avoid ULXP's lien, claim, or

interest, (ii) enter an Order requiring adequate protection in the form of a superpriority

administrative expense claim in favor of ULXP, or such other form of adequate protection that

the Court may determine to be appropriate, and (iii) grant ULXP such other relief as is just and

proper.


Dated:  October 16, 2020

Respectfully submitted,

   /s/ *Thomas J. McKee, Jr.*
David G. Barger (VSB No. 21652)
Thomas J. McKee, Jr. (VSB No. 68427)
Greenberg Traurig, LLP
1750 Tysons Boulevard, Suite 1000
McLean, Virginia 22102
Telephone:  (703) 749-1300
Facsimile:    (703) 749-1301
Email: bargerd@gtlaw.com
      mckeet@gtlaw.com

and

J. Gregory Milmoe (admitted pro hac vice)
Greenberg Traurig, LLP
One International Place, Suite 2000
Boston, MA 02110
Telephone: (617) 310-6064
Email:  milmoeg@gtlaw.com

*Counsel to ULX Partners, LLC*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 16th day of October 2020, a true and correct copy of the

foregoing Objection, was served electronically through the CM/ECF filing system with notice

being automatically provided to all those entitled to receive the same, including, without

limitation, the Core Group and all entities on the 2002 List, pursuant to the *Order Establishing*

*Certain Notice, Case Management and Administrative Procedures* [ECF No. 38], including

without limitation the following persons:

Lynn L. Tavenner, Esq., Chapter 7 Trustee (ltavenner@tb-lawfirm.com)

Paula S. Beran, Esq., counsel to the Chapter 7 Trustee (pberan@tb-lawfirm.com)

Erika L. Morabito, Esq., counsel to the Chapter 7 Trustee (emorabito@foley.com)

*/s/ Thomas J. McKee, Jr.*
Thomas J. McKee, Jr. (VSB No. 68427)
Greenberg Traurig, LLP
1750 Tysons Boulevard, Suite 1000
McLean, Virginia 22102
Telephone:  (703) 749-1300
Facsimile:   (703) 749-1301
Email: mckeet@gtlaw.com

*Counsel to ULX Partners, LLC*