J. Scott Sexton (VSB No. 29284)          William A. Broscious (VSB No. 27436)
Andrew M. Bowman (VSB No. 86754)         William A. Broscious, Esq., PLC
GENTRY LOCKE                             P.O. Box 71180
P.O. Box 40013                           Henrico, Virginia 23255
Roanoke, Virginia 24022                  Telephone:    804.533.2734
Telephone:    540.983.9300               Email:    wbroscious@brosciouslaw.com
Email:    sexton@gentrylocke.com
          bowman@gentrylocke.com

*Counsel for* ███████

# UNITED STATES BANKRUPTCY COURT
# EASTERN DISTRICT OF VIRGINIA
### Richmond Division

|  |  |
|---|---|
| In re: | **Case No.: 19-34574-KRH** |
| **LeClairRyan, PLLC,** | **Chapter 7** |
| **Debtor.** | |

## ███████████ OBJECTION TO THE TRUSTEE'S SECOND MOTION TO MODIFY PROCEDURES REGARDING THE PROSECUTION AND/OR SETTLEMENT OF ACTIONS INVOLVING FORMER ATTORNEYS AND CERTAIN OTHERS

███████ ("███"), by counsel, hereby files his Objection to the Second Motion to Modify Procedures Regarding the Prosecution and/or Settlement of Actions Involving Former Attorneys and Certain Others, ECF No. 962 (the "Second Motion to Modify FAO Procedures" or the "Motion") filed by Lynn L. Tavenner, in her capacity as the Chapter 7 trustee (the "Trustee") of the bankruptcy estate of LeClairRyan, PLLC ("LeClairRyan" or the "Firm") in the above-referenced Chapter 7 case (the "Proceeding"). In support of this Objection, ███ states as follows:

### PRELIMINARY STATEMENT

The Trustee filed an amended complaint in the UnitedLex adversary proceeding containing scandalous and defamatory matter. Pursuant to Federal Rule of Bankruptcy Procedure 9018, ███ requests that, at the hearing on August 19, 2021, this Court first consider the Trustee's Second Motion to Modify FAO Procedures, and ███'s Objection thereto, before hearing the Trustee's Motion for Leave to Amend, in which she asks the Court to unseal the amended complaint. In an

effort to mitigate the reputational damage inflicted by the Trustee, ■■■ respectfully requests that he be referred to as the "Former Attorney" during the hearings, as addressed in his Motion to Seal.

## INTRODUCTION

The Trustee's Second Motion to Modify FAO Procedures seeks to change the rules of this Proceeding in the eleventh hour. For over a year, ■■■ has operated in good faith reliance on those rules.[1] Both the Trustee and ■■■ entered into the pre-complaint mediation process in accordance with those rules. The Trustee has now reversed course, knowingly and intentionally violated those rules, filed an amended complaint, and slow-tracked the mediation. This is fundamentally unfair and offends the equitable principles that form the core of this Court's jurisdiction.

Having violated the Court-ordered FAO Procedures that *she alone* proposed, the Trustee's Motion now asks the Court to retroactively bless her improper conduct. But her unclean hands bar the relief she now seeks. The Court should enforce its orders, refuse to condone the Trustee's inequitable conduct, and deny the Motion.

## BACKGROUND

### I.     The FAO Procedures and Order.

On May 14, 2020, the Trustee filed her Motion for an Order Establishing Procedures Regarding the Prosecution of Actions Involving Former Attorneys and Certain Others.[2] These are the Trustee's rules; she alone developed and proposed them. The Trustee's stated purpose of these rules was to:

> 1) serve judicial economy; 2) allow the Trustee, to the greatest extent allowed by law, consider any and all defenses, as well as mitigating circumstances, brought to

---

[1] As have many other former attorneys targeted by the Trustee.
[2] *See* ECF No. 457.

29646/1/10038032v1

her attention . . . ; 3) speed the time within which the matters will be resolved; and 4) reduce unnecessary litigation costs for the parties.[3]

The Court entered an Order on June 15, 2020 (the "FAO Order") mandating that all involved—including the Trustee—must follow these rules with respect to actions against former attorneys ("FAO Procedures").[4] Those rules include the following requirements and prohibitions:

a) The Trustee must send a demand letter before commencing an adversary proceeding against a former attorney to permit the parties to engage in pre-complaint mediation.[5]

b) To the extent that former attorney elects mediation, "the Trustee **will not file** a complaint against said defendant until after the filing of the Mediator's Report."[6]

c) The parties will then engage in pre-complaint mediation within sixty (60) days.[7]

d) If any party fails to participate in the mediation, the non-defaulting party may seek default judgment or dismissal, as appropriate.[8]

e) If the mediation is unsuccessful, **only then** may the Trustee initiate an adversary proceeding against that former attorney.[9]

