**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF VIRGINIA**
**Richmond Division**

| | |
|---|---|
| In re:<br><br>    LeClairRyan, PLLC,[1]<br><br>                  Debtor | Case No. 19-34574-KRH<br><br>Chapter 7 |

**MOTION FOR APPROVAL OF COMPROMISE AND**
**SETTLEMENT AND MEMORANDUM OF LAW**

Lynn L. Tavenner, Trustee, not individually, but solely in her capacity as the Chapter 7 trustee (in such capacity, the "**Trustee**") of the bankruptcy estate (the "**Estate**") of LeClairRyan PLLC ("**LeClairRyan**" and/or the "**Debtor**" and/or "**LCR**")), in the above-referenced Chapter 7 case hereby files, by counsel, pursuant to Rule 9019 of the Federal Rules of Bankruptcy Procedure, this Motion for Approval of Compromise and Settlement and Memorandum of Law (the "**Motion**"), seeking the entry of an order approving a settlement by and among the Trustee, Columbia Casualty Company ("**Columbia**"), and Elizabeth Acee, Richard Bowerman, Paul Burleigh, John Cahill, Mark Dombroff, Niclas Ferland, Janice Grubin, Erik Gustafson, Chris Lange, Jason Medley, Lori Thompson, Karol Corbin Walker, Andrew Zappia, Joseph F. Lagrotteria, Bryan Couch, Jeffrey Alitz, Thomas Butler, Kevin Kenneally, David Freinberg, Michael Hern, Gary

---

[1] The principal address of the Debtor as of the Petition Date was 4405 Cox Road, Glen Allen, Virginia 23060, and the last four digits of the Debtor's federal tax identification number are 2451.

Erika L. Morabito (VSB No. 44369)
Brittany J. Nelson (VSB No. 81734)
QUINN EMANUEL URQUHART & SULLIVAN LLP
1300 I Street, N.W., Suite 900
Washington, DC 20005
(202) 538-8334 (telephone)
Email: erikamorabito@quinnemanuel.com
          brittanynelson@quinnemanuel.com

*Special Counsel to Lynn L. Tavenner, Chapter 7 Trustee*

LeClair, Lisa Murphy, Stephen Romine, Katja H. Hill, Vernon E. Inge, Jr., and John Reilly (collectively, the individuals are referred to herein as the "**Defendants**"). In support of this Motion, the Trustee represents the following:

## JURISDICTION AND VENUE

1. The United States Bankruptcy Court for the Eastern District of Virginia has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Standing Order of Reference from the United States District Court for the Eastern District of Virginia*, dated August 15, 1984.

2. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).

3. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

## FACTUAL BACKGROUND

*A. Assertion of Potential Claims against LCR Insureds*

4. On September 3, 2019 (the "**Petition Date**"), the Debtor filed for relief under Chapter 11 of Title 11 of the United States Code, 11 U.S.C. §§101-1532 (as thereafter amended, the "**Bankruptcy Code**") in the United States Bankruptcy Court for the Eastern District of Virginia, Richmond Division (the "**Court**"). Pursuant to §§ 1007 and 1108 of the Bankruptcy Code, the Debtor operated as a debtor-in-possession.

5. Per agreement between the Debtor, the United States Trustee, and ABL Alliance, LLP, the Debtor's Chapter 11 case was converted to a case under Chapter 7 of the Bankruptcy Code on October 4, 2019. Upon conversion, Lynn L. Tavenner was appointed interim trustee, and no trustee having been elected at the meeting of creditors, she continues to serve as the Trustee.

6. Consistent with her duties, the Trustee investigated potential causes of action. The Trustee, with the assistance of her counsel, filed her *Motion for an Order Establishing Procedures Regarding the Prosecution of Actions Involving Former Attorneys and Certain Others and Memorandum in Support Thereof* (the "**FAO Procedures Motion**") (Dkt No. 457). The FAO Procedures Motion was approved by Order of this Court, ECF No. 533, as amended/supplemented by additional Orders of this Court (Dkt No. 929 and 982) (collectively, the "**FAO Order**").

7. Pursuant to the FAO Order, the Trustee alleged certain civil and statutory claims against the Defendants in demand letters and/or discussions (collectively, the "**Claims**"). Following the Defendants' receipt of the demand letters, certain of the Defendants and their counsel engaged in settlement discussions and entered into tolling agreements. For other Defendants, the Trustee filed complaints in various adversary proceedings, including Adversary Proceeding Nos. 21-03069, 21-03070, 21-03071, 21-03078, 21-03079, 21-03080, 21-03081, 21-03082, 21-03083, 21-03084, 21-03085, 21-03086, 21-03087, 21-03088, 21-03089, 21-03090, 21-03091, 21-03092 and 20-03142 (collectively, the "**Adversary Proceedings**").

