J. Scott Sexton (VSB No. 29284)
Andrew M. Bowman (VSB No. 86754)
GENTRY LOCKE
P.O. Box 40013
Roanoke, Virginia 24022
Telephone:    540.983.9300
Email:    sexton@gentrylocke.com
    bowman@gentrylocke.com

William A. Broscious (VSB No. 27436)
William A. Broscious, Esq., PLC
P.O. Box 71180
Henrico, Virginia 23255
Telephone:    804.533.2734
Email:    wbroscious@brosciouslaw.com

*Counsel for Gary D. LeClair*

# UNITED STATES BANKRUPTCY COURT
# EASTERN DISTRICT OF VIRGINIA
### Richmond Division

| | |
|---|---|
| In re:<br><br>**LeClairRyan, PLLC,**<br><br>Debtor. | Case No.: 19-34574-KRH<br><br>Chapter 7 |

### MOTION TO AMEND DEBTOR'S EQUITY SECURITY HOLDERS LIST
### PURSUANT TO BANKRUPTCY RULE 1009(a)

Gary D. LeClair ("**GDL**"), by and through the undersigned counsel, pursuant to Section 105(a) of Title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (as amended, the "**Bankruptcy Code**") and Rule 1009(a) of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), files this motion (the "**Motion**") for entry of an Order, the proposed form of which is attached as **Exhibit 1** (the "**Order**"), directing LeClairRyan, PLLC (the "**Debtor**" or the "**Firm**") to amend its List of Equity Security Holders (ECF No. 79) to remove GDL as a purported equity security holder. In support of this Motion, GDL states as follows:

### INTRODUCTION

1. The Debtor's List of Equity Security Holders (ECF No. 79) (the "ESH List") is incorrect insofar as it does not list the Debtor's equity security holders as of the filing of the bankruptcy petition on September 3, 2019, and, therefore, incorrectly includes GDL as a purported member (*i.e.*, equity security holder). Had the ESH List been correctly compiled as of the filing of

29646/1/10286830v4

the Debtor's bankruptcy petition, it would not include GDL, as he resigned and ended his employment with the Firm effective July 31, 2019. On that date, the Firm's operating agreement effectuated a sale of all of GDL's common and preferred shares back to the Firm immediately prior to the termination of his employment. Following the July 31, 2019 sale, GDL did not hold any shares in the Debtor and, therefore, was no longer a member. Accordingly, the Debtor incorrectly listed GDL on the ESH List. The Court should order the Debtor to amend the ESH List pursuant to Rule 1009(a) and remove GDL.

## JURISDICTION, VENUE, AND PREDICATES FOR RELIEF

2. The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334(b). Venue is proper pursuant to 28 U.S.C. § 1408 and 1409.

3. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).

4. The predicates for relief requested herein are Section 105(a) of the Bankruptcy Code and Bankruptcy Rule 1009(a).

## BACKGROUND

A) **GDL's employment with LeClairRyan, PLLC.**

5. In 1988, GDL co-founded the Firm along with Dennis Ryan. *See* Declaration of Gary D. LeClair, at ¶ 4 (attached as **Exhibit 2**). For many years, GDL held leadership positions at the Firm, including as Chief Executive Officer until 2011, Chair until December 31, 2015, and board member until January 31, 2016. *See* **Ex. 2**, at ¶ 6. Thereafter, GDL did not have a leadership role at the Firm, but he continued to work for the Firm as an attorney. *See* **Ex. 2**, at ¶ 6.

6. GDL was a shareholder of the Firm for many years; he held both Common Shares and Series A Preferred Shares. *See* **Ex. 2**, at ¶¶ 4, 9.

7. As a shareholder, GDL was a "member" of the Firm upon its conversion to a professional limited liability company in early 2018. *See* Fourth Amended and Restated Shareholders Agreement of LeClairRyan, a Professional Corporation and Operating Agreement of LeClairRyan, PLLC (the "Operating Agreement"), Section 5.01(a) (attached as **Exhibit 3**); *see also* **Ex. 2**, at ¶¶ 8-9.

