# UNITED STATES BANKRUPTCY COURT
# EASTERN DISTRICT OF VIRGINIA
# Richmond Division

| | |
|---|---|
| In re:<br><br>    LeClairRyan, PLLC,[1]<br><br>Debtor | Case No. 19-34574-KRH<br><br>Chapter 7 |

## DECLARATION OF LYNN L. TAVENNER, TRUSTEE

I, Lynn L. Tavenner, Trustee, not individually but solely in my capacity as the Chapter 7 trustee (in such capacity, the "**Chapter 7 Trustee**" and/or the "**Trustee**") of the bankruptcy estate (the "**Estate**") of LeClairRyan PLLC ("**LeClairRyan**" and/or the "**Debtor**"), in the above-referenced Chapter 7 case (the "**Case**"), pursuant to 28 U.S.C. § 1746, hereby declare as follows under penalty of perjury to the best of my knowledge, information, and belief:

1.    I am the duly appointed Chapter 7 Trustee in the LeClairRyan Case.

2.    I submit this declaration in support of the (1) *Application for Compensation for Tavenner & Beran, PLC as Counsel to Chapter 7 Trustee*, [ECF No. 1242]; (2) *Sixth Application for Compensation for Barry Strickland & Company as Accountant filed*, [ECF No. 1244]; and (3) *Interim Application for Compensation (Third Interim Application of Quinn Emanuel Urquhart & Sullivan LLP as Special Counsel to the Trustee, for Allowance of Compensation and Reimbursement of Expenses Incurred)*, [ECF No. 1245], as supplemented [ECF No. 1249] (collectively, the "**Applications**" and each an "**Application**"). Additionally, I submit this declaration in support of (4) *Motion to Set Last Day to File Administrative Claims – Trustee's Motion for Entry of An Order Setting Bar Date For Filing Chapter 11 Administrative Claims*

---

[1] The principal address of the Debtor as of the petition date was 4405 Cox Road, Glen Allen, Virginia 23060, and the last four digits of the Debtor's federal tax identification number are 2451.

1

*and Memorandum In Support Thereof* (the "**Chapter 11 Administrative Claim Bar Date Motion**"), [ECF No. 1250]; (5) *Motion to Approve – Trustee's Motion For An Order Approving (I) The Trustee's Reliance On Debtor's List of Equity Security Holders and (II) Procedures For Obtaining Copies of Filed Tax Returns and Memorandum In Support Thereof* (the "**Tax Motion**"), [ECF No. 1086]; (6) the Responses filed at ECF Nos. 1255, 1256, 1257, 1258, and 1264 (collectively, the "**Trustee's Responses**" and each a "**Trustee's Response**"); and (7) Case Status and Report pursuant to Local Rule 2015-(a)-(1)(A).

3.  The statements in this Declaration are, except where specifically noted, based on my personal knowledge on information that I have obtained in connection with my role as the Trustee. If I were called upon to testify, I could and would competently testify to the facts set forth herein on that basis.

4.  The Bankruptcy Code sets forth legal standards for the Court to award my professionals reasonable compensation for actual, necessary services rendered by such attorneys and paraprofessionals employed by such firms based on the nature, extent, and value of the services rendered, time spent on such services, and the cost of comparable services other than in a bankruptcy case. I understand that the Court may award reimbursement for actual, necessary expenses that benefit the Estate. I have reviewed the Applications, and the rates charged by my professionals are comparable to, if not less than, fees charged by other firms retained in similar capacities in comparable Chapter 7 cases. I have reviewed each Application in the context of interim applications and I believe that the fees requested satisfy the lodestar factors enumerated in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974) as adopted by the Fourth Circuit in *Barber v. Kimbrells, Inc.*, 577 F.2d 216, 226 (4th Cir.), *cert. denied*, 439 U.S. 934 (1978), and in *Anderson v. Morris*, 658 F.2d 246, 249 (4th Cir. 1981). I anticipate certain adjustments to

future fee applications to address items in one or more of these interim Applications. And, in the exercise of my business judgment, I maintain that the amounts should be approved on an interim basis as being in the best interest of the Estate.

5. To further my efforts of properly administering this Estate pursuant to my duty as the Chapter 7 trustee, I maintain that it is in the Estate's best interest to ascertain the amount of unpaid administrative expenses from the Chapter 11 Case (as defined in the Chapter 11 Administrative Claim Bar Date Motion).

6. In addition to the statements contained in my Declaration filed with this Court on November 15, 2021, and found at ECF No. 1097, I believe that additional information could assist the Court in connection with its consideration of the Tax Motion and the Modification Motions (as defined in the Trustee's Responses). After the filing of the Tax Motion, I, directly and through counsel, engaged with one or more individuals, who had filed a Tax Motion Objection (as defined in the Trustee's Responses) in an attempt to resolve said objections. Through these discussions, I confirmed that the real issue to be addressed was whether certain individuals should be relieved of his/her tax obligations of the professional limited liability company. As such, I and said individuals, through counsel, agreed that the underlying issue should be addressed contemporaneously with the Tax Motion. Accordingly, I, through counsel, requested that the Court grant, as modified, the procedures to obtain copies of tax returns and continue all other aspects of the Tax Motion until March 29, 2022, with the parties intending that the Motion for Modification (as defined in the Trustee's Responses) and any similar relief requests would be heard on the same day. The Court granted my request as found at Order entered on February 23, 2022 at ECF No. 1124.

