**UNITED STATES BANKRUPTCY COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Richmond Division**

In re:  LECLAIRRYAN PLLC,                                           Case No. 19-34574-KRH
                                                                                       Chapter 7
          Debtor.

## MEMORANDUM OPINION

On September 3, 2019 (the "Petition Date"), LeClairRyan PLLC (the "Debtor" or "LeClairRyan") filed a voluntary petition[1] under Chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code"), thereby commencing the above-captioned bankruptcy case (this "Bankruptcy Case").  As required by Rule 1007(a)(3) of the Federal Rules of Bankruptcy Procedure, on September 17, 2019, the Debtor filed its *List of Equity Security Holders Pursuant to Rule 1007(a)(3) of the Federal Rules of Bankruptcy Procedure* [ECF No. 79] (the "ESH List"), whereby the Debtor identified certain individual attorneys who were members of the Debtor as of July 29, 2019.  The Bankruptcy Case was converted from a case under Chapter 11 to one under Chapter 7 of the Bankruptcy Code on October 4, 2019.  Lynn L. Tavenner (the "Trustee") was appointed as the Chapter 7 trustee of the Debtor's bankruptcy estate by the Office of the United States Trustee.

This matter now comes before the Court upon the *Motion to Amend Debtor's Equity Security Holders List Pursuant to Bankruptcy Rule 1009(a)* [ECF No. 1217] (the "Motion") filed by Gary D. LeClair.  Mr. LeClair's Motion seeks entry of an order directing the Debtor to amend the ESH List to remove Mr. LeClair from the ESH List.  By the (i) *Joinder of Certain Former LeClairRyan, PLLC Attorneys to Motion to Amend Debtor's Equity Security Holders List*

---

[1] On the Petition Date, attached to its petition, the Debtor filed its *Unanimous Written Consent of Dissolution Committee* [ECF No. 1 at 9-10], which authorized the filing of the Debtor's petition based upon the Dissolution Resolution (as such term is defined herein).

*Pursuant to Bankruptcy Rule 1009(a)* [ECF No. 1234] filed by Megan Ben'Ary, Steven Blaine, James Carroll, Brian Donnell, Robert Fletcher, Robert Harrison, Charles Horn, Ray King, David Lay, Ilan Markus, David Phillips, Christopher Perkins, Christopher Pizzo, Thomas Regan, Peter Van Zandt, Robert Wayne, Andrew White, Diane Wilson, Robert Wonneberger, and Karen Yates; (ii) *Rodney K. Adams, John T. Jessee, Paul C. Kuhnel, and Andrew K. Clark's Joinder to Gary D. LeClair's Motion to Amend Debtor's Equity Security Holders List Pursuant to Bankruptcy Rule 1009(a)* [ECF No. 1237]; and (iii) *Joinder of Two Additional Former LeClairRyan, PLLC Attorneys to Motion to Amend Debtor's Equity Security Holders List Pursuant to Bankruptcy Rules 1009(a)* [ECF No. 1260] filed by Robin Teskin and Gretchen Jackson (the foregoing pleadings, collectively the "Joinders" and the foregoing filers, collectively, the "Former Attorneys"), certain Former Attorneys previously employed by the Debtor joined in the relief requested in the Motion. The Trustee responded to the Motion and each of the Joinders. *See* ECF Nos. 1255, 1256, 1257, 1264. Mr. LeClair filed a reply. *See* ECF No. 1266.

On March 29, 2022, the Court conducted a hearing (the "Hearing") on the Motion and the Joinders. Mr. LeClair testified at the Hearing and offered certain documents into evidence. The Trustee also presented evidence in support of her response. While the Former Attorneys appeared at the Hearing, the Former Attorneys did not present evidence and instead only offered argument in support of their Joinders. After due consideration of the pleadings, the arguments of counsel at the Hearing, the evidence presented by Mr. LeClair and the Trustee, and the authorities cited by the parties in their memoranda of law, the Court will deny the Motion for the reasons set forth below.

The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A). Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409. Findings of fact shall be construed as conclusions of law and conclusions of law shall be construed as findings of fact when appropriate. *See* Fed. R. Bankr. P. 7052.

