**UNITED STATES BANKRUPTCY COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Richmond Division**

In re:  LECLAIRRYAN PLLC,                          Case No. 19-34574-KRH
                                                          Chapter 7

    Debtor.

**MEMORANDUM OPINION**

      This matter comes before the United States Bankruptcy Court for the Eastern District of

Virginia (this "Court" or the "Bankruptcy Court") upon the *Motion and Memorandum of Law for*

*Entry of an Order (I) Approving (A) Judicially Mediated Settlement and (B) Compensation to*

*Counsel Including an Improvident Payment Under Section 328(a); and (II) Granting Related*

*Relief* [ECF No. 1328][1] (the "Motion" or the "Motion to Approve Settlement"), filed by Lynn

Tavenner, (the "Trustee") in her capacity as Chapter 7 trustee for the bankruptcy estate of

LeClairRyan PLLC ("LeClairRyan" or the "Debtor"), in the above-captioned bankruptcy case (the

"Bankruptcy Case").  The Trustee's Motion seeks this Court's approval of a judicially mediated

global settlement (the "Settlement Agreement") under Rule 9019 of the Federal Rules of

Bankruptcy Procedure (the "Bankruptcy Rules").  A copy of the Settlement Agreement is attached

to the Motion to Approve Settlement as Exhibit A [ECF No. 1396].[2]  Notice of the Trustee's

---

[1]    Identical copies of the Motion to Approve Settlement were also filed in *Tavenner v. ULX Partners, LLC*, Adv. Pro. No. 20-03142-KRH (the "ULX Adversary Proceeding") at ECF No. 211 and *Tavenner v. CVC Capital Partners*, Adv. Pro. No. 21-03095-KRH (the "CVC Adversary Proceeding" and, together with the ULX Adversary Proceeding, the "Adversary Proceedings") at ECF No. 56.  In fact, many of the documents filed in connection with the Motion to Approve Settlement were also docketed in the Adversary Proceedings.  For ease of reference, when identical copies of a document were filed in the Bankruptcy Case and the Adversary Proceedings, this Opinion refers only to the document filed in the Bankruptcy Case.

[2]    The parties to the Settlement Agreement are: (i) the Trustee (the "Plaintiff"); (ii) ULX Partners, LLC ("ULXP"), UnitedLex Corporation ("UnitedLex,"), ULX Manager LLC ("ULX Manager" and together with ULXP and UnitedLex, the "ULX Defendants"); (iii) CVC Advisers (India) Private Limited and/or CVC Capital Partners (collectively, "CVC"), Daniel Reed, Nicholas Hinton, Josh Rosenfeld, P. Douglas Benson (Messrs. Reed, Hinton, Rosenfeld, and Benton, together with CVC, the "CVC Defendants"); and (iv) Travelers Casualty and Surety Company of America ("Travelers"), Continental Casualty Company ("Continental"), and Columbia Casualty

Motion was duly served on (i) all parties and counsel requesting service via the Court's CM/ECF system; (ii) the Office of the United States Trustee; (iii) the Defendants; (iv) the 20 largest unsecured creditors as listed on the Debtor's schedules; (v) the Service List as defined by the *Order Establishing Certain Notice, Case Management and Administrative Procedures* [ECF No. 38]; (vi) Foley & Lardner LLP ("Foley"); and (vii) all Persons identified in paragraph 4 of the FAO Procedures, as such term is defined herein. Notice of Mot. & Hr'g Thereon, ECF No. 1329 at 4.

John P. Fitzgerald, III, Acting United States Trustee for Region Four, (the "U.S. Trustee") filed an objection [ECF Nos. 1333, 1370] (collectively, the "U.S. Trustee's Objection") to the Motion.[3] Foley filed a limited objection [ECF No. 1365] ("Foley's Objection") to the Motion to Approve Settlement.[4] The Trustee filed a reply [ECF No. 1386] in support of her Motion.

On June 8, 2022, the Court conducted a hearing (the "Hearing") on the Motion. The Trustee, ULX Defendants, CVC Defendants, Insurers, the U.S. Trustee, and Foley were each present at and participated in the Hearing. The evidentiary support for the Motion to Approve Settlement is set forth in the Trustee's original declaration [ECF No. 1374] (the "Trustee's

---

Company ("Columbia" and together with Continental, "CNA,") and (CNA, together with Travelers, the "Insurers"). The CVC Defendants and the ULX Defendants are collectively the "Defendants."

[3] The Office of the U.S. Trustee filed its *Motion of the United States Trustee for Status Hearing and Scheduling Order* [ECF No. 1335] (the "Discovery Motion"). The U.S. Trustee had served formal discovery upon the Trustee, the U.S. Trustee's own panel trustee, in order to "assess the evidentiary support for some of the relief sought in the 9019 Motion." *Id.* Rather than initially work with the Trustee to reach consensual discovery deadlines as the parties almost always do in contested matters, the Discovery Motion requested the Court to establish discovery deadlines between the U.S. Trustee and his own panel Trustee on the Motion to Approve Settlement. Although the Court conducted various status hearings on the U.S. Trustee's Discovery Motion, the parties were able, with the Court's encouragement, to consensually resolve all discovery issues.

[4] Foley's Objection concerned only the apportionment of fees between Foley and Quinn Emanuel Urquhart & Sullivan LLP ("Quinn"), not the reasonableness of the settlement or its terms. As stated in the Quinn Retention Order at ¶ 8, ECF No. 937 at 4-5 (as defined herein), Foley's rights to compensation for its prior work are preserved pending further order of this Court. As such, the rights of Foley, Quinn, and the estate as to the apportionment of any professional fees are all preserved.

Declaration"), Brittany J. Nelson's declaration[5] [ECF No. 1380] (the "Nelson Declaration"), and

paragraphs 1, 2, and 15 of a supplemental declaration by the Trustee [ECF No. 1387] (the

"Trustee's Supplemental Declaration").[6]  The U.S. Trustee cross-examined both the Trustee and

Ms. Nelson.  At the conclusion of the Hearing, the Court took the Motion under advisement.  After

due consideration of the arguments of counsel at the Hearing, the pleadings, and the authorities

cited by the parties in their memoranda of law, the Court will grant the Motion in part and approve

the Settlement Agreement for the reasons set forth below.

### JURISDICTION AND VENUE

The Court has subject matter jurisdiction under 28 U.S.C. § 1334 and the general order of

reference from the District Court dated August 15, 1984.  By the terms of the Settlement

Agreement, the parties to the Settlement Agreement agreed to submit to the jurisdiction of this

Court for purposes of the Motion and the Settlement Agreement.  *See* Settlement Agreement ¶ 24,

ECF No. 1396 at 13.  As such, the Motion is a core proceeding under 28 U.S.C. § 157(b)(2).  Venue

is appropriate pursuant to 28 U.S.C. § 1409(a).  Findings of fact shall be construed as conclusions

of law and conclusions of law shall be construed as findings of fact when appropriate.  *See* Fed.

