**UNITED STATES BANKRUPTCY COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**(Richmond Division)**

|  |  |
|---|---|
| In re:<br><br>　　　　LeClairRyan, PLLC,[1]<br><br>　　　　　　　　　Debtor. | Case No. 19-34574-KRG<br><br>Chapter 7 |
| Lynn L. Tavenner, as Chapter 7 Trustee,<br><br>　　　　　　　　　Plaintiff,<br><br>v.<br><br>ULX Partners, LLC, UnitedLex Corporation,<br>and ULX Manager LLC,<br><br>　　　　　　　　　Defendants. | Adv. Proc. No. 20-03142 (KRH) |

**TRUSTEE'S MOTION AND MEMORANDUM OF LAW FOR ENTRY OF AN ORDER**
**(I) APPROVING (A) JUDICIALLY MEDIATED SETTLEMENT AND (B)**
**COMPENSATION TO COUNSEL INCLUDING AN IMPROVIDENT PAYMENT**
**UNDER SECTION 328(A); AND (II) GRANTING RELATED RELIEF**

　　　　Lynn L. Tavenner, Trustee, not individually, but solely in her capacity as the Chapter 7

trustee (in such capacity, the "**Trustee**") of the bankruptcy estate (the "**Estate**") of LeClairRyan

---

[1] The principal address of the Debtor as of the Petition Date was 4405 Cox Road, Glen Allen, Virginia 23060, and the last four digits of the Debtor's federal tax identification number are 2451.

Erika L. Morabito (VSB No. 44369)
Brittany J. Nelson (VSB No. 81734)
QUINN EMANUEL URQUHART & SULLIVAN LLP
1300 I Street, N.W., Suite 900
Washington, DC 20005
(202) 538-8334 (telephone)
Email:  erikamorabito@quinnemanuel.com
　　　　brittanynelson@quinnemanuel.com

*Special Counsel to Lynn L. Tavenner, Chapter 7 Trustee*

PLLC ("**LeClairRyan**" and/or the "**Debtor**" and/or "**LCR**")), in the above-referenced Chapter 7

case, by counsel, respectfully states as follows in support of this motion (the "**Motion**"):

## PRELIMINARY STATEMENT

1.      After months of intense, hard fought arm's-length negotiations, and with the

significant assistance and critical involvement of a judicial mediator, the Trustee, all of the

defendants in two separate adversary proceedings, and certain insurers, have reached a global,

comprehensive agreement that is a fair and reasonable compromise of the claims and causes of

action asserted by the Trustee in those two separate adversary proceedings.  Among other things,

this settlement agreement avoids the lengthy, complex, and expensive litigation of myriad disputed

issues among these parties, and it is undoubtedly in the best interest of the Estate.

2.      More specifically, this Motion seeks the entry of an order (1) approving the

Settlement (as hereafter defined) by and among the Trustee, on the one hand and ULX Partners,

LLC, ULX Manager LLC, and UnitedLex Corporation (collectively, the "**ULX Defendants**"),

CVC Advisers (India) Private Limited and/or CVC Capital Partners ("**CVC**"), Daniel Reed,

Nicholas Hinton, Josh Rosenfeld, and P. Douglas Benson (collectively, with the ULX Defendants,

the "**Defendants**"), Travelers Casualty and Surety Company of America ("**Travelers**"),

Continental Casualty Company ("**Continental**"), and Columbia Casualty Company ("**Columbia**")

(collectively, Continental and Columbia are referred to as "**CNA**" and Travelers and CNA are

referred to as the "**Insurers**");[2] (2) authorizing the effectiveness of the Settlement Agreement (as

hereafter defined and attached hereto as **Exhibit A**) on behalf of the Estate; (3) approving a

Contingency Payment (as hereafter defined) and authorizing the Trustee to pay the same; and (4)

---

[2]  The Trustee, the Defendants, and the Insurers may be referred to hereinafter collectively as the "**Parties**."

approving the Improvident Payment (as hereafter defined) in an amount to be determined by the Court and authorizing the Trustee to pay the same.

3.      Thus, for the reasons set forth herein, the Trustee respectfully submits that the Settlement satisfies the standards for approval under applicable law and that the Court should therefore approve the Settlement pursuant to section 105 of the Bankruptcy Code and Bankruptcy Rule 9019 and grant other relief requested in this Motion.

## JURISDICTION AND VENUE

4.      The United States Bankruptcy Court for the Eastern District of Virginia has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Standing Order of Reference from the United States District Court for the Eastern District of Virginia*, dated August 15, 1984.

5.      This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).

6.      Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

7.      The bases for the relief requested herein are sections 105(a) and 328(a) of the Bankruptcy Code, Bankruptcy Rule 9019, and Rule 9019-1 of the Local Rules of the United States Bankruptcy Court for the Eastern District of Virginia.

## BACKGROUND

### A.  The Bankruptcy Proceeding and Prosecution of Certain Claims

8.      On September 3, 2019 (the "**Petition Date**"), the Debtor filed for relief under Chapter 11 of Title 11 of the United States Code, 11 U.S.C. §§101-1532 (as thereafter amended, the "**Bankruptcy Code**") in the United States Bankruptcy Court for the Eastern District of Virginia, Richmond Division (the "**Bankruptcy Court**").  Pursuant to §§ 1007 and 1108 of the Bankruptcy Code, the Debtor operated as a debtor-in-possession.

