UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF VIRGINIA
Richmond Division

| In re: | Case No. |
|---|---|
| LeClairRyan, PLLC,[1] | 19-34574-KRH |
| Debtor. | Chapter 7 |

### TRUSTEE'S SUPPLEMENT TO APPLICATION TO RETAIN AND EMPLOY QUINN EMANUEL URQUHART & SULLIVAN, LLP AS SPECIAL COUNSEL

Lynn L. Tavenner, Trustee, and not individually but solely in her capacity as the Chapter 7 trustee (in such capacity, the "**Chapter 7 Trustee**" and/or the "**Trustee**") of the bankruptcy estate (the "**Estate**") of LeClairRyan PLLC ("**LeClairRyan**" or the "**Debtor**"), in the above-referenced Chapter 7 case (the "**Case**") hereby submits this supplement **("Supplemental Application**") pursuant to 11 U.S.C. § 327 and § 330 and Rule 2014 of the Federal Rules of Bankruptcy Procedure, for authorization to additionally employ Quinn Emanuel Urquhart & Sullivan, LLP ("**Quinn Emanuel**"), as special counsel for supplemental representation retroactive to July 11, 2022.[2] For the avoidance of doubt, unless specifically noted herein, nothing in this Supplemental Application modifies the Quinn Retention Application and/or the Quinn Retention Order. In support of this Supplemental Application, the Trustee hereby states the following:

---

[1] The principal address of the Debtor as of the petition date was 4405 Cox Road, Glen Allen, Virginia 23060, and the last four digits of the Debtor's federal tax identification number are 2451.

[2] On July 11, 2022, the UST (as hereafter defined) filed its notice of appeal in this case at ECF No. 1480.

Paula S. Beran, Esquire (Va. Bar No. 34679)
Tavenner & Beran, PLC
20 North Eighth Street, Second Floor
Richmond, Virginia 23219
Telephone: (804) 783-8300
Telecopy: (804) 783-0178

*Counsel for Lynn L. Tavenner, Chapter 7 Trustee*

## Jurisdiction

1. The United States Bankruptcy Court for the Eastern District of Virginia (the "**Court**") has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Standing Order of Reference from the United States District Court for the Eastern District of Virginia*, dated August 15, 1984.

2. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).

3. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

## Background

4. On September 3, 2019 (the "**Petition Date**"), the Debtor filed for relief under Chapter 11 of Title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (the "**Bankruptcy Code**"). Pursuant to sections 1007 and 1108 of the Bankruptcy Code, the Debtor was operating its business as a debtor-in-possession.

5. On September 12, 2019, the Office of United States Trustee (the "**UST**") filed its *Motion to Convert Case to Chapter 7* [ECF No. 61] (the "**Motion to Convert**") and notice thereof. At a hearing on September 26, 2019, the Court denied the Motion to Convert. However, per an agreement between the Debtor, the United States Trustee, and ABL Alliance, LLLP (the "**Lender**") as stated in the *Order on Motion to Convert Case to Chapter 7* [ECF No. 140] the Debtor's Case was converted to a case under Chapter 7 of the Bankruptcy Code on October 4, 2019.

6. Upon conversion, Lynn L. Tavenner was appointed interim trustee, and no trustee having been elected at the meeting of creditors, she continues to serve as trustee.

7. On October 4, 2019, the Trustee filed her Trustee's Application to Employ Tavenner & Beran, PLC as Counsel for the Trustee (the "**Tavenner & Beran Employment Application**") [ECF No. 142]. The Tavenner & Beran Employment Application was approved

2

by this Court's Order Granting Application to Employ Tavenner & Beran, PLC as Trustee's Counsel (the "**Tavenner & Beran Employment Order**") [ECF No. 152]. Since said time, Tavenner & Beran, PLC ("**Tavenner & Beran**") has served as the Trustee's general counsel in this Case.

