**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF VIRGINIA**
**Richmond Division**

| | |
|---|---|
| In re:<br><br>    LeClairRyan, PLLC,[1]<br><br>    Debtor | Case No. 19-34574-KRH<br><br>Chapter 7 |

# DECLARATION OF LYNN L. TAVENNER, TRUSTEE

I, Lynn L. Tavenner, Trustee, not individually but solely in my capacity as the Chapter 7 trustee (in such capacity, the "**Chapter 7 Trustee**" and/or the "**Trustee**") of the bankruptcy estate (the "**Estate**") of LeClairRyan PLLC ("**LeClairRyan**" and/or the "**Debtor**"), in the above-referenced Chapter 7 case (the "**Case**"), pursuant to 28 U.S.C. § 1746, hereby declare as follows under penalty of perjury to the best of my knowledge, information, and belief:

1. I am the duly appointed Chapter 7 Trustee in the LeClairRyan Case.

2. I submit this declaration in support of the (1) *Motion for Approval of Compromise and Settlement and Memorandum of Law (Iron Mountain)* ("**9019 Motion**"); (2) *Trustee's Application to Retain and Employ Cozen O'Connor as Special Counsel* (the "**Cozen O'Connor Employment Application**"); (3) *Trustee's Supplement to Application to Retain and Employ Quinn Emanuel Urquhart & Sullivan, LLP as Special Counsel* (the "**Quinn Emanuel Supplemental Employment Application**," together with the Cozen O'Connor Employment

---

[1] The principal address of the Debtor as of the petition date was 4405 Cox Road, Glen Allen, Virginia 23060, and the last four digits of the Debtor's federal tax identification number are 2451.
Paula S. Beran, Esquire (Va. Bar No. 34679)
Tavenner & Beran, PLC
20 North Eighth Street, Second Floor
Richmond, Virginia 23219
Telephone: (804) 783-8300
Telecopy: (804) 783-0178

*Counsel for Lynn L. Tavenner, Chapter 7 Trustee*

Application, the "**Applications**")[2]; (4) Pre-Trial Conference in Adversary Proceeding No. 21-03062 (Curran); and (5) Case Status and Report pursuant to Local Rule 2015-(a)-(1)(A).

3. The statements in this Declaration are, except where specifically noted, based on my personal knowledge on information that I have obtained in connection with my role as the Trustee. If I were called upon to testify, I could and would competently testify to the facts set forth herein on that basis.

4. As a result of the entry by the United States District Court of the Eastern District of Virginia on August 8, 2022 of various orders (the "**Dismissal Orders**") dismissing the Judicially Mediated Global Settlement Appeal and the Premature Seal Appeal, the concerns I articulated at paragraph 8 of my declaration found on this Court's docket at ECF No 1485 have been alleviated. As such, I maintain, in the exercise of my business judgment, that it is in the Estate's best interest to move forward with the Iron Mountain settlement referenced in the 9019 Motion.

5. As my counsel previously reported to this Court, I had composed a detailed declaration in support of the Applications. As a result of the entry of the Dismissal Orders, the full extent of relief originally requested in the Applications is no longer necessary. Accordingly, I collaborated with my counsel, proposed counsel, and the UST to obtain mutually agreeable terms for the modified relief I now request as provided in the proposed orders attached hereto as Exhibits A and B. I am sincerely grateful to my counsel, proposed counsel, and members of the UST for their professionalism which fostered a result that I truly believe is in the Estate's best interest. I appreciate that this Court is already aware of many of the facts that support the need

---

[2] Terms not otherwise defined herein shall have the meaning prescribed in the Applications.

for the modified relief. Yet, in an effort to provide a thorough record for all parties in interest I provide certain facts again herein.

6. As I have represented to the Court, I previously determined that I needed the advice and guidance of experienced legal counsel to carry out my duties under the Bankruptcy Code, specifically to investigate and pursue certain litigation claims. I believed (and continue to believe) that these potential litigation claims may be of substantial value but required the assistance of counsel to assist in my investigation, evaluation, and, if necessary, pursuit of such claims.

