**UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
(Richmond Division)**

| | |
|---|---|
| In re:<br><br>       LeClairRyan, PLLC,[1]<br><br>              Debtor. | Case No. 19-34574-KRG<br><br>Chapter 7 |
| Lynn L. Tavenner, as Chapter 7 Trustee,<br><br>              Plaintiff,<br><br>v.<br><br>ULX Partners, LLC, UnitedLex Corporation,<br>and ULX Manager LLC,<br><br>              Defendants. | Adv. Proc. No. 20-03142 (KRH) |

**TRUSTEE'S MOTION AND MEMORANDUM OF LAW FOR ENTRY OF AN ORDER
(I) APPROVING (A) JUDICIALLY MEDIATED SETTLEMENT AND (B)
COMPENSATION TO COUNSEL INCLUDING AN IMPROVIDENT PAYMENT
UNDER SECTION 328(A); AND (II) GRANTING RELATED RELIEF**

Lynn L. Tavenner, Trustee, not individually, but solely in her capacity as the Chapter 7

trustee (in such capacity, the "**Trustee**") of the bankruptcy estate (the "**Estate**") of LeClairRyan

---

[1] The principal address of the Debtor as of the Petition Date was 4405 Cox Road, Glen Allen, Virginia 23060, and the last four digits of the Debtor's federal tax identification number are 2451.

Erika L. Morabito (VSB No. 44369)
Brittany J. Nelson (VSB No. 81734)
QUINN EMANUEL URQUHART & SULLIVAN LLP
1300 I Street, N.W., Suite 900
Washington, DC 20005
(202) 538-8334 (telephone)
Email:  erikamorabito@quinnemanuel.com
         brittanynelson@quinnemanuel.com

*Special Counsel to Lynn L. Tavenner, Chapter 7 Trustee*

PLLC ("**LeClairRyan**" and/or the "**Debtor**" and/or "**LCR**")), in the above-referenced Chapter 7

case, by counsel, respectfully states as follows in support of this motion (the "**Motion**"):

## PRELIMINARY STATEMENT

1.       After months of intense, hard fought arm's-length negotiations, and with the

significant assistance and critical involvement of a judicial mediator, the Trustee, all of the

defendants in two separate adversary proceedings, and certain insurers, have reached a global,

comprehensive agreement that is a fair and reasonable compromise of the claims and causes of

action asserted by the Trustee in those two separate adversary proceedings.  Among other things,

this settlement agreement avoids the lengthy, complex, and expensive litigation of myriad disputed

issues among these parties, and it is undoubtedly in the best interest of the Estate.

2.       More specifically, this Motion seeks the entry of an order (1) approving the

Settlement (as hereafter defined) by and among the Trustee, on the one hand and ULX Partners,

LLC, ULX Manager LLC, and UnitedLex Corporation (collectively, the "**ULX Defendants**"),

CVC Advisers (India) Private Limited and/or CVC Capital Partners ("**CVC**"), Daniel Reed,

Nicholas Hinton, Josh Rosenfeld, and P. Douglas Benson (collectively, with the ULX Defendants,

the "**Defendants**"), Travelers Casualty and Surety Company of America ("**Travelers**"),

Continental Casualty Company ("**Continental**"), and Columbia Casualty Company ("**Columbia**")

(collectively, Continental and Columbia are referred to as "**CNA**" and Travelers and CNA are

referred to as the "**Insurers**");[2] (2) authorizing the effectiveness of the Settlement Agreement (as

hereafter defined and attached hereto as **Exhibit A**) on behalf of the Estate; (3) approving a

Contingency Payment (as hereafter defined) and authorizing the Trustee to pay the same; and (4)

---

[2]   The Trustee, the Defendants, and the Insurers may be referred to hereinafter collectively as the "**Parties**."

approving the Improvident Payment (as hereafter defined) in an amount to be determined by the Court and authorizing the Trustee to pay the same.

3.      Thus, for the reasons set forth herein, the Trustee respectfully submits that the Settlement satisfies the standards for approval under applicable law and that the Court should therefore approve the Settlement pursuant to section 105 of the Bankruptcy Code and Bankruptcy Rule 9019 and grant other relief requested in this Motion.

## JURISDICTION AND VENUE

4.      The United States Bankruptcy Court for the Eastern District of Virginia has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Standing Order of Reference from the United States District Court for the Eastern District of Virginia*, dated August 15, 1984.

5.      This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).

6.      Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

7.      The bases for the relief requested herein are sections 105(a) and 328(a) of the Bankruptcy Code, Bankruptcy Rule 9019, and Rule 9019-1 of the Local Rules of the United States Bankruptcy Court for the Eastern District of Virginia.

## BACKGROUND

### A. The Bankruptcy Proceeding and Prosecution of Certain Claims

8.      On September 3, 2019 (the "**Petition Date**"), the Debtor filed for relief under Chapter 11 of Title 11 of the United States Code, 11 U.S.C. §§101-1532 (as thereafter amended, the "**Bankruptcy Code**") in the United States Bankruptcy Court for the Eastern District of Virginia, Richmond Division (the "**Bankruptcy Court**").  Pursuant to §§ 1007 and 1108 of the Bankruptcy Code, the Debtor operated as a debtor-in-possession.

9.      Per agreement between the Debtor, the United States Trustee, and ABL Alliance, LLP, the Debtor's Chapter 11 case was converted to a case under Chapter 7 of the Bankruptcy Code on October 4, 2019.  Upon conversion, Lynn L. Tavenner was appointed interim trustee, and no trustee having been elected at the meeting of creditors, she continues to serve as the Trustee.

10.     Consistent with her duties, the Trustee began investigating potential causes of action on behalf of the Estate.  Initially, the Trustee, with the assistance of her counsel, filed a *Motion for an Order Establishing Procedures Regarding the Prosecution of Actions Involving Former Attorneys and Certain Others and Memorandum in Support Thereof* (the "**FAO Procedures Motion**") (Main Dkt No. 457).[3]  The FAO Procedures Motion was approved by Order of this Court (Main Dkt No, 533), as amended/supplemented by additional Orders of this Court (Main Dkt No. 929 and 982) (collectively, the "**FAO Order**").

11.     On October 26, 2020, the Trustee filed an adversary proceeding against ULX Partners, LLC and UnitedLex Corporation, Adversary Proceeding No. 20-03142 (as amended, the "**UnitedLex Adversary Proceeding**").[4]

12.     Thereafter, the Trustee also issued demand letters to more than 200 other potential defendants, including defendants Hinton, Reed, Rosenfeld, Benson, and CVC.  The FAO Order established procedures that, among other things, allowed for a potential defendant to elect mediation prior to the Trustee filing a lawsuit.

---

[3]  "Main Dkt" refers to the docket in the main Bankruptcy Case.  "Dkt." refers to the docket in the United Lex Adversary Proceeding, while "Reed Dkt" refers to the docket in the Reed Adversary Proceeding (as hereafter defined).

[4]  On December 12, 2019 ULX Partners, LLC filed Proof of Claim No. 174 in the amount of $8,563,288 and Proof of Claim No. 175 in the amount of $3,952,025 (collectively, the "**ULX Partners Proofs of Claim**").

13.     On September 2, 2021, the Trustee filed a separate adversary proceeding (No. 21-03095-KRH (the "**Reed Adversary Proceeding**")[5] against CVC as well as UnitedLex's Chief Executive Officer Daniel Reed and its Chief Financial Officer Nicholas Hinton. In the Reed Adversary Proceeding, the Trustee also asserted claims against Josh Rosenfeld and P. Douglas Benson. In the Reed Adversary Proceeding, the Trustee asserted claims for, among other things, breach of fiduciary duty, statutory and common law conspiracy, and constructive fraud (the "**Reed Adversary Claims**").[6]

### B. The UnitedLex Adversary Proceeding

14.     Since the filing of the UnitedLex Adversary Proceeding, the Trustee and the ULX Defendants have been engaged in complex and substantial litigation, including a very active motions practice, as well as extensive discovery consisting of written discovery, the exchange of hundreds of thousands of pages of documents, depositions of more than a dozen witnesses, and the retention of various experts. In addition, throughout this case, the Court entered several pre-trial orders governing the litigation between the Trustee and the ULX Defendants.

15.     



---

[5] The Reed Adversary Proceeding and the UnitedLex Adversary Proceeding are collectively referred to herein as the "**Two Adversary Proceedings**."

[6] The Trustee has actively pursued the Reed Adversary Proceeding since its inception. While discovery has not yet begun, there has been an active motions practice. For example, CVC filed a Motion to Withdraw the Reference [Reed Dkt No. 19]. In addition, CVC, Reed, Hinton, Rosenfeld, and Benson have filed separate Motions to Dismiss [Reed Dkt Nos. 8, 9, 23, and 39]. These motions have been stayed while, among other things, the Motion to Withdraw the Reference was being decided by the District Court.

[7] At the time, the only defendants in the case were United Lex and ULXP. ULX Manager LLC was subsequently added as a defendant on August 25, 2021, with the filing of the Amended Complaint.

[REDACTED]

17.     On August 6, 2021, the Trustee filed a Motion for Leave to Amend Complaint and to Modify Pretrial Scheduling Order [Dkt No. 70] (the "**First Motion to Amend**") and on August 16, 2021, the Defendants filed an Objection to the Trustee's Motion for Leave to Amend Complaint and to Modify Pretrial Scheduling Order [Dkt No. 75] (the "**Opposition to First Motion to Amend**").

18.     On August 24, 2021, the Bankruptcy Court granted the Trustee's Motion to Amend the Complaint [Dkt No. 85] resulting in the Trustee filing a First Amended Complaint in the UnitedLex Adversary Proceeding on August 25, 2021 [Dkt No. 86] (the "**Amended Complaint**"), which added ULX Manager LLC and Gary LeClair as defendants.[8]   The First Motion to Amend,

---

[8]  The claims against Gary LeClair have since been resolved (the "**D&O Settlement**") pursuant to an Order [Dkt No. 121] entered on December 3, 2021, granting a separate Motion for Approval of Compromise and Settlement and Memorandum of Law [Dkt No. 119].

the Opposition to First Motion to Amend, and the Amended Complaint are incorporated as if fully

set forth herein.

19.    The First Amended Complaint asserted, among other things, the following causes

of action against ULX Partners, LLC, ULX Manager LLC, and/or UnitedLex Corporation:

(1)  avoidance of preferential and/or fraudulent transfers under sections 544, 547,
548 and 550 of the Bankruptcy Code;

(2) disallowance of claims under Section 502(d) of the Bankruptcy Code;

(3) lack of consideration for intellectual property under the contribution agreement;

(4) re-characterization of debt as equity;

(5) misappropriation of trade secrets;

(6) breach of fiduciary duty;

(7) statutory and common law conspiracy;

(8) an accounting;

(9) conversion;

(10) unjust enrichment; and

(11) alter ego liability.[9]

20.    After the granting of the Motion to Amend, a two-week trial in the UnitedLex

Adversary Proceeding was scheduled to begin on April 14, 2022.  [Dkt No. 144].

21.    On January 28, 2022, the ULX Defendants filed a Motion for Summary Judgment

[Dkt No. 133] (the "**Motion for Summary Judgement**") and associated documents, seeking to

dismiss certain of the UnitedLex Claims. The Trustee opposed the Motion for Summary Judgment

[Dkt No. 152] (the "**Opposition to Summary Judgment**") and the Bankruptcy Court has not yet

ruled on the Motion for Summary Judgment. The Motion for Summary Judgment, the Opposition

to Summary Judgment, and associated pleadings are incorporated as if fully set forth herein.

---

[9]   The claims asserted in the First Amended Complaint as set forth therein against the ULX Defendants are referred
to herein as the "**UnitedLex Claims**."   The Reed Adversary Claims and the UnitedLex Claims are collectively
referred to herein as the "**Claims**."

22.    On February 11, 2022, the Trustee filed a Motion for Leave to Amend the First Amended Complaint [Dkt No. 147] (the "**Second Motion to Amend**") and associated documents under seal, which sought to add an additional count against UnitedLex Corporation and ULX Manager LLC.  The United Lex Defendants opposed the Motion to Amend [Dkt No. 168] (the "**Opposition to Second Motion to Amend**") and the Bankruptcy Court has not yet ruled on the Second Motion to Amend. The Second Motion to Amend and the Opposition to the Second Motion to Amend are incorporated as if fully set forth herein.[10]

### C. Judicial Mediation

23.    On February 4, 2022, at the joint request of the Trustee and the ULX Defendants, the Court entered an Order in the United Lex Adversary Proceeding (the "**Mediation Order**") [Dkt No. 142] appointing the Honorable Frank J. Santoro, the Chief Judge of the United States Bankruptcy Court for the Eastern District of Virginia, as the judicial mediator (the "**Mediator**"), to conduct a mediation (the "**Mediation**") among the Trustee, the ULX Defendants, Mr. Reed and Mr. Hinton in their individual capacities, and Travelers, "[u]nless otherwise ordered by the Mediator in the Mediator's sole discretion."

24.    ███████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

██████████████████████████

---

■    At the request of the Mediator, the Bankruptcy Court continued the hearings on both the Motion for Summary Judgment and the Second Motion to Amend to allow the Parties sufficient time to continue negotiations in an attempt to fully resolve the pending disputes between them.

25. ████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████

26.    On March 5 and March 6, 2022, certain of the Parties, their respective counsel, and the Mediator participated in a two-day in-person mediation in Richmond, Virginia. This initial mediation session lasted approximately a day and a half but was ultimately terminated by the Mediator with specific instructions given to the participating mediation parties.

27.    On March 8, 2022, the Mediator entered the "Order Directing Defendants to Produce Insurance-Related Information" [Dkt No. 177] (the "**March 8 Insurance Order**"). The March 8 Insurance Order directed the ULX Defendants, Hinton and Reed to provide the Trustee with, among other things, (1) a "full and complete copy of any and all insurance policies (including but not limited to insurance policies of Defendants' subsidiaries, parent companies, or affiliated companies) that may provide any coverage (in full or in party) for any judgments awarded against the [ULX Defendants] in this case, and/or against Mr. Hinton and/or Mr. Reed in the [Reed Adversary Proceeding] and/or settlement amounts paid by any Defendants and/or by Mr. Hinton and/or Mr. Reed in this case and/or the [Reed Adversary Proceeding]; or any fees, costs, and expenses paid or incurred in this case by any Defendant, Mr. Hinton, and/or Mr. Reed in this case and/or the [Reed Adversary Proceeding]. Such policies should also include any policies to which

████████████████████████████████████████████████

any [ULX Defendant], Mr. Hinton, and/or Mr. Reed tendered coverage for the claims at issue herein or the [Reed Adversary Proceeding], including all excess policies regardless of the coverage position taken by the relevant insurance company"; and (2) "all coverage letters and/or denial of coverage letters from any insurance company regarding coverage under any of the policies provided [pursuant to the March 8 Insurance Order], including but not limited to coverage positions taken by the insurance company, and any non-privileged or otherwise protected response to such insurance company by the [ULX Defendants], Mr. Hinton, and/or Mr. Reed thereto."

