## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
### (Richmond Division)

| | |
|---|---|
| In re:<br><br>**LeClairRyan PLLC,**[1]<br><br>          **Debtor.** | **Chapter 7**<br><br>**Case No. 19-34574 (KRH)** |
| **Lynn L. Tavenner, as Chapter 7 Trustee,**<br><br>          **Plaintiff,**<br><br>v.<br><br>**ULX Partners, LLC, ULX Manager, LLC, UnitedLex Corporation, and Gary LeClair,**<br><br>          **Defendants.** | **Adv. Proc.: 20-03142(KRH)** |
| **Lynn L. Tavenner, as Chapter 7 Trustee,**<br><br>          **Plaintiff,**<br><br>v.<br><br>**CVC Capital Partners, Daniel Reed, Nicholas Hinton, Josh Rosenfeld, P. Douglas Benson,**<br><br>          **Defendants.** | **Adv. Proc.: 21-03095 (KRH)** |

### DECLARATION OF BRITTANY J. NELSON

---

[1] The principal address of the Debtor as of the petition date was 4405 Cox Road, Glen Allen, Virginia 23060, and the last four digits of the Debtor's federal tax identification number are 2451.

Erika L. Morabito (VSB No. 44369)
Brittany J. Nelson (VSB No. 81734)
QUINN EMANUEL URQUHART & SULLIVAN LLP
1300 I Street, N.W., Suite 900
Washington, DC 20005
(202) 538-8334 (telephone)
Email: erikamorabito@quinnemanuel.com
          brittanynelson@quinnemanuel.com

*Special Counsel to Lynn L. Tavenner, Chapter 7 Trustee*

I, Brittany J. Nelson, pursuant to 28 U.S.C. § 1746, hereby declare as follows under penalty of perjury to the best of my knowledge, information, and belief:

1.      I submit this declaration in support of the Trustee's Motion and Memorandum of Law for Entry of an Order (I) Approving (A) Judicially Mediated Settlement and (B) Compensation to Counsel Including an Improvident Payment Under Section 328(A); and (II) Granting Related Relief (the "**9019 Motion**") [Dkt No.[2] 211].[3]

2.      I joined Quinn Emanuel Urquhart & Sullivan, LLP ("**Quinn**" or "**Special Litigation Counsel**") as a lateral partner on May 18, 2021.  While at Quinn, I have been staffed continuously on Quinn's representation of the Trustee since May 2021.  It has been, and continues to be, a large part of my responsibilities and duties to manage, supervise, and/or work on the UnitedLex Litigation, the Reed Adversary Proceeding, and other proceedings in the Bankruptcy Case.  Most recently, I have been heavily involved in the settlement negotiations between the Trustee, the Insurers, and the Defendants and I have personal knowledge of the facts and issues described herein.

**Quinn's Retention Application**

3.      Quinn is one of the most respected and feared law firms in the world, specializing in litigation.  It enters into contingency fee arrangements only on rare occasions, after great scrutiny by a Contingency Fee Committee.  Absent special and unique circumstances, Quinn generally does not advise clients on insurance-coverage related matters on a contingency basis.  In agreeing to enter into the Engagement Letter, Quinn carefully considered the potential strengths

---

[2]  All "Dkt" references are to the Docket in the UnitedLex Adversary Proceeding, unless otherwise indicated herein.

[3]  All capitalized terms not defined herein have the meanings ascribed to them in the 9019 Motion.

and weaknesses of the case and carved out certain tasks from the contingency matter in the Engagement Letter (as hereafter defined), including insurance related matters in this case. Quinn Retention Order at ¶ 15.

4.      On June 7, 2021, the Trustee filed *Trustee's Application to Retain and Employ Quinn Emanuel Urquhart & Sullivan, LLP as Special Litigation Counsel* [Main Dkt No. 908] (the "**Quinn Retention Application**").  On June 28, 2021, the Court entered its *Order Authorizing the Retention and Employment of Quinn Emanuel Urquhart & Sullivan, LLP as Special Litigation Counsel* [Main Dkt No. 937] (the "**Quinn Retention Order**"), retroactive to May 18, 2021.  The Quinn Retention Order is attached hereto as **Exhibit 1**.

5.      The terms of the Quinn Retention Application, as reflected in the both the Quinn Retention Order and the Engagement Letter (as defined in the Quinn Retention Order), allow the Trustee to employ Quinn for both "Contingency Matters" and "Non-contingency matters."  Quinn Retention Order at ¶¶ 3-4.

