**UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
(Richmond Division)**

| | |
|---|---|
| In re:<br><br>    LeClairRyan, PLLC,[1]<br><br>              Debtor. | Case No. 19-34574-KRG<br><br>Chapter 7 |
| Lynn L. Tavenner, as Chapter 7 Trustee,<br><br>              Plaintiff,<br>v.<br><br>ULX Partners, LLC, UnitedLex Corporation,<br>and ULX Manager LLC,<br><br>              Defendants. | Adv. Proc. No. 20-03142 (KRH) |
| Lynn L. Tavenner, as Chapter 7 Trustee,<br><br>              Plaintiff,<br>v.<br><br>CVC Capital Partners, et al.,<br><br>              Defendants. | Adv. Proc. No. 21-03095 (KRH) |

**REPLY IN SUPPORT OF TRUSTEE'S MOTION AND MEMORANDUM OF LAW FOR
ENTRY OF AN ORDER (I) APPROVING (A) JUDICIALLY MEDIATED
SETTLEMENT AND (B) COMPENSATION TO COUNSEL INCLUDING AN
IMPROVIDENT PAYMENT UNDER SECTION 328(A); AND (II) GRANTING
<u>RELATED RELIEF</u>**

---

[1] The principal address of the Debtor as of the Petition Date was 4405 Cox Road, Glen Allen, Virginia 23060, and the last four digits of the Debtor's federal tax identification number are 2451.

Lynn L. Tavenner, Trustee, not individually, but solely in her capacity as the Chapter 7

trustee (in such capacity, the "**Trustee**") of the bankruptcy estate (the "**Estate**") of LeClairRyan

PLLC ("**LeClairRyan**" and/or the "**Debtor**" and/or "**LCR**")), in the above-referenced Chapter 7

case, by counsel, respectfully submits this Reply (the "**Reply**") in support of the *Trustee's Motion*

*and Memorandum of Law for Entry of an Order (I) Approving (A) Judicially Mediated Settlement*

*and (B) Compensation to Counsel Including an Improvident Payment under Section 328(a); and*

*(II) Granting Related Relief* [Dkt No. 211][2] (the "**Motion**"), and in response to the objections (the

"**Objections**") filed by the United States Trustee [Dkt Nos. 219 and 243] (the "**US Trustee**

**Objection**") and Foley & Lardner [Dkt No. 240] (the "**Foley Objection**") (collectively, the

"**Objections**").[3]

In support of the Motion and this Reply, the Trustee incorporates by reference the

Declaration of Ms. Lynn Tavenner, dated June 3, 2022 [Main Dkt No. 1374] (the "**Tavenner**

**Declaration**") and the Declaration of Ms. Brittany Nelson, dated June 3, 2022 [Dkt No. 249]

(the "**Nelson Declaration**"), and respectfully states as follows:

## PRELIMINARY STATEMENT

1.      After mediating for more than two and a half months, litigating for over a year and

a half, and engaging in hard fought, arms-length negotiations with the multiple Parties to the

Settlement Agreement, aided in large part by a significant amount of hours (more than 100)  put in

by the judicial mediator in this case (who happens to be the Chief Bankruptcy Judge in this District),

---

[2]  All "Dkt" references are to the Docket in the UnitedLex Adversary Proceeding, unless otherwise indicated herein.

[3]  Collectively, John P. Fitzgerald, III, Acting United States Trustee for Region Four (the "**US Trustee**") and Foley & Lardner LLP ("**Foley**") are referred to herein as the "**Objectors**".  Capitalized terms used but not otherwise defined in this Reply shall have the meanings ascribed to them in the Motion.

the Trustee, in the exercise of her business judgment strongly believes that the relief requested in

the Motion is in the best interest of the Estate. *See, e.g.,* Tavenner Declaration at ¶¶ 4, 30, 33, and

37. Notwithstanding the foregoing, and the overwhelming evidence contained in the Tavenner

Declaration and the Nelson Declaration supporting the relief requested in the Motion, there are still

two parties (the US Trustee and Foley) who are objecting to certain parts of the comprehensive and

global settlement reached by the Parties whereby the material terms of the Settlement were put on

the record on April 19, 2022, as directed by the Mediator. Simply put, these two Objectors want it

both ways – on one hand, applauding the amount of the Settlement and the efforts by the Trustee

and her counsel, while on the other hand seeking to eliminate a material and integral term of the

Settlement. In light of the substantial evidence supporting the Settlement, these two Objectors

cannot, no matter how hard they try, rewrite Rule 9019 and section 328(a) of the Bankruptcy Code.

They also cannot substitute their judgment for that of the business judgment of the Trustee, who

has been living this case for almost two years.

2. Tellingly, both of the Objectors actually support approval of the 9019 Motion

(absent one provision) and neither provide any case law that supports striking one material provision

from the Settlement Agreement.[4] The Objectors do not oppose the Settlement because the

Settlement Agreement unquestionably satisfies the governing standards under Bankruptcy Rule

9019. In fact, neither of the Objections even attempt to show that the terms of the Settlement fall

---

[4] With little to no analysis or evidence, Foley labels the Improvident Payment as "gratuitous," and urges this Court to rely on Foley's judgment regarding what is or is not a material and integral term of the Settlement. Rather, the Court can make this determination on its own and/or rely on the judgment of the Parties to the Settlement Agreement. *See* Foley Objection at ¶ 53. This is particularly egregious given that Foley has not been involved in this litigation since approximately June 2021 and never participated in any of the discussions that resulted in the Settlement that is now being asked to be approved by this Court.

outside the range of reasonableness.  The Objections also fail to show how the Settlement terms are unfair or somehow not in the best interest of the Estate.

