## UNITED STATES BANKRUPTCY COURT
### EASTERN DISTRICT OF VIRGINIA
#### Richmond Division

In re:

    LeClairRyan, PLLC,[1]

Debtor

Case No. 19-34574-KRH

Chapter 7

## DECLARATION OF LYNN L. TAVENNER, TRUSTEE

I, Lynn L. Tavenner, Trustee, not individually but solely in my capacity as the Chapter 7 trustee (in such capacity, the "**Chapter 7 Trustee**" and/or the "**Trustee**") of the bankruptcy estate (the "**Estate**") of LeClairRyan PLLC ("**LeClairRyan**" and/or the "**Debtor**" ) in the above-referenced Chapter 7 case (the "**Case**"), pursuant to 28 U.S.C. § 1746, hereby declare as follows under penalty of perjury to the best of my knowledge, information, and belief:

1. I am the duly appointed Chapter 7 Trustee in the LeClairRyan Case.

2. I submit this declaration in support of the Trustee's Motion and Memorandum of Law for Entry of an Order (I) Approving (A) Judicially Mediated Settlement And (B) Compensation to Counsel Including an Improvident Payment Under Section 328(A); and (II) Granting Related Relief (the "**9019 Motion**" and/or "**Motion**"), filed on May 18, 2022.[2]

---

[1] The principal address of the Debtor as of the petition date was 4405 Cox Road, Glen Allen, Virginia 23060, and the last four digits of the Debtor's federal tax identification number are 2451.

[2]   All capitalized terms not defined herein have the meanings ascribed to them in the 9019 Motion.

Paula S. Beran, Esquire (Va. Bar No. 34679)
Tavenner & Beran, PLC
20 North Eighth Street, Second Floor
Richmond, Virginia 23219
Telephone: (804) 783-8300
Telecopy: (804) 783-0178

*Counsel for Lynn L. Tavenner, Chapter 7 Trustee*

3.      The statements in this Declaration are, except where specifically noted, based on my personal knowledge of information that I have obtained in connection with my role as the Trustee. If I were called upon to testify, I could and would competently testify to the facts set forth herein on that basis.

4.      The relief requested in the 9019 Motion is based upon a valid exercise of my business judgment and is in the best interests of the Estate. The 9019 Motion seeks the entry of an order approving a settlement by and among me, on the one hand and  ULX Partners, LLC, ("**ULXP**") ULX Manager LLC, ("**ULX Manager**") and UnitedLex Corporation ("**United Lex**" and, together with ULXP and ULX Manager, the "**ULX Defendants**"), CVC Advisers (India) Private Limited and/or CVC Capital Partners ("**CVC**"), Daniel Reed ("**Mr. Reed**"), Nicholas Hinton ("**Mr. Hinton**"), Josh Rosenfeld ("**Mr. Rosenfeld**", and P. Douglas Benson ("**Mr. Benson**" and together with Mr. Reed, Mr. Hinton, Mr. Rosenfeld and the ULX Defendants, the "**Defendants**"), Travelers Casualty and Surety Company of America ("**Travelers**"), Continental Casualty Company ("**Continental**"), and Columbia Casualty Company ("**Columbia**") (collectively, Continental and Columbia are referred to as "**CNA**" and Travelers and CNA are referred to as the "**Insurers**")

5.      As part of my administration of this Estate and as I began investigating potential causes of action, I determined in the exercise of my business judgment that it was in the best interest of the Estate to request that this Court establish procedures for prosecuting and/or settling matters.  As such, I, through counsel,  proposed to this Court certain procedures, including but not limited to those in my Motion for an Order Establishing Procedures Regarding the Prosecution of Actions Involving Former Attorneys and Certain Others and Memorandum in Support Thereof

2

(the "**FAO Procedures Motion**"), which were approved by three orders of this Court (collectively,

the "**FAO Order**").

