UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF VIRGINIA
Richmond Division

| | |
|---|---|
| In re:<br><br>    LeClairRyan, PLLC,[1]<br><br>    Debtor | Case No.<br>19-34574-KRH<br><br>Chapter<br>7 |

**BRIEF IN SUPPORT OF TRUSTEE'S MOTION FOR SUMMARY JUDGMENT ON OBJECTION TO PROOF OF CLAIM 48-1 SUBMITTED BY LATONYA MALLORY**

Lynn L. Tavenner, Trustee, and not individually but solely in her capacity as the Chapter 7 trustee (in such capacity, the **"Chapter 7 Trustee"** and/or the **"Trustee"**) of the bankruptcy estate (the **"Estate"**) of LeClairRyan PLLC (**"LeClairRyan"** and/or the **"Debtor"**), in the above-referenced Chapter 7 case (the **"Case"**),  submits this brief in support of her motion for summary judgment on her Objection to Claim Number 48-1 (**"Objection to Claim"** and/or **"Objection"**) (Doc. 1701).  Latonya Mallory (**"Mallory"** and/or **"Claimant"**) filed proof of claim number 48-1 (**"Proof of Claim"** and/or **"Claim"**) on December 2, 2019, seeking to recover from the Estate $603 million, the stated basis being "legal malpractice claim."  Only after the Trustee filed her Objection to Claim and well over three years from filing the Proof of Claim, Mallory delineated in her opposition to the Trustee's Objection (**"Supplement to Claim"**) (Doc. 1725) that the basis for her Claim is set forth in a complaint (the **"Virginia Complaint"**) previously filed in the Circuit

---

[1] The principal address of the Debtor as of the petition date was 4405 Cox Road, Glen Allen, Virginia 23060, and the last four digits of the Debtor's federal tax identification number are 2451.

Paula S. Beran, Esquire (Va. Bar No. 34679)
Tavenner & Beran, PLC
20 North Eighth Street, Second Floor
Richmond, Virginia 23219
Telephone: (804) 783-8300

Craig T. Merritt, Esquire (Va. Bar No. 20281)
R. Braxton Hill, IV, Esquire (Va. Bar No.  41539)
MerrittHill, PLLC
919 East Main Street, Suite 1000
Richmond, Virginia 23219
Telephone:  (804) 916-1600

*Counsel for Lynn L. Tavenner, Chapter 7 Trustee*

Court for the City of Richmond, Virginia. This Court is the third tribunal in which Mallory has

sought to assign to LeClairRyan the blame for her illegal activity.  Under established principles of

federal preemption and issue preclusion (collateral estoppel) discussed below, and under Virginia

law, the Trustee is entitled to summary judgment. The Trustee's Objection should be sustained,

disallowing with prejudice the Claim in its entirety for all purposes in this Case.

## SUMMARY OF ARGUMENT

In Virginia, the relationship of attorney and client is contractual. Every attorney-client

contract incorporates a professional standard of care that sounds in negligence. To succeed on her

malpractice claim, Mallory must prove that she was party to a contract with LeClairRyan, that the

law firm breached the standard of care governing the contract, and that the breach caused the

claimed injury. The causation element of her claim is defeated if she did not rely on the legal

advice allegedly provided to her by the Debtor. In addition, her claim is barred entirely if her injury

was caused in part by her contributory negligence.

Mallory was a defendant in three consolidated federal *qui tam* actions (the **"South
Carolina Action"**) that were tried to verdict in the United States District Court for the District of

South Carolina in January 2018, and reduced to judgment in May 2018. In those cases, the

government alleged that she participated, as CEO of Health Diagnostic Laboratory, Inc. ( **"HDL"**),

in a scheme to pay kickbacks to health care providers for referring testing work to HDL's

Richmond, Virginia laboratory. At trial, Mallory offered evidence and her counsel argued to the

judge and jury that she relied on the advice of counsel, including LeClairRyan, to justify her

conduct. United States District Judge Richard M. Gergel refused to instruct the jury on the

affirmative defense of advice of counsel, finding that the evidence did not support it.  He permitted

Mallory's counsel to argue to the jury that it could consider all of the advice received by Mallory

from her attorneys in deciding whether she possessed the requisite intent to violate federal law. Mallory's counsel made the argument to the jury; the jury rejected the argument, rendering a verdict against her.

On February 22, 2021, the United States Court of Appeals for the Fourth Circuit issued its opinion in the appeal brought by Mallory from the judgment in the South Carolina Action.  The opinion specifically addressed Mallory's challenges to (1) the District Court's refusal to give the advice of counsel instruction, and (2) the District Court's instruction that the jury could consider evidence concerning advice she received from lawyers in assessing the intent element of the violation. The appeals court rejected her arguments and affirmed the judgment.

Mallory's Proof of Claim seeks to relitigate issues decided against her in the South Carolina federal trial. Under federal common law, principles of collateral estoppel prevent Mallory from seeking an inconsistent outcome on issues identical to those adjudicated in the South Carolina Action. The South Carolina Action provided Mallory a full and fair opportunity to present evidence and legal argument in support of her claim that her misconduct was a consequence of bad legal advice from LeClairRyan.  Mallory and her counsel made that argument to both judge and jury, and the argument was rejected. The resulting judgment could only have been rendered had those issues been decided against Mallory.  Issues decided adversely to Mallory in the South Carolina Action track the causation element of Mallory's "legal malpractice" claim, as well as the contributory negligence defense. Because she is collaterally estopped from relitigating those matters, judgment must be entered in favor of the Debtor's Estate on the Proof of Claim.[2]

---

[2] Mallory brought a malpractice action in the Circuit Court for the City of Richmond (the **"Virginia Malpractice Case"**) on the eve of her South Carolina trial, claiming that any federal judgment against her, as well as any liability to the HDL estate in bankruptcy, would be a consequence of LeClairRyan's malpractice.  In the aftermath of the federal verdict, the Circuit Court dismissed the Virginia malpractice action with prejudice on collateral estoppel grounds on August 8, 2019.

Federal preemption principles independently bar Mallory's claim.  Mallory is not the first defendant found liable in a False Claims Act case to attempt the feat of laying off her liability on others.  This has been tried under various theories of liability such as contribution or indemnity. Regardless of the rubric under which such claims were brought, the federal courts rejected them. The principle is clear: it undermines both the congressional objectives of the False Claims Act and the prosecutorial discretion of the executive branch to allow a "workaround" that avoids the consequences of an adverse FCA judgment.

