**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION**

| | |
|---|---|
| In re:<br><br>**LeClairRyan PLLC,**<br><br>Debtor.[1] | Case No.: **19-34574-KRH**<br><br>**Chapter 7** |

**COVER SHEET FOR COMBINED TENTH INTERIM AND FINAL FEE
APPLICATION OF QUINN EMANUEL URQUHART & SULLIVAN, LLP, AS SPECIAL
COUNSEL TO THE TRUSTEE, FOR APPROVAL AND ALLOWANCE OF
COMPENSATION AND REIMBURSEMENT OF EXPENSES INCURRED FOR THE
PERIOD FROM MAY 18, 2021 THROUGH JANUARY 22, 2024**

| **General Information** | |
|---|---|
| Name of applicant: | Quinn Emanuel Urquhart & Sullivan, LLP |
| Authorized to provide professional services to: | Lynn L. Tavenner, Chapter 7 Trustee |
| Date of bankruptcy filing: | September 3, 2019 |
| Date of retention order: | July 1, 2021 (*retroactive to* May 18, 2021) |
| **Summary of Fees and Expenses Sought in the Tenth Interim Period** | |
| Period for which compensation and reimbursement sought: | October 1, 2023- January 22, 2024 |
| Total hours billed: | 33.90 |
| Total hourly fees requested: | $35,953.50[2] |

---

[1] The principal address of LeClairRyan PLLC as of the petition date was 4405 Cox Road, Glen Allen, Virginia 23060, and the last four digits of the Debtor's federal tax identification number are 2451.

[2] This amount reflects a ten (10) percent discount off of Quinn's hourly rates in place currently for this matter, which are already below those rates being charged in other matters as a professional courtesy to the Chapter 7 Trustee.

---

Erika L. Morabito (VA Bar No. 44369)
Brittany J. Nelson (VA Bar No. 81734)
QUINN EMANUEL URQUHART & SULLIVAN, LLP
1300 I Street, NW, Suite 900
Washington, DC  20005
Telephone: (202) 538-8330

*Special Counsel to the Chapter 7 Trustee*

| | |
|---|---|
| Blended hourly rate (all attorneys): | $1,352.50 |
| Blended hourly rate (all timekeepers): | $1,060.68 |
| Total expenses requested: | $28,182.20 |
| **Summary of Fees and Expenses Sought in the Final Fee Application** | |
| Period for which compensation and reimbursement sought: | May 18, 2021 – January 22, 2024 |
| Total Hourly Fees Requested: | $532,640.60 |
| Total Expenses Requested: | $275,370.35 |
| Estimated amount of compensation sought as actual, reasonable, and necessary incurred from January 23, 2024 through and including the date of the hearing on the Final Fee Application | $15,000[3] |
| Total Contingency Fees Requested in the Final Fee Application: | $12,172,525.00[4] |
| Blended hourly rate (all attorneys): | $1,284.57 |
| Blended hourly rate (all timekeepers): | $1,234.71 |

---

[3] In addition to the fees incurred during the Final Fee Application Period, Quinn anticipates that it will incur additional fees and expenses of no more than $15,000 in connection with the preparation of the Final Fee Application and attendance at the hearing thereon. Notwithstanding anything herein, Quinn will only seek payment from the Estate for fees and expenses actually incurred by Quinn during this period.

[4] As detailed below, this amount does not include the "Improvident Payment" of $3,150,000 authorized on a final basis pursuant to the Court's September 2, 2022 Order Clarifying the Order Authorizing the Retention and Employment of Quinn Emanuel Urquhart & Sullivan, LLP [Dkt No. 1568] ("Supplemental Retention Order"),

| Historical Fee Applications and Other Requests for Payments | | | | | | | | |
| Fee Application | Date and Docket No. | Hourly Fees | | Contingency Fees | | | Expenses | |
| | | Requested | Paid | Requested | Approved | Paid | Requested | Paid |
|---|---|---|---|---|---|---|---|---|
| First Interim Fee Application | 09/02/21; Dkt. No. 992 | $83,743.80 | $83,743.80 | $805,350.00 | $805,350.00 | $803,950.00 | $27,946.94 | $27,946.94 |
| Second Interim Fee Application | 11/30/21; Dkt. No. 1120 | $93,541.23 | $93,541.23 | $4,527,600.00 | $4,527,600.00 | $4,522,350.00 | $29,096.13 | $29,096.13 |
| Third Interim Final Fee Application (including Supplemental Third Interim Fee App) | 03/08/22; Dkt. No. 1245; 3/15/22; Dkt No. 1249 | $72,213.17 | $66,354.17[5] | $200,550.00 | $200,550.00 | $200,550.00 | $98,341.63 | $98,341.63 |
| Fourth Interim Fee Application | 07/18/22; Dkt. No. 1499 | $66,595.50 | $66,595.50 | $173,600.00 | $173,600.00 | $172,550.00 | $62,222.58 | $62,222.58 |
| Fifth Interim Fee Application | 09/07/22; Dkt No. 1582 | $112,747.60 | $112,747.60 | $14,000.00 | $14,000.00 | $14,000.00 | $476.89 | $476.89 |
| Sixth Interim Fee Application | 11/30/22; Dkt No. 1670 | $24,661.10 | $24,661.10 | $177,625.00 | $177,625.00 | $177,625.00 | $63,091.08 | $63,091.08 |
| Seventh Interim Fee Application | 03/06/23; Dkt No. 1787 | $22,015.40 | $22,015.40 | $14,000.00 | $14,000.00 | $7,000 | $28,893.16 | $28,893.16 |
| Eighth Interim Fee Application | 07/06/23; Dkt No. 1921 | $15,661.80 | $15,661.80 | 0.00 | 0.00 | 0.00 | $21,473.55 | $21,473.55 |
| Ninth Interim Fee Application | 11/07/23; Dkt No. 2046 | $11,366.50 | $11,366.50 | 0.00 | 0.00 | 0.00 | $7,045.55 | $7,045.55 |