## II.    ██████'s dealings with the Trustee.

As reflected in the Trustee's counsel's fee applications, the Trustee began reviewing ██████'s emails as early as April 2020.[10] By June 2020, the Trustee was analyzing these documents in connection with assessment of potential claims against ███.[11] On September 18, 2020, ███ reached out to the Trustee to volunteer for an informal interview, which he provided on October 16, 2020, answering substantive questions posed by the Trustee's counsel. In that process, ███

---

[3] ECF No. 457, at 2.
[4] *See* ECF No. 533.
[5] *See* ECF No. 533, Ex. A, at ¶ 1(A).
[6] *See* ECF No. 533, Ex. A, at ¶ 1(B) (emphasis added).
[7] *See* ECF No. 533, Ex. A, at ¶ 3(B).
[8] *See* ECF No. 533, Ex. A, at ¶ 3(J).
[9] *See* ECF No. 533, Ex. A, at ¶ 3(L).
[10] *See, e.g.*, ECF No. 625-6, at 37-38, 65-69, 73.
[11] *See, e.g.*, ECF No. 65-6, at 105.

29646/1/10038032v1

volunteered to provide documents to the Trustee. By email dated October 20, 2020, the Trustee

identified three categories of documents that she requested ▮ provide. ▮ produced over

2,000 pages of documents responsive to these requests.

On October 28, 2020, the Trustee commenced an adversary proceeding against ULX

Partners, LLC and UnitedLex Corp (collectively, "ULX").[12] The Trustee did not name ▮ as a

defendant in that proceeding, and that complaint neither referenced nor alleged any wrongdoing

by ▮ .

The focus of that Complaint was ULX and certain unnamed LeClairRyan "Officers and

Directors" who were in management positions leading up to and at the time of the Firm's joint

venture with ULX.[13] As the Trustee knew from LeClairRyan records and her interview with ▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮ . As the Trustee recognized, negotiations concerning the ULX joint venture did not begin

until October 2017.[14]

On November 19, 2020, ▮ provided a second voluntary interview with the Trustee,

where one of the first topics discussed was the ULX Adversary Proceeding which she had just

filed. ▮ answered her questions, none of which seemed in any way accusatory—for good

---

[12] *See* Case No. 20-03142-KRH ("*ULX Adversary Proceeding*"), ECF No. 4. Prior to the filing this adversary
proceeding, on September 22 and 23, 2020, the Trustee and ULX engaged in a mediation, pursuant to the FAO
Procedures, that failed to produce a settlement. *See* ECF No. 647. As addressed *infra*, the Trustee's present
resistance to ▮ 's mediation election seeks to deprive him of the mediation right afforded to every other "former
attorney or other," including ULX.
[13] *See ULX Adversary Proceeding*, ECF No. 4, at ¶ 1.
[14] *See ULX Adversary Proceeding*, ECF No. 4, at ¶¶ 32.

29646/1/10038032v1

reason. At the conclusion of that interview, ████ 's counsel asked the Trustee if ████ was a target. The Trustee's counsel promised to follow up with a response, ***but never did so***.

After eight months of silence, on July 9, 2021, the Trustee sent ████ a demand letter, as required by the Trustee's FAO Procedures and this Court's Order. ████████████████ ████████████████████████████████ ████████████████████ On July 22, 2021, ████ sent the Trustee his Pre-Complaint Mediation Election pursuant to Paragraph 1(B) of the FAO Order. Under those rules, the parties have sixty days to commence the mediation process—*i.e.*, by September 20, 2021.[15] The Trustee has not responded to ████ offers to extend the statute of limitations to accommodate this mediation period.[16]

Two days before ████ 's mediation election, on July 20, 2021, this Court issued a ruling in the ULX Adversary Proceeding finding that the Trustee's "flagship" claims of conspiracy held no water. The Court found that most of her allegations of illegal conduct were ***not*** illegal at all, including the contract with ULX, the joint venture, and the corporate conversion.[17]

When the Trustee learned her conspiracy claim was doomed, she could have followed proper procedures for adding a former attorney to the case. Instead, she chose a path that defiled the very rules she asked the Court to implement.

---

[15] *See* ECF No. 533, Ex. A, ¶ 3(B).

[16] *See* **Ex. B**.

[17] *See ULX Adversary Proceeding*, ECF No. 57, at 19 ("Entering into a joint venture, converting the business from a professional corporation to a professional limited liability company, terminating the firm's deferred compensation and supplemental retirement plans, and making misleading or false statements to third-party professional consultants are not themselves unlawful acts, nor does the Trustee allege any unlawful means through which those acts were accomplished.").