**B.    *The Columbia Policy and the Relief from Stay Motion***

8. Prior to the Petition Date, Columbia issued a Management Liability Policy to LeClairRyan, Policy Number 596749072 (as modified by Runoff Endorsement No. 10) with a liability limit of $10,000,000 (the "**Columbia Policy**"). Columbia and the Defendants assert that the Defendants are "Insured Persons"[2] under the Columbia Policy.

9. Among other things, the Columbia Policy provides coverage to certain individuals on account of Claims (as that term is defined in the Columbia Policy). The Columbia Policy is a

---

[2] Capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the Columbia Policy.

waning policy, and any Claim Expenses paid from the Policy reduce the total amount of the proceeds of the policy.

10. The Claims asserted by the Trustee included (a) civil and statutory claims against the Defendants including, without limitation, Management Wrongful Acts or Interrelated Wrongful Acts, including statutory or common law breach of fiduciary duty, trade secrets, statutory and common law conspiracy, or unlawful distribution in violation of Va. Code Ann. §§ 13.1-653, 13.1-690, and 13.1–692 (the "**Covered Claims**") and (b) additional claims under Chapter 5 of the Bankruptcy Code, under Virginia Code §55.1-400 or Va. Code §13.1-1035, or other similar state law claims, including but not limited to claims for unjust enrichment, conversion, and/or unlawful distributions received directly or indirectly to or for the benefit of any Defendant and/or Insured Person (collectively, the "**Non-Covered Claims**").

11. On May 7, 2021, Columbia filed a Motion for Relief From the Automatic Stay (Dkt No. 857) (the "**Motion for Relief From Stay**"), seeking relief to permit it to advance Claim Expenses relating to the defense of certain Defendants. The Trustee filed a Limited Objection to the Motion for Relief from the Automatic Stay (Dkt No. 921) (the "**Limited Objection**"), asserting that the Estate had an interest in the proceeds of the Columbia Policy and arguing that the form of Order on the Motion for Relief should not decide the legal issue but rather preserve the rights of all parties with respect thereto and provide for an orderly mechanism for the limited, reasonable payment of a small portion of the Columbia Policy proceeds with a reporting process so that this Court, the Trustee, and interested parties could monitor the remaining, available proceeds, similar to the relief this Court and other Courts in this jurisdiction has provided in other matters. After negotiations between the Trustee and Columbia, the Court entered a "Consent Order Granting

Relief From the Automatic Stay and Establishing Procedures for Access to Proceeds of Insurance Policy" (the "**Consent Order**") (Dkt No. 965). Among other things, the Consent Order provided that Columbia could advance certain Claim Expenses to Insured Persons up to and not to exceed $1,000,000 (subject to a full reservation of Columbia's rights, remedies, and defenses for the defense of the Insured Persons) and that the Trustee had certain rights to object to the advancements of Claim Expenses.

### C. The Proposed Settlement

12. On November 16, 2021, the Trustee, Defendants, and Columbia participated in an all-day settlement conference (the "**Settlement Conference**"). Based on these extensive negotiations, the Trustee, the Defendants, and Columbia seek to fully and finally resolve the Covered Claims on the terms set forth in a certain settlement agreement (the "**Settlement Agreement**") (attached hereto as **Exhibit A**[3]) without admission of liability.

13. The salient terms of the Settlement Agreement between the Trustee, Columbia, and the Defendants, subject to the Bankruptcy Court's approval, are as follows[4]:

    a. In consideration of the mutual releases, covenants, representations, and undertakings of the Trustee and the Defendants, Columbia shall pay the Trustee

---

[3] At the time of this filing, the Trustee has obtained authorization and/or consent from Columbia, the Defendants, and/or their counsel expressly authorizing their consent to enter into the terms and conditions of the Settlement Agreement. The Trustee has further obtained executed copies of the Settlement Agreement from Columbia and most of the Defendants. Counsel for those Defendants who have not yet provided an executed copy of the Settlement Agreement have represented to the Trustee that they will provide the Trustee with an executed copy of the Settlement Agreement on or before November 22, 2021. Once received, the Trustee will file an Amended Exhibit A that contains a fully executed copy of the Settlement Agreement.

[4] The summary of the Settlement set forth in this section is qualified by the specific provisions of the Settlement Agreement. To the extent there is any inconsistency between this summary and the Settlement Agreement, the Settlement Agreement governs.