**B)    The Firm encouraged its shareholder-members to leave in late July 2019.**

8. The Firm's governing documents generally required shareholder-members to give thirty (30) days' notice of their resignation and voluntary termination of employment. *See* **Ex. 3**, at 28-30 (Section 2.02(h)).

9. As explained by the Firm's Chief Executive Officer, C. Erik Gustafson, the Firm routinely enforced this requirement, including in 2018, early 2019, and even as late as June and early July 2019. *See* Gustafson Dep. 232:17-233:4 (attached as **Exhibit 4**).

10. However, that policy changed in late July 2019. CEO Gustafson testified: "by July 26th, we candidly wanted people to leave, and to get off the payroll and to make sure their client work was supported." *See* **Ex. 4**, at 233:6-8. Therefore, on July 26, 2019, CEO Gustafson waived the 30 day notice requirement, as authorized by Section 2.02(h) of the Debtor's Operating Agreement. *See* **Ex. 4**, at 232:1-13; July 26, 2019 email from Gustafson to Firm members (attached as **Exhibit 5**); **Ex. 2**, at ¶ 13. The Firm's members were freely permitted to resign, terminate their employment with the Firm, and transition to a new law firm.

29646/1/10286830v4

**C)    GDL's resignation from the Firm.**

11.    On July 26, 2019, GDL submitted his resignation to the Firm, and stated that he was terminating his employment with the Firm effective August 4, 2019. *See* **Ex. 2**, at ¶ 14; *see also* July 26, 2019 email from GDL to CEO Gustafson (attached as **Exhibit 6**).

12.    To ensure the continuity of health insurance coverage for an associate attorney transitioning with GDL, his termination date was moved up to July 31, 2019. *See* **Ex. 2**, at ¶ 15; July 31, 2019 email from GDL to CEO Gustafson (attached as **Exhibit 7**).This timeline was discussed and approved by the Firm's leadership, including CEO Gustafson. *See* **Ex. 2**, at ¶ 15; *see also* **Ex. 7**.

13.    GDL's last day with the Firm was July 31, 2019. *See* **Ex. 2**, at ¶ 17.

14.    CEO Gustafson confirmed in his deposition that GDL's resignation was effective as of July 31, 2019. *See* **Ex. 4**, at 236:6-8.

15.    GDL began his new position at Williams Mullen beginning on August 1, 2019. *See* **Ex. 2**, at ¶ 18.

16.    Thereafter, the Firm implemented an "automatic reply" on GDL's email account, which stated GDL "has left LeClairRyan to pursue other opportunities and no longer practices law with our Firm." *See* **Exhibit 8**.

**D)    The Debtor's Operating Agreement.**

17.    The Debtor's Operating Agreement specifically addresses the situation in which a shareholder-member resigns and terminates their employment with the Firm.

18.    Section 2.02(a) of the Debtor's Operating Agreement states:

> [I]n the event of (i) the termination of a Member's employment with the Company whether because of death, permanent disability,

> retirement, Qualified Retirement, termination by the Company with or without Cause or by the Member with or without Good Reason, or (ii) the Member's change in attorney classification from Member to Senior Counsel (or other non-Member attorney classification), the Company or its Assignees, as applicable, shall purchase and redeem from the Transferring Member (as defined below), and the Transferring Member shall sell to Company or its Assignees, as applicable, all Shares of Section 2.02 Common and all shares of Section 2.02 Preferred held by the Transferring Member immediately prior to the termination of his or her employment or change in attorney classification.

**Ex. 3**, at 23.

19. The Debtor's Operating Agreement defines "Transferring Member" as, among other things, the "terminated Member." *See* **Ex. 3**, at 23 (Section 2.02(a)).