7. While the specific request in the Modification Motions is removal from the ESH List (as defined in the Trustee's Responses), the ultimate outcome desired is the amendment of the Debtor's 2019 and 2020 tax returns such that (a) the Estate will cease issuing K-1s to said individuals and (b) those individuals will no longer share in the tax benefits, or more importantly, tax obligations of the professional limited liability company from 2019 forward. The crux of the Tax Motion Objections and the Modification Motions is the termination of tax obligations for certain individuals of the professional limited liability company.

8. While I understand the arguments contained in the Modification Motions and I am sympathetic to the plight of some former attorneys, I maintain that there is another logical way to interpret the Company's corporate governance documents, which interpretation is consistent with the list of individuals contained on the ESH List; said interpretation is that members of LeClairRyan as of July 29, 2019 (the date the members elected to dissolve the Company) remain equity security holders for tax and other economic purposes until such time as the Company has been dissolved and completely wound-up, regardless of any member's purported withdrawal after July 29, 2019. The following facts support such logical interpretation:

  a. In the Debtor's books and records, I located Fourth Amended and Restated Shareholders Agreement of LeClairRyan, A Professional Corporation and Operating Agreement of LeClairRyan PLLC, as amended (the "**Operating Agreement**"), of which a true and correct copy (without certain inapplicable amendments) is attached as Exhibit A to the Trustee's Responses.

  b. Section 5.03 of the Operating Agreement provides, in pertinent part:

> So long as a Member continues to hold any Shares, such Member shall not have the ability to withdraw or resign as a Member prior to the dissolution and winding up

of the Company and any such withdrawal or resignation or attempted withdrawal or resignation by a Member prior to the dissolution or winding up of the Company shall be null and void and of no force or effect.

Furthermore, Section 11.02 of the Operating Agreement provides that "Dissolution of the Company shall be effective on the day on which the event described in Section 11.01 occurs . . ." And Section 11.01 (a) of the Operating Agreement lists as a requisite act to trigger dissolution "[a]n election to dissolve the Company made by holders of a majority of the Common Shares."

c.  Furthermore, Section 2.02 J of the Operating Agreement provides:

> Separation Agreement. Upon the termination of the employment of a Member for any reason other than the death of such Member, the Transferring Member has the right to receive certain payments and benefits, and to clarify and confirm those rights and benefits, the Transferring Member and the Company hereby agree to execute the Company's standard form Separation Agreement maintained on file with the Company's General Counsel.

I have located in the Debtor's books and records numerous references to and/or actual separation agreements (the "**Separation Agreements**" and each a "**Separation Agreement**") for members who withdrew prior to 2019. Each Separation Agreement I reviewed provides a date certain for a defined Separation Date and provides that the Separation Date is the date that he/she "will no longer be a Member, Officer, Director or employee of the Firm." Each also provides that the member's common shares "will be deemed to have been sold and transferred to the Firm on the Separation Date." Based on information found in the Debtor's books and records, I understand that LeClairRyan stopped using the Separation Agreement in late November and/or early December of 2018 and thereafter instituted a practice of memorializing a member's withdrawal through a Member Separation

Memorandum in substantially the same form and substance as the document attached to the Trustee's Responses as Exhibit B (the "**Separation Document**"). Paragraph 1 of said Separation Document provides a date certain for a Separation Date. And paragraph 2 of the Separation Document provides "As of the Separation Date, Member will no longer be a Member. . ." Furthermore, Section 3 (a) provides:

> All of the Member's Common Shares will be deemed to have been sold and transferred to the Firm as of the Separation Date. In addition, the Firm has exercised its right to purchase and redeem any and all Preferred Shares owned by Member effective as of the Separation Date.

While I have located a Separation Document for certain individuals who withdrew in 2019, I have located in the Debtor's records neither a finalized Separation Agreement nor a Separation Document for the individuals listed on the ESH List. Furthermore, I have located neither a Separation Agreement nor a Separation Document for the movant in the Modification Motions.

d.  Based on Exhibit C, attached to Trustee's Responses (the "**Dissolution Resolution**"), which I understand from the Debtor's book and records is a true and exact copy of the resolution that was passed, the members of LeClairRyan voted on July 29, 2019, to dissolve the Company. The ESH List also indicates that July 29, 2019, was "the date the members resolved to dissolve the firm" As such, the requisite number of members elected to dissolve the Company on July 29, 2019, and as reflected in the Dissolution Resolution, Richard W. "Deke" Bowerman, C. Erik Gustafson, Christopher J. Lange, and Lori D. Thompson were elected to serve as the Dissolution Committee of the Firm (the "**Dissolution Committee**"). Furthermore, the Dissolution Committee was