As an initial matter, the issue presently before the Court is a discrete one: should the Trustee be ordered to amend the list of equity security holders for a now-defunct law firm devoid of lawyers in order to remove Mr. LeClair and the Former Attorneys as equity security holders?[2] In answering this narrow question, the Court makes no finding as to the taxable consequences of being included on the ESH List.[3]

"Under the Virginia Limited Liability Company Act, Va. Code Ann. §§ 13.1–1000 to 13.1–1087, a limited liability company is bound by its operating agreement, which regulates the conduct of its business and the relations of its members." *Belle v. Shaia* (*In re Nedrick*), Case No. 10-33456-KLP, 2017 WL 1207507, at *4, 2017 Bankr. LEXIS 886, at *13 (Bankr. E.D. Va. Mar. 31, 2017) (citing Va. Code Ann. § 13.1-1023(A)(1)). As such, the Debtor's *Fourth Amended and Restated Shareholders Agreement of LeClairRyan, A Professional Corporation*

---

[2] The Former Attorneys only *joined* the Motion and, as such, the Court could interpret the Joinders as merely requesting that Mr. LeClair be removed from the ESH List. However, for the reasons stated herein, as the Court has no evidence that the Former Attorneys terminated their employment prior to July 29, 2019, to the extent that the joinders could be construed as individual requests for relief, such requests are without merit.

[3] Bankruptcy taxation is a nuanced area of law. Generally, the filing of a bankruptcy petition by an individual under Chapter 7 or 11 of the Bankruptcy Code creates a separate taxable entity. 26 U.S.C § 1398. No separate taxable entity is created when a corporation or a partnership files a bankruptcy case. *Id.* § 1399; see also *id.* § 1398(b)(2). No doubt, the responsibility for preparing and filing the tax returns for the bankruptcy estate fall on the Chapter 7 trustee. *See id.* § 1398(c)(1). In the case of a partnership or other tax flow-through entity, it is possible for the income generated by the bankruptcy estate to pass through to the partners' level with a corresponding lack of cash flow necessary to pay the taxes. *See id.* § 702. The Debtor in the case at bar was a flow-through taxpayer prior to the Petition Date, and, as such, may continue to be a flow-through taxpayer post-Petition Date. *See e.g.*, *Williams v. Comm'r*, 123 T.C. 144, 149 (2004). Given the limited relief sought by the Motion, those complicated tax issues are not presently before the Court.

*and Operating Agreement of LeClairRyan PLLC* (the "Operating Agreement"), Mot. Ex. 3, ECF No. 1217-3, controls this dispute.

In reviewing the Operating Agreement, the Court applies general rules of contract interpretation. *See TM Delmarva Power, L.L.C. v. NCP of Va., L.L.C.*, 263 Va. 116, 119, 557 S.E.2d 199, 200 (2002); *Greenspon v. Hurwitz*, 89 Va. Cir. 251 (Fairfax Cnty. 2014) ("The Virginia Supreme Court deals with interpretation of Operating Agreements as they would other contracts."). "[W]hen the terms of a contract are clear and unambiguous, a court is required to construe the terms according to their plain meaning." *Advanced Training Grp. Worldwide, Inc. v. Proactive Techs. Inc.*, No. 19-cv-505-TSE, 2020 WL 4574493, at *11, 2020 U.S. Dist. LEXIS 141855, at *28 (E.D. Va. Aug. 7, 2020) (citing to *Bridgestone/Firestone, Inc. v. Prince William Square Assocs.*, 250 Va. 402, 407, 463 S.E.2d 661, 664 (1995)).

The Court finds no ambiguity with the Operating Agreement in the case at bar. The Operating Agreement provides that "[t]he Company shall be dissolved and i[t]s affairs wound up only upon the occurrence of any of the following events: (a) [a]n election to dissolve the Company made by holders of a majority of the Common Shares." Operating Agreement § 11.01(a), ECF No. 1217-3 at 71. On July 29, 2019, the Debtor's members voted to dissolve and liquidate the Debtor in accordance with section 11.01(a) (the "Dissolution Resolution"). *See* Tavenner Decl. ¶ 8(d), ECF No. 1269 at 6-7; Tr.'s Ex. C, ECF No. 1258 at 86 ("[T]he Members agree that it is in the best interests of the Firm . . . that the Firm be dissolved and liquidated in accordance with, and pursuant to the Operating Agreement."); *see also* Unanimous Written Consent of Dissolution Comm., ECF No. 1 at 9-10 ("[E]ffective July 29, 2019, the Members of the Company approved the dissolution and liquidation of the Company in accordance with . . . [the] Operating Agreement."). "Dissolution of the Company shall be effective on the

day on which the event described in Section 11.01 occurs . . . ." Operating Agreement § 11.02, ECF No. 1217-3 at 71. As the members elected to dissolve the Debtor on July 29, 2019, dissolution of LeClairRyan was effective as of July 29, 2019.