R. Bankr. P. 7052.

### FACTS

On September 3, 2019 (the "Petition Date"), LeClairRyan filed a voluntary petition [ECF

No. 1] under Chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code"), thereby

commencing this Bankruptcy Case.  By its October 4, 2019, Order [ECF No. 140] the Court

---

[5]    Ms. Nelson is a partner at Quinn, the Trustee's special litigation counsel.

[6]    The Court admitted at the Hearing, without objection, the Trustee's Declaration, the Nelson Declaration, and the
relevant portions of the Trustee's Supplemental Declaration.  The U.S. Trustee reserved its right to cross examine
the declarants, who were all present at the Hearing.

converted the Chapter 11 case to a case under Chapter 7. Upon conversion of the case to Chapter 7, Lynn Tavenner was appointed as the interim trustee and she now continues to serve as the permanent trustee for the case.[7] Appointment of Interim Trustee & Designation of Required Bond, ECF No. 175; *see also* Trustee's Decl. ¶ 1, ECF No. 1374 at 1. In her administration of the Bankruptcy Case, the Trustee sought, and this Court approved, procedures to streamline and standardize potential litigation against former attorneys and others (collectively, "FAO Procedures").[8] Order Approving Procedures & Permitting Trustee to Prosecute & Compromise FAO Actions, ECF No. 533; Order Modifying Settlement Procedures for FAO Actions, ECF No. 929; Order Modifying Prosecution and Settlement Procedures for FAO Actions, ECF No. 982. The orders establishing the FAO Procedures are now final and unappealable.

The Trustee engaged counsel to assist her in pursuing litigation under the FAO Procedures. Initially, the Trustee engaged Foley as special counsel. *See* Trustee's Application to Retain & Employ Foley & Lardner LLP as Special Counsel, ECF No. 330; Order Authorizing the Retention & Employment of Foley & Lardner LLP as Special Counsel, ECF No. 342. Erika Morabito and Brittany Nelson were primary timekeepers at Foley, representing the Trustee in connection with the adversary proceedings commenced under the FAO Procedures.

On or about May 18, 2021, Ms. Morabito and Ms. Nelson joined Quinn. *See* Nelson Decl. ¶ 2, ECF No. 1380 at 2. On June 7, 2021, the Trustee filed the *Trustee's Application to Retain and Employ Quinn Emanuel Urquhart & Sullivan, LLP as Special Litigation Counsel* [ECF No. 908] (the "Quinn Retention Application"). On June 28, 2021, the Court entered its *Order Authorizing*

---

[7]    *See* 11 U.S.C. § 702(d).

[8]    All creditors, parties in interest (including all potential defendants), and the U.S. Trustee were duly served with notice of the motion for approval of the FAO Procedures, were offered the opportunity to appear at the hearing thereon, and to object to the FAO Procedures. The ULX Defendants and another creditor (who has since settled with the Trustee) objected to the FAO Procedures; the U.S. Trustee did not.

*the Retention and Employment of Quinn Emanuel Urquhart & Sullivan, LLP as Special Litigation*

*Counsel* [ECF No. 937] (the "Quinn Retention Order"), retroactive to May 18, 2021. The terms

of the Quinn Retention Application, as reflected in the both the Quinn Retention Order and the

Engagement Letter (as defined in the Quinn Retention Order), allow the Trustee to employ Quinn

for both "Contingency Matters" and "Non-contingency Matters." Nelson Decl. ¶ 2, ECF No. 1380

at 5; Quinn Retention Order ¶¶ 3-4, ECF No. 937 at 2-3. For Contingency Matters, Quinn's 35

percent contingency fee is subject to Court approval pursuant to section 328 of the Bankruptcy

Code. Quinn Retention Order ¶ 6, ECF No. 937 at 3.

Consistent with the FAO Procedures, on October 26, 2020, the Trustee filed a complaint

[Adv. Pro. No. 20-03142-KRH, ECF No. 1] (as subsequently corrected on October 28, 2020 [Adv.

Pro. No. 20-03142-KRH, ECF No. 4], the "Original ULX Complaint") against the ULX

Defendants, thereby commencing the ULX Adversary Proceeding. On September 2, 2021, the

Trustee filed a complaint [Adv. Pro. No. 21-03095-KRH, ECF No. 1] (the "CVC Complaint")

against the CVC Defendants, thereby commencing the CVC Adversary Proceeding. By her

complaints, as subsequently amended, the Trustee alleged that the Defendants had engaged in

certain pre-Petition Date conduct intended to strip the Debtor of its valuable assets without

consideration for the benefit of a joint venture, which benefits would flow from the ULX

Defendants upstream to their affiliates, the CVC Defendants.

***The CVC Adversary Proceeding***

The CVC Complaint included six counts for unjust enrichment, misappropriation of trade

secrets under the Virginia Uniform Trade Secrets Act ("VUTSA"), conspiracy, breach of fiduciary

duty,[9] and constructive fraud.  Adv. Pro. No. 21-03095-KRH, ECF No. 1.  Each of the CVC Defendants has separately moved to dismiss the Complaint.  Daniel Reed's Mot. to Dismiss Compl., *Tavenner v. CVC Cap. Partners*, Adv. Pro. No. 21-03095-KRH (Oct. 25, 2021), ECF No. 7; Def. Nicholas Hinton's Mot. to Dismiss Compl., *Tavenner v. CVC Cap. Partners*, Adv. Pro. No. 21-03095-KRH (Oct. 25, 2021), ECF No. 9 at 1; Def. CVC's Mot. to Dismiss Compl., *Tavenner v. CVC Cap. Partners*, Adv. Pro. No. 21-03095-KRH (Dec. 13, 2021), ECF No. 22; Def. P. Douglas Benson's Mot. to Dismiss Compl., *Tavenner v. CVC Cap. Partners*, Adv. Pro. No. 21-03095-KRH (Jan. 14, 2022), ECF No. 36; Def. Josh Rosenfeld's Mot. to Dismiss Compl., *Tavenner v. CVC Cap. Partners*, Adv. Pro. No. 21-03095-KRH (Jan. 14, 2022), ECF No. 39.  As of the date hereof, all of those motions remain pending.

On December 13, 2021, CVC filed *Defendant CVC's Motion to Withdraw the Reference and Memorandum of Law in Support Thereof* [Adv. Pro. No. 21-03095-KRH, ECF No. 19] (the "CVC Motion to Withdraw the Reference").[10]  By *Order* dated March 10, 2022, the United States District Court for the Eastern District of Virginia (the "District Court") referred the CVC Motion to Withdraw the Reference to this Court for proposed findings of fact and conclusions of law.  Order, *Tavenner v. CVC Cap. Partners*, Case No. 3:22-cv-121-DJN (Mar. 10, 2022), ECF No. 17.  In accordance with the District Court's Order, on April 12, 2022, the Bankruptcy Court entered

---

[9]  By the *Joint Consolidated Stipulation for Dismissal* [Adv. Pro. No. 21-03095-KRH, ECF No. 42], the breach of fiduciary duty claim was dismissed with prejudice.