3

9.      Per agreement between the Debtor, the United States Trustee, and ABL Alliance, LLP, the Debtor's Chapter 11 case was converted to a case under Chapter 7 of the Bankruptcy Code on October 4, 2019.  Upon conversion, Lynn L. Tavenner was appointed interim trustee, and no trustee having been elected at the meeting of creditors, she continues to serve as the Trustee.

10.     Consistent with her duties, the Trustee began investigating potential causes of action on behalf of the Estate.  Initially, the Trustee, with the assistance of her counsel, filed a *Motion for an Order Establishing Procedures Regarding the Prosecution of Actions Involving Former Attorneys and Certain Others and Memorandum in Support Thereof* (the "**FAO Procedures Motion**") (Main Dkt No. 457).[3]  The FAO Procedures Motion was approved by Order of this Court (Main Dkt No, 533), as amended/supplemented by additional Orders of this Court (Main Dkt No. 929 and 982) (collectively, the "**FAO Order**").

11.     On October 26, 2020, the Trustee filed an adversary proceeding against ULX Partners, LLC and UnitedLex Corporation, Adversary Proceeding No. 20-03142 (as amended, the "**UnitedLex Adversary Proceeding**").[4]

12.     Thereafter, the Trustee also issued demand letters to more than 200 other potential defendants, including defendants Hinton, Reed, Rosenfeld, Benson, and CVC.  The FAO Order established procedures that, among other things, allowed for a potential defendant to elect mediation prior to the Trustee filing a lawsuit.

---

[3]  "Main Dkt" refers to the docket in the main Bankruptcy Case.  "Dkt." refers to the docket in the United Lex Adversary Proceeding, while "Reed Dkt" refers to the docket in the Reed Adversary Proceeding (as hereafter defined).

[4]  On December 12, 2019 ULX Partners, LLC filed Proof of Claim No. 174 in the amount of $8,563,288 and Proof of Claim No. 175 in the amount of $3,952,025 (collectively, the "**ULX Partners Proofs of Claim**").

13.    On September 2, 2021, the Trustee filed a separate adversary proceeding (No. 21-03095-KRH) (the "**Reed Adversary Proceeding**")[5] against CVC as well as UnitedLex's Chief Executive Officer Daniel Reed and its Chief Financial Officer Nicholas Hinton. In the Reed Adversary Proceeding, the Trustee also asserted claims against Josh Rosenfeld and P. Douglas Benson.  In the Reed Adversary Proceeding, the Trustee asserted claims for, among other things, breach of fiduciary duty, statutory and common law conspiracy, and constructive fraud (the "**Reed Adversary Claims**").[6]

**B.  The UnitedLex Adversary Proceeding**

14.    Since the filing of the UnitedLex Adversary Proceeding, the Trustee and the ULX Defendants have been engaged in complex and substantial litigation, including a very active motions practice, as well as extensive discovery consisting of written discovery, the exchange of hundreds of thousands of pages of documents, depositions of more than a dozen witnesses, and the retention of various experts.  In addition, throughout this case, the Court entered several pre-trial orders governing the litigation between the Trustee and the ULX Defendants.

15.    

---

[5]  The Reed Adversary Proceeding and the UnitedLex Adversary Proceeding are collectively referred to herein as the "**Two Adversary Proceedings**."

[6]  The Trustee has actively pursued the Reed Adversary Proceeding since its inception. While discovery has not yet begun, there has been an active motions practice. For example, CVC filed a Motion to Withdraw the Reference [Reed Dkt No. 19].  In addition, CVC, Reed, Hinton, Rosenfeld, and Benson have filed separate Motions to Dismiss [Reed Dkt Nos. 8, 9, 23, and 39].  These motions have been stayed while, among other things, the Motion to Withdraw the Reference was being decided by the District Court.

[7]  At the time, the only defendants in the case were United Lex and ULXP.  ULX Manager LLC was subsequently added as a defendant on August 25, 2021, with the filing of the Amended Complaint.

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

██   ██████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

██████████████████████████████████████

17.   On August 6, 2021, the Trustee filed a Motion for Leave to Amend Complaint and to Modify Pretrial Scheduling Order [Dkt No. 70] (the "**First Motion to Amend**") and on August 16, 2021, the Defendants filed an Objection to the Trustee's Motion for Leave to Amend Complaint and to Modify Pretrial Scheduling Order [Dkt No. 75] (the "**Opposition to First Motion to Amend**").

18.   On August 24, 2021, the Bankruptcy Court granted the Trustee's Motion to Amend the Complaint [Dkt No. 85] resulting in the Trustee filing a First Amended Complaint in the UnitedLex Adversary Proceeding on August 25, 2021 [Dkt No. 86] (the "**Amended Complaint**"), which added ULX Manager LLC and Gary LeClair as defendants.[8]   The First Motion to Amend,

---

[8]   The claims against Gary LeClair have since been resolved (the "**D&O Settlement**") pursuant to an Order [Dkt No. 121] entered on December 3, 2021, granting a separate Motion for Approval of Compromise and Settlement and Memorandum of Law [Dkt No. 119].

the Opposition to First Motion to Amend, and the Amended Complaint are incorporated as if fully
set forth herein.