### The Need for Additional Special Counsel

8.      As the Trustee has previously represented to the Court, the Trustee determined that she needed the advice and guidance of experienced legal counsel to carry out her duties under the Bankruptcy Code, specifically to investigate and pursue certain litigation claims. The Trustee believed (and continues to believe) that these potential litigation claims may be of substantial value but required the assistance of counsel to assist in her investigation, evaluation, and, if necessary, pursuit of such claims.

9.      Accordingly, on January 30, 2020, the Trustee filed an application to employ the law firm of Foley & Lardner LLP ("**Foley**") as special counsel to investigate and pursue potential claims, which the Court approved on February 10, 2020, retroactive to January 30, 2020 [ECF Nos. 300, 342]. Beginning January 30, 2020, Ms. Erika L. Morabito, on behalf of Foley, served as the lead special counsel to the Trustee. In addition, Ms. Brittany J. Nelson, also on behalf of Foley, represented the Trustee.

10.     On May 18, 2021, Ms. Morabito and Ms. Nelson joined Quinn Emanuel. After being informed of Ms. Morabito and Ms. Nelson's relocation from Foley to Quinn Emanuel, the Trustee conducted due diligence with respect to the Estate's ongoing special litigation needs and, in the exercise of her business judgment and consistent with her duties selected, subject to Court approval, Quinn Emanuel to represent her as special counsel going forward in this Case on the vast majority of unresolved matters based on its considerable experience in insolvency, bankruptcy,

3

and litigation matters, as well as its considerable experience in internal investigations. As such, on June 7, 2021, the Trustee filed *Trustee's Application to Retain and Employ Quinn Emanuel Urquhart & Sullivan, LLP as Special Counsel* [ECF No. 908] (the "**Quinn Retention Application**"). On June 28, 2021, the Court entered its *Order Authorizing the Retention and Employment of Quinn Emanuel Urquhart & Sullivan, LLP as Special Counsel* [ECF No. 937] (the "**Quinn Retention Order**"), retroactive to May 18, 2021. Attached to the Quinn Retention Application was the Verified Statement of Erika L. Morabito of Quinn Emanuel pursuant to Fed. R. Bankr. P. 2014(a) (the "**Morabito Statement**"), which Morabito Statement is incorporated herein as if restated in full.

11. To date, in connection with the Trustee's retention and assistance of special counsel, the Estate has recovered in excess of $19,000,000.00.

12. In addition, with the significant assistance of Quinn Emmanuel, after mediating for more than two and a half months, litigating for over a year and half, and engaging in hard fought, arms-length negotiations with multiple parties, aided in large part by a substantial amount of hours (more than 100) expended by the judicial mediator (the "**Judicial Mediator**") in this Case (who happens to be the Chief Bankruptcy Judge in this District), the Trustee, all of the defendants in two separate adversary proceedings, and certain insurers reached a global, comprehensive $21,000,000 agreement (the "**Judicially Mediated Global Settlement**"), that is a fair and reasonable compromise of the claims and causes of action asserted by the Trustee in those two separate adversary proceedings. The Judicially Mediated Global Settlement was the result of a mediator's proposal that was to either be accepted or rejected in total. The Trustee in the exercise of her business judgment determined that acceptance was in the best interest of the Estate because, among other things, this settlement avoids lengthy, complex, and expensive litigation of a myriad disputed

4

issues among these parties, and provides for a significant amount of money that likely could provide for a meaningful distribution to unsecured creditors.

13. As such, the Trustee sought this Court's approval of the Judicially Mediated Global Settlement by filing *Trustee's Motion and Memorandum of Law for Entry of an Order (I) Approving (A) Judicially Mediated Settlement and (B) Compensation to Counsel Including an Improvident Payment under Section 328(a); and (II) Granting Related Relief* [ECF No. 1328] (the "**Judicially Mediated Settlement Motion**").