7. Accordingly, on January 30, 2020, I filed an application to employ the law firm of Foley & Lardner LLP ("**Foley**") as special counsel to investigate and pursue potential claims, which the Court approved on February 10, 2020, retroactive to January 30, 2020. Beginning January 30, 2020, Ms. Erika L. Morabito, on behalf of Foley, served as my lead special counsel. In addition, Ms. Brittany J. Nelson, also on behalf of Foley, represented the Estate.

8. On May 18, 2021, Ms. Morabito and Ms. Nelson joined Quinn Emanuel Urquhart & Sullivan, LLP ("**Quinn Emanuel**"). After being informed of Ms. Morabito and Ms. Nelson's relocation from Foley to Quinn Emanuel, I conducted due diligence with respect to the Estate's ongoing special litigation needs and, in the exercise of my business judgment and consistent with my duties, selected, subject to Court approval, Quinn Emanuel to represent me as special counsel going forward in this Case on the vast majority of unresolved matters based on its considerable experience in insolvency, bankruptcy, and litigation matters, as well as its considerable experience in internal investigations. As such, on June 7, 2021, I filed *Trustee's Application to Retain and Employ Quinn Emanuel Urquhart & Sullivan, LLP as Special Counsel* (the "**Quinn Retention Application**"). On June 28, 2021, the Court entered its *Order Authorizing the Retention and*

3

*Employment of Quinn Emanuel Urquhart & Sullivan, LLP as Special Counsel* (the "**Quinn Retention Order**"), retroactive to May 18, 2021.

9. To date, in connection with my retention and assistance of special counsel, the Estate has recovered in excess of $19,000,000.00; a result that I am extremely proud of, in that it paves the path for a significant recovery to creditors in a case that many thought in the initial stages would be administratively insolvent.

10. In addition, with the significant assistance of Quinn Emanuel, after mediating for more than two and a half months, litigating for over a year and half, and engaging in hard fought, arms-length negotiations with multiple parties, aided in large part by a substantial amount of hours expended by the judicial mediator (the "**Judicial Mediator**") in this Case, I, all of the defendants in two separate adversary proceedings, and certain insurers reached a global, comprehensive $21,000,000 agreement (the "**Judicially Mediated Global Settlement**"), that is a fair and reasonable compromise of the claims and causes of action asserted by me in those two separate adversary proceedings. The Judicially Mediated Global Settlement was the result of a mediator's proposal (the "**Mediator's Proposal**") that was to either be accepted or rejected in total. I in the exercise of my business judgment determined that acceptance was in the Estate's best interest because, among other things, this settlement avoids lengthy, complex, and expensive litigation of a myriad disputed issues among these parties, and provides for a significant amount of money that likely could provide for a meaningful distribution to unsecured creditors. And in every case that I administer as a Chapter 7 trustee, distributions to pre-petition creditors are a primary goal and focus for me. I have never, and will never, administer a case solely for my benefit or the benefit of lawyers.

11. As such, I sought this Court's approval of the Judicially Mediated Global Settlement by filing *Trustee's Motion and Memorandum of Law for Entry of an Order (I) Approving (A) Judicially Mediated Settlement and (B) Compensation to Counsel Including an Improvident Payment under Section 328(a); and (II) Granting Related Relief* (the "**Judicially Mediated Settlement Motion**").