28.     Also on March 8, 2022, the Mediator entered an "Order Directing the Exchange of Information Between the Defendants, Nicholas Hinton, Daniel Reed, the Insurance Companies and the Chapter 7 Trustee" [Dkt No. 178] (the "**Information Exchange Order**").  The Information Exchange Order required, among other things, the Trustee to provide "the identity of the Trustee's anticipated trial expert with respect to the damages the Trustee alleges were proximately caused by the [ULX Defendants, Reed and Hinton], as well as a summary of the expert's opinions to date as to the amount of such alleged damages and the basis therefore (the "**Trustee's Damages Report**").    Additionally, the Information Exchange Order required the ULX Defendants, Reed, and Hinton to identify the ULX Defendants' "anticipated expert as to damages, along with a summary of that expert's opinions to date rebutting the Trustee's Damage Report."   Finally, the Information Exchange Order also directed that the ULX Defendants provide the Mediator for his "*en camera review*, their year-end financial statements for the last two years, as well as financial statements indicating their current financial condition."

29.     On March 9, the Bankruptcy Court entered an order that the trial in this matter be continued until May 17 and also continued other pending motions in the case.  *See* Dkt No. 184.

30. 



35.     On April 13, 2022, after continued hard fought and arm's-lengths negotiations, a global and comprehensive proposal was made by the Mediator to fully and finally resolve all of the pending Claims in the Two Adversary Proceedings (the "**Mediator's Proposal**").   At the direction of the Mediator, the Defendants and the Insurers had until no later than 12 p.m. on April 19, 2022, to (a) accept or reject the Mediator's Proposal in total and (b) if accepted, provide specifics as to the manner, timing, and related security for payments and/or promises to pay (collectively, the "**Settlement Payment Nuances"**).

36.     The hearing on the Second Motion to Amend was to be heard by the Bankruptcy Court at 11:00 a.m. on April 19, 2022.  Approximately thirty minutes before that hearing, however, the Defendants and the Insurers agreed to the Mediator's Proposal and provided the Settlement Payment Nuances. The Trustee was asked to immediately accept or reject the Mediator's Proposal that had been accepted by the Defendants and the Insurers.   In the exercise of her business judgement, the Trustee determined that the Mediator's Proposal was in the best interest of the Estate and as such accepted the same (the "**Settlement**").  Subsequently, the Mediator directed the

Trustee, through counsel, to inform the Court at the impending hearing of the material terms of the Settlement reached between the Parties.  As such, the material terms of the Settlement were set forth on the record at the April 19, 2022, hearing with the participation of counsel for the ULX Defendants, Mr. Hinton, and Mr. Reed. Thereafter, the Second Motion to Amend was continued to allow the Parties to document the Settlement.

### D.  The Global Settlement Agreement

37.    In addition to the terms being articulated on the record at the April 18, 2022, hearing, the Settlement is further memorialized in a certain settlement agreement (the **"Settlement Agreement"**) (attached hereto as **Exhibit A**) and is incorporated as if fully set forth herein. The key terms of the Settlement Agreement between the Parties, subject to the Bankruptcy Court's approval, are as follows:[12]

     a.  **Continental Payment:**  In consideration of the mutual releases, covenants, representations, and undertakings of the Trustee, the Defendants, and the Insurers, Continental shall pay the Trustee a sum of five million dollars ($5,000,000) on or before the Closing Date.[13]

     b.  **Columbia Payment:**  In consideration of the mutual releases, covenants, representations, and undertakings of the Trustee, the Defendants, and the Insurers, Columbia shall pay the Trustee a sum of seven million two hundred and fifty thousand dollars ($7,250,000) on or before the Closing Date.

     c.  **Travelers Payment**:  In consideration of the mutual releases, covenants,

---

[12]   The summary set forth in this section is qualified by the specific provisions of the Settlement Agreement.  To the extent there is any inconsistency between this summary and the Settlement Agreement, the Settlement Agreement governs.

[13]   All capitalized terms not otherwise defined herein shall have the meaning ascribed to them in the Settlement Agreement.

representations, and undertakings of the Trustee, the Defendants, and the Insurers, Travelers shall pay the Trustee a sum of five hundred thousand dollars ($500,000) on or before the Closing Date.

d. **Defendants' Payment and Pledge of Security:**  In consideration of the mutual releases, covenants, representations, and undertakings of the Trustee and the Defendants, the Defendants shall pay to the Trustee a total sum of eight million two hundred and fifty thousand dollars ($8,250,000).  This sum is scheduled to be paid in three installments.   The first installment of at least two million dollars ($2,000,000) will be paid on or before the Closing Date.  The second installment of three million dollars ($3,000,000) will be paid on or before the first anniversary of the Closing Date, and the third installment of three million two hundred and fifty thousand dollars ($3,250,000) will be paid on or before the second anniversary of the Closing Date. Both the Second Defendants' Payment and the Third Defendants' Payment are fully secured by Notes and Irrevocable Letters of Credit.

e. **Starr Policy Proceeds:**  As part of the Settlement Agreement, neither the Defendants nor the Trustee release Starr from any obligations under the Starr Policy.  If any of the Defendants receive any proceeds from Starr under the Starr Policy related to this matter, the proceeds (net any costs of reasonable attorneys' fees incurred in pursuit of the collection of the proceeds) must be turned over and paid to the Trustee.

f. **Waiver of Proofs of Claim:**  ULX Partners, LLC agrees to waive the ULX Partners Proofs of Claim, the present value of which is estimated by the ULX Defendants (and not the Trustee) to be $2.4 million.

g. **Consensual Releases:**  The Settlement Agreement includes certain consensual releases of Claims amongst the Parties.

h. **Compensation of Counsel:** Consistent with the Order entered by the Bankruptcy Court on June 28, 2021 [Main Dkt. No. 937], Quinn Emanuel shall be entitled to receive 35% of the Total Settlement Payment as provided in the Quinn Retention Order (the "**Contingency Payment**").  In addition, the Settlement Agreement contemplates an Improvident Payment of an aggregate amount not to exceed $3,150,000 (the "**Improvident Payment**") to Quinn Emanuel.  By this Motion, the Trustee seeks approval of this Improvident Payment on account of the fact that, among other things, the terms of the Quinn Retention Order have proven to be improvident in view of circumstances in this matter that were not capable of being anticipated at the time of entry of the Quinn Retention Order.  The Improvident Payment is subject to the Estate receiving the Total Settlement Payment and the Defendants do not object to the Improvident Payment.  Furthermore, the Trustee maintains that Quinn Emanuel provided necessary additional non-contingent services (the "**Additional Services**") that arose from the Two Adversary Proceedings that otherwise would have been compensated on an hourly basis had the Trustee and Quinn Emanuel known all of the facts and circumstances regarding this matter.  Notwithstanding the fact that Quinn Emanuel asserts that the value of the Additional Services exceeds the amount of the Improvident Payment, the Settlement Agreement provides that Quinn Emanuel agrees to limit the amount of the Improvident Payment to $3,150,000 or such other amount otherwise approved by the Bankruptcy Court.

15

     i.    **No Admission of Liability By Any of the Parties**

     j.    **Dismissal:** The Two Adversary Proceedings will be dismissed with prejudice.

38.    The Settlement, as documented in the Settlement Agreement, was the product of an arms-length negotiation, and globally resolves, on terms beneficial to the Estate, complicated litigation in the Two Adversary Proceedings, the continued pursuit of which would be costly and time consuming and pose the risk of an unfavorable result.

## MEMORANDUM OF LAW

39.    The Trustee believes, in her business judgment and after substantial analysis, that entering into the Settlement Agreement is reasonable under these circumstances and respectfully requests that the Court approve the Settlement (and related Settlement Agreement), including the Improvident Payment, and all other relief requested in this Motion.  The Settlement (as documented in the Settlement Agreement) will allow the Estate and all interested parties to avoid the uncertainty and costs of extensive litigation to determine the recovery on the Claims and eliminates the uncertainty of litigation and the risks of collectability of any judgment that may be obtained.  Most importantly, the Settlement will allow the Estate to proceed towards a meaningful distribution to creditors on a more expedited timeline.  Accordingly, for the following reasons, the Trustee believes that entry into the Settlement Agreement is in the best interests of the Estate, its creditors, and other parties in interest and that the Settlement (and related Settlement Agreement) should be approved by the Bankruptcy Court.

### A. Entry into the Settlement Agreement Is Fair and Equitable and in the Best Interest of the Estate

40.    Bankruptcy Rule 9019(a) provides, in relevant part, that "[o]n motion by the trustee and after notice and a hearing, the court may approve a compromise or settlement." Fed. R. Bankr. P. 9019(a).  The United States Supreme Court has noted that "[c]ompromises are a 'normal part

of the process of reorganization.'" *Protective Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson*, 390 U.S. 414, 424 (1968) (citing *Case v. Los Angeles Lumber Prods. Co.*, 308 U.S. 106, 130 (1939)).  In *TMT Trailer*, the Supreme Court stated that compromises and settlements must be "fair and equitable." 390 U.S. at 424; *see also In re Loudoun Heights, LLC*, No. 13-15588, 2014 WL 2928110, at *8 (Bankr. E.D. Va. June 27, 2014) (same); *Shaia v. Three Rivers Wood, Inc. (In re Three Rivers Wood, Inc.*), No. 98-38685, 2001 WL 720620, at *6 (Bankr. E.D. Va. Mar. 20, 2001) (same); *In re Frye*, 216 B.R. 166, 174 (Bankr. E.D. Va. 1997) (same); *In re Austin*, 186 B.R. 397, 400 (Bankr. E.D. Va. 1995) (same).

41.     Compromises are tools for expediting the administration of the case and reducing administrative costs and are favored in bankruptcy. *See In re Bond*, 16 F.3d 408 at *3 (4th Cir. 1994) (unpublished table decision) ("To minimize litigation and expedite the administration of a bankruptcy estate, compromises are favored in bankruptcy") (citations omitted).  The Trustee, in her business judgment, believes that the Settlement Agreement represents a fair and reasonable compromise of the disputed issues regarding the Claims, as set forth in greater detail herein.

42.     The decision whether to approve a compromise under Rule 9019 is committed to the discretion of the Court, which must determine if the compromise or settlement is "fair and equitable".  *In re Health Diagnostic Lab., Inc.*, 2016 Bankr. LEXIS 3724 (Bankr. E.D. Va. Oct. 14, 2016); *In re Alpha Nat. Res. Inc.*, 544 B.R. 848, 856 (Bankr. E.D. Va. 2016); *In re Frye*, 216 B.R. 166, 174 (Bankr. E.D. Va. 1997).  The Court is not required to conduct a "mini-trial" of the underlying case, but instead must only decide whether the settlement proposed falls "below the lowest point in the range of reasonableness." *In re Austin*, 186 B.R. at 400 (citations omitted); *accord In re Alpha Nat. Res. Inc.*, 544 B.R. at 857.

43.     Factors that the Court should consider when evaluating a settlement under Bankruptcy Rule 9019 include: (a) "the probability of success in litigation;" (b) "potential collection struggles;" (c) "the complexity, time and expense involved in litigating the matter;" and (d) whether the proposed compromise is fair and equitable to the debtor, its creditors, and other parties in interests. *Loudoun Heights*, 2014 WL 2928110, at *9 (citations omitted); *see also TMT*, 390 U.S. at 424; *Three Rivers Wood*, 2001 WL 720620, at *6 (same); *In re Alpha Nat. Res. Inc.*, 544 B.R. at 857; *In re Frye*, 216 B.R. at 174.

44.     Additionally, the Court must determine whether the proposed settlement is in the best interests of the Estate. *Three Rivers Wood*, 2001 WL 720620, at *6 ("a compromise or settlement will most likely gain approval if it is both 'fair and equitable,' as well as representative of the best interests of the estate as a whole") (citations omitted); *Frye*, 216 B.R. at 174 ("In order to approve a compromise, this court must look at various factors and determine whether the compromise is in the best interest of the estate and whether it is fair and equitable."); *In re Energy Coop. Inc.*, 886 F.2d 921, 927 (7th Cir. 1989) ("The benchmark for determining the propriety of a bankruptcy settlement is whether the settlement is in the best interests of the estate.").

45.     The factors that courts consider in determining whether a settlement is in the best interests of a bankruptcy estate are similar to the factors examined to determine whether the settlement is fair and equitable. *See Parker v. Bullis* (*In re Bullis*), 515 B.R. 284, 288 (Bankr. E.D. Va. 2014) ("The best interests of the estate are met by considering the same factors a court considers in reviewing any proposed settlement: (1) the probability of success on the merits in the litigation; (2) possible difficulties of collecting any judgment which might be obtained; (3) the complexity, expense, and likely duration of any ensuing litigation; and (4) the interests of the creditors, giving proper deference to their reasonable views.") (citations omitted).

46.     Basic to the process of evaluating proposed settlements is "the need to compare the terms of the compromise with the likely rewards of litigation." *TMT*, 390 U.S. at 425. However, "the settlement may be approved even if the court finds it likely that the trustee would ultimately succeed in the litigation." *In re Austin*, 186 B.R. at 400.

47.     When reviewing a proposed settlement, the Court may consider the Trustee's business judgment and the opinions of the other parties to such settlement, and the Court should not substitute its judgment for that of the Trustee. Instead, the Court must determine "whether the settlement falls below the lowest point in the range of reasonableness." *Three Rivers Wood*, 2001 WL 720620, at *6 (citing *Austin*, 186 B.R. at 400). Where a proposed settlement is not below the lowest point of what is fair and reasonable and represents the best interests of the estate as a whole, the court should approve it pursuant to Bankruptcy Rule 9019. *Id*.

48.     In this case, the Trustee believes that the Settlement is fair, equitable, in the best interests of the Estate, appropriate in the Trustee's business judgment, and easily falls within the reasonable range of outcomes. As set forth above, the Settlement (as documented in the Settlement Agreement) is the culmination of more than several months of negotiations among the parties, with the Mediator's assistance and direction, and represents a global resolution of the Claims. The Trustee, in the exercise of her business judgment and in consultation with her professionals and the Mediator, believes that the Settlement (as documented in the Settlement Agreement) is a fair, reasonable, and responsible compromise and resulted in maximum value to the Estate for the reasons that follow.

49.     First, the Settlement (as documented in the Settlement Agreement) is the result of extensive good faith and arms-length negotiations among the Trustee, the Defendants, and the Insurers. It was aided and directed by the substantial participation and input of the Mediator and

represents a result well above the lowest bound of the range of reasonableness.  It in fact is the

Mediator's Proposal. This Settlement is not collusive and represents a fair compromise of the

disputes.