6.      For the reasons set forth in 9019 Motion, the Trustee is seeking authorization to pay Quinn seven million, three hundred and fifty thousand dollars ($7,350,000) consistent with the terms of the Quinn Retention Order, the Engagement Letter, and with previous applications submitted by Quinn and approved by the Bankruptcy Court.  In addition, pursuant to the terms of the Settlement Agreement, the Trustee is also seeking authorization to pay Quinn an Improvident Payment of $3,150,000, or an amount to be determined by the Court (collectively, the "**ULX Contingency Payment**").

7.      Quinn has not made any prior request for the ULX Contingency Payment.  Except as provided in the Quinn Retention Application and the Quinn Retention Order, Quinn has also not

received any payments on account of the fees requested in the 9019 Motion, including the ULX Contingency Payment.

8.　　No agreement or understanding exists between Quinn and any other person for the sharing of compensation received or to be received for services rendered in connection with this Case.[4]


**The UnitedLex Adversary Proceeding**

9.　　As part of Quinn's role as the Trustee's special litigation counsel, Quinn has been involved with prosecuting individuals under the FAO Order including but not limited to serving as counsel for the Trustee in the UnitedLex Adversary Proceeding, the Reed Adversary Proceeding, and other adversary proceedings against former attorneys and others associated with LeClairRyan (the "**FAO Defendants**").

10.　　In the UnitedLex Adversary Proceeding, Greenberg Traurig, LLC ("**Greenberg**") represented the ULX Defendants, Hinton, and Reed and employed what I would describe as a "scorched earth" litigation strategy, litigating practically every issue in the UnitedLex Adversary Proceeding.

11.　　More specifically, since the filing of the UnitedLex Adversary Proceeding on October 26, 2020, the Trustee and the ULX Defendants have been engaged in complex and substantial litigation. There has been an active motions practice, which has included, among other things, briefing three separate motions to dismiss [Dkt Nos. 17, 88, 104], two motions to amend the complaint [Dkt Nos. 73, 149], as well as a Motion to Withdraw the Reference which was

---

[4] This statement is consistent with the representations made by Quinn in all of its previous applications to the Bankruptcy Court. *See* Main Dkt Nos. 992, 1120 and 1245. Despite Foley having filed a Limited Objection to the 9019 Motion [Main Dkt No. 1365] (the "**Foley Limited Objection**"), there is no agreement at this time to split any fee, including but not limited to the ULX Contingency Fee, with Foley, and that issue is not properly before this Court.

appealed to the District Court [Dkt No. 16]. In addition, there has been extensive discovery, consisting of written discovery, the exchange of hundreds of thousands of pages of documents, discovery disputes (including numerous meet and confers) and related discovery motions, depositions of more than a dozen witnesses, and the retention and utilization of various experts.

12.     Following the close of discovery on January 24, 2022, the litigation shifted heavily into a very labor-intensive and complex ████████████ ████████████████████████████████

██████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████. Moreover, multiple insurers floated various defenses to potential coverage once confronted with a demand for payment, requiring the Trustee and her counsel to continually shift its litigation strategy.

13.     Initially, the Trustee filed the ULX Adversary Proceeding against only UnitedLex and ULXP. Pursuant to Federal Rule of Civil Procedure 26 (made applicable by Bankruptcy Rule 7026) and the Bankruptcy Court's Pretrial Order entered on December 17, 2020 [Dkt No. 9], UnitedLex and ULXP served their initial disclosures on December 31, 2020 (the "**Initial Disclosures**"). The Initial Disclosures are attached hereto as **Exhibit 2**.

14.     ████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████████████

█████

15.     ████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

████████████████████████████████.

16.     When the Initial Disclosures were made, the only defendants in the UnitedLex Adversary Proceeding were UnitedLex and ULXP.  On August 24, 2022, the Bankruptcy Court granted the Trustee's Motion to Amend the Complaint [Dkt 85].  Thereafter, on August 25, 2021, the Trustee filed the Amended Complaint [Dkt No. 86], which, among other things, added ULX Manager as a defendant.

17.     As a result of the filing of Amended Complaint, the Bankruptcy Court entered a new pre-trial order, the Third Amended and Restated Pretrial Order [Dkt No. 100] (the "**Third Pretrial Order**") (which is attached hereto as **Exhibit 3**).  That order specifically mandated that "[t]o the extent not already provided, the parties shall make the pretrial disclosures required under Rule 7026(a)(1) of the Federal Rules of Bankruptcy Procedure within 14 days following the Court's entry of this Pre-Trial Order."  *Id.* at ¶ 3.