3.          Simply put, neither the Trustee, in the exercise of her business judgment, nor the Mediator, believe that they can deliver better or more certain value by incurring the time, expense, and uncertainty of litigation, in lieu of this Settlement.  For these reasons, the reasons set forth in the Motion, and the reasons set forth below, the Trustee respectfully requests that the Court overrule the Objections and grant the relief requested in the Motion in its entirety.

## **ARGUMENT**

I.      **The US Trustee and Foley Praise the Settlement and Provide No Valid Reason Why the Improvident Payment Cannot Be Approved as an Integral and Material Part of the 9019 Settlement as Directed By The Mediator**

4.          As a fiduciary for all creditors of the Estate, the Trustee has negotiated in good faith a very favorable result that satisfies the Bankruptcy Rules and applicable law.  In fact, the Objections actually laud the Settlement, calling it an "excellent result,"[5] a "commendable accomplishment by both the Trustee and Quinn,"[6] and noting that it provides "substantial recoveries for the Debtor's estates and its creditors."[7]  And, Foley even concedes that "Questioning the business judgment of the Trustee or the efforts of Quinn, led by Ms. Morabito, is _**not**_ the crux of this Objection."  Foley Objection at ¶ 1.  Yet, the Objections ask this Court to reject one material and integral term, the Improvident Payment, as if it could be "blue penciled" or otherwise rewritten

---

[5]   *See* US Trustee's Objection at p. 2 ("The $21 million dollar settlement appears to be an excellent result, and the United States Trustee does not object to, or question the Chapter 7 trustee's business judgment as to the amount of the settlement or the mutual releases contained therein.").

[6]   Foley Objection at ¶ 1.

[7]   *Id.*

by them or the Court.  The Improvident Payment was a material and integral term of the Settlement directed solely by the Mediator.  While none of the Parties liked every aspect of the Settlement, all of the Parties agreed to the Settlement in full as a comprehensive global settlement to resolve all of the claims and potential claims of the Parties in exchange for the mutual releases provided in the Settlement Agreement.  And, significantly, none of the Parties agreed selectively to forego elements of the bargain but instead agreed to be bound by all of its terms.  Simply because the Objectors do not like a certain term of the Settlement does not mean that they get to rewrite the Settlement for their own purposes.

5.    As set forth in the Motion at paragraphs 56 to 63, it is undisputed that the Improvident Payment was a "material and integral term" of the Settlement Agreement.  And, the Parties put on the record the material terms of the Settlement, which included the Improvident Payment and the specifics of the Mediators' Proposal that were accepted by all Parties.  Nelson Declaration at ¶ 67.  The Settlement Agreement was intended to be a global resolution of multiple claims and causes of action in exchange for certain general releases provided by all Parties.  *Id.* The Trustee further confirmed in her declaration that the Improvident Payment is a material and integral term of the Settlement Agreement.  Tavenner Declaration at ¶¶ 39, 41.  And, most significantly, the Mediator himself recognized that this was a material and integral term of the Settlement. He even stated that if the Improvident Payment was not included as part of the Settlement (in the amount proposed by the Mediator), he would release all Parties to the Settlement Agreement from any and all obligations to perform thereunder.  Nelson Declaration at ¶ 64.  This is true in large part because the Settlement resolved not only the Two Adversary Proceedings before this Court, but it also resolved and disposed of the contested matter currently pending in

the District Court (Case No. 22-00121(E.D. Va.)) ███████████████████████

███████████████. The Mediator made it clear to all Parties that in exchange for the

general releases to be granted and received via a comprehensive global settlement, that there

needed to be finality with all pending and potential future litigation by and among the Parties.

Simply put, absent agreement by all Parties to each and every term of the Mediators' Proposal,

there would be no Settlement.

6.    In the face of this overwhelming evidence, neither the US Trustee nor Foley

should be allowed to declare that Section 3(h) of the Settlement Agreement was a "gratuitous

inclusion" (Foley Objection at p. 24) and request that the Improvident Payment term be stricken

from the Settlement (see Foley Objection at ¶ 53; US Trustee Objection at p. 33).  Such a request

is contrary to well established Virginia law, which prohibits modification of settlements by

courts.  *See, e.g., Pitchford v. Oakwood Mobile Homes, Inc.*, 124 F. Supp. 2d 958, 965 (W.D. Va.

2000) ("Although Virginia courts will look to the intent of the parties to determine severability

of clauses or provisions, they will not 'blue pencil' a contract to make it enforceable."); *In re

Lumber Liquidators Chinese-Manufactured Flooring Prod. Mktg., Sales Pracs. & Prod. Liab.