6.      On December 12, 2019 ULXP filed Proof of Claim No. 174 in the amount of

$8,563,288 and Proof of Claim No. 175 in the amount of $3,952,025 (collectively, the "**ULX**

**Partners Proofs of Claim**").

7.      On October 26, 2020, I, through counsel, filed an adversary proceeding against

ULXP and UnitedLex, Adversary Proceeding No. 20-03142 (as amended, the "**UnitedLex**

**Adversary Proceeding**"), which in addition to asserting numerous claims against ULXP and

UnitedLex also objected to the ULX Partners Proofs of Claim.

8.      Thereafter, I also issued demand letters to more than 200 other potential

defendants, including defendants Mr. Hinton, Mr. Reed, Mr. Rosenfeld, Mr. Benson, and CVC.

The FAO Order established procedures that, among other things, allowed for a potential

defendant to elect mediation prior to the filing a lawsuit and many Persons (as defined in the

Bankruptcy Code) chose that path.

9.      On June 7, 2021, I, through counsel, filed *Trustee's Application to Retain and*

*Employ Quinn Emanuel Urquhart & Sullivan, LLP as Special Counsel* (the "**Quinn Retention**

**Application**"), seeking to employ Quinn Emanuel Urquhart & Sullivan, LLP ("**Quinn**

**Emanuel**"). On June 28, 2021, this Court entered its *Order Authorizing the Retention and*

*Employment of Quinn Emanuel Urquhart & Sullivan, LLP as Special Counsel* (the "**Quinn**

**Retention Order**"), retroactive to May 18, 2021.

10.     On September 2, 2021, I, through counsel, filed a separate adversary proceeding

(No. 21-03095-KRH) (the "**Reed Adversary Proceeding**" and together with UnitedLex

Adversary Proceeding, the "**Two Adversary Proceedings**") against CVC as well as UnitedLex's

Chief Executive Officer, Mr. Reed, and its Chief Financial Officer, Mr. Hinton. In the Reed

Adversary Proceeding, I also asserted claims against Mr. Rosenfeld and Mr. Benson.  In the

Reed Adversary Proceeding, I asserted claims for, among other things, breach of fiduciary duty,

statutory and common law conspiracy, and constructive fraud (the "**Reed Adversary Claims**").

11.     Since the filing of the UnitedLex Adversary Proceeding, the Estate and the ULX

Defendants have been engaged in complex and substantial litigation, including a very active

motions practice, as well as extensive discovery consisting of written discovery, the exchange of

hundreds of thousands of pages of documents, depositions of more than a dozen witnesses

(including myself), and the retention of various experts.  In addition, throughout the ULX

Adversary Proceeding, this  Court entered several pre-trial orders governing the litigation

between the Estate and the ULX Defendants.

12.



---

[3]   At the time, the only defendants in the case were United Lex and ULXP.  ULX Manager was subsequently added
as a defendant with the filing of the Amended Complaint.



13.     On August 6, 2021, I, through counsel, filed a Motion for Leave to Amend Complaint and to Modify Pretrial Scheduling Order (the "**First Motion to Amend**") and on August 16, 2021 the ULX Defendants filed an Objection to the Trustee's Motion for Leave to Amend Complaint and to Modify Pretrial Scheduling Order (the "**Opposition to First Motion to Amend**").

14.     On August 24, 2021, this Court granted my Motion to Amend the Complaint resulting in the filing a First Amended Complaint in the UnitedLex Adversary Proceeding on August 25, 2021 (the "**Amended Complaint**"), which added ULX Manager and Gary LeClair as defendants.[4]

15.     After the granting of the Motion to Amend, a two-week trial in the UnitedLex Adversary Proceeding was scheduled to begin on April 14, 2022.

16.

---

[4]   The claims against Gary LeClair have since been resolved (the "**D&O Settlement**") pursuant to an Order entered on December 3, 2021 granting a separate Motion for Approval of Compromise and Settlement and Memorandum of Law.

▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆

▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆

▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆

▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆

▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆

17.     On January 28, 2022, the ULX Defendants filed a Motion for Summary Judgment (the **"Motion for Summary Judgement"**) and associated documents, seeking to dismiss certain of the UnitedLex Claims. I opposed the Motion for Summary Judgment (the "**Opposition to Summary Judgment**").  On February 11, 2022, I, through counsel, filed a Motion for Leave to Amend the First Amended Complaint (the "**Second Motion to Amend**") and associated documents under seal, which sought to add a single count of fraudulent inducement against UnitedLex and ULX Manager.  The ULX  Defendants opposed the Motion to Amend (the "**Opposition to Second Motion to Amend**").  At the request of the Mediator (as hereafter defined), this Court continued the hearings on both the Motion for Summary Judgment and the Second Motion to Amend to allow the Parties sufficient time to continue negotiations in an attempt to fully resolve the pending disputes between them.  As such this  Court has ruled on neither the Motion for Summary Judgment nor the Second Motion to Amend.

18.     On February 4, 2022, at the joint request of myself and the ULX Defendants, this Court entered an Order in the United Lex Adversary Proceeding (the "**Mediation Order**") appointing the Honorable Frank J. Santoro, the Chief Judge of the United States Bankruptcy Court for the Eastern District of Virginia, as the judicial mediator (the "**Mediator**"), to conduct a mediation ("**Mediation**") among me, the ULX Defendants, Mr. Reed and Mr. Hinton in their individual capacities, and Travelers, "[u]nless otherwise ordered by the Mediator in the

6

Mediator's sole discretion." ███████████████████████████████████████

█████████████████████████████████████████████████████████████████

█████████████████████████████████████████████████████████████████

█████████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████

██████████████████████████████.

19.    Between February 4 and March 5, at the direction of the Mediator, I (personally and/or through counsel), the ULX Defendants, Mr. Hinton, Mr. Reed, Travelers, and CNA participated in multiple lengthy conferences with the Mediator, exchanged mediation statements, and/or provided the Mediator with certain information and/or supplemental written submissions.

20.    On March 5 and March 6, 2022, I, along with the ULX Defendants, Mr. Hinton, Mr. Reed, (all of whom I understood were represented by Greenberg Traurig███████████████ ██████████████████████████████ Travelers, and CNA, their respective counsel, and the Mediator participated in a two-day in-person mediation in Richmond, Virginia.  This initial mediation session lasted approximately a day and a half over a weekend but was ultimately terminated by the Mediator with specific instructions given to the participating mediation parties.

21.    On March 8, 2022, the Mediator entered the "Order Directing Defendants to Produce Insurance-Related Information" (the "**March 8 Insurance Order**").  The March 8 Insurance Order directed the ULX Defendants, Mr. Hinton and Mr. Reed to provide to me, among other things, 1) a "full and complete copy of any and all insurance policies (including but not limited to insurance policies of Defendants' subsidiaries, parent companies, or affiliated companies) that may provide any coverage (in full or in part) for any judgments awarded against the [ULX Defendants] in this case, and/or against Mr. Hinton and/or Mr. Reed in the [Reed

Adversary Proceeding] and/or settlement amounts paid by any Defendants and/or by Mr. Hinton

and/or Mr. Reed in this case and/or the [Reed Adversary Proceeding]; or any fees, costs, and

expenses paid or incurred in this case by any Defendant, Mr. Hinton, and/or Mr. Reed in this

case and/or the [Reed Adversary Proceeding].   Such policies should also include any policies to

which any [ULX Defendant], Mr. Hinton, and/or Mr. Reed tendered coverage for the claims at

issue herein or the [Reed Adversary Proceeding], including all excess policies regardless of the

coverage position taken by the relevant insurance company"; and 2) "all coverage letters and/or

denial of coverage letters from any insurance company regarding coverage under any of the

policies provided [pursuant to the March 8 Insurance Order], including but not limited to

coverage positions taken by the insurance company, and any non-privileged or otherwise

protected response to such insurance company by the [ULX Defendants], Mr. Hinton, and/or Mr.

Reed thereto."