For analogous reasons, Virginia law limits the availability of contribution claims in tort cases.  A defendant found liable for intentionally tortious conduct, as opposed to mere negligence, has no right to contribution under Virginia law.  However Mallory may characterize it, the gravamen of her claim is that she, as a tortfeasor who inflicted harm on taxpayers, is entitled to contribution from LeClairRyan, an alleged joint tortfeasor that allegedly played a role in causing the harm.  Virginia law bars that claim, independent of federal law, because she was found in the South Carolina Action to have acted intentionally.

Mallory's Claim proceeds from the faulty premise that she, in her individual capacity, was a client of LeClairRyan who engaged the firm to advise her personally on health care legal compliance issues.  The Supplement to Claim, which incorporates the the Virginia Complaint, cobbles together facts relating to various legal work performed for her personally that plainly relate to other matters.  In the end, the assertion that she was a LeClairRyan client for any relevant purpose is conclusory, no matter how many times Mallory's pleading repeats that conclusion. Under the governing principle that a complaint must be plausible, it does not state a claim and the

---

When the present bankruptcy case was initiated by LeClairRyan, Mallory's time for noticing an appeal from that judgment to the Supreme Court of Virginia had not run.

claim may be dismissed on this independent, threshold basis.  However, should the Court decide

that her shaky assertion of client status presents a disputed issue of fact, it must nonetheless enter

summary judgment against Mallory on the independent grounds summarized above.

## PROCEDURES GOVERNING THIS MOTION

Upon Mallory's filing of the Supplement to Claim, the Trustee's Objection to Claim

became a contested matter that is governed by Bankruptcy Rule 9014. *In re Circuit City Stores,*

*Inc.*, 426 B.R. 560, 567 (Bankr. E.D. Va. 2010). Rule 56 of the Federal Rules of Civil Procedure

applies to contested matters as incorporated by Bankruptcy Rules 9014 and 7056. *Id.*; *see also*

Scheduling Order, dated January 26, 2023 (Doc. 1733) (indicating that summary judgment rules

apply to this proceeding).

Under the governing rule, "The court shall grant summary judgment if the movant shows

that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a

matter of law." Fed. R. Civ. P. 56(a).  When the non-moving party bears the burden of proof on an

issue, as Mallory does on the elements of her malpractice claim, it must come forward with

evidence to show that it has proof to support each element of its claim, or that a fact material to

proof of that element is genuinely disputed. The court must enter summary judgment "against a

party who fails to make a showing sufficient to establish the existence of an element essential to

that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v.*

*Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *see also Hooven-Lewis v.*

*Caldera*, 249 F.3d 259, 265 (4th Cir. 2001). Here, Mallory has the burden of alleging facts

sufficient to support a legal liability owed to her by the Estate.  *Stancill v. Harford Sands Inc. (In*

*re Harford Sands Inc.)*, 372 F.3d 637, 640 (4th Cir. 2004); *In re Reed*, 624 B.R. 155, 167 (Bankr.

E.D. Va. 2020).[3]

The Federal Rules of Evidence govern the admissibility of evidence in this Court.  *See* Fed.

R. Evid. 1101(a). Factual matters affirmatively stated in the Virginia Complaint are judicial

admissions by Mallory. *Flexi-Van Leasing, Inc. v. Travelers Indemnity Company*, 837 Fed. Appx.

141, 145 (4th Cir. 2020). As prescribed by Rule 3001 of the Federal Rules of Bankruptcy

Procedure, the Mallory Claim utilized Bankruptcy Official Form 410 to set forth under penalty of

perjury factual bases for the amounts she claims are owed, as further set forth in the Supplement

to Claim.  The factual matters affirmatively stated as part of the written claim constitute judicial

admissions by Mallory.  *See Flexi-Van*, 837 Fed. Appx at 145; *see also Barrett v. Rogers (In re*

*Lawrence)*, 2020 Bankr. LEXIS 1282, *27-28 (Bankr. E.D. Va. May 14, 2020) ("Factual

admissions by parties are, as a general rule, binding as judicial admissions.") *quoting Blizzard v.*

*Astrue*, No. 4:10-CV5, 2010 U.S. Dist. LEXIS 118365, at *15, 2010 WL 4630253, at *6 (E.D. Va.

Sept. 22, 2010), *report and recommendation adopted sub nom. Blizzard v. Comm'r of Soc. Sec.*,

No. 4:10-CV5, 2010 U.S. Dist. LEXIS 118379, 2010 WL 4627859 (E.D. Va. Nov. 8, 2010). In

addition, the record in the South Carolina Action and the opinion of the Fourth Circuit identify the

issues that were tried, the rulings of the presiding judge, and the scope of the final judgment. The

judicial records submitted by the Trustee as exhibits are accurate copies that may be verified from

public sources.

---

[3] The Trustee's Objection to Claim is made in accordance with applicable rules and raises a good
faith basis for the Objection.  Accordingly, to the extent the Proof of Claim even shifted the burden
on validity, Mallory must now establish the validity of her Claim by a preponderance of the
evidence.  *In re Reed*, 624 B.R. 155, 167 (Bankr. E.D. Va. 2020).

The doctrine of collateral estoppel has dispositive significance in this matter, and is discussed separately below in Argument Part I.A.

## STATEMENT OF UNDISPUTED FACTS

There is no dispute as to these facts:

1.    Mallory was the founder of Health Diagnostic Laboratory, Inc. ("HDL"), a Richmond, Virginia company formed in 2008. *See Exhibit A to the Mallory Supplement to Claim (Doc. 1725 at 12-33) (Mallory v. LeClairRyan, A Professional Corporation*, Case No. CL17-6164-8 (Circuit Court, City of Richmond), Complaint ("Va. Compl.") ¶ 22). (Virginia Complaint submitted as **Exhibit 1**).

2.    Mallory was the Chief Executive Officer of HDL from its inception through September 2014. *In re Health Diagnostic Laboratory, Inc.*, Case No. 15-32919, *Arrowsmith v. Mallory*, Adversary Proceeding No. 16-03271, 588 B.R. 154, 157 (2018) (memorandum opinion approving settlement).