---

[5]  Quinn voluntarily reduced the amount requested in the Third Interim Fee Application by $5,859.00 after discussions with the Office of the United States Trustee.

| Historical Fee Applications and Other Requests for Payments | | | | | | | | |
| --- | --- | --- | --- | --- | --- | --- | --- | --- |
| Fee Application | Date and Docket No. | Hourly Fees | | Contingency Fees | | | Expenses | |
| | | Requested | Paid | Requested | Approved | Paid | Requested | Paid |
| Tenth Interim Fee Application | Included Herein | $35,953.50 | $0 | 0.00 | 0.00 | 0.00 | $28,182.20 | $0 |
| Supplemental Retention Order[6] | 09/02/22; Dkt No. 1568 | $0 | $0 | $6,274,500 | $6,274,500 | $6,274,500 | $0 | $0 |
| **Total** | | **$538,499.60** | **$496,687.10** | **$12,187,225.00** | **$12,187,225.00** | **$12,172,525.00** | **$275,370.35** | **$239,416.85** |

---

[6]   The Supplemental Retention Order authorized both contingency fees to Quinn for work done related to the United Lex Settlement (as hereafter defined) in an amount of $6,274,500 as well as an "Improvident Payment" on a final basis in an amount of $3,150,000.  The amount listed in the chart above contains only the contingency fee portion of the fees earned for the United Lex Settlement.

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**RICHMOND DIVISION**

| | |
|---|---|
| In re:<br><br>**LeClairRyan PLLC,**<br><br>Debtor.[1] | **Case No.: 19-34574-KRH**<br><br>**Chapter 7** |

**COMBINED TENTH INTERIM AND FINAL FEE APPLICATION OF QUINN EMANUEL URQUHART & SULLIVAN, LLP, AS SPECIAL COUNSEL TO THE TRUSTEE, FOR APPROVAL AND ALLOWANCE OF COMPENSATION AND REIMBURSEMENT OF EXPENSES INCURRED FOR THE PERIOD FROM MAY 18, 2021 THROUGH JANUARY 22, 2024**

Quinn Emanuel Urquhart & Sullivan, LLP ("Quinn"), as special counsel to Lynn L. Tavenner, and not individually but solely in her capacity as the Chapter 7 trustee (in such capacity, the "Trustee") of the bankruptcy estate (the "Estate") of LeClairRyan PLLC (the "Debtor"), during the relevant time and with respect to the matters set forth herein, hereby submits this Combined Tenth Interim and Final Fee Application for Compensation of Fees and Expenses of Quinn Emanuel Urquhart & Sullivan, LLP (the "Final Fee Application") for the period from May 18, 2021 through January 22, 2024 (the "Final Fee Period"). Quinn hereby applies, pursuant to sections 328(a), 330 and 331 of the United States Bankruptcy Code, 11 U.S.C. §§ 101 *et seq.* (the "Bankruptcy Code"), Rule 2016 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Rule 2016-1 of the United States Bankruptcy Court for the Eastern District of Virginia Local Bankruptcy Rules (the "Local Rules"), for an order: (a) allowing interim and final compensation and expenses in the total amount of $64,135.70 for the period of October 1, 2023 through January 22, 2023 (the "Tenth Interim Fee Statement"); (b) allowing Quinn's

---

[1] The principal address of LeClairRyan PLLC as of the petition date was 4405 Cox Road, Glen Allen, Virginia 23060, and the last four digits of the Debtor's federal tax identification number are 2451.

hourly fees on a final basis in the aggregate amount of $532,640.60; (c) allowing Quinn's

contingent fees on a final basis in the aggregate amount of $12,172,525.00; (d) authorizing the

Trustee to make a payment of $ 838,311.29 as provided for in the Supplemental Retention Order

(as hereafter defined); and (e) allowing expenses incurred by Quinn on behalf of the Estate on a

final basis in the aggregate amount of $275,370.35.