29646/1/10038032v1

On July 23, 2021, the Trustee confirmed receipt of ███'s Pre-Complaint Mediation Election. Unbeknownst to ███, the Trustee had already informed UnitedLex that she intended to file an amended complaint.[18] Yet when the Trustee communicated with ███ about mediation, she did not disclose that she was simultaneously preparing an 11th hour ambush, adding him (in place of the Firm's officers and directors) as a defendant in the ULX Adversary Proceeding.

Twelve days later, on August 4, 2021 at 4:55 PM EST, and with no prior warning, the Trustee emailed ███ stating:

> As a professional courtesy, we are writing to inform you of two pleadings in relation to ███ that the Trustee intends to file tomorrow so that they can be heard at the August 19 omnibus hearing. First, the Trustee plans to seek leave to amend the Trustee's complaint in the adversary proceeding with ULX to, among other things, add ███ as a defendant in that case.[19]

The Trustee requested that ███ consent to the amendment and demanded a response by noon the following day. She gave ███ less than 24 hours advance notice, despite planning this move for nearly two weeks.[20] The Trustee nevertheless represented: "she remains, of course, open to resolving the claims with ███ in mediation or otherwise."[21]

On August 5, 2021 at 11:15 AM, ███ responded by letter noting the impropriety and inequity of the Trustee's intended course of action.[22] Among other reasons, ███ protested that her proposed filings would violate the prohibitions contained in the Court's FAO Order, which provides: "If the FAO Defendant makes a Pre-Complaint Mediation Election, the Trustee *will not*

---

[18] *ULX Adversary Proceeding*, ECF No. 71, ¶ 2 ("On July 22, 2021, counsel for the Plaintiff informed the Defendants and this Court that the Plaintiff intends to file a Motion for Leave to File an Amended Complaint in this matter (the 'Anticipated Motion for Leave') in order for such motion to be heard by this Court at the next Omnibus Hearing of August 19, 2021.").

[19] A redacted copy of the Trustee's August 4, 2021 email is attached hereto as **Exhibit A**.

[20] *See ULX Adversary Proceeding*, ECF No. 71, ¶ 2.

[21] **Ex. A**.

[22] A redacted copy of ███'s August 5, 2021 letter is attached hereto as **Exhibit B**.

29646/1/10038032v1

*file a complaint against said defendant* until after the filing of the Mediator's Report."[23] After

considering for at most 18 minutes, the Trustee summarily dismissed the fact that her intended

course would violate the express terms of this Court's FAO Order, noting: "The arguments you

raise in your letter can otherwise be addressed by the Court at the appropriate time."[24]

After the Trustee provided a draft of the proposed amended complaint, ▮ indicated he

would not consent to the amendment.[25] ▮, again, notified the Trustee that her intended course

of conduct would violate the Court's FAO Order, and offered to continue the mediation process

pursuant to that Order. ▮ followed up separately with the Trustee's counsel with whom

mediation scheduling was in process, but the Trustee's counsel did not respond. Instead, on August

6, 2021, the Trustee intentionally violated Paragraph 1(B) of this Court's FAO Order when she

filed an amended complaint as part of her Motion for Leave to Amend in the ULX Adversary

Proceeding.[26]

On August 10, 2021, ▮ followed up a second time with the Trustee concerning

▮. In response, the Trustee ▮

▮. Only after ▮ and the mediator both confirmed availability the week of

September 13, 2021, the Trustee begrudgingly, and after prolonged refusal, seems to have ▮



---

[23] ECF No. 533, Ex. A. at ¶ 1(B) (emphasis added).
[24] A redacted copy of the Trustee's email response is attached hereto as **Exhibit C**.
[25] A redacted copy of ▮'s second August 5, 2021 letter is attached hereto as **Exhibit D**.
[26] *See ULX Adversary Proceeding*, ECF No. 66-70, 73-74.

29646/1/10038032v1

### III.    The Trustee Requests that this Court Condone Her Inequitable Conduct

The Trustee now asks this Court to absolve her willful violation of this Court's Order and rewrite those same rules in a manner that singularly targets, prejudices, and defames ███—and ███ alone. ███ submits that the Trustee has made a grave miscalculation in defying the very rules she proposed and this Court approved. The Court should reject the Trustee's plea that her inequitable behavior be condoned.

### GOVERNING LAW

Section 105(a) grants the bankruptcy court broad authority, to "issue any order, process, or judgement that is necessary or appropriate to carry out the provisions" of the Bankruptcy Code. *See* 11 U.S.C. § 105(a). This provision confers upon the bankruptcy court equitable powers. *See Official Comm. on Equity Sec. Holders v. Mabey*, 832 F.2d 299, 302 (4th Cir. 1987). That is because at its core, the bankruptcy court is not just a court of law, it is a court of equity. *See In re Hood*, 92 B.R. 648, 651 (Bankr. E.D. Va. 1988). As a court of equity, bankruptcy "proceedings are inherently proceedings in equity," and are guided by equitable principles. *Local Loan Co. v. Hunt*, 292 U.S. 234, 240 (1934); *Bennett v. W.T. Grant Co.*, 481 F.2d 664, 666 (4th Cir. 1973).