$9,475,000 (nine million four hundred seventy-five thousand dollars) in full satisfaction of the Covered Claims (the "**Payment**").

b. In addition, Columbia shall pay not more than $525,000 (five hundred twenty-five thousand dollars) in total Claim Expenses in accordance with the Columbia Policy. Columbia agrees to use good faith in reviewing the invoices submitted to determine if they constitute covered Claim Expenses. Prior to the payment of any Claim Expenses, Columbia shall submit supporting documentation to the Trustee for review and consultation and, within seven (7) business days, the Trustee may review such documentation and consult with Columbia regarding the Claim Expenses; provided, however, that the Trustee shall not have consent or veto rights with respect to payment of any Claim Expenses. The Defendants and the Trustee reserve all rights to object to any of the Claim Expenses that are not paid in accordance with the Columbia Policy or the Settlement Agreement.

c. The Trustee agrees to certain releases for Defendants and other Insured Persons[5] solely as they relate to Covered Claims, regardless of whether or not said Covered Claims exceed the coverage or benefits of the Columbia Policy. Nothing in the Settlement Agreement provides a waiver, release or discharge by the Trustee of the Defendants, in part or in whole, as to Non-Covered Claims.

d. The Defendants and the Insured Persons agree to a certain release of the Trustee

---

[5] For sake of clarity, this definition of "Insured Persons" under the Settlement Agreement includes Janice Bowen, Everette Allen, Jennifer Mistal, Charles Osthimer, Patricia Peden, Thomas Regan, Robert Reklaitis, Josh Rosenfeld, Jeffrey O'Hara, and George Whitley, but is without prejudice to whether this person constitutes an "Insured Person" as defined in the Columbia Policy. This release is provided to the Insured Persons even though they are not a signatory to the Settlement Agreement.

and the Estate for claims that the Defendants made, could have made, or are able to make against the Trustee and the Estate for relying on Management Wrongful Acts, and for asserting, pursuing, settling, and/or releasing any of the Covered Claims. The release, however, does not apply to any third-party claim, setoff right or affirmative defense as to the Non-Covered Claims and nothing in the Settlement Agreement precludes the Defendants or Insured Persons from asserting any applicable counterclaim, third-party claim, defense, setoff right or affirmative defense to Non-Covered Claims.

e. The Trustee and the Defendants agree to a certain release to Columbia for any and all claims for coverage or insurance benefits that could have been made under the Columbia Policy, including any claim for misrepresentation, fraud, indemnity, contribution, breach of contract, breach of duty, negligence, "bad faith," violation of statute or regulation, unfair claims handling, attorneys' fees, or damages of any kind whatsoever arising out of or relating to the Columbia Policy or any request for coverage or benefits under the Columbia Policy.

f. As a condition to the Settlement Agreement, the Parties agree that the proposed 9019 Order shall include findings that the releases contained in the 9019 Order and the Settlement Agreement were given in good faith as defined in Virginia Code Section 8.01-35.1, and the Defendants shall be entitled to all of the applicable protections of Virginia Code Section 8.01-35.1; and

g. The Settlement Agreement also provides that upon this Court's approval and the Trustee's receipt of the Payment, all persons and entities are enjoined and barred

from commencing or continuing any and all past, present or future claims and from asserting any and all allegations of liability or damages, of whatever kind, nature or description, direct or indirect, in law, equity or arbitration, absolute or contingent, in tort, contract, statutory liability or otherwise, whether or not based on strict liability, negligence, gross negligence, fraud, breach of fiduciary duty or otherwise (including attorneys' fees, costs or disbursements), against the Defendants and other Insured Persons based on the Covered Claims (the "**Contribution Bar**").

## MEMORANDUM OF LAW

14. Bankruptcy Rule 9019(a) provides that "[o]n motion by the trustee and after notice and a hearing, the court may approve a compromise or settlement." Fed. R. Bankr. P. 9019(a). The United States Supreme Court has noted that "[c]ompromises are a 'normal part of the process of reorganization.'" *Protective Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson*, 390 U.S. 414, 424 (1968) (*citing Case v. Los Angeles Lumber Prods. Co.*, 308 U.S. 106, 130 (1939)). In *TMT Trailer*, the Supreme Court stated that compromises and settlements must be "fair and equitable." 390 U.S. at 424; *see also In re Loudoun Heights, LLC*, No. 13-15588, 2014 WL 2928110, at *8 (Bankr. E.D. Va. June 27, 2014) (same); *Shaia v. Three Rivers Wood, Inc. (In re Three Rivers Wood, Inc.)*, No. 98-38685, 2001 WL 720620, at *6 (Bankr. E.D. Va. Mar. 20, 2001) (same); *In re Frye*, 216 B.R. 166, 174 (Bankr. E.D. Va. 1997) (same); *In re Austin*, 186 B.R. 397, 400 (Bankr. E.D. Va. 1995) (same).