20. Section 2.02(a), therefore, imposes an obligation upon a resigning member to sell to the Debtor, and the Debtor to purchase, all shares of the Debtor—both Common and Preferred Shares—immediately prior to the termination of employment.

21. The mechanics of the sale of the Debtor's shares are set forth in Section 2.02(g) of the Operating Agreement, which provides:

> The Transferring Member's Section 2.02 Common and Section 2.02 Preferred to be purchased by the Company following the Termination Date pursuant to Section 2.02(c) (collectively, the "Purchased Stock"), shall be deemed sold and transferred to the Company as of the Termination Date, irrespective of whether the Transferring Member actually delivers the certificate(s) evidencing the Purchased Stock or any other transfer documents requested by the Company.

**Ex. 3**, at 28.

22. The Debtor's Operating Agreement defines "Termination Date" as "the effective date of the termination of the Transferring Member's employment with the Company." *See* **Ex. 3**, at 23 (Section 2.02(a)(i)).

23. Section 2.02(g) of the Operating Agreement, therefore, effectuates a sale of the Transferring Member's shares to the Firm on their last day of employment. The Operating Agreement affords neither the departing member nor the Firm any discretion whether to complete this sale. This sale is automatically consummated by operation of the Operating Agreement—even without executing any documents or tendering the stock certificates.

24. Under Section 5.03 of the Debtor's Operating Agreement, "[a]s soon as any Person who is a Member ceases to hold any Shares, such Person shall no longer be a Member." **Ex. 3**, at 48.

25. Therefore, when a member terminates their employment with the Firm, that member sells all of their shares to the Firm on their last day of employment. At that moment, upon completion of the sale, the departing attorney is no longer a member of the Firm.

E) **The Firm's Course of Dealings With Departing Shareholders.**

26. After the conversion to an LLC, the Firm applied the provisions of its Operating Agreement as set forth above. *See* **Ex. 2**, ¶ 10. When a shareholder-member gave notice of their resignation—*i.e.*, "the termination of a Member's employment with the Company . . . by the Member with or without Good Reason" under Section 2.02(a)—the Firm treated that shareholder-member's shares (both common and preferred) as sold and transferred back to the Firm immediately prior to the termination of their employment. Thereafter, the attorney was neither considered nor treated as a member of the Firm, including at year-end.

27. The Firm consistently treated departing shareholders in this manner in 2018 and into July 2019. *See* **Ex. 2**, ¶ 10. Indeed, thirty-seven (37) members that departed by mid-July 2019 are not included in the ESH List. *See* **Ex. 2**, ¶ 11.

**F)**     **The Debtor's Bankruptcy Petition.**

28.    The Debtor filed a Chapter 11 Voluntary Petition for Reorganization on September 3, 2019 (the "Petition Date"). *See* D.E. 1.

**G)**     **The Debtor's ESH List**

29.    On September 27, 2019, the Debtor filed its ESH List. *See* D.E. 79.

30.    The ESH List is dated as of July 29, 2019. *See id.* ("The Debtor submits that the individuals identified below were members of LeClairRyan PLLC as of July 29, 2019"). The Debtor has not amended the ESH List to show the list of its members as of the petition date, September 3, 2019.

31.    The ESH List states forty-three (43) individuals—including GDL—were members of the Debtor on July 29, 2019.

## RELIEF REQUESTED

32.    By this Motion, GDL respectfully requests entry of an Order, the proposed form of which is attached as **Exhibit 1,** pursuant to Bankruptcy Rule 1009(a), directing the Debtor to amend its ESH List (ECF No. 79), effective for all purposes as of September 3, 2019, to remove GDL as an equity security holder.[1]

## LEGAL AUTHORITY

33.    Bankruptcy Rule 1007(a)(3) requires the debtor to "file within 14 days after entry of the order for relief a list of the debtor's equity security holders of each class showing the number and kinds of interests registered in the name of each holder, and the last known address or place

---

[1] In the event the Court grants this Motion, GDL will withdraw his Objection to the Trustee's Motion to Approve (ECF No. 1092), as he does not object to the Trustee's reliance on an accurate ESH List.

of business of each holder." The Bankruptcy Code defines "equity security holder" as the "holder of an equity security of the debtor"—*i.e.*, a person who owns a share or similar security in the debtor. 11 U.S.C. § 101(16-17). The list of equity security holders is fixed as of the date bankruptcy petition.