6

empowered to assume all powers and functions of the Board of Managers, the Leadership Committees, including, without limitation, the Retirement Plans Committee and the Welfare Plans Committee, the Lead Manager, the Chief Executive Officer, Partnership Representative and all other Officers of the Firm with respect to the operation of the Firm, and otherwise to have all authority necessary to wind up the affairs of the Firm and manage its orderly liquidation and dissolution.

e. I have found no document that suggests, let alone demonstrates, that any member of "the Board of Managers, the Leadership Committees, including, without limitation, the Retirement Plans Committee and the Welfare Plans Committee, the Lead Manager, the Chief Executive Officer, Partnership Representative and all other Officers of the Firm" (as defined in the Dissolution Resolution) took requisite action prior to adoption of the Dissolution Resolution to change the Debtor's tax status from a flow through taxpayer to an entity that is taxed at the corporate level. Furthermore, I have found no document that suggests, let alone demonstrates, that any member of the Dissolution Committee took requisite action before the Petition Date to change the Debtor's tax status from a flow through taxpayer to an entity that is taxed at the corporate level. In fact, to the contrary, on the Petition Date, in addition to the bankruptcy petition, indicating that the Debtor's status as a "Corporation (including Limited Liability Company (LLC) and Limited Liability Partnership (LLP))," Ms. Lori D. Thompson, as the chair of the Dissolution Committee signed a declaration [ECF No. 3] under penalty of perjury,

7

representing to this Court and all parties in interest that LeClairRyan is a "Virginia professional limited liability company."

    f.    As of December 31, 2019, the winding up of the Company had not yet been completed. As of the filing of the 2019 tax returns, the winding up of the Company had not yet been completed. As of December 31, 2020, the winding up of the Company had not yet been completed. As of the filing of the 2020 tax returns, the winding up of the Company had not yet been completed. As of the filing of the Tax Motion, the winding up of the Company had not been completed. As of the date of this Declaration, the winding up of the Company had not yet been completed. While I am diligently administering this Estate in a manner that is within my business judgment and in the best interest of the Estate, I do not anticipate that the winding up of the Company will be completed before December 31, 2022, which will of course prompt the need for additional tax return preparation and filing.

    g.    Notwithstanding that (a) the ESH List was filed with this Court almost two and a half years ago and (b) I, either directly or through counsel, have informed every individual who has inquired that I relied on the same in connection with the delineation of members on various tax filing, prior to me filing of the Tax Motion, no person took any action with this Court with respect to the ESH List until recently in connection with the Modification Motions.

9.    Based on the foregoing, among other things, certainly a logical interpretation of the Company's corporate governance documents is that the members of LeClairRyan as of July

8

29, 2019 (the date the members voted to dissolve the Company) remain equity security holders for tax and other economic purposes until such time as the Company has been dissolved and completely wound-up; these same members are the individuals listed on the ESH List. Nevertheless, provided there is no adverse impact to the Estate or property thereof, I do not per se object to the relief sought in the Modification Motions. However, I note that the members of LeClairRyan failed to take the necessary steps to have the Company cease being a tax flow through taxpayer prior to the Petition Date (as defined in the Trustee's Responses), which arguably would have eliminated the tax liability the former lawyers now seek to shed. And neither the Bankruptcy Code nor the tax code provides me, as Trustee, with the authority to change the Debtor's tax status. Also, given the actions and inactions of the members before the Petition Date, and the inactions of former attorneys for almost two and a half years after the Petition Date, I respectfully request that any relief granted in the Modification Motions should not result in the equivalent of changing the Debtor's tax status from a flow through taxpayer to an entity that is taxed at the corporate level. With said caveat and recognizing that there may be alternative interpretations of the Company's various corporate governance documents, I take no further position on the Modification Motions and submit that the same involve a dispute among and between certain former attorneys at LeClairRyan.

10. To the best of my knowledge, information, and belief, I declare under penalty of perjury that the foregoing is true and correct.

11.

                                                          **LYNN L. TAVENNER, CHAPTER 7 TRUSTEE**

Dated: March 28, 2022                By: */s/ Lynn L. Tavenner*
    Richmond, Virginia                    Lynn L. Tavenner, Chapter 7 Trustee

Respectfully submitted,

**LYNN L. TAVENNER, CHAPTER 7 TRUSTEE**

Dated: March 28, 2022  
    Richmond, Virginia

By: */s/ Paula S Beran*  
Paula S. Beran, Esquire (VSB No. 34679)  
PBeran@TB-LawFirm.com  
Tavenner & Beran, PLC  
20 North 8th Street  
Richmond, Virginia 23219  
Telephone: (804) 783-8300  
    *Counsel for Lynn L. Tavenner, Chapter 7 Trustee*

## CERTIFICATE OF SERVICE

I certify that on this 28th day of March 2022, a true copy of the foregoing Declaration was sent electronically to:

Shannon F. Pecoraro, Esquire  
Department of Justice  
Office of the United States Trustee  
701 East Broad Street, Suite 4304  
Richmond, Virginia 23219

And all other parties receiving CM/ECF notices in this Case.

*/s/ Paula S. Beran*  
Paula S. Beran, Esquire  
*Counsel for Lynn L. Tavenner, Chapter 7 Trustee*