The Operating Agreement provides that, if a member sought to leave the Debtor, such member's common and preferred stock would be "deemed sold and transferred to the Company as of the Termination Date." Operating Agreement § 2.02(g), ECF No. 1217-3 at 30. "Termination Date" is defined as "the effective date of the termination of the Transferring Member's employment with the Company." *Id.* § 2.02(a)(i), ECF No. 1217-3 at 25. Thus, by the express, unambiguous language of the Operating Agreement, where members sought to leave the Debtor, their shares would be deemed transferred back to the Debtor on the date that they were no longer employed by the Debtor.

At the Hearing, only Mr. LeClair offered evidence as to the date he terminated his employment with the Debtor; none of the Former Attorneys introduced evidence concerning when they each separated from the Debtor. Based on the uncontroverted evidence, Mr. LeClair terminated his employment with the Debtor on July 31, 2019 – two days after the Debtor voted to dissolve. However, those two days are outcome determinative. Once the Debtor voted to dissolve, members were no longer able to withdraw or resign from the Debtor.

> So long as a Member continues to hold any shares, such Member shall not have the ability to withdraw or resign as a Member prior to the dissolution and winding up of the Company and any such withdrawal or resignation or attempted withdrawal or resignation by a Member prior to the dissolution or winding up of the Company shall be null and void and of no force or effect.

*Id.* § 5.03, ECF No. 1217-3 at 50. After the Debtor voted to dissolve in accordance with section 11.01(a) of the Operating Agreement, which dissolution was effective on July 29, 2019, per section 11.03 of the Operating Agreement, members could no longer withdraw or resign from the

5

Debtor.  As such, Mr. LeClair's purported resignation on July 31, 2019, was "null and void and of no force or effect." *Id.* § 5.03, ECF No. 1217-3 at 50.

Although the Court does not have any evidence properly before it as to the date(s) the Former Attorneys left the Debtor, any member who left the firm's employ after July 29, 2019, could not transfer their shares back to the Debtor.  Therefore, based on the evidence adduced at the Hearing that Mr. LeClair terminated his employment with the Debtor after July 29, 2019, and based upon the absence of any evidence that the Former Attorneys terminated their employment prior to July 29, 2019, the Court finds that the Debtor and the Former Attorneys are properly included on the ESH List.

Finally, the Court rejects Mr. LeClair's challenge to the validity of the Dissolution Resolution.  Section 9.08(i)(i) of the Operating Agreement requires "the written consent or affirmative vote of the holders of a majority of the then outstanding Series A Preferred Shares and Series B Preferred Shares taken as a single class, given in writing or by vote at a meeting, consenting or voting" to "liquidate, dissolve, or wind-up the business and affairs of the Company." *Id.* § 9.08(i)(i), ECF No. 1217-3 at 66.  The ESH List indicates that Mr. LeClair held the majority of then-outstanding preferred shares.  *See* ESH List, ECF No. 79.  As such, Mr. LeClair argues that his written consent or affirmative vote was required to approve the dissolution of the Debtor.

Mr. LeClair has been an active participant and central figure in this Bankruptcy Case, which has been pending before this Court for almost three years.  For the first time, by his reply, Mr. LeClair suggests that he did not vote to approve the Dissolution Resolution and, therefore, the Dissolution Resolution was ineffective.  At the Hearing, Mr. LeClair backtracked from this initial position, stating instead that he did not challenge the validity of the Dissolution Resolution

6

as to the Debtor's bankruptcy filing generally. Rather, Mr. LeClair advanced the proposition that the Dissolution Resolution is only invalid when calculating the appropriate date by which to determine his equity interest. The distinction that Mr. LeClair makes is fundamentally flawed. Either the Dissolution Resolution is valid, in which case, the bankruptcy filing was properly authorized, but Mr. LeClair's purported withdrawal was ineffective; or the Dissolution Resolution is invalid, in which case Mr. LeClair may have effectively withdrawn pre-Petition Date, but the bankruptcy filing was not authorized. *See Price v. Gurney*, 324 U.S. 100, 106 (1945) (holding that where a corporate filing has not been authorized by state law, the bankruptcy court must dismiss the petition). Mr. LeClair cannot arbitrarily pick and choose whether and when the Dissolution Resolution was valid as best suits his individual interests. Regardless, the Court rejects Mr. LeClair's contention and finds that the Dissolution Resolution was valid.