[10]  None of the individual CVC Defendants has yet filed a motion to withdraw the reference, but each has reserved the right to file such a motion and/or to demand a jury trial.  *See* Daniel Reed's Mot. to Dismiss Compl. 1 n.1, *Tavenner v. CVC Cap. Partners*, Adv. Pro. No. 21-03095-KRH, (Oct. 25, 2021), ECF No. 7 at 1; Def. Nicholas Hinton's Mot. to Dismiss Compl. 1 n.1, *Tavenner v. CVC Cap. Partners*, Adv. Pro. No. 21-03095-KRH, ECF No. 9 at 1; Mem. of Law in Supp. of Def. P. Douglas Benson's Mot. to Dismiss Compl. 1 at n.1, *Tavenner v. CVC Cap. Partners*, Adv. Pro. No. 21-03095-KRH (Jan. 14, 2022), ECF No. 37 at 1; Mem. of Law in Supp. of Def. Josh Rosenfeld's Mot. to Dismiss Compl. 1 n.1, *Tavenner v. CVC Cap. Partners*, Adv. Pro. No. 21-03095-KRH (Jan. 14, 2022), ECF No. 40 at 1.

*Proposed Findings of Fact and Conclusions of Law* [Adv. Pro. No. 21-03095-KRH, ECF No. 51],

which, inter alia, concluded that none of the claims were core, that CVC had not waived its right

to a jury trial, and that withdrawal of the reference would be appropriate, but recommended that

the Bankruptcy Court continue to oversee the litigation until trial. All deadlines in connection

with the *Proposed Findings of Fact and Conclusions of Law* [Adv. Pro. No. 21-03095-KRH, ECF

No. 51] have now been stayed pending a determination of the Motion to Approve Compromise.

As more fully discussed herein, if the Motion to Approve Compromise is granted and the

Settlement Agreement approved, the CVC Motion to Withdraw the Reference and the various

motions to dismiss filed by the CVC Defendants will be rendered moot as the CVC Adversary

Proceeding will be fully resolved and voluntarily dismissed with prejudice.

**The ULX Adversary Proceeding**

The Original ULX Complaint asserted fourteen counts against UnitedLex and ULXP.

Compl., *Tavenner v. ULX Partners, LLC,* Adv. Pro. No. 20-03142-KRH (Oct. 28, 2020), ECF No.

4. On December 17, 2020, the Court conducted a pretrial conference and entered a *Pretrial Order*

[Adv. Pro. No. 20-03142-KRH, ECF No. 9] (the "First Pretrial Order"), setting the trial to begin

September 14, 2021. Among other things, the First Pretrial Order ordered the parties to "make the

pretrial disclosures required under Rule 7026(a)(1) of the Federal Rules of Bankruptcy Procedure

within 14 days following the entry of this order." *Id.* at ¶ 2, Adv. Pro. No. 20-03142-KRH, ECF

No. 9 at 2. In accordance with the First Pretrial Order, UnitedLex and ULXP served their initial

disclosures required by Rule 26(a) of the Federal Rules of Civil Procedure (the "Civil Rules"), as

made applicable to the ULX Adversary Proceeding by Bankruptcy Rule 7026, on December 31,

2020 (the "Initial Disclosures"). Nelson Decl. ¶ 13, ECF No. 1380 at 5.



After entry of the First Pretrial Order and in accordance with the terms thereof, on January 11, 2021, UnitedLex and ULXP filed a *Motion to Withdraw the Reference* [Adv. Pro. No. 20-03142-KRH, ECF No. 13] (the "ULX Motion to Withdraw the Reference"), as well as a *Motion to Partially Dismiss the Complaint* [Adv. Pro. No. 20-03142-KRH, ECF No. 17] (the "ULX Motion to Dismiss"). The District Court referred the ULX Motion to Withdraw the Reference to the Bankruptcy Court for proposed findings of fact and conclusions of law. Order, *ULX Partners, LLC v. Tavenner*, Case No. 21-cv-00077-DJN (Feb. 18, 2021), ECF No. 4. This Court entered *Proposed Findings of Fact and Conclusions of Law* [Adv. Pro. No. 20-03142-KRH, ECF No. 32] on March 31, 2021, concluding that all of the Trustee's claims were core proceedings. The District Court accepted the Court's findings and conclusions, and it denied the ULX Motion to Withdraw the Reference. *ULX Partners, LLC v. Tavenner*, No. 3:21-cv-77-DJN, 2021 WL 2188955, at *8, 2021 U.S. Dist. LEXIS 101766, at *21-27 (E.D. Va. May 28, 2021).

After the District Court denied the ULX Motion to Withdraw the Reference, this Court then held a hearing on the ULX Motion to Dismiss on June 4, 2021. In its Order entered July 20, 2021 [Adv. Pro. No. 20-03142-KRH, ECF No. 58], the Court granted the ULX Motion to Dismiss in part by dismissing Count IX (aiding and abetting breach of fiduciary duty) and denied the ULX Motion to Dismiss as to the remaining thirteen counts.

In light of the Court's ruling on the ULX Motion to Dismiss, the Court granted the Trustee leave to amend her complaint.[11] *Order Granting Motion for Leave to Amend Complaint and to Modify Pretrial Scheduling Order* [Adv. Pro. No. 20-03142-KRH, ECF No. 85]. At the request of the parties, the Court entered a *Second Pretrial Order* [Adv. Pro. No. 20-03142-KRH, ECF No. 49] (the "Second Pretrial Order"), wherein the Court adjourned the trial date in the ULX Adversary Proceeding to October 25, 2021. The Second Pretrial Order otherwise held that the "terms and provisions set forth in the First Pretrial Order shall remain in full force and effect."

As permitted by the Court, on August 25, 2021, the Trustee filed her *First Amended Complaint* [Adv. Pro. No. 20-03142-KRH, ECF No. 86] (the "Amended Complaint"), which, inter alia, added ULX Manager as a defendant and included several new counts.[12] In light of the Amended Complaint, and after conducting a continued pretrial conference on September 8, 2021, at the request of the parties, including the ULX Defendants, the Court entered its *Third Stipulation and Amend Pre-Trial Order* [Adv. Pro. No. 20-03142-KRH, ECF No. 100] (the "Third Pretrial Order"). The Third Pretrial Order was drafted by the parties, including the ULX Defendants, for the Court's consideration. The Third Pretrial Order entered by the Court stated, in part: "[t]o the extent not already provided, the parties shall make the pretrial disclosures required under Rule 7026(a)(1) of the Federal Rules of Bankruptcy Procedure within 14 days following the Court's entry of this Pre-Trial Order." Third Pretrial Order ¶ 3, Adv. Pro. No. 20-03142-KRH, ECF No.

---

[11]   At the request of the parties, the Court entered a *Second Pretrial Order* [Adv. Pro. No. 20-03142-KRH, ECF No. 49] (the "Second Pretrial Order"), moving the trial date in the ULX Adversary Proceeding to October 25, 2021. The Second Pretrial Order held that the "terms and provisions set forth in the First Pretrial Order shall remain in full force and effect."