19.    The First Amended Complaint asserted, among other things, the following causes
of action against ULX Partners, LLC, ULX Manager LLC, and/or UnitedLex Corporation:

(1)  avoidance of preferential and/or fraudulent transfers under sections 544, 547,
548 and 550 of the Bankruptcy Code;

(2) disallowance of claims under Section 502(d) of the Bankruptcy Code;

(3) lack of consideration for intellectual property under the contribution agreement;

(4) re-characterization of debt as equity;

(5) misappropriation of trade secrets;

(6) breach of fiduciary duty;

(7) statutory and common law conspiracy;

(8) an accounting;

(9) conversion;

(10) unjust enrichment; and

(11) alter ego liability.[9]

20.    After the granting of the Motion to Amend, a two-week trial in the UnitedLex
Adversary Proceeding was scheduled to begin on April 14, 2022.  [Dkt No. 144].

21.    On January 28, 2022, the ULX Defendants filed a Motion for Summary Judgment
[Dkt No. 133] (the "**Motion for Summary Judgement**") and associated documents, seeking to
dismiss certain of the UnitedLex Claims. The Trustee opposed the Motion for Summary Judgment
[Dkt No. 152] (the "**Opposition to Summary Judgment**") and the Bankruptcy Court has not yet
ruled on the Motion for Summary Judgment. The Motion for Summary Judgment, the Opposition
to Summary Judgment, and associated pleadings are incorporated as if fully set forth herein.

---

[9]   The claims asserted in the First Amended Complaint as set forth therein against the ULX Defendants are referred
to herein as the "**UnitedLex Claims**."   The Reed Adversary Claims and the UnitedLex Claims are collectively
referred to herein as the "**Claims**."

22.     On February 11, 2022, the Trustee filed a Motion for Leave to Amend the First Amended Complaint [Dkt No. 147] (the "**Second Motion to Amend**") and associated documents under seal, which sought to add an additional count against UnitedLex Corporation and ULX Manager LLC.  The United Lex Defendants opposed the Motion to Amend [Dkt No. 168] (the "**Opposition to Second Motion to Amend**") and the Bankruptcy Court has not yet ruled on the Second Motion to Amend. The Second Motion to Amend and the Opposition to the Second Motion to Amend are incorporated as if fully set forth herein.[10]

### C.  Judicial Mediation

23.     On February 4, 2022, at the joint request of the Trustee and the ULX Defendants, the Court entered an Order in the United Lex Adversary Proceeding (the "**Mediation Order**") [Dkt No. 142] appointing the Honorable Frank J. Santoro, the Chief Judge of the United States Bankruptcy Court for the Eastern District of Virginia, as the judicial mediator (the "**Mediator**"), to conduct a mediation (the "**Mediation**") among the Trustee, the ULX Defendants, Mr. Reed and Mr. Hinton in their individual capacities, and Travelers, "[u]nless otherwise ordered by the Mediator in the Mediator's sole discretion."

24. ████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████

---

████  At the request of the Mediator, the Bankruptcy Court continued the hearings on both the Motion for Summary Judgment and the Second Motion to Amend to allow the Parties sufficient time to continue negotiations in an attempt to fully resolve the pending disputes between them.

25. 

26.     On March 5 and March 6, 2022, certain of the Parties, their respective counsel, and the Mediator participated in a two-day in-person mediation in Richmond, Virginia.  This initial mediation session lasted approximately a day and a half but was ultimately terminated by the Mediator with specific instructions given to the participating mediation parties.

27.     On March 8, 2022, the Mediator entered the "Order Directing Defendants to Produce Insurance-Related Information" [Dkt No. 177] (the "**March 8 Insurance Order**").  The March 8 Insurance Order directed the ULX Defendants, Hinton and Reed to provide the Trustee with, among other things, (1) a "full and complete copy of any and all insurance policies (including but not limited to insurance policies of Defendants' subsidiaries, parent companies, or affiliated companies) that may provide any coverage (in full or in party) for any judgments awarded against the [ULX Defendants] in this case, and/or against Mr. Hinton and/or Mr. Reed in the [Reed Adversary Proceeding] and/or settlement amounts paid by any Defendants and/or by Mr. Hinton and/or Mr. Reed in this case and/or the [Reed Adversary Proceeding]; or any fees, costs, and expenses paid or incurred in this case by any Defendant, Mr. Hinton, and/or Mr. Reed in this case and/or the [Reed Adversary Proceeding].  Such policies should also include any policies to which

─────────────────────

any [ULX Defendant], Mr. Hinton, and/or Mr. Reed tendered coverage for the claims at issue herein or the [Reed Adversary Proceeding], including all excess policies regardless of the coverage position taken by the relevant insurance company"; and (2) "all coverage letters and/or denial of coverage letters from any insurance company regarding coverage under any of the policies provided [pursuant to the March 8 Insurance Order], including but not limited to coverage positions taken by the insurance company, and any non-privileged or otherwise protected response to such insurance company by the [ULX Defendants], Mr. Hinton, and/or Mr. Reed thereto."