14. Prior to the filing of the Judicially Mediated Settlement Motion, upon hearing of the salient terms relayed by the parties in open Court, the UST expressed concerns to the Trustee with respect to the Judicially Mediated Global Settlement, which the Trustee immediately tried to address, to no avail. Ultimately, the UST propounded discovery upon the Trustee [ECF 1335]. Finding herself in the precarious position at odds with the UST (a position she has never experienced in her (a) 25 years of serving as a Chapter 7 Trustee and (b) over 30 years as a member of this Court's bankruptcy community), the Trustee sought and received assistance from the Judicial Mediator in an effort to address the UST's issues. Through this process the Trustee addressed certain concerns articulated by the UST, provided all of the information that had been requested by the UST, answered all questions posed by UST, and learned that no additional documents or other information was needed from the Trustee. At the conclusion of such process, the Trustee understood that, while the UST would have preferred a different structure for the settlement embodied in the Judicially Mediated Settlement Motion, it recognized the unique circumstances that resulted in the same. Nevertheless, the UST persisted with its objection [ECF Nos. 1333 and 1370] (the "**US Trustee Objection**").

15. At the hearing on the Judicially Mediated Settlement Motion on June 8, 2022, after (a) receiving and reviewing extensive evidence from the Trustee and (b) hearing respective arguments of counsel, this Court took the matter under advisement. On June 28, 2022, this Court approved the Judicially Mediated Global Settlement by entering *Order Granting Motion and Memorandum of Law for Entry of an Order (I) Approving (A) Judicially Mediated Settlement and (B) Compensation to Counsel Including an Improvident Payment Under Section 328(a); and (II) Granting Related Relief* [ECF No. 1453], and issuing an accompanying *Memorandum Opinion* [ECF No. 1452] (collectively, the "**Judicially Mediated Settlement Ruling**").

16. Upon receipt of the Judicially Mediated Settlement Ruling, recognizing that the Estate was now poised to receive additional substantial sums and in a position to significantly reduce expenses, the Trustee focused upon estate administrative items and a path forward to address claims including but not limited to the most immediate potential administrative claims of Iron Mountain. The Trustee also reached out to the Acting Assistant United States Trustee for Region 4 to thank him for his professionalism and that of his Richmond office in connection with a difficult task that she understood the UST program believed was in the best interest of the bankruptcy system. Upon receipt of a very kind response, acknowledging the great result for the Estate, the Trustee progressed forward with the belief that the UST was satisfied with the Judicially Mediated Settlement Ruling and the added benefit that the UST believed its program had contributed to the process.

17. As a result, the Trustee was surprised when the UST appealed the Judicially Mediated Settlement Ruling by filing a Notice of Appeal on the docket in this Case at ECF No. 1480 on July 11, 2022, thereby initiating Civil Action No. 3:22cv328 (the "**Judicially Mediated Global Settlement Appeal**").

18.     The Trustee immediately recognized and was concerned (and now creditors have expressed similar concerns) about the negative impact on the Estate and potential distributions to creditors resulting from the UST's Judicially Mediated Global Settlement Appeal. As such, the Trustee has attempted on numerous occasions to explain the concerns with supporting facts to the UST with the hope that, once recognizing the significance of the potential impact compared with little, if any, upside benefit to its program, the UST would reconsider its path forward. To date, the UST has not appeared interested in receiving any such information about the impact on case administration. And it has not altered its path forward. Thus, the Trustee has no alternative but to expend the Estate's resources to defend the Judicially Mediated Global Settlement Appeal. After all, it involves a $21,000,000 settlement that all parties in interest who have verbalized an opinion maintain is, at a minimum, a great result for the Estate and which the Trustee maintains will likely yield sufficient funds to make a meaningful distribution to general unsecured creditors.

19.     On July 14, 2022, in a bench ruling (the "**Oral Seal Ruling**"), this Court indicated that it would grant as modified a *Motion to Seal Settlement Agreement and Related Documents, Information, and Hearings* [ECF. No. 1325] and *Supplement to Their Previously-Filed Motion to Seal Settlement Agreement and Related Documents, Information, and Hearings* [ECF No. 1479] filed by the ULX Partners, LLC, UnitedLex Corporation, and ULX Manager, LLC. In connection with the same, this Court indicated that it would write an opinion for the benefit of the District Court if any party intended to appeal. Without providing this Court the opportunity to write that opinion, before entry of any order by this Court, and with no professional courtesy notice to the Trustee, the UST filed a premature notice of appeal of the Court's Oral Seal Ruling, thereby initiating Civil Action No. 3:22cv515 (the "**Premature Seal Appeal**"). As such, the Trustee also

will have to expend additional resources to ensure that the Estate is protected in connection with the Premature Seal Appeal.