12. Prior to the filing of the Judicially Mediated Settlement Motion, upon hearing of the salient terms relayed by the parties in open Court, the Office of the United States Trustee (the "**UST**" and/or the "**Program**") expressed concerns to me with respect to the Judicially Mediated Global Settlement, which I immediately tried to address. And, candidly, I too was concerned about the appearance of additional sums going to Quinn Emanuel and desired to thoroughly explain the reasons for the same. So, it was important for me to convey to all that what is now commonly referred to as the Improvident Payment was unilaterally directed by the Judicial Mediator as part of his Mediator's Proposal as a material and integral term of the Judicially Mediated Global Settlement. While I was not privy to the exact circumstances the Judicial Mediator considered in unilaterally directing the Improvident Payment as part of the Mediator's Proposal, it was also important for me to fully disclose that, until receiving the Mediator's Proposal, I had never heard mentioned or contemplated the Improvident Payment. I also recognized the import of this Court's gatekeeper role of determining whether the Improvident Payment was warranted and reasonable, and as such ensured that nothing in the agreement documenting the Judicially Mediated Global Settlement negated the same.

13. On June 28, 2022, this Court approved the Judicially Mediated Global Settlement by entering *Order Granting Motion and Memorandum of Law for Entry of an Order (I) Approving (A) Judicially Mediated Settlement and (B) Compensation to Counsel Including an Improvident*

5

*Payment Under Section 328(a); and (II) Granting Related Relief*, and issuing an accompanying *Memorandum Opinion* (collectively, the "**Judicially Mediated Settlement Ruling**").

14. The UST appealed the Judicially Mediated Settlement Ruling on July 11, 2022 (the "**Judicially Mediated Global Settlement Appeal**").

15. I immediately recognized and was concerned (and creditors had expressed similar concerns) about the negative impact on the Estate and potential distributions to creditors resulting from the Judicially Mediated Global Settlement Appeal. I was initially unable to find a solution with the UST. Thus, I had no alternative but to expend the Estate's resources to defend the Judicially Mediated Global Settlement Appeal. After all, it involves a $21,000,000 settlement that all parties in interest who have verbalized an opinion maintain is, at a minimum, a great result for the Estate and which I maintain will likely yield sufficient funds to make a meaningful distribution to general unsecured creditors.

16. On July 14, 2022, in a bench ruling (the "**Oral Seal Ruling**"), this Court indicated that it would grant as modified a *Motion to Seal Settlement Agreement and Related Documents, Information, and Hearings* and *Supplement to Their Previously-Filed Motion to Seal Settlement Agreement and Related Documents, Information, and Hearings* filed by the ULX Partners, LLC, UnitedLex Corporation, and ULX Manager, LLC. In connection with the same, this Court indicated that it would write an opinion for the benefit of the District Court if any party intended to appeal. Thereafter, the UST filed a notice of appeal of the Court's Oral Seal Ruling, thereby initiating Civil Action No. 3:22cv515 (the "**Premature Seal Appeal**"). As such, I also was faced with having to expend additional resources to ensure that the Estate was protected in connection with the Premature Seal Appeal.

17. Pursuant to the Quinn Retention Order as found in the engagement letter attached to the Quinn Retention Application,

> In the event that the result of any Claim at the trial level is appealed, QEU&S would be pleased to represent the Trustee in such appeal on mutually agreeable terms, subject to Court approval, if the Trustee believes it would be in the best interest of the Estate. We understand the Trustee will make such determination depending on the facts and circumstances of each Claim, including the amount involved and cost of such appeal.

Accordingly, Quinn Emanuel was not retained to represent the Estate in connection with any appeal.

18. As such, I immediately conducted extensive due diligence including but not limited to research on numerous court dockets of billing rates and potential hours to be exerted on known appeals and communicated with five law firms about rates and estimated costs of handling an appeal. I personally spent an exuberant amount of time on this diligence and my general counsel spent a significant amount of time. And during this process, I requested that Quinn Emanuel address nuances related to the impacts of the UST appeals on the two pending Adversary Proceedings Numbers 20-03142 and 21-03095-KRH as well as to otherwise protect and preserve value for the Estate (the "**Preservation Services**") until appellate counsel's employment was authorized by this Court.