50.     Assuming this Court approves this Motion and authorizes the Trustee to enter into

the Settlement, the Trustee will receive (i) fourteen million seven hundred fifty thousand dollars

($14,750,000) on or before the Closing Date; and (ii) an additional six million two hundred fifty

thousand dollars ($6,250,000) after the Closing Date (collectively, the "**Settlement Payment**

**Cash Funds**").  These amounts, which are a sum certain, are potentially greater than any recovery

the Estate would ultimately receive even if the Two Adversary Proceedings proceeded to

judgement and is well above the lowest bound of the range of reasonableness.

51.     Second, both before and during the Mediation, the Trustee conducted due diligence

on the enforcement and ultimate collectability of potential judgments against the Defendants.

With the assistance of the Mediator and her counsel, the Trustee determined, among other things,

that proceeds from the Insurance Policies for a settlement and the payments received from the

Defendants were the best source of payment to compensate the Estate for damages associated with

the Claims.  Significantly, the majority of the Settlement Payment Funds are available to the

Trustee on the Closing Date, allowing the Trustee and her professionals to focus time and effort

on other important matters in this Bankruptcy case, including but not limited to the review, analysis

and resolution of alleged administrative expenses and pre-petition claims.

52.     Third, the consideration in the Settlement Agreement represents a fair and

reasonable compensation to the Estate for the Claims in light of the uncertainty and risk associated

with time-consuming and expensive litigation that could result in an unfavorable outcome.

Specifically, the Trustee preserves additional Estate resources that would have been spent on,

among other things, a two-week trial in the United Lex Adversary Proceeding, prosecuting the

Reed Adversary Proceeding, and any associated appeals.   Given the scope and complexity of the

United Lex Adversary Proceeding, the Trustee and her counsel had anticipated that the Reed

Adversary Proceeding could have been equally time-consuming and complicated. Moreover, in

agreeing to the releases provided for in the Settlement Agreement, the Trustee and all Parties

contemplated the value of the Claims being released.

53.     Fourth, the Settlement as directed by the Mediator and memorialized in the

Settlement Agreement is fair and equitable to the Estate, its creditors, and other parties in interest.

The value of the Settlement, which includes the Settlement Payment Cash Funds and the waiver

of the ULX Partners Proof of Claims, represents a result well above the lowest bound of the range

of reasonableness and does not prejudice other creditors or parties in interest.   To the contrary,

the Settlement should allow the Trustee to make a meaningful distribution to creditors.   Most

importantly, the Settlement will allow the Estate to proceed towards a more expeditious resolution,

rather than prolonged litigation (and potential appeals) in the Two Adversary Cases.

54.     Finally, the Improvident Payment was unilaterally directed by the Mediator as part

of the Mediator's Proposal as a material and integral term of the Settlement and as such is in the

best interest of the Estate.  Absent approval of the Settlement Agreement, Quinn Emanuel would

otherwise seek compensation on an hourly basis by the Estate in an amount that would exceed

$3,150,000.  Furthermore, Quinn Emanuel has agreed to limit the amount of the Improvident

Payment to the lesser of $3,150,000 or an amount otherwise approved by the Bankruptcy Court

As such, the Settlement provides a sum certain to be recovered by the Estate and defers to this

Court as to the ultimate allowance of the Improvident Payment to Quinn Emanuel in an amount as

determined by this Court but in no instance greater than $3,150,000.

55.    Therefore, for the foregoing reasons, the Trustee respectfully submits that the Settlement satisfies the standards for approval under applicable law and that the Court should therefore approve the Settlement Agreement pursuant to section 105 of the Bankruptcy Code and Bankruptcy Rule 9019.

**B.  The Improvident Payment is Permissible Under the Bankruptcy Code**

56.    In addition to the Improvident Payment being directed by the Mediator and being a material and integral part of the Settlement, the Trustee further maintains that Quinn is entitled to the Improvident Payment pursuant to section 328(a) of the Bankruptcy Code.   The Improvident Payment meets the standards of section 328(a) ██████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████  More specifically, neither Quinn Emanuel nor the Trustee could have anticipated certain developments in this case that required Quinn Emanuel to invest significantly more hours and expenses without any assurance of compensation.   Further, the Improvident Payment was part of the Mediator's Proposal and the Mediator, a sitting bankruptcy judge, would not have proposed anything that was contrary to the provisions of the Bankruptcy Code.

57.    These circumstances satisfy the requirements of Bankruptcy Code Section 328. Courts have recognized that their "power to modify a compensation agreement under § 328 includes the power to increase as well as decrease the agreed-upon compensation." *In re Colorado Mountain Cellars, Inc.*, 139 F.3d 911 (10th Cir. 1998) (citations omitted).   Historically, courts have done so "where the parties did not foresee 'the time, the pressures, or the complexity of [the] case or the phenomenal results achieved.'" *In re Omegas Grp., Inc.*, 195 B.R. 875, 880 (Bankr. W.D. Ky. 1996) (citing *In re Warrior Drilling & Eng'g Co.*, 9 B.R. 841, 847 (Bankr.N.D.Ala.),

modified on other grounds, 18 B.R. 684 (Bankr. D.C. Ala.1981)).  While case law is not abundant, the legislative history of section 328 specifically confirms that fees may be increased under the statute. *See* H.R. Rep. No. 595, 95th Cong., 1st Sess. 328-29 ("The Court's power includes the power to increase as well as decrease the agreed upon compensation.").

58.    Here, there were unique and unpredictable circumstances justifying the Improvident Payment. ██████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

██████████████████████████████ *See, e.g., In re Home Exp. Inc.*, 213 B.R. 162, 167 (Bankr. N.D. Cal. 1997) (increasing professionals' fees because Debtor's "managerial vacuum" was not capable of being anticipated); *In re Western Monetary Consultants, Inc.*, 143 B.R. 780, 782 (Bankr. D. Colo. 1992) (awarding additional fees to accountant under Section 328 where certain necessary documentation was not provided in the correct form).

59.    In awarding an increase in attorney fees' pursuant to section 328(a), courts also consider several other factors, including but not limited to, whether (1) the results obtained went beyond reasonable expectations, (2) the attorney assumed great risk in taking on representation of the case, (3) the attorney persevered where others would have curtailed their efforts, (4) the attorney's efforts resulted in significant infusion of funds into the debtor's estate, and/or (5) the

litigation was voluminous and complex. *See, e.g., In re Malcon Developers,* 138 B.R. 677, 680-81 (Bankr. N.D. NY 1992); *In re Warrior,* 9 B.R. at 847; *In re Land,* 138 B.R. 66,71 (D. Neb. 1992). Several of these additional factors were met in this case as well, and therefore weigh in favor of the Bankruptcy Court approving the Improvident Payment set forth in the Settlement Agreement. The Trustee, in the exercise of her business judgment, believes, among other things, that Quinn persevered where others would have curtailed their efforts. ███████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████ Notwithstanding the foregoing, should the Bankruptcy Court approve this Motion, Quinn's substantial efforts will cause significant infusion of funds into the Estate.

60.    Finally, although not a requirement of section 328(a) and not in any way to detract from the authority of this Court, the Trustee, in the exercise of her business judgment, believes the amount of the Improvident Payment to be reasonable given her understanding of the time expended to persevere where others would have not, especially in consideration of the amount to now be recovered by the Estate.[14]

61.    Thus, the Trustee respectfully requests that the Court authorize (a) the Improvident Payment to Quinn Emanuel in an amount of $3.15 million or an amount otherwise determined by this Bankruptcy Court and (b) the Trustee to pay the same as provided for in the Settlement Agreement.

---

[14] The Trustee anticipates filing declaration(s) at the appropriate time to sufficiently enable the Bankruptcy Court to, among other things, perform its own gatekeeping role in connection with determining the reasonableness of the Improvident Payment.

62.     Judge Phillips' reasoning in approving a global settlement agreement in *In re Toys*

*"R" US, Inc*., et. al., No. 17-34665 ("**TRU**") is instructive here as to certain threshold issues.

Specifically, the settlement agreement in TRU included a provision that awarded a substantial

contribution payment to counsel of an ad hoc group of creditors.  *See* TRU Dkt No. 4803 ("**TRU**

**Order**"), attached as **Exhibit C**.[15]  In approving the substantial contribution, Judge Phillips found

that it was a "material and integral portion" of the TRU settlement agreement and that the

settlement was "fair and reasonable and adequately supported by the declarations and exhibits

submitted by members of the group which have sufficiently enabled the Court to perform any

gatekeeping role it may have in connection with determining the reasonableness" of the substantial

contribution payment.  *See* TRU August 7, 2018 Transcript at p. 221, attached as **Exhibit D**.

Alternatively, Judge Phillips also held that the payment was authorized pursuant to section 503(b)

of the Bankruptcy Code.  *See* TRU August 7, 2018 Transcript at p. 221; TRU Order at 6-7.

63.     Likewise, in this case, payment of the Improvident Payment is a material and

integral part of the Settlement Agreement.  As described above, the Improvident Payment was part

of the Mediator's Proposal; it is a critical component of the Settlement Agreement.[16]  Further, just

like in TRU, the Bankruptcy Court here may exercise its own gatekeeper role of determining

whether the Improvident Payment is warranted and reasonable.  Thus, pursuant to section 105 of

the Bankruptcy Code and Bankruptcy Rule 9019, the Bankruptcy Court should approve the

Settlement Agreement, regardless of whether the Improvident Payment separately qualifies as a

---

[15]   While the Trustee recognizes that a substantial contribution claim is brought under section 503(b) and Quinn is
seeking to be paid through the Settlement Agreement under section 328(a), the analysis of approving these
extraordinary payments as a material and integral part of a settlement agreement is similar in both cases.

[16]   The Settlement Agreement makes clear that, while the Improvident Payment is a critical component of the
Settlement, both the allowance and the amount of the Improvident Payment is left to the discretion of the
Bankruptcy Court.  Settlement Agreement at ¶ 3(h).

payment under section 328(a) of the Bankruptcy Code.  But, even if the Bankruptcy Court rejects this contention, as set forth above, the Improvident Payment should be approved because the payment also meets the standards set forth in section 328(a).

## **CONCLUSION**

64.    All Defendants support the approval of the Settlement, and the Trustee, in the exercise of her business judgment, supports all of the relief sought herein.


**WHEREFORE**, the Trustee respectfully requests that the Court grant the Motion and thereby (a) approve the Settlement; (b) authorize the effectiveness of the Settlement Agreement on behalf of the Estate; (c) approve the Contingency Payment and authorize the Trustee to pay the same; (d) approve the Improvident Payment in an amount to be determined by the Court and authorize the Trustee to pay the same; and (e) provide such other relief as is just and proper.


DATED:        May 18, 2022                    Respectfully submitted,


                                             */s/ Erika L. Morabito*
                                             Erika L. Morabito (VSB No. 44369)
                                             Brittany J. Nelson (VSB No. 81734)
                                             QUINN EMANUEL URQUHART & SULLIVAN
                                             1300 I Street, N.W., Suite 900
                                             Washington, DC 20005
                                             (202) 538-8334 (telephone)
                                             Email:        erikamorabito@quinnemanuel.com
                                                           brittanynelson@quinnemanuel.com

                                             *Special Counsel to Lynn L. Tavenner, Chapter 7
                                             Trustee*

## **CERTIFICATE OF SERVICE**

I certify that on this 18th day of May 2022, a true copy of the foregoing Motion was filed under seal pending this Court's ruling on the request by the United Lex Defendants to seal aspects of the 9019 Motion.  Thereafter, the foregoing Motion will be served as provided in said ruling.

*/s/ Erika L. Morabito*
Erika L. Morabito

# AMENDED

# EXHIBIT A

Execution Copy

## SETTLEMENT AGREEMENT

THIS SETTLEMENT AGREEMENT (the "**Agreement**") is made this ___ day of May, 2022 by and between Lynn L. Tavenner in her capacity as the Chapter 7 Trustee (the "**Trustee**") of the bankruptcy case (the "**Bankruptcy Case**") of LeClairRyan PLLC on behalf of the bankruptcy estate (the "**Estate**") of LeClairRyan PLLC, which was formerly known as LeClairRyan, P.C. (collectively, "**LeClairRyan**"), and ULX Partners, LLC, ULX Manager, LLC, and UnitedLex Corporation (collectively, the "**ULX Defendants**"), CVC Advisers (India) Private Limited and/or CVC Capital Partners ("**CVC**"), Daniel Reed, Nicholas Hinton, Josh Rosenfeld, and P. Douglas Benson (collectively, with the ULX Defendants and CVC, the "**Defendants**"), Travelers Casualty and Surety Company of America ("**Travelers**") and Continental Casualty Company ("**Continental**"), and Columbia Casualty Company ("**Columbia**") (collectively, Continental and Columbia are referred to as "**CNA**") (collectively, Travelers and CNA are referred to as the "**Insurers**"). The Trustee, the Defendants, and the Insurers may be referred to hereinafter collectively as the "**Parties**."

## RECITALS

WHEREAS, on September 3, 2019 (the "**Petition Date**"), LeClairRyan filed for relief under Chapter 11 of Title 11 of the United States Code, 11 U.S.C. §§ 101-l532 (the "**Bankruptcy Code**") in the United States Bankruptcy Court for the Eastern District of Virginia, Richmond Division (the "**Bankruptcy Court**"), Case No. 19-34574-KRH.  Pursuant to §§ 1007 and 1108 of the Bankruptcy Code, LeClairRyan operated as a debtor-in-possession;

WHEREAS, per agreement between LeClairRyan, the United States Trustee, and ABL Alliance, LLP, LeClairRyan's Bankruptcy Case was converted to a case under Chapter 7 of the Bankruptcy Code on October 4, 2019;

WHEREAS, upon conversion, Lynn L. Tavenner was appointed interim trustee, and no trustee having been elected at the meeting of creditors, she continues to serve as Trustee;

WHEREAS, LeClairRyan's Bankruptcy Case is presently pending in the Bankruptcy Court;

WHEREAS, on December 12, 2019 ULX Partners, LLC filed Proof of Claim No. 174 in the amount of $8,563,288 and Proof of Claim No. 175 in the amount of $3,952,025 (collectively, the "**ULX Partners Proofs of Claim**");

WHEREAS, on October 26, 2020, the Trustee filed an adversary proceeding against ULX Partners, LLC and UnitedLex Corporation, Adversary Proceeding No. 20-03142 (KRH) (as amended, the "**UnitedLex Adversary Proceeding**");

WHEREAS, on August 24, 2021, the Bankruptcy Court granted the Trustee's Motion to Amend the Complaint resulting in the Trustee filing a First Amended Complaint in the

UnitedLex Adversary Proceeding on August 25, 2021, which added ULX Manager, LLC and Gary LeClair as defendants;[1]

WHEREAS, the First Amended Complaint asserted, among other things, the following causes of action against ULX Partners, LLC, ULX Manager, LLC, and/or UnitedLex Corporation:

    (1)  avoidance of preferential and/or fraudulent transfers under sections 544, 547, 548 and 550 of the Bankruptcy Code;

    (2) disallowance of claims under Section 502(d) of the Bankruptcy Code;

    (3) lack of consideration for intellectual property under the contribution agreement;

    (4) re-characterization of debt as equity;

    (5) misappropriation of trade secrets;

    (6) breach of fiduciary duty;

    (7) statutory and common law conspiracy;

    (8) an accounting;

    (9) conversion;

    (10) unjust enrichment; and

    (11) alter ego liability;[2]

WHEREAS, on January 28, 2022, the ULX Defendants filed a Motion for Summary Judgment [Docket No. 133]  (the **"Motion for Summary Judgment"**) and associated documents (partially under seal), seeking to dismiss all of the UnitedLex Claims;

WHEREAS, on February 11, 2022, the Trustee filed a Motion for Leave to Amend the First Amended Complaint [Docket No. 147] (the "**Motion to Amend**") and associated documents under seal, which sought to add a single count of fraudulent inducement against UnitedLex Corporation and ULX Manager LLC;

WHEREAS, the UnitedLex Adversary Proceeding was initially set for a two-week trial beginning on April 18, 2022, and subsequently rescheduled to begin on May 16, 2022;

WHEREAS, on September 2, 2021, the Trustee filed an adversary proceeding against CVC, Daniel Reed, Nicholas Hinton, Josh Rosenfeld, and P. Douglas Benson in the United States Bankruptcy Court for the Eastern District of Virginia, Adversary Proceeding No. 21-

---

[1]  The claims against Gary LeClair have since been resolved.