18.     On October 4, 2021, ULX Manager filed its initial disclosures (the "**ULX Manager Initial Disclosures**") (which is attached hereto as **Exhibit 4**).  In the ULX Manager Initial Disclosures, ULX Manager "adopt[ed] as their own the Rule 7026(a)(1)(A) Initial Disclosures served by Defendants ULX Partners, LLC and UnitedLex Corporation on December 31, 2020, as supplemented by ULX Partners, LLC's and UnitedLex Corporation's responses to the Trustee's interrogatories and requests for production of documents in this matter."  UnitedLex and ULXP did not serve or update the Initial Disclosures at this time.  ████████████████████

███████████████████████████████████████████████████████

████████████████████████████████████████.

19.    ████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

██████████████████████████████████████

20.    Between October 4, 2021 and the close of discovery on January 21, 2022, the Trustee and the ULX Defendants engaged in extensive discovery, including but not limited to taking more than a dozen depositions in December and January.

21.    Following the close of discovery, on February 1, 2022, the ULX Defendants' counsel and the Trustee's counsel held a meet and confer regarding the Trustee's desire to amend the Amended Complaint.  I participated on that call, as well as certain of my colleagues at Quinn including Ms. Morabito and Mr. Grable ("**February 1 Meet and Confer**").

22.    ████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████



23.

24.



25.

26.     At the February 4 Hearing, which I attended on behalf of the Trustee, my colleague Ms. Morabito represented to the Court that the Trustee had made it a condition that any D&O carrier was required to attend the mediation.  Following that hearing, the Bankruptcy Court ordered that "Unless otherwise ordered by the Mediator in the Mediator's sole discretion, the Trustee, the Parties, Daniel Reed, Nicholas Hinton, Travelers Insurance Company and each of the foregoing's counsel shall attend the mediation." [Dkt. No. 142].  The Bankruptcy Court also made clear at the hearing that regardless of the decision to engage in mediation, the trial scheduled on April 18, 2022 would go forward.

27.



28.

29.

30.

31.





35. ██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

████████████████████████████████████████.

36.    On March 5 and March 6, 2022, certain of the Parties, their respective counsel, and the Mediator participated in a two-day in-person mediation in Richmond, Virginia. I attended this mediation (the "**First Mediation**"). Among other things, ████████████████████████

████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████.

37. ██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

████████████████████████████████████████████

38. ██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████



39.

40.

41.

42.

---

[5]  Counsel for CNA also represents both Columbia and Continental.

13

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████.

43.    ████████████████████████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████

44.    Thereafter, on March 8, 2022, the Mediator entered the March 8 Insurance Order and the Information Exchange Order.

45.    Also on March 8, 2022, the Bankruptcy Court held a status conference and explained that the Mediator had asked the Court to continue the trial to allow mediation to continue.  The Bankruptcy Court rescheduled the trial for May 16. ██████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████.

46.    Based on the information that the Trustee learned at the First Mediation regarding

███████████████████████████████████████████████████████████



**The Insurance Related Production**

47.    On March 18, 2022, the ULX Defendants produced approximately 5,000 pages of documents responsive to the March 8 Order (the "**March 18 Production**").

48.    The Special Litigation Counsel spent considerable time reviewing and analyzing the documents in the March 18 Production.

49.



50.



51.     The Special Litigation Counsel, including myself, and counsel for the ULX Defendants, Mr. Reed and Mr. Hinton, participated in several telephone conferences to meet and confer

52.

53.

---

[7]



56.    In addition, in light of the ███████████████████████, and the extraordinary tight timeframe before the beginning of trial, the Trustee requested that her Special Litigation Counsel devote significant time and resources to researching and analyzing ███████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████

57.    ███████████████████████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████

**The Mediation Continues and the Parties Agree to the Mediator's Proposal**

58.    ███████████████████████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████



59.

60.



61.     In addition, between the First Mediation and the Second Mediation, the Special Litigation Counsel also devoted a significant amount of resources and effort to:

62.     After further exchanges of substantive information between the ULX Defendants, the Trustee, and/or the Mediator, certain of the Parties continued the in-person mediation on April 12 and 13, 2022 in Richmond, Virginia. I, along with several of my colleagues, attended the Second Mediation.