Litig.*, 27 F. 4th 291, 308 (4th Cir. 2022) (recognizing that a court cannot "refashion a

settlement" in some way by blue penciling the agreement), 27 F. 4th 291, 308 (4th Cir. 2022);

*Cap. Com. Properties, Inc. v. Vina Enterprises, Inc.*, 250 Va. 290, 295 (Va. 1995) ("we must

interpret the agreement as written and we are not free to rewrite its terms").[8]  This is even more

true because, as stated above, the Settlement does not just resolve the United Lex Adversary

---

[8]    For the same reasons, the Court should reject the US Trustee's arguments regarding the Improvident
Payment. *See, e.g.,* US Trustee Objection at pp. 28, 33.  The amount of the Improvident Payment was directed by the
Mediator and is a reasonable amount, as set forth below.

Proceeding; it was a global resolution that resolved several matters before different Courts, as well as future claims that the Trustee could have brought against certain of the Insurers, the ULX Defendants, and/or Greenberg.   Moreover, Quinn would not have been obligated to prosecute and/or defend these claims on behalf of the Trustee and/or would have been able to request payment of Quinn's fees on an hourly basis.

7.      Here, just like in TRU, the Bankruptcy Court can determine on its own that the Improvident Payment is a material and integral term of the Settlement pursuant to Rule 9019 and section 105.  As such, this Court can (and should) find that the Improvident Payment is a "material and integral" term of the Settlement.  *See* Motion at ¶ 63.

8.      Despite the US Trustee's suggestion to do so, there is absolutely no reason for this Court to ignore Judge Phillips' opinion in *In re Toys "R" US, Inc*., et. al., No. 17-34665 ("**TRU**") simply because (1) the US Trustee also objected to the TRU settlement agreement; (2) the US Trustee still disagrees with Judge Phillips' opinion in TRU, which overruled the US Trustee's objection; and (3) the US Trustee has not changed its policy as to settlement or fees since its objection in TRU.  *See* US Trustee's Objection at pp. 27-28.  While the Trustee acknowledges that a substantial contribution agreement is governed by section 503 (and not section 328(a)), the reasoning remains instructive, and the Court here can likewise approve the Improvident Payment as a material and integral part of the Settlement Agreement, which it is.

9.      The US Trustee also fails to provide any specific authority that a payment under section 328(a) (or analogous situations) is prohibited by law from inclusion as part of a settlement approved pursuant to Bankruptcy Rule 9019.  *See* Trustee's Objection at ¶¶ 17-18.  Rather, the US Trustee relies primarily on cases standing only for general principles.  This case law, however, can

easily be distinguished. In *RadLAX Gateway Hotel, LLC v. Amalgamated Bank*, the Supreme

Court held that a debtor may not confirm a chapter 11 "cramdown" plan that provides for the sale

of collateral free and clear of existing liens and does not permit a secured creditor to credit-bid.

566 U.S. 639, 649 (2012). In so holding, the Supreme Court, as the Sixth Circuit recognized,

specifically addressed only § 1129(b)(2)(A) of the Code and did not rule any broader. *See* 566

U.S. at 641; *In re Connolly North America, LLC*, 802 F.3d 810, 818 (6th Cir. 2015) (specifically

holding that the *RadLAX Gateway Hotel* holding is limited to interpretation of section 1129).

Likewise, *In re Lehman Bros Holdings, Inc*, 508 B.R. 283, 289 (S.D.N.Y. 2014) stands only for

the proposition that payment of administrative expenses to individual committee members may

not be simply included in a plan of reorganization; rather, they must meet the standards of section

503(b). Neither of these cases deal with the interpretation of the interplay between Rule 9019

and 11 U.S.C.§ 328(a).

10.    The one case that the US Trustee cites that does address both Rule 9019 and section

328(a), *In re Hale-Halsell Co*, 31 B.R. 459 (Bankr N.D. Okla. 2008), actually stands for the

proposition that a Bankruptcy Court ***does have*** the requisite authority to approve section 328

payments pursuant to a Rule 9019 motion. In that case, a bankruptcy court applied the Rule 9019

standard to a settlement requesting an increased payment under section 328(a). While it ultimately

ruled that the payment was not appropriate under the facts and circumstances of that specific case,

the Court did so under the standard set forth by Rule 9019, primarily because it found that the firm

requesting the increase was not likely to prevail on the "improvident" standard of section 328(a).

*Id*. at 469. The present facts and circumstances here, however, differ immensely from those in

*Hales-Halsell*. There, the Court found that the simple need to use senior attorneys, instead of more

junior attorneys, due to the complexity of the case "was not apparent or capable of being anticipated at the outset of the case." *In re Hale-Halsell Co.*, 391 B.R. at 467. The unique facts and circumstances in this case are extraordinarily different than the mundane staffing issues described in *Hale-Halsell Co.*

11.     Here, for the reasons set forth below, in the Nelson Declaration at ¶ 72, and in the Tavenner Declaration at ¶ 42, and as the Mediator himself recognized in directing the Improvident Payment, the Unforeseen Events were not capable of being anticipated at the outset of this case. Thus, the Court should approve the Settlement, including the Improvident Payment, pursuant to Rule 9019 and section 105.