22.     Also on March 8, 2022, the Mediator entered an "Order Directing the Exchange

of Information Between the Defendants, Nicholas Hinton, Daniel Reed, the Insurance

Companies and the Chapter 7 Trustee" (the "**Information Exchange Order**").  The Information

Exchange Order required, among other things, the Estate to provide "the identity of the Trustee's

anticipated trial expert with respect to the damages the Trustee alleges were proximately caused

by the [ULX Defendants, Mr. Reed and Mr. Hinton], as well as a summary of the expert's

opinions to date as to the amount of such alleged damages and the basis therefore (the

"**Trustee's Damages Report**")" given expert reports had not been exchanged as the same were

not yet due pursuant to this Court's various pre-trial order.   Additionally, the Information

Exchange Order required the ULX Defendants, Mr. Reed, and Mr. Hinton to identify the ULX

Defendants' "anticipated expert as to damages, along with a summary of that expert's opinions

to date rebutting the Trustee's Damage Report."  Finally, the Information Exchange Order also

directed that the ULX Defendants provide the Mediator for his "*en camera review*, their year-end

financial statements for the last two years, as well as financial statements indicating their current

financial condition."

      23.     On March 9, this Court entered an order that the trial in this matter be continued

until May 17 and also continued other pending motions in the ULX Adversary Proceeding.

      24.



      25.     Thereafter, the Mediator requested additional information from me

      26.     Quinn Emanuel reviewed and analyzed                 to

determine how best to position  the litigation to maximize the amount of recovery

████████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████ Accordingly, the

Estate, through Quinn Emanuel, was left with no other option but to conduct this ███████

████████ analysis on its own in order to aid the upcoming mediation discussions, as well as

advise me on strategic decisions.

27.    In addition, in light of ████████████████, the Estate, through primarily

Quinn Emanuel, was forced to also devote significant resources during this time to research

certain legal and damage theories to enable me to assert the strongest arguments for causes of

actions (and associated damages) that █████████████████████

█████. This was a careful and detailed exercise because Quinn Emanuel  had to find pathways

to proceed ██████████████████████████████████

████████████████████████████████████████████

████████ this was a time-consuming, but critical, step, including extensive legal analysis, factual

analysis, and work with experts.

28.    After additional extensive research and analysis, my counsel diligently provided

all information that was requested by the Mediator.  The Estate, through Quinn Emanuel, also

took steps to ████████████████████████████. In light of

additional detailed analysis and information provided by my counsel to the Mediator, ████

████████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████.

29.     On April 13, 2022, after continued hard fought and arm's-lengths negotiations, a global and comprehensive proposal was made by the Mediator to fully and finally resolve all of the pending Claims in the Two Adversary Proceedings (the "**Mediator's Proposal**").   At the direction of the Mediator, the Defendants and the Insurers had until no later than noon on April 19, 2022 to (a) accept or reject the Mediator's Proposal in total and (b) if accepted, provide specifics as to the manner, timing, and related security for payments and/or promises to pay (collectively, the "**Settlement Payment Nuances**").

30.     The hearing on the Second Motion to Amend was to be heard by this Court at 11:00 a.m. on April 19, 2022. Approximately 30 minutes before that hearing, the Defendants and the Insurers agreed to the Mediator's Proposal and provided the Settlement Payment Nuances. The Mediator immediately conveyed the same to my counsel with the instruction that I, before the 11:00 a.m. hearing, either accept or reject the Mediator's Proposal (and related Settlement Payment Nuances)  that had been accepted by the Defendants and the Insurers.  In the exercise of my business judgement, I determined that the Mediator's Proposal (and related Settlement Payment Nuances) was in the best interest of the Estate and, as such, accepted the same (the "**Settlement**").  Thereafter, the Mediator directed me, through counsel, to inform this Court at the impending hearing of the material terms of the Settlement.  Thereafter, the material terms of the Settlement were set forth on the record at the April 19, 2022 hearing with the participation of counsel for the ULX Defendants, Mr. Hinton, and Mr. Reed. And, the hearing on the Second Motion to Amend was continued to allow time to document the Settlement.