3.    LeClairRyan, formerly known as LeClairRyan, A Professional Corporation, was a Richmond, Virginia-based law firm that filed a voluntary petition under Chapter 11 of the Bankruptcy Code on September 3, 2019. *In re LeClairRyan, PLLC, Debtor*, Case No. 19-34574-KRH.

4.    From the inception of HDL as a start-up enterprise, LeClairRyan attorneys provided legal services to HDL, including advisory services related to compliance with health care statutes and regulations.  Va. Compl. ¶s 9-12 and *passim*.

5.    HDL employed a business model that relied on the payment of fees to health care providers in connection with the referral of patients for laboratory blood testing services performed by HDL.  Va. Compl. ¶ 27.

6.      By 2013, the United States Department of Justice (**"USDOJ"**) had become interested in the business practices of HDL and in January 2013, it issued a subpoena to HDL related to HDL's reimbursement procedure and billing practices. Va. Compl. ¶s 14, 54.

7.      As a result of the USDOJ investigation, HDL entered into a settlement with the United States of America in March 2015. Va. Compl. ¶ 15, 56.

8.      On June 7, 2015, HDL declared bankruptcy, filing its petition in this Court.  Va. Compl. ¶ 15. *See In re Health Diagnostic Laboratory, Inc, Debtor*, Case No. 15-32919-KRH.

9.      The March 2015 settlement between the United States and HDL did not release individual officers such as Mallory from liability.  Va. Compl. ¶s 14, 56.

10.     On August 7, 2015, the United States intervened in three consolidated *qui tam* cases (the "South Carolina Action") that were pending in the District of South Carolina alleging violations of the federal False Claims Act ("FCA"). *United States ex rel. Lutz v. Latonya Mallory, et al.*, Case No. 9:14-cv-00230-RMG. *See* United States Complaint in Intervention **(Exhibit 2)**.

11.     In the South Carolina Action, Mallory was charged with "multiple violations of the False Claims Act, 31 U.S.C. § 3729." *United States V. Mallory*, 988 F.3d 730, 734 (4th Cir. 2021). Those violations included "paying physicians for drawing patients' blood and processing the blood samples in violation of the Anti-Kickback Statute, 42 U.S.C. § 1320a-7b(b)." *Id*. at 735.

12.     After HDL filed for bankruptcy in June 2015, this Court appointed a Liquidating Trustee, Richard Arrowsmith, to, among other things, investigate claims that HDL might possess against Mallory and other directors and officers of HDL.  That investigation led to the Liquidating Trustee filing an adversary proceeding against Mallory and others on September 16, 2016.  *See Arrowsmith v. Mallory, et al.*, Adv. No. 16-03271 (the **"D&O Adversary Proceeding"**).

13.     The South Carolina Action went to trial before a jury in January 2018.

14.     On December 29, 2017, prior to the commencement of the jury trial in the South

Carolina Action, Mallory filed a civil action in the Circuit Court for the City of Richmond,

Virginia, claiming that she was injured by LeClairRyan's malpractice.   The case was styled

*Latonya Mallory v. LeClairRyan, A Professional Corporation*, Case No. CL17-6164-8 ("**Virginia**

**Malpractice Case**").

15.     In the Virginia Malpractice Case, Mallory asserted that, in the event she suffered

financial loss as a result of an adverse result in the federal South Carolina Action, or in litigation

brought by the Liquidating Trustee in the HDL bankruptcy case, she would be entitled to recover

"through a potential future contribution claim" from LeClairRyan. Va. Compl. at 20-21 ¶63.c and

d. (Doc. 1725 at 31-32) (**Exhibit 1**).

16.     The South Carolina Action was tried to a jury from January 16, 2018, through

January 31, 2018.

17.     At issue in the South Carolina Action was Mallory's liability for violations of the

Anti-Kickback Statute, 42 U.S.C. § 1320a-7b ("AKS"), and the False Claims Act, 31 U.S.C. §

3729 ("FCA"). *United States v. Mallory*, 988 F.3d, 730, 734-35.   Proof of a violation of these

statutes includes the essential element of intent. *See* 42 U.S.C § 1320a-7b(b)(1) ("knowingly and

willfully solicits or receives any remuneration . . . in return for [a referral]") and §1320a-7b(b)(2)

("knowingly and willfully offers or pays any remuneration . . . to refer an individual"); *see also* 31

U.S.C. § 3729(a)(1)(A) ("knowingly presents, or causes to be presented, a false or fraudulent

claim").

18.     The FCA defines "knowing" and "knowingly" to: "(A) mean that a person, with

respect to information – (i) has actual knowledge of the information; (ii) acts in deliberate

ignorance of the truth or falsity of the information; or (iii) acts in reckless disregard of the truth or

falsity of the information; and (B) require no proof of specific intent to defraud." 31 U.S.C. §3729

(b)(1). The district court instructed the jury on these elements. Trial Transcript, South Carolina

Action ("Trial Tr."), January 31, 2018, at 2954. **(Exhibit 3)**.

19.     At trial in the South Carolina Action Mallory, through her counsel, argued that she

was entitled to have the jury instructed on the affirmative defense of "advice of counsel." *U.S. v.*

*Mallory*, 988 F.3d at 739.

20.     After hearing argument from Mallory's attorney, the presiding judge ruled that the

evidence did not support Mallory's contention that she had relied on LeClairRyan:

> Remember, an advice-of-counsel defense is a complete defense; that is, to the extent the
> jury rules with it, it must -- it must be something that the -- the elements -- most of the
> elements are that you must have fully disclosed to your counsel and that you relied on them.
> The evidence shows that between January of 2010, when HDL began paying process and
> handling fees, until April of 2012, when the Ruggio opinion was produced, there was no
> opinion.  So you can't have relied on it.  There's no reliance.  And the defendant has the
> burden of proving an affirmative defense.

> And I'd note – there's been no meaningful evidence about full disclosure to Ruggio of what
> was going out there, such as the activities in terms of activities in the field.  So, for many
> reasons, the Ruggio letter cannot -- cannot be the basis.  It wasn't relied on for the first two
> years and four months.

> And then within four months, Kung had issued his memorandum.  And in January of 2013,
> Pace was hired to move away.  So they're not relying upon the Ruggio opinion.  The bottom
> line is, advice of counsel just doesn't fit here for Mallory.[4]

Trial Tr., January 29, 2018, at 2681:9-2682:4. **(Exhibit 4)**.