In support of this Application, Quinn submits the declaration of Brittany J. Nelson, a

partner at Quinn (the "<u>Nelson Declaration</u>"), which is attached hereto as **<u>Exhibit A</u>** and

incorporated by reference in this Final Fee Application.  In further support of this Final Fee

Application, Quinn respectfully states as follows:

<b><u>JURISDICTION</u></b>

1.      The United States Bankruptcy Court for the Eastern District of Virginia

(the "<u>Court</u>") has jurisdiction to consider this Final Fee Application pursuant to 28 U.S.C. §§ 157

and 1334 and the *Standing Order of Reference from the United States District Court for the Eastern

District of Virginia*, dated August 15, 1984.  This is a core proceeding within the meaning of 28

U.S.C. § 157(b).  Venue is proper before the Court pursuant to 28 U.S.C. §§ 1408 and 1409.

2.      The legal predicates for the relief sought herein are sections 328(a), 330 and 331 of

the Bankruptcy Code, Bankruptcy Rule 2016, and Local Rule 2016-1.

<b><u>GENERAL BACKGROUND</u></b>

3.      On September 3, 2019 (the "<u>Petition Date</u>"), the Debtor filed a petition for relief

under chapter 11 of the Bankruptcy Code in this Court.  Pursuant to §§ 1107 and 1108 of the

Bankruptcy Code, the Debtor was operating its business as a debtor-in-possession.

4.      On September 12, 2019, the United States Trustee filed its *Motion to Convert Case

to Chapter 7* (the "<u>Motion to Convert</u>") and notice thereof [Dkt. No. 61].  At a hearing on

September 26, 2019, the Court denied the Motion to Convert.  However, per agreement between the Debtor, the United States Trustee, and ABL Alliance, LLP as stated in the *Order on Motion to Convert Case to Chapter 7*, the Case was converted to a case under Chapter 7 of the Bankruptcy Code on October 4, 2019 [Dkt. No. 140].

5.      Upon conversion, the Trustee was appointed interim trustee, and as no trustee having been elected at the meeting of creditors, she continues to serve as the Trustee.

### THE TRUSTEE'S RETENTION OF QUINN

6.      As this Court is aware, Quinn's retention as special counsel followed the Trustee's retention of Foley & Lardner ("Foley").   Ms. Erika Morabito and Ms. Brittany Nelson had served as lead special counsel to the Trustee while Foley was retained by Trustee as special counsel.  In May 2021, Ms. Morabito and Ms. Nelson left Foley and joined Quinn.  After being informed of Ms. Morabito and Ms. Nelson's relocation from Foley to Quinn Emanuel, the Trustee conducted due diligence with respect to the Estate's ongoing special litigation needs and, in the exercise of her business judgment and consistent with her duties, selected, subject to Court approval, Quinn to represent her as special counsel in this Case on the majority of unresolved matters based on its considerable experience in insolvency, bankruptcy, and litigation matters, as well as its considerable experience in internal investigations.

7.      After making this decision, on June 7, 2021, the Trustee filed *Trustee's Application to Retain and Employ Quinn Emanuel Urquhart & Sullivan, LLP as Special Counsel* [Dkt. No. 908] (the "Quinn Retention Application").   An exhibit to the Quinn Retention Application was the "Engagement Letter."  On June 28, 2021, the Court entered its *Order Authorizing the Retention and Employment of Quinn Emanuel Urquhart & Sullivan, LLP as Special Counsel* [Dkt. No. 937] (the "Quinn Retention Order," and with the Quinn Retention Application and the Engagement Letter, the "Quinn Retention Documents"), retroactive to May 18, 2021.

8.      On August 2, 2022, the Trustee filed *Trustee's Supplemental Application to Retain and Employ Quinn Emanuel Urquhart & Sullivan, LLP as Special Counsel* [ECF No. 1533] (the "Supplemental Application").  On September 2, 2022, the Court entered its *Order Clarifying the Order Authorizing the Retention and Employment of Quinn Emanual Urquhart & Sullivan, LLP as Special Counsel* [ECF No. 1568] (the "Supplemental Retention Order"), retroactive to July 11, 2022 (the "Supplemental Retention Order") (collectively with the Retention Order, the "Quinn Retention Orders").

9.      As special counsel to the Trustee, Quinn was retained by the Trustee to provide two types of services: (a) Contingency Matters; and (b) Non-Contingency Matters.

10.     Through the Quinn Retention Orders, Quinn was employed by the Estate on a contingency basis, pursuant to section 328, for certain services related to pursuing the Estate's claims and causes of actions against certain individuals on a contingency basis.  Those services included:

- investigation of the Estate's claims and causes of action against certain individuals, entities, and/or former attorneys of the Debtor and/or those acting in concert with them, including but not limited to ULX Partners, LLC and UnitedLex Corporation, and possibly others;

- preparing, filing, and/or prosecuting lawsuits;

- settlement procedures and negotiations;

- prosecution of claim(s) until settlement, award, or judgment is obtained;

- if judgment is obtained in the Trustee's favor, opposing an opposing party's motion for new trial (if any); and

- negotiations regarding possible settlement.