One such equitable principle is the doctrine of unclean hands:

> [T]he equitable maxim that "he who comes into equity must come with clean hands." This maxim is far more than a mere banality. It is a self-imposed ordinance that closes the doors of a court of equity to one tainted with inequitableness or bad faith relative to the matter in which he seeks relief, however improper may have been the behavior of the defendant. That doctrine is rooted in the historical concept of court of equity as a vehicle for affirmatively enforcing the requirements of conscience and good faith.

*Precision Instrument Mfg. Co. v. Auto. Maint. Mach. Co.*, 324 U.S. 806, 814 (1945).

It requires that the party "shall have acted fairly and without fraud or deceit as to the controversy in issue." *Id.* at 814-15. A "party cannot seek equitable relief . . . if that party has violated an equitable principle, such as good faith." *Jackson v. Harris (In re Harris)*, 2008 Bankr. LEXIS 2329, at \*13 (Bankr. N.D.W.V. Sept. 14, 2008); *Vienna Metro LLC v. Pulte Home Corp.*, 786 F. Supp. 2d 1076, 1084 (E.D. Va. 2011) ("Unclean hands prevents a party from obtaining equitable relief because of that party's own inequitable conduct."). The purpose of the doctrine is "to prevent a party from using the courts to reap the benefits of wrongdoing." *In re Uwimana*, 274 F.3d 806, 811 (4th Cir. 2001). It applies where: (i) the moving party's hands are not clean; (ii) there is a close nexus between that party's inequitable conduct and the relief she now seeks; and (iii) resulting injury. *See JTH Tax, Inc. v. H&R Block E. Tax Servs.*, 128 F. Supp. 2d 926, 949 (E.D. Va. 2001).

A litigant has "unclean hands" when her conduct is inequitable. *See id.* This includes conduct that is illegal, unethical, bad faith, or otherwise wrongful. *See WorldCom, Inc. v. Boyne*, 68 Fed. App. 447, 451 (4th Cir. 2003); *Uwimana*, 274 F.3d at 810. As the doctrine is "designed to safeguard the judicial process," the litigant's inequitable conduct must be of the nature that undermines the judicial process. *Hathaway v. OSB Mfg., Inc. (In re Hathaway)*, 364 B.R. 220, 244 (Bankr. E.D. Va. 2007).

The litigant's inequitable conduct must have a "close nexus" to the equitable relief she seeks. *See JTH Tax, Inc.*, 128 F. Supp. 2d at 949. "While equity does not demand that its suitors shall have led blameless lives as to other matters, it does require that they shall have acted fairly and without fraud or deceit as to the controversy in issue." *Precision Instrument Mfg. Co.*, 324 U.S. at 814-15 (internal citation omitted). This is examined on a transaction-specific basis, and

prevents a litigant from seeking equitable relief related to conduct in which he acted inequitably. *Powell v. Floyd*, 1999 U.S. App. LEXIS 25516, at \*16 (4th Cir. Oct. 12, 1999); *Hathaway*, 364 B.R. at 243; *Uwimana*, 274 F.3d at 810. The party seeking application of the unclean hands doctrine must demonstrate that he has been injured by the opposing litigant's conduct. *Id.*

While the doctrine of unclean hands is often considered to be a defense to a plaintiff's claims, it is also a defense to any type of equitable relief sought, including by motion. *See, e.g.*, *Claiborne-Ingram v. Hatfield*, Case No. 09-11481-PBS, 2012 U.S. Dist. LEXIS 12754, at \*19, n. 9 (D. Mass. Feb. 2, 2012) (denying party's motion based on the movant's unclean hands).

## OBJECTION

### I.    The Trustee's hands are unclean.

The Trustee has unclean hands for at least four reasons: (A) the Trustee knowingly and intentionally violated the original FAO Procedures Order; (B) the Trustee did not act in good faith with respect to the ███'s mediation; (C) the Trustee seeks her relief too late and in a manner targeted to unfairly deny ███ rights, including a litigation timeline that is unconscionable; and (D) the Trustee's conduct is contrary to the equitable principles that *she* articulated as the basis for establishing the FAO Procedures in the first place.

### A.    The Trustee violated Paragraph 1(B) of the Court's FAO Procedures Order.

The Trustee alone developed the original FAO Procedures, and proposed them to the Court. These FAO Procedures carry the full force and weight of this Court's FAO Order, and they have applied to all parties—including ███ and the Trustee—for more than a year. The Trustee specifically invoked these Procedures when she sent ███ a demand letter under the pre-complaint mediation process set forth in the FAO Procedures. ███ agreed, and began this process in good

faith reliance on the FAO Procedures. By entering into this process, ███ reasonably believed, as provided in Paragraph 1(B) of this Court's FAO Order, that the Trustee would not file a complaint against him. *See* ECF No. 533.