15. The decision whether to approve a compromise under Rule 9019 is committed to the discretion of the Court, which must determine if the compromise or settlement is fair and

equitable. *In re Health Diagnostic Lab., Inc.*, 2016 Bankr. LEXIS 3724 (Bankr. E.D. Va. Oct. 14, 2016); *In re Alpha Nat. Res. Inc.*, 544 B.R. 848, 856 (Bankr. E.D. Va. 2016); *In re Frye*, 216 B.R. 166, 174 (Bankr. E.D. Va. 1997). The Court is not required to conduct a "mini-trial" of the underlying case, but instead must only decide whether the settlement proposed falls "below the lowest point in the range of reasonableness." *In re Austin*, 186 B.R. 397, 400 (Bankr. E.D. Va. 1995) (citations omitted); *accord In re Alpha Nat. Res. Inc.*, 544 B.R. at 857.

16. Factors that courts in this District consider when evaluating a settlement under Rule 9019 include: (a) "the probability of success in litigation;" (b) "potential collection struggles;" (c) "the complexity, time and expense involved in litigating the matter;" and (d) "the interests of the creditors." *Loudoun Heights*, 2014 WL 2928110, at *9 (citations omitted); *see also Three Rivers Wood*, 2001 WL 720620, at *6 (same).

17. Additionally, the Court must determine whether the proposed settlement is in the best interests of the Estate. *Three Rivers Wood*, 2001 WL 720620, at *6 ("a compromise or settlement will most likely gain approval if it is both 'fair and equitable,' as well as representative of the best interests of the estate as a whole") (citations omitted); *Frye*, 216 B.R. at 174 ("In order to approve a compromise, this court must look at various factors and determine whether the compromise is in the best interest of the estate and whether it is fair and equitable."); *In re Energy Coop. Inc.*, 886 F.2d 921, 927 (7th Cir. 1989) ("The benchmark for determining the propriety of a bankruptcy settlement is whether the settlement is in the best interests of the estate.").

18. The factors that courts consider in determining whether a settlement is in the best interests of a bankruptcy estate are similar to the factors examined to determine whether the settlement is fair and equitable. *See Parker v. Bullis (In re Bullis)*, 515 B.R. 284, 288 (Bankr. E.D.

Va. 2014) ("The best interests of the estate are met by considering the same factors a court considers in reviewing any proposed settlement: (1) the probability of success on the merits in the litigation; (2) possible difficulties of collecting any judgment which might be obtained; (3) the complexity, expense, and likely duration of any ensuing litigation; and (4) the interests of the creditors, giving proper deference to their reasonable views.") (internal citations omitted).

19. Basic to the process of evaluating proposed settlements is "the need to compare the terms of the compromise with the likely rewards of litigation." *TMT*, 390 U.S. at 425. However, "the settlement may be approved even if the court finds it likely that the trustee would ultimately succeed in the litigation." *In re Austin*, 186 B.R. at 400.

20. When reviewing a proposed settlement, the Court may take into account the Trustee's business judgment and the opinions of the other parties to such settlement, and the Court should not substitute its judgment for that of the Trustee. Instead, the Court must determine "whether the settlement falls below the lowest point in the range of reasonableness." *Three Rivers Wood*, 2001 WL 720620, at *6 (quoting *Austin*, 186 B.R. at 400). Where a proposed settlement is not below the lowest point of what is fair and reasonable and represents the best interests of the estate as a whole, the court should approve it pursuant to Bankruptcy Rule 9019. *Three Rivers Wood*, 2001 WL 720620, at *6.

21. The Trustee, in the exercise of her business judgment and in consultation with her professionals, believes that the Settlement Agreement is fair and equitable and in the best interests of the Estate and the compromises reached by the Trustee, Columbia, and the Defendants resulted in maximum value to the Estate.

22. The Settlement Agreement is the result of extensive good faith and arms-length negotiations among the Trustee, the Defendants, and Columbia and represents a result well above the lowest bound of the range of reasonableness. This agreement is not collusive, and represents a fair compromise of the disputes.

23. Assuming this Court approves this Motion and authorizes the Settlement Agreement, the Trustee will receive the Payment ($9,475,000) no later than January 28, 2022, which amount represents a significant sum certain that is likely greater than any recovery the Estate would ultimately receive in the event that the matters proceeded to judgment. Furthermore, resolution of the Covered Claims will significantly reduce administrative fees and costs for the Estate by eliminating time-consuming and expensive litigation with more than twenty-five Defendants with respect to these Covered Claims.