34. The Bankruptcy Rules expressly conceive of the scenario where a debtor files an incorrect list or schedule. In this situation, Bankruptcy Rule 1009(a) grants the debtor the right to amend a "voluntary petition, list, schedule, or statement . . . as a matter of course at any time before the case is closed." Fed. R. Bankr. P. 1009(a). Additionally, "[o]n motion of a party in interest, after notice and hearing, the court may order any voluntary petition, list, schedule, or statement to be amended." Fed. R. Bankr. P. 1009(a). The latter provision "is intended solely to permit non-debtor parties to demand that the debtor make changes to the petition or schedules." *In re Body Transit, Inc.*, 613 B.R. 400, 405 (Bankr. E.D. Pa. 2020); *In re Progressive Sols., Inc.*, 615 B.R. 894, 901 (Bankr. C.D. Cal. 2020).

35. While the term "may" suggests the Rule grants the bankruptcy court discretion whether to grant such amendment, the "approach of permissively allowing schedule amendments has been construed to give courts no discretion to reject [otherwise proper] amendments," unless the action is taken in bad faith or the amendment would prejudice the creditors. *In re Plummer*, 378 B.R. 569, 572 (C.D. Ill. 2007).

36. The Fourth Circuit has expressly adopted this liberal approach to amendments, and held: "a court ordinarily does not have discretion to deny leave to amend or require leave to amend or to require a showing of good cause." *Tignor v. Parkinson*, 729 F.2d 977, 978 (4th Cir. 1984) (decided under Bankruptcy Rule 110, the predecessor to Rule 1009(a)). Thus, where the previously

filed petition, list, schedule, or statement is incorrect, the bankruptcy court should grant a motion to amend and order the debtor to correct the accuracy of the document. *See, e.g.*, *In re Wyse*, Case No. 14-34514, 2015 Bankr. LEXIS 2885, at *7-8 (Bankr. N.D. Ohio Aug. 28, 2015) (granting motion to amend to correct inaccurate disclosure in voluntary petition); *In re Main St. Tours, Inc.*, Case No. 20-61498, 2021 Bankr. LEXIS 1581, at *3-4 (Bankr. N.D. Ohio Jun. 3, 2021) (granting motion to amend schedules to add new unsecured creditors).

## BASIS FOR REQUESTED RELIEF

I. **The ESH List is incorrect as it does not reflect a list of the Debtor's equity security holders as of the Petition Date.**

37. The ESH List states: "[t]he Debtor submits that the individuals identified below were members of LeClairRyan PLLC *as of July 29, 2019*." ECF No. 79, at 1 (emphasis added).

38. The Petition Date was September 3, 2019. *See* ECF No. 1.

39. The ESH List, therefore, is incorrect insofar as it reflects those individuals who were holders of equity securities of the Debtor over one month prior to the Petition Date.

II. **GDL was not an equity security holder on the Petition Date.**

40. GDL submitted his resignation and notice of termination on July 26, 2019. *See* **Ex. 2**, at ¶ 14; **Ex. 6**. Accordingly, GDL was a "Transferring Member," as such term is defined in Section 2.02(a) of the Debtor's Operating Agreement.

41. On July 31, 2019, GDL notified the Debtor that his resignation and termination of employment would be effective that same day. *See* **Ex. 2**, at ¶ 15-16; **Ex. 7**. This fact was confirmed by the sworn deposition testimony of the Debtor's CEO. *See* **Ex. 4**, at 236:6-8. Accordingly, GDL's "Termination Date," as such term is defined in Section 2.01(a)(i) of the Debtor's Operating Agreement, was July 31, 2019.