Mr. LeClair consented to the Debtor's dissolution in writing as required by the Operating Agreement. Namely, section 2.02(h) of the Operating Agreement provides that a withdrawing member would have to provide thirty days' prior written notice of an impending withdrawal. Operating Agreement § 2.02(h), ECF No. 1217-3 at 30. Such notice "may be waived . . . or shortened in the sole discretion of the Chief Executive Officer." *Id.*, ECF No. 1217-3 at 30-31. By email dated July 26, 2019, the Debtor's Chief Executive Officer provided the Debtor's then-members with an update as to the planned dissolution of the firm, the terms of the dissolution committee, and confirmed that the thirty-day notice requirement had been waived. *See* Mot. Ex. 5, ECF No. 1217-5 at 2. In reliance on this email, on July 26, 2019, Mr. LeClair stated his intention to "resign [his] employment effective as of 11:59PM on August 4, 2019," and confirmed that "the Firm has waived the 30-day Notice period set forth in Section 2.02(h)."

7

Mot. Ex. 6, ECF No. 1217-6 at 2. By such email, Mr. LeClair availed himself of the benefit of the waiver of the notice period, which was a necessary component of the planned dissolution of the Debtor. Such email constitutes written consent, thereby satisfying section 9.08(i)(i) of the Operating Agreement.

Alternatively, the Court finds that Mr. LeClair ratified the Debtor's dissolution. "[U]nder Virginia law, the unauthorized filing of a voluntary petition in bankruptcy [o]n behalf of a corporation might be ratified in appropriate circumstances by ensuing conduct of persons with power to have authorized it originally." *Hager v. Gibson*, 108 F.3d 35, 40 (4th Cir. 1997). "[O]ne may ratify an unauthorized act by 'accepting its benefits with full knowledge of the relevant facts, or, if upon learning of the act, he fails to promptly disavow it.'" *Id.* (quoting *Kilby v. Pickurel*, 240 Va. 271, 275, 396 S.E.2d 666, 668-69 (1990)). For the reasons stated herein, the Court finds that Mr. LeClair ratified the Dissolution Resolution by his July 26, 2019, email. *See* Mot. Ex. 6, ECF No. 1217-6 at 2.

Furthermore, Mr. LeClair undoubtedly ratified the Dissolution Resolution through his conduct in this Bankruptcy Case.[4] Mr. LeClair was included on the ESH List and the Debtor's schedules and statements. Mr. LeClair received the *Notice of Chapter 7 Bankruptcy Case – Proof of Claim Deadline Set* [ECF No. 177 at 221], which scheduled the meeting of creditors in this Bankruptcy Case and set the deadline to file proofs of claim. In response to the *Notice of Chapter 7 Bankruptcy Case*, on December 11, 2019, Mr. LeClair filed a proof of claim against the Debtor, Proof of Claim No. 134, which he has twice amended. Beginning in 2021, Mr.

---

[4] The Fourth Circuit has recognized that ratification and relation-back doctrine is not a rule "of statutory or constitutional limitation upon the jurisdiction of federal courts." *Hager*, 108 F.3d at 41. Rather, it is a matter of "federal interstitial common law, judicially created, grounded in policy and necessity." *Id.* As such, this does not implicate the jurisdictional concerns raised by *Roman Cath. Archdiocese of San Juan, Puerto Rico v. Acevedo Feliciano*, ___ U.S. ___, 140 S. Ct. 696 (2020).

8

LeClair began to take a more active role in these proceedings, objecting to various motions, including this Motion. Finally, Mr. LeClair entered into a settlement agreement with the Trustee, whereby Mr. LeClair settled various claims asserted against him by the Trustee.[5] Not only did Mr. LeClair know of the Debtor's bankruptcy filing and fail to promptly raise the issue of corporate authority, but Mr. LeClair also accepted the benefits of the bankruptcy filing for years.[6] Through such conduct, Mr. LeClair has undoubtedly ratified the Dissolution Resolution.

Where such ratification occurs, the ratification relates back to the date of the underlying act. *See Hager*, 108 F.3d at 41. Therefore, even if Mr. LeClair did not provide his written consent to the Dissolution Resolution – which the Court finds he did – Mr. LeClair ratified it by his conduct. By application of the relation-back principle, such ratification validated the Dissolution Resolution as of the date thereof, i.e., July 29, 2019.

For these reasons, the Motion is denied. A separate order will issue.

Dated:   April 21, 2022                               /s/ Kevin R. Huennekens
                                                    UNITED STATES BANKRUPTCY JUDGE

                                                    Entered on Docket: April 21, 2022

---

[5] The terms of the settlement remain under seal.

[6] Mr. LeClair most recently ratified the Dissolution Resolution by, among other things, his admissions in the Motion conceding that the Court has jurisdiction, that the Motion is a core proceeding, and the statutory predicates for the relief. Mot. ¶¶ 2-4, ECF No. 1217 at 2.

9