[12]   The Amended Complaint also named Gary LeClair as a defendant. The Trustee was able to negotiate a settlement with Mr. LeClair. Accordingly, all counts against Mr. LeClair, as well as all counterclaims asserted by Mr. LeClair against the estate, were subsequently dismissed with prejudice. Joint Stipulation for Dismissal, *Tavenner v. ULX Partners*, Adv. Pro. No. 20-03142-KRH (Jan. 18, 2022), ECF No. 130.

100 at 2.



In response to the Amended Complaint, the ULX Defendants filed the *Defendants ULX Partners, LLC's, ULX Manager LLC's, and UnitedLex Corporation's Motion to Partially Dismiss the First Amended Complaint* [Adv. Pro. No. 20-03142-KRH, ECF No. 87] (the "Second ULX Motion to Dismiss"), and a memorandum in support [Adv. Pro. No. 20-03142-KRH, ECF No. 88]. After conducting a hearing on the Second ULX Motion to Dismiss on October 19, 2021, the Court denied the Second ULX Motion to Dismiss on all counts for the reasons set forth in its *Memorandum Opinion* [Adv. Pro. No. 20-03142-KRH, ECF No. 114] issued November 3, 2021. Finally, on November 16, 2021, more than one year after the Trustee initiated the ULX Adversary Proceeding, the ULX Defendants filed an answer to the Amended Complaint. Supp. Answer of ULX Partners, LLC, ULX Manager LLC, & UnitedLex Corp. to the First Am. Compl., *Tavenner v. ULX Partners, LLC*, Adv. Pro. No. 20-03142-KRH (Nov. 16, 2021), ECF No. 118.

The terms of the Third Pretrial Order provided for fact discovery in the ULX Adversary Proceeding to conclude on January 21, 2022.   Third Pretrial Order ¶ 8, Adv. Pro. No. 20-03142-KRH, ECF No. 100 at 2.  After the close of fact discovery and consistent with the deadlines set by the Third Pretrial Order, on January 28, 2022, the ULX Defendants moved for summary judgment (the "Summary Judgment Motion") on all claims in the Amended Complaint.

ULX Partners, LLC's UnitedLex Corp.'s & ULX Manager, LLC's Mot. for Summ. J, *Tavenner v. ULX Partners, LLC*, Adv. Pro. No. 20-03142-KRH (Jan. 28, 2022), ECF No. 133. The Trustee disputed summary judgment as to any count and the parties fully briefed the Summary Judgment Motion.

Contemporaneously with the briefing on the Summary Judgment Motion, the Trustee filed her *Motion for Leave to Amend First Amended Complaint* [Adv. Pro. No. 20-03142-KRH, ECF No. 147] (the "Motion to Amend"), whereby the Trustee sought leave to further amend the Amended Complaint in light of facts gained in discovery. The ULX Defendants opposed the Motion to Amend and, again, the parties fully briefed the motion for the Court's consideration.

Prior to the Trustee filing the Motion to Amend, on February 1, 2022, the parties held a meet and confer. Nelson Decl. ¶ 21, ECF No. 1380 at 7. During the February 1 call, the parties discussed the possibility of judicial mediation. *Id.* ¶ 22, ECF No. 1380 at 7. ████████████████
████████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████

On February 3, 2022, the parties conducted another meet and confer to further discuss the possibility of judicial mediation. *Id.* ¶ 24, ECF No. 1380 at 8. ████████████████
████████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████████



the Trustee agreed to make a joint request to the Court for judicial mediation. *Id.* ¶ 25, ECF No. 1380 at 9. On February 4, 2022, at the parties' request, the Court conducted a status hearing in which the parties jointly requested the appointment of a judicial mediator. During the February 4, 2022, hearing, the Trustee informed the Court that her participation was conditioned upon the requirement "that the D&O insurance carrier for which Mr. Hinton and Mr. Reed would be covered will also participate in the judicial mediation in this case, even though Mr. Reed and Mr. Hinton have been sued in a separate adversary proceeding," the CVC Adversary Proceeding. Feb. 4, 2022, Hr'g Tr. 8:9-17, *Tavenner v. ULX Partners, LLC*, Adv. Pro. No. 20-03142-KRH, ECF No. 145.



The Court granted the parties' joint request and entered an *Order* [Adv. Pro. No. 20-03142-KRH, ECF No. 142] (the "Mediation Appointment Order"), appointing Chief Judge

Frank J. Santoro (the "Judicial Mediator") as the judicial mediator. The Mediation Appointment Order required the Trustee, the ULX Defendants, Messrs. Reed and Hinton, and Travelers to attend the mediation. Mediation Appointment Order ¶ 6, Adv. Pro. No. 20-03142-KRH, ECF No. 142 at 2. Additionally, the Mediation Appointment Order empowered the Judicial Mediator with "full authority to settle matters and to enter any orders necessary in furtherance of his settlement efforts." *Id.* ¶ 2, Adv. Pro. No. 20-03142-KRH, ECF No. 142 at 2.



---

[13]    In the exercise of the authority granted to him under the Mediation Appointment Order, on February 17, 2022, the Judicial Mediator entered a *Mediation Order* [Adv. Pro. 20-03142-KRH, ECF No. 162], which, inter alia, required CNA, as the holder of a D&O excess policy, to attend the mediation.



The mediation (the "First Mediation") was scheduled for March 5 and 6, 2022.  Trustee's

Decl. ¶ 20, ECF No. 1374 at 7.

The First Mediation commenced March 5, 2022.  *Id.* ¶ 36, ECF No. 1380 at 12.



At that point, the Judicial Mediator abruptly terminated the First Mediation. On March 8, 2022, the Judicial Mediator entered two orders in furtherance of the Mediation. First was the *Order Directing Defendants to Produce Insurance-Related Information* [Adv. Pro. No. 20-03142-KRH, ECF No. 177] (the "Insurance Order"). The Insurance Order required the ULX Defendants, Mr. Hinton, and Mr. Reed to each provide the Trustee with

>  a. a full and complete copy of any and all insurance policies (including but not limited to insurance policies of [the ULX] Defendants' subsidiaries, parent companies, or affiliated companies) that may provide any coverage (in full or in part) for any judgments awarded against [the ULX] Defendants in this case, and/or against Mr. Hinton and/or Mr. Reed in the related case (Case No. 21-03095) (the "Related Case"); and/or settlement amounts paid by any [ULX] Defendant and/or by Mr. Hinton and/or Mr. Reed in this case and/or the Related Case; or any fees, costs, and expenses paid or incurred in this case by any [ULX] Defendant, Mr. Hinton, and/or Mr. Reed in this case and/or the Related Case. Such policies should also include any policies to which any [ULX] Defendant, Mr. Hinton, and/or Mr. Reed tendered coverage for the claims at issue herein or the Related Case, including all excess policies regardless of the coverage position taken by the relevant insurance company, and
>
>  b. all coverage letters and/or denial of coverage letters from any insurance company regarding coverage under any of the policies provided pursuant to paragraph l(a), including but not limited to coverage positions taken by the insurance company, and any non-privileged or otherwise protected response to such

> insurance company by the [ULX] Defendants, Mr. Hinton,
> and/or Mr. Reed thereto.