28.    Also on March 8, 2022, the Mediator entered an "Order Directing the Exchange of Information Between the Defendants, Nicholas Hinton, Daniel Reed, the Insurance Companies and the Chapter 7 Trustee" [Dkt No. 178] (the "**Information Exchange Order**").  The Information Exchange Order required, among other things, the Trustee to provide "the identity of the Trustee's anticipated trial expert with respect to the damages the Trustee alleges were proximately caused by the [ULX Defendants, Reed and Hinton], as well as a summary of the expert's opinions to date as to the amount of such alleged damages and the basis therefore (the "**Trustee's Damages Report**").    Additionally, the Information Exchange Order required the ULX Defendants, Reed, and Hinton to identify the ULX Defendants' "anticipated expert as to damages, along with a summary of that expert's opinions to date rebutting the Trustee's Damage Report."  Finally, the Information Exchange Order also directed that the ULX Defendants provide the Mediator for his "*en camera review*, their year-end financial statements for the last two years, as well as financial statements indicating their current financial condition."

29.    On March 9, the Bankruptcy Court entered an order that the trial in this matter be continued until May 17 and also continued other pending motions in the case.  *See* Dkt No. 184.

30. 



35.     On April 13, 2022, after continued hard fought and arm's-lengths negotiations, a global and comprehensive proposal was made by the Mediator to fully and finally resolve all of the pending Claims in the Two Adversary Proceedings (the "**Mediator's Proposal**").  At the direction of the Mediator, the Defendants and the Insurers had until no later than 12 p.m. on April 19, 2022, to (a) accept or reject the Mediator's Proposal in total and (b) if accepted, provide specifics as to the manner, timing, and related security for payments and/or promises to pay (collectively, the "**Settlement Payment Nuances**").

36.     The hearing on the Second Motion to Amend was to be heard by the Bankruptcy Court at 11:00 a.m. on April 19, 2022.  Approximately thirty minutes before that hearing, however, the Defendants and the Insurers agreed to the Mediator's Proposal and provided the Settlement Payment Nuances. The Trustee was asked to immediately accept or reject the Mediator's Proposal that had been accepted by the Defendants and the Insurers.  In the exercise of her business judgement, the Trustee determined that the Mediator's Proposal was in the best interest of the Estate and as such accepted the same (the "**Settlement**").  Subsequently, the Mediator directed the

12

Trustee, through counsel, to inform the Court at the impending hearing of the material terms of the Settlement reached between the Parties.  As such, the material terms of the Settlement were set forth on the record at the April 19, 2022, hearing with the participation of counsel for the ULX Defendants, Mr. Hinton, and Mr. Reed. Thereafter, the Second Motion to Amend was continued to allow the Parties to document the Settlement.

### D.  The Global Settlement Agreement

37.     In addition to the terms being articulated on the record at the April 18, 2022, hearing, the Settlement is further memorialized in a certain settlement agreement (the **"Settlement Agreement"**) (attached hereto as **Exhibit A**) and is incorporated as if fully set forth herein. The key terms of the Settlement Agreement between the Parties, subject to the Bankruptcy Court's approval, are as follows:[12]

    a.  **Continental Payment:**  In consideration of the mutual releases, covenants, representations, and undertakings of the Trustee, the Defendants, and the Insurers, Continental shall pay the Trustee a sum of five million dollars ($5,000,000) on or before the Closing Date.[13]

    b.  **Columbia Payment:**  In consideration of the mutual releases, covenants, representations, and undertakings of the Trustee, the Defendants, and the Insurers, Columbia shall pay the Trustee a sum of seven million two hundred and fifty thousand dollars ($7,250,000) on or before the Closing Date.

    c.  **Travelers Payment**:  In consideration of the mutual releases, covenants,

---

[12]   The summary set forth in this section is qualified by the specific provisions of the Settlement Agreement.  To the extent there is any inconsistency between this summary and the Settlement Agreement, the Settlement Agreement governs.

[13]   All capitalized terms not otherwise defined herein shall have the meaning ascribed to them in the Settlement Agreement.

representations, and undertakings of the Trustee, the Defendants, and the Insurers, Travelers shall pay the Trustee a sum of five hundred thousand dollars ($500,000) on or before the Closing Date.

d. **Defendants' Payment and Pledge of Security:**  In consideration of the mutual releases, covenants, representations, and undertakings of the Trustee and the Defendants, the Defendants shall pay to the Trustee a total sum of eight million two hundred and fifty thousand dollars ($8,250,000).  This sum is scheduled to be paid in three installments.  The first installment of at least two million dollars ($2,000,000) will be paid on or before the Closing Date.  The second installment of three million dollars ($3,000,000) will be paid on or before the first anniversary of the Closing Date, and the third installment of three million two hundred and fifty thousand dollars ($3,250,000) will be paid on or before the second anniversary of the Closing Date. Both the Second Defendants' Payment and the Third Defendants' Payment are fully secured by Notes and Irrevocable Letters of Credit.

e. **Starr Policy Proceeds:** As part of the Settlement Agreement, neither the Defendants nor the Trustee release Starr from any obligations under the Starr Policy.  If any of the Defendants receive any proceeds from Starr under the Starr Policy related to this matter, the proceeds (net any costs of reasonable attorneys' fees incurred in pursuit of the collection of the proceeds) must be turned over and paid to the Trustee.

f. **Waiver of Proofs of Claim:** ULX Partners, LLC agrees to waive the ULX Partners Proofs of Claim, the present value of which is estimated by the ULX Defendants (and not the Trustee) to be $2.4 million.

g. **Consensual Releases:**  The Settlement Agreement includes certain consensual releases of Claims amongst the Parties.