20. Pursuant to the Quinn Retention Order as found in the engagement letter attached to the Quinn Retention Application,

> In the event that the result of any Claim at the trial level is appealed, QEU&S would be pleased to represent the Trustee in such appeal on mutually agreeable terms, subject to Court approval, if the Trustee believes it would be in the best interest of the Estate. We understand the Trustee will make such determination depending on the facts and circumstances of each Claim, including the amount involved and cost of such appeal.

Accordingly, Quinn Emanuel is not retained to represent the Estate in connection with any appeal.

21. After (a) conducting extensive due diligence including but not limited to research on numerous court dockets of billing rates and potential hours to be exerted on known appeals, (b) communicating with five law firms about rates and estimated costs, and (c) considering that a component of the Judicially Mediated Global Settlement addresses a fee to Quinn Emanuel, the Trustee determined in the exercise of her business judgement that it was in the Estate's best interest to retain the firm of Cozen O'Connor to assist the Estate in the Judicially Mediated Global Settlement Appeal.[3]

## Scope of Services to be Provided

22. The Trustee contemplates utilizing Cozen O'Connor on an hourly basis at agreed rates in connection with the Judicially Mediated Global Settlement Appeal.[4] However, there is a possibility that the Trustee ultimately may determine it would be in the best interest of the Estate

---

[3] As such, simultaneously herewith, the Trustee is filing *Trustee's Application to Retain and Employ Cozen O'Connor as Special Counsel* to address appeal items.

[4] At the time of filing this Application, the Trustee anticipates, based upon information currently known, that the Estate will primarily utilize Tavenner & Beran in connection with the Estate's involvement in the Premature Seal Appeal given Tavenner & Beran's (a) involvement in the underlying specific issues to date, (b) intimate knowledge of the Trustee's administration of this Estate, and (c) extensive knowledge and experience representing Chapter 7 trustees for over 20 years.

to also utilize Cozen O'Connor in connection with other appellate and related matters, including the Premature Seal Appeal. As such, the Trustee is also seeking authority to utilize Cozen O'Connor on an hourly basis at agreed to rates in connection with appellate and related matters.

23. To be clear, services provided to date by Quinn Emanuel have been invaluable to the Estate, and Quinn Emanuel continues to represent the Estate in connection with ongoing matters encompassed by the Quinn Retention Application and Quinn Retention Order. And notwithstanding the proposed retention of Cozen O'Connor, the Trustee seeks authority herein to utilize Quinn Emanuel in connection with nuances related to the impacts of the UST appeals on the two pending Adversary Proceedings Numbers 20-03142 and 21-03095-KRH as well as to provide information and support to Cozen O'Connor as requested by the Trustee given Quinn Emanuel's extensive knowledge of the facts and law that likely will be part of the Judicially Mediated Global Settlement Appeal ("**Supplemental Representation**"). This type of representation was contemplated under the initial Quinn Retention Application, and this Court's Quinn Retention Order provides: "In the event that the result of any Claim at the trial level is appealed, the Trustee will determine depending on the facts and circumstances of each Claim whether to continue utilizing Quinn Emanuel, subject to further Court approval."

24. Tavenner & Beran, Quinn Emanuel, and Cozen O'Connor understand the necessity to, and have agreed to, coordinate with each other and the Trustee to minimize duplication of efforts and maximize value for the benefit of the Estate.