19. After (a) conducting this extensive due diligence, (b) communicating with those five law firms, and (c) considering that a component of the Judicially Mediated Global Settlement addresses a fee to Quinn Emanuel, I determined in the exercise of my business judgement that it was in the Estate's best interest to retain the firm of Cozen O'Connor to assist the Estate in the Judicially Mediated Global Settlement Appeal as well as to utilize Cozen O'Connor in connection with other related matters, including the Premature Seal Appeal, should I in the exercise of my business judgment determine it is in the Estate's best interest. And notwithstanding the proposed

7

retention of Cozen O'Connor, I also sought authority to utilize Quinn Emanuel in connection with the Supplemental Representation.

20. Before the filing of the Shaw Statement, I spent a significant amount of time with Mr. Shaw to ensure that all potential connections were appropriately vetted and disclosed. (I also provided Mr. Shaw's information to other estate professionals so that they could do the same. Ms. Beran filed an additional supplement to the Tavenner & Beran employment application as did Ms. Morabito with respect to Quinn Emanuel .) Based upon the same and the Shaw Statement, I maintain that Cozen O'Connor represents no interest adverse to the Debtor or to the Debtor's Estate in the matters upon which Cozen O'Connor is to be engaged and also is a "disinterested person" as that term is defined in Section 101(14) of the Bankruptcy Code. Moreover, to the best of my knowledge, Cozen O'Connor has no connection with the Debtor, its creditors, or any other party-in-interest in this Case, their respective attorneys or accountants, the United States Trustee, or any person employed in the Office of the United States Trustee, other than as set forth in the Shaw Statement.

21. I have reviewed the proposed hourly rates of Cozen O'Connor and maintain that they do not exceed the normal and reasonable charges for similar representation and legal services provided by firms of similar reputation, ability, and experience.

22. I respectfully maintain that Cozen O'Connor satisfies all the requirements for employment and compensation as attorneys by me in this Case, and I in the exercise of my business judgment submit that the employment of Cozen O'Connor is in the best interest of the Estate. And as a result of the Dismissal Orders, Cozen O'Connor no longer requires a retainer.

23. Similarly, I in the exercise of my business judgment previously submitted that the employment of Quinn Emanuel for the Supplemental Representation was in the best interest of

8

the Estate given the nuances related to the impacts of the UST appeals on the two pending Adversary Proceedings Numbers 20-03142 and 21-03095-KRH and Quinn Emanuel's extensive knowledge of the facts and law that likely would be part of the Judicially Mediated Global Settlement Appeal. However, the Supplemental Representation is no longer needed given the Dismissal Orders, and the Preservation Services constitute a Non-Contingency Matter for which Quinn Emanuel is entitled pursuant to the Quinn Retention Order to charge its standard hourly rates, subject to a ten (10) percent discount.

24.     While negotiating the terms of the Supplemental Representation, I determined in the exercise of my business judgement that it was in all's best interest to have clarity as to the specific amount that Quinn Emanuel would receive in connection with each payment the Estate collected under the terms of the Judicially Mediated Global Settlement given the Quinn Retention Order did not address the unique nuance of the Estate receiving letters of credit. Specifically, of the amount received by the Estate at Closing, Quinn Emanuel shall be entitled to receive $6,247,500, which represents 35% of the Total Settlement Payment less the Improvident Payment. From the Second Defendants' Payment received by the Estate, Quinn Emanuel shall be entitled to receive 50% of the Improvident Payment or $1,575,000. From the Third Defendants' Payment received by the Estate, Quinn Emanuel shall be entitled to receive the remaining 50% of the Improvident Payment, less thirty-five percent of all Costs and Expenses (with "**Cost and Expenses**" being costs and expenses paid by the Estate (and/or by Quinn Emanuel on behalf of the Estate) pursuant to, and consistent with those costs and expenses described and/or set forth in the Quinn Engagement Letter) . I have further protected the Estate by requiring that, should the Estate ultimately not receive at least $17,850,000 from the Defendants pursuant to the Judicially Mediated Global Settlement *and* Quinn Emanuel receives more than 35% of the Net Amount