[2]  The claims asserted in the First Amended Complaint, as set forth therein against the ULX Defendants are referred to herein as the "**UnitedLex Claims**."

03095 (the "**Reed Adversary Proceeding**") (collectively, with the UnitedLex Adversary Proceeding, the "**Two Adversary Proceedings**"), asserting claims for unjust enrichment, misappropriation of trade secrets, breach of fiduciary duty, statutory and common law conspiracy, and constructive fraud;[3]

WHEREAS, certain Defendants sought coverage for the Claims under Policy Number ███ ████████ (the "**Travelers Policy**") issued to Titan Investment Holding, L.P. by Travelers for the policy period from November 1, 2019 to November 1, 2020, and Travelers advanced defense expenses subject to a reservation of rights;

WHEREAS, certain Defendants sought coverage for the Claims under both EPS+ Policy No. 596618014 issued by Columbia to UnitedLex Corporation for the November 1, 2019 to November 1, 2020 policy period (the "**Columbia Policy**") and Excess Policy No. ████████ issued by Continental to Titan Investment Holding, L.P. for the November 1, 2019 to November 1, 2020 policy period (the "**Continental Policy**") (collectively, the Columbia Policy and the Continental Policy shall be referred to as the "**CNA Policies**");

WHEREAS, certain Defendants also assert that they are entitled to indemnification from an insurance policy (Policy No. ███████████) (the "**Starr Insurance Policy**") issued by Starr Surplus Lines Insurance Company ("**Starr**");

WHEREAS, on February 4, 2022, the Trustee and the UnitedLex Defendants jointly requested judicial mediation from the Bankruptcy Court which was so ordered on the same date, and Chief Judge Santoro was appointed as the mediator (the "**Mediator**");

WHEREAS, certain of the Parties, along with the Mediator participated in lengthy mediation sessions on March 5 and 6, 2022 and again on April 12 and 13, 2022 in an effort to fully and satisfactorily resolve the Claims;

WHEREAS, after extensive negotiations through their respective counsel, along with consideration and discussion regarding proposed settlement terms recommended by the Mediator (the "**Mediator's Proposal**"), the Trustee, the Defendants, and the Insurers seek to fully and finally resolve the Claims against the Defendants on the terms set forth herein without admission of liability; and

WHEREAS, with the assistance, advice, recommendations, and direction of the Mediator, the Trustee, the Defendants, and the Insurers have negotiated and reached this Agreement in good faith.

---

[3]   The claims asserted against CVC, Mr. Reed, Mr. Hinton, Mr. Rosenfeld, and Mr. Benson in the Reed Adversary Proceeding are referred to herein as the "**Reed Adversary Claims.**" Collectively, the UnitedLex Claims and the Reed Adversary Claims, as well as the claims the Trustee sought to assert in the Motion to Amend, are referred to herein as the "**Claims.**"

# THE AGREEMENT

**NOW, THEREFORE,** in consideration of the mutual releases set forth herein and the payment of certain sums and waiver of certain proofs of claim as provided herein by the Defendants and the Insurers to the Trustee and the Defendants, which the Trustee, the Defendants and the Insurers agree is good and valuable consideration for the various covenants and understandings set forth in this Agreement, it is hereby agreed by the Parties as follows:

1.  **Court Approval.**  Upon execution of this Agreement, the Trustee shall file a motion seeking Bankruptcy Court approval of this Agreement pursuant to the *Order Approving Procedures and Permitting Trustee to Prosecute and Compromise FAO Action* [Docket No. 533] (the "**FAO Order**") and Rule 9019 of the Federal Rules of Bankruptcy Procedure (the "**9019 Motion**").  The Defendants and the Insurers agree to reasonably cooperate with the Trustee in obtaining approval of this Agreement.

2.  **Closing Date.**  This Agreement shall become effective upon the exchange of consideration described in Section 4 hereof at a closing (the "**Closing**") held on the fifteenth business day (the "**Effective Date**" or "**Closing Date**") following the entry a final and non-appealable order (the "**9019 Order**") by the Bankruptcy Court approving the terms and conditions of the Agreement as set forth in the 9019 Motion.  A motion seeking approval of the 9019 Order shall be filed by no later than May 18 , 2022 and a hearing on the motion will be held on June 8, 2022, unless the Bankruptcy Court orders otherwise.  The proposed 9019 Order submitted with the 9019 Motion shall include language authorizing the Insurers to make the Travelers Payment and the CNA Payments (as defined below).  The 9019 Motion (including this Agreement and any related exhibits) shall preliminarily be filed under seal at the direction of the Mediator and its terms kept confidential pending the Bankruptcy Court's ruling on a motion to seal this Agreement, or similar motion, to be filed by certain of the Defendants.

3.  **Settlement Payment.**  The Defendants and the Insurers shall pay, in accordance with the severable obligations set forth below, the total sum of twenty-one million dollars ($21,000,000) to Lynn L. Tavenner, Trustee of the Estate of LeClairRyan and the ULX Partners Proofs of Claim shall be waived (the "**Total Settlement Payment**"). The Total Settlement Payment shall be made as follows:

    a.  **CNA Payment:** On the Closing Date, Continental shall pay to the Trustee a sum of five million dollars ($5,000,000) (the "**Continental Payment**"), and Columbia shall pay to the Trustee a sum of seven million two hundred and fifty thousand dollars ($7,250,00) (the "**Columbia Payment**") (collectively the "**CNA Payment**").[4]

---

[4]  To the extent not otherwise provided herein, all payments referenced in this Agreement shall be sent via ACH transfer pursuant to the wire instructions and the Trustee's W-9, both of which are to be provided separately and verbally confirmed by counsel for the Trustee to counsel for the Defendants and counsel for the Insurers no later than June 8, 2022.  Any payment by the

b. **Travelers Payment:** On the Closing Date, Travelers shall pay the Trustee a sum of five hundred thousand dollars ($500,000) (the "**Travelers Payment**").

c. **First Defendants' Payment:** On the Closing Date, the Defendants shall pay the Trustee a total sum of not less than two million dollars ($2,000,0000). In addition, if Travelers fails to pay the total sum of $500,000 as required above in 3(b), the First Defendants' Payment shall also include any deficiency amount that Travelers fails to pay timely as part of the Traveler's Payment set forth above (the "**First Defendants' Payment**").

d. **Second Defendants' Payment:** No later than one (1) year from the Closing Date, the Defendants shall pay the Trustee an additional amount of three million dollars ($3,000,000), plus interest at the rate of one (1) percent annually, which shall accrue from the Closing Date until the full amount due and owing under this Agreement is paid to the Trustee (the "**Second Defendants' Payment**"). The Second Defendants' Payment shall be evidenced by a note of UnitedLex Corporation (the "**First Note**") in the form of Exhibit A attached hereto, the payment of which shall be secured pursuant to an irrevocable letter of credit (the "**First Letter of Credit**") issued in favor of the Trustee by Wells Fargo Bank, N.A. in the form attached to the First Note.

e. **Third Defendants' Payment:** No later than two (2) years from the Closing Date, the Defendants shall pay the Trustee an additional three million, two hundred and fifty thousand dollars ($3,250,000), plus interest at the rate of one (1) percent annually, which shall accrue from the Closing Date until the full amount due and owing under this Agreement is paid to the Trustee (the "**Third Defendants' Payment**"). The Third Defendants' Payment shall be evidenced by a note of UnitedLex Corporation (the "**Second Note,**" and together with the First Note, the "**Notes**") in the form of Exhibit B attached hereto, the payment of which shall be secured pursuant to an irrevocable letter of credit (the "**Second Letter of Credit**") issued in favor of the Trustee by BNP Paribas in the form attached to the Second Note. The First Letter of Credit and the Second Letter of Credit shall be referred to collectively herein as the "**Irrevocable Letters of Credit**".

f. 

---

Defendants or the Insurers is conditioned on the receipt of valid wire instructions and a W-9 for the Trustee.

g. **Waiver of ULX Partners Proofs of Claim:** ULX Partners, LLC agrees to waive the ULX Partners Proofs of Claim, the present value of which is estimated by the ULX Defendants (and not the Trustee) to be $2.4 million. The Trustee is not providing any estimate of the value of the waiver of the ULX Partners Proofs of Claim. Further, none of the Defendants nor the Insurers shall be entitled to file any claim under Section 502 or any other provision of the Bankruptcy Code.

h. **Quinn Emanuel Compensation:** Consistent with the Order entered by the Bankruptcy Court on June 28, 2021 [Docket No. 937] (the "**Quinn Retention Order**"), Quinn Emanual shall be entitled to receive seven million, three hundred fifty thousand dollars ($7,350,000) from the Total Settlement Payment as provided in the Quinn Retention Order. In addition, at the direction of the Mediator as part of his Mediator's Proposal and pursuant to Section 328(a) of the Bankruptcy Code, Quinn Emanuel shall be entitled to receive an additional amount of three million one hundred and fifty thousand dollars ($3,150,000) (the "**Improvident Payment**") from the Estate given that the Trustee understands that the terms of the Quinn Retention Order have proven to be improvident in view of circumstances in this matter that were not capable of being anticipated. The Improvident Payment is subject to the Estate receiving the Total Settlement Payment and the Defendants do not object to the Improvident Payment. The Trustee asserts that the circumstances of this specific matter warrant compensation for Quinn Emanuel that may be different from the compensation provided by the Quinn Retention Order. Among other things, the Trustee contends that neither Quinn Emanuel nor the Trustee could have anticipated certain developments in this case that required Quinn Emanuel to invest significantly more hours and expenses without any assurance of compensation.

Furthermore, the Trustee maintains that Quinn Emanuel provided necessary additional non-contingent services (the "**Additional Services**") that arose from the Two Adversary Proceedings that otherwise would have been compensated on an hourly basis had the Trustee and Quinn Emanuel known all of the facts and circumstances regarding this matter. Notwithstanding the fact that Quinn Emanuel asserts that the value of the Additional Services exceeds the amount of the Improvident Payment, Quinn Emanuel agrees to limit the amount of the Improvident Payment to $3,150,000 or an amount otherwise approved by the Bankruptcy Court. The 9019 Motion will specifically seek approval of the Agreement and the Improvident Payment. The Parties will follow the direction of the Bankruptcy Court with respect to the form of any evidence that may be appropriate regarding the Improvident Payment.

4.    **Deliveries at the Closing.**    At or before the Closing, the Parties will do the following:

    a.   CNA will deliver to the Trustee the CNA Payment.

    b.   Travelers and UnitedLex will deliver cash to the Trustee in an aggregate amount equal to the Travelers's Payment.

    c.   UnitedLex and/or CVC will deliver cash to the Trustee in the aggregate amount of the First Defendants' Payment.

    d.   UnitedLex will deliver to the Trustee executed versions of the First Note and the Second Note and fully executed and effective versions of the First Letter of Credit and the Second Letter of Credit.

5.    **Release by Trustee of Defendants.**    In exchange for the consideration reflected in this Agreement and upon receipt of the CNA Payment, the Travelers Payment, the First Defendants' Payment, the Notes, and the Irrevocable Letters of Credit, the Trustee, on behalf of herself, the Estate, LeClairRyan, and the Trustee's Released Parties (as hereafter defined) hereby releases and forever discharges (a) the Defendants and (b) each of the Defendants', as well as the CVC Network[5] and its, respective current or former, family members, relatives, agents, officers, directors, consultants, insurers, employees, experts, attorneys, accountants, financial advisors, parents, subsidiaries, shareholders, heirs, direct and indirect affiliates or entities to which they are affiliated, and each fund, account, portfolio company, or other vehicle advised or managed directly or indirectly by any of them, each investor with whom any of the foregoing have a relationship, and any of its or their respective direct and indirect members, partners, investment managers, employees, principals, existing and prospective investors, predecessors, successors, assigns, representatives of any kinds, agents, and new Group Companies (collectively, the "**Defendants'**

_____

[5]



**Released Parties**" or as to any particular Defendant(s), its or their respective "**Released Parties**")[6] (the Defendants' Released Parties and the Defendants are collectively referred to as the "**Releasees**") from each and every right, claim, debt, cause of action, demand, suit for damages, liability, legal fee, sanction, act or right of action of any nature whatsoever, whether asserted or unasserted, known, unknown, or yet to be discovered, liquidated or unliquidated, fixed or contingent, direct or indirect, that LeClairRyan, the Estate, and/or the Trustee has made, could have made, and/or is able to make against any of the Releasees at any time from the beginning of the world until the Closing Date. Except for the releases provided above, nothing in this Agreement shall be deemed a waiver, release or discharge by the Trustee of any claims, rights, or actions that the Trustee (on behalf of the Estate) or the Defendants may have against Starr or against any former attorney, advisor, consultant, agent, employee, director, owner, member or officer of LeClairRyan as listed in Schedule A.  Notwithstanding anything else herein, solely as to the Defendants' Released Parties (and not Defendants themselves), the foregoing release and discharge shall apply only to each and every right, claim, debt, cause of action, demand, suit for damages, liability, legal fee, sanction, act or right of action of any nature whatsoever, whether asserted or unasserted, known, unknown, or yet to be discovered, liquidated or unliquidated, fixed or contingent, direct or indirect, that has been made, could have been made, and/or is able to be made against, any of the Defendants' Released Parties at any time from the beginning of the world until the Closing Date, directly or indirectly arising out of, related in any way to, based upon, or by reason of, the Two Adversary Proceedings, the Estate, LeClairRyan, the Bankruptcy Case, ULX Partners, LLC, and/or the creation of or negotiation of or operation of any aspect of the joint venture relating to ULX Partners, LLP. Nothing contained in this paragraph is intended to be or shall be deemed to be a release of Defendants' obligations contained in this Agreement, the Notes, or the Irrevocable Letters of Credit.