63.     During the Second Mediation, it became clear to the Trustee that the best path forward would be a global resolution of all claims (and potential claims)

_____

[8]

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

███████████████████████████████

64.     On April 13, 2022, after continued hard fought and arm's-lengths negotiations between all of the Parties (that I personally was involved in), the Mediator made a global and comprehensive proposal to fully and finally resolve all of the pending Claims in the Two Adversary Proceedings (the "**Mediator's Proposal**").   The Mediator's Proposal included the Improvident Payment.  This proposal was made entirely at the direction of the Mediator.  Neither Quinn nor the Trustee had any input into the Mediator's Proposal, nor did they make any request (directly or indirectly) for the Improvident Payment.   In addition, the Mediator's Proposal was presented to all of the Parties as a "take it or leave it" proposition.  It was my understanding from the Mediator that the Improvident Payment was a material and integral part of the Mediator's Proposal. ████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

██████████████████████████████████

65.     At the direction of the Mediator, the Defendants and the Insurers had until no later than 12 p.m. on April 19, 2022 to (a) accept or reject the Mediator's Proposal in total; and (b) if accepted, provide specifics as to the manner, timing, and related security for payments and/or promises to pay (collectively, the "**Settlement Payment Nuances**").

66.     Prior to the Mediator advising the parties of the Mediator's Proposal, which included among other things the Improvident Payment, no one from Quinn had any discussions with anyone (including but not limited to the Mediator, the Trustee, or any of the Parties) as to the actual Mediator's Proposal (or the Improvident Payment contained therein).  Additionally, the Improvident Payment in no way impacted Quinn's advice to the Trustee as to whether the Trustee should accept or reject the Mediator's Proposal.

67.     The hearing on the Second Motion to Amend was to be heard by the Bankruptcy Court at 11:00 a.m. on April 19, 2022.  Approximately 30 minutes before that hearing, however, the Defendants and the Insurers agreed to the Mediator's Proposal and provided the Settlement Payment Nuances, and the same was immediately conveyed to Special Litigation Counsel.  The Trustee thereafter was asked to accept or reject the Mediator's Proposal with the Settlement Payment Nuances that had been already accepted by the Defendants and the Insurers.  In the exercise of her business judgement the Trustee determined that the Mediator's Proposal with the Settlement Payment Nuances was in the best interest of the Estate and as such accepted the Settlement.  Thereafter, the Mediator directed the Trustee, through counsel, to inform the Court at the impending hearing of the material terms of the Settlement reached between the Parties.  As such, the material terms of the Settlement, including the Improvident Payment, were set forth on the record at the April 19, 2022 hearing with the participation of counsel for the ULX Defendants, Mr. Hinton, and Mr. Reed.  I, along with several of my colleagues, attended that hearing on behalf of the Trustee.

**The Settlement is Fair and Equitable and in the Best Interest of the Estate**

68.     Following the receipt of the Mediator's Proposal and the Settlement Payment Nuances, and in consultation with the Trustee, Quinn and the Trustee agreed that entry into the Settlement on those terms was fair, equitable, and in the best interest of the Estate. I participated in this analysis and multiple discussions with the Trustee regarding the same.

69.     ███████████████████████████████████████████████████
███████████████████████████████████████████████████████
███████████████████████████████████████████████████████
███████████████████████████████████████████████████████
███████████████████████████████████████████████████████
███████████████████████████████████████.

70.     The Special Litigation Counsel and the Trustee contend that the Settlement preserves additional Estate resources that would have been spent on, among other things, a two-week trial in the UnitedLex Adversary Proceeding, prosecuting the Reed Adversary Proceeding, and associated appeals. Given the scope and complexity of the UnitedLex Adversary Proceeding, the Special Litigation Counsel had anticipated that the Reed Adversary Proceeding could have been equally time-consuming and complicated.

71.     Finally, absent approval of the Settlement, Quinn would seek compensation on an hourly basis from the Estate (consistent with the terms of the Engagement Letter) in an amount that could likely exceed the amount of the Improvident Payment that was directed solely by the Judicial Mediator. Furthermore, despite the Mediator declaring it a material and integral part of the Settlement (as set forth on the record on April 19, 2022), Quinn voluntarily agreed to limit the amount of the Improvident Payment to $3,150,000 or an amount otherwise approved by the

Bankruptcy Court, as reflected in the Settlement Agreement.  As such, the Settlement Agreement provides a sum certain to be recovered by the Estate.