## II.     The US Trustee Adopts a Narrow Interpretation of Section 328(a), Which If Adopted Would Eliminate The Discretion of the Bankruptcy Court to Evaluate Each Case on the Facts, Taking All Circumstances Into Account

12.     The US Trustee's advocation of inflexible position on Rule 328(a) has been repudiated by the Fourth Circuit Court of Appeals and therefore should not be validated by the Bankruptcy Court here. As the Fourth Circuit specifically recognized, the Bankruptcy Code is not an area of absolutes or bright-line rules and rather should take the individual facts and circumstances of each case into consideration:

> Because the few absolute disqualifications Congress has established are carefully delineated and narrowly tailored, the courts must take care not to fashion absolute prohibitions beyond those legislatively mandated without some measure of assurance that the purposes of the Bankruptcy Code always will be served thereby. Just as the bankruptcy court cannot use its equitable powers to ignore legal requirements set out by Congress in the Bankruptcy Code, see *IRS v. Levy* (*In re Landbank Equity Corp.*),973 F.2d 265, 271 (4th Cir. 1992), it is our opinion that the court similarly must not abdicate the equitable discretion granted to it by establishing rules of broad application which fail to take into account the facts of a particular case and the overall

> objectives of the bankruptcy system. *See In re Martin,8*17 F.2d at 182; *see also In re BHP*, Inc., 949 F.2d 1300, 1315 (3d Cir. 1991) ("[C]ourts have generally declined to formulate bright-line rules concerning the criteria for disqualification but have favored instead an approach which gives the bankruptcy court discretion to evaluate each case on the facts, taking all circumstances into account.")

*In re Harold Williams Development Co*., 977 F. 2d 906, 909-10 (4th Cir. 1992).  It is simply not consistent with the Bankruptcy Code for the US Trustee in this case to elevate the standards of 328(a) and impose stricter standards than that of the Bankruptcy Code in considering the Improvident Payment.  To do so in this case would create a slippery slope and possibly dangerous precedent.  The Bankruptcy Court should therefore decline an invitation from the US Trustee to formulate a bright-line rule concerning professional fees being earned and awarded in unique and extraordinary cases such as this.  It is critical that the Bankruptcy Court not renounce its very important equitable discretion, requiring it to consider unique facts of a particular case and the overall objectives of the bankruptcy system in deciding important issues such as this.

13.     The Trustee does not disagree that section 328 is a stringent standard or that the burden of proof is on the Trustee to prove that the standards for compensation are met.  *See* US Trustee Objection at pp. 17, 21.   Indeed, the Trustee specifically acknowledges in the Tavenner Declaration that the Improvident Payment is an "extraordinary request."  Tavenner Declaration at ¶ 41.  The Trustee further states that "In the 25 years of serving as a Chapter 7 trustee, this is the first time that I have approved of any such request."  *Id*.   Moreover, the fact that the 328(a) payment was suggested by the Mediator, and not any of the Parties, further attests that the circumstances in this case were truly extraordinary, warranting the Improvident Payment.

14.     Under the standard the US Trustee urges this Court to apply, however, it appears that there would never be a sufficient reason for the US Trustee to support an increased payment

to a professional under section 328 due to improvident circumstances.  *See* US Trustee Objection at p. 22 (acknowledging that there is "ground for debate in virtually every case" whether there was improvident circumstances (citing *In re Yablon*, 136 B.R. 88, 92 (Bankr. S.D.N.Y. 1992).  That simply is not the law.

15.     Moreover, even if the Court does not approve the Improvident Payment pursuant to Rule 9019 and section 105, for the reasons set forth herein, it should approve the Improvident Payment pursuant to section 328(a).

## III.    The Evidence Will Overwhelmingly Demonstrate that the Unique Attributes of this Case Fulfill the Requirements of Section 328 (a)

16.     As set forth in more detail in the Motion, the Court should approve the Improvident Payment because it meets the strict standards set forth in section 328(a), that the initial "terms and conditions prove to have been improvident in light of developments not capable of being anticipated at the time of the fixing of such terms and conditions."  11 U.S.C. § 328(a).  Applicable case law makes clear that to meet this standard courts should look at a variety of factors, including (1) whether the results obtained went beyond reasonable expectations, (2) the attorney assumed great risk in taking on representation of case, (3) the attorney persevered where others would have curtailed their efforts, (4) the attorney's efforts resulted in significant infusion of funds into the debtor's estate, (5) the attorney faced strong adversary and unforeseen pressures, and (6) the litigation was voluminous and complex.  See Motion at ¶ 5; *In re Malcon Developers,* 138 B.R. 677 at 680-81 (Bankr. N.D.N.Y. 1992).  In light of this standard, the Objectors only attempt to argue that there is no evidence establishing that the Unforeseen Events were "not capable of being anticipated at the time" of the entry of the Quinn Retention Order.

17.     Despite the US Trustee's repeated assertions that there is not "specific evidence" to warrant the Improvident Payment (*see, e.g,* US Trustee Objection at p. 22) and that the actions described by the Trustee simply do "not rise to the improvident standard of not capable of being anticipated" (US Trustee Objection at p. 23), the US Trustee fails to acknowledge that the US Trustee was provided with an exorbitant amount of information and documents from the Trustee, well in advance of the filing of this pleading, that included "specific evidence" to warrant the Improvident Payment.[9]

18.     As described in the 9019 Motion, the Nelson Declaration, and the Tavenner Declaration, the ample evidence demonstrates that the Unforeseen Events went far beyond that of a discovery dispute and fundamentally changed the trajectory of the Two Adversary Proceedings. *See, e.g.,* Nelson Declaration at ¶ 72; Tavenner Declaration at ¶ 42.    Specifically, the evidence describes that at the time the Quinn Retention Order was entered, neither the Trustee nor the Special Litigation Counsel were capable of anticipating, among other things, that ███████

████████████████████████████████████████████

████████████████████████████████████████████

─────────────────────



9 ████████████████████████████████████

other unanticipated developments resulting therefrom (collectively, the "**Unforeseen Events**").