31.    In addition to the terms being articulated on the record at the April 19, 2022

hearing, the Settlement is further memorialized in a certain settlement agreement (the

"**Settlement Agreement**").  While I encourage creditors to review the Settlement Agreement for

the specific terms of the Settlement (creditors may obtain a copy of the same by written request

to Paula S. Beran, Esquire at pberan@tb-lawfirm.com and written agreement to keep the terms of

the Settlement confidential) and a further understanding as to why the Settlement is in the best

interest of the Estate, I perceive the following as the salient terms:[5]

    a.  **Continental Payment:**    In consideration of the mutual releases, covenants,
representations, and undertakings, the Defendants, and the Insurers, Continental
shall pay the Estate a sum of five million dollars ($5,000,000) on or before the
Closing Date.

    b.  **Columbia Payment:**    In consideration of the mutual releases, covenants,
representations, and undertakings, the Defendants, and the Insurers, Columbia shall
pay the Estate a sum of seven million two hundred and fifty thousand dollars
($7,250,000) on or before the Closing Date.

    c.  **Travelers Payment**:    In consideration of the mutual releases, covenants,
representations, and undertakings,  the Defendants, and the Insurers, Travelers shall
pay the Estate a sum of five hundred thousand dollars ($500,000) on or before the
Closing Date.

    d.  **Defendants' Payment and Pledge of Security:**  In consideration of the mutual
releases, covenants, representations, and undertakings, Defendants, the Defendants

---

[5]  The summary set forth in this section is qualified by the specific provisions of the Settlement Agreement.  To the
extent there is any inconsistency between this summary and the Settlement Agreement, the Settlement Agreement
governs.

shall pay to the Estate a total sum of eight million two hundred and fifty thousand dollars ($8,250,000). This sum is scheduled to be paid in three installments. The first installment of at least two million dollars ($2,000,000) will be paid on or before the Closing Date. The second installment of three million dollars ($3,000,000) will be paid on or before the first anniversary of the Closing Date, and the third installment of three million two hundred and fifty thousand dollars ($3,250,000) will be paid on or before the second anniversary of the Closing Date. Both the Second Defendants' Payment and the Third Defendants' Payment are fully secured by Notes and Irrevocable Letters of Credit.

e. **Starr Policy Proceeds:** As part of the Settlement Agreement, neither the Defendants nor the Estate release Starr from any obligations under the Starr Policy. If any of the Defendants receive any proceeds from Starr under the Starr Policy related to this matter, the proceeds (net any costs of reasonable attorneys' fees incurred in pursuit of the collection of the proceeds) must be turned over and paid to the Estate.

f. **Waiver of Proofs of Claim:** ULX Partners, LLC agrees to waive the ULX Partners Proofs of Claim, the present value of which is estimated by the ULX Defendants (and not me) to be $2.4 million.

g. **Consensual Releases:** The Settlement Agreement includes certain consensual releases of Claims amongst the Parties.

h. **Compensation of Counsel:** Quinn Emanuel shall be entitled to receive 35% of the Total Settlement Payment as provided in the Quinn Retention Order (the "**Contingency Payment**"). In addition, the Settlement Agreement contemplates an

13

additional payment of an amount not to exceed $3,150,000 (the "**Improvident**

**Payment**") to Quinn Emanuel. The Improvident Payment is subject to the Estate

receiving the Total Settlement Payment and the Defendants do not object to the

Improvident Payment. Furthermore, Quinn Emanuel provided necessary additional

non-contingent services (the "**Additional Services**") that arose from the Two

Adversary Proceedings that otherwise would have been compensated on an hourly

basis had I and Quinn Emanuel known all of the facts and circumstances regarding

this matter. Notwithstanding the fact that Quinn Emanuel asserts that the value of

the Additional Services exceeds the amount of the Improvident Payment, the

Settlement Agreement provides that Quinn Emanuel agrees to limit the amount of

the Improvident Payment to the lesser of $3,150,000 or such other amount

otherwise approved by this Court.

    i.    **No admission of liability by any of the Parties**

    j.    **Dismissal:** The Two Adversary Proceedings will be dismissed with prejudice.

32.    The Settlement, as documented in the Settlement Agreement, was the product of

an arms-length negotiation, and globally resolves, on terms beneficial to the Estate, complicated

litigation in the Two Adversary Proceedings, the continued pursuit of which would be costly and

time consuming and pose the risk of an unfavorable result.