21.     The presiding judge did not foreclose Mallory's counsel from arguing that her

claimed reliance on counsel was relevant.  The court instructed the jury that in determining whether

the United States had proven the "willfullness" element of the AKS, it could consider the advice

Mallory had received from her attorneys, including LeClairRyan, at the relevant times:

---

[4] Ruggio was a LeClairRyan attorney. Kung was an attorney and Pace a compliance officer, both
employed by HDL.

A defendant who acts with a good-faith belief that his or her conduct is lawful does not willfully violate the Anti-Kickback Statute even if that belief is mistaken . . . . In determining whether a defendant acted in good faith, you must consider the totality of the evidence presented.  This includes all of the legal opinions and advice received by or known to the defendant, regardless of the source, to determine whether the defendant acted in good faith.

*U.S. v. Mallory*, 988 F.3d at 739 (quoting charge to the jury in the South Carolina Action).

22.     Counsel for Mallory argued to the jury:

This is what the judge is going to tell you. "A defendant who acts with a good faith belief that his or her conduct is lawful does not willfully violate the Anti-Kickback statute even if that belief is mistaken."

A defendant who acts with good faith that his or her conduct is lawful does not willfully violate the Anti-Kickback statute.

If you find that Tonya Mallory acted with a good-faith belief that her conduct was lawful, then you can't find that she violated the Anti-Kickback Statute.  And that's where we are.  That's what this case is all about. Tonya Mallory acted with good faith.  She did the right thing. She used the right people.  She asked the right questions.  She followed the lawyers' guidance.

Trial Tr., January 30, 2018, at 2925:6-19. **(Exhibit 5)**.

23.     On January 31, 2018, the jury returned its verdict in the South Carolina Action, finding Mallory liable for the charged violations. Verdict Form, South Carolina Action **(Exhibit 6)**.

24.     On May 23, 2018, the United States District Court for the District of South Carolina entered judgment on the verdict rendered against Mallory in the sum of $111,109,655.30. Final Order, South Carolina Action **(Exhibit 7)**.

25.     Subsequent to the entry of judgment against Mallory in the South Carolina Action, on June 12, 2018, this Court approved a settlement between Mallory and the Liquidating Trustee in the D&O Adversary Proceeding.  Order Approving Settlement, *Arrowsmith v. Mallory, et al.*, 15-ap-32919 (Doc. 625) **(Exhibit 8)**.

26.    On August 16, 2018, LeClairRyan filed its responsive pleadings in the Mallory

malpractice action in the Virginia Malpractice Case and sought removal of the case to this Court.

27.    Finding an insufficient nexus between Mallory's malpractice claim and the HDL

bankruptcy case, this Court remanded the Virginia Malpractice Case to the Circuit Court for the

City of Richmond on December 13, 2018.

28.    LeClairRyan and Mallory briefed and argued LeClairRyan's demurrer in the

Circuit Court for the City of Richmond, and that court issued its memorandum opinion sustaining

the demurrer and dismissing the case on August 8, 2019. Memorandum Opinion and Order ("Mem.

Op. and Order") **(Exhibit 9)**.

29.    The Circuit Court found that Mallory was collaterally estopped from relitigating

her reliance on LeClairRyan's advice, as the issue had been tried in the South Carolina Action:

> [I]n the instant action, Plaintiff asserts that the injuries she sustained were directly
> and proximately caused by Defendant's legal advice.  The District Court previously
> determined, however, that Plaintiff's conduct was knowing and willful, and therefore, not
> based on Plaintiff's reliance on the advice of counsel.  Consequently, the good faith
> reliance issue, which is relevant to the causation element in this case, has been previously
> litigated and determined in the District Court case.  Accordingly, Plaintiff cannot now
> relitigate the issue.
>
> Alternatively, the District Court judgment is at least sufficient to establish, as a
> matter of law, that Plaintiff is contributorily negligent.  As the Supreme Court of Virginia
> has indicated, a legal malpractice claim may be barred by contributory negligence. *Lyle,
> Siegel, Croshaw & Beale, P.C. v. Tidewater Capital Corp.*, 249 Va. 426, 432-33, 457
> S.E.2d 28, 32 (1995).

Mem. Op. and Order (August 8, 2019) **(**Exhibit 9**)** at 7-8, *reported at* 102 Va. Cir. 338, 2019 WL

11868444.

30.    On September 3, 2019, a few days before the running of Mallory's time to file a

notice of appeal in the Virginia courts, LeClairRyan filed its petition under Chapter 11 of the

Bankruptcy Code, initiating the instant Case. The Case was subsequently converted to a Chapter

7 liquidation.

31.     On September 5, 2019, after the automatic stay was imposed as a result of LeClairRyan's filing of this Case, Mallory filed a notice of appeal with the Supreme Court of Virginia and subsequently obtained a stay order from that Court, issued November 19, 2019. **(Exhibit 10)**.

32.     Mallory filed her Proof of Claim number 48-1 in this Case on December 2, 2019. (Claim 48-1) **(Exhibit 11)**.

33.     During the forty (40) months between the filing of her Proof of Claim and the date of the Trustee's Objection to Proof of Claim 48-1, Mallory did not move this Court for relief from the automatic stay in order to pursue an appeal to the Supreme Court of Virginia. And in fact, still has not as of the filing of the Motion for Summary Judgement.

34.     On February 22, 2021, the United States Court of Appeals for the Fourth Circuit affirmed the judgment in the South Carolina Action. *United States v. Mallory*, 988 F.3d 730 (4th Cir. 2021). (Opinion submitted as **Exhibit 12**).

35.     With regard to Mallory's argument that the South Carolina district court erred in denying the advice of counsel instruction, the appellate court stated:

> Defendants requested an instruction stating that they "have asserted an affirmative defense of advice of counsel to the Government's allegations that they violated the False Claims Act" and that the affirmative defense, "if true, will completely defeat the government's allegations under the False Claims Act." The district court refused to give this instruction because it concluded that the instruction did not fit the facts of the case.

> This was so, the court explained, because Defendants did not produce evidence that they made full disclosure of all pertinent facts to counsel, nor did they identify any specific legal opinion, written or otherwise, that they relied upon from HDL and Blue Wave's formation until at least 2012. In response, Defendants point to an email sent by an attorney from the law firm of LeClairRyan to his colleague in 2009. However, Defendants offered no evidence that they ever read this email. And in the email, the lawyer simply says that in his "recollection, P&H fees do[] not run afoul of Anti-[K]ickback, but he want[ed] to confirm that no recent OIG [o]pinions have slipped past [him]." This is hardly a clear endorsement of the P&H fee structure.