Engagement Letter at ¶ 2; Quinn Retention Order at ¶ 3. Pursuant to the Engagement Letter and the Quinn Retention Order, the Trustee agreed to compensate Quinn with thirty percent (35%) of the recoveries of these causes of action (the "Contingent Fees").  Engagement Letter ¶ 11(a).

11.     In addition, pursuant to the Quinn Retention Order, the Trustee was also authorized to employ Quinn on an hourly basis at agreed to rates in connection with other related matters that may arise and may require legal services ("Non-Contingency Matters"), pursuant to sections 327(a) and (e) of the Bankruptcy Code. *See* Quinn Retention Order at ¶ 4.

12.     Previously, Quinn has filed a total of nine interim fee applications during the pendency of this case. *See* Dkt Nos. 992, 1120, 1249, 1499, 1582, 1670, 1787, 1921 and 2046. The Tenth Interim Fee Application is filed concurrently herewith (collectively, the "Interim Fee Applications"). Each of the Interim Fee Applications, with the exception of the Tenth Interim Fee Application, have previously been approved by the Court. *See* Dkt Nos. 1075, 1168, 1282, 1546, 1610, 1722, 1844, 1963, and 2064.

## SUMMARY OF TENTH INTERIM FEE APPLICATION

13.     By this Final Fee Application, Quinn respectfully requests that the Court allow (a) for interim and final allowance of reasonable compensation for certain of the actual, reasonable, and necessary professional services that it has rendered as special counsel to the Trustee in this Case for the Administrative Fees during the Tenth Interim Period (from October 1, 2023 through January 22, 2024) in the amount of **$35,953.50** (the "**Interim Administrative Fees**")[2]; and (b) for reimbursement of actual, reasonable and necessary expenses incurred in representing the Trustee during the Tenth Interim Period in the amount of **$28,182.20.**

14.     A summary schedule of compensation by timekeeper during the Tenth Interim Period is attached hereto as **Exhibit B**. A summary schedule of hours and fees covered during the Tenth Interim Period, categorized by project code is attached hereto as **Exhibit C**. A summary

---

[2]   This amount does not include numerous voluntary write-offs and other professional discounts totaling more than $5,000 provided by Quinn as a courtesy to the Trustee during the Tenth Interim Fee Period.

schedule of the expense reimbursements requested by category is attached hereto as **Exhibit D**. During the Tenth Interim Period, Quinn provided the following non-exclusive services to, and as requested by, the Trustee:    (i) attending Court hearings, including providing status reports to the Court; (ii) following up as necessary on settlements and other open issues from the Estate; and (iii) seeking payment of certain expenses and fees.

15.    Quinn has not made any prior request for payment of professional fees earned and expenses incurred and/or paid during the Tenth Interim Period.

16.    In accordance with Bankruptcy Rule 2016 and Local Rule 2016-1, a detailed chronological itemization of the services rendered by each professional and paraprofessional, calculated by tenths of an hour and categorized in accordance with the appropriate project code and a detailed chronological itemization of the expenses incurred by and/or paid by Quinn during the Tenth Interim Period are attached hereto as **Exhibit E**.

## SUMMARY OF LEGAL SERVICES
## RENDERED BY QUINN DURING THE FINAL FEE PERIOD

17.    During the Final Fee Period, Quinn provided extensive and important professional services to the Trustee for the benefit of the Estate.  These services were necessary to address a multitude of critical issues that were unique to this case – the failure of a large law firm.  These fees are comprised of: (a) the Contingent Matters; (b) the United Lex Settlement; and (c) the Non-Contingent Matters.

I.      **Contingent Matters (Not Including United Lex Settlement)**

18.     Pursuant to the terms and conditions of the Quinn Retention Orders, Quinn was authorized to pursue contingency-based claims against certain parties, deemed the FAO Actions.[3] In doing so, Quinn performed necessary, significant, and material work on the Estate's behalf to effectuate the recovery of significant settlements on behalf of the Estate.

19.     The FAO Actions involved claims against the Debtor's former partners and officers.  Quinn differentiated these actions into two groups - (a) those FAO Parties that managed the Debtor's operations (the "FAO Insiders") and (b) those FAO Parties that were partners but did not exercise managerial control (the "FAO Partners").  Quinn investigated causes of actions, drafted complaints, participated in mediation and other settlement negotiations, and engaged in discovery and motion practice in certain of the FAO Actions.  Through these efforts, Quinn was able to resolve more than 100 FAO Actions and reach settlements totaling $16,878,500 for the Estate.