Without warning, on August 4, 2021, the Trustee requested ███'s consent to add him as a defendant in the existing adversary proceeding against UnitedLex. ███ twice cautioned that the Trustee's intended course of conduct would violate this Court's FAO Procedures Order, under which the parties were currently operating. *See* **Ex. B, D**. Thus, the Trustee's subsequent filing of an amended complaint was a knowing, intentional, and willful violation of this Court's FAO Order. Such inequitable conduct renders the Trustee's hands unclean.

The Trustee is not above the law as set forth in this Court's orders. Yet, her actions seek to arrogate that prerogative to herself. Having chosen that course, she proposes amendments to the controlling order of this Court that both condone her behavior retroactively and seek exceptions that plainly target ███. It would be a profound disrespect for the authority of this Court (and the rights of the litigants before it) to condone the Trustee's behavior.

**B.    The Trustee has not acted in good faith with the required mediation.**

The Trustee ████████████████████████████ After ██████████ ██████████, in favor of an improper pre-mediation filing against ███. This alone renders her hands unclean. The Trustee did not seek this Court's permission to violate its order. So too, she does not even "ask forgiveness." Rather, her motion attempts to whitewash her flagrant violation by retroactively changing this Court's order so as to remove the consequences of her inequitable conduct.

Under Paragraph 3(J) of the FAO Procedures ordered by this Court, the Trustee's refusal to participate in mediation is grounds to have any subsequent claims dismissed. *See* ECF No. 533, ¶ 3(J). That is what should happen. It is no wonder that the Trustee's present Motion seeks to remove Paragraph 3(J), and retroactively eliminate the penalty for her deliberate refusal to engage in mediation before filing the proposed amended complaint. This is *per se* inequitable.

      **C.**    **The Trustee's proposed amendments are: too late; targeted to unfairly deny ███ rights; and propose a litigation timeline that is unconscionable.**

      **1.**    **Too Late and Futile.**

As noted above, one of the principal changes proposed by the Trustee is the authority to add former attorneys into existing litigation as "indispensable parties." *See* ECF No. 962, ¶ 13(a).[27] As a practical matter, she asks for this targeted relief against only one person: ███. *See* **Ex. A**. Thus, she would propose to deny ███ fair discovery rights and thrust him into a case that has been ongoing for a year. During that time, the Trustee has sat on the sidelines waiting—waiting 16 months after initially reviewing (and apparently rejecting) potential claims against ███, 11 months after interviewing ███ (during which no allegations were voiced in any way), and 10 months after committing (but then refusing) to answer his counsel's direct request as to whether ███ was a target in the ULX adversary proceeding. To the extent that the Trustee has knowledge of any "claims" against ███, she has had such knowledge for a long time.

Such odd (and apparently grasping) behavior begs the questions: *Why wait until the 11th hour? Why file a Complaint against ULX (with allegations of conspiracy against the Firm's*

---

[27] UnitedLex has not raised any assertions of indispensable parties, and neither has the Trustee. She has certainly made no motion to join under Federal Rule of Civil Procedure 19, made applicable to adversary proceedings pursuant to Bankruptcy Rule 7019. Scapegoating ███ for the Trustee's conspiracy theory failures does not make ███ proper party, let alone an indispensable party.

_current_ officers and directors), then suddenly pivot to a hitherto unmentioned ███████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

██████████████████████████████████, _then completely disregard those_

_same ordered procedures?_

The answer lies with the Court's ruling in the _ULX Adversary Proceeding_, which came

days after the Trustee issued her demand letter to ████. There, the Court ruled that the very heart

of the Trustee's big dollar conspiracy claims alleged no illegality—a necessary predicate to her

allegations:

> Entering into a joint venture, converting the business from a professional
> corporation to a professional limited liability company, terminating the firm's
> deferred compensation and supplemental retirement plans, and making misleading
> or false statements to third-party professional consultants are not themselves
> unlawful acts, nor does the Trustee allege any unlawful means through which those
> acts were accomplished. . . . Furthermore, in Virginia, a fraudulent conveyance
> cannot be the predicate act for a conspiracy claim.

_Id_. at 19. This ruling decimated the core of the Trustee's conspiracy hopes and left her flagship

claim with two meager life lines—ULX's alleged misappropriation of client funds, and the

unauthorized practice of law. None of this conduct in any way involves ████ or amounts to the

type of monetary splash the Trustee was hoping for.