24. Before commencing the Settlement Conference, the Trustee conducted due diligence on the enforcement and ultimate collectability of potential judgments against the Defendants and determined, among other things, that proceeds from the Columbia Policy were the best source of payment to compensate the Estate for damages caused by the Covered Claims, even if it meant releasing significant Claims against the Defendants for damages that would exceed the limits of the Columbia Policy. Moreover, Non-Covered Claims against the Defendants are not included in the Settlement Agreement and therefore the Trustee may, if successful on the Non-Covered Claims, recover additional sums from the claims against these Defendants.

25. Furthermore, the Settlement Agreement preserves the vast majority of the proceeds of the Columbia Policy for the Estate, notwithstanding the waning nature of the Columbia Policy. Significantly, the Settlement Agreement limits all Claim Expenses to an amount not to exceed

$525,000. This is particularly important in this case, where there are more than twenty-five Defendants (with multiple counsel) who could incur Claim Expenses and against whom the Trustee has asserted both Covered Claims and Non-Covered Claims. Limiting the amount of Claim Expenses from the Columbia Policy ensures, among other things, that that there can be no dispute regarding allocation of Claim Expenses between Covered Claims and Non-Covered Claims on a going-forward basis, something that could have been an arduous, costly, and time-consuming task for both Columbia and the Trustee.

26. Moreover, to effectuate the Settlement Agreement, and in exchange for a release of potential significant liability of the Defendants, many of the Defendants have agreed to waive their right to Claim Expenses under the Policy, which preserves a greater recovery for the Estate. In furtherance of her fiduciary duty, the Trustee has also insisted upon a specific mechanism to ensure that all Claim Expenses are paid pursuant to and in accordance with the Settlement Agreement and the Columbia Policy. The Trustee believes that these rights are consistent with the Trustee's current rights under the Consent Order.

27. As a condition to resolving the dispute as set forth in the Settlement Agreement, the Defendants require that this Court find that the releases contained in the Settlement Agreement were given in good faith as defined in Virginia Code Section 8.01-35.1, and the Defendants shall be entitled to all of the applicable protections of Virginia Code Section 8.01-35.1. The Trustee insisted that the Contribution Bar be narrowly tailored, limited in purpose, scope and effect, and not a third-party "bankruptcy discharge." Furthermore, the Trustee required that the Contribution Bar not release direct third-party claims, except to the extent such claims were property of the Estate and derivative of the Debtor's right or (i) asserted against Contribution Releasees (as that

term is defined by the Settlement Agreement) by any person based on theories of joint and several liability; or (ii) for set-off, indemnity, contribution, or apportionment of liability under Virginia Code Section 8.01-35.1 or other applicable law.

28. Accordingly, the Trustee respectfully requests that the Court (a) approve the Motion; (b) authorize the effectiveness of the Settlement Agreement on behalf of the Estate by entry of an appropriate order, and (c) grant such other relief as is just and proper.

DATED: November 19, 2021

Respectfully submitted,

/s/ Erika L. Morabito
Erika L. Morabito (VSB No. 44369)
Brittany J. Nelson (VSB No. 81734)
QUINN EMANUEL URQUHART & SULLIVAN
1300 I Street, N.W., Suite 900
Washington, DC 20005
(202) 538-8334 (telephone)
Email:     erikamorabito@quinnemanuel.com
           brittanynelson@quinnemanuel.com

*Special Counsel to Lynn L. Tavenner, Chapter 7 Trustee*

# CERTIFICATE OF SERVICE

       Pursuant to the Local Rules of this Court and the Case Management Order, I certify that on this 19th day of November 2019, a true copy of the foregoing Notice was sent first-class delivery, postage prepaid, and/or electronically to: (a) the Office of the United States Trustee; (b) the Debtor's 20 Largest Unsecured Creditors; (c) all known secured creditors from the Debtor's Official Form 106D; (d) the Core Parties and 2002 List as defined in the Case Management Order; (e) all Persons identified by name in the Motion; (f) all Persons listed on the Debtor's List of Equity Security Holders; (g) all other Persons receiving a demand from the Trustee pursuant to the FAO Procedures Order (as defined in the Motion); and (h) parties requesting service of pleadings in this Case (as indicated on the Schedule A attached to the Court filed copy), as well as Persons receiving ECF notices in this Case.

*/s/ Erika L. Morabito*
Erika L. Morabito