42. Section 2.02(a) and Section 2.02(g) of the Debtor's Operating Agreement effectuated a deemed sale between GDL and the Firm wherein all of GDL's Common and Preferred shares were sold on July 31, 2019, his Termination Date.

43. Immediately thereafter, GDL did not hold any shares of the Debtor. Under Section 5.03 of the Debtor's Operating Agreement, GDL was no longer a member of the Debtor as of August 1, 2019.

44. This interpretation of the Debtor's Operating Agreement is consistent with the Firm's practice and course of dealing with respect to members who terminated their employment in 2018 and through mid-July 2019.[2]

45. On the Petition Date, September 3, 2019, GDL was not a member (*i.e.*, not an equity security holder) of the Debtor. Insofar as the ESH List reports otherwise, it is incorrect. Accordingly, the Court should order the Debtor to amend its ESH List and remove GDL as a purported holder of equity securities. *See* Fed. R. Bankr. P. 1009(a); *Tignor*, 729 F.2d at 978 ("a court ordinarily does not have discretion to deny leave to amend or require leave to amend or to require a showing of good cause."); *see, e.g.*, *In re Wyse*, Case No. 14-34514, 2015 Bankr. LEXIS 2885, at *7-8; *In re Main St. Tours, Inc.*, Case No. 20-61498, 2021 Bankr. LEXIS 1581, at *3-4.

## NOTICE

46. GDL has provided notice of this Motion by U.S. Mail, email, and/or ECF notice to (a) counsel for the Debtor; (b) ABL Alliance, LLLP; (c) the Trustee; (d) the Office of the United

---

[2] This is also consistent with the requirements of the Virginia Rules of Professional Conduct. While it is not *per se* unethical for a lawyer to be a member of two or more law firms, the quagmire of ethical issues—not the least of which is the avoidance of imputed conflicts of interest and resulting disqualification of the law firms—make the arrangement unworkable in practice. *See* Virginia State Bar, Legal Ethics Opinion 1712 (lengthy discussion of the ethical considerations of a lawyer's employment at two or more private law firms).

States Trustee; (e) all individuals or entities that have requested service of filings pursuant to Bankruptcy Rule 2002; (f) all individuals listed on the ESH List.

47.    GDL has met and conferred with the Trustee on this Motion, and the Trustee neither objects nor supports this Motion or the relief sought herein.

## NO PREVIOUS REQUEST

48.    No prior request for the relief sought herein has been made to this Court or any other court.

WHEREFORE, Gary D. LeClair, by counsel, respectfully requests the Court grant this Motion, direct the Debtor to amend its ESH List, effective for all purposes as of September 3, 2019, to remove GDL as an equity security holder, and grant such further relief as is just and proper.

Respectfully submitted this 14th day of February, 2022.

GARY D. LECLAIR

/s/ Andrew M. Bowman

J. Scott Sexton (VSB No. 29284)
Andrew M. Bowman (VSB No. 86754)
GENTRY LOCKE
P.O. Box 40013
Roanoke, Virginia 24022
Telephone:   540.983.9300
Fax:         540.983.9400
Email:       sexton@gentrylocke.com
             bowman@gentrylocke.com

William A. Broscious (VSB No. 27436)
William A. Broscious, Esq., PLC
P.O. Box 71180
Henrico, Virginia 23255
Telephone: 804.533.2734

29646/1/10286830v4

Email: wbroscious@brosciouslaw.com

*Counsel for Gary D. LeClair*

**CERTIFICATE OF SERVICE**

    I hereby certify that on this 14th day of February, 2022, I electronically filed the foregoing with the Clerk using the CM/ECF system which will send notification of such filing to all counsel of record.

                                                                               /s/ Andrew M. Bowman