*Id.* ¶ 1, Adv. Pro. No. 20-03142-KRH, ECF No. 177 at 2-3. Second, the Judicial Mediator ordered

the Trustee to provide the ULX Defendants ten days after the exchange of the insurance

information as required by the Insurance Order "the identity of the Trustee's anticipated trial expert

with respect to the damages the Trustee alleges were proximately caused by the Respondents, as

well as a summary of the expert's opinions to date on as to the amount of such alleged damages

and the basis therefore." Order Directing Exchange of Information Between Defs, Nicholas

Hinton, Daniel Reed, Insurance Cos. & Chapter 7 Trustee, *Tavenner v. ULX Partners, LLC*, Adv.

Pro. No. 20-03142-KRH (Mar. 8, 2022), ECF No. 178 at 2.

On March 8, 2022, after entry of these two orders by the Judicial Mediator, the Court

conducted a regularly scheduled status conference with the parties (the "March 8 Hearing"). At

the March 8 Hearing, the Court informed the parties he understood that the First Mediation was

not successful. The Court advised the parties that the Judicial Mediator had asked the Court for a

brief continuance of the trial date. The Court remarked:

> [The Judicial Mediator] said that there was some information that
> had not been disclosed, that he thought needed to be disclosed in
> order for the parties to properly assess the case. Of course, I did not
> know what he was talking about, what information and anything. I
> take it at face value; we don't discuss the merits of the case at all.
> But today now, I have docketed two orders that Judge Santoro has
> entered, and I see what information he's ordering to be produced,
> which I can very clearly see was information that should have been
> disclosed at the beginning of this case, under Rule 26(a)(1)(A).
>
> And there's a continuing obligation, as all of you know, to make
> these disclosures throughout the case. Why this information had to
> be ordered by Judge Santoro to be disclosed is beyond me. I'm not
> going to get into that today. ***There will be a day when I do get into
> it and find out if a sanction is appropriate, but this is not that time.***
> We're still in the midst of mediation.

> But I want the parties to know that I'm deeply disappointed in them.
> I quite frankly expect a lot more from such capable lawyers. I don't
> know what's going on or why, but it's outrageous.

Mar. 8, 2022, Hr'g Tr. 3:17-4:12, Adv. Pro. No. 20-03142-KRH, ECF No. 193 at 3-4 (emphasis

added). Consistent with the Court's ruling from the bench at the March 8 hearing, on March 10,

2022, the Court entered its Fifth Amended Pretrial Order[14] [Adv. Pro. No. 20-03142-KRH, ECF

No. 183] (the "Fifth Pretrial Order"). The Fifth Pretrial Order stated, in pertinent part:

> While not presently before the Court, it appears that neither the
> Plaintiff nor the Defendants may have fully complied with their
> ongoing duty to disclose in accordance with Rule 26(a)(1)(A) of the
> Federal Rules of Civil Procedure, as made applicable to this
> Adversary Proceeding by Rule 7026 of the Federal Rules of
> Bankruptcy Procedure ("Rule 26"). If the Court later determines that
> any Party did fail to comply with the disclosure obligations set forth
> in Rule 26 and/or violated the terms of this Court's Pretrial Order
> [ECF No. 9] as subsequently amended and modified, the Court may
> impose sanctions as appropriate.

*Id.* at n.1, ECF No. 183 at 2. The Court reluctantly extended the time for the Judicial Mediator to

complete the mediation once the parties exchanged the information the Judicial Mediator had

ordered be disclosed. Supp. Order Appointing Mediator, *Tavenner v. ULX Partners, LLC,* Adv.

Pro. No. 20-03142-KRH (Mar. 10, 2022), ECF No. 182.



---

[14]     By joint stipulation, the parties proposed an amended pretrial order (the "Sixth Pretrial Order"), which the Court entered on March 23, 2022. Sixth Stipulation & Am. Pre-Trial Order, *Tavenner v. ULX Partners, LLC,* Adv. Pro. No. 20-03142-KRH, ECF No. 190.



The Judicial Mediator conducted a second mediation (the "Second Mediation") on April 12 and April 13, 2022. Trustee's Decl. ¶ 28, ECF No. 1374 at 10. On the final day of Second Mediation, the Judicial Mediator proposed a global, comprehensive settlement proposal that would encompass resolution of both Adversary Proceedings (the "Proposal"). *Id.* ¶ 29, ECF No. 1374 at 11. The Proposal was presented to the parties as a take it or leave it proposition. The Judicial

Mediator imposed a deadline of April 19, 2022, at noon for the Defendants to either accept or reject the Proposal. *Id.* Approximately thirty minutes before a hearing that had been scheduled before this Court for April 19, 2022, the Defendants accepted the Proposal. *Id.* ¶ 30, ECF No. 1374 at 11.

At the April 19 hearing, the parties announced they had reached a settlement in principle. The Parties placed the relevant terms of the Proposal on the record.[15] The Trustee then filed the Motion to Approve Settlement, which documented the terms of the settlement and included the Settlement Agreement.

The Settlement Agreement provides that the Defendants will pay to the Debtor's estate the total sum of $21 million (the "Settlement Amount"). The Settlement Amount will be paid in three installments over a period of two years. Settlement Agreement § 3, ECF No. 1396 at 5-6. From the final installment of the Settlement Amount, $3.15 million will be paid to the Trustee's special litigation counsel, Quinn, as an improvident payment (the "Improvident Payment"). *Id.* § 3(h), ECF No. 1396 at 7. Neither the Defendants nor any insurance company will be able to file a claim against the estate under section 502(h) of the Bankruptcy Code for the Settlement Amount. *Id.* § 3(g), ECF No. 1396 at 7. ULXP will waive any right to payment of the proofs of claim it filed in the Debtor's bankruptcy case. *Id.* The parties will exchange mutual releases. *Id.* §§ 5-12, ECF No. 1396 at 8-12. Both Adversary Proceedings will be dismissed with prejudice. *Id.* § 14, ECF No. 1396 at 12.

---

[15] The parties disclosed that the Improvident Payment was an essential, necessary term of the settlement. Upon inquiry by the Court about the inclusion of the Improvident Payment as a term of the Settlement Agreement, the parties consented to the Court communicating directly with the Judicial Mediator about the Improvident Payment. Apr. 19, 2022, H'rg Tr. 9:15-21, 12:18-24, *Tavenner v. ULX Partners, LLC*, Adv. Pro. No. 20-03142-KRH, ECF No. 200 at 9, 12.