h. **Compensation of Counsel:** Consistent with the Order entered by the Bankruptcy Court on June 28, 2021 [Main Dkt. No. 937], Quinn Emanuel shall be entitled to receive 35% of the Total Settlement Payment as provided in the Quinn Retention Order (the "**Contingency Payment**").  In addition, the Settlement Agreement contemplates an Improvident Payment of an aggregate amount not to exceed $3,150,000 (the "**Improvident Payment**") to Quinn Emanuel.  By this Motion, the Trustee seeks approval of this Improvident Payment on account of the fact that, among other things, the terms of the Quinn Retention Order have proven to be improvident in view of circumstances in this matter that were not capable of being anticipated at the time of entry of the Quinn Retention Order.  The Improvident Payment is subject to the Estate receiving the Total Settlement Payment and the Defendants do not object to the Improvident Payment.  Furthermore, the Trustee maintains that Quinn Emanuel provided necessary additional non-contingent services (the "**Additional Services**") that arose from the Two Adversary Proceedings that otherwise would have been compensated on an hourly basis had the Trustee and Quinn Emanuel known all of the facts and circumstances regarding this matter.  Notwithstanding the fact that Quinn Emanuel asserts that the value of the Additional Services exceeds the amount of the Improvident Payment, the Settlement Agreement provides that Quinn Emanuel agrees to limit the amount of the Improvident Payment to $3,150,000 or such other amount otherwise approved by the Bankruptcy Court.

    i.   **No Admission of Liability By Any of the Parties**

    j.   **Dismissal:**  The Two Adversary Proceedings will be dismissed with prejudice.

38.    The Settlement, as documented in the Settlement Agreement, was the product of an arms-length negotiation, and globally resolves, on terms beneficial to the Estate, complicated litigation in the Two Adversary Proceedings, the continued pursuit of which would be costly and time consuming and pose the risk of an unfavorable result.

## MEMORANDUM OF LAW

39.    The Trustee believes, in her business judgment and after substantial analysis, that entering into the Settlement Agreement is reasonable under these circumstances and respectfully requests that the Court approve the Settlement (and related Settlement Agreement), including the Improvident Payment, and all other relief requested in this Motion.  The Settlement (as documented in the Settlement Agreement) will allow the Estate and all interested parties to avoid the uncertainty and costs of extensive litigation to determine the recovery on the Claims and eliminates the uncertainty of litigation and the risks of collectability of any judgment that may be obtained.  Most importantly, the Settlement will allow the Estate to proceed towards a meaningful distribution to creditors on a more expedited timeline.  Accordingly, for the following reasons, the Trustee believes that entry into the Settlement Agreement is in the best interests of the Estate, its creditors, and other parties in interest and that the Settlement (and related Settlement Agreement) should be approved by the Bankruptcy Court.

    **A. Entry into the Settlement Agreement Is Fair and Equitable and in the Best Interest of the Estate**

40.    Bankruptcy Rule 9019(a) provides, in relevant part, that "[o]n motion by the trustee and after notice and a hearing, the court may approve a compromise or settlement." Fed. R. Bankr. P. 9019(a).  The United States Supreme Court has noted that "[c]ompromises are a 'normal part

of the process of reorganization.'" *Protective Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson*, 390 U.S. 414, 424 (1968) (citing *Case v. Los Angeles Lumber Prods. Co.*, 308 U.S. 106, 130 (1939)).  In *TMT Trailer*, the Supreme Court stated that compromises and settlements must be "fair and equitable." 390 U.S. at 424; *see also In re Loudoun Heights, LLC*, No. 13-15588, 2014 WL 2928110, at *8 (Bankr. E.D. Va. June 27, 2014) (same); *Shaia v. Three Rivers Wood, Inc. (In re Three Rivers Wood, Inc.*), No. 98-38685, 2001 WL 720620, at *6 (Bankr. E.D. Va. Mar. 20, 2001) (same); *In re Frye*, 216 B.R. 166, 174 (Bankr. E.D. Va. 1997) (same); *In re Austin*, 186 B.R. 397, 400 (Bankr. E.D. Va. 1995) (same).

41.     Compromises are tools for expediting the administration of the case and reducing administrative costs and are favored in bankruptcy. *See In re Bond*, 16 F.3d 408 at *3 (4th Cir. 1994) (unpublished table decision) ("To minimize litigation and expedite the administration of a bankruptcy estate, compromises are favored in bankruptcy") (citations omitted).  The Trustee, in her business judgment, believes that the Settlement Agreement represents a fair and reasonable compromise of the disputed issues regarding the Claims, as set forth in greater detail herein.

42.     The decision whether to approve a compromise under Rule 9019 is committed to the discretion of the Court, which must determine if the compromise or settlement is "fair and equitable".  *In re Health Diagnostic Lab., Inc*., 2016 Bankr. LEXIS 3724 (Bankr. E.D. Va. Oct. 14, 2016); *In re Alpha Nat. Res. Inc.*, 544 B.R. 848, 856 (Bankr. E.D. Va. 2016); *In re Frye*, 216 B.R. 166, 174 (Bankr. E.D. Va. 1997).  The Court is not required to conduct a "mini-trial" of the underlying case, but instead must only decide whether the settlement proposed falls "below the lowest point in the range of reasonableness." *In re Austin*, 186 B.R. at 400 (citations omitted); *accord In re Alpha Nat. Res. Inc.*, 544 B.R. at 857.