**Retention and Compensation of Quinn Emanuel Under Sections 327 and 330**

25. The Trustee seeks to retain Quinn Emanuel for the Supplemental Representation aspect pursuant to § 327 of the Bankruptcy Code. In connection with the Supplemental Representation, Quinn Emanuel shall be compensated its standard hourly rates, subject to a ten (10) percent discount. These rates are reflected on this Court's docket at ECF No. 1498. Quinn Emanuel

9

will bill all related time for the Supplemental Representation to a new internal matter number. In connection with the forgoing, Quinn Emanuel is to receive a retainer in the amount of $100,000.00, which shall be held for application pending further order of the Court.

26. Should the District Court uphold the Judicially Mediated Settlement Ruling, from the date of entry of a final order, Quinn Emanuel shall no longer be compensated on an hourly basis for Supplemental Representation matters and such services provided thereafter shall be in connection with the Contingency Fee delineated in the Quinn Retention Order as found in the engagement letter attached to the Quinn Retention Application (the "**Quinn Engagement Letter**"), except as modified hereafter.  Specifically, of the amount received by the Estate at Closing,[5] Quinn Emanuel shall be entitled to receive $6,247,500, which represents 35% of the Total Settlement Payment less the Improvident Payment.[6]   From the Second Defendants' Payment received by the Estate, Quinn Emanuel shall be entitled to receive 50% of any total allowed Improvident Payment.[7]  From the Third Defendants' Payment received by the Estate, Quinn Emanuel shall be entitled to receive the remaining 50% of any allowed Improvident Payment, less thirty-five percent of all Costs and Expenses (with "**Cost and Expenses**" being costs and expenses paid by the Estate (and/or by Quinn Emanuel on behalf of the Estate) pursuant to, and consistent with those costs and expenses described and/or set forth in the Quinn Engagement Letter) . Notwithstanding the foregoing or anything in the Quinn Engagement Letter to the contrary, any amounts paid to Cozen O'Connor shall not be included as Costs and Expenses.  Amounts paid to

---

[5] All terms defined in paragraph 26 herein that are not otherwise defined in this Supplemental Application shall have the meaning prescribed in the Judicially Mediated Settlement Motion.

[6] For clarification, pursuant to the Judicially Mediated Global Settlement, the Total Settlement Payment less the Improvident Payment is an amount of $17,850,000.

[7] If the Judicially Mediated Settlement Ruling is upheld, 50% of the total amount of the Improvident Payment will be equal to $1,575,000.

Quinn Emanuel on an hourly basis (solely in connection with the Supplemental Representation), however, shall be included as Costs and Expenses to be deducted from the amounts due and owing to Quinn Emanuel from the Third Defendants' Payment, as described herein. Should the Estate ultimately not receive at least $17,850,000 from the Defendants pursuant to the Judicially Mediated Global Settlement *and* Quinn Emanuel receives more than 35% of the Net Amount (with Net Amount being the amount paid to the Estate by the Defendants less Costs and Expenses), Quinn Emanuel shall disgorge any amount it received in excess of 35% of the Net Amount.

27. The legal authority and arguments contained in the Quinn Retention Application are incorporated herein.

**Best Interests of the Estate**

28. The employment of Quinn Emanuel by the Trustee for the Supplemental Representation is in the best interest of the Estate.

**WHEREFORE**, Lynn L. Tavenner, Trustee, hereby requests that the Court enter an order, substantially in the form attached hereto as Exhibit 1 approving the supplemental employment of Quinn Emanuel as set forth herein, and to award any further relief the Court deems proper.

Respectfully submitted,

Dated: August 2, 2022                               **Lynn L. Tavenner, Chapter 7 Trustee**
        Richmond, Virginia

                                                     /s/    *Paula S. Beran*
                                                  Paula S. Beran, Esquire (VSB No. 34679)
                                                  PBeran@TB-LawFirm.com
                                                  Tavenner & Beran, PLC 20 North 8th Street
                                                  Richmond, Virginia 23219
                                                  Telephone: (804) 783-8300
                                                  Telecopier: (804) 783-0178

                                                  *Counsel for Lynn L. Tavenner, Chapter 7 Trustee*

**CERTIFICATE OF SERVICE**

I hereby certify that on this 2nd day of August 2022, a true copy of the foregoing Trustee's Supplemental Application was sent by electronic delivery to:

Kathryn R. Montgomery, Esquire
Shannon F. Pecoraro, Esquire
Office of the United States Trustee
701 East Broad Street, Suite 4304
Richmond, Virginia 23219

And to all other parties who receive ECF notification in this Case.