(with Net Amount being the amount paid to the Estate by the Defendants less Costs and Expenses), Quinn Emanuel shall disgorge any amount it received in excess of 35% of the Net Amount. And, any amounts paid to Cozen O'Connor shall not be included as Costs and Expenses. Amounts paid to Quinn Emanuel on an hourly basis (solely in connection with the Supplemental Representation), however, shall be included as Costs and Expenses to be deducted from the amounts due and owing to Quinn Emanuel from the Third Defendants' Payment. I in the exercise of my business judgement originally devised this structure as being in the Estate's best interest in that it incentivized Quinn Emanuel to efficiently provide the requisite information and assistance while eliminating the potential for any negative connotation given that a component of the Judicially Mediated Global Settlement addresses a fee to Quinn Emanuel.

25.     In Adversary Proceeding No. 21-03062 (Curran), I am aware of no facts that would necessitate modifying this Court's standard pre-trial order. And, having appeared before this Court in numerous adversary proceedings as, in certain instances, Chapter 7 trustee and, in other instances, counsel representing independent clients, I have found the timelines and structure of the Court's standard pre-trial order to be immensely reasonable while also providing an effective framework for trial preparation.  Furthermore, based on my understanding of the facts underlying the three counts of the complaint at issue in that adversary proceeding, I maintain that the same could be tried in one day assuming counsel efficiently and effectively utilizes this Court's valuable time.  In another adversary proceeding in this Case, this Court set the matter for a one-day trial wherein the complaint contained the same three counts as in Adversary Proceeding No. 21-03062 as well as four additional counts.

26. To the best of my knowledge, information, and belief, I declare under penalty of perjury that the foregoing is true and correct.

**LYNN L. TAVENNER, CHAPTER 7 TRUSTEE**

Dated: August 24, 2022
    Richmond, Virginia

By: */s/ Lynn L. Tavenner*
    Lynn L. Tavenner, Chapter 7 Trustee

Respectfully submitted,

**LYNN L. TAVENNER, CHAPTER 7 TRUSTEE**

Dated: August 24, 2022
    Richmond, Virginia

By: */s/ Paula S. Beran*
Paula S. Beran, Esquire (VSB No. 34679)
PBeran@TB-LawFirm.com
Tavenner & Beran, PLC
20 North 8th Street
Richmond, Virginia 23219
Telephone: (804) 783-8300
    *Counsel for Lynn L. Tavenner, Chapter 7 Trustee*

## CERTIFICATE OF SERVICE

I certify that on this 24th day of August 2022, a true copy of the foregoing Declaration was sent electronically to:

Kathryn R. Montgomery, Esquire
Shannon F. Pecoraro, Esquire
Office of the United States Trustee
701 East Broad Street, Suite 4304
Richmond, Virginia 23219

And all other parties receiving CM/ECF notices in this Case.

*/s/ Paula S. Beran*
Paula S. Beran, Esquire
*Counsel for Lynn L. Tavenner, Chapter 7 Trustee*

EXHIBIT A

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF VIRGINIA
Richmond Division

| In re: | Case No. |
|---|---|
|     LeClairRyan, PLLC,[1] | 19-34574-KRH |
|     Debtor | Chapter 7 |

**ORDER AUTHORIZING THE RETENTION AND EMPLOYMENT
OF COZEN O'CONNOR AS SPECIAL COUNSEL**

This matter came before the Court upon the Trustee's Application to Retain and Employ Cozen O'Connor as Special Counsel (the "**Application**")[ECF 1532]. The Court having reviewed (i) the Application and (ii) Verified Statement of Brian L. Shaw pursuant to Fed. R. Bankr. P. 2014(a) (the "**Shaw Statement**"), a member of the law firm of Cozen O'Connor ("**Cozen O'Connor"**"), attached to the Application as Exhibit 1; and the Court being fully advised in the premises and having determined that the legal and factual bases set forth in the Application and the Shaw Statement establish just cause for the relief granted herein;

THE COURT HEREBY FINDS THAT:

A.    The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334.

B.    This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).

---

[1] The principal address of the Debtor as of the petition date was 4405 Cox Road, Glen Allen, Virginia 23060, and the last four digits of the Debtor's federal tax identification number are 2451.