6.    **Release by Defendants of Trustee.**  In exchange for the consideration reflected in this Agreement and upon the receipt by the Trustee of the CNA Payment, Travelers Payment, First Defendants' Payment, the Notes, and the Irrevocable Letters of Credit, each of the Defendants, on behalf of themselves and the Defendants' Released Parties, hereby release and forever discharge (i) the Trustee, (ii) the Estate, (iii) LeClairRyan, and (iv) any current or former, family members, relatives, agents, officers, directors, consultants, employees, experts, attorneys, accountants, financial advisors, and representatives of any kind of the Estate and/or the Trustee (collectively, the "**Trustee's Released Parties**") (collectively, with the Trustee, the Estate, LeClairRyan, and the Trustee's Released Parties, the "**Trustee's Releasees**"), from each and every right, claim, debt, cause of action, demand, suit for damages, liability, legal fee, sanction, act or right of action of any nature whatsoever, whether asserted or unasserted, known, unknown, or yet to be discovered, liquidated or unliquidated, fixed or contingent, direct or indirect, that Defendants made, could have made, and/or are able to make against the Trustee, the Estate, LeClairRyan, and/or the Trustee's Released Parties, at any time from the beginning of the world until the Closing Date. Notwithstanding anything else herein, solely as to the Trustee's Released Parties (and not the Trustee, the Estate, or LeClairRyan), the foregoing release and discharge shall apply only to each and every right, claim, debt, cause of action, demand, suit for damages, liability, legal fee, sanction, act or right of action of any nature whatsoever, whether asserted or unasserted, known, unknown,

---

[6] When referred to herein in connection with CVC, its particular Released Parties include those related to both CVC and to the CVC Network, as well as the CVC Network itself.

or yet to be discovered, liquidated or unliquidated, fixed or contingent, direct or indirect, that has been made, could have been made, and/or is able to be made against, any of the Trustee's Released Parties at any time from the beginning of the world until the Closing Date, directly or indirectly arising out of, related in any way to, based upon, or by reason of, the Two Adversary Proceedings, the Estate, LeClairRyan, the Bankruptcy Case, ULX Partners, LLC, and/or the creation of or negotiation of or operation of any aspect of the joint venture relating to ULX Partners, LLP.. Nothing contained in this paragraph is intended to be or shall be deemed to be a release of the Trustee's obligations contained in this Agreement, the Notes, or the Irrevocable Letters of Credit.

**7.    Release by Trustee and Defendants of Travelers.**    In exchange for the consideration reflected in this Agreement and upon the Trustee's receipt of the Travelers Payment, the Trustee, on behalf of herself, the Estate, LeClairRyan, and the Trustee's Released Parties, and Defendants, on behalf of themselves and the Defendants' Released Parties, hereby discharge and release Travelers and its respective affiliates, parents, subsidiaries, predecessors, successors, agents, officers, directors, employees, attorneys, reinsurers, representatives and agents, heirs, beneficiaries, and assigns and any person acting on its behalf from each and every right, claim, debt, cause of action, demand, suit for damages, liability, legal fee, sanction, act or right of action of any nature whatsoever, whether asserted or unasserted, known, unknown, or yet to be discovered, liquidated or unliquidated, fixed or contingent, direct or indirect, that they now have or hereafter may have (including but not limited to any claim for coverage, insurance benefits, "Defense Expenses" as defined in the Travelers Policy, as well as any claim for misrepresentation, fraud, indemnity, contribution, breach of contract, breach of duty, negligence, "bad faith," violation of statute or regulation, unfair claims handling, attorneys' fees, or damages of any kind whatsoever) arising out of, related to, based upon, or by reason of either (1) the Travelers Policy or (2) the Claims or the Two Adversary Proceedings.   The Defendants acknowledge that, when the Travelers' Payment is made, the entire aggregate limit of liability of the Travelers' Policy is exhausted with respect to the Two Adversary Proceedings, and Travelers has no further obligations under the Travelers' Policy.  Nothing contained in this paragraph is intended to be or shall be deemed to be a release of Travelers's obligations contained in this Agreement.

**8.    Release by Travelers of Defendants and Trustee.**    In exchange for the consideration reflected in this Agreement and upon the Trustee's receipt of the Travelers Payment, Travelers hereby discharges and releases the Releasees and Trustee's Releasees from each and every right, claim, debt, cause of action, demand, suit for damages, liability, legal fee, sanction, act or right of action of any nature whatsoever, whether asserted or unasserted, known, unknown, or yet to be discovered, liquidated or unliquidated, fixed or contingent, direct or indirect, that  Travelers now has or hereafter may have against any of the Releasees or any of the Trustee's Releasees (including but not limited to any claim for misrepresentation, fraud, indemnity, contribution, breach of contract, breach of duty, negligence, "bad faith," violation of statute or regulation, unfair claims handling, attorneys' fees, or damages of any kind whatsoever) arising out of, related to, based upon, or by reason of the Claims or the Two Adversary Proceedings. Nothing contained in this paragraph is intended to be or shall be deemed to be a release of Defendants' or the Trustee's obligations contained in this Agreement.

**9.    Release by Trustee and Defendants of CNA.**  In exchange for the consideration reflected in this Agreement and upon the Trustee's receipt of the CNA Payment, the Trustee, on behalf of herself, the Estate, LeClairRyan, and the Trustee's Released Parties, and Defendants, on

behalf of themselves and the Defendants' Released Parties, hereby discharge and release CNA and its respective affiliates, parents, subsidiaries, predecessors, successors, agents, officers, directors, employees, attorneys, reinsurers, representatives and agents, heirs, beneficiaries, and assigns and any person acting on its behalf from each and every right, claim, debt, cause of action, demand, suit for damages, liability, legal fee, sanction, act or right of action of any nature whatsoever, whether asserted or unasserted, known, unknown, or yet to be discovered, liquidated or unliquidated, fixed or contingent, direct or indirect, that they now have or hereafter may have (including but not limited to any claim for coverage, insurance benefits, "Defense Expenses" as defined in the Travelers Policy, "Claim Expenses," as defined in the Columbia Policy, or any other amounts under the CNA Policies, as well as any claim for misrepresentation, fraud, indemnity, contribution, breach of contract, breach of duty, negligence, "bad faith," violation of statute or regulation, unfair claims handling, attorneys' fees, or damages of any kind whatsoever) arising out of, related to, based upon, or by reason of either (1) the Continental Policy or (2) the Claims or the Two Adversary Proceedings. Nothing contained in this paragraph is intended to be or shall be deemed to be a release of CNA's obligations contained in this Agreement.

**10.     Release by CNA of Defendants and Trustee.** In exchange for the consideration reflected in this Agreement and upon the Trustee's receipt of the CNA Payment, CNA hereby discharges and releases the Releasees and the Trustee's Releasees from each and every right, claim, debt, cause of action, demand, suit for damages, liability, legal fee, sanction, act or right of action of any nature whatsoever, whether asserted or unasserted, known, unknown, or yet to be discovered, liquidated or unliquidated, fixed or contingent, direct or indirect, that CNA now has or hereafter may have against any of the Releasees or any of the Trustee's Releasees (including but not limited to any claim for misrepresentation, fraud, indemnity, contribution, breach of contract, breach of duty, negligence, "bad faith," violation of statute or regulation, unfair claims handling, attorneys' fees, or damages of any kind whatsoever) arising out of, related to, based upon, or by reason of either (1) the Continental Policy or (2) the Claims or the Two Adversary Proceedings. Nothing contained in this paragraph is intended to be or shall be deemed to be a release of Defendants' or the Trustee's obligations contained in this Agreement.

**11.     Release by Josh Rosenfeld and P. Douglas Benson of the ULX Defendants, Mr. Reed, Mr. Hinton, and CVC.** In exchange for the consideration reflected in this Agreement and upon the Trustee's receipt of the CNA Payment, Traveler's Payment, First Defendants' Payment, the Notes, and the Irrevocable Letters of Credit, Josh Rosenfeld and P. Douglas Benson, each on their own behalf and on behalf of their respective Released Parties, hereby release and forever discharge (i) the ULX Defendants, (ii) Mr. Reed, (iii) Mr. Hinton, (iv) CVC, and (v) each of the foregoing's Released Parties from each and every right, claim, debt, cause of action, demand, suit for damages, liability, legal fee, sanction, act or right of action of any nature whatsoever, whether asserted or unasserted, known, unknown, or yet to be discovered, liquidated or unliquidated, fixed or contingent, direct or indirect, Josh Rosenfeld and/or P. Douglas Benson has made, could have made, and/or is able to make against any of the persons/entities released in this paragraph at any time from the beginning of the world until the Closing Date.

**12.     Release by the ULX Defendants, Mr. Reed, Mr. Hinton and CVC of Josh Rosenfeld and P. Douglas Benson.** In exchange for the consideration reflected in this Agreement and upon the Trustee's receipt of the CNA Payment, Traveler's Payment, First Defendants'

Payment, the Notes, and the Irrevocable Letters of Credit, the ULX Defendants, Mr. Reed, Mr. Hinton, and CVC, each on their own behalf and on behalf of their respective Released Parties, hereby releases and forever discharges Josh Rosenfeld and P. Douglas Benson, and each of their respective Released Parties, from each and every right, claim, debt, cause of action, demand, suit for damages, liability, legal fee, sanction, act or right of action of any nature whatsoever, whether asserted or unasserted, known, unknown, or yet to be discovered, liquidated or unliquidated, fixed or contingent, direct or indirect, that the ULX Defendants, Mr. Reed, Mr. Hinton, and/or CVC has made, could have made, and/or is able to make against Josh Rosenfeld and/or P. Douglas Benson at any time from the beginning of the world until the Closing Date.

13. **No Release of Starr.**  For the avoidance of doubt, Starr is not receiving a release pursuant to this Agreement.  Nothing set forth in this Agreement is intended to be or shall be deemed to be a release by any of the Defendants or the Trustee as to Starr.  The Defendants and the Trustee preserve any and all claims against Starr with respect to its obligations under the Starr Insurance Policy and applicable law. The Parties further agree that the mediation shall remain open solely with respect to any dispute between the ULX Defendants and Starr, and for no other purpose, through the entry of the 9019 Order.

14. **Dismissal.** Within ten (10) calendar days of receipt of the CNA Payment, the Travelers Payment, the First Defendants' Payment, the Notes, and the Irrevocable Letters of Credit, the Trustee shall file all necessary pleadings to effectuate the dismissal with prejudice of the Two Adversary Proceedings. Notwithstanding the foregoing, nothing herein shall release the Parties from any liability under this Agreement resulting from a Party's failure to comply with any and all of the terms and conditions of this Agreement, the Notes, or the Irrevocable Letters of Credit.

15. **Representation and Warranty as to Coverage.**  CVC represents and warrants that CVC has no applicable insurance that is providing coverage to Defendants for liability or defense costs arising out of the allegations in the Two Adversary Proceedings and that it will not seek coverage for any portion of the Total Settlement Payment under any insurance policy issued to CVC.  Defendants further represent and warrant that they will not seek coverage for any portion of the Total Settlement Payment under any insurance policy issued to CVC.

16. **Predecessors, Successors, and Assigns.**  All persons or business entities granting releases hereby include any predecessor in interest or successor in interest of the respective grantor. All persons or business entities released hereby include any predecessor in liability or successor in liability for the released liability.

17. **Understanding and Counsel.**  The Parties represent and warrant that (i) they have read and understand the terms of this Agreement, (ii) they have been (or had the opportunity to be) represented by counsel with respect to this Agreement and all matters covered by and relating to it, (iii) they have entered into this Agreement for reasons of their own and not based upon representations of any other party hereto, and (iv) they have full authority and right (provided, however, the Trustee's authority is subject to obtaining the approval referenced in paragraph 1 herein) to grant the releases expressed in this Agreement and to bind the parties in all respects to this Agreement.

18.    **Legal Fees and Costs.**  Except as noted herein, each of the Parties shall not be responsible for any other Party's respective costs and attorneys' fees incurred or to be incurred, including but not limited to in connection with this Agreement, settlement conferences, mediation, and/or attendance at any hearing in connection with this Bankruptcy Case or any related adversary proceedings (except as otherwise ordered by the Bankruptcy Court).  For the avoidance of doubt, nothing in this paragraph or this Agreement shall preclude the ULX Defendants, Daniel Reed, and/or Nicholas Hinton from making a claim for costs and attorneys' fees against Starr.

19.    **Entire Agreement.**  This Agreement (including, by reference, the Notes and the Irrevocable Letters of Credit) constitute the entire agreement with respect to the subject matter addressed in this Agreement and supersedes any prior written and/or verbal agreements between the Parties with respect to the Two Adversary Proceedings and the Bankruptcy Case.

20.    **Amendments.**  This Agreement may not be orally modified. This Agreement may only be modified in a writing signed by all of the Parties.

21.    **Headings and Recitals.**  All headings and captions in this Agreement are for convenience only and shall not be interpreted to enlarge or restrict the provisions of the Agreement. The Recitals, or any portion thereof (including, without limitation, defined terms), are incorporated by reference.

22.    **Construction.**  As used in this Agreement, the plural shall include the singular, and the singular shall include the plural, unless the context or intent indicates to the contrary. "Person" shall include natural persons, corporations, partnerships, and/or any other entity, which by law is treated as or has the rights of a natural person.

23.    **Waiver and Modification.**  The failure of the Parties to insist, in any one or more instances, upon the strict performance of any of the covenants of this Agreement, or to exercise any option contained in this Agreement, shall not be construed as a waiver, or a relinquishment for the future of such covenant or option, but the same shall continue and remain in full force and effect.  Further, nothing in this Agreement shall be deemed to be a release of the Trustee, Defendants, and/or the Insurers for their breach of any terms and conditions of this Agreement.

24.    **Jurisdiction.**  By this Agreement, each of the Parties submits to the jurisdiction of the Bankruptcy Court for any action to enforce or interpret this Agreement.

25.    **Counterparts and Electronic Signatures.**  This Agreement may be executed in counterparts and all such counterparts when so executed shall together constitute the final Agreement as if all of the Parties had signed one document. This Agreement may be executed by facsimile or PDF copy and each signature thereto shall be and constitute an original signature, again as if all Parties had executed a single original document.