**The Unforeseen Events** ███████████████████████████████████████████

72.    At the time the Quinn Retention Order was entered, neither the Trustee nor the Special Litigation Counsel were capable of anticipating that ██████████████████████████
████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████
█████████████████████████████████████████ (5) other unanticipated developments resulting therefrom (collectively, the "**Unforeseen Events**").   These were all unique and unpredictable circumstances that were not capable of being anticipated and further support the Improvident Payment directed by the Mediator.

73.    In light of the Unforeseen Events, the Special Litigation Counsel and the Trustee followed a litigation path that was consistent with the representation ████████████████████
████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████
Moreover, the Special Litigation Counsel and the Trustee proceeded litigating until on or about

March 18, 2022 █████████████████████████████████████████████████

███████████████████████████████████████████████████████████████.

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████

74.    **Earlier Resolution**: ███████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

██████████████████████████████. ████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████



████████████████████████████████████████████████████████████

████████████████████████████ 9

75.    **Pursuit of Different Causes of Action**:    ███████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

██████████  ).  More specifically, there are at least two large strategic issues on which the Special

Litigation Counsel may have given different advice to the Trustee had it been capable of

anticipating the Unforeseen Events.  First, the Special Litigation Counsel may not have

recommended to the Trustee to file the Second Motion to Amend.  ███████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

███████████  Further, the cost-benefit analysis of filing such a motion that was discussed with the

Trustee would likely have been drastically different had the Special Litigation Counsel been

capable of anticipating the Unforeseen Events.  Second, another large strategic litigation decision

for the Special Litigation Counsel involved prosecuting a conspiracy cause of action against

UnitedLex and others, given the Bankruptcy Court's ruling on the motion to dismiss [Dkt No. 57]

on July 20, 2021 and other subsequent facts uncovered during discovery.  ███████████████

████████████████████████████████████████████████████████████

█████████████████████████████  it is likely that the Special Litigation Counsel and the Trustee

9  ████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████

would have chosen a different course of action for the conspiracy claims than the one adopted for strategic purposes, efficiency, time, costs, and risk.

76.    **Reed Adversary Proceeding:**    The Special Litigation Counsel also may have advised the Trustee differently regarding the filing and prosecution of the Reed Adversary Proceeding against the multiple defendants (including CVC, Reed, Hinton, and other directors and officers of UnitedLex) had it been capable of anticipating the Unforeseen Events, including pursuing different defendants or different causes of actions.  Or, alternatively, the Reed Adversary Proceeding may have been resolved much sooner had the Special Litigation Counsel and the Trustee been capable of anticipating the Unforeseen Events and negotiated a global settlement at the outset of the litigation, as described above.

77.    **Settlement Discussions with Other FAO Defendants:**    In addition, the Special Litigation Counsel advised the Trustee on a global strategy as to all FAO Defendants.  This included not only the UnitedLex Adversary Proceeding and the Reed Adversary Proceeding, but also other adversary proceedings with former directors and officers of LeClairRyan. ███████

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

██████████████████████████████████████████████.    Such settlements were made, at times and with certain individuals, for cooperation value in conjunction with the UnitedLex Adversary Proceeding and the Reed Adversary Proceeding.  The Special Litigation Counsel may not have expended the time necessary on these cooperation clauses had the Two Adversary Proceedings been resolved earlier, ███████████████████████████████

██████████████████████████████████████ and capable of anticipating the Unforeseen Events that followed.

**The Reasonableness of the Improvident Payment**

78.    After consultation with the Trustee, the Trustee's General Counsel, and the various partners who worked on the matter, Quinn and the Trustee maintain that Quinn is entitled to the the Improvident Payment in an amount of $3,150,000 as directed by the Mediator and pursuant to section 328(a) of the Bankruptcy Code.

79.    As more fully described below, the reasonableness of the Improvident Payment can be justified in at least three different ways: (1) the Improvident Payment was a material and integral part of the Mediator's Proposal (as described above); (2) the amount of fees Quinn billed between October 4, 2021 (the date of the ULX Manager Initial Disclosures) through April 19, 2022 (the date that the Settlement was put on the record) exceeded the $3,150,00 by more than two-fold; and (3) the amount of the Additional Services (as hereafter defined) provided by Quinn to persevere when others would not is greater than $3,150,000.