These were all unique and unpredictable circumstances that were not capable of being anticipated

and support the Improvident Payment directed by the Mediator. *See, e.g.,* Nelson Declaration at ¶

73; Tavenner Declaration at ¶ 42.

19. In addition, the evidence demonstrates that in light of the Unforeseen Events, the

Special Litigation Counsel and the Trustee followed a litigation path

changed

the trajectory of (1) the Trustee's litigation of the Two Adversary Proceedings and (2) other matters

that were pursued against the FAO Defendants. Nelson Declaration at ¶ 74; Tavenner Declaration

at ¶ 42.  Thus, the Trustee and her counsel both recognized that this was far more substantial and

had far greater consequence than that of a run-of-the-mill (or even complex) discovery dispute.

20.    These facts were readily apparent to the Mediator when he ordered the Improvident

Payment.  He had spent countless hours and more than two months mediating with the Parties and

was well aware of the impact that the ███████████████████████████████████ had on the

fundamental trajectory of the case.  *See* April 19 Transcript at 12:6-12 (Judge Huennekens noting

that he had seen the Mediator's "report" to the Fourth Circuit on the number of hours dedicated to

the mediation "and it looks to me like I'm eternally indebted to him for the time he has spent with

regard to this").  ████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████  *See* Nelson Declaration at ¶ 91.

21.    In the face of all of this evidence, the US Trustee still argues that all the Trustee has

shown in this case is that there was a mere discovery dispute between the parties, citing to

numerous cases ████████████████████████████████████████

US Trustee Objection at p. 24 & n. 8.  Preliminarily, such a statement fundamentally ignores the

Trustee's business judgment and her counsel's judgment, as well as the Mediator's own

assessment of the facts before him.  As this Court has previously held, the Trustee is also entitled

to "rely on [her] counsel and [her] counsel's judgment in reaching a determination whether or not

to proceed with [the] settlement agreement." *In re Health Diagnostic Laboratory,* 2016 WL 6068812, at *5 (Bankr. E.D. Va. Oct. 14, 2016) (internal citations omitted).

22.      Instead of deferring to the Trustee, the Trustee's counsel, or the Mediator (those parties who lived the events and actually attended the mediation), the US Trustee instead relies on a string-cite of ten citations (Trustee Objection at fn. 8) that establish nothing more than the fact that at least ten parties have litigated the issue of ███████████████████████

███ Such a proposition says nothing about whether the specific circumstances and impact of the Unforeseen Events ***in this case*** could have been anticipated at the time of the Quinn Retention Order.  The US Trustee does nothing to compare the context of its cited cases to the context here, including the ██████████████████ or the impact on the litigation or alternative dispute resolution.  Moreover, it does not appear that any of the cases cited by the US Trustee involved a circumstance where a judicial mediator—the Chief Bankruptcy Judge—who spent hundreds of hours on this matter, independently recognized the uniqueness of the situation and solely directed a change in fee structure due to the Unforeseen Events

23.      As demonstrated above, in the Nelson Declaration, and in the Tavenner Declaration, the evidence demonstrates that the Unforeseen Events were extraordinary events that were not capable of being anticipated at the time the Quinn Retention Order was entered into, thus justifying the Improvident Payment pursuant to section 328(a) in this unique and extraordinary circumstance.

IV.    **The Evidence Overwhelmingly Demonstrates that the Directed Amount of the Improvident Payment is Reasonable**

24.    The Trustee has provided a plethora of evidence that the directed amount of the Improvident Payment, $3,150,000, is reasonable.  Based on this evidence, the Bankruptcy Court can use its own gate-keeping function to determine the reasonableness of the Improvident Fee. *See* TRU Order, Motion at ¶ 62, Exhibit C.  As more fully described below, the Trustee contends that such reasonableness of the Improvidence Payment can be justified in at least three different ways: (1) the Improvident Payment was a material and integral part of the Mediator's Proposal; (2) the amount of fees Quinn billed between ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ ▓▓▓▓▓▓▓ through April 19, 2022 (the date that the Settlement was put on the record) exceeded the $3,150,00 by more than two-fold; and (3) the amount of the Additional Services (as hereafter defined) provided by Quinn to persevere when others would not have is greater than $3,150,000. Nelson Declaration at ¶ 79; Tavenner Declaration at ¶ 45.

25.    Significantly, the Bankruptcy Court should not apply the stricter standards of section 330 review to its inquiry regarding the reasonableness of the Improvident Payment.  *See, e.g., In re Omegas Grp., Inc.*, 195 B.R. 875, 880 (Bankr. W.D. Ky. 1996) (awarding an increased payment under section 328 based on the factors outlined in, among other cases, *In re Malcon Developers*, without regard to the lodestar or *Johnson* reasonableness factors).  The US Trustee however, urges this Court to apply its internal policy rather than the law.  The US Trustee asks this Court to instead evaluate the reasonableness of the Improvident Payment using a 330 standard, the *Johnson* factors.   *See* US Trustee Objection at p. 29.  The US Trustee cites no caselaw for this proposition, nor could it, because that is simply not the law. *See, e.g., Pitrat v.Reimers*, 972 F.2d 1127 (9th Cir. 1992) (holding that the bankruptcy court erred in "assum[ing] that section 330 gave

it the power to make a general reasonableness review, despite the express language of section 328.").[10]   Instead, the Bankruptcy Court should carefully consider all of the evidence before determining whether the amount of the Improvident Payment is reasonable under the unique circumstances of this case.