33.    I believe that the Settlement is fair, equitable, in the best interests of the Estate,

appropriate in my business judgment, and easily falls within the reasonable range of outcomes.

As set forth above, the Settlement is the culmination of more than several months of negotiations

among the parties, with the Mediator's assistance and direction, and represents a global

resolution of the Claims. I, in the exercise of my business judgment and in consultation with my

professionals and the Mediator, believe that the Settlement is a fair, reasonable, and responsible compromise and resulted in maximum value to the Estate for the reasons that follow.

34.     First, the Settlement is the result of extensive good faith and arms-length negotiations among me, the Defendants, and the Insurers.  It was aided and directed by the substantial participation and input of the Mediator and represents a result well above the lowest bound of the range of reasonableness.  The Settlement is, in fact, the Mediator's Proposal. This Settlement is not collusive and represents a fair compromise of the disputes.

35.     If the Court approves the 9019 Motion and authorizes me to enter into the Settlement via the Settlement Agreement, the Estate will receive (i) fourteen million seven hundred fifty thousand dollars ($14,750,000) on or before the Closing Date; and (ii) an additional six million two hundred fifty thousand dollars ($6,250,000) after the Closing Date (collectively, the "**Settlement Payment Cash Funds**").   These amounts, which are a sum certain, are potentially greater than any recovery the Estate would ultimately receive even if the Two Adversary Proceedings proceeded to judgement and is well above the lowest bound of the range of reasonableness. In addition, there is a monetary value to the waiver of the ULX Partners Proof of Claims; however, the same is minimal and uncertain at this time given the status of the current claims pool in this Case.

36.     Second, both before and during the Mediation, I conducted due diligence on the enforcement and ultimate collectability of potential judgments against the Defendants. ████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████

Significantly, the majority of the Settlement Payment Funds are available on the Closing Date,

allowing me and my professionals to focus time and effort on other important matters in this

Bankruptcy Case including but not limited to the review, analysis and resolution of alleged

administrative expenses and pre-petition claims.

37.    Third, the consideration identified in the Settlement Agreement represents a fair

and reasonable compensation to the Estate for the Claims in light of the uncertainty and risk

associated with time-consuming and expensive litigation that could result in an unfavorable

outcome. Additional Estate resources that would have been spent on, among other things, a two-

week trial in the United Lex Adversary Proceeding, prosecuting the Reed Adversary Proceeding,

and any associated appeals are preserved for the benefit of creditors.   Given the scope and

complexity of the United Lex Adversary Proceeding, I anticipated that the Reed Adversary

Proceeding could have been equally time-consuming and complicated. Moreover, in agreeing to

the releases provided for in the Settlement Agreement, we all contemplated the value of the

Claims being released.

38.    Fourth, the Settlement as directed by the Mediator and memorialized in the

Settlement Agreement is fair and equitable to the Estate, its creditors, and other parties in

interest.  The value of the Settlement, which includes the Settlement Payment Cash Funds and

the waiver of the ULX Partners Proof of Claims, represents a result well above the lowest bound

of the range of reasonableness and does not prejudice other creditors or parties in interest.   To

the contrary, the Settlement should allow me to make a meaningful distribution to creditors,

subject to of course the ultimate amount of allowed administrative expenses and pre-petition

claims.  Most importantly, the Settlement will allow the Estate to proceed towards a more

expeditious resolution, rather than prolonged litigation (and potential appeals) in the Two

Adversary Proceedings.

39.     Finally, the Improvident Payment was unilaterally directed by the Mediator as part of the Mediator's Proposal as a material and integral term of the Settlement and as such is in the best interest of the Estate.  Until receiving the Mediator's Proposal, I had never heard mentioned or contemplated the Improvident Payment.  Absent approval of the Settlement, I understand that Quinn Emanuel now would otherwise seek compensation on an hourly basis by the Estate in an amount that Quinn Emanuel estimated would exceed $3,150,000.   Furthermore, Quinn Emanuel has agreed to limit the amount of the Improvident Payment to the lesser of $3,150,000 or an amount otherwise approved by this Court.   As such, the Settlement provides a sum certain to be recovered by the Estate and defers to this Court as to the ultimate allowance of the Improvident Payment to Quinn Emanuel in an amount as determined by this Court but in no instance greater than $3,150,000.