988 F.3d at 739.

36.     With regard to Mallory's intent, the appellate court concluded that, "The

Government provided abundant evidence as to Defendants' knowledge and intent."  *Id*. at 736.

Concluding that the jury was properly instructed on the issue of Mallory's asserted reliance on

counsel, the court explained:

> Furthermore, although the district court did not give the advice of counsel affirmative defense instruction proposed by defendants, it did instruct the jury to consider Defendants' "good faith" reliance on legal advice.  The court explained:
>
> > A defendant who acts with a good-faith belief that his or her conduct is lawful does not willfully violate the Anti-Kickback Statute even if that belief is mistaken . . . In determining whether a defendant acted in good faith, you must consider the totality of the evidence presented.  This includes all of the legal opinions and advice received by or known to the defendant, regardless of the source, to determine whether the defendant acted in good faith.
>
> This charge captured the essence of Defendants' proposed instruction – if the jury found that defendants, relying on the advice of counsel, had a good faith belief that their conduct was legal, then they did not violate the Anti-Kickback Statute.  Thus, the district court's refusal to give the stand-alone advice-of-counsel instruction that Defendants requested provides no basis for reversal.

Mallory v. U.S., 988 F.3d at 739.

37.     The Virginia Complaint in the Virginia Malpractice Case was first submitted to this

Court on January 20, 2023, as Exhibit A to Latonya Mallory's Opposition to the Trustee's

Objection to Claim 48-1, in the Instant Bankruptcy. *See* Doc. 1725 at 12-33.

38.     The Virginia Complaint in the Virginia Malpractice Case sets the boundaries of

Mallory's Proof of Claim. *See* Mallory Opp. To Trustee Objection (Doc. 1725) at 6 ¶ 14.g ("All

documentation necessary to this claim for malpractice is attached hereto.").

## **ARGUMENT**

I.     **The doctrine of collateral estoppel compels the entry of summary judgment in favor of the Trustee.**

### A. Federal common law principles of collateral estoppel control.

This Court applies federal common law principles of collateral estoppel. *Grogan v. Garner*, 498 U.S. 279, 284, 11 S.Ct. 654, 112 L.Ed.2d 755 (1991), *cited in In re Samantar*, 537 B.R. 250, 258 (Bankr. E.D.Va. 2015) ("Collateral estoppel applies in bankruptcy cases.").  Where the prior judgment being asserted for its preclusive effect is rendered by a federal court, the effect of the judgment is determined by federal common law.  *Taylor v. Sturgill*, 553 U.S. 880, 891, 128 S.Ct. 2161, 171 L.Ed.2d 155 (2008); *Semtek Intern. Inc. v. Lockheed Martin Corp.*, 531 U.S. 497, 507-08, 121 S.Ct. 1021, 149 L.Ed.2d 32 (2001).  Where the prior federal judgment was rendered on a claim arising under federal rather than state law, federal principles of collateral estoppel apply.  In support of her Motion for Summary Judgment, the Trustee is asserting that essential elements of Mallory's claim are barred by collateral estoppel based on a judgment entered in a prior federal action that arose under federal law.

Collateral estoppel, known also as issue preclusion, bars the "successive litigation of an issue of fact or law actually litigated and resolved in a valid court determination essential to the prior judgment, whether or not the issue arises on the same or a different claim." *New Hampshire v. Maine*, 532 U.S. 742, 748-49, 121 S.Ct. 1808, 149 L.Ed.2d 968 (2001).  In this federal judicial circuit, collateral estoppel applies if five elements are met: "(1) that 'the issue sought to be precluded is identical to one previously litigated' ("element one"); (2) that the issue was actually determined in the prior proceeding ("element two"); (3) that the issue's determination was 'a critical and necessary part of the decision in the prior proceeding' ("element three"); (4) that the prior judgment is final and valid ("element four"); and (5) that the party against whom collateral estoppel is asserted 'had a full and fair opportunity to litigate the issue in the previous forum' ("element five")." *Collins v. Pond Creek Mining Co.*, 468 F.3d 213, 217 (4th Cir. 2006).

**B. Essential elements of Mallory's legal malpractice claim are barred by collateral estoppel.**

    **1. The elements of reliance on LeClairRyan's advice and Mallory's own conduct are identical to issues litigated in the South Carolina Action (estoppel element one).**

In the South Carolina Action, the government was required to show that Mallory engaged in conduct prohibited by the federal Anti-Kickback Statute, violating the False Claims Act with the requisite state of mind. Undisputed Facts, *supra*, ¶s 18, 19.  Defending herself against the claim, Mallory asserted that she did not possess the requisite state of mind because she was following advice provided by her lawyers, including what she characterized in her testimony as an opinion letter issued by a LeClairRyan attorney. Undisputed Facts, *supra* ¶s 20, 21.  *See also U.S. v. Mallory*, 988 F.3d at 739.  She put her claim of reliance on LeClairRyan squarely at issue by asserting this defense.

Mallory's defense in the South Carolina Action is identical to the causation element of her malpractice claim. Under Virginia law, Mallory must show that her claimed injury, the exposure she had to the United States under the FCA and to the HDL Liquidating Trustee on his claims (*see* Complaint ¶63.c and d), was proximately caused by her reliance on LeClairRyan's legal advice. Complaint ¶ 63 (claiming losses as a "direct and proximate" consequence of reliance on LeClairRyan).

Virginia law is also clear that in a legal malpractice case, which imports negligence principles into the attorney-client contract, contributory negligence may be asserted as a complete defense. *Lyle, Siegel, Croshaw & Beale, P.C. v. Tidewater Capital Corp.*, 249 Va. 426, 432, 457 S.E.2d 28, 32 (1995) ("[W]e hold that contributory negligence is available as a defense in a legal malpractice action."); *Brown v. McGuire, Woods, Battle & Boothe Int'l III, LLP*, No. LP-2951-1, 2003 WL 22521431 at *2 (Cir. Ct., City of Richmond, July 31, 2003) ("[L]egal malpractice actions

are contract claims but with tort concepts applicable such as proximate cause, contributory negligence, etc."). Thus, if Mallory's claimed losses resulted in part from her own misconduct, her malpractice claim fails.