20.     Of these, most significantly, Quinn's work on FAO Insiders claims resulted in a value-maximizing settlement with various FAO Parties and Columbia Casualty Company – an insurer that had issued an applicable policy to the Debtor pre-petition, and others (the "Columbia Settlement") [Dkt. No. 1103-1].  Pursuant to the Columbia Settlement, among other things, the Trustee agreed to release the Columbia Defendants from various claims she has pursued against them and Columbia agreed to pay the Trustee $9,475,000 in full satisfaction of said claims.  *See*

---

[3]    On May 14, 2020, the Trustee filed *Trustee's Motion for an Order Establishing Procedures Regarding the Prosecution of Actions Involving Former Attorneys and Certain Others and Memorandum in Support Thereof* [Dkt. No. 457] (the "FAO Procedures Motion").  On June 15, 2020, the Court entered an order granting the FAO Procedures Motion [Dkt. No. 533] (the "FAO Procedures Order").  The FAO Procedures Order gave the Trustee (and Quinn acting as the Trustee's special counsel) the ability to pursue and settle "FAO Actions" against certain parties (the "FAO Parties").

*Motion for Approval of Compromise and Settlement and Memorandum of Law* [Dkt. No. 1103] at ¶ 8.

21.    The contingent payments to Quinn related to these settlements have previously been approved on an interim basis in the Interim Fee Applications.  *See* Dkt Nos. 1075, 1168, 1282, 1546, 1610, 1722, 1844, 1963, and 2064.  For the Court's convenience, they are listed cumulatively on **Exhibit F.**[4]

## II.    United Lex Settlement

22.    In addition to these Contingent Matters, Quinn also was instrumental in achieving a settlement of two additional separate adversary proceedings (collectively, the "United Lex Settlement"), described in the *Motion and Memorandum of Law for Entry of an Order (I) Approving (A) Judicially Mediated Settlement and (B) Compensation to Counsel Including an Improvident Payment Under Section 328(a); and (II) Granting Related Relief* [Dkt No. 1453] (the "Settlement Motion").  As part of its extensive work in these cases, Quinn drafted multiple versions of complaints in the two adversary proceedings, engaged in complex and substantial mediation and litigation, including a very active motions practice, as well as extensive discovery consisting of written discovery, the exchange of hundreds of thousands of pages of documents, depositions of more than a dozen witnesses, and the retention of various experts.  Ultimately, the Trustee was able to settle and resolve these two adversary proceedings in total after months of negotiations, motions practices, mediations, and related appeals.

---

[4]    Pursuant to the *Order Approving Procedures and Permitting Trustee to Prosecute and Compromise FAO Actions* [ECF No. 533] (the "Procedures Order"), Exhibit F will be filed separately under seal using the sealed document docketing event in the ECF system pursuant to CM/ECF Policy 6. *See* Procedures Order ¶ 4.

23.    In the Supplemental Retention Order, this Court previously approved payment to Quinn of a contingency payment and an "Improvident Payment" totaling collectively no more than $9,397,500. *See* Supplemental Retention Order at ¶ 3.

24.    .    Pursuant to the terms of the Supplemental Retention Order, the remaining payment of $ 838,311.29 shall be paid from the Third Defendants' Payment, which is due to the Estate on or before August 29, 2024 from the Defendants.  Supplemental Retention Order at ¶ 3. Pursuant to the United Lex Settlement, the Third Defendants' Payment is fully secured by Notes and Irrevocable Letters of Credit.  Settlement Motion at ¶ 37(d).[5]

## III.    Non-Contingent Matters

25.    In addition to the Contingency Matters and the United Lex Settlement, as set forth above, Quinn was also retained by the Trustee to provide certain services to the Trustee on an hourly basis.  Quinn's hourly rates for this portion of the engagement reflect a ten (10) percent discount off of Quinn's standard hourly rates, as set forth in the Quinn Retention Documents.  As a courtesy to the Estate, Quinn also voluntarily reduced its hourly-based fees during the Final Fee Period   in an amount that exceeds $50,000.

26.    To provide a meaningful summary of Quinn's services for the Non-Contingent Matters, Quinn established, in accordance with its internal billing procedures, certain project categories (each, a "Project Category").  Attached hereto as **Exhibit G** is a summary of the fees and hours billed for each Project Category in the Final Fee Period.

27.    Below is a summary, by Project Category, of the most significant professional services provided by Quinn during the Final Fee Period.  This summary is organized in accordance

---

[5]  All capitalized terms in this paragraph not otherwise defined in the Final Fee Application have the meaning ascribed to them in the Settlement Motion.

with Quinn's internal system of task codes.  A schedule setting forth the number of hours expended by Quinn attorneys and paraprofessionals, and the aggregate fees associated is attached hereto as **Exhibit H**.