It appears that the Trustee is now attempting to breathe new life into her dead claims by

simply substituting a new scapegoat into her "story"—with even more outlandish character

assassinations. It's as if she is saying to the Court—what if ████████████████████████

is a defendant? Will that change the legal conclusion that "[e]ntering into a joint venture,

converting the business from a professional corporation to a professional limited liability company,

terminating the firm's deferred compensation and supplemental retirement plans" are *not* unlawful acts? Why else would she repeat the same claims with even more outrage, venom, and disrespect for the facts,[28] particularly now that this Court has ruled that there was nothing wrong with those transactions in and of themselves? Perhaps the Court's Order on ULX's Motions to Dismiss has as little relevance to her as the Court's Order on the FAO Procedures. Whatever the reason, ███ should not be deprived of his Court-ordered rights, even if the Trustee is disappointed with this Court's rulings in the ULX Adversary Proceeding. And she cannot erase the legal effect (and accuracy) of the Court's rulings on such matters in any event. Her last minute contortions are futile.

### 2. Targeted and unfair.

If granted the relief she requests, the Trustee would then be free to further disregard the rights and safeguards granted over a year ago by this Court's FAO Order. She proposes to immediately unseal the amended complaint and commence litigation against ███ before any mediation. *See ULX Adversary Proceeding*, ECF No. 68, ¶ 4 ("To the extent the Court grants the Motions, any potential concern about confidentiality will be moot, and the Trustee's redacted Motion for Leave to Amend and proposed amended complaint can (and should) be unsealed and filed on the public docket as soon as possible."). This amendment would mean that ███ would be denied the procedural rights in Paragraph 1(B) of the FAO Order, which allows the mediation to proceed with the complaint only being filed *after* the filing of the Mediator's Report. As the Court can ascertain, the impact of the Trustee's Motion rests on one individual – ███. And,

---

[28] The Trustee's proposed Amended Complaint takes great liberty with the factual record and gymnastically twists well-meaning efforts ███████████████████████████████████████. It is undoubtedly an effort to damage ███'s reputation and try this case in the news media, even though the Trustee knows her claims have no legal or factual merit in a court of law.

29646/1/10038032v1

notwithstanding anything said in her filings to the contrary, the Trustee's actions are terminating the very prospects of mediation for which *she* lobbied.[29]

### 3.    Unconscionable Timeline.

The ULX Adversary Proceeding has been pending since October 28, 2020 and is set for trial beginning October 25, 2021. *See ULX Adversary Proceeding*, ECF No. 49, ¶ 1. Setting aside the time-consuming process of document review, interrogatories, and depositions— about which ███ has no information and has had no opportunity for review in the ULX Adversary Proceeding, ███'s expert reports would be due before he is even permitted to commence discovery under Federal Rule of Civil Procedure 26(d)(1), made applicable to adversary proceedings pursuant to Bankruptcy Rule 7026. This is manifestly unconscionable.

Even if the Court moves the trial to "late January or early February 2022," as requested by the Trustee, the case deadlines are no less inequitable. The Trustee seeks to unseal the amended complaint and immediately thrust ███ into pre-existing litigation on August 19. *See ULX Adversary Proceeding*, ECF No. 68, ¶ 4. Thus, motions to dismiss or other responsive pleadings would be due on September 9, 2021. The Rule 26(f) conference would occur by October 18, 2021. Expert reports would be due in the beginning of December 2021. Therefore, ███ would have barely a month and a half to conduct necessary discovery before disclosing expert reports. This timeline is unfair and impossible, particularly where ███'s name, reputation, and untethered allegations of monetary damages are at stake. The Trustee's efforts to fast-track litigation against

---

[29] In this case, by seeking to jump the gun and publicly file unsubstantiated allegations against ███, she is effectively throwing away her real leverage against ███: character assassination. She has to some extent accomplished that already. If she is successful in skirting the rules and airing her unfounded "allegations," the likelihood of a successful mediation is even more diminished. She has unquestionably harmed the Estate.

█ are manifestly inequitable, and she has clearly sat on the side-line far too long to demand

█ face such one-sided handicaps.

    **D.    The Trustee's conduct violates the equitable principles upon which her FAO Procedures are based.**

The Trustee articulated four principles as the basis for the original FAO Procedures: (i) judicial economy; (ii) consideration of defenses; (iii) speedy resolution of claims; and (iv) decreased costs to the Debtor's estate. The Trustee has acted contrary to each of these principles, particularly in her dealings with █. The equities dictate that the Trustee's conduct should not be countenanced.