## ANALYSIS

Compromises and settlements are "a normal part of the process of reorganization." *Protective Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson*, 390 U.S. 414, 424 (1968) (quoting *Case v. L.A. Lumber Prods. Co.*, 308 U.S. 106, 130 (1939)). To "administer[ ] reorganization proceedings in an economical and practical manner it will often be wise to arrange the settlement of claims as to which there are substantial and reasonable doubts. . . . [H]owever, it is essential that every important determination in reorganization proceedings receive the 'informed, independent judgment' of the bankruptcy court." *Id.* (quoting *Nat'l Sur. Co. v. Coriell*, 289 U.S. 426, 436 (1933)). To effectuate such a policy, Bankruptcy Rule 9019 allows a trustee to settle a matter with the approval of the Court. Fed. R. Bankr. P. 9019. "The decision of the bankruptcy judge as to the approval of a proffered compromise rests within the judge's own sound discretion." *Shaia v. Three Rivers Wood, Inc. (In re Three Rivers Wood, Inc.)*, Case No. 98-68685-DOT, Adv. Pro. No. 99-3020-DOT, 2001 WL 720620, at *4, 2001 Bankr. LEXIS 737, at *12-13 (Bankr. E.D. Va. Mar. 20, 2001) (citing *In re Sapphire S.S. Lines, Inc.*, 339 F. Supp. 119 (S.D.N.Y. 1972); *In re Ira Haupt & Co.*, 252 F. Supp. 339 (S.D.N.Y. 1966)).

"All compromises must be 'fair and equitable.'" *In re Alpha Nat. Res., Inc.*, 544 B.R. 848, 857 (Bankr. E.D. Va. 2016) (quoting *TMT*, 390 U.S. at 424). The trustee, as the proponent of the settlement, has the burden of proving that the settlement is fair and equitable. *See In re Frye*, 216 B.R. 166, 174 (Bankr. E.D. Va. 1997) (citing *Martin v. Kane (In re A & C Props.)*, 784 F.2d 1377, 1381 (9th Cir. 1986)). In determining whether the settlement is fair and equitable, the Court should consider "the probability of the trustee's success in any ensuing litigation, any collection difficulties, the complexity, time and expense of the litigation, and the interests of creditors with proper deference to their reasonable views." *In re Austin*, 186 B.R. 397, 400 (Bankr. E.D. Va.

1995) (citations omitted); *see also TMT*, 390 U.S. at 424; *In re Alpha Nat. Res. Inc.*, 544 B.R. at

857; *In re Loudoun Heights*, No. 13-15588-BFK, 2014 WL 2928110, at *9, 2014 Bankr. LEXIS

2805, at *25-26 (Bankr. E.D. Va. June 27, 2014); *In re Three Rivers Wood*, 2001 WL 720620, at

*6, 2001 Bankr. LEXIS 737, at *17; *In re Frye,* 216 B.R. at 174.  "In essence, a compromise or

settlement will likely gain approval if it is both 'fair and equitable,' as well as representative of the

best interests of the estate as a whole."  *In re Three Rivers Woods,* 2001 WL 720620 at *6, 2001

Bankr. LEXIS 737, at *18 (quoting *Conn. Gen. Life Ins. Co. v. United Cos. Fin. Corp.(In re Foster

Mortg. Corp.*), 68 F.3d 914, 917 (5th Cir. 1995)).  The fair and equitable factors are essentially the

same factors used to ascertain whether the settlement is in the best interests of the bankruptcy

estate. *Parker v. Bullis (In re Bullis)*, 515 B.R. 284, 288 (Bankr. E.D. Va. 2014).  "A bankruptcy

judge is not required to 'conduct a full evidentiary hearing or mini trial' before approving a

settlement." *In re Alpha Nat. Res. Inc.*, 544 B.R. at 857 (quoting *In re Three Rivers Woods, Inc.*,

2001 WL 720620 at *6, 2001 Bankr. LEXIS 737, at *19).  "[T]he test is not whether the trustee

would have prevailed at trial." *In re Three Rivers Woods, Inc.*, 2001 WL 720620 at *6, 2001

Bankr. LEXIS 737, at *18.  Instead, the Court must decide "whether the settlement falls 'below

the lowest point in the range of reasonableness.'"  *In re Austin*, 186 B.R. at 400 (quoting *Cosoff v.

Rodman (In re W.T. Grant Co.*), 699 F.2d 599, 608 (2d Cir. 1983)); *Alpha Nat. Res. Inc.,* 544 B.R.

at 857.  Where a proposed settlement is not below the lowest point of what is fair and reasonable

and represents the best interests of the bankruptcy estate, the Court should approve it pursuant to

Bankruptcy Rule 9019. *See In re Three Rivers Wood*, 2001 WL 720620, at *6, 2001 Bankr. LEXIS

737, at *17-18 (citing *In re Austin*, 186 B.R. at 400).

    The first factor is "the probability of the trustee's success in any ensuing litigation." *In re

Austin*, 186 B.R. at 400 (citations omitted).  The Settlement Agreement will result in the Debtor's

estate receiving (i) $14,750,000 on or before the closing date; and (ii) an additional $6,250,000 after the closing date. Tavenner Decl. ¶ 35, ECF No. 1374 at 15. Additionally, ULXP will waive its claims against the Debtor's estate, thereby contributing additional value.[16] On the first factor, the Trustee acknowledged at the Hearing that the probability of success on the merits was by no means certain. The Trustee's First Amended Complaint includes thirty-four counts, ranging from violations of the VUTSA to conspiracy and breaches of fiduciary duty. The Court has not ruled upon the ULX Defendants' Summary Judgment Motion. Assuming some or all of the alleged counts survive summary judgment, those counts involve complex, fact-intensive inquiries. The CVC Adversary Proceeding has not yet even entered discovery. But it will also involve a similar, fact-intensive inquiries. Those inquires may be tried before a jury. Even if the Trustee is successful and receives judgment on the merits in either the ULX Adversary Proceeding or the CVC Adversary Proceeding, the amount of damages she may be awarded remains unclear. Given the uncertainty of success on the merits in litigation, this factor weighs in favor of approving the Settlement Agreement.

The second factor – the potential difficulty in collecting a judgment – also weighs in favor of the Court approving the Settlement Agreement. *See In re Austin*, 186 B.R. at 400 (citations omitted). The Settlement Agreement provides for an immediate payment of $14.75 million to the estate, with the remaining funds to be paid within the next two years. Until the estate receives payment in full of the Settlement Amount, the Settlement Agreement provides for various forms of security. If the Settlement Agreement is not approved, the Trustee may experience difficulty

---

[16]    Given that the Trustee is continuing to liquidate assets and has not completed the claims reconciliation process, the exact value of the claims waiver is unknown. However, what is certain is that the withdrawal will result in all other allowed general unsecured claims receiving a greater share of any recovery, thereby benefiting the Debtor's estate.

with collection even if she were to succeed on the merits of her claims. 

Given that uncertainty, this factor weighs in favor of the Court approving the Settlement Agreement.