43.     Factors that the Court should consider when evaluating a settlement under Bankruptcy Rule 9019 include: (a) "the probability of success in litigation;" (b) "potential collection struggles;" (c) "the complexity, time and expense involved in litigating the matter;" and (d) whether the proposed compromise is fair and equitable to the debtor, its creditors, and other parties in interests.  *Loudoun Heights*, 2014 WL 2928110, at *9 (citations omitted); *see also TMT*, 390 U.S. at 424; *Three Rivers Wood*, 2001 WL 720620, at *6 (same); *In re Alpha Nat. Res. Inc.*, 544 B.R. at 857; *In re Frye*, 216 B.R. at 174.

44.     Additionally, the Court must determine whether the proposed settlement is in the best interests of the Estate. *Three Rivers Wood*, 2001 WL 720620, at *6 ("a compromise or settlement will most likely gain approval if it is both 'fair and equitable,' as well as representative of the best interests of the estate as a whole") (citations omitted); *Frye*, 216 B.R. at 174 ("In order to approve a compromise, this court must look at various factors and determine whether the compromise is in the best interest of the estate and whether it is fair and equitable."); *In re Energy Coop. Inc.*, 886 F.2d 921, 927 (7th Cir. 1989) ("The benchmark for determining the propriety of a bankruptcy settlement is whether the settlement is in the best interests of the estate.").

45.     The factors that courts consider in determining whether a settlement is in the best interests of a bankruptcy estate are similar to the factors examined to determine whether the settlement is fair and equitable.  *See Parker v. Bullis* (*In re Bullis*), 515 B.R. 284, 288 (Bankr. E.D. Va. 2014) ("The best interests of the estate are met by considering the same factors a court considers in reviewing any proposed settlement: (1) the probability of success on the merits in the litigation; (2) possible difficulties of collecting any judgment which might be obtained; (3) the complexity, expense, and likely duration of any ensuing litigation; and (4) the interests of the creditors, giving proper deference to their reasonable views.") (citations omitted).

46.     Basic to the process of evaluating proposed settlements is "the need to compare the terms of the compromise with the likely rewards of litigation." *TMT*, 390 U.S. at 425. However, "the settlement may be approved even if the court finds it likely that the trustee would ultimately succeed in the litigation." *In re Austin*, 186 B.R. at 400.

47.     When reviewing a proposed settlement, the Court may consider the Trustee's business judgment and the opinions of the other parties to such settlement, and the Court should not substitute its judgment for that of the Trustee. Instead, the Court must determine "whether the settlement falls below the lowest point in the range of reasonableness." *Three Rivers Wood*, 2001 WL 720620, at *6 (citing *Austin*, 186 B.R. at 400).  Where a proposed settlement is not below the lowest point of what is fair and reasonable and represents the best interests of the estate as a whole, the court should approve it pursuant to Bankruptcy Rule 9019. *Id*.

48.     In this case, the Trustee believes that the Settlement is fair, equitable, in the best interests of the Estate, appropriate in the Trustee's business judgment, and easily falls within the reasonable range of outcomes.  As set forth above, the Settlement (as documented in the Settlement Agreement) is the culmination of more than several months of negotiations among the parties, with the Mediator's assistance and direction, and represents a global resolution of the Claims.   The Trustee, in the exercise of her business judgment and in consultation with her professionals and the Mediator, believes that the Settlement (as documented in the Settlement Agreement) is a fair, reasonable, and responsible compromise and resulted in maximum value to the Estate for the reasons that follow.

49.     First, the Settlement (as documented in the Settlement Agreement) is the result of extensive good faith and arms-length negotiations among the Trustee, the Defendants, and the Insurers.  It was aided and directed by the substantial participation and input of the Mediator and

represents a result well above the lowest bound of the range of reasonableness.  It in fact is the
Mediator's Proposal. This Settlement is not collusive and represents a fair compromise of the
disputes.

50.     Assuming this Court approves this Motion and authorizes the Trustee to enter into
the Settlement, the Trustee will receive (i) fourteen million seven hundred fifty thousand dollars
($14,750,000) on or before the Closing Date; and (ii) an additional six million two hundred fifty
thousand dollars ($6,250,000) after the Closing Date (collectively, the "**Settlement Payment
Cash Funds**").  These amounts, which are a sum certain, are potentially greater than any recovery
the Estate would ultimately receive even if the Two Adversary Proceedings proceeded to
judgement and is well above the lowest bound of the range of reasonableness.

51.     Second, both before and during the Mediation, the Trustee conducted due diligence
on the enforcement and ultimate collectability of potential judgments against the Defendants.
With the assistance of the Mediator and her counsel, the Trustee determined, among other things,
that proceeds from the Insurance Policies for a settlement and the payments received from the
Defendants were the best source of payment to compensate the Estate for damages associated with
the Claims.  Significantly, the majority of the Settlement Payment Funds are available to the
Trustee on the Closing Date, allowing the Trustee and her professionals to focus time and effort
on other important matters in this Bankruptcy case, including but not limited to the review, analysis
and resolution of alleged administrative expenses and pre-petition claims.