/s/ *Paula S. Beran*
Paula S. Beran, Esquire
*Counsel for Lynn L. Tavenner, Chapter 7 Trustee*

# Exhibit 1

Paula S. Beran, Esquire (Va. Bar No. 34679)
Tavenner & Beran, PLC
20 North Eighth Street, Second Floor
Richmond, Virginia 23219
Telephone: (804) 783-8300
Telecopy: (804) 783-0178

*Counsel for Lynn L. Tavenner, Chapter 7 Trustee*

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF VIRGINIA
Richmond Division

| In re: | Case No. |
|---|---|
|     LeClairRyan, PLLC,[8] | 19-34574-KRH |
|     Debtor | Chapter 7 |

## ORDER AUTHORIZING THE SUPPLEMENTAL RETENTION AND EMPLOYMENT OF QUINN EMANUEL URQUHART & SULLIVAN, LLP AS SPECIAL COUNSEL

This matter came before the Court upon the Trustee's Supplement to Application to Retain and Employ Quinn Emanuel Urquhart & Sullivan, LLP as Special Counsel (the "**Supplemental Application**"). The Court having reviewed (i) the Supplemental Application and (ii) Verified Statement of Erika Morabito pursuant to Fed. R. Bankr. P. 2014(a) (the "**Morabito Statement**"), a partner in the law firm of Quinn Emanuel Urquhart & Sullivan, LLP ("**Quinn Emanuel**"); and the Court being fully advised in the premises and having determined that the legal and factual

---

[8] The principal address of the Debtor as of the petition date was 4405 Cox Road, Glen Allen, Virginia 23060, and the last four digits of the Debtor's federal tax identification number are 2451.

Paula S. Beran, Esquire (Va. Bar No. 34679)
Tavenner & Beran, PLC
20 North Eighth Street, Second Floor
Richmond, Virginia 23219
Telephone: (804) 783-8300
Telecopy: (804) 783-0178
*Counsel for Lynn L. Tavenner, Chapter 7 Trustee*

bases set forth in the Application and the Morabito Statement establish just cause for the relief granted herein;

THE COURT HEREBY FINDS THAT:

A. The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334.

B. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).

C. Notice of the Supplemental Application (and service of the proposed order) was sufficient under the circumstances.

D. The Supplemental Application and the Morabito Statement are in full compliance with all applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, and the Local Rules of this Court.

E. Quin Emanuel does not represent or hold any interest adverse to the Debtor or to the Estate with respect to the Supplemental Representation.

F. Quinn Emanuel is a "disinterested person," as defined in § 101(14) of the Bankruptcy Code.

G. Quinn Emanuel does not represent or hold any interest adverse to the Debtor or to the Estate with respect to matters to the Supplemental Representation.

H. The retention and employment of Quinn Emanuel in accordance with the Supplemental Application and this Order is in the best interest of the Estate.

IT IS HEREBY ORDERED THAT:

1. The Supplemental Application is hereby APPROVED.

2. Capitalized terms not otherwise defined herein shall have the meanings given to them in the Supplemental Application.

3. Unless specifically modified herein, the Quinn Retention Order remains in full force and effect.

4. Pursuant to § 327(a) and (e) of the Bankruptcy Code, the Trustee is authorized to employ Quinn Emanuel, on an hourly basis at agreed to rates, including reimbursement of reasonable related costs and expenses, in connection with the Supplemental Representation.

5. Pursuant to § 327 of the Bankruptcy Code and the Supplemental Application, the Trustee is authorized to retain and employ Quinn Emanuel as special counsel for the Supplemental Representation retroactive to July 11, 2022.