Paula S. Beran, Esquire (Va. Bar No. 34679)
Tavenner & Beran, PLC
20 North Eighth Street, Second Floor
Richmond, Virginia 23219
Telephone: (804) 783-8300
Telecopy: (804) 783-0178
*Counsel for Lynn L. Tavenner, Chapter 7 Trustee*

1

C. Notice of the Application was sufficient under the circumstances.

D. The Application and the Shaw Statement are in full compliance with all applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, and the Local Rules of this Court.

E. Cozen O'Connor does not represent or hold any interest adverse to the Debtor or to the Estate.

F. Cozen O'Connor is a "disinterested person," as defined in § 101(14) of the Bankruptcy Code.

G. Cozen O'Connor does not represent or hold any interest adverse to the Debtor or to the Estate with respect to matters to which it is being employed.

H. The retention and employment of Cozen O'Connor in accordance with the Application and this Order is in the best interest of the Estate.

IT IS HEREBY ORDERED THAT:

1. The Application is hereby APPROVED as provided herein.

2. Capitalized terms not otherwise defined herein shall have the meanings given to them in the Application.

3. Pursuant to § 327 of the Bankruptcy Code and the Application, the Trustee is authorized to retain and employ Cozen O'Connor as special counsel retroactive to July 28, 2022. Pursuant to § 327(a) and (e) of the Bankruptcy Code, the Trustee is authorized to employ Cozen O'Connor, on an hourly basis at agreed to rates, including reimbursement of reasonable related costs and expenses, in connection with appellate matters including the Judicially Mediated Global Settlement Appeal and related matters.

4. Cozen O'Connor shall not receive any type of retainer.

5. Approval of Cozen O'Connor's fees shall be subject to further order of the Court.

6. This Court shall retain exclusive jurisdiction over the Application as well as all matters related thereto.

Entered: _____

UNITED STATES BANKRUPTCY JUDGE

I ask for this:

*/s/ Paula S. Beran*
Paula S. Beran, Esquire (VSB No. 34679)
Tavenner & Beran, PLC
20 North 8th Street, Second Floor
Richmond, Virginia 23219
Telephone: (804) 783-8300
Facsimile: (804) 783-0178

*Counsel for Lynn L. Tavenner, Chapter 7 Trustee*

Seen and not objected to:

*/s/ Kathryn R. Montgomery*
Kathryn R. Montgomery, Esquire
Shannon F. Pecoraro, Esquire
Office of the United States Trustee
701 East Broad Street, Suite 4304
Richmond, Virginia 23219
(804) 771-8004

*Office of the United States Trustee*

## CERTIFICATION

I hereby certify under Local Rule 9022-1 that the foregoing proposed Order was served on all requisite parties and has been endorsed by all necessary parties.

*/s/* _____
Paula S. Beran, Esquire

EXHIBIT B

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF VIRGINIA
Richmond Division

| | |
|---|---|
| In re:<br><br>　　LeClairRyan, PLLC,[1]<br><br>　　Debtor | Case No.<br>19-34574-KRH<br><br>Chapter 7 |

**ORDER CLARIFYING THE ORDER AUTHORIZING
THE RETENTION AND EMPLOYMENT OF QUINN
EMANUEL URQUHART & SULLIVAN, LLP AS SPECIAL COUNSEL**

This matter came before the Court upon the Trustee's Supplement to Application to Retain and Employ Quinn Emanuel Urquhart & Sullivan, LLP as Special Counsel (the "**Supplemental Application**")[ECF 1533]. The Court having reviewed (i) the Supplemental Application, (ii) the Quinn Retention Application,[2] (iii) Verified Statement (and its supplement) of Erika Morabito pursuant to Fed. R. Bankr. P. 2014(a) (collectively, the **"Morabito Statement"**), a partner in the law firm of Quinn Emanuel Urquhart & Sullivan, LLP ("Quinn Emanuel"), (iv) the Declaration of Lynn L. Tavenner, Chapter 7 Trustee (the "**Tavenner Declaration**"); and the Court having entered the Interim Order Authorizing the Supplemental Retention and Employment of Quinn Emanuel Urquhart & Sullivan, LLP as Special Counsel (the "**Interim Order**") [ECF 1549], and being fully advised of the premise and having determined that the legal and factual basis set forth in the