26.    **Survival.**  In the event any provision of this Agreement should be held to be void, voidable, unlawful, or for any reason unenforceable, the remaining portions hereto shall remain in full force and effect.

27.     **Further Necessary Actions.**  To the extent that any document is required to be executed by any Party to effectuate the purposes of this Agreement, the Party will execute and deliver such document or documents to the requesting Party.

28.     **Actions to Enforce.**  Should any action be brought by one of the Parties to enforce any provision of this Agreement, the non-prevailing party to such action shall reimburse the prevailing party for all reasonable attorneys' fees and court costs and other expenses incurred by the prevailing party in said action to enforce.

29.     **Applicable Law.**  This Agreement shall be construed and interpreted in accordance with the laws of the Commonwealth of Virginia. This Agreement shall not be construed against any of the Parties, but shall be given a reasonable interpretation.

30.     **No Admission of Liability**.  Each of the Parties understands and acknowledges that this Agreement constitutes a compromise and settlement of the claims as described in this Agreement.  No action taken by any of the Parties hereto, either previously or in connection with this Agreement, shall be deemed or construed to be an admission of the truth or falsity of any allegations, claims, or other potential claims or an acknowledgment or admission by any Party (including any person or entity receiving a release through this Agreement) of any fault, wrongdoing or liability by such Party and/or any of its affiliates, employees, attorneys, agents or representatives, and the Agreement will not be offered or used for any of these purposes.

31.     **Confidentiality.**  Any of the Parties may request that the Bankruptcy Court enter an order providing that this Agreement and/or any terms of this Agreement be kept confidential, and the other Parties agree not to object to any such request.   To the extent that such order is granted, the Parties agree that thereafter they will keep the terms and conditions of the Agreement confidential and will not thereafter disclose directly or indirectly the substance or contents thereof, to any person or persons outside of the Parties, provided however that the Parties may disclose the terms and conditions (a) to their attorneys, accountants, financial institutions, directors, officers, agents, employees, insurers, reinsurers and auditors (provided such persons are advised of this confidentiality requirement and will maintain such information as confidential); (b) pursuant to a court order or a subpoena issued by a court of competent jurisdiction; (c) in order to enforce the Agreement, Notes, or Irrevocable Letters of Credit  d  as may be required to comply with the reporting requirements and duties of the Trustee; (e) ████████ ████████████████████████████████████████████████████ (f) as otherwise required by law.  In addition, the ULX Defendants assert that the motions, responses, pleadings, and exhibits previously filed under seal in the UnitedLex Adversary Proceeding with the Bankruptcy Court relating to the Motion to Amend and the Motion for Summary Judgment should remain confidential.  Notwithstanding anything to contrary herein, a copy of this Agreement, the 9019 Motion, and all documents used to support the same (collectively, the "**Settlement Pleadings**") may be provided to any Person (as defined by Section 101(41) of the Bankruptcy Code) holding a claim against the Estate evidenced by (i) a proof of claim, which claim is not otherwise subject to dispute pursuant to the Bankruptcy Code and/or the Bankruptcy Rules and/or (ii) an order of the Bankruptcy Court, only upon written receipt by Paula S. Beran, Esquire at pberan@tb-

lawfirm.com of a commitment of any Persons to keep such Settlement Pleadings confidential. To the extent the ULX Defendants or any other Party request that the Bankruptcy Court maintain all such pleadings under seal as part of this Agreement, the Trustee and/or the other Parties will not object.


**[THIS PAGE IS INTENTIONALLY LEFT BLANK.  SIGNATURE PAGES TO FOLLOW]**

The Parties hereby knowingly and voluntarily enter into this Agreement as of the date set forth below.

By:    Lynn L. Tavenner
Title:   Chapter 7 Trustee of the Estate of LeClairRyan PLLC

Date: 05/16/2022

By:    ULX Partners, LLC
Name: Eric Kelly
Its:    Secretary of ULX Manager, LLC, the
        Managing Member of ULX Partners,
        LLC

Date: _____

By:  ULX Manager LLC
Name: Eric Kelly
Its:    Secretary

Date: _____

By:    UnitedLex Corporation
Name: Eric Kelly
Its:    Vice President – Corporate Counsel &
        Secretary

Date: _____

By:  CVC Advisers (India) Private Limited
Name: [ ]
Its [ ]

Date: _____

The Parties hereby knowingly and voluntarily enter into this Agreement as of the date set forth below.

_____      Date: _____

By:    Lynn L. Tavenner
Title:   Chapter 7 Trustee of the Estate of LeClairRyan PLLC


_____      Date: _16 May 2022_____

By:    ULX Partners, LLC
Name: Eric Kelly
Its:    Secretary of ULX Manager, LLC, the
         Managing Member of ULX Partners,
         LLC


_____      Date: _16 May 2022_____

By:  ULX Manager LLC
Name: Eric Kelly
Its:    Secretary


_____      Date: _16 May 2022_____

By:    UnitedLex Corporation
Name: Eric Kelly
Its:    Vice President – Corporate Counsel &
         Secretary


_____      Date: _____

By:  CVC Advisers (India) Private Limited
Name:  [ ]
Its [ ]

The Parties hereby knowingly and voluntarily enter into this Agreement as of the date set forth below.


_____          Date: _____
By:     Lynn L. Tavenner
Title:   Chapter 7 Trustee of the Estate of LeClairRyan PLLC


_____          Date: _____
By:     ULX Partners, LLC
Name: Eric Kelly
Its:     Secretary of ULX Manager, LLC, the
          Managing Member of ULX Partners,
          LLC


_____          Date: _____
By:  ULX Manager LLC
Name: Eric Kelly
Its:     Secretary


_____          Date: _____
By:     UnitedLex Corporation
Name: Eric Kelly
Its:     Vice President – Corporate Counsel &
          Secretary


_____          Date: _____
By: CVC Advisers (India) Private Limited
Name: [ ] AMIT SON)
Its [ ]    DIRECTOR

Date: 5/17/22

By:  Travelers Casualty and Surety Company of
America
Name:  Steven R. Srenaski
Its:    Managing Director


Date: _____

By:  Continental Casualty Company
Name: Camille Cribaro-Mello, Esq.,
Its:    Claim Consulting Director


Date: _____

By:    Columbia Casualty Company
Name: Michael S. Franklin
Its:    AVP, Financial Line Claims


Date: _____

By:    Nicholas Hinton


Date: _____

By:    Daniel Reed


Date: _____

By:    Joshua Rosenfeld


Date: _____

By:    Douglas Benson

Date: _____

By:  Travelers Casualty and Surety Company of
America
Name:  [ ]
Its:    [ ]

*Camille Cribaro-Mello*                              Date: 5/11/22

By:  Continental Casualty Company
Name: Camille Cribaro-Mello, Esq.,
Its:      Claim Consulting Director

Date: _____

By:    Columbia Casualty Company
Name: Michael S. Franklin
Its:     AVP, Financial Line Claims

Date: _____

By:    Nicholas Hinton

Date: _____

By:    Daniel Reed

Date: _____

By:    Joshua Rosenfeld

Date: _____

By:    Douglas Benson

_____                    Date: _____
By:  Travelers Casualty and Surety Company of
America
Name:  [ ]
Its:     [ ]


_____                    Date: _____
By:  Continental Casualty Company
Name: Camille Cribaro-Mello, Esq.,
Its:      Claim Consulting Director


_____                    Date: 05/11/2022 _____
By:     Columbia Casualty Company
Name: Michael S. Franklin
Its:     AVP, Financial Line Claims


_____                    Date: _____
By:     Nicholas Hinton


_____                    Date: _____
By:     Daniel Reed


_____                    Date: _____
By:     Joshua Rosenfeld


_____                    Date: _____
By:     Douglas Benson

_____     Date: _____
By:  Travelers Casualty and Surety Company of
America
Name:  [ ]
Its:     [ ]


_____     Date: _____
By:  Continental Casualty Company
Name: Camille Cribaro-Mello, Esq.,
Its:     Claim Consulting Director


_____     Date: _____
By:     Columbia Casualty Company
Name: Michael S. Franklin
Its:     AVP, Financial Line Claims


_____     Date: May 13, 2022
By:     Nicholas Hinton


_____     Date: _____
By:     Daniel Reed


_____     Date: _____
By:     Joshua Rosenfeld


_____     Date: _____
By:     Douglas Benson

By:  Travelers Casualty and Surety Company of
America
Name:  [ ]
Its:     [ ]

Date: _____

By:  Continental Casualty Company
Name: Camille Cribaro-Mello, Esq.,
Its:     Claim Consulting Director

Date: _____

By:     Columbia Casualty Company
Name: Michael S. Franklin
Its:     AVP, Financial Line Claims

Date: _____

By:     Nicholas Hinton

Date: _____

By:     Daniel Reed

Date:    13 May 2022

By:     Joshua Rosenfeld

Date: _____

By:     Douglas Benson

Date: _____

_____    Date: _____

By:  Travelers Casualty and Surety Company of
America
Name:  [  ]
Its:      [  ]


_____    Date: _____

By:  Continental Casualty Company
Name:  Camille Cribaro-Mello, Esq.,
Its:      Claim Consulting Director


_____    Date: _____

By:     Columbia Casualty Company
Name:  Michael S. Franklin
Its:      AVP, Financial Line Claims


_____    Date: _____

By:     Nicholas Hinton


_____    Date: _____

By:     Daniel Reed


_____    Date: May 11, 2022

By:     Joshua Rosenfeld


_____    Date: _____

By:     Douglas Benson

By: Travelers Casualty and Surety Company of
America
Name:  [ ]
Its:     [ ]

Date: _____

By:  Continental Casualty Company
Name: Camille Cribaro-Mello, Esq.,
Its:     Claim Consulting Director

Date: _____

By:    Columbia Casualty Company
Name: Michael S. Franklin
Its:     AVP, Financial Line Claims

Date: _____

By:     Nicholas Hinton

Date: _____

By:     Daniel Reed

Date: _____

By:     Joshua Rosenfeld

Date: _____

By:     Douglas Benson

Date: 5/12/22

## Schedule A

Lee Albanese
Alan Albert
Jeffrey L. Alitz
Richard W. "Deke" Bowerman
Paul Burleigh
Thomas Butler
John H. Cahill, Jr.
Thomas Curran
Mark  Dombroff
Niclas  Ferland
Janice  Grubin
Brian Inamine
Kevin Kenneally
ChristyKostich
Christopher J.  Lange
Leslie  Machado
Vija Mago
Jason Medley
Charles Meyer
Lisa  Murphy
Kelvin Newsome
Jeffrey O'Hara
Clint Robison
Charles Seyfarth
Charles M. Sims
Michele L. Smith
J. Lori  Thompson
Michael Von Diezelski
Karol Corbin Walker
Thomas Wolf
Andrew Zappia

EXHIBIT A

## FIRST PROMISSORY NOTE

**$3,000,000.00**                                                              **June  , 2022**

UnitedLex Corporation, a Delaware corporation **("Maker"),** has been a defendant in an adversary proceeding pending in the United States Bankruptcy Court for the Eastern District of Virginia entitled *Lynn L. Tavenner, as Chapter 7 Trustee v. ULX Partners, LLC et al. (In re LeClairRyan PLLC)* (the "Case"). The Maker and the plaintiff in the Case, Lynn L. Tavenner, not individually but solely in her capacity as the Chapter 7 Trustee (the "Trustee"), have agreed to settle and resolve all the disputes set forth in the Case  as well as in a related case brought by the Trustee against CVC Capital Partners and others (together with the Case, collectively referred to herein as the "Cases") pursuant to a global settlement agreement dated as of the date hereof (the "Settlement Agreement") entered into by the Trustee on behalf of the Chapter 7 estate of LeClairRyan (the "Estate"). The Maker is making this Note together with a second note dated the date hereof in the principal amount of $3,250,000 (the "Second Note") as part of the consideration specified in the Settlement Agreement.

The undersigned Maker hereby promises to pay to the order of the Estate the aggregate principal sum of **THREE MILLION DOLLARS ($3,000,000.00)** as set forth below with simple interest accruing on the outstanding principal amount at the rate of 1 % per annum, payable in accordance with the terms set forth below.

**Payment Schedule and Payments: T**his Note shall be payable on June __ , 2023 (the "**Maturity Date**"). Provided that the Second Note has first been paid in full, the Maker may prepay this Note at any time in whole or in part from time to time. The Trustee will notify the Letter of Credit Bank (as defined below) of the amount of any repayment no later than three business days after receipt thereof and any prepayments of  this Note will result in a reduction of the Letter of Credit (as defined below) on a dollar for dollar basis. If the Maker receives any payments relating to the Cases from Starr Surplus Lines Insurance Company ("STARR") as a result of claims made under Policy Number 100063417 (net of any costs of collection, the "**Starr Payment**"), within ten (10) business days of the actual receipt of such payment from Starr, the Maker shall make a prepayment on the Note equal to the  excess, if any, of the Starr Payment over the amount of the Starr Payment allocated to prepay the Second Note.

**Letter of Credit:** Unless previously paid by Maker, payment shall be made by the Trustee's presentation of a Certificate of Entitlement pursuant to a standby irrevocable letter of credit issued by Wells Fargo Bank, NA (the " **Letter of Credit Bank**") in favor of the Trustee in the amount of $3,050,000 in the form attached hereto as Exhibit 1 (the "**Letter of Credit**"). Both the principal and interest are payable to the Trustee in lawful money of the United States in the manner set forth below.

**Waivers.**  Except as expressly set forth herein, the Maker hereby waives presentment for payment, protest and demand and notice of protest, demand, dishonor, nonpayment, intent to

1

accelerate and acceleration of this Note, and expressly agrees that this Note, or any payment hereunder, may be extended from time to time before, at or after maturity, without in any way affecting the liability of the Maker hereunder.

**Notices:** All notices, consents, requests, approvals, demands, or other communication (collectively, "Communication") with respect hereto must be in writing, shall be delivered by email to the respective parties at their e-mail addresses set forth below and shall be deemed delivered upon transmission, provided, however, that notices to the Letter of Credit Bank shall be delivered as set forth in the Letter of Credit. Any of the parties receiving notice hereunder may change its e-mail address or other address by giving the other notice parties written notice of such change in accordance with the provisions of this paragraph.

**If to the Maker:**

UnitedLex Corporation

Nicholas Hinton,

Chief Financial Officer

Nicholas.hinton@unitedlex.com

With  copies to:

Eric Kelly, Chief Legal Officer

UnitedLex Corporation

Eric.kelly@unitedlex.com

J. Gregory Milmoe

Greenberg Traurig, LLC

milmoeg@gtlaw.com

**If to the Trustee:**

Lynn L. Tavenner, Chapter 7 Trustee

ltavenner@tb-lawfirm.com


With copies to:

Paula S. Beran, Esquire

Tavenner & Beran PLC

2

pberan@tb-lawfirm.com

Erika L. Morabito, Esquire

Quinn Emanuel Urquhart & Sullivan LLP

erikamorabito@quinnemanuel.com

**Modifications.** This Note may only be amended by an instrument in writing signed by the party against whom enforcement of the change or amendment is sought.