80.    The Trustee, the Trustee's General Counsel, and Quinn maintain that a reasonable person could conclude that one conservative measure of the reasonableness of the amount of the Improvident Payment is the amount of fees Quinn actually incurred between October 4, 2021 ████ through April 19, 2022 (the date that the Settlement was put on the record).  The ███████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

███████████████████████████████████████████████████████████████████

███████████████████████████.

81.    Between October 4, 2021 and April 19, 2022, in addition to the work described above, Quinn also conducted various tasks, including but not limited to:  (a) conducting discovery, including engaging with the ULX Defendants on open discovery issues and preparing, taking, and defending dozens of depositions; (b) researching, drafting, and filing the lengthy Opposition to Summary Judgment [Dkt No. 150] and preparing to argue the Summary Judgment Hearing; (c) briefing a Motion to Amend, including drafting a Second Amended Complaint, Motion in Support of the Motion to Amend, and Reply in Support of the Second Amended Complaint; (d) numerous witness interviews and negotiation with potential FAO Defendants for cooperation clauses; (e) preparing witnesses and other testimony in light of the impending trial; (f) preparing expert witness disclosures and other theories regarding damages; and (g) strategizing regarding the strengths and weaknesses of the case in light of discovery, damages, legal theories, and insurances.

82.    In addition, the Trustee also prepared for and participated in the Mediation, which included providing additional services that could not have been anticipated.  Given the Unforeseen Events described above, the Special Litigation Counsel was forced to prepare differently for the First Mediation and the Second Mediation.  This included, among other things, now having to negotiate regarding ███████████████████████; preparing (and re-preparing) for the mediation in light of the new information learned ████████████████████; legal research and analysis regarding ██████████████████████ the impact of those ████████████████ the causes of action asserted by the Trustee in the Two Adversary Proceedings; analyzing, reviewing and revising damage models ███████████████████

██████████, including multiple conferences with the Trustee's expert regarding the same; additional witness interviews in light of the new focus on different causes of actions ████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████, certain of the Defendants, and certain of the Insurers regarding the Trustee's claims, damages, and positions on coverage; negotiating various issues, including confidentiality concerns, with the mediation parties; analyzing potential conflicts; and traveling to and attending the First Mediation and the Second Mediation (the "**Additional Services**").

83.     My careful review of the Quinn time records from October 4, 2021 through April 19, 2022 (the date that the terms of the Settlement were stated on the record), using discounted standard hourly rates, determined that Quinn timekeepers expended 6,929.90 hours with an approximate value of $6,663,015.90,[10] an amount that far exceeds the amount of the Improvident Payment directed by the Mediator.   While not required to do so, Quinn nonetheless provided 1696 unedited and unredacted time entries to the Office of the United States Trustee showing time billed by Quinn during this period.

84.     Furthermore, using an even more conservative date range, my careful review of the Quinn time records from February 4, 2022 (the point in time when the ████████████



April

---

[10]   This amount does not include any amount attributable to work in other adversary proceedings, including but not limited to the Reed Adversary Proceeding, or other amounts attributable to negotiating with other FAO Attorneys and others ( the "**Necessary Ancillary Services**").  As set forth herein, Quinn estimates that the time billed to for the Necessary Ancillary Services that would not have been necessary but for the Unforeseen Events is approximately $235,000 for the period from February 4 to April 19 and $350,000 for the period from October 4 to April 19.

19, 2022 (the date the Settlement was placed on this Court's record) shows the value of Quinn's

services exceed $3,150,000 after factoring in the following: (1) inclusion of the Necessary

Ancillary Services; (2) 2022 rate increases; (3) standard hourly rates; and (4) unbilled time.

85.     The primary timekeepers for Quinn in connection with its representation of the

Trustee from October 4, 2021 to April 19, 2022, including their title and hourly rates, are as

follows:

| Name of Professional | Title | 2021 Hourly Rate (With 10% Discount) | 2022 Hourly Rate (With 10% Discount)[11] | 2022 Standard Hourly Rate | Total Hours Billed | Total Fees (based on 2021 Discounted Hourly Rate) |
|---|---|---|---|---|---|---|
| Danielle Gilmore | Partner | $1,377.00 | $1,516.50 | $1,685.00 | 25.70 | $35,388.90 |
| Dave M. Grable | Partner | $1,246.50 | $1,372.50 | $1,525.00 | 312.00 | $388,908.00 |
| Erika L. Morabito | Partner | $1,377.00 | $1,516.50 | $1,685.00 | 915.60 | $1,260,781.20 |
| Brittany J. Nelson | Partner | $1,080.00 | $1,188.00 | $1,320.00 | 813.90 | $879,012.00 |
| Matthew R. Scheck | Partner | $1,143.00 | $1,255.50 | $1,395.00 | 457.70 | $523,151.10 |
| K. John Shaffer | Partner | $1,660.50 | $1,827.00 | $2,030.00 | 1.70 | $2,822.85 |
| Rex Lee | Of Counsel | $1,053.00 | $1,156.50 | $1,285.00 | 478.10 | $503,439.30 |
| Bennett Murphy | Of Counsel | $1,143.00 | $1,255.50 | $1,395.00 | 323.10 | $369,303.30 |
| Michael Smith | Of Counsel | $1,053.00 | $1,156.50 | $1,285.00 | 787.30 | $829,448.10 |
| Rafe Andrews | Associate | $855.00 | $999.00 | $1,110.00 | 121.70 | $104,053.50 |
| Daniel Loud | Associate | $441.00 | $801.00 | $890.00 | 201.50 | $88,861.50 |
| Jaclyn Palmerson | Associate | $958.50 | $1,089.00 | $1,210.00 | 3.80 | $3,642.30 |
| Isabel Peraza | Associate | $729.00 | $859.50 | $955.00 | 333.50 | $226,561.50 |
| Ari Roytenberg | Associate | $958.50 | $1,089.00 | $1,210.00 | 318.90 | $305,665.65 |
| Kyra Simon | Associate | $958.50 | $1,089.00 | $1,210.00 | 302.10 | $289,562.85 |
| Lindsay M. Weber | Associate | $1,021.50 | $1,125.00 | $1,250.00 | 354.70 | $362,326.05 |
| Samantha Yantko | Associate | $958.50 | $1,089.00 | $1,210.00 | 83.80 | $80,322.30 |
| Eva Korol | Contract Atty | $342.00 | $382.50 | $425.00 | 121.10 | $41,416.20 |
| Nathalie Pierre | Contract Atty | $342.00 | $382.50 | $425.00 | 327.50 | $112,005.00 |
| Michael Alexander | Paralegal | $373.50 | $409.50 | $455.00 | 1.20 | $448.20 |
| Alex Baselga Garriga | Paralegal | $373.50 | $409.50 | $455.00 | 252.10 | $94,159.35 |
| Connie Kim | Paralegal | $373.50 | $409.50 | $455.00 | 44.60 | $16,658.10 |
| Leana Lorenzana | Paralegal | $373.50 | $409.50 | $455.00 | 19.10 | $7,133.85 |
| Dave Scholz | Graphics Director | $373.50 | $409.50 | $455.00 | 22.00 | $8,217.00 |
| Nicole Molee | Law Clerk | $441.00 | $486.00 | $540.00 | 151.80 | $66,943.80 |
| Eugenia Jones | Litigation Support | $423.00 | $423.00 | $470.00 | 0.50 | $211.50 |
| Morgan Brady | Staff Atty | $405.00 | $445.50 | $495.00 | 154.50 | $62,572.50 |
| **TOTAL** | | | | | **6,929.90** | **$6,663,015.90** |

---

[11]   Although the Quinn Retention Order allowed Quinn to increase all of its rates (on thirty days' notice) and
associate rates as of January 2022, Quinn elected not to do so prior to the hearing on the 9019 Motion given this matter
was billing as a contingency case.   If Quinn had raised its rates, the value of the time billed for the Unforeseen Events
would have been even greater.

86.     As indicated above, the "Total Fees" indicated in the chart are calculated using Quinn's 2021 standard hourly rate, less a 10 percent discount, as provided for in the Quinn Retention Order.  Those rates were set at a level designed to fairly compensate Quinn for the work of its attorneys and paralegals and to cover fixed and routine overhead expenses.  The chart also includes Quinn's 2022 standard hourly rates and discounted rates.

87.     Quinn and the Trustee maintain that many of the necessary non-contingent Additional Services that arose from the Two Adversary Proceedings would have been compensated on an hourly basis had the Trustee and Quinn known all of the Unforeseen Events and where Quinn persevered where others would have not.  Based on my careful review of the time records, discussions with other partners at Quinn, and in consultation with the Trustee and the Trustee's General Counsel, as stated above, Quinn has concluded that the value of the Additional Services exceeds $3,150,000.  Therefore, the Improvident Payment as directed by the Mediator is a reasonable amount and meets the standards set forth in section 328(a).