26.    First, as more fully described in the Nelson Declaration and the Tavenner Declaration, the Court can rely on the fact that the Improvident Payment was a material and integral part of the Mediator's Proposal and he determined that this was the correct amount to award Quinn in light of the Unforeseen Events. Nelson Declaration at ¶ 79; Tavenner Declaration at ¶ 45.

27.    Second, as detailed in the Nelson Declaration and the Tavenner Declaration, the Trustee, the Trustee's General Counsel, and Quinn maintain that a reasonable person could conclude that one conservative measure of the reasonableness of the amount of the Improvident Payment is the amount of fees Quinn actually incurred between ████████████████████

████████████████████ through April 19, 2022 (the date that the Settlement was put on the record). ████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

---

[10]   The *Johnson* lodestar factors cannot be applied rigidly in cases arising under section 328.  By its very nature, Quinn was not able to anticipate that it would need the detailed time records necessary to meet the *Johnson* factors for the Improvident Payment because it was incapable of anticipating that it would need detailed, hourly time records to apply for an Improvident Payment for a contingency matter.  That said, the information that Quinn has provided in the Nelson Declaration and the Tavenner Declaration meets many of the factors of the *Johnson* lodestar test, including but not limited to the novelty and difficulty of the questions raised; the skill required to properly perform the legal services rendered; the attorney's opportunity costs in pressing the instant litigation; the attorney's expectations at the outset of the litigation; the time limitations imposed by the client or circumstances; the amount in controversy and the results obtained; and the experience, reputation and ability of the attorney.

██████████████████████████████████████████████████████████████████

████████. Nelson Declaration at ¶ 80; Tavenner Declaration at ¶ 46.   A detailed description of this work, totaling more than $6.6 million dollars (or more than double the Improvident Payment) is set forth in the Nelson Declaration.  The Nelson Declaration also includes, among other things, a disclosure of the number of hours that Quinn timekeepers expended for the work, standard hourly rates, and the total number of hours billed.  Nelson Declaration at ¶¶ 80-88.

28.    Third, the Nelson Declaration and the Tavenner Declaration also quantify the amount of the Additional Services that Quinn provided that could have been compensated on an hourly basis had the Trustee and Quinn known all of the Unforeseen Events.  As described in those declarations, which include a detailed description of the work performed, timekeeper rates, and other methodologies, Quinn could have sought at least $3,150,000 for the Additional Services provided to the Estate.  *See* Nelson Declaration at ¶¶ 87-88; Tavenner Declaration at ¶ 46.

29.    Thus, relying on any one of these methods, the Court can use its gate-keeping role to determine that there is more than sufficient evidence in the record to determine that $3,150,000 is a reasonable amount for the Improvident Payment.  *See* Motion at ¶ 63.

## V.    The Additional Arguments of the US Trustee Should Have No Impact on Whether the Court Grants the Relief Requested in the Motion

30.    The US Trustee also makes several extraneous arguments that should have no bearing on whether the Court grants the relief requested in the Motion, because none of them address the merits of whether the Trustee has met her burden as required in the 9019 Motion.

31.    ██████████████████████████████████████████████████████████████

██████████████████ Repeatedly, the Motion indicates that it is brought pursuant to Rule

9019, section 105, and section 328(a) and that the Improvident Payment was unilaterally directed by the Mediator as part of a global Settlement. ███████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████

████████  While it may be true that no case exists standing for that narrow proposition, the assumption underlying the statement is simply not applicable here.  In this case, no one disputes that the Estate will benefit immensely from the extraordinary work done by Quinn, who persevered when others would have not have.  Further, it is simply not true that the Improvident Payment will be to the detriment of Quinn's client, the Trustee.  Additionally, contrary to the US Trustee's assertion, ████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████ ,

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

████████████████████

32.    Second, the US Trustee focuses on the total amount of funds that Quinn has received in this case, inferring that somehow Quinn is not entitled to the amount of the Improvident Payment based on other fees Quinn has earned in this case.  *See* US Trustee Objection at p. 31.

This amount is simply irrelevant to whether the Improvident Payment is justified in this case. Moreover, it ignores the total value of work that Quinn has done on behalf of the Trustee to date and the substantial amount of proceeds that Quinn has recovered for the Estate.

33.    Third, Quinn has not sought any fees that it seeks in this Motion previously on an hourly basis.  As a result of the resolution of the Meet and Confer, and as described at the Nelson Declaration at paragraph 46, the Estate was reimbursed a small portion of the fees ███████

████████████████████████████████████████████████████████████████

███████████████████████    To account for this payment to the Estate, and as disclosed previously to the US Trustee, Quinn submitted a Supplemental Fee Application whereby these fees were disclosed and approved by the Court, and ultimately paid to the Trustee.  *See Supplement to Third Interim Application of Quinn Emanuel Urquhart & Sullivan, LLP as Special Counsel to the Trustee, for Allowance of Compensation and Reimbursement of Expenses Incurred* [Main Dkt No. 1249] ("**Supplemental Application**").  None of these fees are included herein.  Moreover, as the US Trustee pointed out at the US Trustee Objection at p. 31, the Supplemental Application contained a reservation of rights.