40.     Therefore, for the foregoing reasons, I respectfully submit that the Settlement satisfies the standards for approval under applicable law and that the Court should therefore approve the Settlement Agreement pursuant to section 105 of the Bankruptcy Code and Bankruptcy Rule 9019.

41.     I recognize that increasing compensation under section 328(a) of the Bankruptcy Code is an extraordinary request. In the 25 years of serving as a Chapter 7 trustee, this is the first time that I have approved of any such request.  In addition to the Improvident Payment being directed by the Mediator as a material and integral part of the Settlement in connection with his Mediator's Proposal, I also maintain that Quinn Emanuel is entitled to the Improvident Payment pursuant to section 328(a) of the Bankruptcy Code.  After all, the Improvident Payment was part of the Mediator's Proposal and the Mediator, a sitting bankruptcy judge, would not have proposed anything that was contrary to the provisions of the Bankruptcy Code.  And, the terms of the Quinn

Retention Order have proven to be improvident in view of circumstances in this matter that were not capable of being anticipated and thus the circumstances warrant compensation for Quinn Emmanuel that may be different from the compensation provided in the Quinn Retention Order. Neither Quinn Emanuel nor I could have anticipated certain developments in the United Lex Adversary Proceeding that required Quinn Emanuel to invest significantly more hours and expenses without any assurance of compensation.

42.    There were unique and unpredictable circumstances justifying the Improvident Payment. While I was not privy to the exact circumstances the Mediator considered in unilaterally directing the Improvident Payment as part of the Mediator's Proposal, the unanticipated circumstances ███████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

were not capable of anticipation by either me or Quinn Emanuel at the time the Quinn Retention Order was entered by this Court. At the time the Quinn Retention Order was entered, neither I nor Quinn Emanuel were capable of anticipating that ████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

█████████ (collectively, the "**Unforeseen Events**").   These were all unique and unpredictable circumstances that justify the Improvident Payment and were not capable of being anticipated. Further, it was not possible for me or Quinn Emanuel to anticipate the resulting significant change of circumstances that fundamentally altered the trajectory of the Two Adversary Proceedings, including, among other things, the prosecution of the Claims and calculation of damages resulting therefrom.

43.    In furtherance of the Estate's litigation strategy, I relied to the Estate's detriment on █████████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████████████████

█████████████████████████████████████████████████████████

44.    I understand that Quinn Emanuel will provide pertinent details to this Court regarding the timekeepers, rates, hours, and other key information that will enable this Court to use its own gatekeeper function to meaningfully review and approve the reasonableness of the amount of the Improvident Payment that was unilaterally directed by the Mediator.  Furthermore, I, in the exercise of my business judgment, believe the amount of the Improvident Payment to be reasonable given a) the same was part of the Mediator's Proposal, b) my understanding of the time expended to persevere where others would have not, especially in consideration of the amount to now be recovered by the Estate and c) the amount of fees Quinn Emanuel actually incurred between ████████████████████████████████████████████, through April 19, 2022, the date that the Settlement was put on the record.