2. **The elements of reliance on LeClairRyan's advice and Mallory's own conduct were actually determined in the South Carolina Action (estoppel element two).**

To establish liability under the AKS and the FCA, the United States had to prove that Mallory pursued the illegal conduct with the requisite state of mind. Undisputed Facts, *supra*, ¶s 17, 18. In instructing the jury, the District Court explained the essential elements set forth in each statute. Undisputed Facts, *supra*, ¶ 18.

Mallory's primary defense against these claims was that she relied on attorneys who assured her that her company's conduct was proper. At the close of the evidence, her attorney argued that she was entitled to an "advice of counsel" jury instruction. The district court declined to give the "advice of counsel" instruction because it found that (1) there was no evidence of her reliance on LeClairRyan prior to April of 2012; and (2) her argument that she relied on an April 2012 opinion from a LeClairRyan lawyer was not supported by evidence that all of the facts about HDL's market conduct had been disclosed to the lawyer. Undisputed Facts, *supra*, ¶ 20.

Having rejected the advice of counsel defense for lack of evidence, the District Court instructed the jury that it could consider Mallory's history of dealings with LeClairRyan and her other attorneys as relevant to her claim that she acted in good faith, negating the government's proof of the intent element of the AKS and FCA claims. Undisputed Facts, *supra*, ¶ 21. Mallory's counsel argued that position to the jury. Undisputed Facts, *supra*, ¶ 22. The jury, as factfinder, determined Mallory's claim of good faith reliance on her lawyers against her. Undisputed Facts, *supra*, ¶ 23 and Exhibit 6 (jury verdict).

17

**3. The trial court's decision rejecting Mallory's claimed reliance on LeClairRyan and the jury's decision regarding her intent were a critical and necessary part of the South Carolina Action (estoppel element three).**

As the subsection immediately above explains, the jury could not have found Mallory liable for either an AKS or an FCA violation without determining that she "knowingly and willfully" engaged in the prohibited conduct.  Proof of that element was necessary to the finding against Mallory, and the effort to rebut such proof was the cornerstone of her defense. The District Court found as a matter of law that there was no evidence at all that Mallory relied on any advice prior to April 2012 and that her claimed reliance on an April 2012 opinion letter could not be established because there was no proof that the LeClairRyan lawyer had been provided a complete set of facts. The jury, being properly instructed, necessarily found that Mallory possessed the requisite element of intent.

**4. The trial court's judgment is final, valid, and affirmed by the Fourth Circuit Court of Appeals (estoppel element four).**

Final judgment was entered in the South Carolina Action on May 23, 2018, and affirmed by the Court of Appeals for the Fourth Circuit on February 22, 2021. Undisputed Facts, *supra*, ¶s 24 (final judgment) and 34 (appellate opinion issued).

**5. Mallory had a full and fair opportunity to litigate her claimed reliance on LeClairRyan and her responsibility for her own conduct in the South Carolina Action (estoppel element five).**

Federal litigation under the AKS and FCA sounds in fraud, and presents defendants with the risk of substantial financial exposure, as the $111 million verdict in the South Carolina Action demonstrates.  Mallory was aware no later than January 2013 that her company was under scrutiny by the USDOJ.  Undisputed Facts, *supra*, ¶ 6.  After five years of wrangling with first the USDOJ and then the HDL Liquidating Trustee, Mallory was under no illusion as to what was at stake.  The Virginia Complaint, filed on the eve of the January 2018 trial in the South Carolina Action, offers

18

Mallory's clear admission that she knew her potential exposure was massive. She valued the claims of the United States in the South Carolina Action at $2 billion. Va. Compl. ¶ 63.d (Doc. 1725 at 32). She valued the claims brought by the Liquidating Trustee at $600 million. *Id.* at 63.c (Doc. 1725 at 31) (Exhibit 1).

Mallory had every incentive to make her case in the South Carolina Action. She took that opportunity, through her own testimony and through the argument of her experienced and capable counsel. Her assertions that she had no culpability, lacked the requisite intent, and relied on advice from LeClairRyan, were fully presented. In a jury trial conducted before United States District Judge Gergel, and then before the Court of Appeals for this judicial circuit, she took advantage of a full and fair opportunity to litigate the issues she is now trying to relitigate through her Proof of Claim.

### C. Collateral estoppel bars the re-litigation of issues of fact and law already determined against Mallory, compelling disallowance of her Claim.

As Part I.B above demonstrates, every element for the application of collateral estoppel is present to warrant the grant of the Trustee's Motion for Summary Judgment. The elements of the offenses charged and decided in the South Carolina Action are indistinguishable from the causation element of a Virginia legal malpractice claim. The jury finding that Mallory possessed the intent to violate federal law is dispositive of a contributory negligence defense. To allow Mallory to pursue her Proof of Claim, which by her admission is simply the claim set forth in the Virginia Complaint, is to relitigate the very issues that the South Carolina district court tried to verdict and determined. Collateral estoppel precludes the re-litigation of those issues, and on this ground alone it is proper to enter summary judgment in favor of the Trustee.[5]

---

[5] Notably, the Circuit Court for the City of Richmond, applying collateral estoppel rules governing state court deference to previously litigated issues in federal cases, came to this very conclusion in

## II.     Federal preemption bars Mallory's Claim, providing an independent basis for the entry of summary judgment in favor of the Trustee.

In *Mortgages, Inc. v. U.S. Dist. Court for Dist. Of Nev. (Las Vegas)*, 934 F.2d 209 (9th Cir. 1991), the Ninth Circuit held that the trial court erred when it failed to dismiss counterclaims asserted by a defendant in a *qui tam* action arising under the FCA. The counterclaims were based on various state law theories, but each in substance "sought as relief full indemnification and/or contribution from [the plaintiff] against any recovery or judgment in favor of the United States in the FCA action." *Id*. At 211.  The Ninth Circuit found that the FCA precludes a *qui tam* defendant from offsetting her FCA liability through claims that expressly or by implication seek contribution or indemnification.  The court reasoned that "[b]ecause there is no basis in the FCA or federal common law to provide a right to contribution or indemnity in a FCA action, we conclude that there can be no right to assert state law counterclaims that, if prevailed on, would end in the same result." *Id*. at 214.  Thus, "a right to contribution under state law would conflict with the purposes of the False Claims Act," and therefore "any right the [*qui tam* defendant] might have to contribution under state law is preempted by the False Claims Act." *United States v. Warnings*, No. CIV.A. 93-4541, 1994 WL 396432, *8 (E.D. Pa. July 26, 1994).