- **Case Administration / Miscellaneous Matters**

    Total Hours:   26.30
    Total Fees:    $35,327.80

28.    This Project Category includes time spent on a variety of tasks that were necessary to ensure the efficient and smooth administration of legal services provided to the Trustee.  Among other things, Quinn attorneys and paraprofessionals spent time: (a) coordinating, managing and administering the case; (b) monitoring the case and assisting the Trustee with case administration; (c) preserving documents and other related issues for the Estate; (d) ensuring compliance with the service and notice requirements of the Bankruptcy Code, the Bankruptcy Rules, and the Local Rules; and (e) preparing for and attending meetings with the Trustee to manage tasks among Quinn, the Trustee, and other retained professionals.

- **Court Hearings**

    Total Hours:   182.80
    Total Fees:    $234,859.90

29.    This Project Category includes time spent by Quinn attorneys providing services related to preparing for and attending several hearings during the Final Fee Period (each a "Hearing" and, collectively, the "Hearings"), including preparing outlines and other materials in preparation for the Hearings and debriefing from the Hearings with the Trustee.  These services

also included conferences to discuss multiple matters scheduled for a specific Hearing and coordinating Hearing logistics.

30.

- **Fee Applications of Quinn**

> Total Hours:   143.59
> Total Fees:    $165,537.73

31.     This Project Category includes time spent by Quinn attorneys providing services related to Quinn's retention as the Trustee's special counsel.  Specifically, Quinn's attorneys and paraprofessionals spent time:

- preparing and revising Quinn's ten Interim Fee Applications; and

- preparing and revising Quinn's Final Fee Application;

- negotiating provisions and amounts in the Interim Fee Applications with interested parties.

**Insurance**

> Total Hours:   17.50
> Total Fees:    $23,265.90

32.     This Project Category includes time spent by Quinn attorneys relating to analyzing various Estate insurance issues.

- **Tax Issues**

> Total Hours:   4.60
> Total Fees:    $6,334.20

33.     This Project Category includes time spent by Quinn attorneys related to analyzing issues related to, among other things, analyzing tax implications of issues raised by numerous FAO parties.

- **Appeal Related Fees (pursuant to the Supplemental Retention Order)**

> Total Hours:   36.40

Total Fees:    $49,023.90

34.    This Project Category includes time spent by Quinn attorneys and paraprofessionals related to responding to and analyzing issues related to the United States Trustee's Office appeal of the United Lex Settlement.

- **Reimbursed Mediation Related Fees**

Total Fees:    $24,150.17

35.    As described in the Third Supplemental Interim Fee Application [Dkt No. 1249], this Project Category includes certain time spent by Quinn attorneys related to portions of the mediation that were specifically reimbursed to the Estate by Greenberg Traurig.

36.    Lastly, Quinn's computerized records of time expended providing professional services to the Trustee for the benefit of the Estate are attached hereto as **Exhibit I**, and Quinn's records of expenses incurred during the Final Fee Period in rendering professional services to the Trustee for the benefit of the Estate are also attached as **Exhibit K**.

### SUMMARY OF EXPENSES
### INCURRED DURING THE FINAL FEE PERIOD

37.    As set forth in **Exhibit K** attached hereto, Quinn has incurred a total of $275,370.35 in expenses on behalf of the Trustee during the Final Fee Period. These charges are intended to reimburse Quinn's direct operating costs, which are not incorporated into the Quinn hourly billing rates.  Quinn charges external copying and computer research at the provider's cost without markup. The effect of including such expenses as part of the hourly billing rates would impose that cost upon clients who do not require extensive photocopying and other facilities and services.

38.    Throughout the Final Fee Period, Quinn has been responsible for paying a vendor, Epiq eDiscovery Solutions, Inc. ("Epiq"), to store certain computerized data on behalf of the Estate.  Following entry of an order on the Final Application, the Trustee has proposed that the

16

Estate will be responsible going forward for making any future payments directly to Epiq for the duration that the Trustee needs Epiq's services, including invoices for services provided to the Estate by Epiq beginning on January 1, 2024.

## BASIS FOR RELIEF REQUESTED

39.     The foregoing professional services provided by Quinn Emanuel on behalf of the Trustee and for the Estate's benefit during the Final Fee Period were reasonable, necessary, and appropriate to the administration of this case and related matters, for the following reasons:

**A.     Quinn's Requested Hourly Compensation Should Be Allowed**

40.     Section 331 of the Bankruptcy Code provides for compensation of professionals and incorporates the substantive standards of section 330 of the Bankruptcy Code to govern the Court's award of such compensation.  Section 330 of the Bankruptcy Code provides that a court may award a professional employed under section 327 of the Bankruptcy Code "reasonable compensation for actual necessary services rendered . . . and reimbursement for actual, necessary expenses."  11 U.S.C. § 330(a)(1).  Section 330 also sets forth the criteria for the award of such compensation and reimbursement:

> In determining the amount of reasonable compensation to be awarded, the court should consider the nature, extent, and the value of such services, taking into account all relevant factors, including—
>
> (a)     the time spent on such services;
>
> (b)     the rates charged for such services;
>
> (c)     whether the services were necessary to the administration of, or beneficial at the time at which the service was rendered toward the completion of, a case under this title;
>
> (d)     whether the services were performed within a reasonable amount of time commensurate with the complexity, importance, and nature of the problem, issue, or task addressed; and
>
> (e)     whether the compensation is reasonable based on the customary compensation charged by comparably skilled practitioners in cases other than cases under this title.