    **1.    The Trustee's conduct violates principles of judicial economy.**

Judicial economy seeks to conserve the Court's scarce resources, avoid the multiplicity of suits, and promote the settlement of claims, when possible. *See Secrest v. Secrest (In re Secrest)*, 453 B.R. 623, 629 (Bankr. E.D. Va. 2011).  The original purpose of the FAO Procedures was to conserve judicial resources by attempting to resolve claims before an adversary proceeding was filed. The Trustee now seeks to remove this requirement. This adds a significant burden on the Court, its Clerk, and court personnel, and wastes judicial resources. *See Scott v. US Bank, N.A.*, Case No. 2:09-cv-516, 2010 U.S. Dist. LEXIS 145409, at *10 (E.D. Va. Oct. 13, 2010) (holding "[t]his Court has a duty to ensure that the Court's limited resources are used in a way that promotes the interests of justice.") (internal quotation omitted). Such action is contrary to notions of judicial economy upon which the Trustee stated her original FAO Procedures were based.

    **2.    The Trustee failed to consider plain defenses or actual facts.**

Given the Trustee's refusal to participate in the required pre-complaint mediation before filing the proposed amended complaint, she has not taken into consideration defenses that bar most

of her claims or "facts" that she plainly misunderstands. By way of example (and not limitation), to the extent the Trustee asserts that ███████████████████████████, such claim is barred by the applicable statute of limitations. ███████████████████████████. Accordingly, the statute of limitations on any ███████████████████ expired on December 31, 2017. *See Plumbers & Steamfitters Union Local No. 10 v. Waters*, 451 F. Supp. 3d 543, 550 (E.D. Va. 2020) (holding ████████.". Any claim by the Trustee that ███████████████████████ is time-barred. To the extent the Trustee asserts ███████████████████████████ ████████████████████████, such claim would also be barred by the statute of limitations. *See id.*

Even if those claims were not barred, ████ and the Firm entered into a mutual release that prohibits the Trustee's claims. After ███████████████ ████ gave up significant claims against the Firm and certain of its partners by way of mutual release. This release is not avoidable under Section 548 of the Bankruptcy Code because it was executed on December 27, 2016— beyond the two-year avoidance period. The mutual release is not avoidable under Section 544(b)(1) and the applicable Virginia law because the Firm received "consideration deemed valuable in law"—*i.e.*, a mutual exchange of releases. *See Arrowsmith v. Lemberg Law, LLC (In re Health Diagnostics Lab., Inc.)*, 571 B.R. 182, 197 (Bankr. E.D. Va. 2017); *Price v. Taylor*, 251 Va. 82, 85 (1996) (holding "the mutual exchange of promises and alone is sufficient to constitute consideration for the contract.").[30]

---

[30] Should the Trustee continue to assert claims subject to the mutual release, the Debtor's Estate will be subject to the indemnification provisions in that release, including the payment of his attorneys' fees and costs as an administrative expense claim against the Estate.

Legal defenses aside, the Trustee has some basic and highly pertinent facts wrong— █████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████ The Firm's management was the responsibility of its

officers and directors at the time—not ████. Simply put, ████ was a mere employee of the Firm.

To that end, ████ did not attend or present at any of the Firm's board or shareholders

meetings regarding the ULX joint venture. All such presentations were made by the Firm's

executive officers at the time. The decision to proceed with the joint venture was a Firm decision,

and the ULX deal received near unanimous approval from the board and shareholders.

Additionally, the Trustee continues to assert ███████████████████████

claims that are plainly barred by the doctrine of *in pari delicto*. As alleged, the Trustee ██████

████████████████████████████████████████████████

███████████████████████ *See Grayson Consulting, Inc. v. Wachovia Sec.,*

*Inc. (In re Derivium Capital LLC)*, 716 F.3d 355, 367-69 (4th Cir. 2013).

The foregoing are just some of the defenses the Trustee has failed to consider in pre-

complaint mediation. The Trustee's failure to do so runs contrary to her own stated purpose for

the FAO Procedures—to "allow the Trustee, to the greatest extent allowed by law, consider any

and all defenses."

29646/1/10038032v1

### 3.    The Trustee's conduct will not result in speedy resolution of claims.

The Trustee has a duty to close the Debtor's estate "as expeditiously as is compatible with the best interests of parties in interest." 11 U.S.C. § 704(a)(1). Consistent with that duty, the Trustee represented the FAO Procedures would "speed the time within which the matters will be resolved." *See* ECF No. 457, at 2. The FAO Procedures' pre-complaint mediation protocol promoted that goal—it permitted the parties to discuss the strengths and weaknesses of their cases and available defenses in advance of litigation, and negotiate an expedient resolution of the claims.

The Trustee has now jettisoned the required mediation process for those ████████ she deems to be "Indispensable Parties," namely ███. Contrary to the Trustee's stated purpose of the FAO Procedures, this will not result in the expeditious resolution of claims; it promotes litigation, and the associated time and expense.