The third factor is the "complexity, time and expense of the litigation." *In re Austin*, 186 B.R. at 400. This factor also weighs in favor of the Court approving the Settlement Agreement. The Court has spent many pages detailing lengthy and complex procedural history involving the ULX Adversary Proceeding. This history foreshadows the length, expense, and complexity of any litigation that would yet ensue in this case without a settlement. If the Court were to deny the Motion to Approve Settlement, the Court would have to issue its decision on the Summary Judgment Motion. Assuming that the Summary Judgment Motion is not granted in full, the Court would also need to address the Motion to Amend. If the Motion to Amend were granted, fact discovery may need to be reopened. All of this would culminate in a two-week trial. The Court cannot quantify the estate resources that would be additionally expended to conclude this litigation.

The CVC Adversary Proceeding, although still in its initial phases, promises to be equally – if not more – complex. Additional factors adding complexity to the CVC Adversary Proceeding include the multiple individual defendants and the likelihood of a jury trial. The Motion to Approve Settlement will eliminate the delay and costs associated with any appeals – which would not be surprising given the litigious history demonstrated to date by the parties in these Adversary Proceedings. The fact that this settlement represents a comprehensive, global resolution of both adversary proceedings weighs in favor of approving the Settlement Agreement.

The fourth and final factor -- the interests of creditors – weighs in favor of the Court approving the Settlement Agreement. Although it is premature to project an estimated distribution to unsecured creditors, *see* note 16 *supra*, millions of dollars pouring into the Debtor's estate will undoubtedly increase distributions to creditors. It is likewise clear to the Court that, should the Settlement Agreement be approved, payments to the Debtor's estate could begin in the near future. Continued litigation would likely take years to complete. Problems inherent with collection uncertainty may result in further delay. The Court understands that this Settlement Agreement would result in greater and more expedient distributions to creditors. Thus, this factor weighs in favor of approving the Settlement Agreement. *See In re Three Rivers Woods, Inc.*, 2001 WL 720620, at *7, 2001 Bankr. LEXIS 737, at *20 ("The trustee owes a primary duty to the unsecured creditors, who favor and will benefit from the proposed settlement.").

Each of the four factors weighs in favor of approving the Settlement Agreement. With the exception of the objection brought by the U.S. Trustee to the Improvident Payment, no creditor or other party in interest has contested the Settlement Agreement. Even the U.S Trustee, both in his pleadings and on the record at the Hearing, concedes that the Settlement Agreement is "an

excellent result" for the estate and that (absent the Improvident Payment) the settlement should be approved. U.S. Trustee's Obj., ECF No. 1370 at 2.

The Settlement Agreement fully and finally resolves *all* disputes between the parties and puts an end to both Adversary Proceedings.



The evidence adduced at the Hearing provided that the Proposal was a "'take it or leave it' proposition," Nelson Decl. ¶ 64, ECF No. 1380 at 21, that the Improvident Payment was a "material and integral term of the Settlement" Agreement, Tavenner Decl. ¶ 39, ECF No. 1374 at 17, and that "if the Improvident Payment was not included as part of the Settlement . . . , the [Judicial] Mediator would release all of the Parties to the Settlement Agreement from any and all obligations to perform thereunder." Nelson Decl. ¶ 64, ECF No. 1380 at 21.



Contrary to the U.S. Trustee's assertions, the Court cannot approve just part of the Settlement Agreement. The Settlement Agreement is governed by Virginia law. Settlement Agreement ¶ 29, ECF No. 1396 at 14. "Although Virginia courts will look to the intent of the parties to determine severability of clauses or provisions, they will not 'blue pencil' a contract to make it enforceable." *Pitchford v. Oakwood Mobile Homes, Inc.*, 124 F. Supp. 2d 958, 965 (W.D. Va. 2000) (collecting cases). "Blue penciling" is different from severability under Virginia law. "The former emphasizes deleting, and in some jurisdictions adding, words in a particular clause. The latter emphasizes construing independent clauses independently." *Roto-Die Co. v. Lesser*, 899 F. Supp. 1515, 1523 (W.D. Va. 1995).

Based on the only evidence before the Court, the Improvident Payment is not an independent clause. As such, to strike the Improvident Payment would be impermissible blue penciling. The Court finds that the Settlement Agreement is fair and equitable, that it is in the best interests of the estate, and that it falls well above the lowest point in the range of reasonableness.

Accordingly, the Court approves the Settlement Agreement in full, including the Improvident Payment. *See Cantu-Guerrero v. Lumber Liquidators, Inc. (In re Lumber Liquidators Chinese-Manufactured Flooring Prod. Mktg., Sales Pracs. & Prod. Liab. Litig.)*, 27 F.4th 291, 308 (4th Cir. 2022) ("Neither the district court nor this court is empowered to rewrite the settlement agreed upon by the parties." (quoting *Officers for Just. v. Civ. Serv. Comm'n of City & Cnty. of San Francisco*, 688 F.2d 615, 630 (9th Cir. 1982))).

The U.S. Trustee urges the Court to review the Improvident Payment, not as part of Settlement Agreement, but rather under the standards of sections 327, 328, and 330 of the Bankruptcy Code.[18] The Court disagrees because the Improvident Payment is an essential,

---

[18] The U.S. Trustee was not a part of the mediation with the Judicial Mediator. The Court inquired as to why the U.S. Trustee declined to participate in the mediation. May 31, 2022, Hr'g Tr. 32:20-23, *Tavenner v. ULX*

non-severable component of the Settlement Agreement. Accordingly, the analysis upon which the

U.S. Trustee insists, is unnecessary. The U.S. Trustee has failed to provide any case law to suggest

that – as a matter of law – the Court must review the Improvident Payment as compensation and

not as part of the settlement pursuant to Bankruptcy Rule 9019.

Assuming *arguendo* that the section 328 of the Bankruptcy Code is applicable, which it is

not, the Court will, nevertheless, conduct an analysis thereunder. Section 328 of the Bankruptcy

Code permits a trustee to employ professionals "under section 327 or 1103 of this title, as the case

may be, on any reasonable terms and conditions of employment, including on a retainer, on an

hourly basis, on a fixed or percentage fee basis, or on a contingent fee basis." 11 U.S.C. § 328(a).

Section 328(a) further provides that

> Notwithstanding such terms and conditions, the court may allow
> compensation different from the compensation provided under such
> terms and conditions after the conclusion of employment, if such
> terms and conditions prove to have been improvident in light of
> developments not capable of being anticipated at the time of the
> fixing of such terms and conditions.

*Id.*[19] In other words, "a bankruptcy court may totally disregard an employment agreement where

necessary and award compensation more appropriate under the individual circumstances of the

case." *In re Fin. News Network, Inc.*, 134 B.R. 732, 735 (Bankr. S.D.N.Y. 1991). "Under [section

328], the bankruptcy court has substantial discretion in altering fee agreements when the

---

*Partners, LLC*, Adv. Pro. No. 20-03142-KRH, ECF No. 234 at 32 ("THE COURT: Why didn't your office participate in this mediation? MS. MONTGOMERY: Well, Your Honor, we don't -- as I understand it, do not traditionally participate in mediations.").