52.     Third, the consideration in the Settlement Agreement represents a fair and
reasonable compensation to the Estate for the Claims in light of the uncertainty and risk associated
with time-consuming and expensive litigation that could result in an unfavorable outcome.
Specifically, the Trustee preserves additional Estate resources that would have been spent on,

among other things, a two-week trial in the United Lex Adversary Proceeding, prosecuting the Reed Adversary Proceeding, and any associated appeals.  Given the scope and complexity of the United Lex Adversary Proceeding, the Trustee and her counsel had anticipated that the Reed Adversary Proceeding could have been equally time-consuming and complicated. Moreover, in agreeing to the releases provided for in the Settlement Agreement, the Trustee and all Parties contemplated the value of the Claims being released.

53.     Fourth, the Settlement as directed by the Mediator and memorialized in the Settlement Agreement is fair and equitable to the Estate, its creditors, and other parties in interest. The value of the Settlement, which includes the Settlement Payment Cash Funds and the waiver of the ULX Partners Proof of Claims, represents a result well above the lowest bound of the range of reasonableness and does not prejudice other creditors or parties in interest.  To the contrary, the Settlement should allow the Trustee to make a meaningful distribution to creditors.  Most importantly, the Settlement will allow the Estate to proceed towards a more expeditious resolution, rather than prolonged litigation (and potential appeals) in the Two Adversary Cases.

54.     Finally, the Improvident Payment was unilaterally directed by the Mediator as part of the Mediator's Proposal as a material and integral term of the Settlement and as such is in the best interest of the Estate.  Absent approval of the Settlement Agreement, Quinn Emanuel would otherwise seek compensation on an hourly basis by the Estate in an amount that would exceed $3,150,000.  Furthermore, Quinn Emanuel has agreed to limit the amount of the Improvident Payment to the lesser of $3,150,000 or an amount otherwise approved by the Bankruptcy Court As such, the Settlement provides a sum certain to be recovered by the Estate and defers to this Court as to the ultimate allowance of the Improvident Payment to Quinn Emanuel in an amount as determined by this Court but in no instance greater than $3,150,000.

55.     Therefore, for the foregoing reasons, the Trustee respectfully submits that the Settlement satisfies the standards for approval under applicable law and that the Court should therefore approve the Settlement Agreement pursuant to section 105 of the Bankruptcy Code and Bankruptcy Rule 9019.

### B. The Improvident Payment is Permissible Under the Bankruptcy Code

56.     In addition to the Improvident Payment being directed by the Mediator and being a material and integral part of the Settlement, the Trustee further maintains that Quinn is entitled to the Improvident Payment pursuant to section 328(a) of the Bankruptcy Code.   The Improvident Payment meets the standards of section 328(a) ████████████████████████████████████████

█████████████████████████████████████████████████████████████████████████████████

█████████████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

████████████████████████ More specifically, neither Quinn Emanuel nor the Trustee could have anticipated certain developments in this case that required Quinn Emanuel to invest significantly more hours and expenses without any assurance of compensation.   Further, the Improvident Payment was part of the Mediator's Proposal and the Mediator, a sitting bankruptcy judge, would not have proposed anything that was contrary to the provisions of the Bankruptcy Code.

57.     These circumstances satisfy the requirements of Bankruptcy Code Section 328. Courts have recognized that their "power to modify a compensation agreement under § 328 includes the power to increase as well as decrease the agreed-upon compensation." *In re Colorado Mountain Cellars, Inc.*, 139 F.3d 911 (10th Cir. 1998) (citations omitted).   Historically, courts have done so "where the parties did not foresee 'the time, the pressures, or the complexity of [the] case or the phenomenal results achieved.'" *In re Omegas Grp., Inc.*, 195 B.R. 875, 880 (Bankr. W.D. Ky. 1996) (citing *In re Warrior Drilling & Eng'g Co.*, 9 B.R. 841, 847 (Bankr.N.D.Ala.),

modified on other grounds, 18 B.R. 684 (Bankr. D.C. Ala.1981)).  While case law is not abundant,

the legislative history of section 328 specifically confirms that fees may be increased under the

statute. *See* H.R. Rep. No. 595, 95th Cong., 1st Sess. 328-29 ("The Court's power includes the

power to increase as well as decrease the agreed upon compensation.").

58.     Here, there were unique and unpredictable circumstances justifying the

Improvident Payment. ████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████  *See, e.g., In re Home Exp. Inc.*, 213

B.R. 162, 167 (Bankr. N.D. Cal. 1997) (increasing professionals' fees because Debtor's

"managerial vacuum" was not capable of being anticipated); *In re Western Monetary Consultants,*

*Inc.*, 143 B.R. 780, 782 (Bankr. D. Colo. 1992) (awarding additional fees to accountant under

Section 328 where certain necessary documentation was not provided in the correct form).