6. The Trustee is authorized to provide to Quinn Emanuel a retainer in the amount of $100,000, which shall be held for application pending further order of the Court.

7. Approval of Quinn Emanuel's fees for work done in connection with the Supplemental Representation shall be subject to further order of the Court.

8. Should the District Court uphold the Judicially Mediated Settlement Ruling, from the date of entry of a final order, Quinn Emanuel shall no longer be compensated on an hourly basis for Supplemental Representation matters and such services provided thereafter shall be in connection with the Contingency Fee delineated in the Quinn Retention Order as found in the engagement letter attached to the Quinn Retention Application (the "**Quinn Engagement Letter**"), except as modified hereafter. Specifically, of the amount received by the Estate at Closing, Quinn Emanuel shall be entitled to receive $6,247,500, which represents 35% of the Total Settlement Payment less the Improvident Payment. From the Second Defendants' Payment received by the Estate, Quinn Emanuel shall be entitled to receive 50% of any total allowed Improvident Payment. From the Third Defendants' Payment received by the Estate, Quinn Emanuel shall be entitled to receive the remaining 50% of any allowed Improvident Payment,

less thirty-five percent of all Costs and Expenses (with "**Cost and Expenses**" being costs and expenses paid by the Estate (and/or by Quinn Emanuel on behalf of the Estate) pursuant to, and consistent with those costs and expenses described and/or set forth in the Quinn Engagement Letter). Notwithstanding the foregoing or anything in the Quinn Engagement Letter to the contrary, any amounts paid to Cozen O'Connor shall not be included as Costs and Expenses. Amounts paid to Quinn Emanuel on an hourly basis (solely in connection with the Supplemental Representation), however, shall be included as Costs and Expenses to be deducted from the amounts due and owing to Quinn Emanuel from the Third Defendants' Payment, as described herein. Should the Estate ultimately not receive at least $17,850,000 from the Defendants pursuant to the Judicially Mediated Global Settlement *and* Quinn Emanuel receives more than 35% of the Net Amount (with "**Net Amount**" being the amount paid to the Estate by the Defendants less Costs and Expenses), Quinn Emanuel shall disgorge any amount it received in excess of 35% of the Net Amount.

9. As stated in the Quinn Retention Order at ¶ 8, Foley's rights to compensation for its prior work are reserved pending further order of this Court. The payment of the amounts to Quinn Emanuel set forth in this Order shall not limit, preclude, or impact in any way Foley's right to seek recovery from Quinn Emanuel by providing requisite notice of its fee application at the appropriate time. Moreover, nothing herein shall act as a bar for the Trustee, Quinn Emanuel, or the UST to oppose any request by Foley for fees related to this Supplemental Application or any other fees paid (or sought to be paid) to Foley either by Quinn Emanuel or the Estate during the pendency of this Case. Further, no rights regarding the apportionment of any professional fees in this case, are waived by Foley, Quinn Emanuel, or the Trustee, and all rights are expressly reserved.

      10.      This Court shall retain exclusive jurisdiction over the Supplemental Application, as well as all matters related thereto.

Entered: _____

                                    UNITED STATES BANKRUPTCY JUDGE

I ask for this:

/s/
Paula S. Beran, Esquire (VSB No. 34679)
Tavenner & Beran, PLC
20 North 8th Street, Second Floor
Richmond, Virginia 23219
Telephone: (804) 783-8300
Facsimile: (804) 783-0178

    *Counsel for Lynn L. Tavenner, Chapter 7 Trustee*

Seen and not objected to:

Kathryn R. Montgomery, Esquire
Shannon F. Pecoraro, Esquire
Office of the United States Trustee
701 East Broad Street, Suite 4304
Richmond, Virginia 23219
(804) 771-8004

    *Office of the United States Trustee*

## **CERTIFICATION**

    I hereby certify under Local Rule 9022-1 that the foregoing proposed Order was served on all requisite parties and has been endorsed by all necessary parties.

                                      /s/
                                      Paula S. Beran, Esquire