---

[1] The principal address of the Debtor as of the petition date was 4405 Cox Road, Glen Allen, Virginia 23060, and the last four digits of the Debtor's federal tax identification number are 2451.

[2] Capitalized terms not otherwise defined herein shall have the meanings given to them in the Supplemental Application.

Paula S. Beran, Esquire (Va. Bar No. 34679)
Tavenner & Beran, PLC
20 North Eighth Street, Second Floor
Richmond, Virginia 23219
Telephone: (804) 783-8300
Telecopy: (804) 783-0178
　　*Counsel for Lynn L. Tavenner, Chapter 7 Trustee*

Supplemental Application, the Quinn Retention Application, the Morabito Statement, and the Tavenner Declaration establish just cause for the relief granted herein.

THE COURT HEREBY FINDS THAT:

A. The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334.

B. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).

C. Notice of the Supplemental Application was sufficient under the circumstances.

D. The continued retention and employment of Quinn Emanuel in accordance with this Order is in the best interest of the Estate.

E. As a result of the entry by the United States District Court of the Eastern District of Virginia on August 8, 2022 of various orders dismissing the Judicially Mediated Global Settlement Appeal and the Premature Seal Appeal, the Supplemental Representation is no longer necessary in so far as this Order addresses all necessary items to be made *nunc pro tunc* to July 11, 2022 to the Order Authorizing the Retention and Employment of Quinn Emanuel Urquhart & Sullivan LLP as Special Counsel entered on June 28, 2021 (the "**Quinn Retention Order**") [ECF 937].

F. The work that the Trustee requested in writing for Quinn Emanuel to undertake, as described in paragraph 23 of the Supplemental Application, to protect and preserve value for the Estate while the Trustee conducted extensive due diligence on what was in the Estate's best interest to address the Judicially Mediated Global Settlement Appeal (the "**Preservation Services**") constitutes a Non-Contingency Matter for which Quinn Emanuel is entitled pursuant to the Quinn Retention Order to charge its standard hourly rates, subject to a ten (10) percent discount.

G. This Order shall constitute the final order referenced in the Interim Order. IT IS HEREBY ORDERED THAT:

1. The Quinn Retention Order is clarified as set forth herein *nunc pro tunc* to July 11, 2022, and any other request for the Supplemental Representation is hereby deemed withdrawn.

2. In connection with the Preservation Services provided on July 11, 2022 and continuing through and including August 8, 2022, Quinn Emanuel is entitled pursuant to the Quinn Retention Order to charge the Estate its standard hourly rates, subject to a ten (10) percent discount, and same shall be included as such in any future fee application that may be filed by or on behalf of Quinn Emanuel. Approval of Quinn Emanuel's fees for the Preservation Services shall be subject to further order of the Court after appropriate notice and application which application may be filed on or after September 7, 2022.

3. Except as otherwise set forth herein, beginning on August 9, 2022, Quinn Emanuel shall no longer be compensated on an hourly basis for Preservation Services and any such services provided thereafter shall be in connection with the Contingency Fee delineated in the Quinn Retention Order as found in the engagement letter attached to the Quinn Retention Application (the "**Quinn Engagement Letter**"), except as clarified hereafter.[3] Specifically, of the amount received by the Estate at Closing, Quinn Emanuel shall be entitled to receive $6,247,500, which represents 35% of the Total Settlement Payment less the Improvident Payment.[4] From the Second Defendants' Payment received by the Estate, Quinn Emanuel shall be entitled to receive 50% ($1,575,000) of the total Improvident Payment ($3,150,000)). From the Third Defendants'