**Successors and Assigns.** This Note shall be binding upon the Maker and upon the Maker's successors and assigns and shall inure to the benefit of the Trustee and her successors and assigns.

**Severability.** In the event that any provision hereof shall be deemed to be invalid by reason of the operation of any law, or by reason of the interpretation placed thereon by any court or any governmental body, this Note shall be construed as not containing such provision and the invalidity of such provision shall not affect the validity of any other provisions hereof, and any and all other provisions hereof which otherwise are lawful and valid shall remain in full force and effect.

**Time of the Essence.** Time is of the essence for the performance of the obligations of the Maker under this Note.

**Costs of Collection.** If any suit or action is instituted or attorneys are employed to collect this Note or any part hereof, the Maker promises and agrees to pay all costs of collection, including all court costs and reasonable attorneys' fees and expenses.

**GOVERNING LAW; VENUE. This Note shall be construed in accordance with and governed by the laws and decisions of the State of New York, without giving effect to any conflict of law provisions thereof.** The Maker and the Trustee consent to the continuing jurisdiction  in any action, claim or other proceeding arising out of any dispute in connection with this Note or the obligations hereunder of the United States Bankruptcy Court for the Eastern District of Virginia as the venue for the resolution of any disputes regarding this Note, and, if for any reason such court does not exercise jurisdiction , of the state courts located in the borough of Manhattan, New York City, New York or any Federal court in the Southern District of  New York, and waive any objection thereto on the grounds of *forum non conveniens*.

**[Signature Page Follows]**

3

**IN WITNESS WHEREOF,** this Note has been executed and delivered by Maker by its duly authorized officer on the date first set forth above.

<strong>UNITEDLEX CORPORATION</strong>

By:    _____

     Name:

     Title:

4

EXHIBIT 1 to EXHIBIT A

                                        IRREVOCABLE STANDBY LETTER OF CREDIT
NO.[INSERT]

DATE: [INSERT]

APPLICANT:
TITAN INVESTMENT COMPANY INC.
6130 SPRINT PARKWAY, SUITE 300
OVERLAND PARK, KS 66211

BENEFICIARY:
LYNN L. TAVENNER, CHAPTER 7 TRUSTEE
TAVENNER & BERAN, PLC
20 N. 8TH STREET
RICHMOND, VA 23219

AMOUNT: USD 3,050,000.00 (THREE MILLION FIFTY THOUSAND AND 00/100 UNITED STATES
DOLLARS ONLY)

EXPIRATION DATE: JUNE  , 2023]

WE, WELLS FARGO BANK, N.A.("ISSUING BANK"), HEREBY ESTABLISH OUR IRREVOCABLE
STANDBY LETTER OF CREDIT NO.[INSERT NUMBER] ("LETTER OF CREDIT") IN YOUR FAVOR
WHICH WE ARE INFORMED BUT DO NOT INDEPENDENTLY VERIFY THAT THIS LETTER OF CREDIT
IS TO SERVE AS SECURITY FOR THAT CERTAIN FIRST PROMISSORY NOTE DATED [INSERT
DATE] ("NOTE"), ISSUED BY UNITEDLEX CORPORATION (A SUBSIDIARY OF TITAN INVESTMENT
COMPANY INC.) IN CONNECTION WITH THE SETTLEMENT AND RESOLUTION OF THE ADVERSARY
PROCEEDING PENDING IN THE UNITED STATES BANKRUPTCY COURT FOR THE EASTERN DISTRICT
OF VIRGINIA ENTITLED LYNN L. TAVENNER, AS CHAPTER 7 TRUSTEE V. ULX PARTNERS, LLC
ET AL.(IN RE LECLAIRRYAN PLLC).

WE ARE FURTHER INFORMED THAT THIS LETTER OF CREDIT HAS BEEN ISSUED TO COVER THE
PRINCIPAL SUM AS SPECIFIED IN THE NOTE FOR THE AMOUNT OF USD3,000,000.00 TOGETHER
WITH ANY INTEREST (1% PER ANNUM) ACCRUED ON THE PRINCIPAL PAYABLE ON JUNE  , 2023
(THE "MATURITY DATE").

THIS LETTER OF CREDIT IS AVAILABLE AT OUR COUNTERS UPON PRESENTATION OF THE
FOLLOWING DOCUMENTS:

    1. A DRAFT DRAWN ON US AT SIGHT MARKED "DRAWN UNDER WELLS FARGO BANK, N.A.
       STANDBY LETTER OF CREDIT NO. [INSERT REF NUMBER]."

    2. THE ORIGINAL LETTER OF CREDIT AND ANY AMENDMENT(S), IF ANY.

    3. BENEFICIARY'S CERTIFICATE OF ENTITLEMENT IN THE FORM OF ATTACHMENT A.

FULL OR PARTIAL DRAWS ARE ALLOWED.

THE AGGREGATE AMOUNT OF THIS LETTER OF CREDIT AVAILABLE TO BE DRAWN MAY BE
REDUCED BY ANY PREPAYMENT(S) MADE BY UNITEDLEX CORPORATION TO THE TRUSTEE AS

EVIDENCED THROUGH THE BENEFICIARY'S PRESENTATION OF ATTACHMENT B TO THE ISSUING
BANK.

THIS LETTER OF CREDIT SHALL BE AUTOMATICALLY EXTENDED FOR AN ADDITIONAL PERIOD OF
ONE YEAR, WITHOUT AMENDMENT, FROM THE PRESENT OR EACH FUTURE EXPIRATION DATE
UNLESS AT LEAST 30 CALENDAR DAYS PRIOR TO THE THEN CURRENT EXPIRATION DATE WE
SEND YOU A NOTICE BY OVERNIGHT COURIER SERVICE AT THE ABOVE ADDRESS THAT THIS
LETTER OF CREDIT WILL NOT BE EXTENDED BEYOND THE CURRENT EXPIRATION DATE. IN THE
EVENT OF SUCH NOTICE OF NON-EXTENSION, YOU MAY DRAW THE FULL AVAILABLE AMOUNT
HEREUNDER ON PRESENTATION OF THE FOLLOWING DOCUMENTS:

1. A DRAFT DRAWN ON US AT SIGHT MARKED "DRAWN UNDER WELLS FARGO BANK, N.A.
   STANDBY LETTER OF CREDIT NO. [INSERT REF NUMBER]."

2. THE ORIGINAL LETTER OF CREDIT AND ANY AMENDMENT(S), IF ANY.

3. YOUR SIGNED AND DATED STATEMENT WORDED AS FOLLOWS (WITH THE INSTRUCTIONS IN
   BRACKETS THEREIN COMPLIED WITH):

   "THE UNDERSIGNED, AN AUTHORIZED REPRESENTATIVE OF THE BENEFICIARY OF WELLS
   FARGO BANK, N. A. LETTER OF CREDIT NO. [INSERT REF NUMBER], HEREBY CERTIFIES
   THAT BENEFICIARY HAS RECEIVED NOTIFICATION FROM WELLS FARGO BANK, N.A. THAT
   THIS LETTER OF CREDIT WILL NOT BE EXTENDED PAST ITS CURRENT EXPIRATION DATE.
   THE UNDERSIGNED FURTHER CERTIFIES THAT (I) AS OF THE DATE OF THIS STATEMENT,
   BENEFICIARY HAS NOT RECEIVED A LETTER OF CREDIT OR OTHER INSTRUMENT
   ACCEPTABLE TO BENEFICIARY AS A REPLACEMENT; AND (II) [INSERT NAME OF
   APPLICANT] HAS NOT BEEN RELEASED FROM ITS OBLIGATIONS."

IN NO EVENT SHALL THIS LETTER OF CREDIT BE AUTOMATICALLY EXTENDED BEYOND THE
FINAL EXPIRATION DATE OF JUNE    , 2024 (THE "FINAL EXPIRY DATE") WHICH WILL BE
CONSIDERED THE FINAL EXPIRATION DATE.   ANY REFERENCE HEREIN TO A FINAL
EXPIRATION DATE DOES NOT IMPLY THAT WE ARE OBLIGATED TO EXTEND THIS LETTER OF
CREDIT BEYOND THE INITIAL OR ANY EXTENDED DATE THEREOF.

THIS IRREVOCABLE STANDBY LETTER OF CREDIT TERMINATES UPON THE EARLIEST TO OCCUR
OF (I) OUR RECEIPT OF A NOTICE OF CANCELLATION IN THE FORM OF ATTACHMENT C; OR
(II) OUR HONORING OF ANY PRESENTATION HEREUNDER IN THE MAXIMUM AGGREGATE AMOUNT
OF THE LETTER OF CREDIT, OR (III) THE CLOSE OF BUSINESS AT OUR AFORESAID OFFICE
ON THE INITIAL EXPIRY DATE OR ANY FUTURE EXPIRY DATE EXPIRATION HERETO; OR
(IV)THE FINAL EXPIRY DATE.

WE HEREBY ENGAGE WITH YOU THAT ALL DOCUMENT(S) DRAWN UNDER AND IN COMPLIANCE WITH
THE TERMS OF THIS LETTER OF CREDIT WILL BE DULY HONORED THREE DAYS AFETR
PRESENTATION DATE ACCORDING TO YOUR REIMBURSEMENT INSTRUCTIONS IF DRAWN AND
PRESENTED FOR PAYMENT AT OUR OFFICES LOCATED AT WELLS FARGO BANK, N.A., 401 N.
RESEARCH PKWY, 1ST FLOOR, MAC D4004-017, WINSTON-SALEM, NC 27101, ATTN: U.S.
TRADE SERVICES, STANDBY LETTERS OF CREDIT DEPARTMENT ON OR BEFORE THE CURRENT
EXPIRY DATE.

DRAWINGS MAY BE PRESENTED TO US AT OUR ABOVE OFFICE BY HAND DELIVERY OR DELIVERED
TO US BY U.S. POSTAL SERVICE MAIL, REGISTERED MAIL OR CERTIFIED MAIL, OR BY
EXPRESS COURIER OR OVERNIGHT CARRIER.  DRAWINGS MAY ALSO BE PRESENTED TO US BY

FACSIMILE TRANSMISSION TO FACSIMILE NUMBER 844-879-5593 (EACH SUCH DRAWING, A "FAX DRAWING"); PROVIDED, HOWEVER, THAT A FAX DRAWING WILL NOT BE EFFECTIVELY PRESENTED UNTIL YOU CONFIRM BY TELEPHONE OUR RECEIPT OF SUCH FAX DRAWING BY CALLING US AT TELEPHONE NUMBER 1-800-776-3862 (OPTION 2). IF YOU PRESENT A FAX DRAWING YOU DO NOT NEED TO PRESENT THE ORIGINAL OF ANY DRAWING DOCUMENTS, AND IF WE RECEIVE ANY SUCH ORIGINAL DRAWING DOCUMENTS THEY WILL NOT BE EXAMINED BY US. IN THE EVENT OF A FULL OR FINAL DRAWING THE ORIGINAL LETTER OF CREDIT MUST BE RETURNED TO US AT OUR ABOVE OFFICE BY OVERNIGHT COURIER.

LETTER OF CREDIT IS SUBJECT TO THE INTERNATIONAL STANDBY PRACTICES (ISP98) ICC PUBLICATION NR 590 OF THE INTERNATIONAL CHAMBER OF COMMERCE, AND AS TO MATTERS NOT GOVERNED BY THE INTERNATIONAL STANDBY PRACTICES (ISP98), SHALL BE GOVERNED BY AND CONSTRUED IN ACCORDANCE WITH THE LAWS OF THE STATE OF NEW YORK WITHOUT REGARD TO PRINCIPLES OF CONFLICT OF LAWS.

ATTACHMENT A:
CERTIFICATE OF ENTITLEMENT

DATE:

TO:
WELLS FARGO BANK, N.A.
401 N. RESEARCH PKWY, 1ST FLOOR
MAC D4004-017
WINSTON-SALEM, NC 27101
ATTN: U.S. TRADE SERVICES, STANDBY LETTERS OF CREDIT DEPARTMENT

LYNN L. TAVENNER, SOLELY IN HER CAPACITY AS CHAPTER 7 TRUSTEE AND NOT IN HER INDIVIDUAL CAPACITY, HEREBY CERTIFIES AS FOLLOWS:

1.    SHE IS THE BENEFICIARY NAMED IN LETTER OF CREDIT NO. _____ISSUED BY WELLS FARGO BANK, N.A.

2.    THE ENTIRE AMOUNT OF THE FIRST PROMISSORY NOTE DATED [INSERT DATE]IS DUE AND [NO PREPAYMENTS HAVE BEEN RECEIVED FROM UNITEDLEX CORPORATION WHICH REDUCE SUCH AMOUNT.] [OR] [I HAVE RECEIVED USD_____ OF PREPAYMENTS FROM UNITEDLEX CORPORATION AND ACCORDINGLY THE AMOUNT DUE UNDER THE FIRST PROMISSORY NOTE DATED [INSERT DATE]IS USD_____.

3.    ON MAY  , 202_ PLEASE SEND USD_____BY WIRE TRANSFER TO [INSERT BENEFICIARY'S ACCOUNT INFORMATION] .

BY: _____
NAME: LYNN L. TAVENNER

10750-00002/13347539.2
ADMIN 63420202v21

```
TITLE: CHAPTER 7 TRUSTEE
DATE:  _____
```

ATTACHMENT B
ADJUSTMENT OF LETTER OF CREDIT AMOUNT

DATE:

TO:
WELLS FARGO BANK, N.A.
401 N. RESEARCH PKWY, 1ST FLOOR
MAC D4004-017
WINSTON-SALEM, NC 27101
ATTN: U.S. TRADE SERVICES, STANDBY LETTERS OF CREDIT DEPARTMENT

LYNN L. TAVENNER, SOLELY IN HER CAPACITY AS CHAPTER 7 TRUSTEE AND NOT IN HER
INDIVIDUAL CAPACITY, HEREBY CERTIFIES AS FOLLOWS:

1.    SHE IS THE BENEFICIARY NAMED IN LETTER OF CREDIT NO. _____ISSUED BY
WELLS FARGO BANK, N.A.

2.    I HAVE RECEIVED USD_____ OF PREPAYMENT FROM UNITEDLEX CORPORATION AND
ACCORDINGLY THE AMOUNT DUE UNDER THE FIRST PROMISSORY NOTE DATED [INSERT DATE]IS
USD_____ AND AS SUCH I AUTHORIZE THE AMOUNT OF THE LETTER OF CREDIT TO BE REDUCED
TO [_____] TO REFLECT SAME.