88.     Thus, absent approval of the Settlement, Quinn will seek compensation on an hourly basis from the Estate in an amount that will exceed $3,150,000.

**Other 328(a) Factors Also Support the Award of the Improvident Payment**

89.     In addition, the Improvident Payment is also supported by section 328(a) of the Bankruptcy Code because, among other things, as the Trustee and the Mediator acknowledged, the results obtained in the Two Adversary Proceedings were extraordinary and exceeded reasonable expectations.  Quinn further assumed great risk in taking on such representation and never could have anticipated the Unforeseen Events and the continual impact of same on the litigation.  The Settlement is a fantastic result for the Estate.  It brings in a sum certain for the

Estate and ends what could have been years of protracted and costly litigation. Significantly, there is no collectability issues with the significant amount that the Estate is receiving. The Estate is receiving most of its funds at the Closing Date. And, even for the amounts that it is receiving after the Closing Date, the Trustee and the Special Litigation Counsel carefully negotiated for certainty regarding the collectability of the remainder of the payments. Given the range of reasonable recoveries, the amount of the net settlement proceeds to the Estate is more than what could have been expected under numerous other scenarios. Further, and while not directed by the Mediator, Quinn voluntarily agreed as part of the Settlement Agreement that the Improvident Payment will only be paid after the Estate receives the Total Settlement Payment.

90.    Moreover, as the Trustee acknowledged and as more fully set forth herein, Quinn persevered where other attorneys would have curtailed their efforts in light of the voluminous and complex litigation, and certainly in light of the Unforeseen Events. Because Quinn was not capable of anticipating the Unforeseen Events, Quinn had to persevere in the face of tremendous adversity. It is not reasonable for Quinn to have anticipated that ███████████████████ ████████████████████████████████████████████████████ ████████████████████████████████████████████████████ ███████████████████████████████ Furthermore, Quinn could not have anticipated the impact that such behavior would have on the litigation path pursued throughout the case, ██████████████████████████████████████████████████ ████████████████████████ Indeed, I have not faced such a unique situation in my fifteen-year career. Moreover, many of my partners with longer careers had never found themselves in this situation either. This is truly a unique and unusual circumstance.

91.    Despite the Unforeseen Events, Quinn persevered in achieving a settlement under very difficult circumstances and in an extraordinarily tight time frame leading up to a two-week trial. ████████████████████████████████████████████ ████████████ Quinn was able to marshal its resources, pivot its litigation strategy on a dime, and use the information ████████████████████████████████ to effectuate a remarkable result for the Estate.  The Trustee and the Mediator have all acknowledged in my presence the extraordinary result that was ultimately achieved for the Estate by Quinn in their role as Special Litigation Counsel to the Trustee, despite the Unforeseen Events.

92.    The statements contained herein may be supplemented at any time prior to the hearing on the 9019 Motion.

93.    To the best of my knowledge, information, and belief, I declare under penalty of perjury that the foregoing is true and correct.

**BRITTANY J. NELSON**

Dated: June 3, 2022                              By:    *Brittany J. Nelson*
                                                       Brittany J. Nelson

Dated:  June 3, 2022                             Respectfully submitted,

                                                */s/ Erika L. Morabito*
                                                Erika L. Morabito (VSB No. 44369)
                                                Brittany J. Nelson (VSB No. 81734)
                                                QUINN EMANUEL URQUHART
                                                 & SULLIVAN, LLP
                                                1300 I Street, NW, Suite 900
                                                Washington, DC  20005
                                                (202) 538-8000 (telephone)
                                                (202) 538-8100 (facsimile)
                                                erikamorabito@quinnemanuel.com

                                                *Special Counsel to Lynn L. Tavenner, the Chapter 7*
                                                *Trustee of the Estate of LeClairRyan PLLC*

## CERTIFICATE OF SERVICE

I certify that on this 3rd day of June, a true copy of the foregoing Declaration was filed under seal pending this Court's final ruling on the request by the United Lex Defendants to seal aspects of the 9019 Motion.  Thereafter, the foregoing Declaration will be served as provided in said ruling.

*/s/ Erika L. Morabito*
Erika L. Morabito, Esq.
*Special Counsel to Lynn L. Tavenner, the Chapter 7*
*Trustee of the Estate of LeClairRyan PLLC*