## VI.    The Motion Complies with Rule 2016

34.    Foley complains that "Quinn has entirely failed to follow Rule 2016" and boldly contends that the "Court cannot allow this gambit."  Foley Objection at ¶ 41.  But this is far from some "gambit," as the information that Quinn has provided in the Motion (and accompanying declarations) complies with Rule 2016.   Foley Objection at ¶ 42.

35.     While the Motion is not a traditional application brought under Rule 2016, numerous courts have recognized that such a formal fee application is not necessary as long as the court has sufficient information to assess reasonableness of the fees. For example, in *In re Cascade Oil Co., Inc.*, the court explained the "requirement of detail and specificity serves to provide the information needed for the court to decide whether a particular fee or expense is both actual and necessary" but that "[t]his requirements is not an end in and itself" and should "be enforced in a manner that services its purpose or function." 126 B.R. 99 105 (D. Kan. 1991); *see also Matter of Evangeline Ref. Co.,* 890 F.2d 1312, 1326 (5th Cir. 1989) (explaining "an application must be sufficiently detailed and accurate that, ___in conjunction with any proceeding in connection therewith and the record in the case,___ a court can make an independent evaluation as to what level of fees are actual, necessary and reasonable" and that applications falling below "the ideal level of completeness" are thus still permissible) (emphasis added); *In re Young*, 285 B.R. 168, 173 (Bankr. D. Md. 2002) ("Although the facts of the instant case arise in the absence of such court guidelines or general orders, this court finds that the purposes of Rule 2016(a) are satisfied without the filing of a separate document entitled application for compensation, where the fee is a flat fee, and is fully disclosed by the original Rule 2016(b) disclosure.").

36.     In this case, the Motion, as supported by the Nelson Declaration and the Tavenner Declaration, provides the Court with sufficiently detailed explanation of the fees being sought to satisfy the requirements of Rule 2016, especially when the amount sought is for a contingency case.  *See Am. Ctr. for Civ. Just., Religious Liberty & Tolerance, Inc. v. Katchen*, 2020 WL 4060178, at *5 (D.N.J. July 20, 2020) (requiring that an application for compensation include a "narrative explaining the nature of the work performed and the results achieved ... and any

circumstances ... the applicant wishes to emphasize ... [including] reasons for substantial time billed for a particular activity").  The Nelson Declaration also includes other pertinent disclosures under Rule 2016, including disclosures regarding the lack of any sharing agreements and the fact that no other compensation for the amounts sought herein have been made.  *See* Nelson Declaration at ¶ 83.  This information overwhelmingly demonstrates that the Contingency Payment to Quinn (in an amount of $7,350,000) is consistent with the terms of the Quinn Retention Order and the Engagement Letter and should be approved by the Court pursuant to Rule 9019, section 105, and/or section 328(a).  In addition, the evidence overwhelmingly demonstrates that the Improvident Payment (in an amount of $3,150,000) is reasonable and should be approved by the Court pursuant to Rule 9019, section 105, and/or section 328(a).

37.    Moreover, the information furnished in the Motion to justify the Contingency Payment and the Improvident Payment is consistent with (or greater than) Rule 2016 submissions in other cases in this district seeking contingency cases, including previous applications for contingency payments in this case.  Significantly, Foley itself has included similar (or even not as detailed) descriptions in its own applications for payments of contingency fees ***in this case***. *See*, *e.g.*, Foley's First Interim Application for Compensation [Main Dkt No.  451]; Foley's Second Interim Application for Compensation [Main Dkt No. 625]; Foley's Third Interim Application for Compensation [Main Dkt No. 736]; Foley's Fourth Interim Application for Compensation [Main Dkt. No. 845].  For Foley to argue that it somehow needs more information than what it itself has previously provided to this Court and others is simply disingenuous.

## VII.    The Foley Objection is Premature and Not Procedurally Proper

38.    As set forth above, Foley is only objecting to one material and integral term of the Motion that seeks authorization to pay compensation to Quinn.  Besides not being able to "blue pencil" the Settlement Agreement to suit its own self-serving purposes (as described above), the Foley Objection should also be rejected because it is procedurally premature and improper as it seeks affirmative relief.

39.    As this Court is well aware, Quinn has applied for and been granted interim compensation from this Court on three different occasions.  [Main Dkt Nos. 1075, 1168, 1282]. On two of these occasions, Foley asked for, and received, a reservation of rights in the orders granting the interim compensation.  [Main Dkt Nos. 1168, 1282].[11]  Nothing in the Foley Objection stands for the proposition that the payment requested to Quinn in the Motion should be treated any differently.