45.     My examination of the time expended by Quinn Emanuel to persevere where others would have not revealed that the value of the Additional Services likely exceeds $3,150,000 as represented by Quinn Emanuel.  First and foremost, a review of raw time records demonstrates $2,548,566 of value from February 4, 2022 (the point in time when the Parties sought joint mediation ██████████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████) through April 19, 2022 (the date the Settlement was placed on this Court's record).  Additionally, the $2,548,566 represents only the time billed by Quinn Emanuel to the UnitedLex Adversary Proceeding internal billing number  I understand that there were other internal Quinn Emanuel billing numbers where time was recorded and certain of said time relates to Additional Services due to the Unforeseen Events.  For example, there is a separate matter number whereby time was also recorded for items related to the UnitedLex Adversary Proceeding, such as to interview attorney defendant witnesses, obtain cooperation and, in the instance of one attorney, have him assist in a damages analysis as a result of the Unforeseen Events.  I understand that the value of recorded hours to that separate matter number from February 4, 2022 through April 19, 2022 is approximately $235,000, bringing the estimated value of the Additional Services from $2,548,566 to $2,783,566.  I also have confirmed that the value of the Additional Services is even greater during this time period because there became a point where certain timekeepers did not record their time because it was a contingency matter.  For example, I reviewed the time records and confirmed that no time was recorded by the insurance expert at Quinn Emanuel for any services during the Mediation in April.  I was in the room when there were multiple calls with her so I know she spent significant time on the matter but for which she recorded nothing on the Quinn Emanuel internal billing number for

the UnitedLex Adversary Proceeding.  This is only one example that easily jumps out at me.  In addition to the unrecorded time, the $2,783,566 amount attributed to the Additional Services is even greater because the services as currently recorded were billed at discounted rates.  But for the Unforeseen Events causing extreme time constraints and forcing us to target all resources on preserving value for the Estate, there would have been a budget approval process for me to actually authorize Quinn Emanuel to perform additional services that were not included as part of the contingency aspect ██████████.  I am confident that as part of that process, the budget would have included rates that were not discounted; removing a 10% discount results in a number of $3,061,922.60.  Similarly, the time would have been based upon 2022 rates given Quinn Emanuel had the right under the Quinn Retention Order to increase its rates periodically but had not officially done so in January (since everything was contingent).  In looking at just one individual (and there were over 25 timekeepers), said increased 2022 rates would have increased the value by approximately $24,000.  So for all of these reasons, I in the exercise of my business judgment, believe that Quinn Emanuel's representation that the value of the Additional Services exceeds $3,150,000 is reasonable and accurate.

46.    In addition to valuing the Additional Services that occurred because of the Unforeseen Events, I also maintain that a reasonable person could conclude that another measure of the reasonableness of the amount of the Improvident Payment is the amount of fees Quinn Emanuel actually incurred between ████████████████████████ ████████, through April 19, 2022, the date that the Settlement was put on the record. ██ ████████████████████████████████████████████ ████████████████████████████████████████████ ████████████████████████████████████████████

██████████████████████████████████ Based on

raw time records that I have seen, the amount of fees Quinn Emanuel actually incurred between

██████████ and April 19, 2022 exceeds $3,150,000 by more than two fold.

47.    I,  in the exercise of my business judgment and in consultation with my

professionals, believe that the Settlement (a) is fair and equitable and in the best interests

of the Estate and (b) results in maximum value to the Estate.

48.    To the best of my knowledge, information, and belief, I declare under penalty of

perjury that the foregoing is true and correct.

LYNN L. TAVENNER, CHAPTER 7 TRUSTEE

Dated: June 3, 2022              By: /s/ *Lynn L. Tavenner*
   Richmond, Virginia                 Lynn L. Tavenner, Chapter 7 Trustee

Respectfully submitted,

**LYNN L. TAVENNER, CHAPTER 7 TRUSTEE**

Dated: June  3, 2022            By: */s/ Paula S. Beran*
   Richmond, Virginia            Paula S. Beran, Esquire (VSB No. 34679)
                                 PBeran@TB-LawFirm.com
                                 Tavenner & Beran, PLC
                                 20 North 8th Street
                                 Richmond, Virginia 23219
                                 Telephone: (804) 783-8300
                                      *Counsel for Lynn L. Tavenner, Chapter 7 Trustee*

## CERTIFICATE OF SERVICE

I certify that on this 3rd day of June 2022, a true copy of the foregoing Declaration was filed under seal pending this Court's final ruling on the request by the United Lex Defendants to seal aspects of the 9019 Motion.  Thereafter, the foregoing Declaration will be served as provided in said ruling.

*/s/ Paula S. Beran*
Paula S. Beran, Esquire
*Counsel for Lynn L. Tavenner, Chapter 7 Trustee*

22