Numerous federal and state courts have applied the reasoning of *Mortgages, Inc.* to deny the efforts of losing defendants to undermine FCA judgments. *See, e.g., J-M Mfg. Co. v. Phillips & Cohen, LLP*, 443 N.J. Super. 447, 457, 129 A.3d 342, 348 (App. Div. 2015) ("J-M, the defendant in the [False Claim Act] proceedings, should not be able to effectively indemnify itself for any

---

a well-reasoned memorandum opinion and order dismissing the Virginia Complaint.  Undisputed Facts, supra, ¶s 29, 30. Because the prior litigated matter giving rise to the estoppel barring the Proof of Claim is the South Carolina Action, this Court, which applies federal law, need not delve into the Circuit Court's opinion. It is nonetheless a useful touchstone that independently verifies the propriety of applying the doctrine.

portion of its *qui tam* liability by suing the relator and his lawyers in this state."); *Sauer v. ERA Preferred Realtors*, No. 189883, 1997 WL 33344666 at *2 (Mich. Ct. App. July 1, 1997) (affirming summary disposition of indemnification claim arising under FCA; finding *Mortgages, Inc.* to be persuasive authority). As the United States District Court for the District of Columbia succinctly put it: "[t]he unavailability of contribution and indemnification for a defendant under the False Claims Act now seems beyond peradventure." *U.S. ex rel. Miller v. Bill Harbert Int'l Const., Inc.*, 505 F.Supp.2d 20, 26 (D.D.C. 2007).

The rule applies fully to claims against third parties. *See, e.g., United States v. Nardone*, 782 F.Supp. 996, 999 (M.D. Pa 1990) ("[A] defendant who is found liable under the False Claims Act is not entitled to indemnification from a third party defendant, even if it can be proven that he too would have been jointly and severally liable."); *U.S. ex rel. Pub. Integrity v. Therapeutic Tech. Inc.*, 895 F.Supp. 294, 296 (S.D. Ala. 1995) (holding that "FCA defendants are precluded as a matter of law from seeking indemnification from a third-party defendant" and collecting cases).

One commentator summarizes the importance of this preemption rule in maintaining the prerogative of the Executive Branch to enforce the FCA appropriately:

> [I]n the context of a previous settlement or a government decision not to institute FCA claims against the third-party defendant, permitting such claims to proceed undermines the primacy of the Executive Branch in prosecuting false-claims actions. By settling with or not proceeding against the putative third-party defendant, the government made a judgment regarding the proper liability that party should incur as a result of it actions, and such a judgment falls squarely within the power to investigate and litigate offenses against the United States, which the Constitution assigns to the Executive Branch, not a self-interested litigant. Therefore, third-party claims that undermine that judgment raise separation of powers concerns.

Thomas F. O'Neil III, Esq. et al., *The Buck Stops Here: Preemption of third-Party Claims by the False Claims Act*, 12 Contemp. Health L. & Pol'y, 41, 58 (1995) (internal quotations and citations omitted).

Mallory's malpractice claim is accurately characterized in her Virginia Complaint as a claim for "contribution" against LeClairRyan. She seeks contribution for her exposure to the United States, the Liquidating Trustee, and for the attorneys' fees she expended in defending herself against them, on the basis that LeClair Ryan bears joint responsibility for the losses. Va. Compl. ¶ 63. This demand for relief is precisely the type of workaround by a losing FCA defendant that is preempted by federal law. To allow it would defeat the purposes of the FCA verdict, and render the investigation and prosecution by the USDOJ a nullity. Mallory's effort to offload her FCA liability onto the Debtor's estate in this bankruptcy is particularly egregious given that the United States elected to prosecute her, not LeClairRyan. The doctrine of federal preemption prohibits this and is an independent basis for granting summary judgment in favor of the Trustee.

### III.    Virginia's bar on contribution claims by wrongdoers compels entry of summary judgment in favor of the Trustee.

Were this Court to undertake the litigation of Mallory's Proof of Claim in disregard of the controlling principles of preemption and collateral estoppel discussed above, dismissal with prejudice would be compelled independently by Virginia law. Virginia prohibits contribution for acts involving moral turpitude or voluntary torts. *See* Va. Code § 8.01-34; *see also Hudgins v. Jones*, 205 Va. 495, 501, 138 S.E.3d 16, 21 (1964) ("[A] party who otherwise would be entitled to contribution forfeits his right where the joint liability arose out of an act involving moral turpitude or a voluntary tort."); *accord Woodson v. City of Richmond, Va*., 2 F.Supp.3d 804, 810 (E.D. Va. 2014). An act involves moral turpitude if it encompasses lying, cheating, or stealing. *See Shifflett v. Com.*, 289 Va. 10, 11, 766 S.E.2d 906, 907-08 (2015).

Liability under the FCA involves both moral turpitude and a voluntary tort. *See U.S. ex rel. Owens v. First Kuwaiti Gen. Trading & Contracting Co.*, 612 F.3d 724, 728 (4th Cir. 2010) (the FCA "is a fraud prevention statute"; it is not designed to "punish honest mistakes or incorrect

claims submitted through mere negligence") (internal quotations omitted). Similarly, the HDL Liquidating Trustee's claims against Mallory in the D&O Adversary Proceeding involved allegations of moral turpitude and the commission of voluntary torts.  This Court explained that, "The Liquidating Trustee's overarching allegation is that from the inception of HDL certain former officers, directors and shareholders, with the assistance of the co-founders of Blue Wave, intentionally and knowingly pursued a business model that was fraudulent and illegal." *Arrowsmith v. Mallory, et al.*, APN No. 16-0327 (Bankr. E.D. Va., Aug. 9, 2017) Mem. Op. (Doc. 363) at 15 (addressing motions to dismiss filed by various defendants in the D&O Adversary Proceeding).

Mallory's liability to both the United States and the estate of the bankrupt HDL arose directly out of her knowing and intentional wrongdoing, and she cannot seek contribution from LeClairRyan (or any other purported joint wrongdoer) under Va. Code § 8.01-34.