11 U.S.C. § 330(a)(3).

41.     Here, Quinn is seeking final approval of its hourly fees pursuant to section 330 of
the Bankruptcy Code.   Quinn respectfully submits that the services for which it seeks
compensation in this Final Fee Application were reasonable and necessary for and beneficial to
Trustee and the Estate.   Quinn further believes that it performed these services for the Trustee
economically, effectively, and efficiently, and the results obtained benefited not only the Trustee,
but also the Estate and the Estate's constituents.   Quinn further submits that the compensation
requested herein is reasonable considering the nature, extent, and value of such services to the
Trustee, the Estate, and all parties in interest.

42.     During the Final Fee Period, Quinn's hourly billing rates for attorneys and
paraprofessionals ranged from $374.00 to $1,517.00 per hour.  The hourly rates and corresponding
rate structure utilized by Quinn in this case are equivalent to the hourly rates and corresponding
rate structure used by Quinn for restructuring, workout, bankruptcy, insolvency, and comparable
matters, and similar complex corporate, securities, and litigation matters, whether in court or
otherwise, regardless of whether a final fee application is required.   Quinn strives to be efficient
in the staffing of matters.  These rates and the rate structure reflect that such matters are typically
national in scope and involve great complexity, high stakes, and severe time pressures—all of
which were present in this case.  Moreover, Quinn's hourly rates are set at a level designed to
compensate Quinn fairly for the work of its attorneys and paraprofessionals and to cover certain
fixed and routine overhead expenses. Hourly rates vary with the experience and seniority of the
individuals assigned.  These hourly rates are subject to periodic adjustments to reflect economic
and other conditions and are consistent with the rates charged elsewhere.

43.    Although the rates charged by Quinn are higher than those in the community in which this Court sits, elevation above the rates in the Richmond Division is warranted by the factors enumerated in 11 U.S.C. § 330 and the lodestar factors enumerated in *Johnson v. Georgia Highway Express*, 488 F.2d 714 (5th Cir. 1974).[6]  Such justification includes, but is not limited to, the fact that the professional services provided by Quinn on behalf of the Trustee and for the Estate's benefit during this case were reasonable, necessary, and appropriate given the novelty, difficulty, and complexity of the issues present in a case that dealt with the bankruptcy of a national law firm headquartered in Richmond, Virginia.   The rates are also appropriate given the time expended by Quinn, the nature and extent of Quinn's services provided, the value of Quinn's services, and the cost of comparable national services outside of bankruptcy.  In addition, the Trustee was unable to locate adequate counsel from the local jurisdiction who was able, and willing, to efficiently and effectively address the complex litigation items that Quinn handled on behalf of the Estate.  Moreover, these rates have previously been approved by the Court in the Quinn Retention Orders.

44.    Accordingly, Quinn respectfully submits that approval of the hourly-based fees sought herein in the final total amount of $532,640.60 should be approved.

**B.    Quinn's Requested Contingent Fees Should Be Allowed**

45.    Quinn also requests the entry of an order allowing Quinn's Contingent Fees on a final basis covering all Contingency Fees it handled for the Trustee as special counsel in the

---

[6]    The *Johnson* factors include (1) the time and labor expended by counsel; (2) the novelty and difficulty of the questions presented; (3) the skill required to properly perform the legal services rendered; (4) the lawyer's opportunity costs in pressing the instant litigation; (5) the customary fee for similar work; (6) the lawyer's expectations at the outset of the litigation; (7) any time limitations imposed by the client or the circumstances; (8) the amount in controversy and the results obtained; (9) the experience, reputation, and ability of the lawyer; (10) the undesirability of the case within the legal community in which the suit arose; (11) the nature and length of the professional relationship between the lawyer and the client; and (12) attorney's fees awards in similar cases. *See Barber v. Kimbrell's Inc.*, 577 F.2d 216, 226 & n.28 (4th Cir. 1978).

aggregate amount of $12,172,525.00, all of which were previously approved by the Court on an

interim basis and previously paid to the Quinn.[7]

46.    Quinn was engaged on a contingent fee basis under § 328(a) of the Bankruptcy

Code.  Section 328(a) provides, in relevant part, as follows:

> The trustee . . . may employ or authorize the employment of a
> professional person under section 327 or 1103 of this title, as the
> case may be, on any reasonable terms and conditions of
> employment, including on a retainer, on an hourly basis, on a fixed
> or percentage fee basis, or on a contingent fee basis.
> Notwithstanding such terms and conditions, the court may allow
> compensation different from the compensation provided under such
> terms and conditions after the conclusion of such employment, if
> such terms and conditions prove to have been improvident in light
> of developments not capable of being anticipated at the time of the
> fixing of such terms and conditions.