### 4.    The Trustee's conduct unnecessarily increases litigation costs.

The Trustee's final stated purpose of the FAO Procedures was to reduce unnecessary litigation costs by attempting to resolve claims pre-suit through mediation. This cost-saving mechanism is for naught if the Trustee refuses to abide by it. Instead of pre-complaint mediation, the Trustee now seeks to spend the Debtor's resources to avoid the very procedures she proposed in the first place. Her actions will diminish the prospects of settlement, increase the costs to the estate and ███, and further burden this Court.

### E.    Conclusion.

In sum, the Trustee has violated the very principles she cited as the basis for the FAO Procedures she requested from this Court. ███ is the target of these violations, as well as the

proposed "indispensable party" procedures. As a matter of equity, these violations render the Trustee's hands unclean.

## II.    The Trustee's inequitable conduct has a close nexus to the present Motion.

There is a direct link between the Trustee's unclean hands and her Second Motion to Modify FAO Procedures. The Trustee violated the original FAO Procedures. The Trustee now asks the Court to retroactively modify those procedures to relieve that violation. Therefore, there is a close nexus between the Trustee's unclean hands and the relief she now seeks in the Motion. *See, e.g.*, *In re Lafferty*, 469 B.R. 235, 246 (Bankr. D.S.C. 2012) (holding a debtor was precluded from benefiting from an exemption after attempting to hide the property via fraudulent transfer).

## III.    ███ has been injured by the Trustee's conduct.

The Trustee has expressly stated that she intends to add ███ as a defendant in the ULX Adversary Proceeding. *See* **Ex. A**. The Trustee subsequently filed an amended complaint in that proceeding. While the amended complaint is not publicly available, the injury to ███ is clear. By seeking to pardon her transgressions through post hoc amendments to the FAO Order, the Trustee has forced ███ to either roll over and bow to her tactics, or oppose them publicly.

The Trustee's immaterial, impertinent, and scandalous allegations in the proposed amended complaint bear no resemblance to the facts or the real persons involved in the decline of the law firm that ████████████████████████████████████████ ████████████████████████████████████████ ████████████████████████████ Absent the context of a judicial proceeding, it would unquestionably be actionable defamation. Despite the hours of voluntary interviews and thousands of pages of documents ███ provided, the Trustee gets the facts wrong

29646/1/10038032v1

and asserts claims that are legally frivolous—all as part of a calculated and procedurally improper ambush. In so doing, the Trustee prioritizes splashy newspaper headlines over truth and substance.

## IV.    Conclusion.

The doctrine of unclean hands prevents the Trustee from asking this Court to modify its FAO Procedures (that she proposed) after she has knowingly and intentionally violated that same Order. As a matter of equity, the Court should not approve of such conduct. All litigants—even the Trustee—are required to obey this Court's orders. If for no reason other than to preserve the sanctity of this Court's orders, the Court should deny the Trustee's Motion, as set forth below. *See Brooks Sports, Inc. v. Anta (China) Co.*, 2018 U.S. Dist. LEXIS 222111, at *58 (E.D. Va. Nov. 30, 2018) (observing "there certainly is a public interest in safeguarding the integrity of the judicial process and not allowing litigants to enjoy the privilege of the courthouse after openly refusing to obey the Court's rules and orders.").

## <u>RELIEF SOUGHT</u>

WHEREFORE, ███████████ by counsel, respectfully requests the Court deny the Trustee's Motion insofar as it changes the FAO Procedures to permit the filing of an "Indispensable Party Amended Complaint" as well as all related procedures—including, but not limited to, joining former attorneys into existing adversary proceedings as "indispensable parties," commencing litigation without first attempting mediation, and removing the consequences (dismissal) for the Trustee's failure to mediate—and for such other relief as is just and proper. At the very least, the Court should withhold its ruling until after it receives the Mediator's report regarding GDL's mediation under the existing FAO Order.

Respectfully submitted this 16th day of August, 2021.

29646/1/10038032v1

███████████████

/s/ Andrew M. Bowman

J. Scott Sexton (VSB No. 29284)
Andrew M. Bowman (VSB No. 86754)
GENTRY LOCKE
P.O. Box 40013
Roanoke, Virginia 24022
Telephone:  540.983.9300
Fax:    540.983.9400
Email:    sexton@gentrylocke.com
        bowman@gentrylocke.com

William A. Broscious (VSB No. 27436)
William A. Broscious, Esq., PLC
P.O. Box 71180
Henrico, Virginia 23255
Telephone: 804.533.2734
Email:    wbroscious@broscouslaw.com

*Counsel for* ██████████

## **CERTIFICATE OF SERVICE**

I hereby certify that on this 16th day of August, 2021, I electronically filed the foregoing with the Clerk using the CM/ECF system which will send notification of such filing to all counsel of record.

/s/ Andrew M. Bowman

29646/1/10038032v1