[19] Although the statute refers to "after the conclusion of such employment," 11 U.S.C. § 328, "it would be absurd to conclude that we must wait until the conclusion of such employment, when the court realizes that it has acted improvidently in approving the terms and conditions of such employment," *In re Allegheny Int'l, Inc.*, 100 B.R. 244, 246 (Bankr. W.D. Pa. 1989); *see also In re Begun*, 162 B.R. 168, 178 (Bankr. N.D. Ill. 1993). However, even assuming this provision were strictly construed, Court finds that, as the Motion to Approve Settlement would fully and finally resolve the Adversary Proceedings, Quinn's employment has concluded with respect to the Adversary Proceedings.

circumstances warrant." *In re Confections by Sandra, Inc.*, 83 B.R. 729, 733 (B.A.P. 9th Cir.

1987). To successfully advocate for an adjustment to compensation under section 328(a), the

proponent must clear the "high hurdle" section 328(a) creates. *See Riker, Danzig, Scherer, Hyland

& Perretti v. Off. Comm. of Unsecured Creditors (In re Smart World Techs., LLC)*, 552 F.3d 228,

235 (2d Cir. 2009). The Court may increase or decrease compensation under section 328(a). *In

re Omegas Grp., Inc.*, 195 B.R. 875, 880 (Bankr. W.D. Ky. 1996) (quoting *In re Land*, 138 B.R.

66, 71 (D. Neb. 1992)).

The subsequent developments that render the pre-approved terms of employment

improvident must be "incapable of being foreseen." *ASARCO, L.L.C. v. Barclays Cap., Inc. (In

re ASARCO, L.L.C.)*, 702 F.3d 250, 258 (5th Cir. 2012) (quoting *Daniels v. Barron (In re Barron)*,

325 F.3d 690, 693 (5th Cir. 2003)). "There is wide agreement that unanticipated events are not

grounds for revisiting a pre-approved fee award. The events must be not capable of being

anticipated." *Riker, Danzig, Scherer, Hyland & Perretti LLP v. Official Comm. of Unsecured

Creditors (In re Smart World Techs. LLC)*, 383 B.R. 869, 877 (S.D.N.Y. 2008) (internal quotation

marks omitted). Courts have found the following developments capable of being anticipated: the

size and scope of a settlement, a better-than-expected recovery, complexity in litigation, and

acrimonious relations developing between counsel and creditors committee. *See id.* (collecting

cases); *see also, e.g., In re ASARCO, L.L.C.*, 702 F.3d at 264; *In re Smart World Techs, LLC*, 552

F.3d at 235; *In re Barron*, 325 F.3d at 695; *In re Hale-Halsell Co.*, 391 B.R. 459, 467 (Bankr. N.D.

Okla. 2008). An adjustment of fees is an extraordinary remedy, which is rarely given, and – when

given – courts are more likely to reduce total compensation than to increase it. Under extraordinary

circumstances, courts have made the upwards adjustment. *See, e.g., In re Home Exp., Inc.*, 213

B.R. 162, 167 (Bankr. N.D. Cal. 1997) (awarding supplemental fees where there was a "managerial

vacuum [that] not only left the professionals stranded in this case with no leadership or direction, but also required them to attempt to fill the void"); *In re W. Monetary Consultants, Inc.*, 143 B.R. 780, 782 (Bankr. D. Colo. 1992) (awarding supplemental fees to debtor's accountant where debtor had failed to "provide documentation in the form originally indicated").



The Court finds that the Improvident Payment is merited under section 328(a) of the Bankruptcy Code. The Trustee initially engaged Foley on a mixed hourly and contingency fee basis, which employment was approved by Court order on February 10, 2020. ████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████ On October 26, 2020, the Trustee, by and through Foley, filed the Original ULX

Complaint. ████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

███████████████████████████████████████████████████ █ ██

████████████████████

█████████████████████████████████████████

████████████████████████████████████████████ On

June 7, 2021, the Trustee filed the Quinn Retention Application and on June 28, 2021, the Court

entered the Quinn Retention Order. By the terms of the Quinn Retention Order, Quinn agreed to

be compensated for its work in the ULX Adversary Proceeding, among other cases, on a 35 percent

contingency fee basis pursuant to section 328 of the Bankruptcy Code. *See* Quinn Retention Order

¶ 3, ECF No. 937 at 2-3.

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████



20



Accordingly, the Court will alternatively approve the Improvident Payment under section 328 of the Bankruptcy Code and overrule the U.S. Trustee's Objection.

Finally, the U.S. Trustee argues that the Improvident Payment will provide Quinn with an improper windfall. If Quinn's contingency fee is to be calculated based on the payment of the

total Settlement Amount of $21 million without subtracting the Improvident Payment, then Quinn would be earning fees on fees. At a minimum, the U.S. Trustee argues, the amount of the Improvident Payment should be subtracted from the total Settlement Amount so that the 35 percent Contingency Fee is calculated on the amount that the estate retains.

The Court agrees. Given the nature of the Improvident Payment, Quinn should not receive its contingency fee of 35 percent on the $3.15 million Improvident Payment. Quinn's contingency fee for the Adversary Proceedings shall be calculated as follows. From the total settlement amount ($21 million), the parties shall deduct certain costs and expenses, *see* Tavenner Supp. Decl. ¶ 15, ECF No. 1387 at 6-7 and the Improvident Payment ($3.15 million). Quinn will be entitled to 35 percent of the net amount.

## CONCLUSION

The Settlement Agreement is a proper exercise of the Trustee's business judgment, meets the standards established by the Fourth Circuit for the approval of a compromise and settlement in bankruptcy, and is reasonable, fair, and equitable, and supported by adequate consideration. The Settlement Agreement is in the best interests of the estate, its creditors, and all other parties in interest. The Settlement Agreement provides an end to all disputes between the parties and for a significant and expeditious recovery to the Debtor's estate. The Settlement Agreement is not only the result of good faith arms-length negotiations between sophisticated parties and their counsel, but also is the Proposal recommended by the Judicial Mediator, a sitting bankruptcy judge.

Although unnecessary to the Court's conclusion, the Court has conducted an independent analysis of the Improvident Payment pursuant to section 328 of the Bankruptcy Code. The Court has found that the Improvident Payment is specifically warranted under the unique – and hopefully unrepeatable – facts and circumstances of this Bankruptcy Case and these Adversary Proceedings.

The Court has found that the Improvident Payment is designed to compensate counsel for the time expended in this case directly attributable to developments not capable of being anticipated at the time of the fixing of such terms of compensation.  The Improvident Payment will in no way adversely affect the bankruptcy estate nor will it diminish the recovery available to the estate.

Accordingly, for the reasons stated above, the Court overrules the U.S. Trustee's Objection and grants the Motion to Approve Settlement on the terms set forth herein.  By granting the Motion to Approve Settlement, the Court also approves the Improvident Payment as described herein.

A separate Order shall issue.

Dated: ___June 28, 2022_____        ___/s/ Kevin R. Huennekens_____
                                          UNITED STATES BANKRUPTCY JUDGE

                                          Entered on Docket: ___June 28, 2022_____