59.     In awarding an increase in attorney fees' pursuant to section 328(a), courts also

consider several other factors, including but not limited to, whether (1) the results obtained went

beyond reasonable expectations, (2) the attorney assumed great risk in taking on representation of

the case, (3) the attorney persevered where others would have curtailed their efforts, (4) the

attorney's efforts resulted in significant infusion of funds into the debtor's estate, and/or (5) the

litigation was voluminous and complex. *See, e.g., In re Malcon Developers,* 138 B.R. 677, 680-81 (Bankr. N.D. NY 1992); *In re Warrior,* 9 B.R. at 847; *In re Land,* 138 B.R. 66,71 (D. Neb. 1992). Several of these additional factors were met in this case as well, and therefore weigh in favor of the Bankruptcy Court approving the Improvident Payment set forth in the Settlement Agreement. The Trustee, in the exercise of her business judgment, believes, among other things, that Quinn persevered where others would have curtailed their efforts. ████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

████████████████████████████████ Notwithstanding the foregoing, should the Bankruptcy Court approve this Motion, Quinn's substantial efforts will cause significant infusion of funds into the Estate.

60.    Finally, although not a requirement of section 328(a) and not in any way to detract from the authority of this Court, the Trustee, in the exercise of her business judgment, believes the amount of the Improvident Payment to be reasonable given her understanding of the time expended to persevere where others would have not, especially in consideration of the amount to now be recovered by the Estate.[14]

61.    Thus, the Trustee respectfully requests that the Court authorize (a) the Improvident Payment to Quinn Emanuel in an amount of $3.15 million or an amount otherwise determined by this Bankruptcy Court and (b) the Trustee to pay the same as provided for in the Settlement Agreement.

---

[14]   The Trustee anticipates filing declaration(s) at the appropriate time to sufficiently enable the Bankruptcy Court to, among other things, perform its own gatekeeping role in connection with determining the reasonableness of the Improvident Payment.

62.    Judge Phillips' reasoning in approving a global settlement agreement in *In re Toys "R" US, Inc*., et. al., No. 17-34665 ("**TRU**") is instructive here as to certain threshold issues. Specifically, the settlement agreement in TRU included a provision that awarded a substantial contribution payment to counsel of an ad hoc group of creditors.  *See* TRU Dkt No. 4803 ("**TRU Order**"), attached as **Exhibit C**.[15]  In approving the substantial contribution, Judge Phillips found that it was a "material and integral portion" of the TRU settlement agreement and that the settlement was "fair and reasonable and adequately supported by the declarations and exhibits submitted by members of the group which have sufficiently enabled the Court to perform any gatekeeping role it may have in connection with determining the reasonableness" of the substantial contribution payment.  *See* TRU August 7, 2018 Transcript at p. 221, attached as **Exhibit D**. Alternatively, Judge Phillips also held that the payment was authorized pursuant to section 503(b) of the Bankruptcy Code.  *See* TRU August 7, 2018 Transcript at p. 221; TRU Order at 6-7.

63.    Likewise, in this case, payment of the Improvident Payment is a material and integral part of the Settlement Agreement.  As described above, the Improvident Payment was part of the Mediator's Proposal; it is a critical component of the Settlement Agreement.[16]  Further, just like in TRU, the Bankruptcy Court here may exercise its own gatekeeper role of determining whether the Improvident Payment is warranted and reasonable.  Thus, pursuant to section 105 of the Bankruptcy Code and Bankruptcy Rule 9019, the Bankruptcy Court should approve the Settlement Agreement, regardless of whether the Improvident Payment separately qualifies as a

---

[15]   While the Trustee recognizes that a substantial contribution claim is brought under section 503(b) and Quinn is seeking to be paid through the Settlement Agreement under section 328(a), the analysis of approving these extraordinary payments as a material and integral part of a settlement agreement is similar in both cases.

[16]   The Settlement Agreement makes clear that, while the Improvident Payment is a critical component of the Settlement, both the allowance and the amount of the Improvident Payment is left to the discretion of the Bankruptcy Court.  Settlement Agreement at ¶ 3(h).

payment under section 328(a) of the Bankruptcy Code.  But, even if the Bankruptcy Court rejects

this contention, as set forth above, the Improvident Payment should be approved because the

payment also meets the standards set forth in section 328(a).

## CONCLUSION

64.     All Defendants support the approval of the Settlement, and the Trustee, in the

exercise of her business judgment, supports all of the relief sought herein.


**WHEREFORE**, the Trustee respectfully requests that the Court grant the Motion and

thereby (a) approve the Settlement; (b) authorize the effectiveness of the Settlement Agreement

on behalf of the Estate; (c) approve the Contingency Payment and authorize the Trustee to pay the

same; (d) approve the Improvident Payment in an amount to be determined by the Court and

authorize the Trustee to pay the same; and (e) provide such other relief as is just and proper.



DATED:        May 18, 2022                    Respectfully submitted,


                                             */s/ Erika L. Morabito*
                                             Erika L. Morabito (VSB No. 44369)
                                             Brittany J. Nelson (VSB No. 81734)
                                             QUINN EMANUEL URQUHART & SULLIVAN
                                             1300 I Street, N.W., Suite 900
                                             Washington, DC 20005
                                             (202) 538-8334 (telephone)
                                             Email:      erikamorabito@quinnemanuel.com
                                                         brittanynelson@quinnemanuel.com

                                             *Special Counsel to Lynn L. Tavenner, Chapter 7
                                             Trustee*

## <u>CERTIFICATE OF SERVICE</u>

I certify that on this 18th day of May 2022, a true copy of the foregoing Motion was filed under seal pending this Court's ruling on the request by the United Lex Defendants to seal aspects of the 9019 Motion. Thereafter, the foregoing Motion will be served as provided in said ruling.

*/s/ Erika L. Morabito*
Erika L. Morabito