---

[3] Notwithstanding anything herein, this Order does not preclude Quinn Emanuel from also seeking approval of its fees and costs on an hourly basis for all time and expenses it incurred performing work related to the Supplemental Application that is not otherwise defined as Preservation Services. This request may include, but is not limited to, preparation and/or review of all pleadings related to the Supplemental Application, negotiations regarding the Supplemental Application, addressing or resolving any formal or informal objections to the Supplemental Application, and preparation for and/or attendance at any hearings conducted by the Court related to the Supplemental Application regardless of the date these services were provided by Quinn Emanuel.

[4] For clarification, pursuant to the Judicially Mediated Global Settlement, the Total Settlement Payment less the Improvident Payment is an amount of $17,850,000.

3

Payment received by the Estate, Quinn Emanuel shall be entitled to receive the remaining 50% of the total Improvident Payment ($1,575,000), less thirty-five percent of all Costs and Expenses (with "**Cost and Expenses**" being costs and expenses paid by the Estate (and/or by Quinn Emanuel on behalf of the Estate) pursuant to, and consistent with, those costs and expenses described and/or set forth in the Quinn Engagement Letter).  Notwithstanding the foregoing or anything in the Quinn Engagement Letter to the contrary, any amounts paid to Cozen O'Connor shall not be included as Costs and Expenses.  Amounts paid to Quinn Emanuel on an hourly basis (solely in connection with the Preservation Services), however, shall be included as Costs and Expenses to be deducted from the amounts due and owing to Quinn Emanuel from the Third Defendants' Payment, as described herein. Should the Estate ultimately not receive at least $17,850,000 from the Defendants pursuant to the Judicially Mediated Global Settlement *and* Quinn Emanuel receives more than 35% of the Net Amount (with "**Net Amount**" being the amount paid to the Estate by the Defendants less Costs and Expenses), Quinn Emanuel shall disgorge any amount it received in excess of 35% of the Net Amount.

4. As stated in the Quinn Retention Order at ¶ 8, Foley's rights to seek compensation for its prior work are reserved pending further order of this Court.  The payment of the amounts to Quinn Emanuel set forth in this Order shall not limit, preclude, or impact in any way Foley's right to seek recovery from Quinn Emanuel by providing requisite notice of its fee application at the appropriate time.  Moreover, nothing herein shall act as a bar for the Trustee, Quinn Emanuel, or the UST to oppose any request by Foley for fees related to this Supplemental Application or any other fees paid (or sought to be paid) to Foley either by Quinn Emanuel or the Estate during the pendency of this Case.  Further, no rights regarding the apportionment of any professional fees

4

in this case, are waived by Foley, Quinn Emanuel, or the Trustee, and all rights are expressly reserved.

5. Unless specifically modified herein, the Quinn Retention Order remains in full force and effect.

6. This Court shall retain exclusive jurisdiction over this Order, as well as all matters related thereto.

Entered: _____

_____
UNITED STATES BANKRUPTCY JUDGE

I ask for this:

*/s/ Paula S. Beran*
Paula S. Beran, Esquire (VSB No. 34679)
Tavenner & Beran, PLC
20 North 8th Street, Second Floor
Richmond, Virginia 23219
Telephone: (804) 783-8300
Facsimile: (804) 783-0178

*Counsel for Lynn L. Tavenner, Chapter 7 Trustee*

Seen and not objected to:

*/s/ Kathryn R. Montgomery*
Kathryn R. Montgomery, Esquire
Shannon F. Pecoraro, Esquire
Office of the United States Trustee
701 East Broad Street, Suite 4304
Richmond, Virginia 23219
(804) 771-8004

*Office of the United States Trustee*

## **CERTIFICATION**

I hereby certify under Local Rule 9022-1 that the foregoing proposed Order was served on all requisite parties and has been endorsed by all necessary parties.

/s/
Paula S. Beran, Esquire