BY:  _____
NAME: LYNN L. TAVENNER
TITLE: CHAPTER 7 TRUSTEE
DATE:  _____

10750-00002/13347539.2
ADMIN 63420202v21

ATTACHMENT C
NOTICE OF CANCELLATION
DATE:

TO:
WELLS FARGO BANK, N.A.
401 N. RESEARCH PKWY, 1ST FLOOR
MAC D4004-017
WINSTON-SALEM, NC 27101
ATTN: U.S. TRADE SERVICES, STANDBY LETTERS OF CREDIT DEPARTMENT

LYNN L. TAVENNER, SOLELY IN HER CAPACITY AS CHAPTER 7 TRUSTEE AND NOT IN HER
INDIVIDUAL CAPACITY, HEREBY CERTIFIES AS FOLLOWS:

1.    SHE IS THE BENEFICIARY NAMED IN LETTER OF CREDIT NO. ____ISSUED BY WELLS
FARGO BANK, N.A.

2.    I HAVE RECEIVED PAYMENT(S) FROM UNITEDLEX CORPORATION THAT HAVE MET THEIR
PAYMENT OBLIGATIONS AS SPECIFIED IN THAT CERTAIN FIRST PROMISSORY NOTE DATED
[INSERT DATE] AND AS SUCH I AUTHORIZE THE LETTER OF CREDIT TO BE CANCELLED.

BY: _____
NAME: LYNN L. TAVENNER
TITLE: CHAPTER 7 TRUSTEE

10750-00002/13347539.2
*ADMIN 63420202v21*

DATE: _____

EXHIBIT B: DEFINITIVE FORM

## SECOND PROMISSORY NOTE

**$3,250,000.00**                                                                          **June__, 2022**

UnitedLex Corporation, a Delaware corporation **("Maker"),** has been a defendant in an adversary proceeding pending in the United States Bankruptcy Court for the Eastern District of Virginia entitled *Lynn L. Tavenner, as Chapter 7 Trustee v. ULX Partners, LLC et al. (In re LeClairRyan PLLC)* (the "Case"). The Maker and the plaintiff in the Case, Lynn L. Tavenner, not individually but solely in her capacity as the Chapter 7 Trustee (the "Trustee"), have agreed to settle and resolve all the disputes set forth in the Case  as well as in a related case brought by the Trustee against CVC Capital Partners and others (together with the Case, collectively referred to herein as the "Cases") pursuant to a global settlement agreement dated as of the date hereof (the "Settlement Agreement") entered into by the Trustee on behalf of the Chapter 7 estate of LeClairRyan (the "Estate"). The Maker is making this Note together with another note (the "First Note") as part of the consideration specified in the Settlement Agreement.

The undersigned Maker hereby promises to pay to the order of the Estate the aggregate principal sum of **THREE MILLION TWO HUNDRED FIFTY THOUSAND DOLLARS ($3,250,000.00)** as set forth below with simple interest accruing on the outstanding principal amount at the rate of [1] % per annum, payable in accordance with the terms set forth below.

**Payment Schedule and Payments: T**his Note shall be payable on June  __ , 2024 (the "**Maturity Date").** The Maker may prepay this Note at any time in whole or in part from time to time. The Trustee will notify the Letter of Credit Bank (as defined below) of the amount of any repayment no later than three (3) business days after receipt thereof and any prepayments of the principal balance of this Note will result in a reduction of the Letter of Credit ( as defined below) on a dollar for dollar basis. If the Maker receives any payments relating to the Cases from Starr Surplus Lines Insurance Company ("STARR") as a result of claims made under Policy Number 100063417 (net of any costs of collection, the "Starr Payment'), within ten (10) business days of the actual receipt of such payment from Starr, the Maker shall make a prepayment on the Note equal to the Starr Payment. Both principal and interest are payable to the Trustee in lawful money of the United States in the manner set forth below.

**Letter of Credit:** Unless previously paid by the Maker, payment shall be made by the Trustee's presentation of a Certificate of Entitlement pursuant to a standby irrevocable letter of credit issued by PNB Paribas (the " **Letter of Credit Bank**") in favor of the Trustee in the amount of $3,315,000 in the form attached hereto as Exhibit 1 (the "**Letter of Credit**").

**Waivers.**  Except as expressly set forth herein, the Maker hereby waives presentment for payment, protest and demand and notice of protest, demand, dishonor, nonpayment, intent to accelerate and acceleration of this Note, and expressly agrees that this Note, or any payment hereunder, may be extended from time to time before, at or after maturity, without in any way affecting the liability of the Maker hereunder.

**Notices:** All notices, consents, requests, approvals, demands, or other communication

1

(collectively, "Communication") with respect hereto must be in writing, shall be delivered by email to the respective parties at their e-mail addresses set forth below and shall be deemed delivered upon transmission, provided, however, that notices to the Letter of Credit Bank shall be delivered as set forth in the Letter of Credit. Any of the parties receiving notice hereunder may change its e-mail address by giving the other notice parties written notice of such change in accordance with the provisions of the paragraph.

**If to the Maker:**

UnitedLex Corporation

Nicholas Hinton,

Chief Financial Officer

Nicholas.hinton@unitedlex.com

With  copies to:

Eric Kelly, Chief Legal Officer

UnitedLex Corporation

Eric.kelly@unitedlex.com

J. Gregory Milmoe

Greenberg Traurig, LLC

milmoeg@gtlaw.com

**If to the Trustee:**

Lynn L. Tavenner, Chapter 7 Trustee

ltavenner@tb-lawfirm.com


With copies to:

Paula S. Beran, Esquire

Tavenner & Beran, PLC

pberan@tb-lawfirm.com

Erika L. Morabito, Esquire

2

Quinn Emanuel Urquhart & Sullivan LLP

erikamorabito@quinnemanuel.com


**Modifications.** This Note may only be amended by an instrument in writing signed by the party against whom enforcement of the change or amendment is sought.

**Successors and Assigns.** This Note shall be binding upon the Maker and upon the Maker's successors and assigns and shall inure to the benefit of the Trustee and her successors and assigns.

**Severability.** In the event that any provision hereof shall be deemed to be invalid by reason of the operation of any law, or by reason of the interpretation placed thereon by any court or any governmental body, this Note shall be construed as not containing such provision and the invalidity of such provision shall not affect the validity of any other provisions hereof, and any and all other provisions hereof which otherwise are lawful and valid shall remain in full force and effect.

**Time of the Essence.** Time is of the essence for the performance of the Maker's obligations under this Note.

**Costs of Collection.** If any suit or action is instituted or attorneys are employed to collect this Note or any part hereof, the Maker promises and agrees to pay all costs of collection, including all court costs and reasonable attorneys' fees and expenses.

**GOVERNING LAW; VENUE. This Note shall be construed in accordance with and governed by the laws and decisions of the State of New York, without giving effect to any conflict of law provisions thereof.** The Maker and the Trustee consent to the continuing jurisdiction in any action, claim or other proceeding arising out of any dispute in connection with the Note or the obligations hereunder of the United States Bankruptcy Court for the Eastern District of Virginia, and if such court does not exercise such jurisdiction, of the state courts located in the Borough of Manhattan, New York City, New York, or any Federal court in the Southern District of New York, and waives any objection thereto on the grounds of *forum non conveniens.*


**[Signature Page Follows]**


3

*ADMIN 63420202v20*

**IN WITNESS WHEREOF,** this Note has been executed and delivered by Maker by its duly authorized officer on the date first set forth above.

**UNITEDLEX CORPORATION**

By: _____

Name:

Title:

EXHIBIT 1 to EXHIBIT A

BNP PARIBAS
TRADE FINANCE SERVICES
787 SEVENTH AVENUE
NEW YORK, NY 10019

BENEFICIARY:       LYNN L. TAVENNER, CHAPTER 7 TRUSTEE
                   IN RE LECLAIRRYAN PLLC
                   C/O/ TAVENNER & BERAN, PLC
                   20 N. 8TH STREET
                   RICHMOND, VA 23219
ATTENTION:         LYNN L. TAVENNER, CHAPTER 7 TRUSTEE

APPLICANT:         UNITEDLEX CORPORATION
                   6130 SPRINT PARKWAY, SUITE 300
                   OVERLAND PARK, KS 66211

*ADMIN 63420202v20*

IRREVOCABLE STANDBY LETTER OF CREDIT

STANDBY LETTER OF CREDIT NUMBER:
STANDBY LETTER OF CREDIT AMOUNT:  USD 3,315,000.00
ISSUE DATE: JUNE   , 2022
EXPIRY DATE: JUNE   , 2023
EXPIRY PLACE: AT OUR COUNTERS

WE HEREBY ESTABLISH OUR IRREVOCABLE STANDBY LETTER OF CREDIT NO.
IN YOUR FAVOR AT THE REQUEST OF UNITEDLEX CORPORATION UP TO THE
AGGREGATE AMOUNT OF USD 3,315,000 (THREE MILLION, THREE HUNDRED
FIFTEEN THOUSAND AND 00/100 UNITED STATES DOLLARS) AVAILABLE FOR
SIGHT PAYMENT AT OUR COUNTERS AT BNP PARIBAS, EQUITABLE TOWER, 787
SEVENTH AVENUE, NEW YORK, NY 10019, ATT: TRADE FINANCE SERVICES OF
BNP C/O BNP PARIBAS RCC, INC., NEWPORT TOWER-SUITE 188, 525 WASHINGTON
BOULEVARD, JERSEY CITY, NJ 07310  ATTN: TRADE FINANCE SERVICES BY
PRESENTATION OF A DATED STATEMENT SIGNED BY AN AUTHORIZED
REPRESENTATIVE OF THE BENEFICIARY, READING AS FOLLOWS:

" I, LYNN L. TAVENER, HEREBY CERTIFY THAT I AM THE BENEFICIARY
AUTHORIZED TO EXECUTE THIS STATEMENT. I HAVE RECEIVED [NO] [ $_____]
OF PREPAYMENTS FROM UNITEDLEX CORPORATION AND ACCORDINGLY
DEMAND PAYMENT OF USD [ INSERT AMOUNT] UNDER BNP PARIBAS LETTER OF
CREDIT NO. ISSUED PURSUANT TO THE SECOND PROMISSORY NOTE DATED JUNE
___, 2022 BY UNITEDLEX CORPORATION. "

DRAWINGS MAY BE PRESENTED TO US AT OUR ABOVE OFFICE BY HAND
DELIVERY OR DELIVERED TO US BY U.S. POSTAL SERVICE MAIL, REGISTERED
MAIL OR CERTIFIED MAIL, OR  OVERNIGHT CARRIER. DRAWINGS MAY ALSO BE
PRESENTED TO US BY FACSIMILE TRANSMISSION TO FACSIMILE NUMBER (973)
988 – 4471 (EACH SUCH DRAWING A "FAX DRAWING"). IF YOU PRESENT A FAX
DRAWING YOU DO NOT NEED TO PRESENT THE ORIGINAL OF ANY DRAWING
DOCUMENTS. IN THE EVENT OF A FULL OR FINAL DRAWING, THE ORIGINAL
LETTER OF CREDIT MUST BE RETURNED TO US AT OUR ABOVE OFFICE BY
OVERNIGHT COURIER.

THIS LETTER OF CREDIT EXPIRES AT OUR COUNTERS AT 5:00 PM EASTERN TIME
ON JUNE __, 2023.

IT IS A CONDITION OF THIS LETTER OF CREDIT THAT IT WILL BE
AUTOMATICALLY EXTENDED WITHOUT AMENDMENT TO THE FINAL EXPIRY
DATE OF JUNE ___, 2024, UNLESS WE SEND YOU NOTICE IN WRITING BY
REGISTERED OR CERTIFIED MAIL, OR OVERNIGHT COURIER AT LEAST THIRTY
(30) DAYS PRIOR TO THE CURRENT OR ANY FUTURE EXPIRATION

5

DATE THAT WE ELECT NOT TO EXTEND THIS LETTER OF CREDIT FOR SUCH AN ADDITIONAL PERIOD. UPON RECEIPT OF SUCH NOTICE YOU MAY DRAW HEREUNDER BY PRESENTATION OF A STATEMENT ON YOUR LETTERHEAD SIGNED BY YOU READING AS FOLLOWS:

"I, LYNN L. TAVENNER, CHAPTER 7 TRUSTEE IN THE CASE IN RE LECLAIRRYAN PLLC, HEREBY CERTIFY THAT I AM AUTHORIZED TO EXECUTE THIS STATEMENT AND DEMAND PAYMENT OF USD$ [INSERT AMOUNT] UNDER BNP PARIBAS LETTER OF CREDIT NO. _____ WHICH REPRESENTS FUNDS DUE TO US AS WE HAVE BEEN NOTIFIED THAT BNP PARIBAS HAS ELECTED NOT TO FURTHER EXTEND THIS LETTER OF CREDIT, AND WE HAVE NOT RELEASED UNITEDLEX CORPORATION FROM THEIR OBLIGATIONS TO US AND WE HAVE NOT RECEIVED A REPLACEMENT LETTER OF CREDIT SATISFACTORY TO US."

PARTIAL AND MULTIPLE DRAWINGS(S) MAY BE MADE UNDER THIS LETTER OF CREDIT.

THIS LETTER OF CREDIT IS NOT TRANSFERABLE.

THIS LETTER OF CREDIT IS SUBJECT TO THE INTERNATIONAL STANDBY PRACTICES 1998, THE INTERNATIONAL CHAMBER OF COMMERCE PUBLICATION NO. 590.

WE HEREBY ENGAGE WITH YOU THAT DRAWINGS PRESENTED UNDER AND IN COMPLIANCE WITH THE TERMS AND CONDITIONS OF THIS LETTER OF CREDIT WILL BE DULY HONORED IF PRESENTED TO US AT THIS OFFICE ON OR BEFORE THE EXPIRY DATE, OR ANY AUTOMATICALLY EXTENDED EXPIRY DATE.

CERTAIN ADMINISTRATIVE SERVICES FOR BNP PARIBAS MAY BE PROVIDED BY BNP PARIBAS RCC, INC., BNP PARIBAS, THROUGH ITS CANADA BRANCH, OR ANY DIRECT OR INDIRECT MAJORITY OWNED SUBSIDIARY OF BNP PARIBAS.

BNP PARIBAS
BY: BNP PARIBAS RCC, INC., AS AUTHORIZED AGENT


_____          _____
AUTHORIZED SIGNATURE                    AUTHORIZED SIGNATURE

6

## EXHIBIT B

| Insurer | Type of Policy | Policy No. |
|---|---|---|
| Travelers | Primary D&O | Policy No ███████████ |
| Continental | Excess D&O | Policy No █████████ |
| ███ | | Policy ████████ |
| Columbia | E&O | Policy No. |
| Starr Surplus Lines Insurance Company | Excess E&O | Policy No. ████████ |
| ████████████ | ████████ | Policy No. ████████ |
| | | Policy No. ██████ |
| ████ | ████████ | Policy No ██████████ |