40.    The Foley Objection is premised on the fact it is somehow entitled to fees awarded to Quinn in the Settlement.  But Foley has never brought an affirmative adversary proceeding to adjudicate the complaints in its objection or its own fee application seeking these (or other fees). Seeking a ruling from the Court through the Foley Objection that it is entitled to affirmative relief

---

[11]  The reservation of rights in both of these orders provided that Foley "has asserted that it is entitled to some portion of the Contingent Fees awarded herein but has consented to postpone any hearing resolving any dispute on that issue. Quinn and the Trustee object or may object to such assertion. Notwithstanding anything in this order, nothing herein will prohibit Foley from later asserting that some portion of the fees related to this Fee Application, or any other fees paid to Quinn during the pendency of this case should instead be payable to Foley. Moreover, nothing herein shall act as a bar for either the Trustee, Quinn or the Office of the United States Trustee to oppose any request by Foley for fees related to this Fee Application or any other fees paid to Foley during the pendency of this case. The payment of the amounts to Quinn set forth in this order shall not limit, preclude or impact in any way Foley's right to seek recovery from Quinn for any fees sought and/or paid to Quinn during the pendency of this case. No rights are waived by Foley, Quinn, the Trustee, or the Office of the United States Trustee with respect to this Order and all parties' rights are expressly reserved."

to any fees, including the fees in the Settlement, is simply improper.  *See, e.g.*, *In re Whitlock-Young*, 571 B.R. 795, 811 (Bankr. N.D. Ill. 2017) ("Requests for affirmative relief should be brought by motion, not combined with objections"); *Garner v. Select Portfolio Servicing, Inc.*, 2015 WL 871402, at *1 (E.D. Mich. Feb. 27, 2015) ("[C]ombining objections ... with a motion for affirmative relief is improper").

41.     Foley must file a fee application or otherwise affirmatively seek the relief it requests, which will allow Quinn and/or the Trustee to object as appropriate.[12]  Indeed, Foley itself has acknowledged to this Court that it will seek such relief.  *See, e.g.,* Reservation of Rights To Quinn's Employment Application  [Main Dkt No. 922] ("Foley reserves all of its rights with respect to the Foley Fee Claims, including, but not limited to, (a) asserting charging liens on the relevant actions pursuant to Virginia Code § 54.1-3932(A); (b) pursuing a *quantum meruit* action to recover against the Estate for services rendered in connection with any Foley Fee Claim; and (c) ***seeking Court approval of compensation and reimbursement of expenses*** incurred in connection with any Foley Fee Claims.") (emphasis added).

42.     Until Foley seeks this affirmative relief from the Court, it can only reserve its rights, as it has done in connection with Quinn's prior fee applications and the Quinn Retention Application.  Accordingly, the Court should overrule the Foley Objection, and instead include in

---

[12]   Quinn and the Trustee reserve all rights to object to any and all affirmative relief that Foley may seek for any compensation, including but not limited to compensation related to the Settlement. Because the issue of whether Foley is entitled to any affirmative relief or compensation is not properly before the Court, the Trustee has not addressed any of Foley's substantive arguments at this time but will do so when it is properly before the Court.   Likewise, neither the Trustee nor Quinn is not addressing Foley's inaccurate factual assertions at this time but reserve all rights to do in the future.

the order the same reservation of rights regarding Foley's ability to seek affirmative relief that has been included in other Quinn fee applications.[13]

## CONCLUSION

For the reasons set forth above and in the Motion, the Trustee respectfully requests that this Court enter an order (a) approving the Settlement; (b) authorizing the effectiveness of the Settlement Agreement on behalf of the Estate; (c) approving the Contingency Payment and authorizing the Trustee to pay the same as provided in the Quinn Retention Order; (d) approving the Improvident Payment in an amount to be determined by the Court and authorizing the Trustee to pay the same; and (e) providing such other relief as is just and proper.

DATED:        June 7, 2022                    Respectfully submitted,

_/s/ Erika L. Morabito_
Erika L. Morabito (VSB No. 44369)
Brittany J. Nelson (VSB No. 81734)
QUINN EMANUEL URQUHART & SULLIVAN
1300 I Street, N.W., Suite 900
Washington, DC 20005
(202) 538-8334 (telephone)
Email:        erikamorabito@quinnemanuel.com
                brittanynelson@quinnemanuel.com

*Special Counsel to Lynn L. Tavenner, Chapter 7 Trustee*

---

[13]  Foley also complains that it did not receive proper service. *See* Foley Objection at ¶ 7.  Such an argument is a factually accurate. Foley has received notice of every fee application filed by Quinn Emanuel and received a copy of the Notice of Motion and Hearing Thereon (the "**9019 Notice**") for the 9019 Motion by the Trustee's General Counsel. In addition, Ms. Susan Poll Klaessy receives ECF notifications in this Case. Any suggestion that Foley is not receiving notices and/or other pleadings in this Case is wrong.  Furthermore, consistent with the procedures identified in the 9019 Notice, Foley has received copies of all sealed pleadings. Moreover, Foley has appeared at numerous hearings regarding this Motion and timely filed the Foley Objection.

## <u>CERTIFICATE OF SERVICE</u>

I certify that on this 7th day of June, a true copy of the foregoing was filed under seal, consistent with this Court's Order to Seal Omnibus Settlement Agreement and Related Documents, Information and Hearing [Main Dkt No. 1382] and will be provided to those individuals identified in paragraph 9 of such order.  Thereafter, the foregoing Motion will be served as provided by the Court.

*/s/ Erika L. Morabito*
Erika L. Morabito