## IV. Mallory has not plausibly alleged, nor can she establish, an attorney-client relationship with LeClairRyan related to the conduct at issue.

The Proof of Claim rests on the premise, stated in conclusory terms, that Mallory as founder and CEO of HDL became a personal client of LeClairRyan for the purpose of obtaining legal advice on her exposure for the conduct found to be illegal in the South Carolina Action.

Since the decision of the Supreme Court in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007), plaintiffs in federal civil actions must do more than offer "labels and conclusions" in their complaints. *Twombly*, 555 U.S. at 555. *See also Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) (explaining that a complaint must meet the threshold of "facial plausibility"). This standard is not at odds with Virginia's requirement that, while a trial court must accept well-pleaded facts as true, it is not required to credit either unreasonable inferences or conclusions of law.

Mallory seeks to again navigate this in the Supplement to Claim (which incorporates the Virginia Complaint) by touting her role at HDL (the admitted client), while obfuscating the fact that legal work performed for HDL by LeClairRyan was not legal work performed for Mallory in her personal capacity.  The Virginia Complaint never explicitly declares that two *coextensive* attorney-client relationships were created.  Rather, it tries to generate that inference by averring that the two were *simultaneous*: "Neither LeClairRyan nor Ms. Mallory ever made a distinction between who was the client and who was not the client with respect to the multitude of advice provided by LeClairRyan." Va. Compl. ¶42.  Whether or not this artful verbal construct suffices to aver that Mallory was a client for all purposes on which the Debtor advised HDL, it is a legal dead end.  A lawyer's provision of advice to a corporate entity does not generate a relationship of attorney and client with the corporation's officers. *See, e.g., In re Finley, Kumble, Wagner, et al.,*192 B.R. 342, 353 (Bankr. S.D.N.Y. 1994) (summary judgment in favor of law firm debtor; rejecting malpractice claimant's attempt to equate himself with law firm's corporate client).

Other averments in the Virginia Complaint simply cobble together instances where LeClairRyan did provide legal advice to Mallory on personal matters, none of which were material to advice on compliance with federal health care statutes and regulations. These include (1) joint representation of HDL and Mallory in litigation with Berkeley, in which they were co-defendants, Va. Compl. ¶ 25, (2) specific engagements on her departure from Berkely or on side projects, *Id*. ¶s 22, 43; and (3) advice on her duties to HDL when she was contemplating a new venture, *Id*. ¶46.  Nowhere does the Virginia Complaint draw a plausible connection between legal work performed for Mallory personally and the subject matter of compliance with federal health care and anti-fraud laws that was the critical issue in both the South Carolina Action and the Liquidating Trustee's D&O Adversary Proceeding,

Thus, under governing pleading standards, Mallory has not sufficiently alleged that she possesses standing to make her malpractice claim at all.  As explained above, a malpractice claim is founded on contract.  And, notwithstanding the requirements of Bankruptcy Rule 3001 that a claim based on a writing must attach to it a copy of that writing, and notwithstanding that one of the numerous bases for the Trustee's Objection is that the Claim is not supported by the requisite documentation, Mallory has not provided a copy of any engagement letter with LeClairRyan delineating the existence or scope of her claimed status as a client.  This lack of documentation stands as a further obstacle to Mallory's claimed right to payment alleged in the Proof of Claim.

The Court should be aware of the Virginia Complaint's shortcomings, even if it determines that summary judgment under Rule 56 should not be used to resolve the sufficiency of that pleading. Because the existence of the attorney-client relationship requires proof of contractual privity, this Court may, out of an abundance of deference the Claimant, decide not to grant summary judgment on that particular issue.   However, two points are clear: (1) Mallory's conclusory assertion that she personally was a LeClairRyan client for any relevant purpose does not meet the plausibility standard required in the federal courts, and (2) even if this Court assumes *arguendo* that Mallory was a LeClairRyan client, it must nonetheless grant summary judgment on each of the grounds discussed in Parts I, II, and III above. Even in the counterfactual world where Mallory personally was a LeClairRyan client with regard to AKS and FCA compliance, her claim would be barred.

## CONCLUSION

The Court must enter summary judgment in favor of the Trustee and against Mallory. Should the Court decide that she crossed the plausibility threshold and sufficiently alleged an attorney-client relationship, Mallory must nonetheless suffer summary judgment and dismissal of

her Proof of Claim. The Trustee is entitled to summary judgment under Bankruptcy Rule 7056 because (1) federal preemption bars Mallory, the losing party in the South Carolina Action, from undermining a judgment rendered under the FCA by asserting a state law malpractice claim; (2) essential elements of Mallory's malpractice claim were litigated in the South Carolina Action and those issues were determined against her, triggering the application of collateral estoppel; and (3) Virginia law denies Mallory, an intentional wrongdoer, any right to contribution against an alleged joint wrongdoer.  For all of these independent reasons summary judgment can and should be entered against Mallory and a final order be entered sustaining the Trustee's Objection and disallowing with prejudice Mallory's Proof of Claim.

Respectfully submitted,

**LYNN L. TAVENNER, CHAPTER 7 TRUSTEE**

        */s/ Craig T. Merritt*
Craig T. Merritt (VSB No. 20281)
R. Braxton Hill, IV (VSB No. 41539)
MerrittHill, PLLC
919 E. Main Street, Suite 1000
Richmond, VA 23219
Telephone:  804-916-1600
cmerritt@merrittfirm.com
bhill@merrittfirm.com
        *Special Counsel to Lynn L. Tavenner,*
        *Trustee for the Debtor*

Filed this day by,

        */s/ Paula S. Beran*
Paula S. Beran, Esquire (VSB No. 34679)
PBeran@TB-LawFirm.com
Tavenner & Beran, PLC
20 North 8th Street
Richmond, Virginia 23219
Telephone: (804) 783-8300
        *Counsel for Lynn L. Tavenner,*
        *Chapter 7 Trustee*

26

## CERTIFICATE OF SERVICE

I hereby certify that on the 21st day of February 2023, I will electronically file a copy of the foregoing with the Clerk of Court using the CM/ECF system, which will then send a notification of such filing (NEF) to the registered participants as identified on the NEF to receive electronic service.


/s/ Paula S. Beran
Counsel for Lynn L. Tavenner, Chapter 7 Trustee