11 U.S.C. § 328(a).

47.    Under § 328(a), "[o]nce the bankruptcy court has approved a rate or means of

payment, such as a contingent fee, the court cannot on the submission of the final fee application

instead approve a reasonable fee under § 330(a), unless the bankruptcy court finds that the original

arrangement was improvident due to unanticipated circumstances as required by § 328(a)." *In re

Airspect Air, Inc.*, 385 F.3d 915, 921 (6th Cir. 2004) (quoting *In re Texas Sec., Inc.*, 218 F.3d 443,

445-46 (5th Cir. 2000)).

48.    Here, the compensation requested in this Final Fee Application is appropriate under

the Quinn Retention Orders and §§ 328(a) and 330 of the Bankruptcy Code.  Quinn is requesting

final allowance of the Contingency Fee from recoveries obtained by the Trustee from all applicable

settlements.

---

[7]  This amount does not include the Improvident Payment (in the amount of $3,150,000) that the Court previously
approved on a final basis in the Supplemental Retention Order.

49.    Moreover, although this Final Fee Application is not judged under the standard of "reasonableness," Quinn notes that its work for the Trustee on the Contingency Matters provided a substantial benefit to the Estate.  Quinn's work covered high-stakes and extremely complex litigation that resulted in recoveries of over thirty million dollars on behalf of the Estate, recoveries that benefit the Estate's creditors.

## II.    Reasonable and Necessary Expenses Incurred in Providing Services to the Trustee

50.    Due to the location of the Trustee and other parties in interest in relation to Quinn's offices, on some occasions, the exigencies and circumstances of this case required overnight delivery of documents and other materials.  The disbursements for such services are not included in Quinn's overhead for the purpose of setting billing rates and Quinn has made every effort to minimize its disbursements in this case.  The actual expenses incurred in providing professional services were necessary, reasonable, and justified under the circumstances to serve the needs of the Trustee in this case.

51.    In addition, Quinn makes sure that all travel meals, hotel rates, and airfares are reasonable and appropriate expenses for which to seek reimbursement.  Specifically, Quinn regularly reviews its bills to ensure that the Estate is only billed for services that were actual and necessary and, where appropriate, prorates expenses.  In that regard, Quinn has waived certain expenses as appropriate.

## CONCLUSION

52.    Quinn submits that its significant, complex, and material work for the Trustee throughout this case has yielded outstanding benefits for the Estate and its creditors.  As such, this Final Fee Application seeks final approval related to these amounts.

**WHEREFORE**, Quinn respectfully requests that this Court enter an Order, substantially in the form of Exhibit K, (a) allowing interim and final compensation and expenses in the total

amount of $64,135.70 for the period of October 1, 2023 through January 22, 2023, plus any

reasonable and necessary additional fees and costs incurred between January 23, 2024 and the date

of the hearing on the Final Fee Application in an amount not to exceed $15,000; (b) allowing

Quinn's hourly fees on a final basis in the aggregate amount of $532,640.60; (c) allowing Quinn's

contingent fees as set forth herein on a final basis in the amount of $12,172,525.00; (d) authorizing

the Trustee to make a payment of $838,311.29  as provided for in the Supplemental Retention

Order; (e) allowing expenses incurred by Quinn on a final basis covering all matters it handled

while acting as special counsel for the Trustee in the aggregate amount of $275,370.35; and (f) for

any other relief the Court deems just and necessary.

Dated: February 1, 2024                 Respectfully submitted,

                                        */s/ Erika L. Morabito*
                                        Erika L. Morabito (VSB 44369)
                                        Brittany J. Nelson (VSB 81734)
                                        QUINN EMANUEL URQUHART &
                                          SULLIVAN, LLP
                                        1300 I Street, NW, Suite 900
                                        Washington, DC 20005
                                        (202) 538-8000 (telephone)
                                        (202) 538-8100 (facsimile)
                                        erikamorabito@quinnemanuel.com

                                        *Special Counsel to Lynn L. Tavenner, the Chapter 7*
                                        *Trustee of the Estate of LeClairRyan PLLC*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on the 1st day of February 2024, a true copy of the foregoing Final Fee Application was served via first-class and/or electronic mail to Kathryn Montgomery and/or Shannon F. Pecoraro, Esquire, Trial Attorney for the Office of the United States Trustee, and all parties receiving ECF notices.  Notification of the filing of this Final Fee Application and amounts sought therein will be served on (a) the Debtor's 20 Largest Unsecured Creditors; (b) all known secured creditors from the Debtor's Official Form 106D); (c) the Core Parties and 2002 List as defined in the Case Management Order; and (d) all parties requesting service of pleadings in this Case (as indicated on the Schedule A attached to the Court filed copy of said notice).

*/s/ Erika L. Morabito*
Special Counsel to the Chapter 7 Trustee

10750-00001/14671493.6